Michael Luskin
Lucia T. Chapman
Stephan E. Hornung
LUSKIN, STERN & EISLER LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 597-8200
Facsimile: (212) 974-3205
luskin@lsellp.com
chapman@lsellp.com
hornung@lsellp.com

*Attorneys for Richard J. Davis, Chapter 11
Trustee of Fletcher International, Ltd.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>FLETCHER INTERNATIONAL, LTD.<br><br>　　　　Debtor. | Case No. 12-12796 |
| RICHARD J. DAVIS, solely in his capacity as Chapter 11 Trustee of FLETCHER INTERNATIONAL, LTD.,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>KASOWITZ BENSON TORRES & FRIEDMAN LLP<br><br>　　　　Defendant. | Adv. Proc. No. _____ |

**<u>COMPLAINT</u>**

Richard J. Davis, solely in his capacity as Chapter 11 Trustee ("**Trustee**") of Fletcher International, Ltd. ("**FILB**" or the "**Debtor**"), by his undersigned attorneys, Luskin, Stern & Eisler LLP, as and for his Complaint against Kasowitz Benson Torres & Friedman LLP ("**Kasowitz**") respectfully pleads:

### Nature of Action

1. This is an action to avoid and recover more than $975,000 in attorneys' fees that were funneled out of the Debtor and used by Alphonse Fletcher Jr. ("**Fletcher**") to pay for legal fees owed to the Defendant in connection with his personal litigation against the well-known New York City apartment building, The Dakota (the "**Dakota Litigation**"). Between August 5, 2011 and April 20, 2012, FILB paid more than $975,000 to Kasowitz primarily for legal services provided to Fletcher in his individual capacity related to the Dakota Litigation; however, FILB received none of the benefit. The Dakota Litigation – brought in Fletcher's name and that of his wholly-owned asset management company, Fletcher Asset Management, Inc. ("**FAM**") – was related to personal claims that certain members of The Dakota's co-op board racially discriminated against Fletcher when they refused to allow him to purchase an apartment in the building (which, according to press reports, would have been his fourth).

2. Fletcher and FAM caused FILB to make each of the payments to Kasowitz with the actual intent of defrauding the Debtor's creditors and investors. Fletcher and FAM caused FILB to make each of the payments to Kasowitz at a time when the Debtor was insolvent. Accordingly, these transactions should be avoided, and the Trustee should recover from Kasowitz the full amount of these payments.

**The Parties**

3. FILB is a Bermuda corporation with its principal place of business in New York County at 48 Wall Street, New York, New York 10005. FILB filed a petition under Chapter 11 of the Bankruptcy Code on June 29, 2012. On September 28, 2012, the Bankruptcy Court approved the appointment of Richard J. Davis as the Chapter 11 Trustee for FILB. The Trustee is a citizen of the State of New York with his principal place of business in New York County. He appears in this action solely in his official capacity as FILB's Chapter 11 Trustee.

4. Kasowitz is a limited liability partnership organized under the laws of the State of New York with offices located at 1633 Broadway, New York, New York 10019.

**Jurisdiction and Venue**

5. This Court has subject matter jurisdiction to consider this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 insofar as this is a core proceeding under 28 U.S.C. § 157(b).

6. Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

**Facts**

7. On or about July 29, 2011, Fletcher and FAM retained Kasowitz on behalf of FILB pursuant to a letter agreement dated July 29, 2011 (the "**FILB Engagement Letter**"). Pursuant to the FILB Engagement Letter, Kasowitz was to represent the Debtor in connection with pending and potential litigation against United Community Banks, Inc., Seven Arts, and Ion Geophysical Corporation and related matters (the "**FILB Engagement Matters**"). The FILB Engagement Letter required FILB to deposit an initial retainer of $125,000, which Kasowitz was to apply to any fees incurred by FILB related to the FILB Engagement Matters.

8. FILB paid the $125,000 retainer to Kasowitz on or about August 5, 2011.

-3-

9. Upon information and belief, Kasowitz never provided any services related to the FILB Engagement Matters. Instead, Kasowitz provided ongoing representation to Fletcher and FAM in connection with the Dakota Litigation, and to a lesser extent, Fletcher's dispute with the Wall Street Journal over an article it had published about FAM.[1]

10. According to Kasowitz's recent complaint against Fletcher and FAM filed in the Supreme Court for the State of New York, Fletcher and FAM separately retained Kasowitz pursuant to one or more engagement letters dated July 29, 2011 (the "**FAM Engagement Letter**"). Pursuant to the FAM Engagement Letter, Kasowitz provided ongoing representation to Fletcher and FAM related to the Dakota Litigation for which Kasowitz, in its complaint, stated it received $998,534.79, and for which there remains an outstanding balance in the amount of $2,304,630.54.

