UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

In re: :

FLETCHER INTERNATIONAL, LTD.,

                     Debtor.

-------------------------------------------------------------X

Chapter 11

Case No. 12-12796 (REG)

### AFFIDAVIT OF ALPHONSE FLETCHER WITH RESPECT TO PRIVILEGE AND REQUESTS FOR PRODUCTION

I, Alphonse Fletcher, *pro se*, hereby declare that the following is true to the best of my knowledge, information and belief.

1.    I am not an attorney and am appearing on behalf of myself not on behalf of my affiliates, the Debtors in relating proceedings entitled *In re Soundview Elite Ltd et al.* and non-debtor, parties-in-interest Fletcher Asset Management and Fletcher International, Inc.

2.    The Trustee in this case, conducted a year-long investigation seeking claims that he could allege on behalf of his estate or others.  His counsel claims to have reviewed each and every one of approximately 500,000 documents belonging to Fletcher Asset Management. (See Exhibit A).  At the Trustee's request, the Court ordered our production, by November 27, of documents relating to valuation expert Duff & Phelps, our law firm of 21 years, Skadden Arps, and non-privileged e-mails from a collection held at the Trustee's e-vendor.

3.    On November 25, however, the Trustee suddenly filed his Report and Disclosure Statement which reached conclusions which Skadden and others had shown him to be false, contrary to undisputed, documented facts, and based on previously discredited allegations.

4.     Following is a summary of our actions taken regarding the Trustee's demands for additional discovery materials.  Without the benefit of counsel, we completed the review of the Duff & Phelps emails as best we could and approved release of non-privileged materials.  We were not permitted access to certain materials held at the Trustee's e-vendor and can review those only after we are granted access.  We concluded based on available facts presented below that the Trustee is not entitled to our privileged materials held by our attorneys.[1]

5.     Currently, Fletcher Asset Management, Inc., Fletcher International, Inc. ("The Fletcher Companies") and I are unable to retain counsel.  For more than a year, our banks, including Citco Bank, HSBC, United Community Banks, and JPMorgan Chase, have periodically refused to honor the valid instructions that we have sent them from properly authorized signatories.  Additionally, many of our non-cash assets are restricted in multi-jurisdictional proceedings the results of which are unpredictable.  We intend to address the issues with the banks soon and immediately thereafter intend to retain counsel.

6.     In response to this Court's "Order with Respect to Requests for Production of Documents," entered on November 23, 2013, I have sought to both comply with the discovery demands for non-privileged materials and explain why sanctions, especially waiver of privilege, are unnecessary in light of the substantial amount of materials made available to the Trustee[2] and the fact that the Trustee apparently has had access to materials sufficient to permit the filing of his Report of 279 pages containing 570 footnotes.

_____

[1] We also noted the overlap between the materials sought by the Trustee and the privileged and confidential materials inadvertently produced to defendants in a New York Supreme Court litigation (*Fletcher v Dakota*) in the fist quarter of 2013 and not yet returned despite the clawback provision in that case's confidentiality order.

[2] In addition to the materials collected from Fletcher Asset Management, the Trustee appears to have had access to substantial amounts of discovery material provided by Fletcher Asset Management to other parties in other matters.

7.    This submission addresses: a) Facts Appearing Relevant to Imposition of Extraordinary Remedies, b) Delay of the Limited Remaining Privilege Review, c) Existing Production Consisting of 500,000 Documents, d) Existing Production Sufficed for a 279-Page, 570-Footnote Report

**Material Facts Relevant for Imposition of Extraordinary Remedies**

8.    A sovereign nation disregarded a US court order in *FG Hemisphere Associates LLC v Republique du Congo*, a case identified by Trustee's Counsel.  As I understand, in this matter the court appears to have imposed the extraordinary remedy of waiver of privilege on the sovereign nation of Congo on March 15, 2005, apparently after 18 months of intentional disregard by Congo of a September 19, 2003 US court order regarding discovery concerns over records in foreign locations and failure to provide a discovery log which called into question whether "all potential information locations ... were searched."

9.    In our matter, the facts are as follows.  I am a citizen of the United States.  Fletcher Asset Management, Inc. and Fletcher International, Inc. are private companies incorporated in the United States, controlled by me not a sovereign, domiciled in the US, with records maintained at 48 Wall Street, New York NY, United States of America not in undisclosed locations in foreign countries.  A copy of a substantial portion of The Fletcher Companies' relevant records, including privileged and confidential materials, are already in possession of the Trustee and his advisors as the result of Debtor's counsel's actions.  Trustee's Counsel has stated that its team has reviewed "each and every" one of the almost 500,000 documents.[3]   The Fletcher Companies operate under the jurisdiction of the United States

---

[3] Stephen Hornung, Hearing on October 2, 2013 regarding Fletcher Motion to Enjoin Trustee "Each and every document was, in fact,  reviewed for privilege, regardless of whether or not it had an attorney's name on it or whether it was sent to an attorney."

not a foreign jurisdiction where the rule of law may have unpredictable results or results inconsistent with US principals of due process. The Fletcher Companies and I strive to honor all US laws, rules, and court orders, including the "automatic stay,[4]" to the best of our abilities. Despite the trying current circumstances, we continue to make every effort to comply with our obligations as evidenced by our most recent review and production of almost 10,000 emails relating to services provider Duff & Phelps LLC. Also, we continue working to free our cash and assets and to retain counsel to assist us in our compliance.

10. "Without citing to any authority, [attorney] simply contended in its opposition papers that it 'had no obligation to provide ... a privilege log" observed the court in another case the Trustee's Counsel cited, *OneBeacon Insurance Co. v. Forman International*.

11. I am not aware of any claim by The Fletcher Companies or our former counsel or by me that we have no obligation to provide a privilege log or other have any right to operate outside of the clear authority that governs our rights, privileges, immunities, and duties. A substantial amount of files have been reviewed and produced, privilege logs have been produced, and significant costs have been incurred despite our limited access to resources. In fact, the Trustee's counsel has reported that my former counsel reviewed, produced as appropriate, and logged where privileged approximately 75,000 documents identified by the Trustee as possibly privileged.[5]

---

[4] Recent statements by the Trustee and Trustee's counsel alleging that I sought to retroactively move assets of the Debtor, shares of FIP Ltd., were proven false in depositions and documents after an unnecessary emergency motion by the Trustee seeking discovery that the parties were willing and eager to provide.

[5] The Trustee's Counsel has stated his objection to the form of the privilege log provided by my counsel. I have stated objections to Young and Conaway's seizure of the Fletcher Disk which was intended for an e-discovery vendor and to the Trustee's claim of an agreement with me regarding the protocol that he in fact unilaterally imposed for "protecting" my privileges ("Privilege Protection Protocol"). See Exibit A.

12.    The Trustee cites *Bass Public Ltd. Co. v. Promus Companies Inc* in which the Court recognized "joint privilege" between two large corporations engaged in collaborative corporate strategic transactions and prevented either party from invoking privilege against the other.  In footnote four of that opinion, the Court contrasted the facts of that case with those of a precedent that Promus sought unsuccessfully to invoke, *Trinity Ambulance Serv., Inc. v. G & L Ambulance Servs., Inc. 578 F.Supp.* explaining hat *Trinity* was not a merger of large corporations in a "voluntary transaction," but a "realignment of the parties midway through a litigation proceeding" which "required that certain information divulged to an attorney remain confidential after the realignment."  Id at 1285.

13.    Fletcher Asset Management, operating under increasing retaliation since circa 2008, has anticipated litigation and worked closely with its long-time counsel Skadden and with some affiliates in an effort comply with all law, rules, and contracts and to minimize litigation risk.  In the event a privilege appears to be a joint privilege, the "realignment" of our relationships with certain affiliates that transpired in 2012 and 2013, caused us to invoke privilege after concluding that protecting due process required that our information divulged to our attorneys must remain confidential and not become available for use by adversaries.  We are a small organization of a approximately a dozen people working hard to rehabilitate a set of affiliated companies that have endured an unfortunate series of adverse events over the past several years.  This work including the preservation and realization of asset values has been made more difficult by the actions, which may not have

been ill-intentioned or voluntary, of certain of our former attorneys and by certain parties

that have obtained access to privileged and confidential information.[6]

### Approximately 500,000 Documents

14.    According to Trustee's counsel, the Trustee has reviewed approximately 500,000

emails and other documents contained on a Fletcher Asset Management, Inc. disk (the

"Fletcher Disk") that was intended for an e-discovery vendor but which was taken instead

by Debtor's Counsel, Young Conaway.   The Fletcher Disk contained years of records and

documents, many of which are subject various privileges and protections including

attorney-client communications, attorney work product, trade secrets, confidential personal

information, and other information not relevant to duties of a Trustee for the estate.

