**Exhibit C**



Project Ladder

Progress Report
September 6, 2011

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

Project Ladder                                                    September 6, 2011
Progress Report                                                             Page 2

---

## Contents

1.  Glossary ........................................................................................................ 3
2.  Introduction .................................................................................................... 4
    a.  Background and Scope ........................................................................... 4
    b.  The Fund Structure ................................................................................. 5
3.  Overview of the Pension Funds' Investments ................................................ 6
    a.  The Pension Funds' Investments ............................................................. 6
4.  Value of the Pension Funds' Investments in FIA Leveraged .......................... 7
    a.  Key Drivers of FIA Leveraged's Financial Position ................................. 7
    b.  FAM's Valuation of FIA Leveraged .......................................................... 7
    c.  FAM's Valuation Methodology ................................................................ 8
    d.  Analyses of FAM's Valuation of FIA Leveraged .................................... 10
5.  Additional Observations During the Analyses .............................................. 11
6.  Recommendations ....................................................................................... 12
7.  Restrictions and Limitations ......................................................................... 13
Appendix I: EY Procedures ................................................................................ 14
Appendix II: Bases of Assigned Values .............................................................. 17
Appendix III: Quantal Valuation Process ........................................................... 23
Appendix IV: Overview of the Funds' NAVs ....................................................... 24

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

Project Ladder                                                                September 6, 2011
Progress Report                                                                         Page 3

## 1. Glossary

| | |
|---|---|
| Aesop | The Aesop Fund, Ltd |
| AHC | Asset Holding Company |
| Analyses | The analyses performed by EY |
| BRG | BRG International Partners, Ltd |
| Buddy Fletcher | Alphonse "Buddy" Fletcher, Director of FAM |
| Denis Kiely | Denis Kiely, Director of FAM |
| EIC | Equity Income Corporation |
| EIC Note | Promissory note due from EIC |
| Eisner | Eisner Amper, LLP, the Funds' auditors |
| Euro Note | Promissory note due from FILB |
| EY | Ernst & Young, LLP |
| FAM | Fletcher Asset Management, Investment Advisor |
| FDIF | Fletcher Dividend Income Fund |
| Feeder Funds | Collectively, FIA Leveraged, FIA Ltd and FIAL 1 |
| FIA Leveraged | FIA Leveraged Fund |
| FIA Ltd | Fletcher Income Arbitrage Fund, Ltd |
| FIAL 1 | FIAL 1 Fund, Ltd |
| FII | Fletcher International, Inc |
| FILB | Fletcher International, Ltd (Bermuda) |
| FIP | Fletcher International Partners, Ltd |
| FRS | Firefighters' Retirement System of Louisiana |
| Funds | Collectively, the Feeder Funds and Master Fund |
| Level 1 Securities | Publicly traded securities that have quoted prices available in active markets |
| Level 2 Securities | Securities with values based on pricing inputs other than quoted prices in active markets, which are either directly or indirectly observable |
| Level 3 Securities | Privately held investments with values based on pricing inputs that are unobservable and include situations where there is little, if any, market activity for the investment |
| Master Fund | Collectively, FII, FILB and subsidiaries BRG, FDIF, FIP and Vanquish |
| MERS | Municipal Employees' Retirement System of Louisiana |
| NOFF | New Orleans Firefighters' Pension and Relief Fund |
| Pension Funds | Collectively, FRS, MERS & NOFF |
| PIPE | Private Investments in Public Equities |
| Quantal | Quantal International, Inc |
| Vanquish | Vanquish Fund, Ltd |

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

## 2. Introduction

### a. Background and Scope

Ernst & Young LLP ("EY") was retained by Steven S. Stockstill, Esq. on behalf of the Firefighters' Retirement System of Louisiana ("FRS"), the Municipal Employees' Retirement System of Louisiana ("MERS") and the New Orleans Firefighters' Pension and Relief Fund ("NOFF"), collectively referred to as the "Pension Funds", to perform analyses (the "Analyses") of the Pension Funds' investments in FIA Leveraged Fund, Ltd ("FIA Leveraged").

The Analyses were performed pursuant to the Statement of Work between the Pension Funds and EY. The Analyses included procedures to better understand the value of the Pension Funds' investments in FIA Leveraged and certain of its related entities, Fletcher Income Arbitrage Fund, Ltd ("FIA Ltd"), FIAL 1 Fund, Ltd ("FIAL 1"), Fletcher International, Inc ("FII"), Fletcher International Ltd (Bermuda) ("FILB"), BRG International Partners, Ltd ("BRG"), Fletcher International Partners, Ltd ("FIP"), Fletcher Dividend Income Fund ("FDIF"), The Aesop Fund, Ltd ("Aesop") collectively referred to as the "Funds", as at June 30, 2011. Generally, these procedures were designed to:

- Understand the investment structure of the Funds as at June 30, 2011
- Corroborate the existence of the Funds' investments as at June 30, 2011
- Understand FAM's valuations of the Funds' investments as at June 30, 2011
- Understand the nature of certain of the Funds' liabilities as at June 30, 2011
- Calculate the value of the Pension Funds' investment in Series N Shares of FIA Leveraged as at June 30, 2011

EY has relied on information and documentation provided by Fletcher Asset Management ("FAM"), the Investment Manager of the Funds. Values have been assigned to the investment interests in related funds based on ownership interests provided by FAM and those ownership interests have not been corroborated with third party documentation but have been reconciled to information provided by FAM. References to third party documentation includes but is not limited to copy documentation that FAM represents to be from third parties, e.g. Copy bank and custody statements on third parties' letterhead. In certain instances, EY has corroborated the copy documentation with SEC filings.

