Michael Luskin
Lucia T. Chapman
Stephan E. Hornung
LUSKIN, STERN & EISLER LLP
Eleven Times Square
New York, New York 10036
Telephone:  (212) 597-8200
Facsimile:  (212) 974-3205

*Attorneys for the Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:                                          :        Chapter 11
                                                :
FLETCHER INTERNATIONAL, LTD.,                   :        Case No. 12-12796 (REG)
                                                :
                        Debtor.                 :
                                                :
----------------------------------------------------------------x

## TRUSTEE'S AMENDED PLAN OF LIQUIDATION

November 25, 2013

Richard J. Davis
Chapter 11 Trustee
415 Madison Avenue, 11th Floor
New York, New York 10017

# TABLE OF CONTENTS

Page

**ARTICLE I.** INTRODUCTION ........................................................................... 1

**ARTICLE II.** DEFINITIONS ............................................................................. 1

2.1.    "Administrative Bar Date"........................................................ 1

2.2.    "Administrative Bar Date Order" ............................................. 1

2.3.    "Administrative Claim" ............................................................ 1

2.4.    "Advisory Board" ..................................................................... 1

2.5.    "Affiliate" ................................................................................. 1

2.6.    "Allowed Administrative Claim" ............................................. 1

2.7.    "Allowed Claim" ...................................................................... 2

2.8.    "Allowed Class ___ Claims" .................................................. 2

2.9.    "Allowed Interest" .................................................................... 2

2.10.   "Allowed Priority Tax Claim" ................................................. 2

2.11.   "Available Cash" ...................................................................... 2

2.12.   "Ballot" ..................................................................................... 2

2.13.   "Bankruptcy Code" ................................................................... 3

2.14.   "Bankruptcy Court" .................................................................. 3

2.15.   "Bankruptcy Rules" .................................................................. 3

2.16.   "Bar Date" ................................................................................. 3

2.17.   "Business Day" .......................................................................... 3

2.18.   "Case" ........................................................................................ 3

2.19.   "Cash" ........................................................................................ 3

2.20.   "Claim" ...................................................................................... 3

2.21.   "Confirmation" .......................................................................... 3

2.22.   "Confirmation Date" ................................................................. 3

2.23.   "Confirmation Hearing"............................................................ 3

2.24.   "Confirmation Order" ............................................................... 3

2.25.   "Debtor" .................................................................................... 3

2.26.   "Deemed Paid in Full" ............................................................. 3

2.27.   "Disbursing Agent".................................................................... 4

2.28.   "Disclosure Statement" ............................................................. 4

2.29.   "Disclosure Statement Hearing" ............................................... 4

i

2.30.    "Disputed Claim" .................................................................................................... 4

2.31.    "Distribution Date" ................................................................................................. 4

2.32.    "Distribution Record Date" .................................................................................... 4

2.33.    "Effective Date" ..................................................................................................... 4

2.34.    "Estate" .................................................................................................................. 4

2.35.    "Estimation Order" ................................................................................................ 5

2.36.    "Excluded Claim" .................................................................................................. 5

2.37.    "Existing FILB Stock" ........................................................................................... 5

2.38.    "Fee Claims" .......................................................................................................... 5

2.39.    "FILB" .................................................................................................................... 5

2.40.    "Final Distribution" ............................................................................................... 5

2.41.    "Final Order" .......................................................................................................... 5

2.42.    "510(b) Claims" ..................................................................................................... 5

2.43.    "510(c) Claims" ..................................................................................................... 5

2.44.    "General Unsecured Claim" ................................................................................... 5

2.45.    "Governmental Unit" ............................................................................................. 5

2.46.    "Holder" ................................................................................................................. 5

2.47.    "Holder of Record" ................................................................................................ 6

2.48.    "Indemnified Person" ............................................................................................ 6

2.49.    "Initial Distribution" .............................................................................................. 6

2.50.    "Initial Distribution Date" ..................................................................................... 6

2.51.    "Interest" ................................................................................................................ 6

2.52.    "Insider" ................................................................................................................. 6

2.53.    "Investor Settlement" ............................................................................................. 6

2.54.    "Liquidation Recoveries" ...................................................................................... 6

2.55.    "Notice Agent" ....................................................................................................... 6

2.56.    "Objection Bar Date" ............................................................................................. 6

2.57.    "Operating Reserve" .............................................................................................. 6

2.58.    "Paid in Full," "Payment in Full," or "Pay in Full" ............................................. 6

2.59.    "Person" ................................................................................................................. 7

2.60.    "Petition Date" ....................................................................................................... 7

2.61.    "Plan" ..................................................................................................................... 7

2.62.    "Plan Administrator" .............................................................................................. 7

2.63.    "Pooled Claims" ..................................................................................................... 7

2.64.    "Pooled Claim Recoveries" ................................................................ 7

2.65.    "Pool Interest" .................................................................................... 7

2.66.    "Priority Claim" ................................................................................. 7

2.67.    "Priority Tax Claim" .......................................................................... 7

2.68.    "Proceeding" ...................................................................................... 7

2.69.    "Professionals" ................................................................................... 7

2.70.    "Proponent" ........................................................................................ 7

2.71.    "Pro Rata Share" ................................................................................ 7

2.72.    "Scheduled" ........................................................................................ 8

2.73.    "Schedules" ......................................................................................... 8

2.74.    "Secured Claim" ................................................................................. 8

2.75.    "Unclaimed Property" ........................................................................ 8

**ARTICLE III.** CLASSIFICATION OF CLAIMS  AND INTERESTS AND GENERAL PROVISIONS ................................................................................................. 8

3.1.    General Rules of Classification ........................................................... 8

3.2.    Administrative Claims and Priority Tax Claims ................................. 9

3.3.    Satisfaction of Claims and Interests .................................................... 9

3.4.    Bar Date for Administrative Claims .................................................... 9

3.5.    Bar Date for Fee Claims ...................................................................... 9

**ARTICLE IV.** CLASSIFICATION OF CLAIMS AND INTERESTS ...................... 9

**ARTICLE V.** TREATMENT OF UNCLASSIFIED CLAIMS AND UNIMPAIRED CLASSES OF CLAIMS AND INTERESTS ....................................................... 10

5.1.    Treatment of Allowed Administrative Claims ................................... 10

5.2.    Treatment of Allowed Priority Tax Claims ....................................... 11

5.3.    Treatment of Other Priority Claims ................................................... 11

5.4.    Treatment of Allowed Secured Claims .............................................. 11

**ARTICLE VI.** TREATMENT OF IMPAIRED CLASSES OF ALLOWED CLAIMS AND INTERESTS ........................................................................................... 12

**ARTICLE VII.** PLAN CONSUMMATION .......................................................... 13

7.1.    Funding of Reserves ........................................................................... 13

7.2.    No Segregation of Available Cash ..................................................... 13

7.3.    Post Consummation Management ....................................................... 14

7.4.    Budget. ................................................................................................ 16

7.5.    Investments ......................................................................................... 16

7.6.    Indemnification and Insurance ........................................................... 16

7.7.     Resignation, Death or Removal ................................................................ 17

7.8.     Reports ...................................................................................................... 17

7.9.     No Revesting of Assets ............................................................................. 17

7.10.    Exoneration ............................................................................................... 17

7.11.    Setoffs ...................................................................................................... 18

