**Hearing Date and Time: March 26, 2014 at 9:45 a.m. (ET)**
**Objection Deadline: March 19, 2014 at 4:00 p.m. (ET)**

Michael Luskin
Lucia T. Chapman
Stephan E. Hornung
LUSKIN, STERN & EISLER LLP
Eleven Times Square
New York, New York 10036
Telephone:  (212) 597-8200
Facsimile:  (212) 974-3205

*Attorneys for the Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------------------------x
                                        :
In re:                                  :          Chapter 11
                                        :
FLETCHER INTERNATIONAL, LTD.,           :
                                        :          Case No. 12-12796 (REG)
                                        :
              Debtor.                   :
---------------------------------------------------------x
```

## CHAPTER 11 TRUSTEE'S OBJECTION TO
## PROOF OF CLAIM NO. 3 FILED BY DUFF & PHELPS, LLC

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

    Richard J. Davis, the Chapter 11 Trustee in this Chapter 11 case, submits this

objection (the "**Objection**") to Proof of Claim No. 3 (the "**Disputed Claim**") filed by Duff &

Phelps, LLC ("**Duff & Phelps**") pursuant to Sections 105(a) and 502(b) of title 11 of the United

States Code (the "**Bankruptcy Code**") and Rules 3001(c) and 3007 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**").  In support of the Objection, the Trustee

respectfully represents as follows:

    1.    Duff & Phelps claims to be owed an aggregate amount of $78,376.06 from

the Debtor on account of valuation services performed on behalf of Fletcher Asset Management,

Inc. ("**FAM**") and Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**").  The Disputed

Claim filed by Duff & Phelps should be disallowed because Duff & Phelps has no contractual or

other relationship with the Debtor.  Its claim – to the extent it has one – should be asserted

against FAM.

### Jurisdiction and Venue

2.       This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.

This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court

under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are

Sections 105(a) and 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001(c) and 3007.

### Relevant Facts

3.       On November 9, 2012, the Court entered an order (the "**Bar Date Order**")

requiring that all proofs of claim be filed in this case by no later than January 18, 2013 (the "**Bar**

**Date**").  The Bar Date Order further directed that that each Proof of Claim must:

> (i) be written in the English language; (ii) be denominated in
> lawful currency of the United States as of the Petition Date; (iii)
> conform substantially with the Proof of Claim Form; (iv) set forth
> with specificity the legal and factual basis for the alleged claim;
> (v) include supporting documentation or an explanation as to why
> documentation is not available; and (vi) be signed by the claimant
> or, if the claimant is not an individual, by an authorized agent of
> the claimant.

[Docket No. 147].

4.       In accordance with the Bar Date Order, Duff & Phelps filed the Disputed

Claim before the Bar Date.  A true and correct copy of the Disputed Claim is attached as

Exhibit A.  The Disputed Claim is a general unsecured claim in the amount of $78,376.06 based

upon two separate engagement letters: one with FAM and another with Skadden.

5.       Duff & Phelps attaches an invoice addressed to FAM in the amount of

$55,978.25 for "services rendered in connection with the valuation of certain financial

investments as of [December 31, 2010]." In support of the invoice, Duff & Phelps attaches an

engagement letter between Duff & Phelps and FAM dated November 9, 2011. The engagement

letter provides for Duff & Phelps' retention by FAM to "support [FAM] in their review of

valuation process, methodologies, and resulting conclusions of fair value . . . of certain

investments . . . held by [FAM] as of [December 31, 2010]." The agreement was not signed by

the Debtor. Duff & Phelps includes no further information or supporting documentation

regarding the allegedly unpaid invoice.

6.      Duff & Phelps also attaches an invoice addressed to Skadden in the

amount of $22,109.06 for "services rendered in connection with the Fletcher loan valuation." In

support of the invoice, Duff & Phelps attaches an engagement letter between Duff & Phelps and

Skadden dated April 2, 2011. The engagement letter provides for Duff & Phelps' retention by

Skadden to "assist [Skadden] in its rendering of services to [FAM] in connection with the

valuation of an inter-company loan." The engagement letter further provides that "[Duff &

Phelps] will bill [FAM] via invoice to [Skadden]. It is acknowledged that payment is the sole

responsibility of [FAM], not [Skadden]." The agreement was not signed by the Debtor. Duff &

Phelps includes no further information or supporting documentation regarding the allegedly

unpaid invoice.

## **Relief Requested**

7.      The Trustee files this objection pursuant to Sections 105(a) and 502(b) of

the Bankruptcy Code and Bankruptcy Rules 3001(c) and 3007 seeking to disallow and expunge

the Disputed Claim.

## Basis for Relief Requested

8.     A filed proof of claim is "deemed allowed, unless a party in interest . . .

objects." 11 U.S.C. § 502(a). If an objection refuting at least one of the claim's essential

allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.

*See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom.*, *Peter J.*

*Solomon Co., L.P. v. Oneida Ltd.*, Case No. 09-CV-2229, 2010 U.S. Dist. LEXIS 6500

(S.D.N.Y. Jan. 22, 2010). The holder of a proof of claim bears the burden of persuasion to

establish a valid claim against a debtor. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 174

(3d Cir. 1992.).

9.     The Disputed Claim should be disallowed because it fails as a matter of

law. Section 502(b)(1) of the Bankruptcy Code provides that a claim may not be allowed to the

extent that "such claim is unenforceable against the debtor and property of the debtor, under any

agreement or applicable law . . ." 11 U.S.C. 502(b)(1). Under New York State law, a non-party

to a contract cannot be sued for breaching its terms. *See*, *e.g.*, *Pac. Carlton Dev. Corp. v. 752*

*Pac.*, LLC, 62 A.D.3d 677, 678 (2d Dep't 2009) (dismissing breach of contract claim asserted

against non-party to agreement); *HDR, Inc. v. Int'l Aircraft Parts, Inc.*, 257 A.D.2d 603, 604 (2d

Dep't 1999) (same).

10.     Here, Duff & Phelps' claim relates to valuation services performed on

behalf of FAM pursuant to two engagement letters: one with FAM and another with Skadden.

The Debtor did not sign either agreement and both are clear on their face that FAM is

responsible for paying Duff & Phelps' fees. Duff & Phelps has not attached any agreements

with the Debtor, and, to the Trustee's knowledge, none exist. Nor has Duff & Phelps suggested

an alternative theory under which the Debtor might be liable for the allegedly unpaid invoices.

Accordingly, Duff & Phelps has no claim against the Debtor and the Court should disallow and expunge the Disputed Claim in its entirety.

## Reservation of Rights

11.    The Trustee continues to conduct his investigation and to evaluate claims filed against the Debtor and reserves the right to amend, modify or supplement this Objection and to file additional objections to the Disputed Claim or any other claims (whether filed or scheduled or not) which may be asserted by Duff & Phelps, upon the conclusion of his investigation.

