**Presentment Date and Time: April 14, 2014 at 12:00 noon (ET)**
**Objection Deadline: April 7, 2014 at 4:00 p.m. (ET)**

Michael Luskin
Lucia T. Chapman
Stephan E. Hornung
LUSKIN, STERN & EISLER LLP
Eleven Times Square
New York, New York 10036
Telephone:  (212) 597-8200
Facsimile:  (212) 974-3205

*Attorneys for the Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| FLETCHER INTERNATIONAL, LTD., | : | Case No. 12-12796 (REG) |
| | : | |
| Debtor. | : | |
| | : | |

-------------------------------------------------------------x

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO
BANKRUPTCY RULE 9019(A) APPROVING THE SETTLEMENT AGREEMENT
BETWEEN THE DEBTOR, THE TRUSTEE, BRG INVESTMENTS, LLC, FIA
LEVERAGED FUND, LTD., FLETCHER INCOME ARBITRAGE FUND, LTD.,
FLETCHER FIXED INCOME ALPHA FUND, LTD., AND THE MASSACHUSETTS
BAY TRANSPORTATION AUTHORITY RETIREMENT FUND, AND
<u>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP</u>**

TO:    THE HONORABLE ROBERT E. GERBER
       UNITED STATES BANKRUPTCY JUDGE

         Richard J. Davis, the Chapter 11 Trustee in this Chapter 11 case (the "**Trustee**"),

hereby submits this motion (the "**Motion**") for entry of an order pursuant to Bankruptcy Rule

9019(a), substantially in the form attached as **<u>Exhibit A</u>**, approving a settlement agreement,

substantially in the form attached as **<u>Exhibit B</u>** (the "**Settlement Agreement**") among the Debtor

and the Trustee, BRG Investments, LLC ("**BRG**"), FIA Leveraged Fund, Ltd. ("**Leveraged**") and

its joint official liquidators (the "**Leveraged JOLs**"), Fletcher Income Arbitrage Fund, Ltd.

("**Arbitrage**") and its joint official liquidators (the "**Arbitrage JOLs'**"), Fletcher Fixed Income

Alpha Fund, Ltd. ("**Alpha**" and together with the Debtor, Leveraged, and Arbitrage, the "**Funds**")
and its joint voluntary liquidators (the "**Alpha JVLs**"), the Massachusetts Bay Transportation
Authority Retirement Fund (the "**MBTA**"), and Skadden, Arps, Slate, Meagher & Flom LLP
("**Skadden**," and together with the Funds, the Trustee, the Leveraged JOLs, the Arbitrage JOLs,
the Alpha JVLs, and the MBTA, the "**Settling Parties**").  In support of this Motion, the Trustee
respectfully represents as follows:

### Jurisdiction

1.      The Court has subject matter jurisdiction to consider and determine this
Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C.
§ 157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory
basis for the relief requested is Bankruptcy Rule 9019(a).

### Facts Specific to the Relief Requested

2.      Fletcher Asset Management, Inc. ("**FAM**") and the Funds used various
outside United States and foreign counsel over the years.  Skadden was counsel to FAM during
the period relevant to the Trustee's investigation and the facts and conclusions disclosed in the
Trustee's Report and Disclosure Statement (as amended, the "**Trustee's Report**") [Docket No.
393].  Skadden also was counsel of record to FILB in connection with certain Delaware
Chancery Court litigation.

3.      The Trustee believes that, in addition to advising and representing FAM,
Skadden represented and provided advice to Alpha, Leveraged, Arbitrage, BRG, and FILB
related to various transactions described in the Trustee's Report.  However, Skadden's position is
that, except for representing and appearing as counsel of record for FILB in certain litigation
before the Delaware Court of Chancery, Skadden represented FAM and not Alpha, Leveraged,
Arbitrage, BRG, or FILB.

4.      Based upon his investigation, it is the Trustee's position that the parties to the Investor Settlement (i.e., each of the Funds, their respective JOLs, BRG and the MBTA, collectively, the "**Pooling Parties**") being entered into as part of the Trustee's Amended Plan of Liquidation (as modified, the "**Plan**") [Docket No. 394] might have claims against Skadden premised on advice Skadden allegedly provided or failed to provide to the Funds, and Skadden's alleged failure to protect adequately the interests of the Funds and their investors.

5.      Skadden disputes the Trustee's assertions, believes they are devoid of merit, and has indicated that if the Trustee or any other of the Pooling Parties were to formally assert claims against Skadden, Skadden would vigorously defend itself.  The Trustee believes that any such litigation against Skadden would be very complex, expensive, time consuming and of uncertain outcome.

6.      In order to avoid the expense and uncertainty of such possible litigation, the Settling Parties have agreed to settle, resolve and compromise their putative claims and defenses and as set forth below.

### The Settlement Agreement[1]

7.      The Settlement Agreement settles all possible claims and causes of action against Skadden by the Pooling Parties in accordance with the following terms:

8.      Within five business days of entry of a final non-appealable order by the Court, Skadden shall pay to the Trustee's counsel's escrow account $4,250,000 (the "**Settlement Payment**").  The Settlement Payment proceeds shall be allocated among the Pooling Parties in accordance with the percentages set forth in the Plan.

---

[1] This Motion is intended to summarize certain material terms of the Settlement Agreement and the Releases attached thereto as Exhibits A and B.  Accordingly, the controlling terms of the Settlement Agreement and the Releases govern, not the summary set forth herein.

9.      The Pooling Parties shall provide to Skadden and its affiliated and related persons and entities (collectively, the "**Skadden Affiliated and Related Parties**"), including, without limitation, those entities listed in Schedule A to the Pooling Party Release (as defined herein), releases in the form attached to the Settlement Agreement as Exhibit A (the "**Pooling Party Release**") releasing any and all possible claims and causes of action against Skadden and the Skadden Affiliated and Related Parties based upon, related to, in connection with, or arising out of any of the Released Claims (as defined in the Pooling Party Release).

10.     Skadden shall provide to the Trustee's counsel a release in the form attached to the Settlement Agreement as Exhibit B (the "**Skadden Release,**" and together with the Pooling Party Release, the "**Releases**") releasing any and all possible claims and causes of action against the Pooling Parties based upon, related to, in connection with or arising out of, any of the Released Claims (as defined in the Skadden Release).

11.     Skadden shall not authorize any of the Skadden Affiliated and Related Parties to seek to pursue any claim or cause of action against any of the Pooling Parties based upon, related to, in connection with, or arising out of any of the Released Claims (as defined in the Skadden Release).

12.     Nothing in the Settlement Agreement or the Releases shall release the Settling Parties from any liability or obligation for any breach of the Settlement Agreement.  In the event of a breach of the Settlement Agreement, the sole and exclusive remedy shall be an action seeking to enforce the terms of the Settlement Agreement.  Except for the purpose of enforcing the terms of the Settlement Agreement, the Pooling Parties agree to refrain and forever forbear from commencing, instituting, joining, advising on, supporting, prosecuting, consenting to, authorizing or filing any claim for damages or demand in connection with, any lawsuit, action

or proceeding against Skadden or any of the Skadden Affiliated and Related Parties based upon, related to, in connection with or arising out of, any of the Released Claims (as defined in the Pooling Party Release), other than as set forth in paragraph 3(d)(i) of the Settlement Agreement (described in paragraph 16(i) below).

13.     The Pooling Parties shall, in consultation with and to the extent requested by Skadden, use their respective commercially reasonable efforts to cause Fletcher Dividend Income Fund, LLC, and The Aesop Fund, Ltd. to deliver to Skadden releases substantially in the form of the Pooling Party Release, subject to the terms of escrow set forth above.

