Alphonse Fletcher, Jr.
48 Wall Street, Fourth Floor
New York, NY 10005
(212) 284-4800

Hearing Date:   9:45 AM, April 2, 2014
Response Date:        March 28, 2014

## UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FLETCHER INTERNATIONAL, LTD.,<br><br>                     Debtor. | Chapter 11<br>Case No. 12-12796 (REG) |

### MOTION OF ALPHONSE FLETCHER, JR., TO COMPEL COMPLIANCE WITH BANKRUPTCY CODE AND RULES *IN RE FLETCHER INTERNATIONAL, LTD.* AND ASSOCIATED CASES

I, Alphonse Fletcher, Jr., am not an attorney and am appearing *pro se* as a party-in-interest in these associated cases[1] ("Associated Cases" or "Estates"). Yesterday, Tuesday, March 19, 2014, I wrote to the court and the parties-in-interest in the above associated cases to respectfully request that the Court address the issues described in my letter, primarily the Fiduciaries' violation of Rule 2014 and possible violation of section 327(a). In response, this court directed me to obtain a hearing date from chambers, which I have now done. The fiduciaries in these associated cases ("Fiduciaries") failed to disclose their connections[2] to defendants in a related race discrimination-retaliation case. The failures of the Fiduciaries raise grave issues of fundamental fairness, due process, and equal protection, because those defendants are alleged to have vowed and acted to "destroy"[3] the plaintiff and his funds, which are the debtors in these associated cases.

1

Each of the chapter 11 Fiduciaries[4] failed to list connections to parties holding interests adverse to these estates such as John Angelo and Angelo, Gordon & Co. (together with associated parties, "Angelo").[5] Angelo counsel Kasowitz Benson, former counsel to Fletcher International, Ltd., Fletcher Asset Management, Inc., and me, appeared without our consent in the Soundview matter representing to the court that its client was an investor in certain Soundview Debtors.[6] So did Angelo counsel Paul Weiss.[7] Kasowitz Benson and its client worked together with the Joint Official Liquidators, Citco Group, Paul Weiss, Morrison Foerster, former director Deborah Midanek, and others before, during, and after the Soundview trial with the shared goal of removing Soundview management including me.

I respectfully submit that for the reasons described in my March 19, 2014 letter the Court should compel the chapter 11 Fiduciaries to comply with Bankruptcy Rule 2014 and Bankruptcy Code 326(a), compel the chapter 15 Fiduciaries to comply with Rule 15(b)(1), Rule 2019, Rule 1007(a)(4) and Local Rule 1007-3, and, compel Kasowitz Benson to comply with Rule 2019 and Rule 1.9 of the Rules of Professional Conduct. The Court should also stay each party's actions until it has complied and remove any Fiduciary that cannot comply.

As courts have observed on multiple occasions, and recently *In re GSC Group Inc.*, the bankruptcy system is self-policing. It is not the responsibility of the United States Trustee, the Court, or other interested parties to discern gaps in the disclosures provided, or to ferret out every last piece of information that may not have been disclosed completely. In essence, the bankruptcy system relies upon the integrity of professionals appearing in bankruptcy cases to make forthright, complete and candid disclosures to fulfill the spirit of the Bankruptcy Code, even where the professionals know that making these disclosures may result in a court's

2

determination that they may not be retained in the case. This determination is for the courts to

decide, and not the professionals themselves, especially in a case such as this involving

allegations of malicious and unlawful threats and retaliation from influential parties.

In light of the facts presented in my letter, I respectfully request that this Court address

these violations and take any appropriate action.

Dated: San Francisco, CA
March 21, 2014

Alphonse Fletcher, Jr.
Party-in-Interest *pro se*
48 Wall Street, 4th Floor
New York, NY 10005
(212)284-4800

---

[1] *In re Fletcher International, Ltd. (12-12796), In re Soundview Elite, Ltd.,et al. (13-13098-reg), In re Fletcher Income Arbitrage Fund (in official liquidation) (14-10093-reg), and In re FIA Leveraged Fund (in official liquidation).*

[2] Additionally, the Ernst & Young Liquidators' chapter 15 applications for FIA Leveraged Fund and Fletcher Income Arbitrage fund, Ltd. failed to disclose the current ownership of their estates as required by Rule 1007.[5]

[3] "These more recent acts of defamation were consistent with Defendant Barnes' threat to Fletcher in June 2010 that if Fletcher went ahead and vindicated his rights by filing this lawsuit, the [Dakota] Board would do everything in its power to destroy Fletcher and his reputation in the business community." *Fletcher v Dakota*, Amended Complaint, Paragraph 7

[D]efendant Barnes specifically threatened that if Fletcher ultimately brought a lawsuit against the Dakota, "what the Dakota will say will cause [Fletcher] far more harm than any harm caused to the Dakota." Given defendants' recent conduct, and Barnes' recent machinations, defendants have at least tried to carry out this threat.... Defendant Barnes made similar statements regarding plaintiff at other points between May and September 2010. For example, on September 5, 2010, Barnes told another Dakota shareholder that the Dakota would, among other things, make public statements attacking Fletcher, his financial health, and his business if Fletcher brought a lawsuit. *Fletcher v Dakota*, Amended Complaint, Paragraph 113

[4] Each of Paul Weiss, Young Conaway, Jones Day, Quinn Emanuel ("Quinn"), and Kasowitz Benson has represented Angelo, Gordon & Co. in significant matters and each played roles of various sizes in the Tribune matter. Financial advisor Goldin Associates ("Goldin") also played a role in Tribune.

[5] John Angelo is the Treasurer and major shareholder of Dakota Inc., a defendant in *Alphonse Fletcher, Jr., and Fletcher Asset Management, Inc. v. The Dakota Inc. Bruce Barnes, Pamela Lovinger, Peter Nitze, John Rydzewski, and Anthony R. Smith and Gael Smith Arnold as co-executors of The Estate of Ruth Proskauer Smith (11-101289)* in New York Supreme Court.

[6] This assertion is not substantiated in the record. Kasowitz Benson refused to comply with discovery requests made by the Soundview Debtors and did not file disclosure under Rule 2019.

[7] In the Soundview chapter 11 proceedings, former Fletcher counsel Paul Weiss in *Fletcher v Dakota* represented Citco.  Soundview investor Pasig Ltd. was represented by Kasowitz Benson which had replaced Paul Weiss as our Fletcher counsel until Kasowitz also withdrew.  Paul Weiss cleared conflicts, drafted the original complaint in *Fletcher v Dakota*, managed our case for more than six months, and was paid more than $1 million.  Paul Weiss did not appear in court and selected another law firm to appear in its place.  Paul Weiss explained that its managing partner would not allow the firm to appear in this case because John Angelo's Angelo, Gordon & Co. is an "important" client of Paul Weiss.

4

Honorable Robert E. Gerber
March 19, 2014

Alphonse Fletcher, Jr.
48 Wall Street, 4th Floor
New York, NY 10005

March 19, 2014

Hon. Robert E. Gerber
United States Bankruptcy Judge
Southern District of New York
One Bowling Green, Courtroom 523
New York, NY 10004-1408

Re:    *In re Fletcher International, Ltd., In re Soundview Elite, Ltd. et al.,*
       *In re Fletcher Income Arbitrage Fund Ltd., and In re FIA Leveraged Fund*
       (Corrected March 21, 2014)

Dear Judge Gerber,

I am a party-in-interest appearing *pro se* in these cases.[1]  I write to bring to the Court's
attention certain legal issues that have arisen in these cases. These issues may affect materially
each retention in the Fletcher and Soundview cases and the chapter 15 recognition in the FIA
Leveraged and Fletcher Income Arbitrage cases.  The issues concern compliance with
Bankruptcy laws and, as discussed below, could also affect the Fletcher Trustee's Plan of
Liquidation, recognition of the Ernst & Young Liquidators, the United Community Banks
settlement, and appointment of the Soundview professionals.  I respectfully request that the
Court address this issue as a threshold matter in advance of other actions in these proceedings.