11. According to the Debtor's books and records, between August 5, 2011 and April 20, 2012, FILB made the following payments to Kasowitz (the "**Payments**"):

| Payment Date | Payment Amount |
|---|---|
| 8/5/11 | $125,000 |
| 12/20/11 | $84,789 |
| 12/30/11 | $300,000 |
| 4/9/12 | $60,000 |
| 4/20/12 | $405,606 |
| Total | $975,396 |

12. Each of the Payments was by wire transfer authorized by a combination of Giacomo Lafata, Stewart Turner, Denis Kiely or Jay Shows.

---

[1] It appears that Kasowitz also provided limited services to Fletcher and FAM related to the SEC's investigation into FAM.

-4-

13. The Debtor made all or substantially all of the Payments to satisfy invoices that detail services provided by Kasowitz to Fletcher and FAM related to the Dakota Litigation or, to a lesser extent, Fletcher's dispute with the Wall Street Journal over an article that it had published about FAM.

14. These invoices were not obligations of the Debtor, and the Debtor received no benefit for paying these invoices.

15. Upon information and belief, each of the Payments was made at the direction of Fletcher or FAM and with the knowledge that the invoices paid were for services that were provided to FAM and Fletcher and not to FILB.

16. Upon information and belief, all or substantially all of the fees Kasowitz received from Fletcher or FAM for services related to the Dakota Litigation actually were paid by the Debtor, not Fletcher or FAM.

17. Based upon the Trustee's investigation, the Trustee believes that the Debtor was insolvent at the time that each of the Payments was made to Kasowitz.

**First Claim for Relief**
**(Avoidance of Intentional Fraudulent Conveyances**
**Pursuant to 11 U.S.C. §§ 548(a)(1)(A)) and 550)**

18. Plaintiff realleges and incorporates each of the allegations in paragraphs 1 through 17 (other than any allegations alleging that the Debtor was insolvent) as though set forth in full.

19. Between August 5, 2011 and April 20, 2012, FILB paid Kasowitz $975,396 in five separate wire transfers.

20. The Debtor made all or substantially all of the Payments to satisfy invoices that detail services provided by Kasowitz to Fletcher and FAM related to the Dakota

-5-

Litigation or, to a lesser extent, Fletcher's dispute with the Wall Street Journal over an article that it had published about FAM.

21. Upon information and belief, the Payments were made by FILB at the direction of FAM or Fletcher.

22. These invoices were not obligations of the Debtor, and the Debtor received no benefit for making the Payments.

23. Fletcher and FAM directed FILB to pay these invoices with the actual intent of hindering, delaying, and defrauding FILB's creditors and investors.

24. Kasowitz is an initial transferee within the meaning of that term as used in Section 550(a)(1) of the Bankruptcy Code.

25. The Payments to Kasowitz are voidable pursuant to Section 548(a)(1)(A) of the Bankruptcy Code and may be recovered from Kasowitz pursuant to Section 550 of the Bankruptcy Code.

26. By reason of the foregoing, the Trustee is entitled to judgment against Kasowitz in an amount to be determined at trial, but no less than $975,396, plus pre-judgment interest.

**Second Claim for Relief**
**(Avoidance of Constructive Fraudulent Conveyances**
**Pursuant to 11 U.S.C. §§ 548 (a)(1)(B) and 550)**

27. Plaintiff realleges and incorporates each of the allegations in paragraphs 1 through 17 as though set forth in full.

28. Between August 5, 2011 and April 20, 2012, FILB paid Kasowitz $975,396 in five separate wire transfers.

29. The Payments were received by Kasowitz within two years of the filing of the Debtor's Chapter 11 petition.

30. The Debtor made all or substantially all of the Payments to satisfy invoices that detail services provided by Kasowitz to Fletcher and FAM related to the Dakota Litigation or, to a lesser extent, Fletcher's dispute with the Wall Street Journal over an article that it had published about FAM.

31. These invoices were not obligations of the Debtor, and the Debtor received no benefit for making the Payments.

32. The Debtor received less than reasonably equivalent value in exchange for the Payments.

33. The Debtor was insolvent at the time the Payments were made or became insolvent as a result of the Payments.

34. The Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

35. At the time the Debtor made the Payments, the Debtor had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

36. Kasowitz is an initial transferee within the meaning of that term as used in Section 550(a)(1) of the Bankruptcy Code.

37. The Payments to Kasowitz are voidable pursuant to Section 548(a)(1)(B) of the Bankruptcy Code and may be recovered from Kasowitz pursuant to Section 550 of the Bankruptcy Code.

38. By reason of the foregoing, the Debtor is entitled to judgment against Kasowitz in an amount to be determined at trial, but no less than $975,396, plus pre-judgment interest.

### Third Claim for Relief
### (Avoidance of Intentional Fraudulent Conveyances
### Pursuant to Section 276 of the New York Debtor & Creditor Law)

39. Plaintiff realleges and incorporates each of the allegations in paragraphs 1 through 17 (other than any allegations alleging that the Debtor was insolvent) as though set forth in full.