15.    The Trustee also has requested documents from Duff & Phelps LLC whom the

Trustee describes as having "provided valuation services to Fletcher and the Funds."  Duff

& Phelps was retained at the suggestion of the funds' auditors to add yet another level of

confirmation to the funds' valuation process.  Separately, Duff & Phelps was also retained

in support of Skadden's work with a particular matter considered privileged and

confidential.  In response to a subpoena from the Trustee, Duff & Phelps collected

documents and made them available for our review of privilege issues. When our counsel

_____

[6] See, for example, the July 22, 2011 Confidentiality Agreement between Fletcher Asset Management on behalf of itself and its affiliates and the Louisiana Officials on behalf of three Louisiana pension funds (Exhibit B) which facilitated the 2011 confidential Ernst & Young report that "corroborated" valuations. (Exhibit C).  See also, my *pro se* failed attempt to remove the lawsuit filed by my former counsel Kasowitz Benson against me (Exhibit D).  Other examples include, the Trustee's early decision to waive "all privileges" of the Debtor despite ongoing litigation with the Ernst & Young Joint Official Liquidators and Ion Geophysical and pending litigation with Credit Suisse and News Corporation.  Another is the Trustee's "Release and Waiver" granted, at the request of the Ernst & Young Joint Official Liquidators, in favor of United Community Banks and a wide list of associates in exchange for virtually or actually no consideration to the estate.  At the time it received the Release and Waiver, the Bank, whose securities were a dominant portion of the Debtor's portfolio in 2011 and 2012 and whose conduct had a material impact on the Debtor, had a) breached its Security Purchase Agreement with Fletcher International, Ltd., b) breached its Asset Purchase Agreement with Fletcher International, Inc., and c)disregarded the Trustee's demand that the Bank honor the automatic stay with regard to assets related to an affiliate of the Debtor.

withdrew, the task fell to me perform the privilege review and to construct a privilege log. The substantial amount of work in a compressed time frame was finally completed during the Thanksgiving holiday. Thousands of documents were identified as non-privileged, approved for release, and returned to Duff & Phelps.

16.    The Trustee filed his Report on November 25 when, the prior week, this Court had scheduled the delivery of discovery relating to valuation agent Duff & Phelps for November 27. The conclusions of the Report are largely dependent on the Report's fundamental assertion that valuations were incorrect. The Duff & Phelps analysis was sought when Eisner became auditor to create yet another level of independent corroboration of the valuations.[7]   Eisner required such steps. The importance of the Duff & Phelps discovery was of sufficient importance that the Trustee sought a conference call with the Court and suggested the extraordinary remedy of a court order waiving all privileges if the remaining discovery, including the Duff & Phelps materials were not delivered immediately.

17.    The Trustee also sought documents relating to Skadden Arps which he describes as Fletcher Asset Management's "main outside counsel." Skadden Arps had served as my primary law firm from 1991, the year I founded Fletcher Asset Management, until October 2012 when Skadden suddenly terminated its representation of me after speaking with then-newly appointed Chapter 11 Trustee, Richard J. Davis. Other law firms also resigned in October 2012, including Kasowitz Benson, offering no reasons or questionable reasons.

18.    Prior to releasing his report, the Trustee met with Skadden several times to discuss his tentative conclusions. Those conclusions closely resembled the discredited allegations

---

[7] Valuations were derived or reviewed to some extent, at varying levels of frequency and intensity, by 1) The Fletcher Companies, 2) RF Services LLC, 3) Quantal International, Inc. 4) Fund directors, 5) Fund Auditor, 6) Fund Auditor's Valuation Expert, 7) Fund Administrator, 8) Duff & Phelps, LLC, 9) Investors.

which continue to be made by certain well "connected" adversaries of the estate.[8]    Skadden concluded that release of a report with such provocative allegations, even though the allegations should be thoroughly discredited over time, would cause significant unnecessary harm to all involved and should be avoided.  I found Skadden's view especially compelling given the substantial cost inflicted on the Debtor and its affiliates over the past few years as a result of the funds' adversaries' "Public Strategy" and other tactics (see Exhibit E). Skadden emphasized the importance of providing the Trustee with the substantial evidence in advance of the Report being filed so that the false allegations could not be filed in good faith.  Indications (See Exhibit F) that the Report would make public discovery materials that were confidential or privileged was also concerning. (See Exhibit G).

19.    Skadden informed me that a law firm has the right to waive its client's privilege without the client's consent in order to defend the firm.  Nevertheless, Skadden requested my consent to an arrangement in which Skadden would review the comprehensive record with the Trustee without limitation with disregard for privilege and the Trustee would agree not to claim that privilege was waived.  I consented and Skadden presented its analysis. The Trustee proceeded with his report and included the unfounded  allegations.  With respect to Skadden, the final Report simply states that the Trustee "has not at this time concluded that claims exist against Skadden" but is "continuing his review of this issue..."

**Delay of the Relatively Limited Remaining Privilege Review Can Be Solved**

20.    My understanding is that my former counsel and the Trustee agree that, apart from the objections discussed herein, the remaining production involves the privilege review of

---

[8] See Section III beginning on page 19 of the "DIRECT TESTIMONY AFFIDAVIT OF ALPHONSE FLETCHER, JR. ON MOTIONS TO DISMISS, CONVERT, OR APPOINT A TRUSTEE" discussing the illegal retaliation by the "Dakota Parties."

approximately 25,000 emails selected by the Trustee from the Fletcher Disk. The Trustee has stated that the documents are available at the Trustee's e-discovery vendor ("Vendor"). My former counsel previously informed me that the Vendor had received partial but not full payment for the previous review of approximately 75,000 documents that we completed earlier this year. Later, when the Trustee identified an additional 25,000 documents through his Privilege Protection Protocol my counsel reached a reasonable agreement with the Vendor to gain access for a reasonable interim fee, however, the Vendor later announced that it would provide access only after full payment.

21.   I suggested that the issue could be resolved if the Trustee provided me with a disk containing the documents in pdf form. Another e-discovery vendor has been able to provide substantial quantities of documents in this form quickly and at modest cost. The Trustee informed me that the cost would not be modest and the process would require substantial time. As discussed herein, currently The Fletcher Companies and I are unable to meet the Vendor's demands and thus cannot access and complete review of the documents.

**Current Production Was Sufficient for a Report of 279 Pages and 570 Footnotes**

22.   On November 25, the Trustee filed a 279-page "report and disclosure" document containing 579 footnotes. Soundview Debtors' counsel reported: "In a call by Debtors' counsel to Trustee's counsel on November 27, 2013, Trustee's counsel advised that he could not provide Debtors' counsel with the materials supporting the 579 footnotes which accompany the report, for two reasons: (i) because they are not separately organized in that order, and (ii) because "most of the stuff came from Fletcher anyway."[9]

---

[9] Second page of "DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO APPOINT A TRUSTEE; OR IN THE ALTERNATIVE, CONVERT OR DISMISS THESE CHAPTER 11 CASES"

23.   On December 3, the Trustee submitted a motion seeking an order "requiring that all objections (the "Objections") to the Disclosure Statement or to the Motion to Approve be filed and served on the Trustee and all other parties entitled to receive notice so as to be received by no later than January 3, 2014 at 4:00 p.m. (EST), (ii) requiring that the Trustee file and serve responses (if any) to the Objections so as to be received by no later than January 13, 2014 at 12:00 noon (EST)."  It appears that the Trustee is confident that sufficient information is contained in the Report to allow parties-in-interest to reach an informed opinions on the material issues described over the course of the 297 pages in that report in this case.

24.   I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of November 2013
at San Francisco, California.

_____
Alphonse Fletcher, Jr.

Fletcher Asset Management, Inc.
48 Wall Street
New York, New York, 10005
Telephone:     (212) 284-4808
Facsimile:     (212) 28404801
AFletcher@Fletcher.com

23.    On December 3, the Trustee submitted a motion seeking an order "requiring that all objections (the "Objections") to the Disclosure Statement or to the Motion to Approve be filed and served on the Trustee and all other parties entitled to receive notice so as to be received by no later than January 3, 2014 at 4:00 p.m. (EST), (ii) requiring that the Trustee file and serve responses (if any) to the Objections so as to be received by no later than January 13, 2014 at 12:00 noon (EST)." It appears that the Trustee is confident that sufficient information is contained in the Report to allow parties-in-interest to reach an informed opinions on the material issues described over the course of the 297 pages in that report in this case.

24.    I hereby declare under penalty of perjury that the foregoing is true and correct.


Executed this 5th day of December 2013

~~Executed this 27th day of November 2013~~

at San Francisco, California.




Alphonse Fletcher, Jr.