There have been significant changes over time, including restructurings of the Funds on December 31, 2008 and May 31, 2011 as well as various related party transactions. EY has not attempted to understand the impact of these restructurings.

EY did not perform an audit, value or revalue investments or assess the reasonableness of transactions recorded. For a detailed listing of EY's procedures, see *Appendix I: EY Procedures*.

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

## b. The Fund Structure

FAM is the Investment Manager of a group of funds that are organized into a master/feeder fund structure as a means of creating a centralized pool of capital to pursue its investment activities. Based on investor listings, unaudited financial statements and discussions with the directors of FAM, EY understands that the key fund structure as at June 30, 2011 is as outlined in Figure 2.1:



f8 *Figure 2.1: Overview of the Pension Funds' investment in EY's scope as at June 30, 2011*

FAM is the Investment Manager of additional funds that, for illustration purposes, have not been included as they are either not part of EY's scope or have a limited impact on the value of FIA Leveraged as at June 30, 2011.

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

Project Ladder                                                    September 6, 2011
Progress Report                                                           Page 6

## 3. Overview of the Pension Funds' Investments

### a. The Pension Funds' Investments

The Pension Funds collectively invested $100M on April 1, 2008 to acquire 100,000 Series N Shares in FIA Leveraged (see Figure 3.2). FIA Leveraged in turn invested in other Feeder Funds that ultimately invested in the Master Fund, all of which FAM is the Investment Manager.

FIA Leveraged set out to generate an annual return of 15%. The Pension Funds' Series N Shares earned a return that was dependent on both the performance and equity position of FIA Leveraged. The Series N Shares ranked in priority to the Non-Series N Shares. The Series N shareholder returns were capped at 18% per annum and annual returns below 12% were collateralized by any non-Series N shareholder equity, as follows:

| Annual Return of FIA Leveraged | Series N Shareholders | Non Series N Shareholders |
|---|---|---|
| Greater than 18% | Return capped at 18% | Receive balance of return |
| 12% to 18% | Receive return of 12% to 18% | Receive return of 12% to 18% |
| Less than 12% | Receive return of 12% from a reduction in the Non Series N shareholders' equity. Once Non Series N shareholder equity is eroded, the return is equal to the performance of FIA Leveraged. | Non-Series N shareholder equity reduced to accommodate 12% return to the Series N shareholders. |

*Figure 3.1: Overview of return mechanism for shareholders of FIA Leveraged*

FIA Leveraged invested directly in another feeder fund, FIA Ltd, and indirectly in FIA Ltd through another feeder fund, FIAL 1. FIA Ltd invested in FII, which in turn invested in FILB and its subsidiaries.

Based on monthly statements provided to the Pension Funds, the Pension Funds understood that their investments in FIA Leveraged were earning a 12% annualized return and were valued as follows through June 30, 2011:

| | FRS | MERS | NOFF | Total |
|---|---|---|---|---|
| April 1, 2008 (initial investment) | 45.0 | 40.0 | 15.0 | 100.0 |
| December 31, 2008 | 49.0 | 43.5 | 16.3 | 108.9 |
| December 31, 2009 | 54.9 | 48.8 | 18.3 | 121.9 |
| December 31, 2010 | 61.5 | 54.6 | 20.5 | 136.6 |
| June 30, 2011 (subject to redemptions) | 65.0 | 57.8 | 21.7 | 144.5 |

*Figure 3.2: The Pension Funds' understanding of the value of their investment in FIA Leveraged (figures in $M)*

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

Project Ladder
Progress Report

## 4. Value of the Pension Funds' Investments in FIA Leveraged

### a. Key Drivers of FIA Leveraged's Financial Position

The vast majority of the external investments within the master/feeder fund structure is held by FII, FILB and its subsidiaries, FDIF, BRG, FIP and Aesop (collectively the Master Fund). The significant assets of the Feeder Funds, FIA Leveraged, FIAL 1 and FIA Ltd, are their investments in one another and ultimately their investment in the Master Fund. The net asset value of FIA Leveraged is therefore reliant on the value of the other Feeder Funds in which it invests directly and indirectly, as well as the Master Fund in which those feeder funds ultimately invest. It is therefore necessary to understand the assets across the different funds in order to better understand the value of the Pension Funds investments' in FIA Leveraged.

### b. FAM's Valuation of FIA Leveraged

FAM has produced unaudited financial statements as of June 30, 2011 for the relevant Feeder Funds and the Master Fund that indicate that the net assets of the Feeder Funds exceed the principal and preferred return of 12% on the Pension Funds' investments in the Series N shares of FIA Leveraged[1].

While FAM asserts that the assets of FIA Ltd and FIA Leveraged exceed the value of the Pension Funds' investments, FAM concedes that the liquidity of FIA Leveraged's assets is not sufficient to redeem the Pension Funds' investments in cash at the present time. For this reason, FAM is seeking to redeem the Pension Funds' investments in part through an assignment of promissory notes. The financial statements therefore reflect two promissory notes due from FIA Ltd to FIA Leveraged totaling $32M that have been assigned to FRS ($17M) and to MERS ($15M) in partial settlement of the redemption requests of FRS and MERS[2].

If MERS and FRS choose not to accept the assignment of the promissory notes in partial settlement of their redemption requests, and the Pension Funds seek to redeem their investments from FIA Leveraged, the financial statements produced by FAM still indicate that the net assets of FIA Leveraged exceed the principal and preferred return of 12% on the Pension Funds' investments in the Series N shares of FIA Leveraged[3].

Whether MERS and FRS accept the assignment of the note or not, the financial statements produced by FAM indicate that there are sufficient assets to redeem the Pension Funds' investments (principal and return of 12%) and that a surplus would be available for redemption of the Non Series N shares of FIA Leveraged.