7.12.    Avoidance Action ...................................................................................... 18

7.13.    Maintenance of Principal Office of FILB .................................................. 18

**ARTICLE VIII.** CLAIMS LITIGATION AND SETTLEMENTS ................................ 18

8.1.     Investor Settlement. ................................................................................. 18

8.2.     Insider Claims, Affiliate Claims, Intercompany Claims, Equity Interests. ............... 19

8.3.     Incorporation of Settlements ..................................................................... 19

8.4.     Compromise of Controversies ................................................................. 20

**ARTICLE IX.** EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................ 20

9.1.     Assumption or Rejection of Executory Contracts and Unexpired Leases ................. 20

9.2.     Bar Date for Rejection Damages ............................................................. 20

**ARTICLE X.** WAIVERS, RELEASES AND INDEMNIFICATION ............................... 20

10.1.    Waiver of Claims ...................................................................................... 20

10.2.    Releases.................................................................................................... 21

10.3.    Injunction ................................................................................................. 21

10.4.    Indemnification ......................................................................................... 22

10.5.    Exculpation .............................................................................................. 22

10.6.    Existing or Future claims .......................................................................... 22

10.7     Pre-Confirmation Settlement Agreements ................................................. 22

**ARTICLE XI.** DISTRIBUTIONS ........................................................................... 22

11.1.    Objections to Claims and Interests .......................................................... 22

11.2.    Amendments to Claims ............................................................................ 23

11.3.    Estimation of Disputed Claims and Disputed Interests ............................ 23

11.4.    Funding of the Plan .................................................................................. 23

11.5.    Transmittal of Distributions and Notices .................................................. 23

11.6.    Nontransferability and Abandonment of Interests .................................... 24

11.7.    Unclaimed Property .................................................................................. 24

11.8.    Withholding Taxes .................................................................................... 24

11.9.    Disputed Payment .................................................................................... 25

**ARTICLE XII.** EFFECTIVE DATE ....................................................................... 25

12.1.  Conditions to Confirmation .................................................................... 25

12.2.  Conditions to the Effective Date ............................................................ 25

12.3.  Waiver of Conditions ............................................................................. 25

**ARTICLE XIII.** RETENTION OF JURISDICTION ............................................... 25

13.1.  Claims and Interests ............................................................................... 25

13.2.  Injunction, etc. ....................................................................................... 25

13.3.  Fees ......................................................................................................... 26

13.4.  Dispute Resolution ................................................................................. 26

13.5.  Leases and Executory Contracts ............................................................ 26

13.6.  Actions .................................................................................................... 26

13.7.  General Matters ...................................................................................... 26

13.8.  Plan Modification ................................................................................... 26

13.9.  Aid Consummation ................................................................................. 26

13.10. Avoidance Actions ................................................................................. 26

13.11. Implementation of Confirmation Order ................................................. 26

13.12. Resolve Disputes .................................................................................... 26

13.13. Determine Tax Liability ......................................................................... 27

13.14. Final Order ............................................................................................. 27

**ARTICLE XIV.** MISCELLANEOUS PROVISIONS .............................................. 27

14.1.  Defects, Omissions, Amendments and Modifications ............................ 27

14.2.  Withdrawal or Revocation of the Plan ................................................... 27

14.3.  Successors and Assigns........................................................................... 27

14.4.  Final Orders ............................................................................................ 27

14.5.  Governing Law ....................................................................................... 27

14.6.  Notices .................................................................................................... 28

14.7.  Severability ............................................................................................. 28

14.8.  Interpretation, Rules of Construction, Computation of Time and Choice of Law ..... 28

# ARTICLE I.

## INTRODUCTION

      This Plan of Liquidation, dated November 25, 2013, is proposed by the Chapter 11 Trustee for the Debtor, Richard J. Davis.  Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, financial information, and for the results of the Trustee's investigation, a description of the Estate's assets (including litigation Claims), and a summary and analysis of the Plan.  All Holders of Claims and Interests entitled to vote on the Plan should review the Disclosure Statement before voting to accept or reject the Plan.  In addition, there are other agreements and documents which are referenced in the Plan and the Disclosure Statement and which will be filed before the hearing to approve the Disclosure Statement; these should also be reviewed.  The Disclosure Statement and all related solicitation materials must be approved by the Bankruptcy Court before votes can be solicited.

# ARTICLE II.

## DEFINITIONS

      In addition to such other terms as are defined in other Articles of the Plan and in the Glossary that is part of the Disclosure Statement, the following terms have the following meanings as used in the Plan:

      2.1.  "Administrative Bar Date" means the date fixed in the Administrative Bar Date Order by which all Persons asserting Administrative Claims arising on and after the Petition Date, but prior to the Confirmation Date, other than Excluded Claims, against the Debtor must have filed proofs of such Administrative Claims or requests for payment of such Administrative Claims or be forever barred from asserting such Claims against the Debtor, its property, or the Estate.

      2.2.  "Administrative Bar Date Order" means the Final Order entered by the Bankruptcy Court establishing the Administrative Bar Date.

      2.3.  "Administrative Claim" means a Claim for costs and expenses of administration asserted or arising under sections 503(b) or 507(b) of the Bankruptcy Code, or a Claim given the status of an Administrative Claim by Final Order of the Bankruptcy Court, and all fees due under 28 U.S.C. §  1930.

      2.4.  "Advisory Board" means the advisory board described in section 7.3(b) of the Plan.

      2.5.  "Affiliate" means an affiliate as such term is defined in section 101(2) of the Bankruptcy Code.

      2.6.  "Allowed Administrative Claim" means all or that portion of an Administrative Claim which either (a) has been allowed by a Final Order, or (b)(i) was incurred in the ordinary course of business during this Case to the extent due and owing without defense, offset or counterclaim of any kind; and (ii) proof of which was timely filed by the Administrative Bar

Date, or deemed timely filed under applicable law or by order of the Bankruptcy Court, pursuant to the Bankruptcy Code, Bankruptcy Rules or applicable law, or filed late, with leave pursuant to a Final Order of the Bankruptcy Court and either (1) is not objected to by the Objection Bar Date and is not otherwise a Disputed Claim, or (2) is otherwise allowed by a Final Order.  Unless otherwise specified herein or by Final Order of the Bankruptcy Court, "Allowed Administrative Claim" shall not, for purposes of computation of distributions under the Plan, include interest or similar charges accrued after the Petition Date.

2.7.    "Allowed Claim" means a Claim (other than an Allowed Administrative Claim) against the Debtor that is:

(a)    listed by the Debtor in the Schedules in an amount greater than zero and as being not contingent, unliquidated, disputed or undetermined, and that it is not otherwise a Disputed Claim;

(b)    a Claim, proof of which has been timely filed by the Bar Date, or deemed timely filed under applicable law or by order of the Bankruptcy Court, pursuant to the Bankruptcy Code, Bankruptcy Rules or applicable law, or filed late, with Bankruptcy Court leave pursuant to a Final Order, and either (i) is not objected to by the Objection Bar Date and is not otherwise a Disputed Claim, or (ii) is otherwise allowed by a Final Order or;

(c)    a Claim that is allowed:  (i) in a Final Order; or (ii) pursuant to the terms of the Plan.

Unless otherwise specified in this Plan or by Final Order of the Bankruptcy Court, "Allowed Claim" shall not, for purposes of computation of distributions under the Plan, include interest or similar charges accrued after the Petition Date except with respect to an Allowed Secured Claim as permitted by section 506(b) of the Bankruptcy Code.

2.8.    "Allowed Class ___ Claims" means all Allowed Claims in the referenced Class.

2.9.    "Allowed Interest" means Existing Shares that are not Disputed Existing Shares.

2.10. "Allowed Priority Tax Claim" means a Priority Tax Claim which has become an Allowed Claim.

2.11. "Available Cash" means all unrestricted Cash of the Debtor after deduction of: (a) Cash to be distributed to or reserved for Holders of Administrative Claims, Priority Claims, Priority Tax Claims, and Secured Claims; and (b) the Operating Reserve (as determined pursuant to section 8.1(b) of the Plan), with each such amount to be determined from time to time.

2.12. "Ballot" means the ballot to be distributed to Holders of Allowed Claims or Interests in each impaired Class by the Notice Agent, on which ballot such Holder may vote for or against the Plan.

2.13. "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101 et. seq., as the same was in effect on the Petition Date, as amended by any amendments applicable to these Cases.

2.14. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York or, to the extent that such Court ceases to exercise jurisdiction over these Cases, such other court or adjunct thereof that exercises jurisdiction over these Cases.

2.15. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, effective in accordance with the provisions of 28 U.S.C. § 2075, as now in effect or hereafter amended.

2.16. "Bar Date" means the respective dates fixed by Final Order of the Bankruptcy Court by which all Persons asserting a Claim against the Debtor, other than Administrative Claims, must have filed a proof of Claim or be forever barred from asserting a Claim against the Debtor, the Estate or its property, and from voting on the Plan or sharing in any distribution under it.

2.17. "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

2.18. "Case" means the Debtor's case pending in the Bankruptcy Court pursuant to chapter 11 of the Bankruptcy Code under case number 12-12796 (REG).

2.19. "Cash" means cash and cash equivalents, including, but not limited to, wire transfers, checks, other readily marketable direct obligations of the United States of America and other similar items.

2.20. "Claim" means a claim as such term is defined in section 101(5) of the Bankruptcy Code.

2.21. "Confirmation" means the entry of the Confirmation Order.

2.22. "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

2.23. "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

2.24. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

2.25. "Debtor" means FILB.

2.26. "Deemed Paid in Full" means, with respect to a Disputed Claim, that cash has been set aside to Pay in Full such Claim were it to become an Allowed Claim in either the amount asserted or such other lesser amount determined by the Bankruptcy Court.

2.27. "Disbursing Agent" means the Plan Administrator, or such other Person appointed as such by the Plan Administrator to disburse property pursuant to the Plan.

2.28. "Disclosure Statement" means the Trustee's Report and Disclosure Statement (including all exhibits and schedules annexed to it or referred to in it) that relates to this Plan and has been approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented.

2.29. "Disclosure Statement Hearing" means the hearing held by the Bankruptcy Court to consider whether the Disclosure Statement contains adequate information as required by section 1125 of the Bankruptcy Code.