## Conclusion

WHEREFORE, the Trustee respectfully requests that the Court enter an order, substantially in the form of Exhibit B attached hereto, disallowing and expunging the Disputed Claim in its entirety and grating such other and further relief as the Court deems just and proper.

Dated: New York, New York            LUSKIN, STERN & EISLER LLP
       February 19, 2014


                                     By:  /s/ Michael Luskin
                                          Michael Luskin
                                          Lucia T. Chapman
                                          Stephan E. Hornung

                                     Eleven Times Square
                                     New York, New York 10036
                                     Telephone:  (212) 597-8200
                                     Facsimile:   (212) 974-3205

                                     *Attorneys for the Chapter 11 Trustee*

<u>**Exhibit A**</u>

**Proof of Claim**

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT   Southern District of New York | PROOF OF CLAIM |
|---|---|

**Name of Debtor:**
Fletcher International, Ltd.

**Case Number:**
12-12796 (REG)

DEC - 6 2012

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
*Duff & Phelps, LLC*

**Name and address where notices should be sent:**
Natalie Giugni
Duff + Phelps, LLC
55 East 52nd Street, 31st floor
New York, NY 10055
**Telephone number:** 212-781-0493  **email:** natalie.giugni@duffandphelps.com

**COURT USE ONLY**

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
*(If known)*

Filed on:_____

**Name and address where payment should be sent (if different from above):** *Same as above*

Telephone number:                 email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**   $ 78,376.06

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Services performed
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** 0055

**3a. Debtor may have scheduled account as:**
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**

**Value of Property:** $_____

**Annual Interest Rate**_____% ☐ Fixed  or  ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
$_____

**Basis for perfection:** _____

**Amount of Secured Claim:**   $_____

**Amount Unsecured:**   $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**
$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/11)

2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☒ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
                              (Attach copy of power of attorney, if any.)    or their authorized agent.    (See Bankruptcy Rule 3005.)
                                                                              (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: *Christopher Matteson*
Title: *Assistant General Counsel*
Company: *Duff + Phelps LLC*
Address and telephone number (if different from notice address above):    (Signature)    *12/6/12*
*55 East 52nd Street, 31st floor*                                         (Date)
*New York, NY 10055*

Telephone number: *212 450 2812* email: *chris.matteson@duffandphelps.com*

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10 (Official Form 10) (12/11)    3

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

# DUFF&PHELPS

Federal ID: 36-4090666

| | |
|---|---|
| Mr. ██████ ██████ | |
| Director | |
| Fletcher Asset Management, Inc. | |
| 48 Wall Street, 5th Floor | |
| New York, NY 10005-2911 | |

| | |
|---|---|
| Invoice No: | SF00093947 - 25764 |
| Client No: | 90055 |
| Invoice Date: | January 5, 2012 |
| Reference: | 32346 |
| Terms: | Payment Due Upon Receipt |

**Description**

Invoice for services rendered in connection with the valuation of certain financial investments as of December 31, 2010.

| | |
|---|---|
| Contact: | **Louisa Galbo** |
| Engagement No: | 32346 |
| Total Fees: | $ 55,000.00 |
| Total Expenses: | $ 978.25 |
| **Total Amount Due:** | **$ 55,978.25** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Federal ID: 36-4090666

# DUFF&PHELPS

Fletcher Asset Management, Inc.
48 Wall Street, 5th Floor
New York, NY 10005-2911

| | |
|---|---|
| **Invoice No:** | SF00093947 - 25764 |
| Client No: | 90055 |
| Invoice Date: | January 5, 2012 |
| Reference: | 32346 |
| Terms: | Payment Due Upon Receipt |

**Payment Via Wiring:**

DUFF & PHELPS, LLC
Bank of America
ABA: 026009593
Account # 1233035833
SWIFT: BOFAUS3N

**Payment Via Lockbox:**

DUFF & PHELPS, LLC
12595 COLLECTION CENTER DRIVE
CHICAGO, IL 60693

**Total Amount Due:**                $ 55,978.25

# DUFF&PHELPS

Mr. ███████████                                    November 9, 2011
Director
Fletcher Asset Management Inc.
48 Wall Street, 5th Floor
New York, NY 10005-2911
United States

## Subject: Engagement Letter for Valuation Services in Connection with Certain Financial Investments as of December 31, 2010

Dear Mr. ██████:

This engagement letter (the "Engagement Letter") confirms that we, Duff & Phelps, LLC ("Duff & Phelps"), have been retained by you, Fletcher Asset Management Inc. ("Fletcher" or the "Company"), to provide the services (the "Services") set out below in connection with certain investments held by Fletcher as of December 31, 2010 (the "Valuation Date"). Collectively, this arrangement is the "Engagement".

## Scope of Services

A. We will support Fletcher in their review of valuation process, methodologies, and resulting conclusions of fair value (as defined below) ("Fair Value") of certain investments (the "Investments") held by Fletcher as of the Valuation Date. We understand that Duff & Phelps will review investments in ███████████████████████), ████████████████████████████, ████████████ ██████████████, ███████ ██████████████████████ and ██████████████████████████████ (collectively, the "Investments") as of the Valuation Date. Due to limited position in ██████ we will provide a high level review on ████ investment only.

B. As the Board of Directors of the Company (the "Board") is ultimately responsible for determining the fair value (as defined below) of each Investment in good faith, Duff & Phelps will not be responsible for determining Fair Value; our role is limited to providing positive assurance with respect to the Fair Value determination made by the Board for each Investment.

C. In the course of our valuation analysis, we will use and rely upon financial and other information, including prospective financial information, obtained from the Company and from various public, financial, and industry sources. Our analysis is dependent on such information being complete and accurate in all material respects. We will not

Duff & Phelps, LLC              T +█████████        ██████@duffandphelps.com
345 California Street           F +█████████        www.duffandphelps.com
Suite 2100
San Francisco, CA 94104

accept responsibility for the accuracy and completeness of such provided information.

## Definition of Value

We will define Fair Value in accordance with Canadian GAAP where Fair Value is defined as *"the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date"*.

## Timetable, Staffing and Fees

We are ready to begin working on the engagement, and liaise closely with you to meet your timeframe. Our ability to comply with your deadlines is contingent, however, upon the timely receipt of the financial data requested by us and the availability of the appropriate members of the Company's deal teams.

This Engagement will be under the overall supervision of ████████, Managing Director at Duff & Phelps. We will call upon additional experienced staff as required. Based upon our understanding of the Engagement, we estimate that our fees will be $45,000 for the initial analysis. We understand during the review of each Investment that we may meet with your auditors and/or third party valuation providers to address any questions they may have regarding the results of our review. Our fees for this portion of the Engagement will be based on hours incurred at our standard hourly rates.

Our fees for the Services to be provided reflect the complexity of the Engagement, the time scale for its completion, the caliber of staff engaged and the value of the Services provided. In addition to our fees, you will be billed for reasonable out-of-pocket expenses, including travel, lodging, subsistence and general office charges, some of which will be allocated. We bill on a periodic basis.