14.     The Pooling Parties shall also use their respective commercially reasonable efforts to include in any future settlement agreement with Fletcher-Related Entities (identified in Exhibit C to the Trustee's Report) that are not parties to the Settlement Agreement or that have not delivered a release pursuant to the Settlement Agreement, a clause that releases Skadden and the Skadden Affiliated and Related Parties from any claims or liability with respect to such settling Fletcher-Related Entity.

15.     To the extent the Pooling Parties obtain control over (i) Fletcher-Related Entities (identified in Exhibit C to the Trustee's Report) that are not parties to this Settlement Agreement or that have not delivered a release as set forth in paragraphs 3(a) or 3(b) to the Settlement Agreement (described in paragraphs 13 and 14 of this Motion), or (ii) the Pooling Parties' respective parents, shareholders, members, investors, equity holders and affiliates that are not parties to this Settlement Agreement or that have not delivered a release as set forth in paragraphs 3(a) or 3(b) to the Settlement Agreement (described in paragraphs 13 and 14 of this Motion), the Pooling Parties shall not authorize such entities or individuals to pursue any claim or cause of action against Skadden or any of the Skadden Affiliated and Related Parties based

upon, related to, in connection with, or arising out of any of the Released Claims (as defined in the Pooling Party Release) and shall use their respective commercially reasonable efforts to prevent such entities from pursuing any such claim or cause of action.

16.    The Pooling Parties shall not:

(i)    join, advise or support in the assertion of or consent to or authorize any claim or cause of action against Skadden or any of the Skadden Affiliated and Related Parties based on, arising out of, in connection with or related in any way to the Released Claims (as defined in the Pooling Party Release), including the matters addressed in the Report, the Settlement Agreement, and the Pooling Party Release by any person or entity on a going forward basis other than in responding to a subpoena or court order about which Skadden has been afforded reasonable advance notice, provided, however, that nothing herein shall prohibit the Trustee from communicating with the Louisiana Pension Funds (as defined, below) with respect to claims they may have against persons or entities unrelated to Skadden, even where such claims may arise out of or relate to claims against Skadden;

(ii)    share in any proceeds of any such claim or cause of action against Skadden or any of the Skadden Affiliated and Related Parties or accept any other form of payment or consideration received from other parties in connection with such claim or cause of action, provided, however, that this provision (ii) shall not apply to the MBTA; or

(iii)    disclose to any person or entity any document provided by Skadden to the Trustee without Skadden's prior consent or order of the Bankruptcy Court.

17.    Skadden shall not on its own behalf, nor shall it authorize any of the Skadden Affiliated and Related Parties to, (i) join in the assertion of any claim or cause of action against the Pooling Parties related in any way to the matters addressed in the Report, this Settlement Agreement, and the Skadden Release by any person or entity, provided, however, that nothing herein shall prohibit Skadden and the Skadden Affiliated and Related Parties from asserting any fact or legal or equitable defense in any proceeding whatsoever; (ii) share in any proceeds of any such claim or cause of action against the Pooling Parties or accept any other form of payment or consideration received from other parties in connection with such claim or cause of action; or (iii) disclose to any person or entity any document provided by the Pooling Parties to Skadden without the Pooling Parties' prior consent or order of the Bankruptcy Court.

18.    Notwithstanding anything in the Settlement Agreement or the Releases to the contrary, the Settlement Agreement shall not preclude or release (i) any putative claim or cause of action that is personal to, and has been or might be asserted against Skadden by any of the New Orleans Firefighters Pension & Relief Fund, the Municipal Employees Retirement System and the Firefighters Retirement System (the "**Louisiana Pension Fund(s)**") or any of Soundview Elite Ltd., Soundview Premium, Ltd., Soundview Star Ltd., Elite Designated, Premium Designated, Star Designated, Richcourt Euro Strategies Inc., Optima Absolute Return Fund Ltd., Richcourt Allweather Fund Inc., America Alternative Investments Inc., Richcourt Composite Inc., Richcourt Allweather B Inc., New Wave Fund SPC, Pitagora Fund Ltd., and Soundview Composite, Ltd. (collectively, the "**Richcourt Funds**") and (ii) any legal or equitable right, claim, counterclaim, cause of action or defense that has been or might be asserted by Skadden or the Skadden Affiliated and Related Parties against any of the Louisiana Pension Funds or the Richcourt Funds (including, without limitation, any right to set off, offset, recoup or

reduce any amount allegedly payable to any Louisiana Pension Fund or Richcourt Fund by any amount or value received or to be received by the Louisiana Pension Funds or the Richcourt Funds or any of them under the Plan, the Investor Settlement or otherwise). Any putative claims or causes of action of any of the Louisiana Pension Funds or the Richcourt Funds that have been or might be asserted by any of them against Skadden or the Skadden Affiliated and Related Parties shall not be pooled pursuant to the Investor Settlement contemplated by the Plan.

19.    Each signatory to the Settlement Agreement represents and warrants that it is duly authorized to execute and perform its obligations thereunder.

20.    The Pooling Parties each represent and warrant that, with regard to each of their respective parents, shareholders, members, investors, equity holders and affiliates from which the Pooling Parties do not have the ability to secure the release of the Released Claims (as defined in the Pooling Party Release), each is unaware of any claim or cause of action that any such parent, shareholder, member, investor, equity holder or affiliate holds, intends to assert or is considering asserting against Skadden or any of the Skadden Affiliated and Related Parties, provided, however, that the Pooling Parties make no representation or warranty with respect to the Richcourt Funds.

## Relief Requested

21.    The Trustee seeks an order pursuant to Bankruptcy Rule 9019(a) approving the terms of the Settlement Agreement, including the Releases.

## Basis for Relief Requested

22.    Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." In deciding whether to approve a compromise, "a bankruptcy court must determine whether the compromise is reasonable," Saccurato v. Masters, Inc. (In re Masters, Inc.), 149 B.R. 289, 292 (E.D.N.Y.

1992), and whether the compromise is "'fair and equitable' and 'in the best interests of the estate.'"  In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (quoting Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Andersen, 390 U.S. 414, 424 (1968), reh. denied, 391 U.S. 909 (1968)).

23.    The Court may consider such factors as:  (i) the likelihood of success in the litigation compared to the present and future benefits offered by the settlement; (ii) the prospect of protracted litigation if the settlement is not approved as well as the related expense, inconvenience and delay, including potential difficulty in collecting on the judgment; (iii) the "paramount interests of the creditors" and the degree to which the creditors support the settlement; (iv) the nature and extent of releases to be obtained by officers and directors; and (v) whether the settlement was the result of arm's length bargaining.  Motorola, Inc. v. Official Comm. of Unsecured Creditors et al. (In re Iridium Operating LLC et al.), 478 F.3d 452, 462 (2d Cir. 2007) (citing In re Worldcom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)); see also In re Masters, Inc., 149 B.R. at 292 (citing Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 822 (1983)); In re Drexel Burnham, 134 B.R. at 497. In assessing whether a compromise should be approved, the Court need only "canvass the issues and see whether the compromise 'falls below the lowest point in the range of reasonableness.'" In re Drexel Burnham, 134 B.R. at 497 (citations omitted).  Each of these factors weighs heavily in favor of approving the Settlement Agreement.

24.    The Settlement Agreement terms were negotiated at arms' length.  The terms will enable the Pooling Parties to obtain $4.25 million in full settlement of all claims against Skadden and the Skadden Affiliated and Related Parties of any of the Debtor and its estate, its three major feeder funds, and one of its major pension fund investors.  The Settlement

does not preclude or release any putative claim or cause of action that is personal to, and has been or might be asserted against Skadden or the Skadden Affiliated and Related Parties by any of the Louisiana Pension Funds or the Richcourt Funds.