To summarize the issues, each of the Fletcher Fiduciaries and the Soundview Fiduciaries
(together "Fiduciaries") represented to the Court that it had "disclose[d] all facts"[2] and
connections that "would even faintly color the independence and impartial attitude required by
the Code and Bankruptcy Rules."[3]  The disclosed and undisclosed connections described below,
however, including connections to parties related to the defendants in *Fletcher v Dakota*,[4] a race
discrimination-retaliation case I filed in 2011, reveal "divided loyalties and affected judgments."[5]
Fiduciaries with connections to such parties could have interests "consistent with Defendant
Barnes' threat to Fletcher in June 2010 that if Fletcher went ahead and vindicated his rights by
filing this lawsuit, the [Dakota] Board would do everything in its power to destroy Fletcher and
his reputation in the business community."[6]

These Dakota connections include Dakota Treasurer John Angelo of Angelo, Gordon &
Co. ("Angelo Gordon"), the firms that supported the takeover of Tribune[7] by Angelo and
JPMorgan Chase, his son Jesse Angelo of News Corporation[8], Dakota President Jay Goldsmith
of Balfour Investors ("Balfour"), Dakota shareholder and former vice president Matthew Mallow

of Blackrock, my former counsel Kasowitz, Benson, Torres, Friedman LLP ("Kasowitz"), and Dakota counsel Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn"), Quinn's outside counsel Gregory P. Joseph[9], Quinn's Cayman co-counsel Ross McDonough of Campbells[10] (work praised by the Cayman Islands Chief Justice as "a model of international cooperation"[11]), and Quinn's U.K. co-counsel Michael Crystal, QC.[12] The issues are even clearer now that the Trustee's plans have been fully revealed.

**Fletcher International, Ltd. Trustee's counsel,** Luskin, Stern & Eisler LLP ("Luskin"), disclosed its current active representation of Ernst & Young Liquidators but attested to having no interests adverse to the estate even though the estate was already in active litigation with the Ernst & Young Liquidators that were appointed by to liquidate FIA Leveraged Fund and Fletcher Arbitrage Fund, Ltd.[13]

**Fletcher International, Ltd. Trustee's Financial Advisor** Goldin Associates LLC ("Goldin") attested to having no interests adverse to the estate. Yet Goldin disclosed its current work for Fletcher estate adversaries, including JPMorgan Chase (which convinced other funds to support Angelo Gordon's Tribune bankruptcy plan by "threatening to pull unrelated business,"[14] and whose affiliates interfered with Fletcher International, Ltd. including with its investment agreement with United Comunity Banks, Inc.), Young Conaway (Fletcher International, Ltd.'s debtor's counsel), Kasowitz Benson, Zolfo Cooper liquidators (for Fletcher Fixed-Income Alpha Fund), Holland & Knight (counsel to a significant Fletcher fund investor), and HSBC (lender to the Dakota and Angelo Gordon). It also disclosed that it had worked for Fletcher estate adversaries Ernst & Young, and Credit Suisse (which seized tens of millions of dollars of Fletcher International, Ltd. assets).[15]

**Soundview Trustee Corinne Ball's law firm, Jones Day, Soundview Trustee's Counsel,** attested to having no interests adverse to the estates. Yet it disclosed its current work for Soundview estate adversaries, including Citco (which filed Cayman Island wind up petitions against Soundview funds), JPMorgan Chase , Credit Suisse, HSBC, and others.

**Soundview Financial Advisor, Geoffrey Varga of Kinetic Partners,** attested to having no interests adverse to the estates. Yet Kinetic disclosed current work for Soundview estates adversaries including Citco affiliates, Credit Suisse, and HSBC. It also disclosed previous work with five adversaries of the estates: Firefighters' Retirement System, Municipal Employees' Retirement System of LA, New Orleans Fire Fighters Pension & Relief Fund, Walkers Legal Services (which failed to disclose its conflicts with many of these same parties), Wilmington Trust National Association (which froze the Soundview funds' accounts).

A review of the Fiduciaries' websites, news articles, and company filings reveals many previously undisclosed connections to parties with interests adverse to the estates including many parties related to the Dakota ("Dakota Parties"). Below are some of the connections to Dakota Parties that the Fiduciaries failed to disclose (see also a table at Exhibit A).

**Fletcher International, Ltd. Trustee Richard J. Davis** retired as a senior partner of Weil, Gotshal & Manges LLP ("Weil") fewer than nine months prior to his appointment as Fletcher Trustee[16] yet did not disclose any Weil clients, though several have interests adverse to the estates. Mr. Davis personally represented News Corporation and Sotheby's, each of which is closely affiliated with John Angelo. Silver Point Capital, Citco's financial sponsor, is a Weil client. Mr. Davis served in leadership roles at Citizens Union with Dakota Party Anthony Smith, a named defendant in *Fletcher v Dakota*.[17] In retention applications filed while Mr. Davis was a senior partner, Weil listed additional clients with interests adverse to the estates, Blackstone, Credit Suisse, D.E. Shaw, Ernst & Young, HSBC Bank, J. P. Morgan Chase, Milbank Tweed Hadley & McCloy (counsel to Credit Suisse), Morgan Stanley & Co. (Dakota shareholder is a senior officer), The Seaport Group (broker for the Fletcher International, Ltd. trustee), and Wilmington Trust Company.[18]

**Luskin** (counsel to Trustee Davis and to the Ernst & Young Liquidators) failed to disclose its business relationship with Young Conaway, Fletcher Debtor's counsel, and others with involvement in these proceedings.

**Goldin** failed to disclose its direct relationship with Dakota counsel Quinn (which defended Goldin in a fraud suit settled after losing its motion to dismiss),[19] Dakota president Jay Goldsmith of Balfour, and Dakota treasurer John Angelo of Angelo Gordon. Below, from the Goldin's website, news stories, and corporate filings, are four examples of some of its dealings with Dakota Parties that create a serious conflict.

1. Goldin "[s]erved as interim management in connection with [Refco] one of the largest bankruptcies in U.S. history"[20] Refco. Shortly after Goldin's appointment on December 20, 2005,[21] Refco announced that ForstmannLeff "has been sold to New York hedge fund group Angelo, Gordon & Co"[22] instead of the sale of the subsidiary to its staff as it had reported earlier on November 14, 2005.[23]

2. Goldin Associates[24] and Balfour Investors took control[25] and restructured Sterling Optical.[26]"

3. Goldin Associates worked closely with Angelo Gordon again as "[e]xaminer and financial advisor... for Enron's principal subsidiary... renegotiated the debtors' joint plan of reorganization, resulting in a transfer of value of more than $1 billion to the ENA estates."[27] Angelo Gordon "purchased much of the debt of a crucial Enron subsidiary, Enron North America Corp., which is sometimes referred to as the parent corporation's cash cow. Angelo Gordon's interest is to prevent the consolidation of the different debtors--i.e. of Enron Corp. and Enron North America--thereby preventing the dilution of its share of the Enron North America cash flow."[28] Some were unhappy, "We strongly disagree with the [Goldin]'s characterizations of not only the process but also the negotiations and the plan that he supported," Enron spokeswoman Karen

3

Honorable Robert E. Gerber
March 19, 2014

Denne said.[29] In this litigation, Quinn Emanuel represented four hedge fund groups including "Angelo Gordon —as plaintiff-holders... With Citibank's motion for summary judgment pending, Citibank and Enron agreed to a joint settlement and our clients received in excess of $2.1 billion in payments from the Enron bankruptcy estate."[30]

4. In Loral, Goldin and Angelo Gordon worked on yet another bankruptcy not disclosed in these proceedings.[31] Previously, "Loral's vendors quit the creditors' committee and resold their trade claims to hedge funds such as Angelo, Gordon. Lawyers for Angelo, Gordon then complained in court filings that the plan paid trade creditors only 33 cents on the dollar... Former New York City Comptroller Harrison J. Goldin was appointed examiner, and in a March 2005 report, he said that Loral's bankers at Greenhill & Co. had undervalued the company by between $280 million and $463 million. Lawyers for Loral and the creditors bitterly criticized Goldin's analysis, but his report was quickly followed by an amended plan of reorganization that would pay the claims of Angelo, Gordon in full."[32]

**Young Conaway** was actively working with Angelo Gordon in the Tribune bankruptcy[33] when it was retained as debtor's counsel for Fletcher International, Ltd. but did not disclose it. Young Conaway also did not disclose that it was actively working with the Louisiana Officials and Fletcher's Cayman law firm Walkers in the Delaware bankruptcy proceeding of another fund with which the Louisiana Officials, Young Conaway, and Kinetic Partners' Geoffrey Varga replaced the fund manager.[34] Then Young Conaway, after my discovery of Kinetic's work with the Louisiana Officials, nevertheless persisted in discussions with Mr. Varga about the case and efforts to get him appointed as a fiduciary for Fletcher International, Ltd.