40. Between August 5, 2011 and April 20, 2012, FILB paid Kasowitz $975,396 in five separate wire transfers.

41. The Debtor made all or substantially all of the Payments to satisfy invoices that detail services provided by Kasowitz to Fletcher and FAM related to the Dakota Litigation or, to a lesser extent, Fletcher's dispute with the Wall Street Journal over an article that it had published about FAM.

42. Upon information and belief, the Payments were made by FILB at the direction of FAM or Fletcher.

43. These invoices were not obligations of the Debtor, and the Debtor received no benefit for making the Payments.

44. Fletcher and FAM directed FILB to pay these invoices with the actual intent of hindering, delaying, and defrauding FILB's creditors and investors.

45. The Payments are voidable pursuant to Section 276 of the New York Debtor & Creditor Law and may be recovered from Kasowitz.

46. By reason of the foregoing, the Trustee is entitled to judgment against Kasowitz in an amount to be determined at trial, but no less than $975,396, plus pre-judgment interest and costs and expenses, including reasonable attorneys' fees.

### Fifth Claim for Relief
### (Avoidance of Constructive Fraudulent Conveyances Pursuant to Sections 273, 274 and 275 of the New York Debtor & Creditor Law)

47. Plaintiff realleges and incorporates each of the allegations in paragraphs 1 through 17 as though set forth in full.

48. Between August 5, 2011 and April 20, 2012, FILB paid Kasowitz $975,396 in five separate wire transfers.

49. The Payments were received by Kasowitz within two years of the filing of the Debtor's Chapter 11 petition.

50. The Debtor made all or substantially all of the Payments to satisfy invoices that detail services provided by Kasowitz to Fletcher and FAM related to the Dakota Litigation or, to a lesser extent, Fletcher's dispute with the Wall Street Journal over an article that it had published about FAM.

51. These invoices were not obligations of the Debtor, and the Debtor received no benefit for making the Payments.

52. The Debtor received less than reasonably equivalent value in exchange for the Payments.

53. The Debtor was insolvent at the time the Payments were made or became insolvent as a result of the Payments.

54. The Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

55. At the time the Debtor made the Payments, the Debtor had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

56. The Payments are voidable pursuant to Sections 273, 274 and 275 of the New York Debtor & Creditor Law and may be recovered from Kasowitz.

57. By reason of the foregoing, the Debtor is entitled to judgment against Kasowitz in an amount to be determined at trial, but no less than $975,396, plus pre-judgment interest.

### Sixth Claim for Relief
### (Avoidance of Preferential Transfers Pursuant to 11 U.S.C. § 547(b))

58. Plaintiff realleges and incorporates each of the allegations in paragraphs 1 through 17 as though set forth in full.

59. On or about April 9, 2012 and April 20, 2012, the Debtor paid Kasowitz a total of $465,606 in two separate wire transfers.

60. These payments were made to or for the benefit of a creditor.

61. These payments were on account of an antecedent debt owed by the Debtor before such transfer was made.

62. The Debtor was insolvent on the date these payments were made.

63. The payments were made within 90 days of the date of the filing of the Debtor's Chapter 11 petition.

64. Kasowitz is an initial transferee as defined in Section 550(a)(1) of the Bankruptcy Code.

65. The payments to Kasowitz are voidable pursuant to Section 547(b) of the Bankruptcy Code and can be recovered from Kasowitz pursuant to Section 550 of the Bankruptcy Code.

66. By reason of the foregoing, the Trustee is entitled to judgment against Kasowitz in an amount to be determined at trial, but no less than $465,606, plus pre-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

(i) On its First Claim for Relief, judgment against Kasowitz in an amount to be determined at trial, but no less than $975,396, plus pre-judgment interest;

(ii) On his Second Claim for Relief, judgment against Kasowitz in an amount to be determined at trial, but no less than $975,396, plus pre-judgment interest;

(iii) On his Third Claim for Relief, judgment against Kasowitz in an amount to be determined at trial, but no less than $975,396, plus pre-judgment interest;

(iv) On his Fourth Claim for Relief, judgment against Kasowitz in an amount to be determined at trial, but no less than $975,396, plus pre-judgment interest, and costs and expenses, including reasonable attorneys' fees;

(v) On his Fifth Claim for Relief, judgment against Kasowitz in an amount to be determined at trial, but no less than $975,396, plus pre-judgment interest;

(vi) On his Sixth Claim for Relief, judgment against Kasowitz in an amount to be determined at trial, but no less than $465,606, plus pre-judgment interest; and

(vii) Such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 1, 2013

Respectfully submitted,

LUSKIN, STERN & EISLER LLP


By: /s/ Michael Luskin
    Michael Luskin
    Lucia T. Chapman
    Stephan E. Hornung

Eleven Times Square
New York, New York 10036
Telephone: (212) 597-8200
Facsimile: (212) 974-3205
luskin@lsellp.com
chapman@lsellp.com
hornung@lsellp.com

*Attorneys for Richard J. Davis, Chapter 11 Trustee of Fletcher International, Ltd.*