Fletcher Asset Management, Inc.
48 Wall Street
New York, New York, 10005
Telephone:     (212) 284-4808
Facsimile:     (212) 28404801
AFletcher@Fletcher.com

10

## CALIFORNIA JURAT WITH AFFIANT STATEMENT

GOVERNMENT CODE § 8202

☑ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], *not* Notary)

_____ _____
Signature of Document Signer No. 1                      Signature of Document Signer No. 2 (if any)

State of California

County of _San Francisco_

Subscribed and sworn to (or affirmed) before me

on this _5_ day of _December_, 20 _13_,
         Date            Month                Year

by

(1) _Alphonse Fletcher_ ,
                    Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (,)

(and

(2)_____ ,
                    Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

**WILL J. REEVES JR.**
Commission # 1967238
Notary Public - California
San Francisco County
My Comm. Expires Jan 22, 2016

Place Notary Seal Above

Signature _____
                      Signature of Notary Public

—————————— **OPTIONAL** ——————————

*Though the information below is not required by law, it may prove valuable
to persons relying on the document and could prevent fraudulent removal
and reattachment of this form to another document.*

**RIGHT THUMBPRINT OF SIGNER #1**
Top of thumb here

**RIGHT THUMBPRINT OF SIGNER #2**
Top of thumb here

**Further Description of Any Attached Document**

Title or Type of Document: _Affidavit_

Document Date: _12/5/13_        Number of Pages: _10_

Signer(s) Other Than Named Above: _____

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)          Item #5910

# Exhibits

A. Revised Privilege Review Protocol, January 18, 2013

B. Confidentiality Agreement between Louisiana Officials and Fletcher Asset Management, Inc.

C. Ernst & Young 2011 Report to Louisiana Officials

D. Notice of Removal by Alphonse Fletcher of *Kasowitz v Fletcher*, *October 28, 2013 (subsequently remanded)*

E. "Public Strategy in High Stakes Litigation" from Quinn Emanuel Website

F. Luskin Letter of November 8, 2013

G. Fletcher E-Mail of November 18, 2013

# Exhibit A

From: Michael Luskin <luskin@lsellp.com>
Subject: Fletcher
Date: January 18, 2013 8 50:24 AM PST
To: "Marcus, Christopher" <cmarcus@kirkland.com>, "Basta, Paul M" <pbasta@kirkland.com>
Cc: "rstark@brownrudnick.com" <rstark@brownrudnick.com>, Richard Davis <Richard.Davis@rjdavislaw.com>, Stephan Hornung
<hornung@lsellp.com>

Please see the revised privilege review protocol that follows.  I'm copying Brown Rudnick because it's still counsel of record in the bankruptcy and I'm copying Nixon Peabody because they worked on the original protocol.

Please pass this on to Mr. Fletcher.

### Revised Privilege Review Protocol

In November, the Trustee and Mr. Fletcher agreed to a methodology for searching emails that had been collected by FILB's previous counsel from FAM servers.  Pursuant to the terms of that agreement, Mr. Fletcher agreed to  provide us with a list of domain names for law firms that performed work for FAM and its affiliates in order to isolate potentially privileged documents.  No list has been forthcoming.  Indeed, as recently as January 2, 2013, Mr. Fletcher acknowledged that he had not yet provided a list of terms.  At this point, we can no longer wait for Mr. Fletcher to provide search terms.  Accordingly, we are notifying you that we are adopting the following review protocol:

1.  We have run the agreed-upon search terms on the collected emails.  In accordance with our previous agreement, we will notify you in the event that we seek to run additional search terms and provide you short time period to object.

2.  To isolate potentially privilege emails, our litigation support vendor will collect and segregate emails where the following domain names appear in the "To," "From," or "cc" field.
    a.  Skadden – "@Skadden.com"
    b.  Kasowitz – "@Kasowitz.com"
    c.  Irell & Manella – "@irell.com"
    d.  Teigland Hunt – "@t-hllp.com" and "@teigland.com"
    e.  Shahmoon & Ellisen – "@sandelaw.com"
    f.  Proskauer – "@proskauer.com"
    g.  Paul Weiss – "@paulweiss.com"
    h.  Walkers Global – "@walkersglobal.com"
    i.  Patterson Belknap – "@pbwt.com"

3.  With respect to emails to and from Denis Kiely and Moez Kaba, emails that were sent to or from Mssrs. Kiely and Kaba while they were  employees of Duhallow Financial Services and/or any Fletcher Related Entity will be reviewed substantively.  Emails that were sent to or from Mssrs. Kiely and Kaba after they left Duhallow and/or Fletcher will be collected  and reviewed in accordance with the procedures outlined below.

4.  We will employ contract attorneys to conduct a first pass review of these documents to determine if there is an arguable privilege and categorize them in one of three ways:

    a.  Not Privileged – Emails that are distributed in such a manner that destroys any arguable privilege -- for example, emails that are to or from opposing counsel.  These documents will be released and substantively reviewed by the Trustee.

    b.  FILB Transaction – Emails related to a transaction where FILB was a party.  These documents will be released and substantively reviewed by the Trustee and his team.

    c.  Potentially Privileged  – Emails that might be potentially privileged.  We will segregate these documents and provide them to you to be reviewed for privilege.  You will be given two weeks to review these documents and log any documents that you believe are protected from discovery by the attorney client or other applicable privileges.  The Trustee reserves the right to challenge any documents claimed to be privileged.  Unless otherwise agreed to by the Trustee or ordered by the court, at the end of those two weeks, we will assume that all documents not logged can be reviewed by the Trustee.  These documents will be released and substantively reviewed by the Trustee and his team.

We intend to proceed with the revised protocol on Tuesday, January 22, 2013.

Michael Luskin
Luskin, Stern & Eisler LLP
Eleven Times Square
New York, NY 10036

Direct: 212-597-8220
Main:  212-597-8200
Fax:  212-974-3205

luskin@lsellp.com
www.lsellp.com

**Exhibit B**

FLETCHER ASSET MANAGEMENT, INC.

July 22, 2011

Firefighters' Retirement System of Louisiana
Municipal Employees' Retirement System of Louisiana
New Orleans Firefighters' Pension and Relief Fund
3100 Brentwood Drive
Baton Rouge, LA 70809
Attn: Steven S. Stockstill, FRS Executive Director/General Counsel

Re: <u>Confidentiality Agreement</u>

Dear Mr. Stockstill:

This letter agreement is confirmed and agreed to in connection with the review on behalf of Firefighters' Retirement System of Louisiana, Municipal Employees' Retirement System of Louisiana, and New Orleans Firefighters' Pension and Relief Fund (each a "<u>Pension Plan</u>" and, collectively with their affiliates, the "<u>Pension Plans</u>") of certain information relating to the Pension Plans' investment in Series N of FIA Leveraged Fund.

Fletcher Asset Management, Inc. and its affiliates (collectively, "<u>FAM</u>"), have furnished or may from time to time furnish to the Pension Plans and their representatives certain information that is non-public, confidential or proprietary in nature (the "<u>Confidential Information</u>"). Such Confidential Information will include, but will not be limited to, all information requested to be reviewed as set forth in the letter from the Pension Plans on July 18, 2011.

In consideration of being furnished with the Confidential Information, the Pension Plans agree as follows:

1. The Pension Plans represent and confirm that the undersigned, Steven S. Stockstill, Executive Director and General Counsel for Firefighters' Retirement System of Louisiana, has been formally retained as counsel by Firefighters' Retirement System of Louisiana, Municipal Employees' Retirement System of Louisiana and New Orleans Firefighters' Pension and Relief Fund and has been duly authorized and has full authority to execute and deliver this letter agreement on behalf of the Pension Plans.

2. All Confidential Information and any information or report resulting from the on-site review shall be transmitted or conveyed by the agents or accountants of Mr. Stockstill and the Pension Plans directly to Mr. Stockstill, in his capacity as attorney for the Pension Plans, for the purpose of facilitating Mr. Stockstill's ability to render legal advice to the Board of Directors of each Pension Plan in order to facilitate the future decisions of the

48 WALL STREET
FIFTH FLOOR
NEW YORK, NY 10005-2911
TELEPHONE (212) 284-4800  FACSIMILE (212) 284-4801
WWW.FLETCHER.COM

Pension Plans, including with respect to potential, anticipated litigation. Any work papers or records of the Pension Plans resulting from the on-site review will not include the specific name, symbol, or identifier of any security or instrument disclosed in the Confidential Information.