---

[1] The unaudited financial statements prepared by FAM reflect FAM's valuations of the Fund's investments.
[2] It should be noted that MERS and FRS have not accepted the assignment of the promissory note in partial settlement of their redemptions.
[3] The unaudited financial statements prepared by FAM reflect FAM's valuations of the Fund's investments.

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

### c. FAM's Valuation Methodology

FAM calculates the values of its equities ("Level 1 Securities") based on "quoted prices [that] are available in active markets for identical investments as of the reporting date[4]." FAM advised that it utilized values included within custodial agents and brokers statements or by referring to other published market data.

FAM calculates the values of its swaps positions ("Level 2 Securities") based on "pricing inputs [that] are other than quoted prices in active markets, which are either directly or indirectly observable as of the reporting date, and fair value is determined through the use of models or other valuation methodologies[5]." FAM advised that it used published market data to calculate the value of the Funds' swaps positions.

The majority of the asset value of the Funds relate to valuations of non-publicly traded investments ("Level 3 Securities")[6]. Although the Funds do not have formal policies for valuing their Level 3 Securities, FAM values the Funds' PIPE investments, such as preferred shares, warrants and rights, and the Funds' privately held investments based on "pricing inputs that are unobservable and include situations where there is little, if any, market activity for the investment. The inputs into the determination of fair value require significant management judgment or estimation[7]." FAM advised that, in practice, the typical valuation process used for the vast majority of the Funds' Level 3 Securities was as follows:

- Kell Benson, director of FAM, reviewed the investment agreements and compiled a summary term sheet that sets out the key terms of the original investment agreements.

- FAM staff produced a valuation calculation of the investments based on the information contained within the summary term sheet under the direction and oversight of Buddy Fletcher. FAM was unable to locate their original valuation calculations but did create similar valuation calculations as at June 30, 2011 based on the key terms within the summary term sheets.

- Concurrently, FAM provided the summary term sheet to an independent, third party valuation specialist, Quantal International ("Quantal") and Quantal prepared its own independent valuation of the investments based on the information contained within the summary term sheet. The Quantal team valuing these investments was overseen by a professor from a well-respected educational institution who indicated that he was very involved in the valuation process and discussions with FAM. See *Appendix III: Quantal Valuation Process.*

---

[4] Per the audited financial statements of FIA Leveraged for the year ending December 31, 2008, this is consistent with FASB's Statement of Financial Accounting Standards No. 157.
[5] Per the audited financial statements of FIA Leveraged for the year ending December 31, 2008, this is consistent with FASB's Statement of Financial Accounting Standards No. 157.
[6] Per FAM's valuation, the value of Level 3 Securities is $263.4M.
[7] Per the audited financial statements of FIA Leveraged for the year ending December 31, 2008, this is consistent with FASB's Statement of Financial Accounting Standards No. 157.

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

Project Ladder
Progress Report

September 6, 2011
Page 9

- FAM compared its valuation calculations to the Quantal valuation and discussed key differences with Quantal. Documentation of these discussions was not maintained by FAM.

There are some exceptions to FAM's typical valuation process for Level 3 Securities that include:

- FAM has valued 4 of its smaller value Level 3 Securities without reference to Quantal. FAM advised that this was to avoid the cost of obtaining a Quantal valuation report for the lower value investments. FAM valued these investments at $5.2M.

- FAM did not produce valuation calculations for its investments in a privately held entity, but relied on the Quantal valuation report. Quantal valued these investments at $14.4M.

In aggregate, FAM's calculated valuations were significantly less than Quantal's valuations, i.e. FAM's valuations totaled $253.2M whereas Quantal's valuations totaled $403.0M for the same assets. The vast majority in value of these differences were due to additional factors being included within FAM's valuations that were not included within Quantal's valuations. These factors include but are not limited to discounts for restricted stock, trading volume, liquidity and litigation risks. FAM also incorporated income tax assets and liabilities within its valuation calculation that, at times, increased the value of the investment. Without applying the additional discounts and risk factors, FAM's valuations were typically within 5% of Quantal's valuations.

The Funds auditors, Eisner Amper LLP ("Eisner") advised that, during the audit process, Eisner reviews the terms and inputs of FAM's valuations to gain an understanding of FAM's valuation of the Funds' investments. In some instances, Eisner instructs a third party valuation specialist to produce a third valuation. Eisner then discusses the valuations with FAM and the various valuation specialists and reaches agreement with FAM as to how those valuations should be reflected in the financial statements. The last audited financial statements for the Funds reflect that this process was in accordance with FASB's Statement of Financial Accounting Standards No. 157 (now ASC Topic 820).

The last audited financial statements received from FAM for the Funds are as follows:

| Fund | Last Audited Financial Statements (Period Ending) | Date Issued | Net Assets |
|---|---|---|---|
| Vanquish | N/a | - | - |
| Aesop | N/a | - | - |
| BRG | N/a | - | - |
| FII & FILB (Consolidated) | December 31, 2009 | August 11, 2010 | 187.8 |
| FIA Ltd | December 31, 2009 | February 18, 2011 | 189.7 |
| FIAL 1 | December 31, 2008 | June 4, 2009 | 50.6 |
| FIA Leveraged | December 31, 2008 | January 20, 2011 | 139.3 |

*Figure 4.1: Overview of last audited financial statements for the Funds (figures in $M)*

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

Project Ladder
Progress Report

September 6, 2011
Page 10

---

## d. Analyses of FAM's Valuation of FIA Leveraged

EY has conducted certain procedures to assign values to the assets and liabilities of the Pension Funds. These procedures include corroborating existence of the underlying assets with third party documentation provided by FAM, such as broker statements, and comparing asset values to market data for the investments. Where market data were not readily available for the investments, EY has corroborated existence of investments with third party documentation, such as custodial agent statements, and compared the key terms used in FAM's valuation calculations and Quantal's valuation reports with the underlying investment agreements. EY has also compared FAM's valuations to the valuations prepared by Quantal. EY's procedures do not constitute an independent valuation of the underlying FAM investment portfolio. Refer to *Appendix I* for further details of the procedures conducted.