2.30. "Disputed Claim" means:

(a)      if no proof of Claim or application for payment of an Administrative Claim or Fee Claim has been filed by the applicable bar date or deemed timely filed under applicable law:  (i) a Claim that has been listed on the Schedules as other than disputed, contingent or unliquidated, but as to which an objection has been filed in accordance with Section 11.1 of the Plan; or (ii) a Claim that has been listed on the Schedules as disputed, contingent or unliquidated or as having a zero or otherwise undetermined value; or

(b)      if a proof of Claim or request for payment of an Administrative Claim or Fee Claim has been filed by the applicable bar date, or has otherwise been deemed timely filed under applicable law or leave to file a late Claim has been granted pursuant to a Final Order: (i) a Claim that is listed on the Schedules as other than disputed, contingent or unliquidated, but as to which the nature or amount of the Claim as asserted in the proof of Claim varies from the nature and amount of such Claim as it is listed on the Schedules; (ii) a Claim as to which an objection has been filed in accordance with Section 11.1 of the Plan, and which objection has not been withdrawn or denied by a Final Order; (iii) a Claim (other than Administrative Claim) for which a proof of Claim has been filed, but for which no Claim has been listed on the Schedules; or (iv) a Claim for which a proof of Claim or request for payment has been filed in an amount which is contingent or unliquidated, in whole or in part.

2.31. "Distribution Date" means the date or dates set by the Plan Administrator from time to time to make payments to Holders under the Plan.

2.32. "Distribution Record Date" means the date the Order approving the Disclosure Statement is signed, unless otherwise ordered by the Bankruptcy Court.

2.33. "Effective Date" means the date specified as such by the Trustee, which date shall be no later than eleven (11) days after the Confirmation Date, or if the eleventh day is not a Business Day, the first Business Day thereafter, unless otherwise ordered by the Bankruptcy Court.

2.34. "Estate" means the estate created in this Case for the Debtor by section 541 of the Bankruptcy Code.

2.35. "Estimation Order" means an order or orders of the Bankruptcy Court estimating or otherwise determining the amounts to be placed into the Disputed Claim/Interest Reserve with respect to each Disputed Claim or Disputed Interest.  The "Estimation Order" may include the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in separate Estimation Orders.

2.36. "Excluded Claim" means those Administrative Claims listed in the Administrative Bar Date Order as excluded from compliance with the Administrative Bar Date, which may include Fee Claims and fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930 (a)(6).

2.37. "Existing FILB Stock" means all authorized, issued and outstanding interests in FILB.

2.38. "Fee Claims" means a Claim for compensation or reimbursement of expenses pursuant to sections 326, 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in these Cases.

2.39. "FILB" means Fletcher International Ltd., the Debtor.

2.40. "Final Distribution" means the distribution of the remaining Available Cash to Holders of Allowed Claims or Allowed Interests.

2.41. "Final Order" means an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which the time to appeal or seek review, rehearing, reargument or certiorari has expired and as to which no appeal or petition for review, rehearing, reargument, stay or certiorari is pending, or as to which any right to appeal or to seek certiorari, review, or rehearing has been waived, or, if an appeal, reargument, petition for review, certiorari or rehearing has been sought, the order or judgment of the Bankruptcy Court which has been affirmed by the highest court to which the order was appealed or from which the reargument, review or rehearing was sought, or certiorari has been denied, and as to which the time to take any further appeal or seek further reargument, review or rehearing has expired.

2.42. "510(b) Claims" means any Claim against the Debtor that is subject to subordination under section 510(b) of the Bankruptcy Code.

2.43. "510(c) Claims" means any Claim against the Debtor that is subordinated under Section 510(c) of the Bankruptcy Code pursuant to an order of the Bankruptcy Court.

2.44. "General Unsecured Claim" means any Claim that is not (a) an Administrative Claim, (b) a Priority Claim, (c) a Priority Tax Claim, (d) a Secured Claim, (e) a 510(b) Claim, (f) a Claim that the Bankruptcy Court determines should be treated or recharacterized as an Interest, (g) a Non-510(b) Claim, or (h) a 510(c) Claim.

2.45. "Governmental Unit" means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

2.46. "Holder" means a holder of a Claim or Interest.

2.47. "Holder of Record" means, as of the Distribution Record Date, a Holder entitled to receive a distribution pursuant to the terms of this Plan.

2.48. "Indemnified Person" means any Person who was or is made a party or is threatened to be made a party to, or is otherwise involved in any Proceeding by reason of the fact that they, or a person for whom they are a legal representative, is or was the Trustee, Plan Administrator, or a member of the Advisory Board whether in an official capacity or in any other capacity.

2.49. "Initial Distribution" means the first distribution of Available Cash to Holders of Allowed Claims that occurs on or after the Effective Date.

2.50. "Initial Distribution Date" means the date the Initial Distribution is made.

2.51. "Interest" means an "equity security," as such term is defined in section 101(16) of the Bankruptcy Code.

2.52. "Insider" means an insider as such term is defined in section 101(31) of the Bankruptcy Code.

2.53. "Investor Settlement" means the settlement agreement described in section 8.1 of the Plan.

2.54. "Liquidation Recoveries" means the amounts recovered from time to time by the Trustee or Plan Administrator, as the case may be, on account of the liquidation of the Debtor's assets (including recoveries in any Proceedings), net of the costs and expenses of such recoveries; provided, however, that Liquidation Recoveries shall include, with respect to Pooled Claims, only FILB's share of the Pooled Claim Recoveries as set forth in the Investor Settlement.

2.55. "Notice Agent" means the Person or Persons designated by an order of the Bankruptcy Court to distribute, collect and tally Ballots from Holders of Claims and Interests, which entity may be the Trustee.

2.56. "Objection Bar Date" means the later of:  (a) 60 days after the Effective Date; (b) 60 days after the filing of a proof of Claim or Interest, and (c) such other period of limitation for objecting to a Claim or Interest as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules or an order of the Bankruptcy Court.

2.57. "Operating Reserve" means such amount as is reserved for the Estate to meet its obligations as they become due (to the extent such obligations have not otherwise been reserved for), and to prosecute all Claims, causes of action or rights of the Estate.  The Operating Reserve may be increased or decreased by the Plan Administrator from time to time.

2.58. "Paid in Full," "Payment in Full," or "Pay in Full" means, with respect to an Allowed Claim, payment in cash of the Allowed Amount thereof or, if applicable, the Agreed Upon Distribution.

2.59. "Person" means any individual, corporation, partnership, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, the Trustee, the Plan Administrator, or any other entity.

2.60. "Petition Date" means June 29, 2012.

2.61. "Plan" means this Plan of Liquidation.

2.62. "Plan Administrator" means the Person designated or appointed as such under the Plan, and may be the Trustee.

2.63. "Pooled Claims" means the Claims listed in Exhibit A to the Plan.

2.64. "Pooled Claim Recoveries" means all amounts received on account of Pooled Claims, net of the costs and expenses (including professional fees and expenses) of securing such recoveries.

2.65. "Pool Interest" means the percentage interest in Pooled Claim Recoveries assigned to each party to the Investor Settlement.

2.66. "Priority Claim" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or Priority Tax Claim.

2.67. "Priority Tax Claim" means any Claim for taxes, interest and penalties against the Debtor entitled to priority pursuant to section 407(a)(8) of the Bankruptcy Code.

2.68. "Proceeding" means any threatened, pending or completed action, suit, contested matter, adversary proceeding or other proceeding, whether civil, criminal, administrative or investigative.

2.69. "Professionals" means those Persons:  (a) employed pursuant to an order of the Bankruptcy Court in accordance with sections 326, 327 and 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Effective Date pursuant to sections 326, 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(2) of the Bankruptcy Code.

2.70. "Proponent" means the Trustee.

2.71. "Pro Rata Share" means, as of the date of calculation, with respect to an Allowed Claim of any Class of Claims, a proportion equal to the ratio of:

(i)       the Allowed Claim to

(ii)      the sum of:

(1)      the aggregate of all Allowed Claims of that particular Class as of such date; plus

(2)      the aggregate of all Claims in that particular Class as set forth in the Estimation Order (except to the extent that such Claims have been expunged or otherwise disallowed in full) that are not described in clause (1) above, on such date.

For purposes of calculating the Pro Rata Shares for Distributions to Holders of Class 3 and Class 4 Claims, total Class 3 and Class 4 Allowed Claims shall be aggregated."

2.72. "Scheduled" means set forth in the Schedules.

2.73. "Schedules" means each of the Schedules of Liabilities and Statement of Affairs, respectively, filed by the Debtor on or about September 24, 2013, as they have been or may hereafter be amended from time to time.

2.74. "Secured Claim" means that portion of a claim against the Debtor that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtor in and to property of the Debtor's Estate to the extent of the value of the Holder's interest in such property as of the relevant determination date; or (b) subject to setoff under section 553 of the Bankruptcy Code, to the extent of the amount subject to setoff, each as determined by sections 506(a) and 1111(b) of the Bankruptcy Code and Bankruptcy Rule 3012.