This estimate does not include any time in excess of four hours related to supporting our draft or final (and related methodology) upon review by the Internal Revenue Service, the Securities and Exchange Commission and/or any other authorized third party recipients. Such review related time will be billed on an hourly basis in accordance with the prevailing hourly rates for the individuals involved. In addition, we have no responsibility to update the write-up, analysis or any other document relating to this Engagement for any events or circumstances occurring subsequent to the date of such report, analysis or other document. Any such subsequent consultations or work shall be subject to arrangements at our then standard fees plus expenses.

**Acknowledgement and Acceptance**

In accordance with Duff & Phelps policy, it is necessary that we receive an executed copy of this Engagement Letter and the attached Terms and Conditions (to which this Engagement is subject) prior to commencement of the Services. If the scope and terms of the Engagement Letter and the attached Terms and Conditions are acceptable, please acknowledge your acceptance by signing the confirmation below and returning this Letter to us at the above address and emailing ██████@duffandphelps.com) or faxing (██████████) a copy to us.

Please do not hesitate to contact me if you have any questions or amendments.

Yours sincerely,



By: ████████
Managing Director
Duff & Phelps, LLC

Enclosures:

Duff & Phelps, LLC Standard Terms and Conditions

**Confirmation of Terms of Engagement**

**Subject: Engagement Letter for Valuation Services in Connection with
Certain Financial Investments as of December 31, 2010**

Having read this Engagement Letter from Duff & Phelps, LLC and the attached Terms and
Conditions, we acknowledge acceptance of and agree to engage Duff & Phelps, LLC in
accordance with the terms and provisions of this Engagement Letter and the attached Terms
and Conditions.

Date: 11/16/11

Signed:
Title:           Director
On Behalf of:    Fletcher Asset Management Inc.

## Attachment to the Engagement Letter

### Terms and Conditions

The following are the terms and conditions (the "Terms and Conditions") on which we will provide the services (the "Services") set forth in the attached engagement letter (the "Engagement Letter"). Together, the Terms and Conditions and the Engagement Letter are referred to as the "Contract," which forms the entire agreement between Duff & Phelps, LLC ("Duff & Phelps") and you relating to the Services.

### Fees

1. Our invoices are payable upon receipt. If we do not receive payment of any invoice within 45 days of the invoice date, we shall be entitled, without prejudice to any other rights that we may have, to suspend provision of the Services until all sums due are paid in full.

2. If any amounts payable hereunder are not paid within thirty (30) days when due, such amounts shall accrue interest at a rate equal to the lesser of two percent (2%) per month or the highest interest rate allowed under the law of New York. In the event that we are required to initiate a lawsuit or hire attorneys to collect any past due amounts, in addition to any other rights and remedies available to us, we shall be entitled to reimbursement of our attorneys fees and other costs of collection.

3. We have no responsibility to update any Report, analysis or any other document relating to this Engagement for any events or circumstances occurring subsequent to the date of such Report, analysis or other document. Any such subsequent consultations or work shall be subject to arrangements at our then standard fees plus expenses.

4. Either party may request changes to the Services. We shall work with you to consider and, if appropriate, to vary any aspect of the Engagement, subject to payment of reasonable additional fees and a reasonable additional period to provide any additional services. Any variation to this Contract, including any variation to fees, services, or time for performance of the Services, shall be set forth in a separate engagement letter executed by both parties which shall form part of this Contract.

5. Our performance of the Services is dependent upon you providing us with accurate and timely information and assistance as we may reasonably require from time to time. You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete. You shall notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon. The inability to supply us with the agreed upon information in a useable form within the amount of time reasonably required by us may increase fees and delay completion. Additionally, in the event unforeseen complications are encountered which would significantly increase fees; we would discuss these with you and await your approval before proceeding.

## Termination

6.  The Investors may terminate this Contract at any time. Duff & Phelps may terminate this contract in the event that either Investor has breached any material provision of this contract and such breach has not been cured within ten (10) days after receipt of written notice from Duff & Phelps.

7.  Upon termination of this Contract, each party shall, upon written request from the other, return to the other all property and documentation of the other that is in its possession, except that we shall be entitled to retain one copy of such documents in order to maintain a professional record of our involvement in the Engagement, subject to our continuing confidentiality obligations hereunder.

8.  The provisions included within "Fees", "Preservation of Confidential Information" and "Other Terms and Provisions" shall survive the termination or expiration of this Contract.

## Valuation Work Products and Report

9.  At the conclusion of the Engagement, we will prepare a draft Report detailing our valuation procedures and the results of our work. This Report will include, but will not be limited to, a narrative description of the methodologies used to estimate the Fair Value. Once you have read the draft Report and we have received your comments on it, we will issue our final Report bearing the signature of Duff & Phelps, LLC.

10. Prior to the finalization of the Services and the Report, we will confirm facts with you. We may do this by providing you with drafts of the valuation analysis and the Report under the condition that in no circumstances are such drafts to be copied or given to other persons, except that it may be provided to the Investors' independent auditors. We may also require a letter from you confirming representations made by you and Management upon which we have relied. In addition, with respect to any information provided by you and Management, we will require from you a written confirmation that, to the best of your knowledge and belief, such information was accurate and that no significant information essential to the Services or Report has been withheld from us.

11. Our Report will be based upon the information provided by you. We assume no responsibility and make no representations with respect to the accuracy or completeness of any information provided by you and on your behalf. There will usually be differences between estimated and actual results because events and circumstances frequently do not occur as expected, and those differences may be material. You acknowledge that no reliance shall be placed on draft Reports, conclusions or advice, whether oral or written, issued by us since the same may be subject to further work, revision and other factors which may mean that such drafts are substantially different from any final Report or advice issued.

12. Any advice given or Report issued by us is provided solely for your use and benefit and only in connection with the Services that are provided hereunder. Except as required by law, you shall not provide such Report to any third party, except that it may be provided to the Investors' independent auditors.

Notwithstanding the foregoing, (i) you shall not refer to us either directly by name or indirectly as an independent valuation service provider (or by any other indirect reference or description), or to the Services, whether in any public filing or other document, without our prior written consent, which we may at our discretion grant, withhold, or grant subject to conditions, and (ii) in addition to the foregoing prohibitions and requirements with respect to all third parties, submission of our report or any portion thereof to, or responding to any comment letter issued by, the Securities and Exchange Commission or its staff, or any written or verbal references to us, our Report or to the Services in such a response is subject to you providing us with prior notice, and allowing us to provide input as to the content of such response. In no event, regardless of whether consent or pre-approval has been provided, shall we assume any responsibility to any third party to which any advice or Report is disclosed or otherwise made available.