25.    In consideration of the Settlement Payment and a release from Skadden related to its role as alleged counsel to the Funds, the Pooling Parties will provide releases to Skadden that will release all of their possible claims against Skadden and the Skadden Affiliated and Related Parties, including those related to Skadden's conduct as alleged counsel to FAM and the Funds.

26.    Absent the settlement, the Settling Parties would have to commence litigation against Skadden in an effort to secure any recoveries from Skadden.  Any such litigation against Skadden would be very complex, expensive, time consuming and of uncertain outcome.  As discussed in Section IX of the Trustee's Report, Skadden would vigorously defend against any such litigation.

27.    The major parties-in-interest (the Louisiana Pension Funds, the MBTA, and the Joint Official Liquidators of each of FIA Leveraged Fund, Ltd., Fletcher Income Arbitrage Fund Ltd., and Fletcher Fixed Income Alpha Fund, Ltd.) are either parties to the Settlement Agreement or have indicated that they support the Settlement Agreement.

28.    The Trustee submits that, based on the foregoing, his investigations, the Trustee's Report, and the entire record and facts and circumstances of this Chapter 11 case, his entering into the Settlement Agreement represents the exercise of his sound business judgment and falls well above the lowest point in the range of reasonableness of possible litigation and settlement outcomes, and is in the best interests of the estate and its creditors.  Accordingly, the Trustee requests that the Court approve the Settlement Agreement.

**No Prior Request**

29.     No prior application for the relief sought herein has been made to this or any other court in connection with the Debtor's Chapter 11 case.

**Notice**

30.     Notice of this Motion is being provided to: (a) the Office of the United States Trustee; (b) all creditors listed in the Debtor's schedules or that have submitted proofs of claim; (c) Skadden; (d) the Internal Revenue Service; and (e) all parties requesting notice in this Chapter 11 case pursuant to Rule 2002 of the Bankruptcy Rules.  Given the circumstances and the nature of the relief requested, the Trustee submits that no further notice of this Motion should be required.

**Conclusion**

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order, substantially in the form annexed hereto as **Exhibit A**, approving the Settlement Agreement and the Releases, and granting such other or further relief as the Court deems just and proper.

Dated: New York, New York
       March 21, 2014

LUSKIN, STERN & EISLER LLP

By:  /s/ Michael Luskin
     Michael Luskin
     Lucia T. Chapman
     Stephan E. Hornung

Eleven Times Square
New York, New York 10036
Telephone:     (212) 597-8200
Facsimile:     (212) 974-3205

*Attorneys for the Chapter 11 Trustee*

## EXHIBIT A

**Proposed Order**

Presentment Date and Time: April 14, 2014 at 12:00 noon (ET)
Objection Deadline: April 7, 2014 at 4:00 p.m. (ET)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:                                            :          Chapter 11
                                                  :
FLETCHER INTERNATIONAL, LTD.,                     :          Case No. 12-12796 (REG)
                                                  :
                    Debtor.                       :
                                                  :
---------------------------------------------------------------x

## [PROPOSED] ORDER PURSUANT TO BANKRUPTCY RULE 9019(A) APPROVING THE SETTLEMENT AGREEMENT BETWEEN THE DEBTOR, THE TRUSTEE, BRG INVESTMENTS, LLC, FIA LEVERAGED FUND, LTD., FLETCHER INCOME ARBITRAGE FUND, LTD., FLETCHER FIXED INCOME ALPHA FUND, LTD., AND THE MASSACHUSETTS BAY TRANSPORTATION AUTHORITY RETIREMENT FUND, AND SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Upon the motion (the "**Motion**") of Richard J. Davis, the Chapter 11 Trustee this

Chapter 11 case (the "**Trustee**"), for entry of an order pursuant to Bankruptcy Rule 9019(a)

approving the Settlement Agreement (the "**Settlement Agreement**") between the Debtor, the

Trustee, BRG Investments, LLC, FIA Leveraged Fund, Ltd. and its Joint Official Liquidators,

Fletcher Income Arbitrage Fund, Ltd. and its Joint Official Liquidators, Fletcher Fixed Income

Alpha Fund, Ltd. and its Joint Voluntary Liquidators, and the Massachusetts Bay Transportation

Authority Retirement Fund, and Skadden, Arps, Slate, Meagher & Flom LLP; and it appearing that

this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it

appearing that venue of this chapter 11 case and the Motion in this district is proper pursuant to

28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to

28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Settlement

Agreement is in the best interests of the Debtor and its estate, creditors, investors, and other

parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given

and that no other or further notice is necessary; and after due deliberation thereon; and good and

sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      Subject to the terms and conditions of this Order, the Motion is granted.

2.      Pursuant to Bankruptcy Rule 9019(a), the Settlement Agreement and the

Releases, in the forms annexed to the Motion as **Exhibit B**, are hereby approved in their entirety.

3.      The Trustee's entry into and performance of all of his obligations under the

Settlement Agreement and the Releases is approved.

4.      The Settling Parties shall execute or cause to be executed any and all

agreements, instruments, and documents, and shall take such further actions in good faith as may

be necessary to fully effectuate the terms of the Settlement Agreement and the Releases.

5.      The terms and conditions of this Order shall be immediately effective and

enforceable upon its entry.  This Order shall be binding upon all creditors and interest holders of

the Debtor and parties-in-interest in this case and in any subsequent chapter 7 case, including any

successor to the Trustee and any chapter 7 trustee.

6.      To the extent that the Motion is inconsistent with this Order or the

Settlement Agreement and Releases attached to the Motion, the terms of this Order and the

Settlement Agreement and Releases shall govern.

7.      The Court shall retain jurisdiction with respect to all matters arising from or

related to the Settlement Agreement, the Releases, and this Order.

Dated: New York, New York
          April __, 2014

                                                    _____
                                                    HONORABLE ROBERT E. GERBER
                                                    UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Settlement Agreement**

**EXECUTION COPY**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is entered into on the 19th day of March, 2014 by and between the following parties (each a "Party" and collectively the "Parties"): SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, a Delaware Limited Liability Partnership ("Skadden"); and RICHARD J. DAVIS, in his capacity as Chapter 11 Trustee (in such capacity, the "Trustee") for Fletcher International, Ltd. ("FILB" or the "Debtor"), a limited liability entity organized and existing under the laws of Bermuda, BRG Investments, LLC, a Delaware limited liability company ("BRG"), FIA Leveraged Fund Ltd. ("Leveraged") and its joint official liquidators (the "Leveraged JOLs"), Fletcher Income Arbitrage Fund, Ltd. ("Arbitrage") and its joint official liquidators (the "Arbitrage JOLs"), Fletcher Fixed Income Alpha Fund, Ltd. ("Alpha" and together with the Debtor, Leveraged, and Arbitrage, the "Funds") and its joint voluntary liquidators (the "Alpha JVLs" and together with the Leveraged JOLs and the Arbitrage JOLs, the "JOLs"), and the Massachusetts Bay Transportation Authority Retirement Fund (the "MBTA").