**Corinne Ball and Jones Day** retention applications as Soundview fiduciaries did not include certain connections included in prior retention applications. Some of those connections are to parties that are targets for significant claims in these cases including Ernst & Young, Zolfo Cooper, D.E. Shaw, and Angelo Gordon, and News Corporation.[35]

**Geoffrey Varga of Kinetic Partners, Soundview Financial Advisor,** did not disclose his work with Quinn Emanuel since 2010 on a multi-billion dollar Cayman windup and related chapter 15 proceeding[36] with Quinn Emanuel whom the Dakota retained in 2010 to plan its campaign against my funds, months prior to my 2011 lawsuit against the Dakota. Mr. Varga did not disclose that Young Conaway tried to appoint him as an "independent fiduciary" for Fletcher International, Ltd. Nor did disclose that the Louisiana Officials and Young Conaway replaced the manager of another fund group with Kinetic described in "Kinetic goes 'zombie' hunting" in a July 23, 2012 Pension and Investments article.[37] Mr. Varga did not disclose his efforts with Young Conaway in the Fletcher International, Ltd. case or Young Conaway's August 20, 2012 "independent fiduciary" proposal to this Court in which it suggested "a gentleman named Geoff Varga, who's from a company called KineticPartners"[38] as one of the candidates.

4

These undisclosed connections and interests adverse to the estates cast doubt on the major decisions of the Trustee, specifically, related to the proposed settlement of the four primary disputes that led to these associated insolvency cases. Those settlements would provide relatively little or no consideration to the estate or create liabilities.

1. the estate's important claims against JPMorgan-supported United Community Banks would be settled for an unreasonably small fraction of the Trustee's artificially low "maximum" value (a figure which itself is a fraction of the true "maximum" value which exceeds $100 million and is comparable to the increase in United's market capitalization following its announcement of the settlement).

2. the Ernst & Young Liquidators would settle the litigation that *Fletcher International, Ltd.* brought against the Ernst & Young Liquidators for harms they caused awarding them most of the Fletcher International, Ltd. estate despite their valid prior redemption and their reckless settlement of their redemption securities while rejecting higher bids by other creditors and refusing to get court approval.[39]

3. Credit Suisse would be released even though it seized and sold the estate's Ion Geophysical convertible preferred stock to D.E. Shaw for millions below a more attractive alternative bid, which D.E. Shaw resold for millions above the small premium charged by Credit Suisse. (Separately, litigation against the Ion Geophysical was mismanaged and settled for nominal amounts.)

4. the Louisiana Officials, purported "major parties-in-interest,"[40] would share in the estate despite violating several agreements with the Fletcher funds and causing substantial damage through misuse of legal proceedings.

All of these proceedings and litigation began the parties affiliated with the Dakota, in an effort to escalate its unlawful retaliation against me, retained Quinn in 2010 to target our Cayman funds. The Quinn partner had no discrimination experience but was actively working on a multi-billion dollar Cayman Island wind up with Geoffrey Varga of Kinetic and others now involved in these cases. Working with Quinn's outside counsel, Gregory P. Joseph[41] in multiple jurisdictions,[42] the Louisiana Officials, obtained in the Cayman Islands what they could not in the U.S. Quinn's co-counsel, Ross McDonough of Cayman Island law firm Campbells, represented the Louisiana Officials. Rather than litigating to resolve the redemption which they disputed, the Louisiana Officials filed a bad faith "wind up petition," the equivalent of an involuntary bankruptcy petition.[43]

Mr. McDonough represented the Louisiana Officials in front of the Cayman Islands Chief Justice who granted their petition. Mr. McDonough also represents the Chief Justice, as his

personal counsel, which would disqualify a judge[44] from hearing cases argued by that lawyer under U.S. legal system. Mr. McDonough has represented the Chief Justice for years in, among other things, a mystery involving anonymous letters to the editor of a Cayman Newspaper[45] that were critical of the Chief Justice. *The Independent* describes the controversy as "attempts to pervert the course of justice over a Watergate-style break-in at a newspaper office on the islands, according to documents seen by *The Independent on Sunday*."[46],[47] Under "circumstances that might appear strange to those accustomed to the U.S. legal system,"[48] Mr. McDonough argues in front of the Chief Justice. This is especially true considering the Foreign and Commonwealth Office[49] justifies its refusal to release the allegations against the Chief Justice and others because:

> "We judge that disclosure of the information requested could lead to a loss of confidence within the international community, which could impact negatively on the Cayman Islands' reputation and, more directly, on its financial services industry."[50]

Irregularities, however, have been observed from the start of *Fletcher v Dakota*. In particular, the influence of John Angelo has been felt as exemplified by his connections to Fiduciaries in these associated cases and involvement in our legal representation. Our former counsel Paul Weiss and Kasowitz, for example, each has long represented Angelo Gordon and its partners including News Corporation. In early 2011, Paul Weiss cleared conflicts, drafted the original complaint in *Fletcher v Dakota*, managed our case for more than six months, and was paid more than $1 million. Yet Paul Weiss refused to appear in court or sign its filings, had another law firm appear in its place, and continued to manage the case "behind the scenes." Paul Weiss explained that its managing partner would not allow the firm to appear in this case because John Angelo's Angelo, Gordon & Co. is an "important" client of Paul Weiss. Paul Weiss resigned in July 2011 and one week later News Corporation announced its hiring of Paul Weiss for help with its "Hacking Scandal." A few weeks after Kasowitz replaced Paul Weiss, Quinn invited Kasowitz to serve as its co-counsel in the Federal Home Finance Agency cases seeking hundreds of billions of dollars of damages against the major investment banks.[51] In 2013, both Paul Weiss and Kasowitz appeared in the Soundview proceedings without my consent as their former client.[52] There are many other examples involving interference in offshore proceedings, media, government investigations, and business relationships.

Judge Shelley C. Chapman in her recent GSC Group decision referring to Judge Bernstein's opinion *in re Granite* as one of "two seminal cases in this District involving serious allegations of misconduct" highlights the public interests that are at stake:

> Judge Bernstein found that [chapter 11 trustee Goldin's counsel] Willkie represented adverse interests at the time it undertook representation of the Trustee due to its concurrent relationship with [litigation target] Merrill. Due to its increased representation of Merrill (and the amount of fees generated by its work for Merrill), no matter how thoroughly or fairly Willkie conducted the investigation on behalf of the Trustee, "the question will always linger whether it held back, or failed to bite the hand that feeds it

6

quite as hard as the circumstances warranted." Judge Bernstein observed that the Trustee's counsel must be above suspicion, as "[b]ankruptcy is concerned as much with appearances as with reality.

Given the impact this previously unanticipated gating issue under sections 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014 could have on the proceedings I respectfully request (i) that the Court hear legal argument on these issues first, at its Wednesday hearing for these cases, as to the effect of the Fiduciaries violation of Rule 2014 and possible violation of section 327(a) and (ii) stay actions of the Fiduciaries until their compliance with section 327(a) and Rule 2014 is confirmed.

Sincerely and respectfully submitted,

Alphonse Fletcher, Jr.