3. Except as otherwise provided in this letter agreement, the Confidential Information will not, without the prior written consent of FAM, be disclosed in whole or in part by the Pension Plans or any representative or affiliate of the Pension Plans, to any person, including without limitation, the Dakota co-op board, Quinn Emanuel Urquhart & Sullivan, LLP, or any other representative of record for the Dakota co-op board in the litigation titled Alphonse Fletcher, Jr. and Fletcher Asset Management, Inc. v. The Dakota Inc., et. al., filed in the Supreme Court of the State of New York, or to any director, officer, member, partner, associate, employee or any other affiliate or person related to such entities (each a "Dakota Party" and, collectively, the "Dakota Parties"). The Confidential Information provided during the on-site review will not be copied, photographed, or otherwise duplicated or removed from FAM's New York City offices, in whole or in part, except to the extent that such Confidential Information is referenced in the report by Mr. Stockstill to the Board of Directors of each Pension Fund.

4. The Pension Plans represent that neither they nor anyone acting on their behalf has had any discussions with any Dakota Party that relate to FAM, the Investment, the litigation titled Alphonse Fletcher, Jr. and Fletcher Asset Management, Inc. v. The Dakota Inc., et. al., filed in the Supreme Court of the State of New York, or any other matter that relates to FAM or Alphonse Fletcher, Jr.

5. This letter agreement shall be governed and construed in accordance with the laws of the State of New York, without regard to its conflicts of laws principles.

Very truly yours,

FLETCHER ASSET MANAGEMENT, INC.

By: _Stewart Turner_____
    Name: STEWART TURNER
    Title: AUTHORIZED SIGNATORY

Confirmed and Agreed to as of
the date first written above:

Firefighters' Retirement System of Louisiana
Municipal Employees' Retirement System of Louisiana
New Orleans Firefighters' Pension and Relief Fund

By: _Steven Stockstill_____
    Name:  Steven S. Stockstill
    Title:    FRS Executive Director/General Counsel
              Authorized Representative

15

# Exhibit D

JS 44 (Rev. 12/12) cand rev (1/15/13)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| KASOWZ BENSON ORRES & FREDMAN LLP | Alphonse Flecher Jr and Flecher Asse Managemen nc |

| (b) County of Residence of First Listed Plaintiff  New York Coun y NY | County of Residence of First Listed Defendant   San Francisco CA |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name Address and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| KASOWZ BENSON ORRES & FREDMAN LLP 1633 Broadway New York NY 10019 (212) 506-1700 | PRO SE (Alphonse Flecher Jr ) |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government  Plaintiff
- ☒ 3  Federal Question  *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government  Defendant
- ☐ 4  Diversity  *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran s Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☐ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U S C  Sec ion 1332  1441  1446
Brief description of cause:
Removal of Con rac Dispu e involving Ques ions of Cons i u ional and Federal Law ncluding 42USC1981

**VII. REQUESTED IN COMPLAINT:**

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: ○ Yes ○ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*

| JUDGE | DOCKET NUMBER |
|---|---|

| DATE Oc ober 28 2013 | SIGNATURE OF ATTORNEY OF RECORD PRO SE Defendant Alphonse Fletcher Jr |
|---|---|

*(Place an "X" in One Box Only)*  ☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE   ☐ EUREKA

Alphonse Fletcher, Jr.
188 Minna Street
San Francisco, CA 94105
(212)284-4808
Alphonse.Fletcher@Fletcher.com
*PRO SE* Defendant Alphonse Fletcher, Jr.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP, ) | |
| Plaintiff, ) | CASE NO. _____ |
| ) | |
| vs. ) | [formerly Supreme Court of The State of New York County of New York Case No. 158590/2013] |
| ) | |
| ALPHONSE FLETCHER, JR. and ) FLETCHER ASSET MANAGEMENT, INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

### NOTICE OF REMOVAL

Defendant Alphonse Fletcher, Jr. ("Fletcher") hereby removes Case No. 158590/2013

from the Supreme Court of The State of New York, County of New York, to the United States

District Court for the Northern District of California pursuant, to 28 U.S.C. Section 1332, 1441,

and 1446, and as grounds for its removal states as follows:

### STATEMENT OF THE CASE

1.    On September 19, 2013 Plaintiffs KASOWITZ, BENSON, TORRES &  FRIEDMAN,

LLP, ("Kasowitz") filed a Complaint in the Supreme Court of The State of New York,

County of New York, styled KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP,

NOTICE OF REMOVAL

vs. ALPHONSE FLETCHER, JR. and FLETCHER ASSET MANAGEMENT, INC.,

Case No. 158590/2013 against Fletcher Asset Management, Inc. ("Management") and

Fletcher (the "State Court Action").  A copy of the Complaint is attached as **Exhibit A**

hereto.

2.    Kasowitz represented Fletcher International, Ltd. ("International") and its affiliates

Management and Fletcher in matters related to the unlawful retaliation that led to and

continues during the litigation styled as *"Alphonse Fletcher, Jr. and Fletcher Asset*

*Management, Inc. v The Dakota Inc., Bruce Barnes, and Peter Nitze"* filed by

Management and Fletcher in The Supreme Court of The State of New York ("Fletcher v

Dakota").

3.    In 2010, certain shareholders controlling the board of Manhattan's Dakota cooperative

apartment building ("Dakota Parties") promised to use the substantial influence of

Dakota shareholders to destroy Fletcher's funds, his business, and his family.  Similar

threats had been made and acted upon by the Dakota Parties since 2007 when Fletcher

began to have success in his opposition to the unlawful practices of the Dakota Parties.

4.    Management and Fletcher filed "Fletcher v Dakota" in February, 2011 response to

escalating threats, breaches of fiduciary duty, tortious interference, defamation,

discriminatory conduct, and other retaliation by the Dakota Parties.

5.    The Dakota Defendants' including the individual defendants, each of whom is a former

board president, filed a motion to dismiss the case which was denied by the trial court in

2011.  The Dakota Defendants' appeal of that decision was also denied by the Appellate

NOTICE OF REMOVAL
2

Division in 2012.  Coop directors no longer are immune from the consequences of their responsibility for any tortious acts.

6.     Now, almost three years following the filing of the suit, The Dakota has produced fewer than 25,000 pages of discovery.  Management and Fletcher have produced more than 300,000 pages including inadvertent productions which the Dakota Defendants have refused to return.  Further, Fletcher has been informed that the Dakota Defendants' counsel have violated the Court's confidentiality order.

7.     Further, the Dakota Parties conduct has chilled the participation of witnesses that had previously volunteered to testify, interfered with Management's contracts relating to colleagues, service providers, access to assets, and investment contracts, abused process with respect to state, foreign, and federal courts, and repeatedly made false allegations to various government agencies and officials.

8.     In July, 2011, in an effort to confront the interference by the Dakota Parties, their agents, and their allies, International, Management, and Fletcher added Kasowitz to their legal team.  Kasowitz entered into three separate retention contracts and received three separate retainers from the three clients.  Kasowitz would lead the legal team.

9.     Managing Partner Marc Kasowitz promised he would rely upon his strong relationships with a Prominent Law Firm and an International Media Company to try to persuade each of them to terminate their participation in any wrongdoing particularly any unlawful interference with International and its affiliates.  On information and belief, Kasowitz derives substantial revenue from the two relationships and its work with each involves,

NOTICE OF REMOVAL
3

directly or indirectly, significant issues relating to federal anti-discrimination and anti-retaliation law.

10.    After several weeks, it became clear that Kasowitz and its co-counsel were not providing the representation for which International, Management, and Fletcher contracted. Fletcher's multiple requests for assistance were met with explanations of how the law did not offer any opportunities to petition the court regarding the ongoing interference.

11.    The two Kasowitz partners representing Fletcher quickly moved to a new much bigger case into which Kasowitz was invited by the Prominent Law Firm.  At least three other partners and various teams of associates replaced the original two partners.  Issues arose regarding conflicts, staffing, privilege, costs, strategy and other problems.

12.    In October, 2012, Kasowitz suddenly withdraw from the case, refused to deliver documents to replacement counsel, and took other actions its former clients considered harmful.

13.    In September 2013, Kasowitz brought the State Court Action against its former clients.

14.    The State Court Action purports to assert three causes of action: (a) Breach of Contract, (b) Quantum Meruit, (c) Account Stated. Each of Plaintiff's claims is based on its contention that Fletcher and Management breached contracts with Plaintiff and must pay Plaintiff certain legal fees for services it purports to have provided.

15.    The Plaintiff seeks the sum of $2,304,630.54.

**FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. SECTION 1331**

16.    This Court has proper jurisdiction over this matter under 28 U.S.C. Section 1331 because Plaintiff's conduct, particularly its conduct as Defendants' counsel in civil rights

NOTICE OF REMOVAL
4

cases, presents important federal questions.  With questions involving the interpretation

of, among other statutes, 42 U.S.C. Section 1981, Section 1985, and Section 3617, "it

may be assumed that federal judges will have more experience."  Yellow Freight System,

Inc. v. Donnelly, 494 U.S. 820, 826, 110 S.Ct. 1566.  Plaintiff's entitlement to the

substantial fees it claims depends on, among other factors, whether Plaintiff provided

adequate legal representation.  One determinant of the adequacy of the representation is

the correctness of Plaintiff's advice that no opportunity existed, including under federal

law and the U.S. Constitution, to petition the court for relief from the Dakota Parties'

documented ongoing retaliation in multiple jurisdictions.  Resolution of this and other

important questions of law requires the parties to "resort to the experience, solicitude,

and hope of uniformity that a federal forum offers." Singh v. Duane Morris, Case No.