Based on the procedures conducted by EY and discussions with FAM regarding the assets and liabilities, EY has assigned values to the assets and liabilities as referred to in *Appendix II: Bases of Assigned Values*. The values assigned resulted in the following differences to the Funds' NAVs for each entity (see *Appendix IV: Overview of the Fund NAVs* for further details):

| Entity | FAM Values | Assigned Values | Difference |
|---|---|---|---|
| Vanquish | 4.8 | (0.1) to 0.1 | 4.7 to 4.9 |
| FDIF | 4.5 | 4.2 to 4.5 | 0.0 to 0.3 |
| BRG | 18.3 | 7.2 to 16.3 | 2.0 to 11.1 |
| Aesop | 5.6 | 0.9 | 4.7 |
| FILB | 203.7 | 180.8 to 191.4 | 12.3 to 22.9 |
| FII | 187.8 | 160.0 to 172.9 | 14.9 to 27.8 |
| FIA Ltd | 146.3 | 148.1 to 160.7 | (1.8) to (14.4) |
| FIAL 1 | 44.7 | 45.2 to 49.1 | (0.5) to (4.4) |
| FIA Leveraged | 136.6 | 122.8 to 134.3 | 2.3 to 13.8 |

*Figure 4.2: Summary of the Funds NAVs (figures in $M)*

Based on the values assigned to the Funds assets and liabilities, FIA Leveraged has sufficient net assets to redeem the Pension Funds' principal investments ($100M) in FIA Leveraged with a return to the Pension Funds of between $22.8M and $34.3M. This is less than the Pension Funds' anticipated return of 12% (equates to an annualized return between 6.5% and 9.5%) and would erode all equity of the Non-Series N shareholders.

FAM believes that there may be value in assets potentially worth in excess of $100M that are not recorded in the financial statements of the Feeder Funds and Master Fund. Realization of the additional assets value would, based on FAM's own admissions, likely be problematic and the actual amounts of such realizations, if any, is expected at significantly lower levels. FAM did, however, expect to obtain some realization from these assets. If a realization of say 25% of the potential value of these additional assets is achieved, FIA Leveraged's assets would, based on the assigned values, be sufficient to redeem the Pension Funds' principal investments and their preferred returns at 12% and also return some value to the Non-Series N Shareholders.

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

## 5. Additional Observations During the Analyses

FAM was co-operative with EY while the Analyses were performed and provided EY with a significant level of information and supporting documentation.  EY did, however, experience some delays in receiving documentation that EY would have expected to be readily available.

FAM advised that no formal investment or valuation policy exists within the Funds.  FAM was unable to produce documentation, other than limited e-mail correspondence, to support how prior valuation calculations were computed.  FAM had to recreate the valuation calculations using the same terms and a more simplified valuation model than that used in the original calculations by FAM.  These valuation calculations were within 1% to 5% of the original valuation.

FAM's and Quantal's valuations of the Level 3 Securities are based on a willing buyer, willing seller scenario.  FAM indicated during discussions that they have attempted to realize certain positions with limited interest from the market.  This preliminary feedback and the Funds' inability to redeem the Pension Funds in cash, underscore the liquidity issues that the Funds are facing and could result in adjustments to FAM's valuations of some investments, particularly if shorter term realizations are necessary for the Pension Funds.  A fully developed liquidation schedule from FAM is therefore necessary to better understand the value of the underlying investments.

The markets can go up and down and there has been some significant turmoil in the markets since June 30, 2011.  The Analyses is based on FAM and Quantal valuations as of June 30, 2011.  Changes in the market since June 30, 2011 may therefore have had a significant impact on the Funds' investments and current valuations by FAM and Quantal.

EY identified issues with the structure of some investments on the schedule of investments and was subsequently informed by FAM that those assets were pledged as collateral for loans and margin accounts.  These pledges were not disclosed in the unaudited financial statements and were not disclosed in earlier discussions.  FAM subsequently agreed that these assets were pledged and, following questioning from EY, FAM provided assurances that no other assets were pledged, collateralized or otherwise impaired other than the promissory notes that were assigned to the Pension Funds.

EY identified errors in some of the documentation and calculations provided by FAM. For example, supporting documentation provided by FAM did not always agree to the unaudited financial statements and related party receivables and payables did not always agree between Funds.  As a result, FAM has since revised certain schedules and the unaudited financial statements as at June 30, 2011.  FAM's staff accountant advised that the errors were a result of rushing to produce information in Microsoft Excel for the purpose of EY's analyses rather than through the more time-consuming exercise of updating the Funds' general ledger.  The Funds' accountant is aware of these errors and is updating the general ledger.

EY is currently clarifying with FAM some potential issues with fees and redemptions and will be reporting to the Pension Funds separately on these points.

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

## 6. Recommendations

The Pension Funds should consider the following recommendations:

- This report has been produced as a result of considerable interaction with FAM. Despite this, some of the values assigned are inconsistent with FAM's financial statements, as referenced in other sections of the report. The Pension Funds should therefore agree the key findings within this report with FAM and understand any significant differences in opinion.