2.75. "Unclaimed Property" means any Cash unclaimed on or after the twelfth month following the applicable Distribution Date.  Unclaimed Property shall include:  (a) checks (and the funds represented thereby) mailed to a Holder of Record and returned as undeliverable without a proper forwarding address; (b) uncashed checks (and the funds represented thereby); or (c) checks (and the funds represented thereby) not mailed or delivered to a Holder of Record because no address was available to which to mail or deliver such property.

## ARTICLE III.

### CLASSIFICATION OF CLAIMS
### AND INTERESTS AND GENERAL PROVISIONS

3.1.   General Rules of Classification.  Generally, a Claim or Interest is classified in a particular Class for voting and distribution purposes only to the extent the Claim or Interest qualifies within the description of that Class, and is classified in another Class or Classes to the extent the Claim or Interest qualifies within the description of such other Class or Classes. Unless otherwise provided, to the extent a Claim or Interest qualifies for inclusion in a more specifically defined Class and a more generally defined Class, it shall be included in the more specifically defined Class.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

3.2.    Administrative Claims and Priority Tax Claims.  Administrative Claims and Priority Tax Claims have not been classified and are excluded from the Classes set forth in Article IV in accordance with section 1123(a)(1) of the Bankruptcy Code.

3.3.    Satisfaction of Claims and Interests.  The treatment to be provided for respective Allowed Claims or Interests pursuant to this Plan shall be in full satisfaction, settlement, release and discharge of such respective Claims or Interests.

3.4.    Bar Date for Administrative Claims.  Proofs of Administrative Claims and requests for payment of Administrative Claims which have arisen on or after the Petition Date must be filed and served on the Trustee, pursuant to the procedures set forth in the Administrative Bar Date Order. Objections to proofs of Claim or applications for payment of Administrative Claims must be filed and served on the Trustee (and the Plan Administrator after the Effective Date) and the applying party by the later of:  (a) one (1) day prior to the Initial Distribution Date, and (b) 60 days after the Filing of the applicable proof of Claim or request for payment of Administrative Claim, unless otherwise ordered or extended by the Bankruptcy Court. Notwithstanding anything to the contrary herein, no proof of Claim or application for payment of an Administrative Claim need be filed for the allowance of any:  (a) Administrative Claims constituting a Fee Claim (except as provided in Section 3.5 below); or (b) fees of the United States Trustee arising under 28 U.S.C. § 1930.  All Claims described in clause (b) of the immediately preceding sentence shall be paid by the Debtor when due.  Fee Claims shall be paid in accordance with Section 3.5 below.

3.5.    Bar Date for Fee Claims.  Any Person or entity (including a Professional) that fails to file a proof of Claim, application or compensation estimate on account of a Fee Claim as and to the extent required by the Bankruptcy Court shall be forever barred from asserting such Claim against the Debtor, the Estate, or their property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Claim.

## ARTICLE IV.

## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the following Classes.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the following Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the claim or Interest qualifies within the description of such other Classes.

| Class | Name | Description |
|---|---|---|
| 1 | Other Priority Claims | Claims entitled to priority in payment under Section 507(a)(4),(5),(6),(7),(9) or (10) of the Bankruptcy Code. |
| 2 | Secured Claims | Claims secured by a valid, perfected and enforceable lien. |
| 3 | General Unsecured Claims | All general unsecured claims other than claims in Classes 4A, 4B, 4C, 4D, 5, and 6, which are separately described below. |
| 4A | Claims of Arbitrage and the Arbitrage JOLs | Claims held by Arbitrage and the Arbitrage JOLs.  Note:  Will not include funds' or investors' legal fees and other expenses. |
| 4B | Claims of Leveraged and the Leveraged JOLs | Claims held by Leveraged and the Leveraged JOLs.  Note: Will not include funds' and investors' legal fees and other expenses. |
| 4C | Claims of Alpha and the Alpha JOLs | Claims held by Alpha, the Alpha JOLs.  Note:  Will not include funds' and investors' legal fees and other expenses. |
| 4D | Claims of the Louisiana Pension Funds | Claims held by the LA Pension Funds.  Note: Will not include funds' and investors' legal fees and other expenses. |
| 5 | Insider Claims | Claims held by Insiders of the Debtor. |
| 6 | Intercompany Claims | Claims held by Affiliates of the Debtor other than Claims in Classes 4A, 4B, 4C and 4D. |

## ARTICLE V.

## TREATMENT OF UNCLASSIFIED CLAIMS AND
## UNIMPAIRED CLASSES OF CLAIMS AND INTERESTS

5.1.   Treatment of Allowed Administrative Claims.  Unless otherwise provided for in this Plan, each Holder of an Allowed Administrative Claim shall be paid by the Debtor 100% of the unpaid allowed amount of such Administrative Claim in Cash on or as soon as reasonably practicable after the later of:  (a) the Effective Date; and (b) the first Business Day after the date that is 30 calendar days after the date such Administrative Claim becomes an Allowed Administrative Claim.  Notwithstanding the immediately preceding sentence, (y) Administrative Claims for services rendered representing liabilities incurred by the Estate in the ordinary course of business during the Case, subject to compliance with any applicable bar date, shall be paid in accordance with the terms and conditions of any agreements relating thereto; and (z) the Holder of an Allowed Administrative Claim may receive such other, less favorable treatment as may be agreed upon by the Holder and the Trustee or the Plan Administrator.

10

5.2.    Treatment of Allowed Priority Tax Claims.  Each Holder of an Allowed Priority Tax Claim shall be paid, at the sole option of the Trustee or  Plan Administrator, by the Debtor (a) equal cash payments made on the last Business Day of every three month period following the Effective Date, over a period not exceeding six years after the assessment of the tax on which such Claim is based, totaling the principal amount of such Claim plus simple interest on any outstanding balance from the Effective Date, calculated at the interest rate available on 90 day United States Treasuries on the Effective Date; (b) such other treatment authorized by the Bankruptcy Court; or (c) 100% of the unpaid amount of such Allowed Claim in Cash on or as soon as reasonably practicable after the later of:  (i) the Effective Date, and (ii) the first Business Day after the date that is 30 calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim.  Any Claim or demand for penalty shall be disallowed pursuant to the Plan, and the Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtor, the Estate or its property.

5.3.    Treatment of Other Priority Claims (Class 1).

(a)    Class 1 is unimpaired under the Plan.  Unless otherwise agreed to by the Holder of an Allowed Other Priority Claim and the Trustee or the Plan Administrator, each Holder of an Allowed Priority Claim shall be paid 100% of the unpaid amount of such Allowed Claim in Cash on or as soon as reasonably practicable after the later of:  (a) the Effective Date, or (b) the first Business Day after the date that is 30 calendar days after the date such Priority Claim becomes an Allowed Priority Claim.

(b)    Holders of Allowed Class 1 Claims shall be deemed to have accepted the Plan.

5.4.    Treatment of Allowed Secured Claims (Class 2).

(a)    Class 2 is unimpaired under the Plan.  To the extent not previously satisfied in full pursuant to a Final Order of the Bankruptcy Court allowing such Claim, the Holder of an Allowed Secured Claim shall receive Cash in the full amount of such Allowed Secured Claim on or as soon as reasonably practicable after the later of (i) the Effective Date; or (ii) the first Business Day after the date that is 30 calendar days after the date such Secured Claim becomes an Allowed Secured Claim.

(b)    Holders of Allowed Class 2 Claims shall be deemed to have accepted the Plan.

# ARTICLE VI.

## TREATMENT OF IMPAIRED CLASSES OF ALLOWED CLAIMS AND INTERESTS

Except as otherwise ordered by the Bankruptcy Court, Holders of impaired Claims and Interests shall be entitled to vote to accept or reject the Plan.  The Trustee reserves the right to seek a determination that one or more of the following Classes are unimpaired.  If the Bankruptcy Court determines that such Class is unimpaired, such Class shall be deemed to have accepted the Plan regardless of how the Class voted.

| Class | Name | Treatment |
|-------|------|-----------|
| 3 | General Unsecured Claims | Each holder of an Allowed General Unsecured Claim will have the option of receiving (i) a Pro Rata Share of the Liquidation Recoveries or (ii) cash in full payment for its Allowed Claim of $10,000 or less. |
| 4A | Claims of Arbitrage and the Arbitrage JOLs | The Claims held by Arbitrage and the Arbitrage JOLs will be compromised, settled and allowed in the amount of $110 million, in accordance with the Investor Settlement. Arbitrage and the Arbitrage JOLs will receive their Pool Interest in the Pooled Claim Recoveries and a Pro Rata Share of the Liquidation Recoveries. |
| 4B | Claims of Leveraged and the Leveraged JOLs | The Claims held by Leveraged and the Leveraged JOLs will be compromised, settled and allowed in the amount of $5 million, in accordance with the Investor Settlement.  Leveraged and the Leveraged JOLs will receive their  Pool Interest in the Pooled Claims Recoveries and a Pro Rata Share of the Liquidation Recoveries. |
| 4C | Claims of Alpha and the Alpha JOLs | The Claims held by Alpha and the Alpha JOLs will be compromised, settled and allowed in the amount of $1.6 million, in accordance with the Investor Settlement. Alpha and the Alpha JOLs will receive their Pool Interest in the Pooled Claims Recoveries and a Pro Rata Share of the Liquidation Recoveries. |