13.   It is understood and agreed that the final Report resulting from this Engagement shall remain your property. To the extent that Duff & Phelps utilizes any of its property (including, without limitation, any hardware or software) in connection with this Engagement, such property shall remain the property of Duff & Phelps, and you shall not acquire any right or interest in such property or in any partially completed Report. We shall have ownership (including, without limitation, copyright ownership) and all rights to use and disclose our ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting our business (collectively, "Know-How") regardless of whether such Know-How is incorporated in any way in the final Report.

14.   The scope of the final Report we will provide pursuant to the terms of this Contract will be limited to the scope as described in the Scope of Services section. One or more additional issues may exist that could affect the Federal tax treatment of the subject matter of our final Report. Our final Report will not consider or provide a conclusion with respect to any of those issues. With respect to any significant Federal tax issue outside the scope of the final Report, the final Report will not be written, and cannot be used, by anyone for the purpose of avoiding Federal tax penalties.

15.   The Report or any results of our Services shall not constitute a Solvency Opinion or a Fairness Opinion and may not be relied upon by you or any other party as such. Furthermore, any analyses we perform should not be taken to supplant any procedures that you should undertake in your consideration of the transaction contemplated in connection with this engagement or any other past present or future transaction.

16.   By its very nature, valuation work cannot be regarded as an exact science and the conclusions arrived at in many cases will of necessity be subjective and dependent on the exercise of individual judgment.

## Preservation of Confidential Information

17.    Neither party will disclose to any third party without the prior written consent of the other party any confidential information which is received from the other party for the purposes of providing or receiving the Services which if disclosed in tangible form is marked confidential or if disclosed otherwise is confirmed in writing as being confidential or, if disclosed in tangible form or otherwise, is manifestly confidential. Both of us agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving the Services under this or any other contract between us.

18.    These restrictions will not apply to any information which: (a) is or becomes generally available to the public other than as a result of a breach of an obligation by the receiving party; (b) is acquired from a third party who owes no obligation of confidence with respect to the information; or (c) is or has been independently developed by the recipient.

19.    Notwithstanding the foregoing, either party will be entitled to disclose confidential information of the other (i) to our respective insurers or legal advisors, or (ii) to a third party to the extent that this is required, by any court of competent jurisdiction, or by a governmental or regulatory authority or where there is a legal right, duty or requirement to disclose, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than two (2) business days notice in writing is first given to the other party, provided that each party shall minimize such disclosure to the confidentiality restrictions contained herein.

## Other Terms and Provisions

20.    Except in the event of our gross negligence, willful misconduct or fraud, in no event shall we be liable to you (or any person claiming through you) or the Manager under this Contract, under any legal theory, for any amount in excess of three times the fees incurred for the quarter in which an alleged liability arises. In no event shall we be liable to you or the Manager under this Contract under any legal theory for any consequential, indirect, lost profit or similar damages relating to or arising from our Services provided under this Contract.

21.    You and the Manager accept and acknowledge that any legal proceedings arising from or in connection with this Contract (or any variation or addition thereto) must be commenced within one (1) year from the date when you or the Manager become aware of the facts, which give rise to our alleged liability. You and the Manager also agree that no action or claims will be brought against any Duff & Phelps employees personally.

22.    You agree to indemnify and hold harmless Duff & Phelps, its affiliates and their respective employees from and against any and all third party claims, liabilities, losses, costs, demands and reasonable expenses, including but not limited to reasonable legal fees and expenses, internal management time and administrative costs, relating to Services we render under this Contract or otherwise arising under this Contract. The foregoing indemnification obligations

shall not apply in the event that a court of competent jurisdiction finally determines that such claims resulted directly from the gross negligence, willful misconduct or fraudulent acts of Duff & Phelps.

23.  You accept and acknowledge that we have not made any warranties or guarantees, whether express or implied, with respect to the Services or the results that you may obtain as a result of the provision of the Services.

24.  Except for your payment obligations, neither of us will be liable to the other for any delay or failure to fulfill obligations caused by circumstances outside our reasonable control.

25.  This Contract constitutes the entire agreement between the parties hereto regarding the subject matter hereof and supersedes any prior agreements (whether written or oral) between the parties regarding the subject matter hereof. This Contract may be executed in any number of counterparts each of which shall be an original, but all of which together shall constitute one and the same instrument.

26.  This Contract shall be governed by and interpreted in accordance with the internal laws of the State of New York and the courts of the State of New York shall have exclusive jurisdiction in relation to any claim arising out of this Contract.

# DUFF&PHELPS

**Billing Unit Engagement Progress Report (One Contract)**
WIP - Services, Revenue, and Total Expenses

Current and Cumulative Time and Expense amounts reflect changes posted through the last weekly time period.
Reporting Period Thru: 12/4/2012

| | |
|---|---|
| Client: 90055 | Fletcher Asset Management, Inc. |
| Contract: 32346  [USD] | Fletcher/Perpetual Convertible |

Billing MD:
Billing MD2:

Referral MD:
Concur MD:

Status : FF
Office : SAN FRANCISCO

Industry: FS Invest, Banking & Brokerage

---

**Project: 32346-001**  Performing MD: Fletcher  Start Date: 08/03/2010
**Task: 32346-001-01**  Project Manager: Fletcher  Finish Date: 08/03/2012
Service: DERIVATIVE VAL. - OTHER

Charging Entity: Fletcher