WHEREAS, on June 29, 2012, FILB filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Case No, 12-12796 (REG);

WHEREAS, on September 28, 2012, the Bankruptcy Court entered an order appointing the Trustee as Chapter 11 Trustee for FILB;

WHEREAS, on January 24, 2014, the Trustee filed in the Bankruptcy Case (i) his Trustee's Report and Disclosure Statement (Docket No. 393) (the "Trustee's Report"), containing, among other things, the Trustee's summary of his investigation into the facts and circumstances leading to FILB's bankruptcy filing, and (ii) a proposed plan of liquidation for FILB (Docket No. 394) (the "Plan");

WHEREAS, as set forth in the Report, Fletcher Asset Management, Inc. ("FAM") and the Funds engaged various outside United States and foreign counsel over the years, including Skadden as counsel to FAM and, in connection with certain Delaware Chancery Court litigation, as counsel of record to FILB in such litigation;

WHEREAS, the Trustee contends, and Skadden disputes, that Skadden also represented FILB in other contexts and the Funds and that FILB, the Funds, the JOLs, and the MBTA, may have possible claims against Skadden;

WHEREAS, the Trustee represents and warrants that he has disclosed to Skadden the name and identity of every entity over which he has control or with which he has entered into a pooling agreement and that he has accurately represented his ability to enter into a settlement on behalf of each such entity at the present time;

WHEREAS, the Trustee, the Funds, the JOLs, BRG, and the MBTA (together, the "Pooling Parties") each represent and warrant that, with regard to each of their respective parents, shareholders, members, investors, equity holders and affiliates (other than the Richcourt Funds, defined *infra*, as to which the Pooling Parties make no representation or warranty) from

which the Pooling Parties do not have the ability to secure the release of the Released Claims (as defined in the Pooling Party Release), each is unaware of any claim or cause of action that any such parent, shareholder, member, investor, equity holder or affiliate (other than the Richcourt Funds, as to which the Pooling Parties make no representation or warranty) holds, intends to assert or is considering asserting against Skadden or any of the Skadden Affiliated and Related Parties, defined *infra*;

WHEREAS, in order to avoid the expenses and uncertainty of possible litigation, the Parties have agreed to settle, resolve and compromise their putative claims and defenses and the Parties shall exchange releases in the form annexed hereto as Exhibit A for the Trustee, the Funds, the JOLs, BRG, and the MBTA (the "Pooling Party Release") and as Exhibit B for Skadden (the "Skadden Release" and, together with the Pooling Party Release, the "Releases"), subject to the terms and conditions set forth below;

WHEREAS, this Settlement Agreement is entered into solely for the purpose of avoiding the costs, expense and inconvenience of future litigation and is not to be construed or interpreted as an admission of liability by any party hereto or any court or other adjudicative tribunal.

**NOW, THEREFORE**, in consideration of and reliance upon the promises, representations and the material covenants set forth hereinabove and hereinafter, it is understood and agreed as follows:

1.     **Settlement Payment; Approval Order**. In consideration of the Pooling Party Release and other terms set out in this Settlement Agreement, but subject to prior entry of the Approval Order (as defined below) and prior delivery in escrow to Skadden of the Pooling Party Release signed by each Party (other than Skadden), Skadden agrees to pay the sum of $4,250,000 to the Trustee (the "Settlement Payment"), in full settlement of all claims that the Trustee, BRG, the Funds, the JOLs, and the MBTA, had, have or may have against Skadden or any Skadden affiliated or related person or entity (collectively, the "Skadden Affiliated and Related Parties"), including but not limited to, those entities listed in Schedule A to the Pooling Party Release, as more particularly set forth in the Pooling Party Release.  Skadden shall deliver the Settlement Payment within five (5) business days after the date of entry of a final, non-appealable order by the Bankruptcy Court, in form and content reasonably acceptable to Skadden, approving this Settlement Agreement and the Pooling Party Release (the "Approval Order").  Payment hereunder shall be made by wire transfer to the Trustee's counsel, Luskin Stern & Eisler LLP, Eleven Times Square, New York, NY 10036 in accordance with the wire instructions set forth on Exhibit C.  The Settlement Payment shall be allocated among the Trustee and the other parties executing the Pooling Party Release in accordance with the percentages set forth in the Trustee's proposed Plan.

2.     **Releases**.

(a)     Each of the Pooling Parties shall execute a Pooling Party Release and deliver signed original copies of the same to Skadden upon the filing with the Bankruptcy Court of the Trustee's motion to approve this Settlement Agreement (the "Filing Date"), to be held by Skadden in escrow pending entry of the Approval Order and delivery of the Settlement Payment.

(b)    Skadden shall execute the Skadden Release and deliver a signed original copy of the same to the Trustee's counsel upon Filing Date, to be held by the Trustee's counsel in escrow pending entry of the Approval Order and delivery of the Settlement Payment. Skadden shall not nor shall it authorize any of the Skadden Affiliated and Related Parties to seek to pursue any claim or cause of action against any of the Pooling Parties based upon, related to, in connection with or arising out of, any of the Released Claims (as defined in the Skadden Release).

(c)    Nothing herein and nothing in the Releases shall release the parties hereto from any liability or obligation for any breach of this Settlement Agreement.  In the event of a breach of this Settlement Agreement, the sole and exclusive remedy shall be an action seeking to enforce the terms of this Settlement Agreement.  Except for the purpose of enforcing the terms of this Settlement Agreement, the Pooling Parties agree to refrain and forever forbear from commencing, instituting, joining, advising on, supporting, prosecuting, consenting to, authorizing or filing any claim for damages or demand in connection with, any lawsuit, action or proceeding against Skadden or any of the Skadden Affiliated and Related Parties based upon, related to, in connection with or arising out of, any of the Released Claims (as defined in the Pooling Party Release), other than as set forth in paragraph 3(d)(i), *infra*.

3.    **Additional Agreements and Covenants**.

(a)    Upon the Filing Date, the Pooling Parties shall, in consultation with and to the extent requested by Skadden, use their respective commercially reasonable efforts to cause Fletcher Dividend Income Fund, LLC, and The Aesop Fund, Ltd. to deliver to Skadden releases substantially in the form of the Pooling Party Release, subject to the terms of escrow set forth above.

(b)    The Pooling Parties shall also use their respective commercially reasonable efforts to include in any future settlement agreement with (i) Fletcher-Related Entities (identified in Exhibit C to the Trustee's Report) that are not parties to this Settlement Agreement or that have not delivered a release as set forth in paragraph 3(a), *supra*, or (ii) the Pooling Parties' respective parents, shareholders, members, investors, equity holders and affiliates that are not parties to this Settlement Agreement or that have not delivered a release as set forth in paragraph 3(a), *supra*, a clause that releases Skadden and the Skadden Affiliated and Related Parties from any claims or liability with respect to such settling entities and individuals.

(c)    To the extent the Pooling Parties obtain control over (i) Fletcher-Related Entities (identified in Exhibit C to the Trustee's Report) that are not parties to this Settlement Agreement or that have not delivered a release as set forth in paragraphs 3(a) or 3(b), *supra*, or (ii) the Pooling Parties' respective parents, shareholders, members, investors, equity holders and affiliates that are not parties to this Settlement Agreement or that have not delivered a release as set forth in paragraphs 3(a) or 3(b), *supra*, the Pooling Parties shall not authorize such entities or individuals to pursue any claim or cause of action against Skadden or any of the Skadden Affiliated and Related Parties based upon, related to, in connection with, or arising out of, any of the Released Claims (as defined in the Pooling Party Release) and shall use their respective commercially reasonable efforts to prevent such entities from pursuing any such claim or cause of action.

(d)    The Pooling Parties shall not (i) join, advise or support in the assertion of, or consent to or authorize, any claim or cause of action against Skadden or any of the Skadden Affiliated and Related Parties based on, arising out of, in connection with or related in any way to the Released Claims (as defined in the Pooling Party Release), including the matters addressed in the Report, this Settlement Agreement, and the Pooling Party Release by any person or entity on a going forward basis other than in responding to a subpoena or court order about which Skadden has been afforded reasonable advance notice, provided, however, that nothing herein shall prohibit the Trustee from communicating with the Louisiana Pension Funds (as defined, *infra*) with respect to claims they may have against persons or entities unrelated to Skadden, even where such claims may arise out of or relate to claims against Skadden; (ii) share in any proceeds of any such claim or cause of action against Skadden or any of the Skadden Affiliated and Related Parties or accept any other form of payment or consideration received from other parties in connection with such claim or cause of action, provided, however, that this sub-clause (ii) shall not apply to the MBTA; or (iii) disclose to any person or entity any document provided by Skadden to the Trustee without Skadden's prior consent or order of the Bankruptcy Court.