Cc: See distribution on following page

7

Honorable Robert E. Gerber
March 19, 2014

**Distribution:**

Mario Aieta on behalf of Defendant FIA Leveraged Fund
maieta@ssbb.com, managingclerk@ssbb.com

Timothy T. Brock on behalf of Defendant FIA Leveraged Fund
tbrock@ssbb.com, tlewis@ssbb.com;asnow@ssbb.com;managingclerk@ssbb.com;cgrace@ssbb.com

Timothy T. Brock on behalf of Foreign Representative FIA Leveraged Fund (In Liquidation)
tbrock@ssbb.com, tlewis@ssbb.com;asnow@ssbb.com;managingclerk@ssbb.com;cgrace@ssbb.com

Kelly D. Curtin on behalf of Debtor Soundview Elite Ltd.
kdcurtin@pbnlaw.com,
mdlaskowski@pbnlaw.com;mpdermatis@pbnlaw.com;rasegall@pbnlaw.com;sakelly@pbnlaw.com

David W. Dykhouse on behalf of Interested Party Patterson Belknap Webb & Tyler LLP
dwdykhouse@pbwt.com, mcobankruptcy@pbwt.com

Amy Edgy Ferber on behalf of Trustee Corinne Ball
aeferber@jonesday.com, bstone@jonesday.com

Elisabetta Gasparini on behalf of U.S. Trustee United States Trustee
Elisabetta.G.Gasparini@usdoj.gov

Daniel F.X. Geoghan on behalf of Attorney Young Conaway Stargatt & Taylor, LLP
DGeoghan@coleschotz.com

Jeffrey R. Gleit on behalf of Creditor Pasig Ltd.
jgleit@kasowitz.com, courtnotices@kasowitz.com,JBalduzzi@kasowitz.com

Andrew K. Glenn on behalf of Creditor Pasig Ltd.
aglenn@kasowitz.com, courtnotices@kasowitz.com

David R. Hurst on behalf of Debtor Fletcher International, Ltd.
dhurst@coleschotz.com, pratkowiak@coleschotz.com;kkarstetter@coleschotz.com

Neal R. Jacobson on behalf of Interested Party Securities And Exchange Commission
jacobsonn@sec.gov

Richard I. Janvey on behalf of Unknown The Firefighters Retirement System,
rjanvey@diamondmccarthy.com, nsullivan@diamondmccarthy.com

Justin Klein on behalf of Defendant FIA Leveraged Fund
jklein@ssbb.com, managingclerk@ssbb.com

David R. Lurie on behalf of Defendant FIA Leveraged Fund-In Official Liquidation
dlurie@ssbb.com, managingclerk@ssbb.com

Warren J. Martin, Jr. on behalf of Attorney Porzio, Bromberg & Newman, P.C.
wjmartin@pbnlaw.com, sakelly@pbnlaw.com;mdlaskowski@pbnlaw.com;mpdermatis@pbnlaw.com

Michael J. Merchant on behalf of Interested Party Wilmington Trust, National Association

8

Honorable Robert E. Gerber
March 19, 2014

merchant@rlf.com, rbgroup@rlf.com

John J. Monaghan on behalf of Defendant Fletcher Fixed Income Alpha Fund, Ltd-In Official Liquidation
bos-bankruptcy@hklaw.com

Michael J. Naporano on behalf of Debtor Soundview Elite Ltd.
mjnaporano@pbnlaw.com, mpdermatis@pbnlaw.com

Barbra R. Parlin on behalf of Defendant Fletcher Fixed Income Alpha Fund, Ltd-In Official Liquidation
barbra.parlin@hklaw.com

John A Pintarelli on behalf of Unknown Peter Anderson and Matthew Wright, as Joint Official Liquidators
of Soundview Elite Limited, Soundview Premium and Soundview Star Limited
jpintarelli@mofo.com, ECF@mofo.com

Mark J. Politan on behalf of Creditor Affiliated Debtors-In-Possession, Soundview Elite Ltd., et al, In
Cases Pending Before This Court and Jointly Administered Under Case No. 13-13098
mjpolitan@pbnlaw.com, mpdermatis@pbnlaw.com;mdlaskowski@pbnlaw.com;tjfreedman@pbnlaw.com

Michael P. Pompeo on behalf of Interested Party EisnerAmper LLP
mpompeo@dbr.com

Veerle Roovers on behalf of Trustee Corinne Ball
vroovers@jonesday.com, bstone@jonesday.com

Justin M. Sher on behalf of Interested Party Fletcher Asset Managment, Inc.
jsher@shertremonte.com, mcuccaro@shertremonte.com

Glenn E. Siegel on behalf of Other Prof. Conway MacKenzie Management Services, LLC
Glenn.Siegel@morganlewis.com

Daniel H. Tabak on behalf of Defendant FIA Leveraged Fund-In Official Liquidation
dtabak@cohengresser.com

Andrew G. Horne on behalf of Respondent Kirkland & Ellis LLP
ahorne@kirkland.com

Corinne Ball
Jones Day LLP
222 East 41st Street
New York, NY 10017-6702
cball@jonesday.com

CohnReznick LLP
333 Thornall Street
Attn: Bernard A. Katz
Edison, NJ 08837
Bernie Katz <Bernie.Katz@CohnReznick.com>
Howard Konicov <hkonicov@jhcohn.com>

Alphonse Fletcher, Jr.
Afletcher@fletcher.com

George E. Ladner
Gladner@fletcher.com

9

Gary S. Lee on behalf of Unknown Peter Anderson and Matthew Wright, as Joint Official Liquidators of Soundview
Elite Limited, Soundview Premium and Soundview Star Limited
Morrison & Foerster LLP
1290 Avenue of the Americas
40th Floor
New York, NY 10022
glee@mofo.com, jpintarelli@mofo.com

Richard C. Morrissey on behalf of U.S. Trustee United States Trustee
Office of the U.S. Trustee
33 Whitehall Street, 21st Fl.
New York, NY 10004
richard.morrissey@usdoj.gov

Karen Ostad on behalf of Unknown America Alternative Investments Inc
Ostad PLLC
185 Great Neck Road
Suite 330
Great Neck, NY 11021
kostad@ostadllc.com

Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Richard J. Davis
415 Madison Ave.
New York, NY 10017
davis Richard <Richard.Davis@rjdavislaw.com>

Gary S. Lee on behalf of Unknown Peter Anderson and Matthew Wright, as Joint Official Liquidators of
Soundview Elite Limited, Soundview Premium and Soundview Star Limited
Morrison & Foerster LLP
1290 Avenue of the Americas
40th Floor
New York, NY 10022
glee@mofo.com, jpintarelli@mofo.com

Stephan E. Hornung on behalf of Plaintiff Richard J. Davis
Luskin, Stern & Eisler LLP
Eleven Times Square
New York, NY 10036
Michael Luskin on behalf of Attorney Luskin, Stern & Eisler LLP
Luskin, Stern & Eisler LLP
Eleven Times Square
New York, NY 10036
Michael Luskin on behalf of Plaintiff Richard J. Davis
Luskin, Stern & Eisler LLP
Eleven Times Square
New York, NY 10036
**Stephan Hornung <hornung@lsellp.com>**

Honorable Robert E. Gerber
March 19, 2014

Richard C. Morrissey on behalf of U.S. Trustee United States Trustee
Office of the U.S. Trustee
33 Whitehall Street, 21st Fl.
New York, NY 10004
richard.morrissey@usdoj.gov

Karen Ostad on behalf of Unknown America Alternative Investments Inc
Ostad PLLC
185 Great Neck Road
Suite 330
Great Neck, NY 11021
kostad@ostadllc.com

Skadden, Arps, Slate, Meagher & Flom LLP
Spiegel, Lawrence S <Lawrence.Spiegel@skadden.com>
Turner Julie A <Julie.Turner@skadden.com>

Stewart Turner
Sturner@Fletcher.com

WeiserMazars, LLP
135 West 50th Street
New York, NY 10020

Abigail Snow on behalf of Foreign Representative FIA Leveraged Fund (In Liquidation)
asnow@ssbb.com

Daniel N. Zinman on behalf of 3rd Party Plaintiff Kasowitz Benson Torres & Friedman LLP
dzinman@kasowitz.com, courtnotices@kasowitz.com

gerber.chambers@nysb.uscourts.gov

11

Honorable Robert E. Gerber
March 19, 2014

## Connections and Adverse Interests - *In re Fletcher International, Ltd.* and Associated Cases



**IN RE FLETCHER INTERNATIONAL, LTD.**
**Fiduciaries:  Richard J. Davis, Luskin Stern, Goldin Associates, Young Conaway**
(Mr. Davis was a senior partner at Weil partner fewer than 9 months prior to his appointment as chapter 11 trustee.)