07-20321 (5th Cir., July 30, 2008) (Smith, J.).  Federal court is a particularly appropriate

forum given the challenge this Complaint creates to the principles that "private citizens

are to be able to assert their civil rights" and "those who violate the Nation's

fundamental laws are not to proceed with impunity." S.Rep. No. 94-1011, at 2 (1976),

reprinted in 1976 U.S.C.C.A.N. 5908, 5910

17.    Plaintiff's Breach of Contract claim presents federal questions regarding Plaintiff's

obligations to honor its contractual obligations to Defendants under 42 U.S.C. Section

1981.  Plaintiff's "relationships" or other influences may have affected its conduct to an

extent sufficient to deprive Defendants of their rights to the enjoyment of all benefits,

privileges, terms, and conditions of their contracts with Plaintiff.


NOTICE OF REMOVAL
5

18.     With respect to Plaintiff's conduct during and after its representation of Defendants, this

Court reasonably might find that Plaintiff exercised provisions of the agreements in a

contractually correct manner but to achieve an unlawful objective.  Such conduct could

be violative of 42 U.S.C. Section 1981 to the extent it deprived Defendants of their

rights to sue, be parties, give evidence, and to the full and equal benefit of all laws and

proceedings for the security of persons and property.

19.     Plaintiff's conduct may be interpreted by this Court to suggest Plaintiff's intention to

coerce, intimidate, threaten, or interfere with Defendants and their affiliates in their

exercise and enjoyment of, on account of their having exercised and enjoyed, and on

account of their having aided and encouraged other persons in the exercise and

enjoyment of rights granted and protected by The Constitution and federal housing law

in violation of 42 U.S.C. Section 3617.

20.     Certain coordination observed between Plaintiff and other parties in relation to federal

courts or officials, for example, the purported acrimonious communications with the

Fletcher International, Ltd. Chapter 11 Trustee which Plaintiff claimed peaked a few

weeks prior to Plaintiff's filing the State Court Action, could possibly affect how an

official such as the Trustee discharges his duties.  This Court might interpret the details

of such coordination and interactions in certain circumstances as hindering or

obstructing an official's discharge of her duties in violation of 42 U.S.C. Section

1985(1).

21.     Plaintiff's current State Court Action against Defendants and concurrent related actions

by other parties might be interpreted under 42 U.S.C. Section 1985(2) as efforts to deter

NOTICE OF REMOVAL
6

by intimidation or threat Defendants from attending important upcoming federal court

proceedings in the Southern District of New York and testifying freely, fully, and

truthfully to matters involving their affiliate International.

22.    Plaintiff's failure, despite Bar ethics and canons, to make a zealous effort resolve issues

with its client relating to advocacy, conflicts, staffing, privileges, costs, strategy, and the

clients' rights to petition the Courts might be interpreted as unlawful under 42 U.S.C.

Section 1985(2) especially in the context of the coordination between Plaintiff's with

other certain other parties.  Plaintiff's conduct might appear to have been done for the

purpose of impeding, hindering, obstructing, or defeating the course of justice in The

Supreme Court in the State of New York with intent to deny Defendants the equal

protection of the laws, or to injure them or their property for lawfully enforcing, or

attempting to enforce, their rights and the rights of other people and classes of people, to

the equal protection of the laws.

23.    Plaintiff's actions and failure to take actions have facilitated the purported "privileged"

actions undertaken by the Dakota Parties pursuant to their counsel's "Public Strategy"

described on their website.[1]  If shown to be for the purpose of depriving, directly and

indirectly, Defendants of the equal protection of the laws and of equal privileges and

immunities under the laws, such actions and failure to take actions might be interpreted

as violations of 42 U.S.C. Section 1985(3).

24.    Another reason why this Court has proper jurisdiction is that the controversy does not

involve a res over which another court has assumed jurisdiction.  Additionally, the

_____

[1] http://www.quinnemanuel.com/practice-areas/public-strategy-in-high-profile-litigation.aspx

NOTICE OF REMOVAL
7

federal district court in the Northern District of California would serve as a forum and

venue convenient to Kasowitz's San Francisco office with which Fletcher's family has

worked and to Fletcher's primary residence.  Further, if Fletcher files counter-claims,

they are likely to be filed in this Court thus this Court's exercise of jurisdiction should

help avoid piecemeal litigation.  Proceedings in this matter have not yet advanced

elsewhere.

25.    Most fundamentally, the important federal questions, such as those raised by Kasowitz's

State Court Action and prior conduct, against its former clients during the course of their

challenging civil rights litigation, are presumed to be best adjudicated in federal courts.

Kasowitz collected approximately $1,000,000 from its clients, withdrew from their

representation without providing the services for which they contracted, and now, among

other adverse actions, sues them demanding an additional $2,304,630.54.  In civil rights

cases such as this, "the function of an award of attorney's fees is to encourage the

bringing of meritorious civil rights claims which might otherwise be abandoned because

of the financial imperatives surrounding the hiring of competent counsel."    Kerr v.

Quinn, 692 F.2d 875, 877 (2d Cir.1982).   "If private citizens are to be able to assert their

civil rights, and if those who violate the Nation's fundamental laws are not to proceed

with impunity, then citizens must have the opportunity to recover what it costs them to

vindicate these rights in court."   S.Rep. No. 94-1011, at 2 (1976), reprinted in 1976

U.S.C.C.A.N. 5908, 5910.

NOTICE OF REMOVAL
8

DIVERSITY JURISDICTION UNDER 28 U.S.C. SECTION 1332(a)

26.      This Court has jurisdiction over this matter under 28 U.S.C. Section 1332(a) because

there is complete diversity of citizenship between Plaintiff and Fletcher, more than

$75,000, exclusive of interest and costs, is at stake, and the error resulting from

Plaintiff's nominally joining Fletcher and Management.  Kasowitz has no claim on

Fletcher for legal fees purportedly owed by Management and no claim on Management

for legal fees purportedly owed by Fletcher.

27.      Plaintiff alleges that it is a resident of New York.  Plaintiff has a San Francisco office

with which Fletcher's family has done business.

28.      Fletcher is a resident of California.

29.      Plaintiff seeks $2,304,630.54 thus well in excess of $75,000 is in controversy and the

jurisdictional threshold under 28 U.S.C. Section 1332(a) is satisfied.

**ALL PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED**

30.      Pursuant to 28 U.S.C. 1446(a) a true and correct copy of all of the process, pleadings,

orders, and documents from the State Court Action which have been served upon

Fletcher are being filed with this Notice of Removal.  Fletcher will file true and legible

copies of all other documents on file in the State Court Action as well as a certification

pursuant to Local Rules within 30 days of the filing of this Notice of Removal.

31.      This Notice of Removal was intended to be filed online on October 28, 2013 within 30

days of the date that Kasowitz purported to serve Fletcher with the State Court Action by

email or otherwise cause Fletcher "embarrassment."   Defendant Fletcher was unable to

NOTICE OF REMOVAL
9

establish a *Pro Se* Electronic Court Filings account and instead respectfully requests the

Court accept his filing of this Notice of Removal in person on October 29, 2013 and

consider this Removal timely in accordance with 28 U.S.C. Section 1446(b).

32.    Venue is proper in this Court pursuant to 28 U.S.C.  Section 1441(a) and 1446(a)

because the U.S. District Court for the Northern District of California is the federal

judicial district in which Fletcher resides.

**INTRADISTRICT ASSIGNMENT**

33.    Fletcher resided in San Francisco as of Kasowitz's filing of the State Court Action and

during the period in which Plaintiff claims Fletcher should have made payment to

Plaintiff.

**CONCLUSION**

By this Notice of Removal, Fletcher does not waive any objections it may have as to

service, jurisdiction or venue, or any other defenses or objections it may have to this action.

Fletcher intends no admission of fact., law or liability by this Notice, and expressly reserves all

defenses, motions, and/or pleas.