- Given the errors in the draft financials as at June 30, 2011 and some of the information provided by FAM, the Pension Funds should seek assurances from Buddy Fletcher and Denis Kiely that:

  o The Funds' financial statements will be updated immediately to accurately reflect the assets and liabilities and ownership structures of the Funds.

  o None of the assets within the Funds are pledged, assigned, or otherwise impaired.

  o FIA Leveraged will seek to have its audited financial statements for the year ended December 31, 2009 issued forthwith and that all of the Funds should seek to have their audited financial statements for the year ended December 31, 2010 issued as soon as possible.

  o An investment and valuation policy will be adopted by the Funds forthwith.

- The Funds do not have sufficient liquid assets to redeem the Pension Funds in cash. FAM should therefore produce a detailed liquidation schedule of the key assets on the short, medium and long term bases, together with estimates of the likely realizations in each scenario and the steps that FAM will take to realize the Funds' investments. The Pension Funds should then agree the liquidation strategy with FAM for each category of assets.

- The Pension Funds may be able to negotiate to improve their security by creating a mechanism that asserts a priority interest in the underlying assets, e.g. by way of an assignment of proceeds of sales of key assets of the Feeder Funds and Master Fund.

- The Pension Funds should obtain regular and timely updates from FAM that include draft financial statements for the Funds, on at least a monthly basis, together with details of the steps taken during the month to liquidate the Funds' investments and the next steps to be taken by FAM during the coming month to realize the Funds' investments.

- The Pension Funds should seek to establish thresholds, trading limits and other controls, such as debt covenants, that are to be instituted by FAM to more tightly control the Funds' assets and liabilities during the liquidation period.

*Preliminary Draft, Subject to Change
Strictly Private & Confidential
Subject to Attorney-Client Privilege
And/or Attorney Work Product Doctrine*

## 7. Restrictions and Limitations

EY work and the procedures conducted to date as set forth in the Statement of Work as well as subsequently agreed to with Pension Funds and further detailed in this Report, were limited in nature and scope and cannot be relied upon to have identified all information or issues that may be of relevance or to have uncovered all potential risks to the Pension Funds as it relates to their investment in FIA Leveraged.

EY has not taken steps to validate or verify the information received, except where indicated. Observations and recommendations made by EY could be different if additional procedures were performed.

This engagement does not constitute a compilation, review, or audit or other form of assurance, in accordance with any generally accepted auditing, review or other assurance standards, of financial records or financial statements as those terms are defined by the American Institute of Certified Public Accountants, and accordingly, we do not express any form of assurance.

This Report is intended solely for the information and use of the Pension Funds' Counsel in rendering professional legal services to the Pension Funds and is not intended to be, and may not be, used by anyone else without the express written permission of EY. The procedures performed during this engagement were performed pursuant to the AICPA Standards for Consulting Services.

EY is a public accounting firm and does not provide legal advice. With regard to recommendations in this Report relating to the Pension Funds' investment in FIA Leveraged, the Pension Funds should rely on their own legal advisors to review these recommendations for legal sufficiency.

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

## Appendix I: EY Procedures

EY performed procedures to gain an understanding of the various assets and certain liabilities of the Funds that were included within the unaudited financial statements prepared by FAM as at June 30, 2011. It should be noted that when performing these procedures, EY relied on documents and statements provided by FAM, including, but not limited to, draft financials, schedules supporting the financials and copies of third party documentation, such as bank, broker and custody agent statements. In several instances, EY corroborated third party documentation with publicly available information. EY did not send out confirmations or perform auditing procedures.

EY procedures included the following:

### Background

EY held conversations with FAM directors and personnel; the Funds' auditors, Eisner; The Funds' administrators, SS&C Fund Services; and FAM's third party valuation consultant, Quantal, to obtain additional background information and clarification.

### Investments

The objective of EY's procedures related to investments were: (a) to corroborate existence of the investments and (b) to reconcile the key terms used in the FAM and Quantal valuation calculations to the underlying investments and investment agreements. The investments of the Funds include both publicly traded securities and non-publicly traded investments. EY's procedures for each investment class varied depending on the type of investments.

*Publicly Traded Securities ("Level 1 Securities")*

To understand the Funds' holdings in Level 1 Securities, EY reconciled the Funds' statement of investments to the financial statements. EY corroborated the existence of the investments with third party documentation including broker and custodial agent statements obtained from FAM. In most cases the broker statements included market prices as at the date of the financials. In some limited instances EY obtained independent confirmation of market prices from published market data.

*Non-Publicly Traded Investments ("Level 2 Securities")*

EY obtained third party broker statements to corroborate the existence of the swap positions, the notional value, strike price and other key data. EY confirmed FAM's valuation of the swap positions using these inputs.

EY was unable to obtain simultaneous broker statements or screenshots from FAM supporting certain swap positions held by FIAL 1 and FILB.

*Preliminary Draft, Subject to Change
Strictly Private & Confidential
Subject to Attorney-Client Privilege
And/or Attorney Work Product Doctrine*

Project Ladder
Progress Report

---

*Non-Publicly Traded Investments ("Level 3 Securities")*

The Funds' holdings in Level 3 Securities include the following classes of investment: Private Investment in Public Equity ("PIPE") investments, holdings in privately held corporations and investments in affiliated entities.   To understand the Funds' holdings in Level 3 Securities, EY reconciled the Funds' schedule of investments to the financial statements prepared by FAM.   EY corroborated the existence of the Level 3 Securities with third party documentation, including broker and custodial agent statements obtained from FAM. Further, EY corroborated certain of the PIPE investments with SEC 8-K filings by the publicly traded investee.  EY performed the following additional procedures in respect of the non-publicly traded investments:

<u>PIPE Investments & Holdings in Privately Held Entities</u>

Given that the Funds have no formal valuation policy, EY held discussions with the Fund's valuation team and external valuation consultant, Quantal, to better understand the typical valuation process as it relates to PIPE investments and holdings in privately held entities.