12

| Class | Name | Treatment |
|---|---|---|
| 4D | Claims of the Louisiana Pension Funds | Claims of the Louisiana Pension Funds will be allowed in the amount of $3 million, provided that the Louisiana Pension Funds' vote to accept the Plan.  If the Louisiana Pension Funds vote to accept the Plan, they will receive a Pro Rata Share of the Liquidation Recoveries.  If the Louisiana Pension Funds do not vote to accept the Plan, their claim shall be listed as disputed and shall be determined by the Bankruptcy Court.  The Louisiana Pension Funds will have no interest in the Pooled Claim Recoveries. |
| 5 | Insider Claims | Unless otherwise agreed by the Trustee or ordered by the Bankruptcy Court, all insider claims will be subordinated, cancelled, or extinguished. |
| 6 | Intercompany Claims | Unless otherwise agreed by the Trustee or ordered by the Court, all Intercompany Claims other than claims in Classes 4A, 4B, 4C and 4D will be subordinated, cancelled, or extinguished. |
| Equity | Equity Interests | All Equity Interests in the Debtor will be subordinated, cancelled, or extinguished.  To the extent not cancelled or extinguished, Equity Interests shall not receive a distribution until all other classes of Allowed Claims have been satisfied in full. |

## ARTICLE VII.

## PLAN CONSUMMATION

In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means of implementing and consummating the Plan.

7.1.    Funding of Reserves.  To the extent not otherwise provided for herein or ordered by the Bankruptcy Court, the Trustee or the Plan Administrator, as the case may be, shall estimate appropriate reserves of Cash to be set aside in order to pay or reserve for the payment of actual expenses and liabilities of the Estate after the Effective Date and expenses which accrued prior to the Effective Date, including Fee Claims, Administrative Claims, Priority Claims, Priority Tax Claims and Secured Claims.  The Plan Administrator shall release Available Cash, to the extent available, to fund distributions.

7.2.    No Segregation of Available Cash.  The Trustee or Plan Administrator, as the case may be, shall not be obligated to physically segregate and maintain separate accounts for

13

reserves.  Reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Plan Administrator to determine Available Cash and amounts to be paid to Holders.

       7.3.    Post Consummation Management.

       (a)    Plan Administrator.

       (i)    Appointment.  The Trustee shall be retained as the Plan Administrator pursuant to the terms set forth in this Plan.  The Trustee shall be deemed discharged as of the Effective Date.

       (ii)    Powers.  On the Effective Date, and except to the extent otherwise ordered by the Bankruptcy Court, the Plan Administrator shall be deemed the sole Interest Holder (for all purposes other than with respect to the rights of Interest Holders established under the Plan), officer and director of the Debtor.  Subject to those rights and duties specifically reserved to the Advisory Board under the Plan, the Plan will be administered and actions will be taken in the name of the Debtor through the Plan Administrator, irrespective of whether the Debtor is dissolved.  In general, the Plan Administrator shall act for the Debtor and the Estate in a fiduciary capacity as applicable to a board of directors, subject to the provisions hereof.  Subject to the rights and duties specifically reserved to the Advisory Board under the Plan, the duties and powers of the Plan Administrator with respect to the Debtor shall include the following:

       (1)    To exercise all power and authority that may be exercised, commence all Proceedings that may be commenced and take all actions that may be taken, by any officer, director or Interest Holder of the Debtor with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and Interest Holder, including, without limitation, the amendment of the certificate of incorporation, by-laws or other applicable organizational document of the Debtor and the dissolution of the Debtor;

       (2)    To take all reasonable steps to maximize Liquidation Recoveries including, without limitation, commencing, settling or otherwise resolving all Claims;

       (3)    To continue to maintain accounts, make distributions and take other actions consistent with the Plan, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Debtor, even in the event of the dissolution of the Debtor;

       (4)    To collect and liquidate all assets of the Debtor and the Estate, make Distributions and wind-up the affairs of the Debtor;

       (5)    To make decisions regarding the retention or engagement of professionals and consultants by the Estate, including a Disbursing Agent, and to pay their fees and expenses;

(6)    To take such steps to safeguard Estate funds or investments as the Plan Administrator, in his discretion, deems prudent; and

(7)    To take all other actions not inconsistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable with respect to administering the Plan.

(iii)    Compensation and Reimbursement.  The Plan Administrator shall be compensated as follows:

(1)    The Plan Administrator will charge will the same discounted hourly rate charged by the Trustee during the Bankruptcy.

(2)    The Plan Administrator will cap his fees at $30,000 a month, subject to provisions (3)-(5) set forth below.

(3)    If total Liquidation and Pooled Claim Recoveries exceed $50 million, the Plan Administrator will be entitled to receive payment for all hours for which he was not compensated due to the cap.

(4)    If total Liquidation and Pooled Claim Recoveries exceed $125 million in the aggregate, the Plan Administrator will be entitled receive an additional payment equal to 25 % of the total amount of billed time based upon the Trustee's ordinary hourly rate.

(5)    The Plan Administrator will be reimbursed for all out-of-pocket expenses.

(b)    Advisory Board.

(i)    Appointment.  The Advisory Board shall be constituted on the Effective Date in accordance with section 1129 of the Bankruptcy Code and shall consist of three members:  the Trustee, as Plan Administrator, and on behalf of FILB; Tammy Fu, of Zolfo Cooper, on behalf of the MBTA and Alpha; and Robert McMahon, of Ernst & Young, on behalf of Leveraged and Arbitrage.  If the Louisiana Pension Funds become parties to the Investor Settlement, then they shall be entitled to appoint one representative to the Advisory Board.  Decisions of the Advisory Board require the affirmative votes of at least two of its three members or, if a fourth member is added as provided in this Plan, then decisions of the Advisory Board shall require the affirmative votes of at least three of its four members.

(ii)    Powers.  All Claims and causes of action of the Estate (including Pooled Claims) that have not been resolved prior to the Effective Date shall not be prosecuted, settled, or otherwise resolved without the approval of the Advisory Board.

(iii)    Advisory Board Bylaws.  The Advisory Board shall adopt and operate in accordance with the Advisory Board Bylaws.

15

(iv)    Reimbursement.  Each member of the Advisory Board shall be entitled to reimbursement for all reasonable out of pocket expenses incurred in the discharge of their duties as members of the Advisory Board.

(v)    Nomination of Successors.  In the event that a member of the Advisory Board resigns or becomes otherwise unable to serve, the party that nominated such nominee or member shall have the right to nominate such nominee or member's replacement; provided, however, that as of the Effective Date, the Plan Administrator shall succeed to the rights and obligations of the Trustee under this Section.

(c)    Court Approval.  On and after the Effective Date, and unless otherwise ordered by the Bankruptcy Court, (i) the Plan Administrator and members of the Advisory Board may receive the compensation and reimbursement of expenses provided for under the Plan without further order of the Bankruptcy Court; (ii) the Plan Administrator and the Advisory Board may retain or engage professionals and consultants on behalf of the Debtor, and pay the expenses and fees of such professionals and consultants, without further Bankruptcy Court approval.  Prior to making Final Distributions, the Plan Administrator shall be entitled to seek an order of the Bankruptcy Court providing for a final accounting and a release and discharge of the Plan Administrator.

7.4.    Budget.  The Plan Administrator shall prepare budgets at least semi-annually, based on anticipated revenues and expenses, and shall submit the budgets to the Advisory Board for approval.

7.5.    Investments.  All Cash and Available Cash shall be invested in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by the Bankruptcy Court.

7.6.    Indemnification and Insurance.

(a)    The Estate shall indemnify and hold harmless any Indemnified Person who was or is made a party or is threatened to be made a party to, or is otherwise involved in any Proceeding, or any appeal in such a Proceeding or any inquiry or investigation that could lead to such a Proceeding against any and all expenses, liability and loss (including attorneys' fees, judgments, excise and similar taxes and punitive damages, fines or penalties and amounts paid in settlement) actually incurred or suffered by him or her in connection with the investigation, defense, appeal or settlement of any such Proceeding, if such Indemnified Person acted in good faith and in a manner the Indemnified Person reasonably believed to be in, or not opposed to, the best interests of the Estate and, with respect to any criminal action or proceeding, had no reasonable cause to believe his or her conduct was unlawful.  The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Indemnified Person did not act in good faith and in a manner which is reasonably believed to be in or not opposed to the best interests of the respective Estate or, with respect to any criminal action or proceeding, that the Indemnified Person had reasonable cause to believe that the conduct was unlawful.