| Description | Charge Unit | Staff Class | Bill Rate | Last Activ | Last Post | Hours Current Month | Hours Cumulative | Expenses Current Month | Expenses Cumulative | Standard Amount Current Month | Standard Amount Cumulative | Accrued Amount Current Month | Accrued Amount Cumulative |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C/Loss EXPWO 10-10 | 9650406 | 6 | 545 | 08/03/10 | 08/07/10 | 0.00 | 10.00 | 0.00 | 0.00 | 0.00 | 5,450.00 | 0.00 | 3,815.00 |
| C/Loss EXPWO 10-12 | 9650406 | 12 | 130 | 09/20/10 | 09/25/10 | 0.00 | 1.50 | 0.00 | 0.00 | 0.00 | 195.00 | 0.00 | 136.50 |
| C/Loss EXPWO 10-10 | 9650406 | | | 10/21/10 | 10/21/10 | 0.00 | 0.00 | 0.00 | -10.50 | 0.00 | 0.00 | 0.00 | 0.00 |
| C/Loss EXPWO 10-12 | 9650406 | | | 10/06/12 | 10/06/12 | 0.00 | 0.00 | 0.00 | -54.25 | 0.00 | 0.00 | 0.00 | 0.00 |
| Cost Recovery Charge | 8891070 | | | 09/30/10 | 09/30/10 | 0.00 | 0.00 | 0.00 | 80.50 | 0.00 | 0.00 | 0.00 | 0.00 |
| C/Gain/10-10 | 9650406 | | | 10/21/10 | 10/21/10 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,048.50 |

**Total for Task :  32346-001-01**   Cost Amount: 625.50   Gross Margin : 7,374.50   Gross Margin Pct: 92.18%   Accrual Rate: 70.00%
Hours Cumulative: 11.50   Expenses Cumulative: 15.75   Standard Amount Cumulative: 5,645.00   Accrued Amount Cumulative: 8,000.00

**Total for Project 32346-001**   Cost Amount: 625.50   Gross Margin : 7,374.50   Gross Margin Pct: 92.18%   Project Blended Accrual Rate: 141.72%
Hours Cumulative: 11.50   Expenses Cumulative: 15.75   Standard Amount Cumulative: 5,645.00   Accrued Amount Cumulative: 8,000.00

---

**Project: 32346-002**  Performing MD: Fletcher  Start Date: 08/03/2010
**Task: 32346-002-01**  Project Manager: Fletcher  Finish Date: 08/03/2012
Service: DERIVATIVE VAL - OTHER

Charging Entity: Fletcher

| Description | Charge Unit | Staff Class | Bill Rate | Last Activ | Last Post | Hours Current Month | Hours Cumulative | Expenses Current Month | Expenses Cumulative | Standard Amount Current Month | Standard Amount Cumulative | Accrued Amount Current Month | Accrued Amount Cumulative |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 9650406 | 12 | 135 | 07/06/12 | 07/07/12 | 0.00 | 1.00 | 0.00 | 0.00 | 0.00 | 135.00 | 0.00 | 94.52 |
| | 9650406 | 6 | 565 | 07/30/12 | 07/31/12 | 0.00 | 48.50 | 0.00 | 0.00 | 0.00 | 27,402.50 | 0.00 | 19,181.75 |
| | 9650406 | 4 | 755 | 02/22/12 | 02/25/12 | 0.00 | 41.00 | 0.00 | 0.00 | 0.00 | 30,955.00 | 0.00 | 21,668.50 |

Run Date: 12/4/2012  4:43:31PM

WIPproject.rpt   Rev. 11.02

Client: 90055  Fletcher
Contract: 32346  USD  Fletcher

Reporting Period Thru: 12/4/2012

Industry: FS Invest, Banking & Brokerage

| Billing MD: | | | Referral MD: | | Status : | FF |
| Billing MD2: | | | Concur MD: | | Office : | SAN FRANCISCO |

Cost Recovery Charge

| | 8891070 | | 07/31/12 | 07/31/12 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

CILoss/10-12

| | 9650406 | | 10/06/12 | 10/06/12 | 0.00 | 0.00 | 0.00 | 0.00 | -7,298.27 |

| | 9650406 | 6 | 565 | 12/16/11 | 12/17/11 | 0.00 | 47.00 | 0.00 | 26,555.00 | 18,588.50 |
| | 9650406 | 10 | 395 | 12/11/11 | 12/17/11 | 0.00 | 10.00 | 0.00 | 3,950.00 | 2,765.00 |

Total for Task : 32346-002-01

Cost Amount: 9,191.50  0.00  Gross Margin: 147.50  0.00  Gross Margin Pct:  83.29%  88,997.50  55,000.00
                                                                                                Accrual Rate:  70.00%

Total for Project :32346-002

Cost Amount: 9,191.50  0.00  Gross Margin: 147.50  0.00  Gross Margin Pct:  83.29%  88,997.50  55,000.00
                                                                                                Project Blended
                                                                                                Accrual Rate:  61.80%

Total for Contract:32346

Cost Amount: 9,817.00  0.00  Gross Margin: 159.00  0.00  Gross Margin Pct:  83.29%  0.00  55,000.00

Total Expenses:  1,048.25  Gross Margin Pct:  94,642.50  63,000.00
                                                          Contract Blended
                                                          Accrual Rate:  66.57%

Total Fees:  63,000.00

| Invoice Number | Invoice Date | Fees | Expenses | Total Invoice | Collections | Outstanding Balance | Collect Date | Days To Collect |
|---|---|---|---|---|---|---|---|---|
| SF00073423 | 08/17/2010 | 8,000.00 | 70.00 | 8,070.00 | -8,070.00 | 0.00 | 08/24/10 | 7 |
| SF00075979 | 10/21/2010 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0 |
| SF00093947 | 01/05/2012 | 55,000.00 | 978.25 | 55,978.25 | 0.00 | 55,978.25 | 07/31/12 | 208 |
| SF00113744 | 10/06/2012 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0 |
| | | 63,000.00 | 1,048.25 | 64,048.25 | -8,070.00 | 55,978.25 | | 108  Average Days |

Budget: 8,000

SUMMARY

Total Revenue Adjustments, Fees & Expenses:    64,048.25
                                Total Billings:    64,048.25
                                  Net Unbilled:    0.00
                            Net Billing Adjustment:    0.00

## DUFF&PHELPS

Federal ID: 36-4090666

Mr. ▉▉▉▉▉▉
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

| | |
|---|---|
| Invoice No: | NY00089895 - 22200 |
| Client No: | SASMF |
| Invoice Date: | October 5, 2011 |
| Reference: | 36506 |
| Terms: | Payment Due Upon Receipt |

**Description**

Invoice for services rendered in connection with the Fletcher loan valuation.

| | |
|---|---|
| Contact: | Louisa Galbo |
| Engagement No: | 36506 |
| Total Fees: | $ 22,109.06 |
| Total Expenses: | $ 288.75 |
| **Total Amount Due:** | **$ 22,397.81** |

---

Federal ID: 36-4090666

## DUFF&PHELPS

Mr. ▉▉▉▉▉▉
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

| | |
|---|---|
| **Invoice No:** | **NY00089895 - 22200** |
| Client No: | SASMF |
| Invoice Date: | October 4, 2011 |
| Reference: | 36506 |
| Terms: | Payment Due Upon Receipt |

**Payment Via Wiring:**

DUFF & PHELPS, LLC
Bank of America
ABA: 026009593
Account # 1233035833
SWIFT: BOFAUS3N

**Payment Via Lockbox:**

DUFF & PHELPS, LLC
12595 COLLECTION CENTER DRIVE
CHICAGO, IL 60693

| | |
|---|---|
| **Total Amount Due:** | **$ 22,397.81** |

# DUFF&PHELPS

---

<u>**Confidential**</u>                                                                                    August 2, 2011

Mr. ███████████

Skadden, Arps, Slate, Meagher & Flom LLP

Four Times Square

New York, New York 10036

Subject:        Letter of Engagement for Duff & Phelps, LLC - Valuation Services

Dear Mr. ████████,

This Letter of Engagement confirms that we, Duff & Phelps, LLC ("D&P" or "we"), have been retained to assist Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden", "Counsel" or "you") in its rendering of services to Fletcher Asset Management Inc ("Fletcher" or the "Client") in connection with the valuation of an inter-company loan. You should understand that if hired as a "testifying expert witness," we may be forced, under court order, to disclose certain facts, documents, work papers, opinions and/or methodologies that have been developed, discussed or employed during our work on this case. Specifically, D&P has been retained to perform certain services described below in "Scope of Services."