(e)    Skadden shall not on its own behalf, nor shall it authorize any of the Skadden Affiliated and Related Parties to, (i) join in the assertion of any claim or cause of action against the Pooling Parties related in any way to the matters addressed in the Report, this Settlement Agreement, and the Skadden Release by any person or entity, provided, however, that nothing herein shall prohibit Skadden and the Skadden Affiliated and Related Parties from asserting any fact or legal or equitable defense in any proceeding whatsoever; (ii) share in any proceeds of any such claim or cause of action against the Pooling Parties or accept any other form of payment or consideration received from other parties in connection with such claim or cause of action; or (iii) disclose to any person or entity any document provided by the Pooling Parties to Skadden without the Pooling Parties' prior consent or order of the Bankruptcy Court.

4.    **Effect of Failure of Trustee to Obtain Approval Order.**  In the event that the Trustee fails to obtain entry of the Approval Order, this Settlement Agreement, including paragraph 3, and the Releases shall be ineffective, null and void and of no force and effect, and Skadden shall return the Pooling Party Release to the Trustee's counsel and the Trustee's counsel shall return the Skadden Release to Skadden.

5.    **Governing Law; Jurisdiction; Effect**.  This Settlement Agreement shall be deemed to have been made in, shall be construed in accordance with and shall be governed by, the laws and regulations of the State of New York without regard to any of its choice of law rules that could mandate the application of the laws of any other jurisdiction. The parties expressly agree to submit all proceedings to enforce or in respect of this Settlement Agreement exclusively to the Bankruptcy Court, if and to the extent the Bankruptcy Court's jurisdiction exists, and if the Bankruptcy Court's jurisdiction is lacking, to the federal courts within the State and County of New York, if and to the extent that federal jurisdiction exists, and if federal jurisdiction is lacking, to the state courts located there.  The parties further agree not to contend that a proceeding brought in such court has been brought in an inconvenient forum.  This Settlement Agreement is not to be construed as an admission of liability by any or against any Party.

6.    **Representations**.

(a)    Each of the Pooling Parties individually represents and warrants to Skadden that each of them has (i) full authority to enter into this Settlement Agreement and the Pooling Party Release and perform his, her or its obligations thereunder, (ii) not sold, securitized or otherwise transferred any interest in any claims against Skadden or any of the Skadden Affiliated and Related Parties, and (iii) been represented and advised in respect of this Settlement Agreement and Pooling Party Release directly by counsel of his, her or its choosing or has had the opportunity to do so.  Each person that is a signatory below represents and warrants to Skadden that such person is duly authorized and empowered to enter into this Settlement Agreement.

(b)    Skadden represents and warrants to the Pooling Parties that it has (i) full authority to enter into this Settlement Agreement and the Skadden Release and perform its obligations thereunder, (ii) not sold, securitized or otherwise transferred any interest in any claims against the Pooling Parties, and (iii) been represented and advised in respect of this Settlement Agreement and Skadden Release directly by counsel of its choosing or has had the opportunity to do so.

(c)    The Trustee represents and warrants that he has disclosed to Skadden the name and identity of every entity over which he has control or with which he has entered into a pooling agreement and that he has accurately represented his ability to enter into a settlement on behalf of each such entity at the present time.

(d)    The Pooling Parties each represent and warrant that, with regard to each of their respective parents, shareholders, members, investors, equity holders and affiliates from which the Pooling Parties do not have the ability to secure the release of the Released Claims (as defined in the Pooling Party Release), each is unaware of any claim or cause of action that any such parent, shareholder, member, investor, equity holder or affiliate holds, intends to assert or is considering asserting against Skadden or any of the Skadden Affiliated and Related Parties, provided, however, that the Pooling Parties make no representation or warranty with respect to Soundview Elite Ltd., Soundview Premium, Ltd., Soundview Star Ltd., Elite Designated, Premium Designated, and Star Designated, Richcourt Euro Strategies Inc., Optima Absolute Return Fund Ltd., Richcourt Allweather Fund Inc., America Alternative Investments Inc., Richcourt Composite Inc., and Richcourt Allweather B Inc., New Wave Fund SPC, Pitagora Fund Ltd., and Soundview Composite, Ltd. (collectively, the "Richcourt Funds").

7.    **Exclusion of Certain Non-Party Claims**.  Notwithstanding anything in this Settlement Agreement to the contrary, the settlement set forth herein shall not preclude or release (i) any putative claim or cause of action that is personal to, and has been or might be asserted against Skadden by any of the New Orleans Firefighters Pension & Relief Fund, the Municipal Employees Retirement System and the Firefighters Retirement System (the "Louisiana Pension Fund(s)") or the Richcourt Funds and (ii) any legal or equitable right, claim, counterclaim, cause of action or defense that has been or might be asserted by Skadden or the Skadden Affiliated and Related Parties against any of the Louisiana Pension Funds or the Richcourt Funds (including, without limitation, any right to set off, offset, recoup or reduce any amount allegedly payable to any Louisiana Pension Fund or Richcourt Fund by any amount or

5

value received or to be received by the Louisiana Pension Funds or the Richcourt Funds or any
of them under the Plan, the Investor Settlement or otherwise). Any putative claims or causes of
action of any of the Louisiana Pension Funds or the Richcourt Funds that have been or might be
asserted by any of them against Skadden or the Skadden Affiliated and Related Parties shall not
be pooled pursuant to the Investor Settlement contemplated by the Plan.

8.    **Entire Agreement**. This Settlement Agreement and the Releases
collectively reflect the entire agreement between the parties hereto concerning the subject matter
hereof and supersedes any and all prior oral or written agreements between those parties. None
of the terms of this Settlement Agreement or the Releases can be altered, changed, or modified in
any way, except by written agreement signed by an authorized representative of the appropriate
party hereto.

9.    **Binding on Successors**. This Settlement Agreement shall be binding upon
and inure to the benefit of the parties hereto and their respective successors and assigns.

10.    **Counterparts**. This Settlement Agreement may be executed in any
number of counterparts, each of which shall be considered an original, but all of which shall
constitute one agreement. Copies shall have the same force and effect as an original.

11.    **Severability**. In the event any term or provision of this Settlement
Agreement shall be determined by appropriate judicial authority to be illegal or otherwise
invalid, such provision shall be given its nearest legal meaning or be construed as deleted as such
authority determines, and the remainder of this Settlement Agreement shall be continue in full
force and effect.

12.    **Waiver**. No waiver of any term, provision or condition of this Settlement
Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to
be or construed as a further or continuing waiver of any such term provision or condition or any
other term, provision or condition of this Settlement Agreement.

13.    **Survival of Representations and Obligations**. All the liabilities,
representations, warranties, agreements, covenants and other obligations of any kind made or
incurred by any party hereto in or in connection with this Settlement Agreement, and/or any
other agreement, certificate or other instrument delivered pursuant hereto shall survive the
closing date.