| Connections: Ernst & Young, Louisiana Officials | Connections: John Angelo, Quinn Emanuel, Anthony Smith, Jay Goldsmith, Mallow/Blackstone, etc. | Young Conaway/Goldin clients: Angelo Gordon, JPMorgan, and Credit Suisse; Goldin client: HSBC | Richard J. Davis Client: Sotheby's ("Price Fixing"), current Weil client | Weil client: Silver Point | Richard J: Davis Client: News Corporation (defamation, NYPost.com dispute), current client of Weil |

**John Angelo and son Jesse Angelo  - Angelo, Gordon & Co.**

| **Dakota, Inc.** | **JPMorgan Chase / Credit Suisse** | **Sotheby's** | **Silver Point** | **News Corporation** |
|---|---|---|---|---|
| HSBC - Dakota Mortgage | | | Citco's financial sponsor | |
| Pres: Jay Goldsmith-Balfour | Agents for Angelo Gordon and its Partners in Tribune | John Angelo is a Director, Nominated James Murdoch | Angelo Gordon Partner in Silver Oak Capital | Jesse Angelo, "Attributable Interest," *NY Post* Publisher |
| Treas: John Angelo - AG | | | | |
| VP: Matt Mallow-Blackstone | *Counsel* to Angelo, Gordon, JPMorgan, Credit Suisse: | *Counsel* to Sotheby's: | *Counsel* to Silver Point and Silver Oak: | *Counsel* to News Corp and Angelo, Gordon: |
| *Counsel* to Dakota, Angelo Gordon and Blackstone: | **Young Conaway, Paul Weiss, Weil Gotshal Jones Day** | **Paul Weiss Weil Gotshal** | **Weil Gotshal, Paul Weiss** | **Paul Weiss, Kasowitz Benson** |
| **Quinn Emanuel** | | | | |

| | **Jones Day, Kinetic** (connected with LA Officials, Quinn Emanuel and Dakota) | **Weil Gotshal, Walkers** | **Paul Weiss, Morrison Foerster** | **Kasowitz Benson** |
|---|---|---|---|---|
| Quinn Emanuel's Outside Counsel: **Gregory P. Joseph** Co-Counsel: **Ross McDonough** Co-Counsel: **Walkers** | | | | |
| Louisiana Officials, Ernst & Young | Corinne Ball of Jones Day | Midanek (Richcourt) | Citco/JOLs (Soundview) | Pasig, Ltd. (Soundview) |
| **FIA LEVERAGED, ARBITRAGE** | **RICHCOURT / SOUNDVIEW FUNDS** | | | |

March 20, 2014 Draft

Exhibit A

12

[1] If I have followed incorrect procedure, am otherwise required to change something, or have overlooked an error, I will rectify the situation as quickly as possible once I am aware.

[2] Source Enters., 2008 WL 850229 at 8

[3] Granite Partners, 219 B.R. at 24

[4] On February 1, 2011, Fletcher Asset Management, Inc. and I filed a lawsuit against the Dakota entitled: *ALPHONSE FLETCHER, JR., AND FLETCHER ASSET MANAGEMENT, INC. V. THE DAKOTA INC. BRUCE BARNES, PAMELA LOVINGER, PETER NITZE, JOHN RYDZEWSKI, AND ANTHONY R. SMITH AND GAEL SMITH ARNOLD AS CO-EXECUTORS OF THE ESTATE OF RUTH PROSKAUER SMITH (11-101289).* ("*Fletcher v Dakota*") Among its claims were defamation and retaliation in violation of New York City Administrative Law 8-107 *et seq.*"[24] relating to the Dakota's efforts "to harm and destroy the personal and business reputation of plaintiffs; and, on information and belief, to intimidate Fletcher and FAM into dropping this lawsuit..." Fletcher Asset Management, Inc. and I seek "not less than $50 million" and "an order enjoining the Dakota and Barnes from continuing to engage in discriminatory conduct with respect to Fletcher" or "interfering with or impeding in any way..."

In 2012, the Appellate Division, First Department affirmed Justice Rakower's substantial denial of the Dakota defendants' motion-to-dismiss. With Associate Justice Rolando T. Acosta's opinion, the court sought to "clear up an element of possible confusion" and confirms the lack of "a safe harbor from judicial inquiry for directors who are alleged to have engaged in conduct not protected by the business judgment rule." Fletcher v. Dakota, Inc., 99 A.D.3d 43, 52 n.2 (1st Dep't 2012)

From 2007 through 2010, my defense of current and prospective Dakota shareholders against their discriminatory conduct led former presidents John Rydzewski and Bruce Barnes to threaten to use the Dakota's "influence" to cause harm to our investment business and ultimately to my family.

> Specifically, they spread lies throughout the media that FAM is not profitable, that it is highly leveraged, and that its capital is being depleted. These more recent acts of defamation were consistent with Defendant Barnes' threat to Fletcher in June 2010 that if Fletcher went ahead and vindicated his rights by fling this lawsuit, the Board would do everything in its power to destroy Fletcher and his reputation in the business community.
> *Fletcher v Dakota*, Amended Complaint, Paragraph 7

> [D]efendant Barnes specifically threatened that if Fletcher ultimately brought a lawsuit against the Dakota, "what the Dakota will say will cause [Fletcher] far more harm than any harm caused to the Dakota." Given defendants' recent conduct, and Barnes' recent machinations, defendants have at least tried to carry out this threat.... Defendant Barnes made similar statements regarding plaintiff at other points between May and September 2010. For example, on September 5, 2010, Barnes told another Dakota shareholder that the Dakota would, among other things, make public statements attacking Fletcher, his financial health, and his business if Fletcher brought a lawsuit.
> *Fletcher v Dakota*, Amended Complaint, Paragraph 113

[5] MF Global, 464 B.R. at 600 (citations omitted)

[6] *Fletcher v Dakota*, Amended Complaint, Paragraph 7

[7] Each of Paul Weiss, Young Conaway, Jones Day, Quinn Emanuel ("Quinn"), and Kasowitz Benson has represented Angelo, Gordon & Co. in significant matters and each played roles of various sizes in the Tribune matter. Financial advisor Goldin Associates ("Goldin") also played a role in Tribune. In Enron, one of the previous matters in which the parties have worked together, Quinn won Angelo and its allies a $2.1 billion settlement in litigation relating to a Cayman special purpose vehicle, after Angelo and his allies succeeded in having Goldin Associates appointed as a special examiner.

[8] Jesse Angelo, Publisher of News Corporations' "*New York Post*" and founder of its "*The Daily*," holds an "Attributable Interest" in News Corporation according to its FCC filings. (https://licensing.fcc.gov) Kasowitz Benson defended News Corporation in race discrimination-retaliation cases relating to a 2009 *New York Post* "Stimulus Monkey" cartoon which Jesse Angelo approved. John Angelo's Angelo, Gordon & Co. had successfully defeated a discrimination-retaliation case in 2009 in which the plaintiff's alleged that Angelo Gordon "set out to destroy my ability to find subsequent employment." (*Nieves v Angelo Gordon*).

Court filings in *Guzman v News Corporation* (1:09-cv-09832-LG) and the related cases revealed that Black journalists claimed their termination from News Corporation's *New York Post* was in retaliation for their complaints against a controversial February 2009 cartoon. The cartoon depicted a monkey shot dead by two New York City policemen who then ask "They'll have to find someone else to write the next stimulus bill." The preceding page had a picture of President Barack Obama signing the stimulus bill. Court filings in that litigation contained many references to Jesse Angelo who then served as managing editor of the *New York Post*.

According to the affidavit of *Post* employee Shari Logan filed in the litigation, Jesse Angelo informed another editor of the arrest of my friend and Harvard's Alphonse Fletcher University Professor Henry Louis Gates for "breaking into his own home." According to the affidavit, the editor said "apparently, he is an angry, Black man" and in response to the arrest responded "nice!"