NOTICE OF REMOVAL
10

Dated:  October 28, 2013

_____
Alphonse Fletcher, Jr. (*Pro Se*)
188 Minna Street
San Francisco, CA 94105
(212) 284-4808
Alphonse.Fletcher@Fletcher.com

### ***CERTIFICATE OF SERVICE***

*This is to certify that the foregoing NOTICE OF REMOVAL, with exhibits, was sent via email, in*

*the same manner as service was agreed and accepted by Defendant Alphonse Fletcher, Jr. and an*

*additional copy will be sent by United States mail postage prepaid thereon to:*

Mitchell R. Schrage                    Floyd S. Saunders
Joshua A. Siegel                       Fletcher Asset Management
1633 Broadway                          48 Wall Street
New York, NY 10019                     Fourth Floor
(212)506-1700                          New York, NY 10005
                                       (212)284-4800
Attorneys for Plaintiffs
KASOWITZ, BENSON, TORRES &             Attorney for Defendant
FRIEDMAN, LLP                          FLETCHER ASSET MANAGEMENT, INC.

NOTICE OF REMOVAL
11

53

Dated:  October 28, 2013

_____

Alphonse Fletcher, Jr. (*Pro Se*)
188 Minna Street
San Francisco, CA 94105
(212) 284-4808
Alphonse.Fletcher@Fletcher.com

### CERTIFICATE OF SERVICE

*This is to certify that the foregoing NOTICE OF REMOVAL, with exhibits, was sent via email, in the same manner as service was agreed and accepted by Defendant Alphonse Fletcher, Jr. and an additional copy will be sent by United States mail postage prepaid thereon to:*

Mitchell R. Schrage
Joshua A. Siegel
1633 Broadway
New York, NY 10019
(212)506-1700

Attorneys for Plaintiffs
KASOWITZ, BENSON, TORRES &
FRIEDMAN, LLP

Floyd S. Saunders
Fletcher Asset Management
48 Wall Street
Fourth Floor
New York, NY 10005
(212)284-4800

Attorney for Defendant
FLETCHER ASSET MANAGEMENT, INC.

NOTICE OF REMOVAL
11

**Exhibit A**

**Complaint**

NOTICE OF REMOVAL
12

**FILED: NEW YORK COUNTY CLERK 09/19/2013**

NYSCEF DOC. NO. 1

INDEX NO. 158590/2013

RECEIVED NYSCEF: 09/19/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP,

                            Plaintiff,

          -against -

ALPHONSE FLETCHER, JR. and FLETCHER ASSET
MANAGEMENT, INC.,

                            Defendants.

-----------------------------------------------------------------X

Index No.:
Date purchased:

Plaintiff designates
New York County
as the place of trial

**SUMMONS**

The basis of venue is
Plaintiff's place of business:
1633 Broadway
New York, New York 10019

**To the above named Defendants:**

     **You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and upon your failure to answer, judgment will be taken against you for by default for the relief demanded in the complaint.

Dated: New York, New York
       September 19, 2013

By: _____
      Mitchell R. Schrage, Esq.
      Joshua A. Siegel, Esq.
      Kasowitz, Benson, Torres & Friedman LLP
      Attorneys for Plaintiff
      1633 Broadway
      New York, New York 10019
      (212) 506-1700

TO:    Alphonse Fletcher, Jr.
        48 Wall Street, 5th Floor
        New York, New York 10005

        Fletcher Asset Management, Inc.
        48 Wall Street, 5th Floor
        New York, New York 10005

NOTICE OF REMOVAL
13

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP,

        Plaintiff,       Index No.:

    -against-          **COMPLAINT**

ALPHONSE FLETCHER, JR. and FLETCHER ASSET
MANAGEMENT, INC.,

        Defendants.
------------------------------------------------------------------X

  Plaintiff Kasowitz, Benson, Torres & Friedman LLP ("KBTF"), for its Complaint against

defendants Alphonse Fletcher, Jr. ("Fletcher") and Fletcher Asset Management, Inc. ("FAM")

(collectively, "Defendants"), alleges as follows:

PARTIES

  1.  KBTF, a New York limited liability partnership, is a law firm with an office

located at 1633 Broadway, New York, New York 10019.

  2.  Defendant Fletcher was and is an individual residing and working in the City,

County and State of New York.  Defendant Fletcher was and is a principal of FAM.

  3.  Defendant FAM was and is a domestic corporation organized and existing

under the laws of the State of New York with principal offices located at 48 Wall Street, New

York, New York 10005.

JURISDICTION AND VENUE

  4.  Personal jurisdiction over Defendants is proper pursuant to CPLR §§ 301 and

302.

  5.  Venue is proper in New York County pursuant to CPLR § 503 in that at least

one party resides in this county.

NOTICE OF REMOVAL
14

6.      As the amount in controversy exceeds $50,000, there is no jurisdiction for arbitration pursuant to Part 137 of the Rules of the Chief Administrator of the Courts of the State of New York.

FACTS

7.      Pursuant to written retainer agreements dated July 29, 2011 (collectively, the "Retention Agreement"), Defendants engaged KBTF to perform professional legal services. KBTF thereafter performed such professional legal services for the benefit of Defendants, and incurred expenses and disbursements attendant thereto.   KBTF performed such services, and Defendants accepted such services, without objection, protest or rejection.

8.      The services rendered by KBTF to Defendants pursuant to the Retention Agreement were contracted for and were substantially performed in the City, County and State of New York.

9.      Pursuant to the Retention Agreement, KBTF provided professional legal services, including representing Defendants in a lawsuit in the Supreme Court of the State of New York, County of New York against The Dakota, Inc., and others, entitled *Alphonse Fletcher, Jr. and Fletcher Asset Management, Inc. v. The Dakota, Inc., et al.*, No. 101289/11 (the "Dakota lawsuit"), in which Defendants herein alleged, among other things, discrimination arising from the denial of Fletcher's application to purchase a residential cooperative apartment, defamation of Fletcher and FAM, and other claims.

10.     In reliance on and pursuant to the Retention Agreement, during the period from July 29, 2011 through the termination of KBTF's representation of Defendants on November 30, 2012, KBTF provided professional legal services, and advanced reasonable and necessary expenses and disbursements, for the benefit of Defendants.

2

NOTICE OF REMOVAL
15

11.     Defendants agreed to pay KBTF the sums of monies representing those usually and customarily charged by KBTF, as well as all expenses incurred.  KBTF provided to Defendants invoices for the services KBTF rendered and for the related expenses incurred. Defendants did not object to, protest, or reject such invoices.

12.     To date, KBTF has received partial payments of its invoices in the amount of $998,534.79, leaving an unpaid balance owed by Defendants to KBTF in the amount of $2,304,630.54.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>

(Breach of Contract)

13.     KBTF repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as though more fully set forth at length herein.

14.     The Retention Agreement is a valid and enforceable contract between the parties.

15.     KBTF has performed each and every obligation under the Retention Agreement.

16.     Defendants breached its obligations under the Retention Agreement by paying KBTF only a partial balance of $998,534.79, after which Defendants ceased paying any of the fees and disbursements incurred under the Retention Agreement, and although Defendants continued to accept the services provided by KBTF without objection, protest or rejection.

17.     Despite repeated demands for payment from KBTF to Defendants, there remains outstanding and due KBTF from Defendants the sum of $2,304,630.54.

3

NOTICE OF REMOVAL
16

18.     By reason of the foregoing breach of contract, KBTF has been damaged in the sum of $2,304,630.54.

### AS AND FOR A SECOND CAUSE OF ACTION

(Quantum Meruit)

19.     KBTF repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as though more fully set forth at length herein.

20.     KBTF fully performed its obligations to Defendants under the Retention Agreement by providing legal representation and advice in the Dakota lawsuit, and other related legal services.

21.     Defendants accepted KBTF's services at all times without objection, protest or rejection and allowed KBTF to continue to provide services to Defendants in the Dakota lawsuit, even after Defendants ceased paying fees and disbursements to KBTF.

22.     The fair and reasonable value of the services rendered by KBTF to Defendants at Defendants' specific request commencing on or about July 29, 2011 that remains unpaid is $2,304,630.54.

23.     Despite demands for payment from KBTF to Defendants, there remains outstanding and due KBTF from Defendants the sum of $2,304,630.54.

24.     By reason of the foregoing, and pursuant to the theory of quantum meruit, KBTF has been damaged in an amount not less than $2,304,630.54.

4

NOTICE OF REMOVAL
17

<u>AS AND FOR A THIRD CAUSE OF ACTION</u>

(Account Stated)

25.     KBTF repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as though more fully set forth at length herein.

26.     Commencing on or about September 14, 2011 and periodically thereafter, KBTF rendered to Defendants invoices for services rendered and expenses generated, all of which invoices, at the time sent, were received by Defendants without objection, protest or rejection.

27.     By reason of the foregoing, Defendants are liable to KBTF, pursuant to the theory of account stated, in an amount not less than $2,304,630.54.