EY vouched the summary term sheets provided to Quantal to the underlying investment agreements to ensure the accuracy of the term sheets.  These procedures were performed on the larger investments within the Master Fund that total approximately 75% of the Master Fund's investment portfolio. EY did not attempt to recreate summary term sheets from the underlying investment agreements, e.g. In some instances the terms referred to terms not defined within the underlying investment agreements, e.g. The stock price on a certain date.  EY selected a number of such terms and compared them to published market data using resources such as Bloomberg and Yahoo Finance.  EY noted no exceptions or inaccuracies within the summary terms sheets.

EY traced the key terms within the summary terms sheets to Quantal valuation reports to ensure that Quantal's valuations were based on the terms contained within the summary term sheets.   EY compared this for each investment for which Quantal prepared a valuation.  EY selected references to market data referenced within the Quantal reports and compared these to published market data using resources such as Bloomberg and Yahoo Finance.  EY compared changes in PIPE investments that were included within Quantal's valuation reports, such as share conversions, to SEC 8-K filings by the public company. EY noted no exceptions or inaccuracies within the Quantal valuation reports.  EY did not value the investments and did not test Quantal's valuation model.

EY compared FAM valuations to Quantal valuation reports and discussed key differences with FAM to better understand the differences.

FAM was unable to produce its original valuation calculations.  FAM recreated valuation calculations for the Funds' non-publicly traded investments utilizing the terms contained within the summary term sheets.

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

Holdings in Affiliated Parties

The Funds have ownership interests within one another, as represented in Figure 2.1. To understand the value of these investments, EY obtained investor listings from FAM that detail the affiliated party and their investors for each of the relevant Funds.  Refer to *Appendix 2* for details.

Cash

EY corroborated the existence of all cash positions that were greater than $100,000 as at June 30, 2011 with bank statements and broker statements.

Liabilities and Expenses

EY focused on the Funds' investments.  EY also conducted limited analyses of liabilities and expenses that included analyzing the financial statements and discussing key liabilities and expenses of the Funds with FAM.

EY requested and obtained supporting schedules and calculations prepared by FAM to better understand certain liabilities and expenses.  EY compared selected liabilities to agreements and brokerage statements.

EY obtained executed copies of promissory notes and performed a recalculation of the note from the information on the face of the note and additional information provided by FAM, such as payment history.  EY corroborated selected market inputs with published market data.

FAM has advised that no documentation exists for certain related party payables and liabilities, e.g. between FDIF and Vanquish.  In those instances, EY traced the liabilities within one Fund to the asset of another Fund.

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

Project Ladder
Progress Report

September 6, 2011
Page 17

## Appendix II: Bases of Assigned Values

For the purposes of analyzing the Pension Funds' investment in FIA Leveraged, EY analyzed the unaudited balance sheets of each of the Funds as at June 30, 2011. EY analyzed supporting documentation provided by FAM for investment valuations and discussed certain issues with the supporting documentation with FAM. EY did not value any of the investments or attempt to audit the financial statements.

Based on the representations by FAM and the work conducted as set out in *Appendix I*, EY assigned values to the investments and liabilities of the Funds in order to calculate the Pension Funds' interests in FIA Leveraged, as follows:

1. Publicly Traded Security ("Level 1 Securities"), e.g. Ordinary shares

"Level 1 Securities" were valued based on quoted prices in active markets for identical assets or liabilities. EY assigned value to the Level 1 Securities by multiplying the holding by the published market prices for each security. For example, EY would assign a value of $150,000 to 200,000 ordinary shares in XYZ company trading at $.75 per share.

EY assigned a value of $Nil to certain Level 1 Securities of FILB that were pledged as collateral for an investment in a Level 3 Security. FAM had recorded these Level 1 Securities in the financial statements of FILB at $765,307.

EY assigned a value to all Level 1 Securities of $13.4M. FAM had assigned a value of $14.2M to these Level 1 Securities.

2. Non-Publicly Traded Securities ("Level 2 Securities"), e.g. Swaps transactions and indices funds

"Level 2 Securities" were valued based on quoted prices for similar instruments in active markets, quoted prices for identical or similar instruments in markets that are not active, or model-based valuations for which all significant assumptions are observable or can be corroborated by observable market data. EY has assigned value to the Level 2 Securities by multiplying the holding by a calculation referencing observable market data.

EY was unable to corroborate the existence and value of three swap positions held by FILB and FIA Leveraged that FAM has valued as a combined liability of $0.15M. EY has assigned a combined liability of $0.15M on the swap positions.

EY and FAM assigned a liability to all Level 2 Securities of $26.6M.

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

3. Non-Publicly Traded Investments ("Level 3 Securities"), e.g. PIPE Investments

"Level 3 Securities" are valued by FAM and Quantal based on unobservable inputs that are supported by little or no market activity and that are significant to the fair value of the assets or liabilities. Values are determined using various pricing models and include managements' judgment and estimation. Where FAM and Quantal have both valued a Level 3 Security, EY has assigned a value equal to the lower of FAM's valuation and Quantal's valuation.

FAM did not calculate valuations for two Level 3 Securities held by FII and relied on Quantal's valuations totaling approximately $14.4M. EY assigned a value equal to Quantal's valuations to these Level 3 Securities.