(b)    The right to indemnification conferred in this section 7.6(b) shall be a contractual right, and shall include the right to be paid or reimbursed by the Estate for any

expenses incurred in investigating, defending, appealing or settling, being a witness in or participating in any such Proceeding in advance of the final disposition of such Proceeding and without any determination as to the Indemnified Person's ultimate entitlement to indemnification. Expenses (including attorneys' fees) incurred by an Indemnified Person in defending a Proceeding shall be paid by the Estate in advance of the final disposition of such proceeding upon receipt of a written undertaking, by or on behalf of such Indemnified Person, to repay all amounts so advanced if it shall ultimately be determined that he or she is not entitled to be indemnified by the Estate under this section 7.6(b) or otherwise.

(c)    Subject to approval of the Bankruptcy Court, the Plan Administrator and the Advisory Board are authorized to purchase commercially reasonable liability insurance respecting the implementation of their duties and obligations under this Plan.

7.7.    Resignation, Death or Removal. The Plan Administrator may resign at any time upon written notice to the United States Trustee and the Bankruptcy Court. In the event of any such resignation, or the death or incapacity of a Plan Administrator, the Bankruptcy Court shall select a replacement. No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his predecessors. Every successor Plan Administrator appointed pursuant hereto shall execute, acknowledge and deliver to his predecessor and to the Debtor an instrument in writing accepting such appointment hereunder, and thereupon such successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his predecessor.

7.8.    Reports. Unless otherwise ordered by the Bankruptcy Court, the Plan Administrator shall file semi-annual status reports until such time as the Debtor's case has been closed. The Plan Administrator shall not be required to file monthly operating reports.

7.9.    No Revesting of Assets. Except as is otherwise expressly provided herein, on the Effective Date, title to all property and assets of the Estate including, without limitation, any Claims, rights and causes of action of the Debtor and the Estate and any moneys held in escrow or separate segregated accounts during the pendency of the Case, shall not revest in the Debtor, shall not be released or waived and shall remain property of the Estate.

7.10. Exoneration. Neither the Trustee, the Plan Administrator, nor members of the Advisory Board nor any of their agents, Professionals, attorneys, financial advisors, accountant, or other professionals employed by any of them, shall have or incur any liability to any Person for any act taken or omission occurring in good faith in connection with or related to (a) formulating, implementing, confirming or consummating the Plan (including soliciting acceptances or rejections thereto); (b) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into in connection with the Plan; or (c) any distributions made pursuant to the Plan, except for acts constituting willful misconduct or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. The entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that such parties shall have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to section 1125(e) and 1129(a)(3) of the Bankruptcy Code, with respect to the foregoing.

7.11. Setoffs.  Except as otherwise provided in the Plan, agreements entered into in connection therewith, the Confirmation Order, or in agreements previously approved by Final Order of the Bankruptcy Court, the Plan Administrator may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, offset against the distribution on any Claim or Interest, before any distribution is made on account of such Claim or Interest, any and all of the Claims, rights and causes of action of any nature that the Debtor or Estate may hold against the Holder of such Claim or Interest; provided, however, that neither the failure to effect such a setoff, the allowance of any claim hereunder, any other action or omission of the Trustee or Plan Administrator, nor any provision of this Plan, shall constitute a waiver or release by the Debtor, the Estate, the Trustee or Plan Administrator of any such Claims, rights and causes of action that the Debtor or the Estate may possess against such Holder.  To the extent the Trustee or Plan Administrator fails to set off against a creditor or such Interest Holder and seeks to collect a Claim from such creditor or such Interest Holder after a distribution is made pursuant to the Plan, the Plan Administrator shall be entitled to full recovery on the Claim against such creditor or Interest Holder.

7.12. Avoidance Actions.  Except as expressly set forth in the Plan, Confirmation shall not constitute the waiver of any right, Claim or cause of action belonging to the Debtor or its Estate against any Person, including, but not limited to, any right, Claim or cause of action respecting the avoidance of a transfer under section 544, 547, 548, 549 or 553(b) of the Bankruptcy Code or otherwise described or referenced in the Disclosure Statement.  All such rights, Claims and causes of action shall remain property of the Estate under the Plan.

7.13. Maintenance of Principal Office of FILB.

(a)     FILB retains the right to maintain its principal offices in Bermuda which may perform the functions described in Treas. Reg. sec. 1.864-2(c)(2)(iii), including but not limited to, maintenance of its principal corporate records and books of account, auditing its books of accounts, disbursements of dividends, certain legal and accounting fees, directors' fees, if any, conducting meetings of its shareholders and board of directors, and making redemptions and distributions with respect to its stock.  In the event that the Plan Administrator has custody of any funds of FILB which would be distributable to the shareholders of such corporation, the Plan Administrator retains the right to remit such funds to the corporation's principal office for distribution to such shareholders.

(b)     FILB and each of its respective directors and shareholders hereby acknowledges and confirms that, notwithstanding any agreement or understanding to the contrary, the Plan Administrator and the Advisory Board shall have such power and authority, as set forth in the Plan, to prosecute, settle or otherwise resolve any and all Claims and causes of action on behalf of and in the name of FILB, and the Plan Administrator and the Advisory Board shall take any other action required or appropriate in connection with the Plan.

## ARTICLE VIII.

## CLAIMS LITIGATION AND SETTLEMENTS

8.1.  Investor Settlement.

(a)      The Trustee, Arbitrage, the Arbitrage JOLs, Leveraged, the Leveraged JOLs, Alpha, the Alpha JOLs, and the MBTA have entered into the Investor Settlement pursuant to which they have agreed to pool their respective rights, title and interest in and to the Pooled Claims, and to cooperate with the Trustee, the Plan Administrator, and the Advisory Board with respect to the prosecution, settlement or other resolution of the Pooled Claims.  A list of the Pooled Claims is attached as Exhibit A.  The Investor Settlement also resolves the claims of the parties to it with respect to one another, fixes the amounts of their allowed proof of Claim against FILB, and provides for the modification of their proofs of Claim as may be necessary to conform them to the terms of the Investor Settlement.  (The amounts of their allowed Claims are set forth in Article VI of the Plan.)  The parties to the Investor Settlement will cooperate fully in the assessment and prosecution of the Pooled Claims and will share investigative materials to the extent allowed by any common interest agreements and applicable court orders.

(b)      Recoveries on account of Pooled Claims will be used first, to pay recovery costs, including attorney's fees and other professional fees; second, to reimburse FILB for any advances of recovery costs made by it; third, to fund the Operating Reserve; and fourth, to the parties to the Investor Settlement, as follows:

(i)      26.8% to the Estate, for distribution in accordance with the Plan;

(ii)      26.8% to the Arbitrage JOLs to be distributed in accordance with the orders entered in the Arbitrage Liquidation Proceedings in the Cayman Islands;

(iii)      26.8% to the Leveraged JOLs to be distributed in accordance with the orders entered in the Leveraged Liquidation Proceedings in the Cayman Islands; and

(iv)      19.6% to the Alpha JOLs to be distributed in accordance with the orders entered in the Alpha Liquidation Proceedings in the Cayman Islands.

(c)      The percentages set forth in 8.1(b) may be amended at any time.  If the change is made prior to the Effective Date, any such change will require the consent of any adversely affected party, or order of the Court, after notice and a hearing, or both if necessary.  If the change is made after the Effective Date, any change will require the unanimous consent of the Advisory Board, or an order of the Court, after notice and a hearing, or both, if necessary.

(d)      The Investor Settlement will be presented to the Court for approval as part of the Confirmation.

8.2.  Insider Claims, Affiliate Claims, Intercompany Claims, Equity Interests.  For the reasons set out in the Disclosure Statement, the Trustee objects to all Claims by Insiders and Affiliates, and to Intercompany Claims except those asserted by Holders of Class 4A, 4B, 4C and 4D, and to Equity Interests.  The Trustee will seek to subordinate or disallow all such Claims and Interests as part of the Confirmation.

8.3.  Incorporation of Settlements.  The terms of the Investor Settlement shall be deemed incorporated into and made a part of the Plan as if set forth in full.

8.4.   Compromise of Controversies.  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan, including the Investor Settlement.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each such compromise or settlement, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, and any Person holding Claims against the Debtor, and are fair, equitable and within the range of reasonableness.

## ARTICLE IX.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1.   Assumption or Rejection of Executory Contracts and Unexpired Leases.  On the Effective Date, all executory contracts and unexpired leases of the Debtor shall be rejected pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except:  (i) any executory contract or unexpired lease that is the subject of a separate motion to assume filed pursuant to section 365 of the Bankruptcy Code before the entry of the Confirmation Order, which motion is not thereafter withdrawn or denied; (ii) all executory contracts or unexpired leases assumed by order of the Bankruptcy Court entered before the Confirmation Date and not subsequently rejected pursuant to an order of the Bankruptcy Court; or (iii) any agreement, obligation, security interest, transaction or similar undertaking that the Trustee or Plan Administrator, as the case may be, believes is not an executory contract or lease that is later determined by the Bankruptcy Court to be an executory contract or unexpired lease under section 365 of the Bankruptcy Code, which agreements shall be subject to assumption or rejection within 30 days of any such determination. Any order entered after the Confirmation Date by the Bankruptcy Court, after notice and hearing, authorizing the rejection of an executory contract or unexpired lease even if such rejection takes place after the Effective Date as provided above, shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief were granted and such order were entered prior to the Confirmation Date.