**Scope of Services**

We understand that Fletcher has requested a valuation of an inter-company loan (the "Loan") between ██████████████ ("█████ or the "Lender") and ████████████████ ("████" or the "Borrower") with an initial face value of $█████████. Fletcher is the investment a████████████████████. We understand the scope of our analysis is to provide an estimate of the Fair Value, defined below, of the Loan as of December 31, 2009 (the "Valuation Date") for financial reporting purposes.

We define Fair Value in accordance with the definition in SFAS 157 which states:

> *"Fair value is the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date."*

As used in this letter, the term "Services" shall include without limitation the above-described work. Please note that D&P is not rendering any legal advice in this matter, and all legal advice being provided to the Client shall be the sole responsibility of Counsel.

---

Duff & Phelps, LLC                    T +███████████          █████████b@duffandphelps.com
345 California Street                  F +██████████           www.duffandphelps.com
Floor 21
San Francisco, CA 94502

The Services are subject to change as agreed by D&P and Counsel. Any proposed change(s) to the Services shall be set forth in a letter or email communication. Upon written acknowledgement by the receiving party, the proposed change(s), as thereby agreed, shall be deemed effective and made part of this Letter of Engagement.

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) or any report or deliverable contemplated by this communication, whether draft or final, is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**Confidentiality and Privilege**

Our work is intended for the use and benefit of Counsel in the representation of the Client and should not be used by any other party for any other purpose. Our role, and the fact that we have been engaged as a consultant, shall not be disclosed to any third party, i.e., parties other than the Client.

All information or documents prepared by D&P and/or provided by D&P to Counsel and/or the Client in the course of this engagement constitutes confidential communications protected from disclosure to third parties by the attorney-client privilege and/or constitute confidential work product protected from disclosure to third parties by the attorney work-product doctrine.

All information or documents supplied to D&P by Counsel and/or the Client in the course of this engagement constitute confidential communications protected from disclosure to third parties by the attorney-client privilege and/or constitute confidential work product protected from disclosure to third parties by the attorney work-product doctrine.

All documents, including but not limited to written reports, memoranda, financial analyses and summaries, that we prepare in connection with this engagement will be maintained in accordance with our retention procedures and shall be prominently labeled "Attorney Work Product; Privileged & Confidential."

**Staffing**

The Services will be performed under the overall supervision of ███████████, a Managing Director in our San Francisco office and ███████████, a Managing Director in our New York Office.  We will call upon other staff with appropriate education and skill, as necessary.

**Fees and Expenses[1]**

We will bill on a time and expense basis, with our fees determined by the hours actually expended by each assigned professional.   We recognize the need to maximize cost efficiency, and therefore, we endeavor to utilize staff at the level commensurate to the particular task while maintaining our standard of high quality work product.

Our current hourly billing rates (at 25% discount off standard rates) for this engagement are as follows:

| Level | Hourly Rate |
|---|---|
| Managing Director | $740 |
| Director | $700 |
| Vice President | $565 |
| Senior Associate | $425 |
| Analyst | $300 |
| Administrative | $100 |

Out-of-town travel time is billed at the standard time rates quoted above.  All reasonable direct out-of-pocket expenditures incurred on your behalf will be billed to the Client at our cost for such items.  Any out-of-town air or rail travel will be booked as business class or, in the event business class is not available, first class.

Our hourly rates are adjusted from time to time, and we will advise you and the Client promptly if a rate adjustment is being made by D&P.

---

[1] D&P will bill the Client via invoice to Counsel.  It is acknowledged that payment is the sole responsibility of the Client, not Counsel.

August 2, 2011
Page 4 of 8

We will discuss with you and the Client the impact on fees and expenses of any proposed changes to the Services.

We do not warrant or predict results in this matter, and our fees are not contingent upon any outcome arising out of the provision of the Services.

If we do not receive payment of any invoice within thirty (30) days of the invoice date, we shall be entitled, without prejudice to any other rights that we may have, to suspend provision of the Services until all sums due are paid in full. To safeguard against any assertion or allegation that our work may in some way be influenced by, or contingent upon, the outcome of our analyses, we require that all outstanding invoices be paid, in full, prior to our furnishing testimony in deposition or trial, should the services herein require such testimony.

### Terms and Conditions

The attached Terms and Conditions set forth the rights and responsibilities of the parties with respect to the Services. By signing this Letter of Engagement, it is acknowledged that Skadden, Arps, Slate, Meagher & Flom LLP and Fletcher Asset Management Inc understand and agree to the Terms and Conditions.

* * * * *

D&P is committed to providing superior service to its clients. If you have any questions or require further information, please call me at ▇▇▇▇▇▇▇▇▇ If the scope and terms of this Letter of Engagement are acceptable, please acknowledge your acceptance by signing and returning a copy of this letter to me at 345 California Street Suite 2100, San Francisco CA 94502.

Yours sincerely,

Managing Director
Duff & Phelps, LLC

**Confirmation of Letter of Engagement**

On behalf of Skadden, Arps, Slate, Meagher & Flom LLP and Fletcher Asset Management Inc. I declare that I have read, understand and accept the Letter of Engagement, and Terms and Conditions attached thereto, dated August 2, 2011

Signed: ▮▮▮▮▮▮▮▮    Date: **8-16-11**

On behalf of:    Skadden, Arps, Slate, Meagher & Flom LLP

On behalf of Fletcher Asset Management Inc, I declare that I have read, understand and accept the Letter of Engagement, and Terms and Conditions attached thereto, dated August 2, 2011.

Signed: ▮▮▮▮▮▮▮▮    Date: 8/1/11

On behalf of    Fletcher Asset Management Inc

Attachment to Letter of Engagement Letter dated
August 2, 2011.

## Terms and Conditions

The following are terms and conditions (the "Terms and Conditions") on which we will provide the Services set forth in the attached Letter of Engagement. Together, the Terms and Conditions and the Letter of Engagement are referred to as the "Contract," which forms the entire agreement between D&P and you relating to the Services.

### General

1.   Any variation to this Contract, notwithstanding any variation to the Services specified in the Letter of Engagement, shall be set forth in a separate letter of engagement executed by both parties which will be made part of this Contract.

### Fees

2.   If we do not receive payment of any invoice within 30 days of the invoice date, we shall be entitled, without prejudice to any other rights that we may have, to suspend provision of the Services until all sums due are paid in full.

3.   After we have delivered any work product in final form, we have no responsibility to update such work product to reflect, incorporate or otherwise consider any events or circumstances occurring subsequent to the date of provision of such work product. If such update is requested, a separate letter of engagement, subject to our then standard fees plus expenses, shall be required.

4.   In the event unforeseen circumstances are encountered which would materially increase expenses, we will discuss them with you and await your approval before proceeding.

### Provision of Information

5.   Our performance of the Services is dependent upon you providing us with accurate and timely information and assistance. You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete. You shall notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon. Failure to comply with this provision in any manner will frustrate, delay and/or otherwise impede D&P's performance of the Services, and D&P shall not be held liable for any damage, sanction or penalty as a result thereof.