14.    **Notice**. Any notice, request, instruction or other document to be given
hereunder by any party hereto shall be in writing and delivered personally, by facsimile (with a
copy mailed via first class mail) or by certified of registered mail as follows:

If to Skadden:

Skadden, Arps, Slate, Meagher & Flom LLP
Attn: Lawrence Spiegel, Esq.
Partner and General Counsel
Four Times Square
New York, New York 10036

6

Fax: (917) 777-4155

If to the Trustee:

Richard J. Davis, Esq.
415 Madison Avenue, 11th Floor
New York, New York
Fax: (646) 553-1374

With a copy to:

Luskin Stern & Eisler LLP
Attn: Michael Luskin, Esq.
Eleven Times Square
New York, NY 10036
Fax: (212) 974-3205

If to BRG:

BRG Investments, LLC
c/o Richard J. Davis, Esq.
415 Madison Avenue, 11th Floor
New York, New York
Fax: (646) 553-1374

With a copy to:

Luskin Stern & Eisler LLP
Attn: Michael Luskin, Esq.
Eleven Times Square
New York, NY 10036
Fax: (212) 974-3205

If to MBTA:

Massachusetts Bay Transportation Authority Retirement Fund
Attn:  Michael H. Mulhern
One Washington Mall
Fourth Floor
Boston, MA 02108
Fax:

If to Alpha or the Alpha JVLs:

Fletcher Fixed Income Alpha Fund, Ltd.-In Voluntary Liquidation
c/o Zolfo Cooper (Cayman) Limited
Attn:  Tammy Fu and Gordon MacRae, Joint Voluntary Liquidators
Suite 776, 10 Market Street,
Camana Bay, Grand Cayman
Cayman Islands KY1-9006
Fax: (345) 946-0082

If to Leveraged or the Leveraged JOLs:

FIA Leveraged Fund, Ltd.-In Official Liquidation
c/o Ernst & Young Ltd.
Attn: Robin McMahon
62 Forum Lane
Camana Bay, Box 510
Grand Cayman  KY1-1106
Cayman Islands
Fax: (345) 949-8529

If to Arbitrage or the Arbitrage JOLs:

Fletcher Income Arbitrage Fund, Ltd.-In Official Liquidation
c/o Ernst & Young Cayman
Attn: Robin McMahon
62 Forum Lane
Camana Bay, Box 510
Grand Cayman  KY1-1106
Cayman Islands
Fax: (345) 949-8529

*[Remainder of Page Intentionally Left Blank]*

**IN WITNESS WHEREOF**, the parties have duly executed this Settlement Agreement in New York, New York on the 19th day of March, 2014.

Skadden, Arps, Slate, Meagher & Flom LLP

By:_____
            Lawrence Spiegel
            General Counsel and a Partner of the Firm

Fletcher International, Ltd.

By:_____
            Richard J. Davis
            Chapter 11 Trustee for Fletcher International, Ltd.

BRG Investments, LLC

By: Fletcher International, Ltd., its sole member

        By: _____
                Richard J. Davis, solely in my capacity as
                Chapter 11 Trustee, in, of, and on behalf of
                Fletcher International, Ltd.

FIA Leveraged Fund Ltd.

By:         _____
            Robin McMahon
            Joint Official Liquidator

Robin McMahon, as Joint Official Liquidator of FIA Leveraged Fund Ltd.

_____

Roy Bailey, as Joint Official Liquidator of FIA Leveraged Fund Ltd.

_____

Fletcher Income Arbitrage Fund, Ltd.
By:    _____
       Robin McMahon
       Joint Official Liquidator

Robin McMahon, as Joint Official Liquidator of Fletcher
Income Arbitrage Fund, Ltd.


_____


Roy Bailey, as Joint Official Liquidator of Fletcher Income
Arbitrage Fund, Ltd.


_____


Fletcher Fixed Income Alpha Fund, Ltd.
By:    _____
       Tammy Fu
       Joint Voluntary Liquidator

Gordon MacCrae, as Joint Voluntary Liquidator of Fletcher
Fixed Income Alpha Fund, Ltd.


_____


Tammy Fu, as Joint Voluntary Liquidator of Fletcher Fixed
Income Alpha  Fund, Ltd.


_____


Massachusetts Bay Transportation Authority Retirement
Fund

By:    _____
       Michael H. Mulhern
       Executive Director

Exhibit A

[Pooling Party Release]

## <u>POOLING PARTY RELEASE</u>

For good and valuable consideration, this Release is entered into by (i) Richard J. Davis, as Chapter 11 Trustee for Fletcher International, Ltd. ("FILB"), (ii) BRG Investments, LLC ("BRG"), (iii) FIA Leveraged Fund Ltd. ("Leveraged") and its Joint Official Liquidators, Robin McMahon and Roy Bailey, (iv) Fletcher Income Arbitrage Fund, Ltd. ("Arbitrage") and its Joint Official Liquidators, Robin McMahon and Roy Bailey, (v) Fletcher Fixed Income Alpha Fund, Ltd. ("Alpha" and, together with Leveraged and Arbitrage, the "Funds") and its Joint Voluntary Liquidators, Gordon MacCrae and Tammy Fu, and (vi) the Massachusetts Bay Transportation Authority Retirement Fund ("MBTA"), (collectively, the "Releasors").

Each of the Releasors, for itself, himself or herself and its, his or her current, future and former, directors, officers, partners, employees, direct and indirect subsidiaries, divisions, representatives, predecessor entities and successors and assigns, and each of their respective current, future and former directors, officers, partners, employees, agents, insurers, reinsurers, trustees and administrators and, to the extent they are within the respective control of the Releasors, the Releasors' affiliates, parents, shareholders, members, investors, and equity holders, hereby forever releases, discharges, and forgives Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") and any Skadden affiliated or related person or entity (collectively, the "Skadden Affiliated and Related Parties"), including, without limitation, those entities listed in Schedule A hereto, and their current, future and former affiliates, representatives, direct and indirect subsidiaries, divisions, predecessor entities and successors and assigns, and each of their, Skadden's and the Skadden Affiliated and Related Parties' current, future and former partners, members, shareholders, equity holders, directors, officers, employees, agents, managers, representatives, trustees, administrators, insurers and reinsurers (collectively, "Releasees"), for

and from any and all claims, demands, actions, suits, causes of action, damages whenever

incurred, and liabilities of any nature whatsoever, including costs, expenses, penalties and

attorneys' fees, whether known or unknown, whether suspected or unsuspected, whether

contingent, liquidated, or otherwise, whether accrued or unaccrued, whether asserted by way of

claim, counterclaim, cross-claim, third-party action, action for indemnity, contribution, or

otherwise, in law or in equity or otherwise, that the Releasors hereto or any of them, whether

directly or in any other capacity, ever had, now have or hereafter can, shall or may have in any

capacity against any of the Releasees, arising out of, relating to, in connection with or based

upon any claims, or factual or legal assertions that relate in any way to (i) Fletcher Asset

Management, Inc., the Releasors or any of the respective direct and indirect subsidiaries,

affiliates, and investors of any of the foregoing, including, without limitation any person or entity

identified or referenced in the Trustee's Report and Disclosure Statement filed on

January 24, 2014 in the United States Bankruptcy Court for the Southern District of New York in

Case No. 12-12796 (REG), Docket No. 393 (the "Report"), including those identified on Exhibit

C thereto, or (ii) any matter addressed in the Report (the "Released Claims"), provided, however,

that nothing contained in this Release shall preclude or release (a) any putative claim or cause of

action that is personal to, and has been or might be asserted against Skadden by, any of the New

Orleans Firefighters Pension & Relief Fund, the Municipal Employees Retirement System and

the Firefighters Retirement System (the "Louisiana Pension Funds") or any of Soundview Elite

Ltd., Soundview Premium, Ltd., Soundview Star Ltd., Elite Designated, Premium Designated,

Star Designated, Richcourt Euro Strategies Inc., Optima Absolute Return Fund Ltd., Richcourt

Allweather Fund Inc., America Alternative Investments Inc., Richcourt Composite Inc.,

Richcourt Allweather B Inc., New Wave Fund SPC, Pitagora Fund Ltd., and Soundview

Composite, Ltd. (the "Richcourt Funds") or (b) any legal or equitable right, claim, counterclaim, cause of action or defense that has been or might be asserted by Skadden or any of the Skadden Affiliated and Related Parties against any of the Louisiana Pension Funds or the Richcourt Funds (including, without limitation, any right to set off, offset, recoup or reduce any amount allegedly payable to any Louisiana Pension Fund or any Richcourt Fund by any amount or value received or to be received by the Louisiana Pension Funds or the Richcourt Funds or any of them under the Plan, the Investor Settlement or otherwise).