In an April 25, 2012 deposition, defended by Kasowitz Benson, Jesse Angelo was asked what additional "punishment" was given beyond a verbal "reprimand" after employee Steve Dunlevy referred to a black journalist to his face in front of other colleagues as a "token ni***r." Jesse Angelo was asked "was any other action ever taken against Mr. Dunlevy?" To which, which Jesse Angelo responded: "For what?" In response to the follow up "For this incident," Jesse Angelo said, "Not that I am aware of."

In that same deposition, in response to questions about the "Stimulus" monkey cartoon, Jesse Angelo testified: "I approved the cartoon... I was aware of the historical fact that Blacks had been portrayed as chimpanzees..."

[9] *American International Group, Inc. v. Bank of America Corp., 11 Civ. 6212 (BSJ) (S.D.N.Y.)*, Document 42-6, page 2, Letter from Gregory P. Joseph of September 26, 2011 to Joseph J. Ybarra of Munger, Tolles, & Olson LLP
"We have been retained by Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), in connection with the purported conflict issue raised in your September 19, 2011 letter to Michael B. Carlinsky."

[10] IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, In re TRIDENT MICROSYSTEMS, INC., *et al.*', Chapter 11 Case No. 12-10069 (CSS)

[11] ADDRESS TO THE RECOVERY AND INSOLVENCY SPECIALISTS ASSOCIATION (CAYMAN) LIMITED (RISA) [THE LOCAL CHAPTER OF INSOL INTERNATIONAL], THE WESTIN HOTEL, GRAND CAYMAN, 30TH, NOVEMBER 2012

> The doctrine of "modified universalism"... has evolved from the longstanding tradition of cross-border co-operation exemplified.. by cross-border liquidation protocols such as those entered into by Cayman office holders under the aegis of the Grand Court with their counterparts in Texas in Enron. Or, as further example, as most recently done in Trident Countersystems, [*sic*] with counter-parts in Delaware...

[12] Michael Crystal, QC, "Recent Important Cases" include FIA Leveraged Fund and Quinn's Saad Investments (http://www.southsquare.com/2010/12/michael-crystal-qc-cv/)

> FIA Leverage Fund v Firefighters' Retirement System and Others, Court of Appeal of the Cayman Islands (Chadwick, P., Mottley and Conteh JJ.A) 18 February 2013;

> Ahmad Hamad Algosaibi & Brothers Company v Saad Investments Company Limited, Grand Court of the Cayman Islands, Financial Services Division (Smellie CJ), 2 March 2012;

> Ahmad Hamad Algosaibi & Brothers Company v Saad Investments Company Limited, Grand Court of the Cayman Islands, Financial Services Division (Smellie CJ), 2 December 2011;

[13] DECLARATION OF MICHAEL LUSKIN IN SUPPORT OF TRUSTEE'S APPLICATION FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF LUSKIN, STERN & EISLER LLP
AS HIS COUNSEL NUNC PRO TUNC TO SEPTEMBER 25, 2012 (ECF No. 120)

[14] *Chicago Tribune, "Part four: Bankruptcy Inc.," January 16, 2013, Michael Oneal,* (www.chicagotribune.com

[15] DECLARATION OF MARTI P. MURRAY IN SUPPORT OF THE TRUSTEE'S APPLICATION FOR AN ORDER PURSUANT TO BANKRUPTCY CODE SECTION 327(A) AND BANKRUPTCY RULE 2014 AUTHORIZING THE EMPLOYMENT AND RETENTION OF GOLDIN ASSOCIATES, LLC AS SPECIAL CONSULTANT TO THE TRUSTEE *NUNC PRO TUNC* TO OCTOBER 5, 2012 (ECF No. 124)

[16] APPLICATION FOR ORDER APPROVING APPOINTMENT OF CHAPTER 11 TRUSTEE (ECF No. 112)

[17] Anthony Smith was one of the potential witnesses in *Fletcher v Dakota* who switched sides after being threatened by the Dakota Parties. Amended Complaint Paragraphs 104-108:

> 104. On May 19, 2010, Smith emailed Fletcher to say that he had learned of the "absurd, unfair and inexplicable" rejection of Fletcher's application through a call from the Dakota's managing agent. On May 21, Fletcher replied that he was preparing a response to the Board in an attempt to understand and resolve their concerns and offered to pay to the Estate the maintenance charges and other out-of-pocket expenses associated with Apartment 50 while discussions with the Board were on-going.

> 105. On May 24, 2010, counsel for the Estate negotiated with Fletcher's counsel to hold Apartment 50 off of the market in exchange for monthly payments by Fletcher. On information and belief, one or more of the Individual Defendants sought to coerce the Estate not to enter into any such agreement with Fletcher.

> 106. On June 2, 2010, the Board held a meeting at which it discussed a request by the Estate to apply for a bridge loan to pay the estate taxes on Apartment 50. Though Board approval is not required for this type of financing, the Board granted conditional approval to the Estate's request, The minutes indicate that approval was conditioned upon satisfaction of Barnes' "inquiries" on the Board's behalf. The nature of these "inquiries" is nowhere specified, 107. On June 14, 2010, Kiely, Fletcher's counsel, spoke with counsel to the Estate,

> 107. Elliott Meisel. Meisel conveyed that the Estate did not believe that the Board's decision regarding Fletcher's application would change. He also indicated that the Estate did not want to be seen as supporting a litigation against the Board for fear that the directors would exact revenge upon the Smiths. Still, he said that the Estate would give Fletcher time to resolve the dispute because Mrs. Smith had so clearly wanted Fletcher to purchase the apartment.

> 108. In June 2010, the Estate contacted John Burger of Brown Harris Stevens upon the recommendation of defendant Rydzewski, who is a friend of Mr. Burger, and subsequently made Mr. Burger the exclusive listing agent for Apartment 50.

[18] Application to Employ Weil, Gotshal & Manges LLP as Attorneys For The Debtors filed by Shai Waisman on behalf of Lehman Brothers Holdings Inc.. (Waisman, Shai) (Entered: 10/08/2008) (ECF No. 758) Filed 10/08/08 Entered 10/08/08 14:57:34 Main Document Pg 19 of 35

[19] Heller v. Goldin Restructuring Fund, LP, 590 F. Supp. 2d 603 (S.D.N.Y. 2008) District Court, S.D. New York
(www.courtlistener.com)

[20] Goldin Associates website: http://www.goldinassociates.com/?page_id=189

[21] *New York Times*, "Refco Appoints Chief," December 20, 2005, Bloomberg News, (www.nytimes.com)

[22] efinancialnews, "Refco seeks to pay chief $685 per hour," January 9, 2006, Shanny Basar, Simon Gray (www.efinancialnews.com)

[23] *Pension and Investments*, "ForstmannLeff employees strike deal to buy out firm during Refco controversy," November 2005, Mark Bruno (www.ebscohost.com)

[24] Goldin Associates website: http://www.goldinassociates.com/?page_id=310

[25] *New York Times*, "Head of Optical Chain Steps Aside as President," January 21, 2001, Warren Strugatch, (www.nytimes.com)

[26] Emerging Vision, Inc., 10-Q, June 30, 2004, http://www.getfilings.com/o0001002554-04-000026.html
Interestingly, given Goldin's analysis of warrants in this case, Goldin and Balfour were
compensated in "warrants," according to company filings: "558,292 of the warrants issued to
Goldin ... vested... On May 20, 2004, Goldin exercised all such warrants... 279,146 of the
warrants issued to Balfour... vested... On May 20, 2004, Balfour exercised all such warrants.

[27] Goldin Associates website: http://www.goldinassociates.com/?page_id=241

[28] *ThnkAdvisor*, "Update: Enron Proposes a 30/70 Rule for Consolidation," August 11, 2003
(www.thinkadvisor.com)

[29] *AP News Archive*, "Creditors Pan Enron Reorganization Plan," November 20, 2003
(www.apnewsarchive.com)

[30] Quinn Emanuel Website:
http://www.quinnemanuel.com/mobile/attorneys/attorneys-detail.aspx?nodeID=2001

[31] Goldin Associates website: http://www.goldinassociates.com/?page_id=223

[32] *Barrons*, "What's Loral Worth?," May 7, 2005, Bill Alpert, (www.wsj.com)(www.siliconinvestor.com)

[33] IN RE TRIBUNE CO., 476 B.R. 843 (2012), In re TRIBUNE COMPANY, et al.,1 Debtors. No.
08-13141 (KJC). United States Bankruptcy Court, D. Delaware. July 13, 2012.