**WHEREFORE,** KBTF demands judgment against Defendants:

a) On each of its three causes of action in an amount not less than $2,304,630.54, together with interest and costs;

b) Awarding such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          September 19, 2013

                              KASOWITZ, BENSON, TORRES
                              & FRIEDMAN LLP

                              By:

                                  Mitchell R. Schrage
                                  Joshua A. Siegel
                                  1633 Broadway
                                  New York, NY 10019
                                  (212) 506-1700

5

NOTICE OF REMOVAL
18

Alphonse Fletcher, Jr.
188 Minna Street
San Francisco, CA 94105
(212)284-4808
Alphonse.Fletcher@Fletcher.com
*PRO SE* Defendant Alphonse Fletcher, Jr.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA



KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP, )
                                          )
                              Plaintiff,  )    CASE NO.____ CV-13-5052
                                          )
            vs.                           )    ***PRO SE* DEFENDANT**
                                          )    **FLETCHER'S LOCAL**
ALPHONSE FLETCHER, JR. and                )    **RULE 3-16 DISCLOSURE**
FLETCHER ASSET MANAGEMENT, INC. )
                                          )
                              Defendants. )
                                          )
                                          )

**_PRO SE_ DEFENDANT FLETCHER'S LOCAL RULE 3-16 DISCLOSURE**

**Certification of Interested Entities or Person**

Defendant Alphonse Fletcher, Jr. (*Pro Se*) pursuant to Local Rule 3-16, files this

Certification of Interested Entities or Person and says:

1. Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons,

   associations of persons, firms, partnerships, corporations (including parent corporations) or

   other entities (i) have a financial interest in the subject matter in controversy or in a party to

the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that

could be substantially affected by the outcome of this proceeding:

| Dakota Parties | Related Parties - Publicly Disclosed Dakota Party Ownership, Control, or Influence |
|---|---|
| Jesse Angelo | |
| John M. Angelo | Angelo, Gordon & Co. |
| Judy H. Angelo | Atalanta Sosnoff |
| Bruce Barnes | Balfour Investors |
| Jay Goldsmith | Cantor Fitzgerald |
| Craig Hatkoff | Christofferson, Robb & Company |
| Matthew Mallow | News Corporation |
| Peter Nitze | Oak Street Funding LLC |
| Ruth Porat | Silver Oak Capital LLC |
| Richard Robb | Sotheby's |
| John Rydzewski | Tribeca Enterprises |
| Peter Sternberg | Tribune Company |
| Christine Chung, Counsel | |

*PRO SE* DEFENDANT FLETCHER'S LOCAL RULE 3-16 DISCLOSURE
2

| Related Parties -Dakota Parties' Financial and Business Partners | Louisiana Officials and Agents |
|---|---|
| CastleOak Securities, L.P. | Honorable Mitchell J. Landrieu |
| Credit Suisse[1] | Joseph Meals |
| HSBC[1] | Honorable Kevin Pearson |
| JPMorgan Chase[1] | Robert Rust |
| Oaktree Capital Management, L.P. | Steven Stockstill |
| Silver Point Capital, L.P. | |

*PRO SE* DEFENDANT FLETCHER'S LOCAL RULE 3-16 DISCLOSURE
3

**Recent Agents of Dakota Related Parties**

| | |
|---|---|
| Appleby Global[1] | Kirkland & Ellis LLP[1] |
| Campbells[2] | Marc Kasowitz[1] |
| Consulting Services Group[2] | Kornstein Veisz[1] |
| Michael Crystal, QC[2] | Paul Weiss[1] |
| Richard J. Davis[1] | Proskauer Rose LLP[1] |
| Ernst & Young[2] | Brown Rudnick[1] |
| Goldin Associates, L.L.C. | Skadden, Arps, Slate, Meagher & Flom LLP[1] |
| Grant Thornton LLP[1] | Quinn Emanuel |
| Joseph Hage Aaronson[2] | Wachtell Lipton[1] |
| (f/k/a Gregory P. Joseph Law Offices, LLC) | Walkers Global[1,2] |

[1]Also a recent agent of a Fletcher affiliate or of a party in which the affiliate invested.

Weil Gotshal[1]

[2]Also a recent agent of the Louisiana Officials.

Young Conaway[1,2]

*PRO SE* DEFENDANT FLETCHER'S LOCAL RULE 3-16 DISCLOSURE
4

| **Principal Affiliates of Fletcher** | Richcourt Capital Management Ltd. |
|---|---|
| BRG Investments | Richcourt Euro Strategies Inc. |
| Equity Income Corporation | Richcourt Allweather Fund Ltd. |
| FIA Leveraged Fund | America Alternative Investments Inc. |
| Fletcher Equity Alpha Fund LP | Soundview Capital Management Ltd. |
| Fletcher Fixed Income Alpha Fund Ltd. | Soundview Composite Ltd. |
| Fletcher Fund LP | Soundview Elite Ltd. |
| Fletcher Income Arbitrage Fund Ltd. | Soundview Premium Ltd. |
| Fletcher Income Arbitrage LP | Soundview Star Ltd. |
| Fletcher International Inc. | Elite Designated |
| Fletcher International, Ltd. | Star Designated |
| Multi Manager Investors LLC | Premium Designated |
| Richcourt Acquisition, Inc. | The Aesop Fund Ltd. |
| Richcourt Holding Inc. | Vanquish Fund Ltd. |
| RPGP Limited | Intellitravel Media, Inc. |
| MV Nepenthes LLC | |

*PRO SE* DEFENDANT FLETCHER'S LOCAL RULE 3-16 DISCLOSURE
5

| Recent Agents of Fletcher Affiliates | Principal Investments of Fletcher Affiliates |
| --- | --- |
| Citco Group | United Community Banks, Inc. |
| CohnReznick | Ion Geophysical Corporation |
| Denis J. Kiely | Helix Energy Solutions |
| Deborah Midanek | Group, Inc. |
| Gerti Muho | |
| Patterson Belknap | |
| Sher Tremonte | |
| Floyd S. Saunders | |
| RSM McGladery | |
| Quantal International, Inc | |
| Duhallow Financial Services, LLC. | |

**Dated:**  October 28, 2013

_____

Alphonse Fletcher, Jr. (*Pro Se*)
188 Minna Street
San Francisco, CA 94105
(212) 284-4808
Alphonse.Fletcher@Fletcher.com

*PRO SE* DEFENDANT FLETCHER'S LOCAL RULE 3-16 DISCLOSURE
6

## Exhibit E
### From 12/5/2013 Website of Quinn Emanuel, Counsel to Dakota Parties

# Public Strategy in High Profile Litigation

High profile legal disputes can become politicized and the subject of intense media attention.  Public statements, court filings and testimony can impact not only potential jurors and government officials, but also investors and analysts; can shape settlement issues and  dramatically affect other business objectives.  In many of the "bet the company" cases that our firm specializes in, success in the court of public opinion is as important as—or can contribute to—success in the court of law.

Our experience and that of our clients has been that it can be very difficult to find public relations firms that can operate effectively in the context of such complex and contentious legal disputes, without the participation and guidance of members of the trial team.  Coordination is essential; in-house and outside communications firms who try to operate independently of the trial team find themselves frustrated, potentially out-of-step, and even in conflict with trial strategy and the rules set by the court.

We have a different approach.  Using members of the trial team, fully embedded in the courtroom, protected by the privilege to the extent that communications are part of litigation strategy, and with long experience in dealing with both the media and communications professions, we are able to provide the critical link between the public trial and the trial in the courtroom.  We make the in-house team and outside communications firms more effective.  We ensure that they do nothing to undercut the trial effort.  We formulate critical statements; coordinate the presentation of issues; educate the media with the special knowledge of lawyers; comment on and off the record; brief top executives and help them prepare, both for public statements and trial testimony in a way that will speak to both jurors and investors.

Judges read clips.  They are increasingly sensitive to press reports; increasingly hostile to transparent efforts to "ghost write editorials," much less to provide financial support for those who write them.  The strategies used by many communications firms in other areas simply cannot be translated into litigation without running serious risks.  We avoid those risks.  We know how to handle controversies.  We pay attention both to trial and business objectives.  We are uniquely skilled and experienced in doing so.  We work cooperatively with existing communications advisers, who end up welcoming and depending on our participation.

Unlike lawyers who are leery of ever dealing with the press, who miss critical opportunities, who avoid cameras in situations where the story will be told with or without a client's input, we ensure that there is a coherent message that is communicated.   We like to win—that is our specialty; but communications are even more critical where the result is mixed, or we win at some stages and lose at others.  We know how to grab victory from the jaws of defeat, and not the other way around.