Quantal did not value 4 of the Level 3 Securities totaling approximating $5.2M according to FAM's valuation calculations. EY assigned values to these investments, as follows:

- EY assigned a value of $Nil to certain Level 3 Securities of BRG that were recorded by FAM in the financial statements of BRG at $1,445,993. The FAM valuation calculation did not provide for an anticipated loss in 2011 similar to the loss incurred in 2010. FAM advised that it expected similar losses on the investment in 2011. EY updated the FAM calculation to incorporate those losses which negated the investment.

- EY assigned a value of $Nil to $3,630,348 to certain Level 3 Securities of BRG that were recorded by FAM in the financial statements of BRG at $3,630,348. These Level 3 Securities relate to an investment in a company related to Buddy Fletcher's brother, Geoffrey Fletcher. FAM indicates there is likely to be a loss on this investment that would, by nature of the investment, be offset 100% by a Deferred Tax Asset due to industry-specific tax credits available to this tax asset. EY received no support for the Deferred Tax Asset.

- EY assigned a value of $Nil to $70,000 to certain Level 3 Securities of BRG that were recorded by FAM in the financial statements at $70,000. EY was unable to corroborate the investment with a partnership agreement or the investment agreement. EY was also unable to obtain a copy of the quarterly statements that were sent to FAM. FAM advised that the quarterly statements "were likely delivered to an incorrect address and were not available."

- EY assigned a value of $Nil to Level 3 Securities of FILB that were recorded by FAM in the financial statements at $50,000. FAM advised that they had written the investment off since June 30, 2011.

FAM and Quantal both valued the following investments, however, certain events have taken place since June 30, 2011 give rise to a different value being assigned to the investment:

- EY assigned a value of $Nil to certain Level 3 Securities of FILB due to subsequent discussions with FAM in which FAM advised that the value of the Level 3 Securities had dropped significantly since June 30, 2011. FAM had recorded these Level 3 Securities in the financial statements of FILB at $35,660.

*Preliminary Draft, Subject to Change
Strictly Private & Confidential
Subject to Attorney-Client Privilege
And/or Attorney Work Product Doctrine*

Project Ladder
Progress Report

- EY assigned a value of $Nil to certain Level 3 Securities of FILB that were recorded by FAM in the financial statements at $1,723,573. FAM advised that the exercise date had passed and that these warrants were not exercised. FAM agreed with a $Nil value.

EY assigned a value to all Level 3 Securities of $242.1M. FAM had assigned a value of $253.6M to these Level 3 Securities.

### 4. Cash and interest receivable

EY corroborated the existence of all cash positions and interest receivable positions that were greater than $100,000 as at June 30, 2011 with bank and broker statements and assigned a value that is equal to the lower of FAM's value and the balances reflected in the bank and broker statements. Cash and interest receivable positions less than $100,000 were assigned values equal to FAM's valuation.

### 5. Related Fund Investments

FAM valued investments in related funds, e.g. FIA Leveraged's investment in FIAL 1 by multiplying the ownership interest by the Net Asset Value of the related feeder or master fund.

FAM has provided EY with an ownership schedule that identifies the related party ownership structure of the Funds, as follows:

| Investor | Fund | Ownership* | Value Assigned for Illustration Purposes | Class of Shares* | Other Share Classes* |
|---|---|---|---|---|---|
| Vanquish | FIA Leveraged | Unknown | Zero value as return only relevant once Series N shareholders have been satisfied | Non Series N | Series N |
| Aesop | FIA Leveraged | Unknown | Zero value as return only relevant once Series N shareholders have been satisfied | Non Series N | Series N |
| BRG | FDIF | 78% | NAV of FDIF less $1M preferred shareholder equity | Common | Preferred |
| FILB | Aesop | 100% | 100% of NAV of Aesop | Common | None |
| FILB | BRG | 100% | 100% of NAV of BRG | Common | None |
| FII | Asset Holding Company | 100% | Zero value as based on discussions with FAM there is unlikely to be any realization | Common | None |
| FII | FILB | 100% | 100% of NAV of FILB | Common | None |
| FIA Ltd | FII | 97% | 97% of NAV of FII | Common | None |
| FIAL 1 | FIA Ltd | 30% | 30% of NAV of FIA Ltd | Common | None |
| FIA Leveraged | FIAL 1 | 100% | 100% of FIAL 1 | Common | None |
| FIA Leveraged | FIA Ltd | 40% | 40% of FIA Ltd | Common | None |

*Figure 9.1: Overview of related fund ownership structure*          * Per representations made by FAM.

Preliminary Draft, Subject to Change
Strictly Private & Confidential
Subject to Attorney-Client Privilege
And/or Attorney Work Product Doctrine

Project Ladder
Progress Report

September 6, 2011
Page 20

There are also related party transactions between the funds as noted below that relate to Aesop and to the Asset Holding Company ("AHC") of FII.

- Aesop uses its investments as collateral for a margin account for Aesop's trading. FAM has reported the value of Aesop's small and mid-cap investments at the net value of the margin account less the short positions. The net amount, which is the gain on margin hedging, is reflected in the financial statements as an amount due from broker. FAM has advised that this type of margin account does not exist in other Funds.

- FAM has acknowledged that there is little likelihood of any realization from FII's investment in AHC because the current valuation of the holdings are unlikely to be sufficient to cover the liabilities of the AHC. EY has therefore assigned a value of $Nil to the "Investment in AHC".

6.  **Promissory Notes and Other Receivables Due from Related Parties**

There are significant related party receivables and payables between the Funds.

Financial statements for FIA Leveraged contain a Note Payable denominated in Euros ("Euro Note") from FILB. EY updated the FAM calculation in accordance with the terms of the "Amended and Restated Promissory Note" agreement and included repayments and PIK transfers. Based on the updated calculations, EY has assigned a value of between $16.2M and $17.5M depending on the value of the PIK transfers.