9.2.   Bar Date for Rejection Damages.  Any Claim arising from the rejection of any executory contract or unexpired lease under the Plan shall be forever barred and shall not be enforceable against the Debtor or the Estate unless a proof of Claim is filed and served on the Plan Administrator and the Trustee within 30 days after the date of notice of the entry of the order of the Bankruptcy Court rejecting the executor contract or unexpired lease (which may include, if applicable, the Confirmation Order) or such other date established by the Bankruptcy Court.

## ARTICLE X.

## WAIVERS, RELEASES AND INDEMNIFICATION

10.1. Waiver of Claims.  As of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as otherwise expressly provided in the Confirmation Order or this

Plan, including without limitation sections 10.6 and 10.7 hereof, all Persons who have held, hold or may hold Claims against or Interests in the Debtor shall be deemed, by virtue of their receipt of distributions and other treatment contemplated under the Plan, to have forever covenanted with the Debtor and the Trustee and with each of their present agents, employees, representatives, financial advisors, accountants and attorneys, to waive and not to (a) sue, or otherwise seek any recovery from the Debtor, the Estate, or the Trustee, or any of their present agents, employees, representatives, financial advisors, accountants or attorneys, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, based upon any act or occurrence or failure to act taken before the Effective Date arising out of the business or affairs of the Debtor, or (b) assert any Claim, obligation, right or cause of action and liability which any such Holder of a Claim against or Interest in the Debtor may be entitled to assert against any such Person, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transaction or occurrence taking place on or before the Effective Date in any way relating to the Debtor, this Case, or this Plan, to the full extent permitted by applicable law.

10.2. Releases. As of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as otherwise expressly provided in the Confirmation Order or this Plan, including without limitation sections 10.6 and 10.7 hereof, all Persons who, directly or indirectly, hold or who have held any Claim against or Interest in the Debtor shall hereby release the Debtor, the Estate, the Trustee, and their present employees, agents, representatives, financial advisors, attorneys and accountants from (a) any and all claims or liabilities arising from actions taken in their capacity as such; and (b) any and all Claims, obligations, rights, causes of action and liabilities which any Holder of a Claim against or Interest in the Debtor may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transaction or occurrence taking place on or before the Effective Date in any way relating to the Debtor, this Case, or this Plan, to the full extent permitted by applicable law.

10.3. Injunction. Except as otherwise provided in this Plan or the Confirmation Order, including without limitation sections 10.6 or 10.7 hereof, and subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in any of the Debtor are, with respect to any such Claims or Interests, permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the Estate or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against the Debtor, or the Estate or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, or the Estate or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (d) asserting any right of setoff, subrogation, or recoupment of any kind, directly or

21

indirectly, against any obligation due the Debtor, or the Estate or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

10.4. Indemnification.  Notwithstanding anything to the contrary in this Plan, the obligations of the Debtor and its Estate to indemnify the Trustee or the professional persons retained by the Trustee, pursuant to the Debtor's certificate of incorporation, by-laws, or other organizational documents, applicable statutes, and preconfirmation agreements respecting all present and future actions, suits, and proceedings against any of such indemnified Persons, based upon any act or omission related to service with, for, or on behalf of such Debtor at any time, as such obligations were in effect at the time of any such act or omission, in all cases net of applicable insurance proceeds, shall not be discharged or impaired by confirmation or consummation of the Plan but shall survive unaffected by the confirmation and consummation of the Plan.

10.5. Exculpation.  The Trustee, the Plan Administrator, the Advisory Board and the professional persons retained by them shall have no liability to any Holder of a Claim against or Interest in the Debtor for any act or omission in connection with or arising out of their administration of the Plan or the property to be distributed under the Plan except for willful misconduct or gross negligence and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

10.6. Existing or Future claims.  Notwithstanding anything to the contrary contained in sections 10.1, 10.2, or 10.3, the waiver of claims, releases and injunctions provided for therein shall not operate to waive, release or enjoin any claims of the Trustee, the Estate, the parties to the Investor Settlement (current or future), or the Louisiana Pension Funds with respect to any claims other than against the Debtor.

10.7. Pre-Confirmation Settlement Agreements.  Notwithstanding anything to the contrary contained in sections 10.1, 10.2, or 10.3, the waiver of claims, releases and injunctions provided for therein shall not affect any pre-confirmation settlement agreements entered into by the Trustee and approved by order of the court or operate to expand, diminish or otherwise have any effect on any party to those agreements' rights, claims, or defenses.

## ARTICLE XI.

## DISTRIBUTIONS

11.1. Objections to Claims and Interests.  An objection to a Claim or Interest shall be in writing and may only be filed (a) by the Trustee or the Plan Administrator, as the case may be, at any time on or before the Objection Bar Date; and (b) as to any other appropriate party in interest, at any time prior to the Effective Date (to the extent such party is entitled to do so under applicable law, as a result of the Trustee's consent or otherwise).  The objecting party shall serve a copy of such objection upon the Holder of the Claim or Interest to which it pertains and the Trustee or Plan Administrator, as the case may be.

11.2. Amendments to Claims.  A Claim may be amended prior to the Confirmation Date only as agreed upon by the Trustee and the Holder of such Claim, or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law.  After the Confirmation Date, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the Holder of such Claim solely to decrease, but not to increase, the amount or priority.  Any new or amended Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Trustee, Advisory Board, or Plan Administrator, unless the Claim Holder has obtained prior Bankruptcy Court authorization for the filing.

11.3. Estimation of Disputed Claims and Disputed Interests.  The Trustee or Plan Administrator, as the case may be, and any other appropriate party in interest (to the extent such party is entitled to do so under applicable law, as a result of the Trustee's consent or otherwise) shall have the right to seek an order or orders from the Bankruptcy Court, which may be the Estimation Order, estimating the maximum dollar amount of Allowed and Disputed Claims and Interests.  This estimate shall be used to calculate and fix distributions to Holders of Allowed Claims and Allowed Interests.  Such a procedure may also be utilized, in the sole discretion of the Trustee or Plan Administrator, for Administrative Claims, Priority Claims, Priority Tax Claims, or other Claims.  No distributions on account of a Claim or Interest shall be made unless and until such Claim or Interest becomes an Allowed Claim or Allowed Interest.

11.4. Funding of the Plan.

(a)    The Cash distributions to be made pursuant to the Plan and the Cash necessary to fund reserves for Priority Claims, Priority Tax Claims, Administrative Claims and the Available Cash Reserves will be available from funds realized in connection with past operations of the Debtor and the liquidation of the non-Cash assets of the Debtor, including the Liquidation Recoveries and the Debtor's share of Pooled Claim Recoveries.

(b)    In order to fund litigation of the Pooled Claims, the Advisory Board in its discretion may (i) enter into financing agreements with parties and non-parties to the Investor Settlement, on such terms as the Advisory Board approves, including, without limitation, providing premiums to the funding party, granting superpriority status to the funding party, reallocating claims among the Holders of Allowed Class 4 Claims, or providing other consideration, or (ii) hold back a portion of the distributions otherwise due to Holders of Allowed Class 4 Claims; provided, however, that in the event Class 4 Allowed Claims are reallocated, the aggregate amount of Class 4 Allowed Claims cannot be increased above the aggregate amount set forth in Article VI of the Plan.

(c)    There will be no substantive consolidation of the Debtor and the Feeder Funds – Alpha, Leveraged, and Arbitrage – under the Plan because of, among other things, the cross-border relationship of the Funds and the Trustee's belief that it is not appropriate.  The liquidation of the Feeder Funds continues to be overseen by their respective JOLs in the Cayman Islands.

11.5. Transmittal of Distributions and Notices.

23

(a)    Any property or notice which a Person is or becomes entitled to receive pursuant to the Plan shall be delivered by regular mail, postage prepaid, in an envelope addressed to that Person at the address indicated on any notice of appearance filed by that Person or his authorized agent prior to the Effective Date.  If no notice of appearance has been filed, notice shall be sent to the address indicated on a properly filed proof of Claim or, absent such a proof of Claim, the address that is Scheduled for that Person.  The date of distribution shall be the date of mailing, and property distributed in accordance with this Section shall be deemed delivered to such Person regardless of whether such property is actually received by that Person. Distributions shall only be made to Holders of Record, unless otherwise ordered by the Bankruptcy Court.