### Work Product and Property Rights

6.   There may be differences between draft and final work product. During the course of our work, drafts of our report may be issued. You acknowledge that no reliance shall be placed on draft reports, conclusions or advice, whether oral or written, issued by us as the same may be subject to further work, revision, and other factors which may result in such drafts being substantially different from any final report or advice issued.

7.   Any advice given or work product issued by us is provided solely for your use and benefit and only in connection with the Services. Unless required by law, you shall not provide such work product to any third party or refer to us or the Services without our prior written consent, and such consent shall not be unreasonably withheld by D&P. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or work product is disclosed or otherwise made available.

8.   You understand and agree that the final work product resulting from this engagement shall remain your property, except that we shall be entitled to retain one copy of such documents, as well as supporting working papers, in order to maintain a professional record of our involvement.

9.   To the extent that D&P utilizes any of its property (including, but not limited to, any hardware or software) in connection with this engagement, such property shall remain the property of D&P, and you shall not acquire any right or interest in such property. We shall have ownership (including, but not limited to, copyright ownership) and all rights to use and disclose our ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof, in conducting our business.

### Preservation of Confidential Information

10.   Information received from the other party for the purposes of providing or receiving the Services is deemed "Confidential" if it is either (a) marked confidential in tangible form; (b) otherwise confirmed in writing as being confidential; or (c) manifestly confidential in tangible form or otherwise. All parties agree that any Confidential information received from the other party shall only be used for the purposes of providing or receiving the Services under this or any other contract between us. In addition, neither party will disclose, without the prior written consent of the other party, any such confidential information to any third party, except insofar as provided in sections 11 and 12.

11.   Section 10 will not apply to any information which (a) is or becomes generally available to the public other than as a result of a breach of an obligation by the receiving party; (b) is acquired from a third

party who owes no obligation of confidence with respect to the information; or (c) is or has been independently developed by the recipient.

12. Notwithstanding the foregoing, either party will be entitled to disclose Confidential information of the other (a) to our respective insurers or legal advisors, and (b) to a third party to the extent required by any court of competent jurisdiction, or by a governmental, administrative or regulatory authority, or where there is a legal right, duty or requirement to disclose, provided that, where reasonably practicable, and without breaching any legal or regulatory requirement, not less than two (2) business days notice in writing is first given to the other party.

13. Further, D&P agrees to notify Skadden and the Client upon receipt of an administrative request for information, subpoena or other legal process pertaining to the Services performed hereunder or the results thereof, and shall resist such information request, subpoena or other legal process if the Client so directs. In the event of such direction, the Client shall reimburse D&P for all reasonable fees and expenses incurred in complying with or resisting such information request. In addition, we will be compensated for any time and expenses (including reasonable legal fees and expenses) that we may incur in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, administrative, regulatory or other proceeding.

**Termination**

14. Either party may terminate this Contract in the event that the other party has breached any material provision thereof and such breach has not been cured within five (5) business days after receipt of written notice from the then non-breaching party.

15. Upon termination of this Contract for any reason, each party shall, upon written request from the other, return to the other all property and documentation of the other in its possession, except that we shall be entitled to retain one copy of such documents in order to maintain a professional record of our involvement.

16. If this Contract is terminated in accordance with paragraph 14, all of the Terms and Conditions set forth herein shall survive such termination.

**Other Terms and Provisions**

17. Except in the event of our willful misconduct or fraud, in no event shall we be liable to the Client (or any person claiming through you), under any legal theory, for any amount in excess of the total professional fees paid by you to us under this Contract or any addendum to which the claim relates. In no event shall we be liable to the Client under this Letter of Engagement under any legal theory or for any consequential, indirect, lost profit or similar damages relating to or arising from the Services provided under this Contract.

18. You accept and acknowledge that any legal proceeding arising from or in connection with this Contract (or any variation or addition thereto) must be commenced within one (1) year from the date when you become aware of the facts giving rise to our alleged liability. You also agree that no action or claim will be brought against any D&P employee personally.

19. You agree to indemnify and hold harmless D&P, its affiliates and their respective employees from any and all third party claims, liabilities, losses, costs, demands and reasonable expenses, including but not limited to reasonable legal fees and expenses, relating to the Services rendered under this Contract or otherwise arising under this Contract. The foregoing indemnification obligations shall not apply in the event that a court of competent jurisdiction finally determines that such claims resulted directly from gross negligence, willful misconduct or fraudulent acts of D&P.

20. You accept and acknowledge that we have not made any warranties or guarantees, whether express or implied, with respect to the Services or any outcome that may be obtained as a result of the provision of the Services.

21. Except for your payment obligations, neither of us will be liable to the other for any delay or failure to fulfill obligations caused by circumstances outside our reasonable control.

22. We reserve the right to use your name and a description of the nature of the Services in general marketing materials.

23. This Contract shall be governed by and interpreted in accordance with the laws of the State of New York and the courts of the State of New York shall have exclusive jurisdiction in relation to any claim arising out of this Contract.

# DUFF & PHELPS

**Billing Unit Engagement Progress Report (One Contract)**
WIP - Services, Revenue, and Total Expenses

Current and Cumulative Time and Expense amounts reflect
changes posted through the last weekly time period.

Reporting Period Thru: 12/4/2012

| Client: | SASMF | | | | | | Status : | FF | |
| Contract: | 36506 | USD | | | | | Office : | NEW YORK | |

Billing MD:
Billing MD2:

Performing MD:

Project Manager:

Charging Entity: Skadden Fletcher
Description

Project: 36506-001
Task: 36506-001-01   Skadden Fletcher

Referral MD:
Concur MD:

Industry: RE Real Estate Mgmt & Develop.