Each Releasor represents and warrants to the Releasees that it is duly authorized to enter into and perform under this Release, that it is the sole and lawful owner of all right, title, and interest in and to every claim and other matter that the Releasor purports to release herein, and that such Releasor has not heretofore assigned or transferred, or purported to assign or transfer to any person or entity who is not a Releasor any claim or other matters herein released. This Release shall be effective upon entry of a final, non-appealable order by the Bankruptcy Court approving the Settlement Agreement and the Releases and payment of the Settlement Amount.  In the event the Settlement Agreement and the Releases are not approved by the Bankruptcy Court, this Release shall be ineffective, null and void and of no force and effect. Each Releasor shall indemnify the Releasees and defend and hold them harmless from and against any claim based upon or arising in connection with any such prior assignment or transfer, or any such purported assignment or transfer, by such indemnifying Releasor of any claim or other matter released or assigned herein.

Nothing herein shall release any of the Releasors from any liability or obligation for any breach of this Release.  In the event of a breach of this Release, the sole and exclusive remedy shall be an action seeking to enforce the terms of this Release.  Except for the purpose of

-3-

enforcing the terms of the Settlement Agreement or this Release, the Releasors agree to refrain

and forever forbear from commencing, instituting, joining, advising on, supporting, prosecuting

or filing any claim for damages or demand in connection with, any lawsuit, action or proceeding

against Skadden based upon, or arising out of, any of the Released Claims, provided, however,

that nothing herein shall prohibit the Trustee from communicating with the Louisiana Pension

Funds with respect to claims they may have against persons or entities unrelated to Skadden,

even where such claims may arise out of or relate to claims against Skadden.

This Release shall be governed by, and construed and interpreted in accordance

with, the substantive law of the State of New York, excluding its conflict of laws provisions.

This Release may be executed in counterparts and by facsimile, and shall be

effective as to each Releasor when such party has signed and delivered to Skadden at least one

such counterpart.  Each counterpart shall be deemed an original, and, when taken together with

each other signed counterparts, shall constitute one Release, which shall be binding upon and

effective as to each of the Releasors.  Facsimile signatures or signatures emailed in portable

document format (PDF) shall be acceptable and deemed binding on the parties hereto as if they

were originals.

Fletcher International, Ltd.

By:_____
Richard J. Davis
Chapter 11 Trustee for Fletcher International, Ltd.

Sworn to before me this
___ day of _____, 2014.


_____
Notary Public

-4-

BRG Investments, LLC

By: Fletcher International, Ltd., its sole member

    By: _____

        Richard J. Davis, solely in my capacity as
        Chapter 11 Trustee, in, of, and on behalf of
        Fletcher International, Ltd.

Sworn to before me this
___ day of _____, 2014.


_____
    Notary Public


FIA Leveraged Fund Ltd.

By: _____

    Robin McMahon
    Joint Official Liquidator

Sworn to before me this
___ day of _____, 2014.


_____
    Notary Public


Robin McMahon, as Joint Official Liquidator of FIA
Leveraged Fund Ltd.

_____

Sworn to before me this
___ day of _____, 2014.


_____
    Notary Public

Roy Bailey, as Joint Official Liquidator of FIA Leveraged
Fund Ltd.

_____

Sworn to before me this
___ day of _____, 2014.


_____
        Notary Public


Fletcher Income Arbitrage Fund, Ltd.

By:    _____
        Robin McMahon
        Joint Official Liquidator

Sworn to before me this
___ day of _____, 2014.


_____
        Notary Public


Robin McMahon, as Joint Official Liquidator of Fletcher
Income Arbitrage Fund, Ltd.

_____

Sworn to before me this
___ day of _____, 2014.


_____
        Notary Public

Roy Bailey, as Joint Official Liquidator of Fletcher Income
Arbitrage Fund, Ltd.

_____

Sworn to before me this
___ day of _____, 2014.


_____
       Notary Public



Fletcher Fixed Income Alpha Fund, Ltd.

By:    _____
       Tammy Fu
       Joint Voluntary Liquidator

Sworn to before me this
___ day of _____, 2014.


_____
       Notary Public



Gordon MacCrae, as Joint Voluntary Liquidator of Fletcher
Fixed Income Alpha Fund, Ltd.

_____

Sworn to before me this
___ day of _____, 2014.


_____
       Notary Public

-7-

Tammy Fu, as Joint Voluntary Liquidator of Fletcher Fixed
Income Alpha  Fund, Ltd.

_____

Sworn to before me this
___ day of _____, 2014.


_____
        Notary Public


Massachusetts Bay Transportation Authority Retirement
Fund

By:    _____
        Michael H. Mulhern
        Executive Director

Sworn to before me this
___ day of _____, 2014.


_____
        Notary Public

**<u>Schedule A</u>**

Skadden Affiliated and Related Parties

- Skadden, Arps, Slate, Meagher & Flom LLP
- Skadden, Arps, Slate, Meagher & Flom (UK) LLP
- Skadden, Arps, Slate, Meagher & Flom (Europe) LLP
- Skadden, Arps Law Office (formerly known as Skadden, Arps, Tokyo Kyodo Law Office)
- Skadden, Arps, Slate, Meagher & Flom (formerly known as Skadden, Arps, Slate, Meagher & Flom (International))
- Skadden, Arps, Slate, Meagher & Flom LLC
- Skardel, LLC (formerly known as Skardel, Inc.)
- Skadden, Arps, Slate, Meagher & Flom Consultaria Empresarial Ltda.
- Skadden, Arps, Slate, Meagher & Flom Consultores Em Direito Estrangeiro/Direito Norte Americano
- SABR Holdings LLC
- Skadden, Arps, Slate, Meagher & Flom (Delaware)
- Skadden, Arps, Slate, Meagher & Flom (Illinois)
- Skadden, Arps, Slate, Meagher & Flom (New Jersey)
- Skadden, Arps International Consultants Limited
- Skadden, Arps, Slate, Meagher & Flom (Corporate Services) Limited
- BECS Holding Company, LLC
- JSBB Holding Company, LLC
- Thurcom Limited

Exhibit B

[Skadden Release]

**EXHIBIT B**

### <u>SKADDEN RELEASE</u>

For good and valuable consideration, this Release is entered into by Skadden,

Arps, Slate, Meagher & Flom LLP ("Skadden" or "Releasor").

Releasor hereby forever releases, discharges, and forgives Fletcher International,

Ltd. ("FILB") and Richard J. Davis, as Chapter 11 Trustee for FILB (the "FILB Trustee"),

(ii) BRG Investments, LLC ("BRG"), (iii) the Massachusetts Bay Transportation Authority

Retirement Fund ("MBTA"), (iv) FIA Leveraged Fund Ltd. ("Leveraged") and its Joint Official

Liquidators, Robin McMahon and Roy Bailey, (v) Fletcher Income Arbitrage Fund, Ltd.

("Arbitrage") and its Joint Official Liquidators, Robin McMahon and Roy Bailey, and (vi)

Fletcher Fixed Income Alpha Fund, Ltd. ("Alpha" and, together with Leveraged and Arbitrage,

the "Funds") and its Joint Voluntary Liquidators, Gordon MacCrae and Tammy Fu and their

current, future and former representatives, direct and indirect subsidiaries, divisions, predecessor

entities and successors and assigns, and each of their, FILB's, BRG's, the MBTA's, and the

Funds's current, future and former partners, directors, officers, employees, agents, managers,

representatives, trustees, administrators, insurers and reinsurers (collectively, "Releasees"), for

and from any and all claims, demands, actions, suits, causes of action, damages whenever

incurred, and liabilities of any nature whatsoever, including costs, expenses, penalties and

attorneys' fees, whether known or unknown, whether suspected or unsuspected, whether

contingent, liquidated, or otherwise, whether accrued or unaccrued, whether asserted by way of

claim, counterclaim, cross-claim, third-party action, action for indemnity, contribution, or

otherwise, in law or in equity or otherwise, that the Releasor, whether directly or in any other

capacity, ever had, now have or hereafter can, shall or may have in any capacity against any of

the Releasees, arising out of, relating to, in connection with or based upon any claims, or factual

or legal assertions that relate in any way to (i) Fletcher Asset Management, Inc., FILB, MBTA,

BRG, the Funds, their respective JOLs, or any of the respective direct and indirect subsidiaries,

affiliates, and investors of any of the foregoing, including, without limitation any person or entity

identified or referenced in the Trustee's Report and Disclosure Statement filed on

January 24, 2014 in the United States Bankruptcy Court for the Southern District of New York in

Case No. 12-12796 (REG), Docket No. 393 (the "Report"), including those identified on Exhibit

C thereto, or (ii) any matter addressed in the Report (the "Released Claims"), provided, however,

that nothing contained in this Release shall preclude or release (a) any putative claim or cause of

action that is personal to, and has been or might be asserted against Skadden by, any of the New

Orleans Firefighters Pension & Relief Fund, the Municipal Employees Retirement System and

the Firefighters Retirement System (the "Louisiana Pension Funds") or any of Soundview Elite

Ltd., Soundview Premium, Ltd., Soundview Star Ltd., Elite Designated, Premium Designated,

Star Designated, Richcourt Euro Strategies Inc., Optima Absolute Return Fund Ltd., Richcourt

Allweather Fund Inc., America Alternative Investments Inc., Richcourt Composite Inc.,

Richcourt Allweather B Inc., New Wave Fund SPC, Pitagora Fund Ltd., and Soundview

Composite, Ltd. (the "Richcourt Funds"), or (b) any legal or equitable right, claim, counterclaim,

cause of action or defense that has been or might be asserted by Skadden or any Skadden

affiliated or related person or entity including, without limitation, those entities listed in

Schedule A hereto, and their current, future and former parents, shareholders, members, equity

holders, directors, officers, partners, employees, direct and indirect subsidiaries, affiliates,

divisions and representatives, predecessor entities and successors and assigns (collectively, the

"Skadden Affiliated and Related Parties"), against any of the Louisiana Pension Funds or the

Richcourt Funds (including, without limitation, any right to set off, offset, recoup or reduce any

amount allegedly payable to any Louisiana Pension Fund or any Richcourt Fund by any amount

or value received or to be received by the Louisiana Pension Funds or the Richcourt Funds or

any of them under the Plan, the Investor Settlement or otherwise).

The Releasor represents and warrants to the Releasees that it is duly authorized to

enter into and perform under this Release, that it is the sole and lawful owner of all right, title,

and interest in and to every claim and other matter that the Releasor purports to release herein,

and that such Releasor has not heretofore assigned or transferred, or purported to assign or

transfer to any person or entity who is not a Releasor any claim or other matters herein released.

This Release shall be effective upon entry of a final, non-appealable order by the Bankruptcy

Court approving the Settlement Agreement and the Releases and payment of the Settlement

Amount.  In the event the Settlement Agreement and the Releases are not approved by the

Bankruptcy Court, this Release shall be ineffective, null and void and of no force and effect.

Each Releasor shall indemnify the Releasees and defend and hold them harmless from and

against any claim based upon or arising in connection with any such prior assignment or transfer,

or any such purported assignment or transfer, by such indemnifying Releasor of any claim or

other matter released or assigned herein.

Nothing herein shall release the Releasor from any liability or obligation for any

breach of this Release.  In the event of a breach of this Release, the sole and exclusive remedy

shall be an action seeking to enforce the terms of this Release.  Except for the purpose of

enforcing the terms of the Settlement Agreement or this Release, Skadden agrees to refrain and

forever forbear from commencing, instituting, joining, advising on, supporting, prosecuting,

consenting to, authorizing or filing any claim for damages or demand in connection with, any

lawsuit, action or proceeding against the Releasees based upon, or arising out of, any of the

-3-

Released Claims and shall not authorize any Skadden Affiliated and Related Parties to seek to pursue any claim or cause of action against any of the Releasees based upon, or arising out of, related to, or in connection with any of the Released Claims, provided, however, that nothing herein shall prohibit Skadden and the Skadden Affiliated and Related Parties from asserting any fact or legal or equitable defense in any proceeding whatsoever.

This Release shall be governed by, and construed and interpreted in accordance with, the substantive law of the State of New York, excluding its conflict of laws provisions.

This Release may be executed in counterparts and by facsimile, and shall be effective as to each Releasor when such party has signed and delivered to the FILB Trustee at least one such counterpart.  Each counterpart shall be deemed an original, and, when taken together with each other signed counterparts, shall constitute one Release, which shall be binding upon and effective as to the Releasor.  Facsimile signatures or signatures emailed in portable document format (PDF) shall be acceptable and deemed binding on the parties hereto as if they were originals.

Skadden, Arps, Slate, Meagher & Flom LLP

By:_____
            Lawrence Spiegel
            General Counsel and a Partner of the Firm

Sworn to before me this
___ day of _____, 2014.


_____
      Notary Public

-4-

## <u>Schedule A</u>

Skadden Affiliated and Related Parties

- Skadden, Arps, Slate, Meagher & Flom LLP
- Skadden, Arps, Slate, Meagher & Flom (UK) LLP
- Skadden, Arps, Slate, Meagher & Flom (Europe) LLP
- Skadden, Arps Law Office (formerly known as Skadden, Arps, Tokyo Kyodo Law Office)
- Skadden, Arps, Slate, Meagher & Flom (formerly known as Skadden, Arps, Slate, Meagher & Flom (International))
- Skadden, Arps, Slate, Meagher & Flom LLC
- Skardel, LLC (formerly known as Skardel, Inc.)
- Skadden, Arps, Slate, Meagher & Flom Consultaria Empresarial Ltda.
- Skadden, Arps, Slate, Meagher & Flom Consultores Em Direito Estrangeiro/Direito Norte Americano
- SABR Holdings LLC
- Skadden, Arps, Slate, Meagher & Flom (Delaware)
- Skadden, Arps, Slate, Meagher & Flom (Illinois)
- Skadden, Arps, Slate, Meagher & Flom (New Jersey)
- Skadden, Arps International Consultants Limited
- Skadden, Arps,  Slate, Meagher & Flom (Corporate Services) Limited
- BECS Holding Company, LLC
- JSBB Holding Company, LLC
- Thurcom Limited

Exhibit C

[Wire Instructions]

# WIRE TRANSFER INSTRUCTIONS

### CITIBANK
153 East 53rd Street
23rd Floor
New York, NY  10022

ABA # █████████

For further credit to:
### LUSKIN, STERN & EISLER LLP
### ATTORNEY IOLA ACCOUNT

Account # █████████