[34] In re: Sand Spring Capital III, LLC, *et al.,* 11-13393(BLS), Debtors' Motion for Entry of an Order
Authorizing the Payment of Certain Fees and Expenses in Connection with the Replacement of
Commonwealth Advisors, Inc. and Sand Spring Management, LLC as Managing Member and/or
Investment Advisor of the Debtors. (DCF No. 199)

[35] Applications to Employ Jones Day in *In re Tribune Company* 08-13141 (KJC), *In re AMR Corporation*
11-15463 (SHL), *In re Lehman Holdings Inc., et al.* 08-13555 (JMP)

[36] Kinetic Partners' website: www.kinetic-partners.com

[37] "Pension and Investments," "Kinetic goes 'zombie' hunting - The consulting firm just entered the
business of dismantling illiquid funds," July 23, 2012, Christine Williamson
Specifically, Kinetic just entered the business of dismantling illiquid "zombie" private equity and
hedge funds, said Geoff Varga, partner and global head of the New York-based firm's corporate
recovery and restructuring practice... "We are a liquidator with a different wrapper and our ability
to take over management of the fund gives us another layer of control over the fund's assets,
allowing us to give fund investors more input into how they want the wind-down process to go,"
Mr. Varga said...The firm is in the process of registering with the Securities and Exchange
Commission as a money manager, but already received its first assignment as replacement money
manager for the Commonwealth and Sand Spring Capital hedge fund families. The nine funds
were managed by Commonwealth Advisors Inc., Baton Rouge, La. Commonwealth filed for
Chapter 11 bankruptcy protection on behalf of the funds in late 2011

[38] *In re Fletcher International, Ltd.* August 20, 2012

[39] The Ernst & Young Liquidators refused to consider the Soundview funds' offer to pay more than twice that amount to purchase the position. They also refused Soundview's request that they seek Cayman Court approval. In his April 3, 2013 email to Cayman counsel for Soundview and Richcourt funds, Robert McMahon, one of the Ernst & Young Liquidators, declared:

> As it is not necessary, we will not be pursuing court sanction in Cayman of the mediation settlement. Additionally, the settlement you refer to has been agreed to by all members of the liquidation committee of FIA Leveraged Fund (in Official Liquidation) who represent the majority of creditors of the fund. With regard to the settlement amount and settlement agreement, we have authorized the Trustee, Richard Davis to share this with the New York attorneys for Richcourt Holdings, Weil, Gotshal.

> *In re Soundview Elite, Ltd., et al*, Case No. 13-13098 (REG),SUPPLEMENTAL DIRECT TESTIMONY AFFIDAVIT OF ALPHONSE FLETCHER, JR. ON MOTION'S TO DISMISS CONVERT OR APPOINT A TRUSTEE, December 11, 2013

> Email from Robert McMahon to Cherry Bridges, April 3, 2013, "re - Richcourt Holding Inc."

[40] The Verified Petition in support of chapter 15 recognition for FIA Leveraged Fund does not state the current ownership of the stakeholders even though it is required by Rule 1007(a)(4). Instead the Ernst & Young Liquidators inserted a reference to 2012 ownership information:

> I certify that the equity ownership of FIA Leveraged Fund (in Liquidation) ("Leveraged") as reported in Leveraged's records is as follows: Leveraged - Estimated capital balances as at 13th April 2012 Provided by the Directors of Leveraged... Note 1 - Names redacted as it is an offence in the Cayman Islands to release investor names without an order of the Cayman Court pursuant to the Confidential Relationships Preservation Law

Similarly, none of the Ernst & Young Liquidators, their counsel, the Louisiana pension funds, their counsel, nor any of the Soundview parties appear to have filed disclosure required by Bankruptcy Rule 2019. Rule 2019 requires "a verified statement setting forth the information specified in subdivision (c) of this rule shall be filed by every group or committee that consists of or represents, and every entity that represents, multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another."

> Bankruptcy Rule 2019(b)(1); Represent" or "represents" means to take a position before the court or to solicit votes regarding the confirmation of a plan on behalf of another. [2019(a)(2)]; "Disclosable economic interest" means any claim, interest, pledge, lien, option, participation, derivative instrument, or any other right or derivative right granting the holder an economic interest that is affected by the value, acquisition, or disposition of a claim or interest. [Rule 2019(a)(1)].

[41] The Louisiana Officials had signed a confidentiality agreement on July 22, 2011 in which they agreed not to share Fletcher information with the Dakota, Quinn Emanuel, or any of their representatives. Paragraph 3:

> Except as otherwise provided in this letter agreement, the Confidential Information will not, without the prior written consent of FAM, be disclosed in whole or in part by the Pension Plans or any representative or affiliate of the Pension Plans, to any person, including without limitation, the Dakota co-op board, Quinn Emanuel Urquhart & Sullivan, LLP, or any other representative of record for the Dakota co-op board in the litigation titled Alphonse Fletcher Jr. and Fletcher Asset Management Inc. v. The Dakota Inc. et, al., filed in the Supreme Court of the State of New York, or to any director, officer, member, partner, associate, employee or any other affiliate or person related to such entities (each a "Dakota Party" and, collectively, the "Dakota Parties" ).

Honorable Robert E. Gerber
March 19, 2014

[42] Quinn Emanuel's outside counsel, Gregory P. Joseph, informed Fletcher counsel in early 2012 that he represented the Louisiana officials. Mr. Joseph proposed that the Fletcher Funds enter into an agreement through which Mr. Joseph would also represent the Fletcher Funds. The agreement would provide Mr. Joseph with authority to manage the litigation against United Community Banks with respect to the entire United Option. The agreement would also release Mr. Joseph from any liability for the outcome of that litigation and waiver any conflicts to permit him to represent the Louisiana officials in any future litigation against the Fletcher Funds, Management, or their affiliates. Fletcher counsel informed him that our first requirement was that any agreement must prohibit any collusion with the Dakota Parties as the Louisiana officials had previously agreed in the July 22, 2011 confidentiality agreement. Mr. Joseph did not pursue the representation after that request.

Mr. Joseph's firm then re-appeared on April 25 with a demand letter on behalf of the Louisiana officials relating to the shares of FILB Co-Investments, LLC. Then Mr. Joseph's firm appeared again on or about June 15, representing the Ernst & Young Joint Official Liquidators. He next appeared on June 27 representing FILB Co-Investments. Eventually on February 27, 2013, Mr. Joseph represented each of Leveraged, FILB Co-Investments, LLC, the three Louisiana pension funds, and the Ernst & Young Liquidators in settling the litigation with respect the portion of the United Option representing 18 million shares.

It may not be true that, as the Ernst & Young Liquidators attested, "The Leveraged Foreign Proceeding pending under Cause No. 13 of 2012 in the Grand Court of the Cayman Islands, and the provisions made thereunder for the protection, administration and distribution of assets pursuant to the Liquidation Order, is a Foreign Proceeding pursuant to 11 U.S.C. § 101(23)." All significant activities, including the settlement of the most important asset held by those estates appears to have been directed from the U.S. under the orchestration of Quinn Emanuel's outside counsel in consultation with, among other U.S. parties, the FIA Leveraged Fund Liquidation Committee, composed entirely of U.S. persons operating from the U.S. According to the Ernst & Young Liquidators' most recent report, their payments to Quinn's Outside Counsel,

> "Greg Joseph (US NY UCBI) 604,365 JOLs legal advisors in relation to FILCBI litigation/ mediation" [sic]

and other US counsel have exceeded their payments to Cayman counsel. Evidencing the breadth of his responsibility, Mr. Joseph appears to have represented FIA Leveraged Fund, Fletcher Income Arbitrage Fund, FIAL SPV I, FILB Co-Investments, LLC, the three Louisiana pension funds, and the Ernst & Young Joint Official Liquidators. His broad role has been necessary because, as the Ernst & Young Liquidators' report states: "the JOLs have been faced with many complex multi-jurisdictional issues to consider and tackle. As such the JOLs have employed the services of a number of legal professionals in different jurisdiction and with different specialism's." [sic]

[43] *Stonegate Securities Ltd v Gregory:*
"The whole of the doctrine of this part of the law is based upon the view that winding up proceedings are not suitable proceedings in which to determine a genuine dispute about whether the company does or does not owe the sum in question"

*Mann v Goldstein:*
"It would be an abuse of process to ask for a winding up petition when a debt was bona fide under dispute."

*Tallington Lakes Ltd v South Kesteven District Council* Lord Justice:
'I have to emphasise, however… that it is well established that the threshold for establishing that a debt is disputed on substantial grounds in the context of a winding up petition is not a high one for restraining the presentation of the winding up petition, and may be reached even if, on an application for summary judgment, the defence could be regarded as "shadowy".'

19

[44] 28 U.S. Code § 455(a), In re Cargill, 66 F.3d 1256 (1st Cir. 1995) (https://bulk.resource.org/courts.gov/fjc/recusal.pdf)

> The disqualification requirement of section 455(a) is triggered, despite the lack of any actual bias on the judge's part, if a reasonable person, knowing all the circumstances, would question the judge's impartiality. See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 861-62, 108 S.Ct. 2194, 2203-04, 100 L.Ed.2d 855 (1988). Most observers would agree that a judge should not hear a case argued by an attorney who, at the same time, is representing the judge in a personal matter. See 13A Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure Sec. 3549, at 614 (1984) (citing cases). Although the appearance of partiality is attenuated when the lawyer appearing before the judge is a member of the same law firm as the judge's personal counsel, but not the same individual, many of the same cautionary factors are still in play. See, e.g., 2 Administrative Office of the U.S. Courts, Guide to Judiciary Policies and Procedures V-32 (1995) (expressing the view that "where an attorney-client relationship exists between the judge and the lawyer whose law firm appears in the case, the judge should recuse absent remittal"). This principle would seem to have particular force where, as here, the law firm is small and the judge's lawyer is a name partner

[45] In Paragraph 18 of his April 18, 2012 opinion that granted the winding up petition, the Chief Justice writes:

> [T]he Investment Manager appears to be the subject of an investigation by both the U.S. Securities Exchange Commission and the U.S. Federal Bureau of Investigation. This last assertion of the Petition relies on newspaper reports of the investigations mentioned and the Company...

[46] *The Independent*, "Corruption and the FCI: Blue skies, white sand, dark clouds," May 26, 2013, Paul Peachey (www.indpendent.co.uk)

[47] Cayman Net News, "Tempura becomes Cayman's Watergate," May 31, 2013 http://caymannetnews.com/2013/05/31/tempura-becomes-caymans-watergate/

20

[48] In re: PERRY H. KOPLIK & SONS, INC., Case No. 02-B-40648 (REG), MICHAEL S. FOX, as Litigation Trustee of PERRY H. KOPLIK & SONS, INC. v MICHAEL KOPLIK and ALVIN SIEGEL, Adv. Pro. 04-02490 (REG), March 30, 2012

"The Court finds as a fact that these expenditures were nevertheless a reasonable exercise of business judgment. The Debtor's claim against Bank Mandiri was, at the least, a very strong one. When the merits of the suit were considered, the Debtor won once in the trial court, and then again in the Indonesian Supreme Court, until a decision by the latter was vacated, under circumstances that might appear strange to those accustomed to the U.S. legal system.196"

Footnote 196

> As described in the Comity Decision, the Indonesian District Court of Surabaya, where the Debtor first filed suit, ruled that the Letter of Credit was binding, and ordered Bank Mandiri to pay Koplik the $5.3 million. Bank Mandiri then appealed to the Indonesian High Court (an intermediate appellate court), which, on September 11, 2000, "cancelled" the District Court's decision. The Debtor then appealed the High Court's decision to the Indonesian Supreme Court, Indonesia's highest court. In a decision dated May 30, 2002 (the "First Indonesia Supreme Court Decision"), the Indonesia Supreme Court reinstated the District Court's decision, enforcing the Letter of Credit. By a procedure that was not clear to this Court when it issued the Comity Decision (and still isn't), Bank Mandiri then obtained further review by the Indonesia Supreme Court of the First Indonesia Supreme Court Decision. In a decision dated September 29, 2003 (the "Second Indonesia Supreme Court Decision"), the Indonesia Supreme Court vacated its earlier decision enforcing the Letter of Credit, on the stated ground that the power of attorney that the Debtor had issued to permit Willendra to sue had not been satisfactorily "legalized." The power of attorney had to be acknowledged before a notary, and the Debtor had done so. But the acknowledgment of the power of attorney was lacking a second level of authentication, to be issued by the Indonesian Consul in New York. The failure to provide this second level of authentication—similar or identical to what New York practitioners refer to colloquially as a "notarial flag," which would attest to the fact that the notary was, in fact, a notary—resulted in Koplik's inability to recover on a $5.3 million letter of credit that the Indonesia Supreme Court had just ruled, in the First Indonesia Supreme Court Decision, should be enforced. See 357 B.R. at 235-36 & n.2.

[49] In re: PERRY H. KOPLIK & SONS, INC., Case No. 02-B-40648 (REG), MICHAEL S. FOX, as Litigation Trustee of PERRY H. KOPLIK & SONS, INC. v MICHAEL KOPLIK and ALVIN SIEGEL, Adv. Pro. 04-02490 (REG), March 30, 2012

"In the action here, this Court found issues of fact as to whether it should grant comity to the Indonesian judgment after, among other things, the Debtor's counsel here introduced a U.S. State Department report detailing corruption in the Indonesian judiciary.197"

Footnote 197

> See id. at 239-241. The Debtor's U.S. counsel also offered 12 newspaper articles detailing corruption in the Indonesian judiciary, which this Court was compelled to exclude as inadmissible hearsay. See id. at 239-240 & nn.11, 12. See also Gryphon Domestic VI, LLC v. APP Intern. Finance Co., B.V., 41 A.D. 3d 25, 37, 38, 836 N.Y.S.2d 4, 9, 9-10 (1st Dep't 2007) (unwilling to be bound by an Indonesian decree procured by an Indonesian corporation absolving it from the duty to make payment on its bonds, commenting on the "extensive" materials that had been submitted evidencing corruption in the Indonesian legal system).

[50] "Cayman Islands: The Met's Caribbean connection, "TUESDAY 01 MAY 2012
*The Independent,* PAUL PEACHEY
http://www.independent.co.uk/news/uk/crime/cayman-islands-the-mets-caribbean-
connection-7697811.html

[51] The Am Law 100, the Early Numbers: Kasowitz Benson Makes Modest Gains in Revenue, Profits
(www.americanlawyer.com)
> On February 13, 2013, *American Lawyer Daily* attributed Kasowitz Benson's rise in revenue to
> its FHFA work from Quinn Emanuel: "Kasowitz says his firm is well-positioned to take on such
> cases as a result of the client conflicts that prevent older, larger New York firms from getting
> involved: "Along with Quinn, we're known as a go-to firm for those cases. That practice has been
> large and continues to grow."

[52] Paul Weiss later appeared in the 2013 Soundview chapter 11 proceedings, without my consent,
representing Citco Group which was adverse to me and my affiliates the Soundview funds and Fletcher
funds. In that proceeding, Kasowitz appeared, without my consent, representing Soundview investor
Pasig Ltd. which was also adverse to me and my affiliates. Kasowitz, like most of our counsel, withdrew
from our representation shortly after speaking with Richard J. Davis when he appointed chapter 11 trustee
of Fletcher International, Ltd. in late 2012. Kasowitz eventually sued me in New York Supreme Court for
fees it claimed I owed and filed a third-party complaint against me in response to a suit brought by
Fletcher International, Ltd. Trustee Richard Davis in which Kasowitz claims that my privilege with
respect to Kasowitz is waived.