Quinn Emanuel has lawyers who have special expertise and experience in coordinating litigation and communication strategies.  We are prepared to offer strategic counseling not only to deal with crises but also to prevent them.  We have long and deep experience training CEOs and top executives in presenting issues to the public, dealing with government investigations, guiding public relations staffers and consultants, and aggressively pursuing communications and political efforts in a way that both supports and protects our clients' legal and business interests.  And because we are lawyers, to the extent our work is done in the context of providing legal advice, it can be done in confidence.

Susan Estrich serves as Chair of this practice area.  She brings decades of experience in politics and media, as a political campaign manager, on-air commentator (Fox News, and before that, ABC, NBC, CBS, CNN etc.), and syndicated columnist (over 100 newspapers and outlets, and before that, USA Today, The Los Angeles Times, The American Lawyer, etc.), as well as being a nationally recognized legal advocate (first woman President of the Harvard Law Review, youngest woman tenured at Harvard Law School, Robert Kingsley Professor of Law and Political Science at USC, etc.).  She has advised corporations, CEOs, and individual litigants  involved in high profile legal and political battles.  Since joining the firm in 2007, she has used this expertise not only on behalf of her own clients in the firm, but also on behalf of other firm clients facing serious public relations and political issues intertwined with our representation.

http://www.quinnemanuel.com/practice-areas/public-strategy-in-high-profile-litigation.aspx

## Exhibit F

LUSKIN, STERN & EISLER LLP
ELEVEN TIMES SQUARE
NEW YORK, NEW YORK 10036

TELEPHONE: (212) 597-8200
TELECOPIER: (212) 974-3205

STEPHAN E. HORNUNG
(212) 597-8245
hornung@lsellp.com

November 8, 2013

**BY EMAIL**

Alphonse Fletcher, Jr.
Fletcher Asset Management, Inc.
48 Wall St
New York, NY 10005

Re:    **In re Fletcher International, Ltd., Case No. 12-12796 (REG)**

Dear Alphonse:

This firm represents Richard J. Davis, the Chapter 11 Trustee in this Chapter 11 case.  In response to a Rule 2004 Subpoena issued by the Trustee, you have produced documents or designated deposition testimony (together, "Discovery Material") as confidential or highly confidential under the Uniform Order for Trustee Discovery (the "Protective Order," Docket No. 151).

Please be advised that the Trustee may use, rely on, or disclose the Discovery Material listed on the Schedule attached to this letter in his Trustee's Report and Disclosure Statement, which he intends to file shortly.

The Trustee does not believe that any of the Discovery Material contains confidential or highly confidential information within the meaning of the Protective Order.  Please let us know if you agree with the Trustee's position.  If you do not, then pursuant to Paragraph 9 of the Protective Order, you must file a motion for a protective order with the Bankruptcy Court within five business days, and you will bear the burden of establishing that the Discovery Material should not be disclosed in the Trustee's Report.  If you intend to seek a protective order, please notify me of your availability as soon as possible so we can contact chambers to schedule a conference with the Court.

Thank you.

Very truly yours,

Stephan E. Hornung

cc:  Michael Tremonte, Esq.

**Exhibit G**

**From:** Alphonse Fletcher <af@fam91.com>
**Subject:** Re:InreFletcherInternational,Ltd.,CaseNo.12-12796(REG)

**Date:** November 18, 2013 8:08:29 PM PST
**To:** Stephan Hornung <hornung@lsellp.com>
**Cc:** gerber.chambers@nysb.uscourts.gov, Michael Luskin
<luskin@lsellp.com>, "Spiegel, Lawrence S"
<Lawrence.Spiegel@skadden.com>, "Chehi, Mark S"
<Mark.Chehi@skadden.com>,

chris.matteson@duffandphelps.com

---

Dear Mr. Hornung,

Thank you for your email. Please confirm that, until the Court has an
opportunity to address these matters, neither Mr. Davis nor his agents
intend to take any actions that might cause irreparable harm, including
but not limited to violations of confidentiality orders, rights, privileges,
or immunities. I am available for a telephone conference at any time
over the next few days. Below I outline some of the issues.

Your proposed order suggests that Judge Gerber ordered me A) to
retain counsel personally and B) to limit the legal arguments I present
to only those relating to attorney-client privilege and attorney work
product, however, I do not believe that accurately reflects His Honor's
order. Additionally, your e-discovery vendor will not permit me access
to the 25,000 remaining emails it holds until I pay its invoices
remaining from our previously completed review of the first 75,000
emails. As I believe you are aware, for an extended period of time
now, Citco bank, HSBC, and other banks have restricted our access to
our cash without explanation of why the cash is not available or when
it will be. If you can arrange for me to access your vendor's remaining
materials (e.g. the vendor could likely produce PDF files in hours), I
should still be able to meet the Court's deadline because Duff &
Phelps has been helpful with the materials that it has. Please share

any other issues that might exist with respect to my compliance with the order.

In a series of emails over the past few days, you shared certain discovery materials with me and advised me that Mr. Davis "may use, rely on, or disclose" those materials in a "Trustee's Report and Disclosure Statement, which he intends to file shortly." I believe that some of those materials are privileged communications or material that the Court might find otherwise inappropriate for inclusion (as one possible example, material that is currently the subject of disputes with Quinn Emanuel regarding confidentiality orders and relevance in *Fletcher v Dakota,* New York Supreme Court Index No. 101289/11).

Finally, I respectfully request that you and Mr. Luskin please correct your prior statements to the Court regarding my approval of the privilege protocol that you have stated you used with respect to our documents.

Thank you,
Alphonse Fletcher, Jr.

On Nov 18, 2013, at 6:28 AM, Stephan Hornung wrote:

Dear Mr. Fletcher:

To our knowledge, there is no transcript of the court conference. We believe our proposed order is consistent with the Court's direction during the conference and we otherwise have nothing new to add to our submissions and correspondence with the Court.

Regards, Stephan

**From:** Alphonse Fletcher [mailto:af@fam91.com]
**Sent:** Sunday, November 17, 2013 7:50 PM
**To:** Stephan Hornung
**Cc:** Michael Luskin; Spiegel, Lawrence S; Chehi, Mark S;

chris.matteson@duffandphelps.com **Subject:** Re: In re Fletcher
International, Ltd., Case No. 12-12796 (REG)

Dear Mr. Hornung,

I am anxious about our using the Court's time in finalizing this
motion so I have excluded the Court from this email. The
revised proposed order that I previously shared simply repeated
what I believe the judge ordered.

Your new version of the order, however, now includes a
requirement that Fletcher International, Inc., Fletcher Asset
Management, Inc., and I retain and appear through counsel by
November 27, 2013. I did not hear the Judge say that.

Finally, your new version of the order appears to limit my
potential objections more so than I believe the Judge did. Would
you share a copy of the call transcript so that I could confirm
exactly what the Judge ordered?

Thank you,
Alphonse Fletcher, Jr.

On Nov 12, 2013, at 9:14 AM, Stephan Hornung wrote:

Dear Judge Gerber:

We are in receipt of Mr. Fletcher's revised proposed order and
while some of his comments are acceptable to us, we object to
certain inclusions. Accordingly, I attach a revised proposed order
(in MS Word format) and a redline reflecting the differences
between Mr. Fletcher's draft and our revised draft, which also
includes several non-substantive edits. Additionally, as Mr. Luskin
noted during the conference with the Court last week, we are
uncomfortable dealing directly with Mr. Fletcher, who is not an

attorney and unable to represent Fletcher Asset Management, Inc. and Fletcher International, Inc. We therefore further request that the Court include in any order a decretal paragraph directing Fletcher Asset Management, Fletcher International, Inc. and Mr. Fletcher to retain and appear by substitute counsel by no later than November 27, 2013. We have included proposed language in the attached revised order.

Respectfully submitted,

_____

Stephan Hornung

Luskin, Stern & Eisler LLP Eleven Times Square New York, NY 10036

Direct: 212-597-8245 Main: 212-597-8200 Fax: 212-974-3205

hornung@lsellp.com www.lsellp.com

This email and any attachments accompanying it are only for the use of the intended recipient and may contain material that is confidential or privileged. Any review, use, disclosure, copying or distribution of this transmission by anyone other than the intended recipient is strictly prohibited. If you are not an intended recipient, please immediately notify the sender by reply email and delete all copies of this transmission. <Proposed Order re Briefing Schedule Privilege Motion 11-11-2013 (AF Edits) - Proposed Order re Briefing Schedule Privilege Motion 11-12~1.pdf><Proposed

Order re Briefing Schedule Privilege Motion 11-12-2013 (LSE).doc>

This email and any attachments accompanying it are only for the use of the intended recipient and may contain material that is confidential or privileged. Any review, use, disclosure, copying or distribution of this transmission by anyone other than the intended recipient is strictly prohibited. If you are not an intended recipient, please immediately notify the sender by reply email and delete all copies of this transmission.