The balance sheet of FIA Leveraged reflects a Note Payable from Equity Income Corporation ("EIC Note") a fund of which FAM is the Investment Manager. FAM has recorded the value of this note on FIA Leveraged's balance sheet as at June 30, 2011 as $19.2M. According to FAM, Eisner believes the note should have been valued at $9.5M as at December 31, 2009 and between $5.0M and $6.0M as at June 30, 2011. EY assigned a value between $5.0M and $6.0M based on the Eisner valuations.

In addition to the Notes described above, FAM has 5 other related entity receivables. These receivables are due to the May 2011 restructuring, as depicted below. The difference between the note receivable from FII to FILB was due to an updated calculation based on terms within the note. The remaining differences between the assigned values and the FAM valuation are due to errors within the unaudited financial statements provided by FAM.

| Fund | Description | FAM Value | Assigned Value |
|------|-------------|-----------|----------------|
| BRG | Note Receivable - Vanquish | $1,405,938 | $1,419,505 |
| FDIF | Receivable - Vanquish | $1,738,738 | $1,755,517 |
| FILB | Note Receivable from FII | $13,842,704 | $13,676,569 |
| Leveraged | Redemption Receivable - FILB | $3,058,128 | $3,058,128 |
| FIA Ltd | Other Receivable - Fletcher Polaris | $894,886 | $Nil |
| Vanquish | Receivable - Aesop Fund | $5,000,000 | $5,000,000 |

Figure 9.2: Schedule of Related Party Receivables excluding the Euro Note and EIC Note

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

35

EY assigned a value to all promissory notes and other receivables of between $46.1M and $48.6M. FAM had valued these promissory notes and other receivables at $62.6M.

### 7. Other Assets

#### a. Due from broker

EY assigned a value of the lower of broker statements and FAM valuations. As FAM's valuation matched those of the broker, EY's assigned value is equal to FAM's valuation of $4.0M.

#### b. Collateral receivable

The collateral receivable of $2.0M on the balance sheet of FILB relates to a swap position. EY has not been able to corroborate the existence or obtain FAM's valuation calculation of the swap position and has therefore assigned a range of $Nil to $2.0M to the collateral receivable.

#### c. Accruals due to restated financial statements

Due to the restatement of the financial statements of FIA Leveraged and FIA Ltd as at December 31, 2008 and December 31, 2007, DFS and FAM was overpaid fees and expenses totaling $3.6M from FIA Ltd. EY has offset $1.2M of this overpayment against ongoing accrued performance fees and has assigned a value of $Nil to the balance of $2.4M as FAM intends to offset this balance against the future fees of DFS and FAM.

#### d. Assets not included within the Financial Statements of the Funds

In addition to the assigned values, FAM believes there may be value in assets potentially worth in excess of $100M that are not recognized in the financial statements of the Feeder Funds and Master Fund. Realization of the additional assets would, based on FAM's own admissions, likely be problematic and the actual amounts of any such realizations is expected at significantly lower levels.

EY has assigned a value of $Nil to these assets which is consistent with how FAM has addressed them in the financial statements.

#### e. Deferred Tax Assets

Given the nature of Deferred Tax Assets and the imminent liquidation of the majority of the Funds assets, EY has assigned a range of $Nil to the $5.3M valuation calculation prepared by FAM.

#### f. Other Assets

There are other assets held by Leveraged and FILB to which EY and FAM have assigned values totaling $0.2M. These assets related to various interest, dividend and collateral receivables that were not otherwise broken out within the financials.

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

Project Ladder
Progress Report

September 6, 2011
Page 22

8.  Liabilities

Generally, EY assigned value to varying classes of liabilities based on the FAM valuation. However, in certain instances, EY assigned different values due to miscalculations in FAM's valuation. Additionally, EY assigned a value of $Nil to the notes payable to the Pension Funds under the assumption that the Pension Funds have not accepted the assignment of the notes payable.

EY assigned a value to all Liabilities of $113.3M.   FAM had assigned a value of $142.9M for all Liabilities.

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

Project Ladder
Progress Report

## Appendix III: Quantal Valuation Process

Quantal is a company headquartered in San Francisco, California that, according to its website, has "an exceptionally strong research and development team with key Ph.D. technical strength, and close ties with Stanford and UC Berkeley, world renowned academic institutions". Quantal offers a range of "solutions for developing, analyzing, implementing, and managing portfolio strategies" for "institutional funds, derivatives market participants, hedge funds, funds of funds, high net worth money managers, and private investment advisors".

Terry Marsh, a professor emeritus at UC Berkley, provided an overview of the process adopted to value the Funds' non-publicly traded investments. Marsh advised that Kell Benson[8] of FAM provides Quantal with a summary term sheet for the investment which outlines the key terms and pertinent contractual language of the investment agreement. Quantal analyzes the summary term sheet, benchmarks key metrics to market references and conducts detailed analyses and simulations to calculate the value of the underlying investment.

While not typical, Quantal would occasionally reference the underlying investment agreement to clarify or better understand a term in the summary term sheet.  Marsh advised that in each of those instances, the summary term sheet had proven to accurately reflect the underlying investment.

Quantal advised that it conducts quarterly valuations of PIPE investments and provides semi-annual valuations on investments in privately held companies.  Quantal did not prepare valuations for the investments in related parties, the publicly traded securities or the index funds.

---

[8] Kell Benson is the former CFO of Zenith Electronics Corporation and the current director FAM, responsible for communicating with investee representatives.

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*

## Appendix IV: Overview of the Funds' NAVs

*Preliminary Draft, Subject to Change*
*Strictly Private & Confidential*
*Subject to Attorney-Client Privilege*
*And/or Attorney Work Product Doctrine*