(b)    A Holder of a Claim or Interest may designate a different address or beneficiary for notices and distributions by notifying the Trustee or the Plan Administrator of that address in writing.  The new address shall be effective only upon receipt.

(c)    Except to the extent otherwise provided herein, payments under the Plan shall commence on the Initial Distribution Date and thereafter shall be made on the applicable Distribution Date.  Payments may be made, at the sole option of the Trustee or Plan Administrator, as the case may be, by wire transfer or check.

11.6. Nontransferability and Abandonment of Interests.  Unless otherwise ordered by the Bankruptcy Court, the Debtor shall not be required to honor any

(a)    transfer of an Interest made in violation or contravention of an agreement with the Debtor or applicable law governing such transfer; or

(b)    request for or notice of abandonment, whether given on or after the Petition Date or prior to the Petition Date unless, with respect to this clause (b), such request or notice

(i)    has been given in accordance with applicable law and agreement, and

(ii)    is confirmed in writing to the Plan Administrator prior to the Initial Distribution Date.

11.7. Unclaimed Property.  If any distribution remains unclaimed for a period of one year after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder entitled thereto, such Unclaimed Property shall be forfeited by such Holder whereupon all right, title and interest in and to the Unclaimed Property shall immediately and irrevocably be available for future distributions to Holders of Allowed Claims against and Interests in the respective Debtor and the Holder previously entitled to such Unclaimed Property shall cease to be entitled thereto.

11.8. Withholding Taxes.  Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

24

11.9. Disputed Payment.  If any dispute arises as to the identity of a Holder who is to receive any distribution, the Disbursing Agent may, in lieu of making such distribution to such Person, make such distribution into an escrow account until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute.

## ARTICLE XII.

## EFFECTIVE DATE

12.1. Conditions to Confirmation.  The following conditions shall be met prior to the occurrence of Confirmation:

      (a)      An order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered.

12.2. Conditions to the Effective Date.  The following conditions shall be met prior to the occurrence of the Effective Date:

      (a)      An order confirming the Plan, as such Plan may have been modified by the Proponent, shall have been entered.

12.3. Waiver of Conditions.

      (a)      General.  The Trustee, in his sole discretion, shall have the right to waive any conditions to Confirmation or the Effective Date.

      (b)      Mootness.  The Trustee and the Plan Administrator shall enjoy the benefit of the mootness doctrine with respect to any conditions waived by the Trustee.

## ARTICLE XIII.

## RETENTION OF JURISDICTION

Following Confirmation and until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Plan Administrator, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

13.1. Claims and Interests.  To determine the allowability, classification, or priority of Claims against and Interests in the Debtor;

13.2. Injunction, etc.  To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending

before the Bankruptcy Court in the Cases on or before the Effective Date with respect to any Person;

13.3. **Fees.**  To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods on or before the Effective Date;

13.4. **Dispute Resolution.**  To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of distributions hereunder;

13.5. **Leases and Executory Contracts.**  To determine any and all motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, including post Effective Date assignments or to determine any motion to reject an executory contract or unexpired lease pursuant to section 9.1 of this Plan where (a) the parties cannot resolve the cure amount therefor, or (b) the Trustee had mistakenly determined that any such agreement was not an executory contract or unexpired lease, and to determine the allowance of any Claims resulting from the rejection of executory contracts and unexpired leases;

13.6. **Actions.**  To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted prior to the closing of the Case, including any remands;

13.7. **General Matters.**  To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code;

13.8. **Plan Modification.**  To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

13.9. **Aid Consummation.**  To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the full extent authorized by the Bankruptcy Code

13.10.     **Avoidance Actions.**  To enable the prosecution of any and all proceedings which have been or may be brought prior to the Effective Date to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Estate may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws except as may be waived pursuant to the Plan;

13.11.     **Implementation of Confirmation Order.**  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

13.12.     **Resolve Disputes.**  To resolve any disputes concerning whether a Person had sufficient notice of the Case, the applicable Bar Date, the Disclosure Statement Hearing, the Confirmation Hearing, for any purpose;

13.13.　　Determine Tax Liability.　To determine any tax liability pursuant to section 505 of the Bankruptcy Code; and

13.14.　　Final Order.　To enter a Final Order closing the Case.

## ARTICLE XIV.

### MISCELLANEOUS PROVISIONS

14.1. Defects, Omissions, Amendments and Modifications.

(a)　　Pre-Confirmation Modification.　This Plan may be altered, amended or modified before the Confirmation Date as provided in section 1127 of the Bankruptcy Code.

(b)　　Post-Confirmation Immaterial Modification.　The Plan Administrator or the Trustee, as the case may be, may, with the approval of the Bankruptcy Court and without notice to all Holders of Claims and Interests, insofar as it does not materially and adversely affect the interest of Holders of Claims, correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

(c)　　Post-Confirmation Material Modification.　This Plan may be altered or amended after the Confirmation Date by the Trustee or the Plan Administrator in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims or Interests, provided that such alteration or modification is after a hearing as provided in section 1127 of the Bankruptcy Code.

(d)　　Post-Confirmation Addition of Members to the Investor Settlement.　No new member may be added to the Investor Settlement without the unanimous consent of the Advisory Board, and if necessary, order of the court, or (ii) without unanimous consent of the Advisory Board, by order of the Court, after notice and a hearing.

14.2. Withdrawal or Revocation of the Plan.　The Trustee reserves the right to revoke or withdraw the Plan prior to the Effective Date in whole or in part.　If the Trustee revokes or withdraws the Plan, then the result shall be the same as if the Confirmation Order were not entered and the Effective Date did not occur to the extent withdrawn or revoked.

14.3. Successors and Assigns.　The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors or assigns of such Person.

14.4. Final Orders.　The Trustee or the Plan Administrator, as the case may be, may waive any requirement in the Plan for a Final Order.

14.5. Governing Law.　Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York.

14.6. Notices.  Subject to Section 11.5, all notices, requests or demands for payments provided for in this Plan shall be in writing and shall be deemed to have been given when personally delivered by hand or deposited in any general or branch post office of the United States Postal Service or received by courier service or telecopier.  Notices, requests and demands for payments shall be addressed and sent, postage prepaid or delivered, to:

> Richard J. Davis, Esq.
> 415 Madison Avenue, 11th Floor
> New York, New York  10017
> (646) 553-1365

With copies to:

> Luskin, Stern & Eisler LLP
> Eleven Times Square
> New York, New York  10035
> Attention:  Michael Luskin, Esq.
> (212) 597-8200

or to any other address designated by the Plan Administrator by notice to each affected Holder of an Allowed Claim or Interest at the last known address according to the Debtor's books and records or at any other address designated by a Holder of an Allowed Claim on its proof of Claim, provided that any notice of change of address shall be effective only upon receipt thereof by the Trustee or the Plan Administrator.

14.7. Severability.  Except as to terms which would frustrate the overall purpose of this Plan, and should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

14.8. Interpretation, Rules of Construction, Computation of Time and Choice of Law.

(a)    The provisions of the Plan shall control over any descriptions thereof contained in the Disclosure Statement.

(b)    Any term used in the Plan that is not defined in the Plan, either in Article II (Definitions), in the Disclosure Statement or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules.  Without limiting the foregoing, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded hereby.

(c)    The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular article, section, subsection or clause contained in the Plan, unless the context requires otherwise.

(d)    Unless specified otherwise in a particular reference, all references in the Plan to Articles, Sections and Exhibits are references to articles, sections and exhibits of or to the Plan.

(e)    Any reference in the Plan to a contract, document, instrument, release, bylaw, certificate, indenture or other agreement being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

(f)    Any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been amended, restated, modified or supplemented as of the Effective Date.

(g)    Captions and headings to articles and sections in the Plan are inserted for convenience of reference only and shall neither constitute a part of the Plan nor in any way affect the interpretation of any provisions hereof.

(h)    Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter.

(i)    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(j)    All exhibits to the Plan are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when filed.

(k)    Subject to the provisions of any contract, certificate, bylaws, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

(l)    No Admissions.  Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor or the Trustee with respect to any matter set forth herein, including, without limitation, liability on any Claim, the impairment of any Claim or the propriety of a Claim's classification.


                                            /s/ Richard J. Davis
Dated:    New York, New York                Richard J. Davis,
          November 25, 2013                 Chapter 11 Trustee

<u>Exhibit  A</u>

<u>Pooled Claims</u>

Claims to be pooled are those by any of the parties to the Investor Settlement against the below listed persons and entities and their respective parents, subsidiaries, affiliates, officers, directors, agents, employees, representatives, financial advisors, accountants and attorneys.

AF
Citco
Duhallow
Eisner
FAM
Insiders of the Funds or any Fletcher-Related Entity
Grant Thornton
Quantal
RF Services
Richcourt Funds[*]
Skadden
SS&C

---

[*] Claims against the Richcourt entities are not Pooled Claims to the extent they relate to redemptions by the Richcourt entities and recovery on them would result in direct claims against the recovering fund.