Skadden Arps Slate Meagher & Flom
Skadden Fletcher

Start Date: 08/19/2011
Finish Date: 08/19/2013

| Description | Charge Unit | Staff Class | Bill Rate | Activ Last | Post | Hours Current Month | Hours Cumulative | Expenses Current Month | Expenses Cumulative | Standard Amount Current Month | Standard Amount Cumulative | Accrued Amount Current Month | Accrued Amount Cumulative |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 8990401 | 10 | 340 | 09/23/11 | 09/24/11 | 0.00 | 32.00 | 0.00 | 0.00 | 0.00 | 10,880.00 | 0.00 | 8,160.00 |
| | 8990401 | 10 | 340 | 08/30/11 | 08/31/11 | 0.00 | 2.00 | 0.00 | 0.00 | 0.00 | 680.00 | 0.00 | 510.00 |
| | 9650406 | 12 | 135 | 10/10/11 | 10/15/11 | 0.00 | 1.75 | 0.00 | 0.00 | 0.00 | 236.25 | 0.00 | 177.18 |
| | 9650406 | 7 | 990 | 09/12/11 | 09/17/11 | 0.00 | 6.00 | 0.00 | 0.00 | 0.00 | 5,940.00 | 0.00 | 4,455.00 |
| | 9710401 | 7 | 895 | 12/06/11 | 12/17/11 | 0.00 | 14.00 | 0.00 | 0.00 | 0.00 | 12,530.00 | 0.00 | 9,397.50 |
| | 9650406 | 6 | 565 | 12/03/11 | 12/10/11 | 0.00 | 0.00 | 0.00 | 24.65 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 9710401 | 5 | 805 | 12/18/11 | 12/24/11 | 0.00 | 64.00 | 0.00 | 19.69 | 0.00 | 51,520.00 | 0.00 | 38,640.00 |
| | 9650406 | 4 | 755 | 11/10/11 | 02/25/12 | 0.00 | 0.00 | 0.00 | 115.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 9650406 | 6 | 395 | 12/11/11 | 12/17/11 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 9650406 | 10 | 395 | 12/11/11 | 12/17/11 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total for Task:** | | 36506-001-01 | | | | 0.00 | 119.75 | 0.00 | 784.00 | 0.00 | 81,786.25 | 0.00 | 57,037.50 |
| | | | Cost Amount: 13,722.75 | | | | Gross Margin: 43,314.75 | | | | Gross Margin Pct: 75.94% | | Accrual Rate: 75.00% |
| CLoss EXPWO 03-12 | 9650401 | | | 03/30/12 | 03/30/12 | 0.00 | 0.00 | 0.00 | -213.59 | 0.00 | 0.00 | 0.00 | 0.00 |
| Cost Recovery Charge | 8891070 | | | 12/30/11 | 12/30/11 | 0.00 | 0.00 | 0.00 | 838.25 | 0.00 | 0.00 | 0.00 | 0.00 |
| CLoss 03-12 | 9710401 | | | 03/30/12 | 12/17/11 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -4,302.18 |
| **Total for Project: 36506-001** | | | | | | 0.00 | 119.75 | 0.00 | 784.00 | 0.00 | 81,786.25 | 0.00 | 57,037.50 |
| | | | Cost Amount: 13,722.75 | | | | Gross Margin: 43,314.75 | | | | Gross Margin Pct: 75.94% | | Project Blended Accrual Rate: 69.74% |

WIPproject.rpt   Rev. 11.02

Client: SASMF
Contract: 36506   USD   Skadden Arps Slate Meagher & Flom
Skadden Fletcher Loan VAL as of 12

Industry: RE Real Estate Mgmt & Develop.

Reporting Period Thru: 12/4/2012

**Total for Contract:36506**

Cost Amount: 13,722.75    Gross Margin: 43,314.75    Gross Margin Pct: 75.94%

Contract Blended
Accrual Rate: 69.74%

| Invoice Number | Invoice Date | Fees | Expenses | Total Invoice | Collections | Outstanding Balance | Collect Date | Days To Collect |
|---|---|---|---|---|---|---|---|---|
| NY00088740 | 09/08/2011 | 34,928.44 | 495.25 | 35,423.69 | -35,423.69 | 0.00 | 10/25/11 | 47 |
| NY00089895 | 10/04/2011 | 22,109.06 | 288.75 | 22,397.81 | 0.00 | 22,397.81 | 07/31/12 | 301 |
| NY00103320 | 03/30/2012 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0 |
| | | 57,037.50 | 784.00 | 57,821.50 | -35,423.69 | 22,397.81 | | 174 Average Days |

Total Expenses:    784.00

Total Fees: 57,037.50

**SUMMARY**

Total Revenue Adjustments, Fees & Expenses: 57,821.50
Total Billings: 57,821.50
Budget: 15,000    Net Unbilled: 0.00
Net Billing Adjustment: 0.00

| Employee | | Transportation | | Lodging | | Meal Allowance | | Sundry | | Entertainment | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Cur Mo | To-Date | Cur Mo | To-Date | Cur Mo | To-Date | Cur Mo | To-Date | Cur Mo | To-Date | Cur Mo | To-Date |
| 36506-001-01 | Skadden Fletcher ████ 89 - Task 1 | | | | | | | | | | | | |
| | Current: | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 24.65 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 24.65 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 19.69 | 0.00 | 22,397.81 | 0.00 | 0.00 | 0.00 | 19.69 |
| | | 0.00 | 115.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 115.00 |
| | Cumulative: | 0.00 | 115.00 | 0.00 | 0.00 | 0.00 | 44.34 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 159.34 |
| 36506-001 | Skadden Fletcher ████ A1 | | | | | | | | | | | | |
| | Current: | 0.00 | | | | | | | | | | | |
| | Cumulative: | 0.00 | 115.00 | 0.00 | 0.00 | 0.00 | 44.34 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 159.34 |
| 36506 | Skadden Fletcher ████ | | | | | | | | | | | | |
| | Current: | 0.00 | | | | | | | | | | | |
| | Cumulative: | 0.00 | 115.00 | 0.00 | 0.00 | 0.00 | 44.34 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 159.34 |

**<u>Exhibit B</u>**

**Proposed Order**

**Hearing Date and Time: March 26, 2014 at 9:45 a.m. (ET)**
**Objection Deadline: March 19, 2014 at 4:00 p.m. (ET)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                            :
In re                                       :        Chapter 11
                                            :
FLETCHER INTERNATIONAL, LTD.,               :
                                            :        Case No. 12-12796 (REG)
                                            :
                    Debtor.                 :
------------------------------------------------------------x

### [PROPOSED ORDER] GRANTING CHAPTER 11 TRUSTEE'S OBJECTION TO PROOF OF CLAIM NO. 3 FILED BY DUFF & PHELPS

Upon the objection (the "**Objection**"), of Richard J. Davis, the Trustee appointed in this Chapter 11 case (the "**Trustee**"), for entry of an order pursuant to Sections 105(a) and 502(b) of title 11 of the United States Code and Rules 3001(c) and 3007 of the Federal Rules of Bankruptcy Procedure disallowing and expunging Proof of Claim No. 3 filed by Duff & Phelps, LLC (the "**Disputed Claim**"); and this Court having jurisdiction to consider the Objection and the relief requested therein in accordance with 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having determined that the relief requested in the Objection is in the best interests of the Debtor and its estate, creditors, investors and other parties-in-interest; and it appearing that proper and adequate notice of the Objection has been given under the circumstances and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED,** the Disputed Claim is hereby disallowed and expunged in its entirety with prejudice; and it is further

**ORDERED,** that the Trustee is authorized and empowered to take all actions as may be necessary and appropriate to implement the terms of this Order; and it is further

**ORDERED,** that notice of the Objection as provided therein shall be deemed good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a) and the Local Bankruptcy Rules of this Court are satisfied by such notice; and it is further

**ORDERED,** that this Order has no *res judicata*, estoppel, or other effect on the validity, allowance, or disallowance of any claim other than the Disputed Claim, and all rights to object on any basis are expressly reserved with respect to any such claim; and it is further

**ORDERED,** that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated:  New York, New York
        March __, 2014

_____
THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE