UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| FLETCHER INTERNATIONAL, LTD., | : | Case No. 12-12796 (REG) |
| | : | |
| Debtor. | : | |
| | : | |

----------------------------------------------------------------x

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE TRUSTEE'S SECOND AMENDED PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtor (the "**Debtor**") having:[1]

a.   commenced, on June 29, 2012 (the "**Petition Date**"), this chapter 11 case (the "**Chapter 11 Case**") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**");

b.   continued to operate its businesses and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code through September 28, 2013; and

Richard J. Davis, the Chapter 11 Trustee in this Chapter 11 case (the "**Trustee**"), having:

a.   been appointed, on September 28, 2013, the Trustee pursuant to the Court's *Order Approving the Appointment of Chapter 11 Trustee* [Docket No. 115];

b.   filed, on November 25, 2013, the *Trustee's Plan of Liquidation* [Docket No. 330] (including all exhibits and schedules thereto, as modified by the revisions identified in the Notice of Filing of Trustee's Second Amended Plan of Liquidation [Docket No. 472] and on the record at the Confirmation Hearing, a true and correct copy of which is attached hereto as **Exhibit A**, the "**Plan**") and the related *Trustee's Report and Disclosure Statement* [Docket No. 327] (including all exhibits and schedules thereto, as may be amended, modified or supplemented from time to time, the "**Disclosure Statement**"), which documents were subsequently amended as set forth herein;

c.   filed, on December 4, 2013, the *Chapter 11 Trustee's Ex Parte Application for Entry of an Order Pursuant to Section 105(a) of the Bankruptcy Code, Bankruptcy Rules 2002(b), 3017(b), and 9006(c), and Local Rule 9077-1(a) (I) Fixing the Deadline to File Objections to the Disclosure Statement and to the Trustee's Motion to Approve the*

---

[1] Capitalized terms used but not otherwise defined in this order (the "**Confirmation Order**") shall have the meanings ascribed to such terms in the Plan, attached hereto as Exhibit A. The rules of interpretation set forth in Section 14.8 of the Plan shall apply to this Confirmation Order.

*Disclosure Statement, (II) Fixing the Deadline for the Trustee to File Responses Thereto, and (III) Shortening the Notice Period for the Objection Deadline and the Hearing to Consider Approval of the Disclosure Statement* [Docket No. 338];

d.   filed, on December 12, 2013, the Chapter 11 Trustee's *Motion for Entry of an Order Pursuant to Sections 1125 and 1128 of the Bankruptcy Code and Bankruptcy Rules 2002, 3017, and 3020 Approving the Disclosure Statement, Fixing Certain Deadlines, and Granting Related Relief* [Docket No. 344];

e.   filed, on January 13, 2014, a supplement to the Disclosure Statement [Docket No. 375];

f.   filed, on January 13, 2014, the *Memorandum of Law in Further Support of Motion for Entry of an Order Pursuant to Sections 1125 and 1128 of the Bankruptcy Code and Bankruptcy Rules 2002, 3017, and 3020 Approving the Disclosure Statement, Fixing Certain Deadlines, and Granting Related Relief* [Docket No. 376];

g.   filed, on January 24, 2014, a revised version of the Disclosure Statement [Docket No. 393] and a revised version of the Plan [Docket No. 394];

h.   filed, on January 24, 2014, the *Notice of Hearing to Consider Confirmation of Trustee's Plan of Liquidation* [Docket No. 395] (the "**Confirmation Hearing Notice**");

i.   distributed solicitation materials beginning on or about January 24, 2014, consistent with the Bankruptcy Code, Bankruptcy Rules and the Local Rules, and the *Order Pursuant to Sections 1125 and 1128 of the Bankruptcy Code and Bankruptcy Rules 2002, 3017, and 3020 Approving the Disclosure Statement, Fixing Certain Deadlines, and Granting Related Relief* [Docket No. 384] (the "**Disclosure Statement Order**"), which approved, among other things, solicitation procedures (the "**Solicitation Procedures**") and related notices, forms and ballots provided to each Class (each, a "**Solicitation Package**" and collectively, the "**Solicitation Packages**"), distribution of the Solicitation Packages being evidenced by the Voting Certification (as defined below) and the Certificate of Service [Docket No. 392];

j.   filed, on February 18, 2014, the *Notice of Adjournment of Deadline to Vote to Accept or Reject the Trustee's Amended Plan of Liquidation* [Docket No. 410];

k.   filed, on February 25, 2014, the *Notice of Adjournment of the Confirmation Hearing* [Docket No. 430];

l.   filed, on March 24, 2014, the *Certification of Stephan E. Hornung with Respect to the Tabulation of Votes on the Trustee's Second Amended Plan of Liquidation* [Docket No. 473] (the "**Voting Certification**"), detailing the results of the Plan voting process;

m.   filed, on March 24, 2014, the *Testimony of Richard J. Davis in Support of Confirmation of the Trustee's Second Amended Plan of Liquidation* [Docket No. 474] (the "**Davis Declaration**");

n. filed, on March 24, 2014, the *Chapter 11 Trustee's Memorandum of Law in Support of Confirmation of the Trustee's Second Amended Plan of Liquidation* [Docket No. 475] (the "**Plan Confirmation Brief**");

o. filed, on March 24, 2014, the *Trustee's Second Amended Plan of Liquidation* reflecting certain modifications made in advance of the Confirmation Hearing [Docket No. 472];

p. filed, on March 26, 2014, the proposed *Findings of Fact, Conclusions of Law and Order Confirming the Trustee's Second Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 484] (as may be amended, modified or supplemented from time to time, the "**Confirmation Order**").

This Court having:

a. entered, on December 5, 2013, the *Order Pursuant to Section 105(a) of the Bankruptcy Code, Bankruptcy Rules 2002(b), 3017(b), and 9006(c), and Local Rule 9077-1(a) (I) Fixing the Deadline to File Objections to the Disclosure Statement and to the Trustee's Motion to Approve the Disclosure Statement, (II) Fixing the Deadline for the Trustee to File Responses Thereto, and (III) Shortening the Notice Period for the Objection Deadline and the Hearing to Consider Approval of the Disclosure Statement* [Docket No. 341];

b. entered, on January 17, 2014, the Disclosure Statement Order;

c. reviewed the Plan, the Disclosure Statement, the Plan Confirmation Brief, the Davis Declaration, the Voting Certification and all pleadings, exhibits, statements, responses and comments regarding Confirmation, including all objections, statements and reservations of rights made with respect thereto;

d. heard the statements, arguments and objections made in respect of Confirmation at the hearing held on March 27, 2014 at 9:45 a.m. (EST) (the "**Confirmation Hearing**"), including, without limitation, the *Objection of Stewart Turner to Confirmation of the Trustee's Proposed Plan of Liquidation* (the "**Turner Objection**") [Docket No. 417] and *Alphonse Fletcher's Reply to Trustee's Declaration, Second Amended Plan of Liquidation, and Soundview Response and Alphonse Fletcher's Joinder with Stewart Turner's Objection* dated March 26, 2014 and served on parties-in-interest at 2:59 a.m. (EST) on March 27, 2014 (the "**Fletcher Reply**"), *but having determined that the latter was untimely;*

e. considered all testimony, documents, filings and other evidence regarding Confirmation;

f. overruled, including for the reasons stated on the record at the Confirmation Hearing, any and all objections to the Plan and Confirmation thereof and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

g. taken judicial notice of all papers and pleadings filed in this Chapter 11 Case.

NOW, THEREFORE, it appearing to this Court that notice of the Confirmation Hearing, the Plan and all modifications thereto and the transactions contemplated thereby has been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby and that any party in interest so affected has had the opportunity to object to Confirmation; and, after due deliberation and based upon the record described above, it appearing to this Court that the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing, as well as the representations made by the Trustee on the record of the Confirmation Hearing, establish just cause for the relief granted herein; this Court hereby makes and issues the following findings of fact, conclusions of law and order:

## I.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    Jurisdiction and Venue

1.    Venue in this Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

### B.    Eligibility for Relief

2.    The Debtor was and is an entity eligible for relief under section 109 of the Bankruptcy Code.

### C.    Commencement of this Chapter 11 Case

3.    On the Petition Date, the Debtor commenced this Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtor initially operated its business and managed its property as a debtor in possession from the

Petition Date until September 28, 2013, pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

### D.    Appointment of the Trustee

4.    On September 28, 2012, Richard J. Davis was appointed the Chapter 11

Trustee in this Chapter 11 Case pursuant to 11 U.S.C. §1104(d).

### E.    Judicial Notice

5.    This Court takes judicial notice of (and deems admitted into evidence for

Confirmation) the docket of this Chapter 11 Case and all related adversary proceedings and

appeals maintained by the clerk of the applicable court or its duly appointed agent, including all

pleadings and other documents on file, all orders entered, all hearing transcripts and all evidence

and arguments made, proffered or adduced at the hearings held before the applicable court

during the pendency of this Chapter 11 Case.  Any resolutions of objections to Confirmation

explained on the record at the Confirmation Hearing are hereby incorporated by reference.  All

other objections, statements and reservations of rights are hereby overruled on the merits for the

reasons stated on the record.

### F.    Claims Bar Date

6.    On November 9, 2012, this Court entered the *Order Establishing Deadline

and Procedures for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof*

[Docket No. 147] (the "**Bar Date Order**") establishing 5:00 p.m. (Eastern Time) on January 18,

2013 as the deadline for filing Proofs of Claim, except as otherwise provided therein, in the Plan,

and in this Confirmation Order.

### G.    Disclosure Statement Order

7.    On January 17, 2014, this Court entered the Disclosure Statement Order,

which, among other things: (a) approved the Disclosure Statement as containing adequate

information within the meaning of section 1125 of the Bankruptcy Code; (b) fixed January 24, 2014 as the Solicitation Mailing Deadline (as defined in the Disclosure Statement Order); (c) fixed 5:00 p.m. (Eastern Time) on February 18, 2014 as the Voting Deadline (as defined in the Disclosure Statement Order); (d) fixed 5:00 p.m. (Eastern Time) on February 18, 2014, as the Plan Objection Deadline (as defined in the Disclosure Statement Order); (e) fixed 9:45 a.m. (Eastern Time) on March 4, 2014, as the date and time for the commencement of the Confirmation Hearing; and (f) approved the Solicitation Procedures, the Solicitation Packages and other materials relating to solicitation that were attached as exhibits to the Disclosure Statement Order, including (in each case, as defined in the Disclosure Statement Order) the Notice of Confirmation Hearing, the Notice of Non-Voting Status for Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan, the Notice of Non-Voting Status for Holders of Impaired Claims and Equity Interests Conclusively Presumed to Reject the Plan, and the Ballots.

8.    The Voting Deadline was subsequently adjourned to 5:00 p.m. (Eastern Time) on February 24, 2014 for all Holders of Claims and Interests [Docket No. 410].  The Voting and Plan Objection Deadlines were subsequently adjourned to 12:00 noon (Eastern Time) on March 21, 2014 for the Soundview Debtors, Richcourt Euro Strategies, Inc., Richcourt Allweather Fund, Inc., America Alternative Investments Ltd., and Fletcher Fixed Income Alpha Fund, Ltd. only [Docket No. 428] and then further adjourned to 9:00 a.m. (Eastern Time) on March 25, 2014 for the Soundview Debtors, Richcourt Euro Strategies, Inc., Richcourt Allweather Fund, Inc., and America Alternative Investments Ltd.

**H.    Transmittal and Mailing of Materials; Notice**

9.    As evidenced by the Voting Certification, due, adequate and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, together with all

deadlines for voting on or objecting to the Plan and with respect to Confirmation, has been given
to: (a) all known Holders of Claims and Equity Interests and (b) all parties that requested notice
in accordance with Bankruptcy Rule 2002, in substantial compliance with the Disclosure
Statement Order, Bankruptcy Rules 2002(b), 3017 and 3020(b), and the Local Bankruptcy Rules
for the Southern District of New York (the "**Local Rules**"), and no other or further notice is or
shall be required.  Adequate and sufficient notice of the Confirmation Hearing, and any
applicable dates, deadlines and hearings described in the Disclosure Statement Order was given
in compliance with the Bankruptcy Rules, the Local Rules and the Disclosure Statement Order as
evidenced by the Voting Certification, and no other or further notice is or shall be required.

   **I.**  **Solicitation**

    10.  Votes for acceptance and rejection of the Plan were solicited in good faith
and in compliance with the Disclosure Statement, the Disclosure Statement Order, sections 1125
and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other applicable
provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules and any other applicable
rules, laws and regulations.

    11.  Specifically, the Solicitation Packages approved by this Court in the
Disclosure Statement Order (including the Disclosure Statement, the Plan, the form of ballots
and related notices approved thereby) were transmitted to and served on all Holders in Classes
that were entitled to vote to accept or reject the Plan, and relevant portions of the Solicitation
Packages and other notices approved by the Disclosure Statement Order were transmitted to and
served on other parties in interest in this Chapter 11 Case, all in compliance with section 1125 of
the Bankruptcy Code, the Disclosure Statement Order, the Bankruptcy Rules and the Local
Rules.  Transmittal and service of such documents was adequate and sufficient, and no further
notice is or shall be required.

### J.   Voting Certification

12.   The Trustee filed the Voting Certification before the commencement of the Confirmation Hearing, consistent with the Disclosure Statement Order and Local Bankruptcy Rule 3018-1(a).  All procedures used to tabulate ballots received in connection with Confirmation were fair and conducted in accordance with the Disclosure Statement Order, as evidenced by the Voting Certification.

13.   As set forth in the Plan, the Disclosure Statement and the Disclosure Statement Order, Holders of Claims in Classes 3 and 4 were eligible to vote on the Plan.  Holders of Claims in Classes 1 and 2 are deemed to accept the Plan and therefore are not entitled to vote to accept or reject the Plan.  Holders of Claims in Classes 5 and 6 and Equity Interests are deemed to reject the Plan and therefore are not entitled to vote to accept or reject the Plan.

14.   As evidenced by the Voting Certification, Holders of Claims in Classes 3 and 4 voted to accept the Plan.

15.   Based on the foregoing, and as evidenced by the Voting Certification, at least one impaired Class of Claims has voted to accept the Plan (excluding the acceptance by any Insiders of the Debtor) in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

### K.   Bankruptcy Rule 3016

16.   The Plan is dated and identifies the party submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the clerk of this Court satisfied Bankruptcy Rule 3016(b).

### L.   Burden of Proof

17.   The Trustee, as proponent of the Plan, has met his burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code.

### M.     Compliance with the Requirements of Section 1129 of the Bankruptcy Code

18.     The Plan complies with all applicable provisions of section 1129 of the

Bankruptcy Code as follows:

### i.      Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code

19.     The Plan complies with all applicable provisions of the Bankruptcy Code

as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123

thereof.

### a.  <u>Sections 1122 and 1123(a)(1)—Proper Classification</u>

20.     The classification of Claims and Interests under the Plan is proper under

the Bankruptcy Code.  Pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code,

Article III of the Plan provides for the separate classification of Claims and Interests into ten

Classes (including subclasses) of Claims and Equity Interests, based on differences in the legal

nature or priority of such Claims and Interests (other than Administrative Claims and Priority

Tax Claims which are addressed in Article III of the Plan and which are not required to be

designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid

business, factual and legal reasons exist for the separate classification of the various Classes of

Claims and Interests created under the Plan, the classifications were not done for any improper

purpose and the creation of such Classes does not unfairly discriminate among Holders of Claims

or Interests.

21.     The evidence supporting the Plan proffered or adduced by the Trustee at,

or prior to, or in declarations filed in connection with, the Confirmation Hearing regarding the

Trustee's classification and treatment of Claims and Interests, including, without limitation, the

Davis Declaration and accompanying exhibits, (a) is reasonable, persuasive, credible and

accurate, (b) utilizes reasonable and appropriate methodologies and assumptions, and (c) has not been controverted by other credible evidence.

22.    As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  The Plan does not include a separate administrative convenience class of claims under section 1122(b) of the Bankruptcy Code.  However, Holders of Class 3 claims are able to elect to receive payment of $10,000 (or less) in full satisfaction of their allowed claim.

23.    Accordingly, the requirements of sections 1122(a), 1122(b) and 1123(a)(1) of the Bankruptcy Code are satisfied.

### b. Section 1123(a)(2)—Specification of Unimpaired Classes

24.    Articles IV-VI of the Plan specify that Claims in Classes 1 and 2 are unimpaired under the Plan.  Administrative Claims and Priority Tax Claims also are unimpaired under the Plan, although these Claims are not classified under the Plan.  Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code are satisfied.

### a. Section 1123(a)(3)—Specification of Treatment of Impaired Classes

25.    Articles IV-VI of the Plan specify the treatment of each impaired Class under the Plan, including Classes 3, 4A, 4B, 4C, 4D, 5, and 6 and Equity Interests.  Accordingly, the requirements of section 1123(a)(3) of the Bankruptcy Code are satisfied.

### d. Section 1123(a)(4)—No Discrimination

26.    Pursuant to section 1123(a)(4) of the Bankruptcy Code, the Plan uniformly provides for the same treatment of each Claim or Interest, as the case may be, in a particular Class, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment

with respect to such Claim or Interest.  Accordingly, the requirements of section 1123(a)(4) of

the Bankruptcy Code are satisfied.

### e. Section 1123(a)(5)—Adequate Means for Plan Implementation

27.    Pursuant to section 1123(a)(5) of the Bankruptcy Code, Articles VII and

XI of the Plan provide adequate and proper means for the implementation of the Plan, including

the appointment and powers of the Plan Administrator and the Advisory Board, estimation by the

Trustee or the Plan Administrator, as the case may be, of proper reserves to pay ongoing

expenses, cash on hand as a result of pre-confirmation settlements, and authorization to allow the

Advisory Board to further fund the litigation of Pooled Claims.  Accordingly, the requirements

of section 1123(a)(5) of the Bankruptcy Code are satisfied.

### f. Section 1123(a)(6)—Voting Power of Equity Securities

28.    Section 1123(a)(6) of the Bankruptcy Code does not apply to the Debtor

because it is liquidating and not issuing securities under the Plan.  The Plan, therefore, satisfies

the requirements of section 1123(a)(6) of the Bankruptcy Code.

### g. Section 1123(a)(7)—Selection of Officers, Directors and Trustees

29.    No new officers or directors of the Debtor will be selected under the Plan.

Rather, the Plan provides for the appointment of a Plan Administrator and an Advisory Board to

liquidate the Debtor's remaining assets.  The identity of the Plan Administrator and each member

of the Advisory Board is properly and adequately identified in Sections 2.4, 7.3(a)(i) and

7.3(b)(i) of the Plan. Each initial Advisory Board member is (a) a highly experienced insolvency

professional as well as (b) a court-appointed fiduciary for the Debtor, or Leveraged and

Arbitrage, or the MBTARF and Alpha, as applicable.  Pursuant to the Plan and this Confirmation

Order, the Plan Administrator shall act for the Debtor and the Estate in a fiduciary capacity.  The

selection of the initial Plan Administrator and initial members of the Advisory Board was, is, and will be consistent with the interest of Holders and public policy. Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code are satisfied.

### h. <u>Section 1123(b)—Discretionary Contents of the Plan</u>

30.      The Plan contains various provisions that may be construed as discretionary and are not required for Confirmation under the Bankruptcy Code. As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, section 1123(b) of the Bankruptcy Code is satisfied.

### (i) Section 1123(b)(1)-(2)—Claims and Executory Contracts

31.      Pursuant to sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, Articles V and VI of the Plan impair or leave unimpaired, as the case may be, each Class of Claims and Interests, and Article IX of the Plan provides for the assumption, assumption and assignment, or rejection of the Executory Contracts and Unexpired Leases of the Debtor not previously assumed, assumed and assigned or rejected pursuant to section 365 of the Bankruptcy Code and appropriate authorizing orders of this Court.

### (ii) Section 1123(b)(3)—Settlement and Preservation of Claims and Causes of Action

32.      **Compromise and Settlement.** The Plan settles numerous litigable issues in this Chapter 11 Case pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(b) of the Bankruptcy Code. These settlements are in consideration for the distributions and other benefits provided under the Plan and any other compromise and settlement provisions of the Plan, including the Investor Settlement and any Amended Investor Settlement, as the case may be. The Plan itself constitutes a compromise of all Claims, Interests and Causes of Action relating to

-12-

the contractual, legal and subordination rights that any Holder may have with respect to any

Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or

Interest.  The compromises and settlements embodied in the Plan are in the best interests of the

Debtor, its Estate and all Holders, and are fair, equitable and within the range of reasonableness.

33.    The Investor Settlement: (a) is a product of the Trustee's reasonable

business judgment; (b) is fair and equitable; (c) falls above the lowest point in the range of

reasonableness; (d) is in the best interests of the Debtor, its Estate and all Holders; (e) does not

violate section 1129(b) of the Bankruptcy Code; (f) was negotiated at arm's length and in good

faith with the assistance of experienced counsel and financial advisors; and (g) is an essential

element of the Plan.  The Trustee's testimony makes clear that the Investor Settlement, and in

particular its Pooled Claim provisions, was negotiated over considerable time and forms the

central piece of the Plan.  The Trustee believes that prosecution of the Pooled Claims presents

the best prospect for recoveries in this case.  The Court finds the Trustee's testimony in this

regard persuasive and credible.

34.    As a result of the foregoing, the Investor Settlement is fair, reasonable and

meets the standard for approval of settlements pursuant to section 1123(b)(3) of the Bankruptcy

Code, Bankruptcy Rule 9019 and applicable United States Supreme Court and Second Circuit

law.  *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.

Anderson*, 390 U.S. 414 (1968); *In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007).

35.    **Preservation of Claims and Causes of Action.**  In accordance with

section 1123(b)(3)(b) of the Bankruptcy Code, Article 7.12 of the Plan appropriately provides for

the preservation and retention by the Estate of all Claims and causes of action (except as

otherwise provided in the Plan).  Under the Plan, the Estate is retaining certain Claims related to

its remaining securities portfolio and avoidance actions and is pooling certain other Claims that it

may have against the Debtor's Insiders and Affiliates, third-party advisors and service providers, and/or other third parties, to be prosecuted for the joint benefit of all parties to the Investor Settlement.  The provisions regarding the retained Claims and causes of action and the transferred Pooled Claims in the Plan are appropriate and are in the best interests of the Debtor, its Estate and all Holders.

### (iii) Section 1123(b)(4)—Sale of All or Substantially All Assets

36.    In accordance with section 1123(b)(4) of the Bankruptcy Code, the Plan provides that all assets of the Debtor will be liquidated and distributed to Holders of Allowed Claims and, to the extent anything remains, to Equity Interests.

### (iv) Section 1123(b)(5)—Modification of Creditor Rights

37.    In accordance with section 1123(b)(5) of the Bankruptcy Code, Articles V and VI of the Plan leave unaffected the rights of holders of Secured Claims but impair the rights of holders of Claims in Classes 3 through 6 and Equity Interests.

### (v) Section 1123(b)(6)—Waivers, Releases, Injunctions, Indemnification and Exculpation

38.    In accordance with section 1123(b)(6) of the Bankruptcy Code, Article X of the Plan includes appropriate waiver, release, injunction, indemnification and exculpation provisions that are consistent with applicable provisions of the Bankruptcy Code.

39.    **Waiver and Release of Claims.**  The waiver and release by Holders of Claims contained in Sections 10.1 and 10.2 of the Plan (as modified by Sections 10.6, 10.7, 10.8, 10.9, 10.10 and 10.11 of the Plan) (together, the "**Plan Release**") are an integral part of the consideration to be provided in exchange for the compromises and resolutions embodied in the Plan.  Without the Plan Release, the Plan would not be confirmable or feasible, and the recovery for many parties in interest would be reduced or eliminated.  In approving the Plan Release, this

Court determined that the Plan Release can be considered to be (a) given in exchange for good, valuable and significant consideration, (b) a good faith settlement and compromise of the claims waived and released by Holders of Claims; (c) in the best interests of the Debtor and all Holders; (d) fair, equitable and reasonable; (e) given and made after notice and opportunity for hearing; (f) given at arm's length and in good faith, (g) narrow in scope, and (h) a bar to all Persons who have held, hold or may hold Claims against or Interests in the Debtor from asserting against the Debtor, the Estate, or the Trustee, or any of their present agents, employees, representatives, financial advisors, accountants or attorneys, any Claim, obligation, right or cause of action based in whole or in part upon any act or omission, transaction or occurrence taking place on or before the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan, to the full extent permitted by applicable law.

40.     **Injunction.**  The injunction provisions set forth in Article 10.3 of the Plan (as modified by Sections 10.6, 10.7, 10.8, 10.9, 10.10 and 10.11 of the Plan) (the "**Plan Injunction**") are essential to the Plan and are (a) necessary to preserve and enforce the Plan Release and the Plan Exculpation, (b) fair and reasonable, (c) narrowly tailored to achieve their purpose, and (d) similar to injunctions that have been approved by courts in other chapter 11 cases.  *See*, *e.g.*, *In re Dewey LeBoeuf LLP*, Case No. 12-12321 (MG) (Bankr. S.D.N.Y. February 23, 2013) [Docket No. 1144].

41.     **Indemnification**.  The indemnification provisions set forth in Sections 7.6 and 10.4 of the Plan (the "**Plan Indemnification**") are essential to the Plan and are appropriately tailored to protect the Indemnified Persons, the Trustee and the professional persons retained by the Trustee, as applicable, from inappropriate litigation related to acts or omissions up to, including, from and after the Effective Date and are hereby approved.

42.     **Exculpation.**  The exculpation and exoneration provisions set forth in Sections 7.10 and 10.5 of the Plan (the "**Plan Exculpation**") are essential to the Plan and are appropriately tailored to protect, as applicable, the Trustee, the Plan Administrator, the members of the Advisory Board (including any additional members added pursuant to an Amended Investor Settlement) and any of their agents, Professionals, attorneys, financial advisors, accountants, and other professionals employed by any of them (collectively, the "**Exculpated Parties**"), from inappropriate litigation related to acts or omissions up to, including, from and after the Effective Date and are hereby approved.

43.     Each of the Plan Release, the Plan Injunction, the Plan Indemnification, and the Plan Exculpation are: (a) within the jurisdiction of this Court; (b) an essential means of implementing the Plan; (c) an integral element of the transactions incorporated into the Plan; (d) in the best interests of the Debtor, its Estate and all stakeholders in this Chapter 11 Case; and (e) narrowly tailored and consistent with sections 105, 1123 and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code and other applicable law.  In particular, the Plan Release and the Plan Injunction do not waive, release, enjoin or in any way determine or limit any claims, including any claims as to quantum or measure of damages, of third parties, including the Louisiana Pension Funds, the Soundview Parties, the BVI Funds and the Cayman Funds, against any person or entity (other than the Debtor, the Estate, and the Trustee), including, without limitation, with respect to their investments in Leveraged and Arbitrage.

44.     Accordingly, the investors, creditors, other parties-in-interest in Leveraged and Arbitrage, the Louisiana Pension Funds, the Soundview Debtors, the BVI Funds and the Cayman Funds remain free to assert any and all claims and defenses they have, including, without limitation, claims reserved in Article 10 of the Plan, (a) in Leveraged's and Arbitrage's

-16-

Cayman Islands winding-up proceedings, (b) the Soundview Debtors' chapter 11 cases, (c) any cases commenced by the BVI Funds, (d) any cases commenced by or against the Cayman Funds, and (e) any proceedings against any person or entity (other than the Debtor, the Estate, and the Trustee) in any federal, state or foreign court or any other appropriate forum.

45.    The record of the Confirmation Hearing and this Chapter 11 Case is sufficient to support the Plan Release, the Plan Injunction, the Plan Indemnification, and the Plan Exculpation contained in Articles 7 and 10 of the Plan.

### i.    <u>Section 1123(c) and (d)—Non-Applicability of Sections</u>

46.    Section 1123(c) of the Bankruptcy Code only applies in a case concerning an individual and therefore is inapplicable to this Chapter 11 Case.  Similarly, the Plan does not provide for cure of a default and section 1123(d) of the Bankruptcy Code is therefore inapplicable to this Chapter 11 Case.

47.    Accordingly, the Plan complies with the requirements of sections 1122 and 1123, as well as with all other provisions of the Bankruptcy Code, and thus satisfies the requirement of section 1129(a)(1) of the Bankruptcy Code.

### ii.    **Section 1129(a)(2)—Compliance of the Trustee with the Applicable Provisions of the Bankruptcy Code**

48.    The Trustee, as proponent of the Plan, has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.

49.    Votes to accept or reject the Plan were solicited by the Trustee after this Court approved the adequacy of the Disclosure Statement.

50.    The Trustee and his advisors have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in a manner consistent with the applicable provisions of the Disclosure Statement, the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules and all other applicable rules, laws and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

51.    The Trustee and his advisors have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance and distribution of recoveries under the Plan and, therefore, are not, and will not be, liable at any time for the violation of any applicable law, rule or regulation governing (a) the solicitation of acceptances or rejections of the Plan and (b) distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan. Accordingly, the requirements of section 1129(a)(2) of the Bankruptcy Code are satisfied.

### iii.    Section 1129(a)(3)—Proposal of Plan in Good Faith

52.    The Trustee has proposed the Plan in good faith and not by any means forbidden by law.  This Court has examined the totality of the circumstances surrounding the filing of this Chapter 11 Case, the Plan itself and the process leading to its formulation.  The Trustee's good faith in proposing the Plan is evident from the record of this Chapter 11 Case, the Disclosure Statement and the hearing thereon, the record of the Confirmation Hearing and other proceedings held in this Chapter 11 Case.

53.    The Plan is the product of thousands of hours of work by the Trustee and his advisors, as well as vigorous, arms-length negotiations among the major stakeholders, including the recently appointed Soundview Trustee, and incorporates protections for the

-18-

12-12796-reg    Doc 490    Filed 03/28/14    Entered 03/28/14 15:25:21    Main Document
Pg 19 of 101

Soundview Debtors' estates including, without limitation, relief from the Bar Date Order.
Ultimately, the Plan reflects a consensus among key stakeholders about how best to liquidate the
Debtor and pursue litigation.  Accordingly, the requirements of section 1129(a)(3) of the
Bankruptcy Code are satisfied.

### iv.    Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable

54.    The procedures set forth in the Plan for payment of, and/or this Court's
review and ultimate determination of, the fees and expenses to be paid by the Estate in
connection with this Chapter 11 Case, or in connection with the Plan and incident to this Chapter
11 Case, including, without limitation, the compensation and reimbursement of the Trustee, the
Plan Administrator, the members of the Advisory Board, and their respective professionals,
satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.
Accordingly, the requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied.

### v.    Section 1129(a)(5)—Disclosure of Information Regarding Directors, Officers and Insiders

55.    Section 7.3(b)(i) of the Plan discloses the identity of the initial Plan
Administrator and each initial member of the Advisory Board.  Each of the foregoing is (a) a
highly experienced insolvency professional as well as (b) a court-appointed fiduciary for the
Debtor, or Leveraged and Arbitrage, or the MBTARF and Alpha, as applicable, and their method
of appointment was, is, and will be consistent with the interest of Holders and public policy.
Pursuant to the Plan and this Confirmation Order, the Plan Administrator shall act for the Debtor
and the Estate in a fiduciary capacity.  Accordingly, the requirements of section 1129(a)(5) of the
Bankruptcy Code are satisfied.

-19-

vi.      **Section 1129(a)(6)—Approval of Rate Changes**

56.      The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission.  Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to this Chapter 11 Case.

vii.      **Section 1129(a)(7)—Best Interests of Holders of Claims and Equity Interests**

57.      Under the Plan, the Debtor is being liquidated.  Accordingly, all creditors will receive exactly what they would have received if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code and section 1129(a)(7) of the Bankruptcy Code is therefore satisfied.

viii.      **Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class**

58.      Classes 1 and 2 are unimpaired Classes of Claims and are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  As set forth in the Voting Certification, Classes 3 and 4 have voted to accept the Plan.  Classes 5 and 6 receive no distributions under the Plan and are deemed not to have accepted the Plan.

59.      Because the Plan is deemed not to have been accepted by Classes 5 and 6 and Equity Interests, the Trustee seeks Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code.  Thus, although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting Classes and thus satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to the rejecting Classes as described further below.

ix.    **Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

60.    The treatment of Administrative Claims, Priority Tax Claims and Other Priority Claims under Article 5 of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

x.    **Section 1129(a)(10)—Acceptance by At Least One Impaired Class**

61.    As set forth in the Voting Certification, the Holders of Claims in Classes 3 and 4 have voted to accept the Plan. As such, there is at least one Class of Claims that is impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any Insider (as defined by the Bankruptcy Code). Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

xi.    **Section 1129(a)(11)—Feasibility of the Plan**

62.    The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Trustee at, or prior to, or in declarations filed in connection with, the Confirmation Hearing, including, without limitation, the Davis Declaration and accompanying exhibits: (a) is reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible; and (e) establishes that the Plan Administrator and the Advisory Board will have sufficient funds available to meet their obligations under the Plan. Moreover, as the Plan provides for the Debtor's liquidation, confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor. Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

xii.    **Section 1129(a)(12)—Payment of Bankruptcy Fees**

63.    Section 3.4 of the Plan provides that the Estate will pay all United States

Trustee quarterly fees under 28 U.S.C. § 1930 when due.  Accordingly, the Plan complies with

section 1129(a)(12) of the Bankruptcy Code.

xiii.    **Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), 1129(16)—Non-Applicability of
Certain Sections**

64.    The Debtor does not have any obligations to pay retiree benefits, owe any

domestic support obligations, is not an individual, and is a business corporation.  Therefore,

sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not

apply to this Chapter 11 Case.

xiv.    **Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Classes**

65.    The Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy

Code notwithstanding that the requirements of section 1129(a)(8) have not been met because the

Trustee has demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the

other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate

unfairly" and is "fair and equitable" with respect to Classes 5 and 6 and Equity Interests.

66.    The Plan does not "discriminate unfairly" with respect to Classes 5 and 6

and Equity Interests because there is no discrimination in treatment between Classes 5 and 6 and

Equity Interests and there are no other Classes comprised of Holders with comparable legal

rights.

67.    The Plan is "fair and equitable" with respects to Classes 5 and 6 and

Equity Interests because no junior Class of Claims or Interests will receive or retain any property

under the Plan on account of such Claims or Interests, and General Unsecured Claims are

significantly impaired.  There is no unfair discrimination with respect to Classes 5 and 6 and

Equity Interests as there are no other similarly situated classes that are receiving disparate treatment.

68.     The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed.

**xv.     Section 1129(c)—Only One Plan**

69.     Other than the Plan (including previous versions thereof), no other plan has been filed in this Chapter 11 Case that satisfies the requirements of sections 1129(a) and 1129(b) of the Bankruptcy Code.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

**xvi.    Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Application of Securities Laws**

70.     No governmental unit has requested that this Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and the principal purpose of the Plan is not such avoidance.  Accordingly, the requirements of section 1129(d) of the Bankruptcy Code are satisfied.

**xvii.   Section 1129(e)—Small Business Case**

71.     This Chapter 11 Case is not a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

**N.     Satisfaction of Confirmation Requirements**

72.     Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations and affidavits filed in connection with Confirmation of the Plan and all

evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan

satisfies all requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

### O.    Disclosure: Agreements and Other Documents

73.    The Trustee has disclosed all material facts regarding: (a) the terms and

conditions of the Investor Settlement; (b) the identity of the Pooled Claims; (c) the identity and

affiliations of the initial Plan Administrator and the initial members of the Advisory Board;

(d) the potential sources and distribution, including the timing thereof, of cash under the Plan;

and (e) the adoption, execution and delivery of all contracts, leases, instruments, releases,

indentures and other agreements related to any of the foregoing.

### P.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date

74.    Each of the conditions precedent to the Effective Date, as set forth in

Section 12.2 of the Plan, and without affecting the rights of any party to enforce such condition,

has been satisfied or waived in accordance with the provisions of the Plan, or is reasonably likely

to be satisfied.

### Q.    Implementation

75.    The Trustee or Plan Administrator, as applicable, are authorized, without

further approval of this Court, to execute and deliver all agreements, documents, instruments and

certificates necessary to implement the Plan and the transactions contemplated thereunder and to

perform their respective obligations under such documents.

### R.    Good Faith

76.    Based on the record in this Chapter 11 Case, the Exculpated Parties have

acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in

compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in

connection with all their respective activities relating to the Plan, including the Investor

Settlement, and (b) any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code. Accordingly, the Exculpated Parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 10.5 of the Plan.

### S.    Executory Contracts and Unexpired Leases

77.    The Trustee has exercised reasonable business judgment in determining whether to assume or reject each of the Executory Contracts and Unexpired Leases as set forth in the Plan, this Confirmation Order, other orders of this Court or otherwise. Each assumption, assumption and assignment or rejection of an Executory Contract or Unexpired Lease in accordance with the Plan, this Confirmation Order, other orders of this Court or otherwise shall be legal, valid and binding upon (a) the Debtor if such Executory Contract or Unexpired Lease is assumed, (b) the assignee of such Executory Contract or Unexpired Lease if such contract or lease is assumed and assigned, and (c) all non-debtor parties to such Executory Contract or Unexpired Lease, all to the same extent as if such assumption, assumption and assignment or rejection had been authorized and effectuated pursuant to a separate order of this Court that was entered pursuant to section 365 of the Bankruptcy Code before Confirmation. The Trustee has provided sufficient and adequate notice to any Entity whose Executory Contract or Unexpired Lease is rejected solely by virtue of the fact that the Plan rejects all such contracts, including notice of such rejection and of the date on which to serve and file a proof of Claim on account of such rejection, which date shall be within 30 days after the date of notice of the entry of the order of this Court rejecting the executory contract or unexpired lease (which may include, if applicable, the Confirmation Order) or such other date established by this Court.

T.    **Consummation of the Investor Settlement**

78.    The terms and conditions of the Investor Settlement including, without limitation, the Initial Investor Recovery Percentages, are fair and reasonable and are in the best interests of the Debtor, its Estate and Holders and do not conflict with and were conducted and consummated in compliance with applicable law.  The Investor Settlement was negotiated at arm's length and in good faith, and is an essential element of the Plan.

U.    **Subordination of Insider and Intercompany Claims**

79.    Section 1123(b)(6) of the Bankruptcy Code provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(6).  Bankruptcy Rule 7001(8) provides that an adversary proceeding is not necessary if a "chapter 11 . . . plan provides for subordination."  Fed. R. Bankr. P. 7001(8).  Under the Plan, each of the Holders of Claims in Classes 5 and 6 are subordinate to all other Claims and Interests other than Equity Interests.  Such Holders include Fletcher Asset Management, Inc. ("**FAM**"), Alphonse Fletcher ("**AF**"), Jr., Floyd Saunders ("**Saunders**"), and Stewart A. Turner ("**Turner**").[2]

80.    The Claims of the Soundview Debtors and the BVI Funds (not including any Administrative Claim) are currently classified in Class 3, and not in Classes 5 and 6, although the Trustee has objected to such Claims and the Plan provides that the Trustee has full rights to further dispute any such Claims (or such Claims as revised) including, without limitation, with respect to their existence, amount, classification, priority, and subordination.

---

[2] The Claims of Denis Kiely, The Law Offices of Denis Kiely, and Duhallow Financial Services LLC were also initially included in Class 5 by the Trustee.  *See* Disclosure Statement, Exhibit D (Classification of Claims). However, as set forth on the record at the Confirmation Hearing, such claimants have agreed to withdraw their Claims pursuant to a settlement agreement reached with the Trustee on March 26, 2014.

81.    Each of the Holders of Claims in Classes 5 and 6 is an "insider" of the Debtor (as such term is defined in section 101(31) of the Bankruptcy Code).  Each of the Holders of Claims in Classes 5 and 6 was also sufficiently close with the Debtor such that his or its dealings with the Debtor could not be considered at arms-length.  Therefore, each of the Holders of Claims in Classes 5 and 6 is additionally an "insider" of the Debtor as such term is interpreted under applicable Second Circuit law.

82.    As set forth in the Davis Declaration and accompanying exhibits, ***the Trustee made a prima facie showing (unchallenged by anyone other than Turner) that*** each of the Holders of Claims in Classes 5 and 6 engaged in specific instances of inequitable conduct.[3] ~~Such inequitable conduct includes, among other actions~~ ***The showing that was made supported*** the following ***findings***:

a.    The April 22 Transactions: in April 2012, the boards of directors of the Debtor, Fletcher International, Inc. ("**FII**"), and Arbitrage attempted to fraudulently transfer $44.1 million of the Debtor's assets to FII to keep them outside of the reach of FILB's investors and creditors, including Arbitrage, Leveraged, and the Louisiana Pension Funds.  (*See* Davis Dec. ¶¶ 98-108.)

b.    BRG Transfers: FII (at the direction of AF) caused (i) BRG Investments, LLC (a subsidiary and investment vehicle of the Debtor) ("**BRG**") to transfer at least $1.4 million to FII and (ii) MV Nepenthes LLC (an entity largely owned by BRG) ("**MVN**") to transfer $175,000 to Kirkland & Ellis LLP in order to pay legal fees for FAM and FII.  (*See* Davis Dec. ¶ 108.)

c.    Unternaehrer Transaction: FAM structured a transaction whereby the Debtor provided Ermanno Unternaehrer, a longtime acquaintance and business associate of AF, with $4.1 million in cash in exchange for illiquid interests in Fletcher International Partners, Ltd. ("**FIP**").  Turner thereafter improperly attempted to transfer the interests to Richcourt Euro Strategies and Richcourt

---

[3] Neither this Confirmation Order nor the Plan shall have any res judicata or collateral estoppel effect with respect to, nor shall they constitute a trial or hearing on the merits, an adjudication or judgment against, EisnerAmper LLP, Citco, or their respective subsidiaries and Affiliates.

Allweather nearly one year after the Debtor filed this Chapter 11 Case.  (*See* Davis Dec. ¶¶ 109-127.)

d.  FIP Appointment: Turner, acting as sole director of FIP, executed an employment contract on behalf of both FIP and himself, pursuant to which he agreed to serve as president of FIP and paid himself $140,000.  (*See* Davis Dec. ¶¶ 128-131.)

e.  Violet & Daisy: FAM, AF, and Turner caused the Debtor to invest $7.7 million into MVN through BRG, in order to fund the production of *Violet & Daisy*, a motion picture written and directed by AF's brother Geoffrey Fletcher.  (*See* Davis Dec. ¶¶ 132-136.)

f.  Excessive Valuations and Markups: FAM marked up valuations of the Debtor's newly-acquired investments to allow FAM and its related service providers to charge incentive, management and service fees based upon inflated values.  (*See* Davis Dec. ¶¶ 137-141.)

g.  Cashless Notes: FAM caused the Funds to issue cashless promissory notes to artificially boost assets under management, enable FAM and its related service providers to collect higher incentive, management and service fees, and misleading investors as to the success of the Funds.  (*See* Davis Dec. ¶¶ 142-147.)

h.  ION Litigation: in a damages trial before the Delaware Court of Chancery, the trial judge referenced AF's use of inflated values in connection with the ION transaction (*See* Davis Dec. ¶¶ 148-150.)

83.  ***The showing that was made supported a finding that*** T~~t~~he result of such inequitable conduct was losses to the Estate that exceed $13.3 million (more than $1.4 million for the April 22 Transactions; $4.2 million for the FIP investment; $7.7 for *Violet & Daisy*; and millions more in unwarranted fees based on inflated valuations).  These losses were to the direct detriment of the Debtor and will result in significant losses to creditors and investors.  Accordingly, the Trustee has made a prima facie showing that equitable subordination of the Claims in Class 5 and 6 is consistent with the provisions of the Bankruptcy Code.

V.    **Retention of Jurisdiction**

84.     Except as expressly provided in the Plan, this Court properly may retain

jurisdiction over the matters set forth in Article XIII and other applicable provisions of the Plan.

## II.    ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS

OF LAW, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

### A.  Order

85.     The Plan and all of its provisions are confirmed.  A copy of the Plan is

attached hereto as **Exhibit A**.

### B.  Objections

86.     To the extent that any objections, reservations of rights, statements, or

joinders to Confirmation have not been withdrawn, waived or settled before entry of this

Confirmation Order, cured by the relief granted herein or otherwise resolved as stated on the

record of the Confirmation Hearing, such objections (including the Turner Objection) are hereby

overruled on the merits~~.~~ *, subject to reconsideration, with respect to the equitable subordination*

*of any Turner claims only, as set forth ¶101 below.*  Further, the Fletcher Reply is hereby

stricken from the record as untimely.

### C.  Confirmation of the Plan

87.     The Plan and each of its provisions (whether or not specifically approved

herein) and the execution, delivery and performance thereof by the Trustee and Plan

Administrator, as applicable, are authorized and approved as finalized, executed and delivered.

As set forth in the Plan, once finalized and executed, upon the occurrence of the Effective Date,

the Plan shall constitute legal, valid, binding and authorized obligations of the respective parties

thereto, enforceable in accordance with their terms.  The terms of the Investor Settlement,

approved by this Court on the record at the Confirmation Hearing, as it may be amended by any

Amended Investor Settlement, shall be deemed incorporated into and made a part of the Plan as

if set forth in full.

88.    The terms of the Plan shall be effective and binding as of the Effective

Date of the Plan.

### D.  Findings of Fact and Conclusions of Law

89.    The findings of fact and the conclusions of law set forth herein shall

constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

applicable to the proceeding by Bankruptcy Rule 9014.  To the extent any of the following

articles, sections or provisions constitute findings of fact or conclusions of law, they are adopted

as such.  To the extent any of the prior findings of fact or conclusions of law constitute an order

of this Court, they are adopted as such.

### E.  Plan Classification Controlling

90.    The terms of the Plan shall solely govern the classification of Claims and

Interests for purposes of the distributions to be made thereunder.  The classifications set forth on

the Ballots tendered to or returned by Holders of Claims in connection with voting on the Plan

pursuant to the Disclosure Statement Order: (a) were set forth on the Ballots solely for purposes

of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be

deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for

distribution purposes; (c) may not be relied upon by any Person as representing the actual

classification of its Claim under the Plan for distribution purposes; and (d) shall not be binding

on the Trustee or the Plan Administrator except for voting purposes.  For the avoidance of doubt,

notwithstanding that the Claims of the Soundview Parties and the BVI Funds (not including any

Administrative Claim) are currently classified in Class 3 pursuant to the Plan, as described in the

Disclosure Statement, the Trustee shall have full rights to dispute any such Claims including,

without limitation, with respect to their existence, amount, classification, priority, or
subordination.

### F.  References to Plan Provisions

91.    The failure specifically to include or to refer to any particular article,
section or provision of the Plan, the Investor Settlement or any related document in this
Confirmation Order shall not diminish or impair the effectiveness of such article, section or
provision, it being the intent of this Court that the Plan be confirmed and any related documents
approved.

### G.  Immediate Binding Effect

92.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise,
upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective
and enforceable and deemed binding upon the Trustee, the Plan Administrator and any and all
Holders (irrespective of whether such Holders have accepted, or are deemed to have accepted,
the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases,
discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan
and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the
Debtor.

### H.  Cancellation of Existing Notes, Instruments, Certificates and Other Documents

93.    On the Effective Date, except as otherwise specifically provided for in the
Plan, the obligations of the Debtor under any Interest, share, note, bond, indenture, purchase
right, option, warrant or other instrument or document directly or indirectly evidencing or
creating any indebtedness or obligation of or ownership interest in the Debtor or giving rise to
any Claim or Interest, shall be cancelled and the Debtor shall not have any obligations thereunder

and shall be released therefrom; <u>provided</u> that the foregoing shall not result in any expense or liability to the Estate.

## I.   Provisions Governing Distributions

94.    Article XI and Section 8.1 of the Plan are hereby approved.  Except as otherwise set forth in the Plan, the Plan Administrator shall make all distributions required under and in accordance with Article XI of the Plan.  Recoveries on account of Pooled Claims will be distributed in accordance with the waterfall provisions outlined in Section 8.1(b) of the Plan and the Investor Settlement.  The Trustee may make distributions of Liquidation Recoveries after the 60th day following the Effective Date upon five Business Days' written notice to the Soundview Trustee and the BVI Funds (which notice cannot be provided before such 60th day) unless during that five Business Day period the Soundview Trustee or the BVI Funds have filed an objection to the proposed distribution of Liquidation Recoveries, in which case the Trustee will not make the disputed distribution until the objection is resolved in a Final Order. Notwithstanding the foregoing provisions, the Trustee or the Plan Administrator, as applicable, shall be free at any time to (a) use Liquidation Recoveries for the administrative expenses of the Estate and the Advisory Board established under the Plan, including litigation expenses and professional fees, subject to Section 8.1(b) of the Plan, and (b) distribute, as provided in the Plan, Pooled Claims Recoveries that are not Liquidation Recoveries.

## J.   Procedures for Resolving Contingent, Unliquidated and Disputed Claims

95.    The procedures contained in Section 11.3 of the Plan for resolving contingent, unliquidated and disputed Claims are hereby approved.

## K.   Treatment of Executory Contracts and Unexpired Leases

96.    The Executory Contract and Unexpired Lease provisions of Article IX of the Plan are hereby approved.

### L.  No Revesting of the Assets

97.    Except as otherwise provided in the Plan, on the Effective Date, title to all property and assets of the Estate including, without limitation, any claims, rights and causes of action of the Debtor and the Estate and any moneys held in escrow or separate segregated accounts during the pendency of the Case, shall not revest in the Debtor, shall not be released or waived and shall remain property of the Estate.

98.    On and after the Effective Date, except as otherwise provided in the Plan, the Plan Administrator may use, acquire or dispose of property and compromise or settle any Claims or causes of action (other than the Pooled Claims) without supervision or approval of this Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### M.  Post-Emergence Compromise and Settlement

99.    Subject to the terms of the Investor Settlement and the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator shall have the authority to maintain, prosecute, settle, dismiss, abandon or otherwise dispose of Claims (including, without limitation, the Pooled Claims) and enter into and consummate settlements and compromises of Claims against the Debtor and causes of actions against other Entities (including, without limitation, the Pooled Claims).

### N.  Subordination Rights and Equitable Subordination

100.    The allowance, classification and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Trustee reserves the right to

reclassify any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination relating thereto.

101.    With regard to the equitable subordination of Claims in Classes 5 and 6, the only timely objection filed with this Court was the Turner Objection.  Accordingly, Turner shall have standing to challenge the Trustee's prima facie case of equitable subordination of his Claim.  For the avoidance of doubt, no other person or entity shall have standing to challenge the Trustee's prima facie case of equitable subordination of any Claim in Class 5 or 6.  Turner shall have fourteen (14) calendar days from the date of the Confirmation Hearing to file with this Court an affidavit setting forth a paragraph by paragraph response to the allegations set forth in paragraphs 96 and 98-149 of the Davis Declaration.

### O.  General Settlement of Claims and Interests

102.    Pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan, including the Investor Settlement or the Amended Investor Settlement, as the case may be.  Each such compromise or settlement, and all other compromises and settlements provided for in the Plan are approved, are in the best interests of the Debtor, the Estate, and any Person holding Claims against the Debtor, and are fair, equitable and within the range of reasonableness.

103.    For the avoidance of doubt, (i) the Claims of the Investor Settlement Parties and the Louisiana Pension Funds are hereby deemed Allowed Claims in the amounts set forth in Article VI of the Plan and the Trustee is authorized to make distributions on account of such Allowed Claims in accordance with the provisions of the Plan and this Confirmation Order, and (ii) the Initial Investor Recovery Percentages set forth in Section 8.1(b) of the Plan are

hereby deemed reasonable and approved; provided, however, that such Initial Recovery

Percentages may only be modified or amended subject to the terms and limitations of Section

8.1(c) and 8.2(d) of the Plan.

104.    Subject to Article XI of the Plan, all distributions made to Holders of

Allowed Claims in any Class are intended to be and shall be final.

### P.  Waiver, Releases, Injunctions and Related Provisions

105.    The waivers, releases, injunctions and related provisions contained in

Article 10 of the Plan are hereby approved and authorized.

106.    As of the Confirmation Date, but subject to the occurrence of the Effective

Date, and except as otherwise expressly provided in the Plan or this Confirmation Order

(including, without limitation, sections 10.6, 10.7, 10.8, 10.9, 10.10, and 10.11 of the Plan), to

the full extent permitted by applicable law, all Persons who have held, hold or may hold Claims

against or Interests in the Debtor shall be deemed, by virtue of their receipt of distributions and

other treatment contemplated under the Plan, to have forever covenanted with the Debtor and the

Trustee and with each of their present agents, employees, representatives, financial advisors,

accountants and attorneys, to waive and not to (a) sue, or otherwise seek any recovery from the

Debtor, the Estate, or the Trustee, or any of their present agents, employees, representatives,

financial advisors, accountants or attorneys, whether for tort, fraud, contract, violations of federal

or state securities laws, or otherwise, based upon any act or occurrence or failure to act taken

before the Effective Date arising out of the business or affairs of the Debtor, or (b) assert any

Claim, obligation, right or cause of action and liability which any such Holder of a Claim against

or Interest in the Debtor may be entitled to assert against any such Person, whether known or

unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon

any act or omission, transaction or occurrence taking place on or before the Effective Date in any

way relating to the Debtor, this Case, or the Plan.

107.    As of the Confirmation Date, but subject to the occurrence of the Effective

Date, and except as otherwise expressly provided in the Plan or this Confirmation Order

(including, without limitation, sections 10.6, 10.7, 10.8, 10.9, 10.10, and 10.11 of the Plan), to

the full extent permitted by applicable law, all Persons who, directly or indirectly, hold or who

have held any Claim against or Interest in the Debtor shall hereby release the Debtor, the Estate,

the Trustee, and their present employees, agents, representatives, financial advisors, attorneys

and accountants from (a) any and all claims or liabilities arising from actions taken in their

capacity as such; and (b) any and all Claims, obligations, rights, causes of action and liabilities

which any Holder of a Claim against or Interest in the Debtor may be entitled to assert, whether

known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in

part upon any act or omission, transaction or occurrence taking place on or before the Effective

Date in any way relating to the Debtor, this Case, or the Plan.

108.    Except as otherwise provided in the Plan or this Confirmation Order

(including, without limitation, sections 10.6, 10.7, 10.8, 10.9, 10.10, and 10.11 of the Plan), and

subject  to the occurrence of the Effective Date, to the full extent permitted by applicable law, all

Persons who have held, hold or may hold Claims against or Interests in the Debtor are, with

respect to any such Claims or Interests, permanently enjoined from and after the Confirmation

Date from:  (a) commencing, conducting or continuing in any manner, directly or indirectly, any

suit, action or other proceeding of any kind (including, without limitation, any proceeding in a

judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Estate, or the

Trustee, or any of their property, or any direct successor in interest to the Debtor or the Estate, or

any property of any such successor; (b) enforcing, levying, attaching (including, without

limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or

means, whether directly or indirectly, of any judgment, award, decree or order against the

Debtor, the Estate, or the Trustee, or any of their property, or any direct successor in interest to

the Debtor or the Estate, or any property of any such successor; (c) creating, perfecting or

otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against

the Debtor, the Estate, or the Trustee, or any of their property, or any direct successor in interest

to the Debtor or the Estate; (d) asserting any right of setoff, subrogation, or recoupment of any

kind, directly or indirectly, against any obligation due the Debtor, the Estate, or the Trustee, or

any of their property, or any direct successor in interest to the Debtor or the Estate; and (e) acting

or proceeding in any manner, in any place whatsoever, that does not conform to or comply with

the provisions of the Plan.

    109.    Notwithstanding anything to the contrary in the Plan or this Confirmation

Order (including, without limitation, sections 10.1, 10.2, or 10.3 of the Plan), the waiver of

claims, releases and injunctions provided for in the Plan shall not operate to waive, release,

enjoin or in any way determine or limit any claims, including any claims as to quantum or

measure of damages, of the Trustee, the Estate, the Investor Settlement Parties, or the Louisiana

Pension Funds against any person or entity other than against the Debtor, the Estate, and the

Trustee.

    110.    Notwithstanding anything to the contrary in the Plan or this Confirmation

Order (including, without limitation, sections 10.1, 10.2, or 10.3 of the Plan), the waiver of

claims, releases and injunctions provided for in the Plan shall not operate to waive, release,

enjoin or in any way determine or limit (a) any claims, including any claims as to quantum or

measure of damages, of the Soundview Parties or the BVI Funds against any person or entity other than the Debtor, the Estate, and the Trustee; (b) the right of the Soundview Parties and the BVI Funds to object to any claims or distributions or to any other action in the Leveraged or Arbitrage liquidation proceedings; and (c) any Administrative Claims of the Soundview Debtors or the BVI Funds.

111.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order (including, without limitation, sections 10.1, 10.2, or 10.3 of the Plan), in the event any suit, action or Proceeding is brought against the Soundview Parties or the BVI Funds as a result of such suit, action or Proceeding being included in the Pooled Claims or otherwise, the waiver of claims, releases and injunctions provided for herein shall not operate to waive, release, enjoin or limit in any way (a) any arguments in or objections or defenses to such suit, action or other Proceeding that are held by the Soundview Parties and the BVI Funds and (b) any claims and counterclaims held by the Soundview Parties and the BVI Funds, including any claims and counterclaims asserted for purposes of setoff, recoupment, reduction of damages or otherwise, provided, however, that such claims and counterclaims against the Debtor and the Estate or the Trustee can only give rise to a Claim against the Debtor and the Estate that is encompassed within the Claims filed by the Soundview Parties and the BVI Funds pursuant to section 10.10 of the Plan and that will be adjudicated pursuant to the Plan, and provided further that section 11.2 of the Plan applies with respect to any such Claims after the 75-Day Period notwithstanding anything to the contrary in section 2.90 of the Plan.

112.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order (including, without limitation, sections 10.1, 10.2, or 10.3 of the Plan and paragraphs 89 and 103 of this Confirmation Order), it is expressly recognized and accepted that the value

ascribed to any Claim in the Plan shall not be determinative of the actual value of any such Claim or of any other issue in any other Proceeding.

113.    Notwithstanding anything to the contrary contained in the Plan or this Confirmation Order (including, without limitation, sections 10.1, 10.2, or 10.3 of the Plan), the waiver of claims, releases and injunctions provided for in the Plan shall not operate to waive, release, or enjoin any pending or future enforcement actions of the United States Securities and Exchange Commission or any other governmental enforcement agency against any Person other than against the Debtor, the Estate, the Trustee, and his present financial advisors, attorneys, and accountants.

114.    Notwithstanding anything to the contrary contained in the Plan or this Confirmation Order (including, without limitation, sections 10.1, 10.2, or 10.3 of the Plan), the waiver of claims, releases and injunctions provided for in the Plan shall not affect any pre-confirmation settlement agreements entered into by the Trustee and approved by order of the this Court or operate to expand, diminish or otherwise have any effect on any party to those agreements' rights, claims, or defenses.  For the avoidance of doubt, the Investor Settlement is not considered a pre-confirmation settlement agreement.

## Q. Indemnification, Exculpation, and Exoneration

115.    The exculpation, indemnity, and exoneration provisions of sections 7.6, 7.10, 10.4, and 10.5 of the Plan, subject to the express terms, conditions and limitations thereof, are hereby approved and confirmed in all respects and shall be enforceable for the benefit of the Trustee, the Plan Administrator, the members of the Advisory Board (including any additional members added pursuant to an Amended Investor Settlement) and any of their agents, Professionals, attorneys, financial advisors, accountants, or other professionals employed by any of them, as applicable, to the full extent permitted by applicable law.  The Plan Administrator

and the Advisory Board are authorized to purchase commercially reasonable liability insurance respecting the implementation of their duties and obligations under the Plan

116.    Following entry of this Confirmation Order, this Court shall retain exclusive jurisdiction to consider any and all claims against any of the Exculpated Parties involving or relating to the administration of this Chapter 11 Case, any rulings, orders, or decisions in this Chapter 11 Case or any aspects of this Chapter 11 Case, including the decision to commence this Chapter 11 Case, the development and implementation of the Plan, the decisions and actions taken during this Chapter 11 Case, and any asserted claims based upon or related to prepetition obligations or equity interests administered in this Chapter 11 Case. ***The Court shall also have exclusive jurisdiction*** for the purpose of determining whether such claims belong to the Estate***, on the one hand,*** or third parties***, on the other***.  In the event it is determined that any such claims belong to third parties, then, subject to any applicable subject matter jurisdiction limitations, this Court shall have exclusive jurisdiction with respect to any such litigation, subject to any determination by this Court to abstain and consider whether such litigation should more appropriately proceed in another forum.

**R.  Preservation of Causes of Action**

117.    The provisions of section 7.12 of the Plan are hereby approved.

## S.  Professional Fees

118.    <u>Pre-Effective Date Fees and Expenses</u>.  In accordance with section 13.3 of the Plan, the Court shall retain jurisdiction to determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods on or before the Effective Date.  The Trustee shall seek entry of an order setting forth procedures for Professionals filing final fee applications with the Court after the Confirmation Date.

119.    <u>Post-Effective Date Fees and Expenses</u>.  In accordance with section 7.3(a)(iii) of the Plan, the Plan Administrator will be compensated and reimbursed for his role in overseeing litigation of the Pooled Claims.  The fee arrangement set forth in section 7.3(a)(iii) of the Plan is reasonable and market for engagements of this type and scope.  Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Trustee, the Plan Administrator and the Advisory Board, as the case may be, shall, in the ordinary course of business and without any further notice to or action, order, or approval of this Court, pay in Cash the reasonable legal, professional or other fees and expenses related to implementation and Consummation of the Plan incurred by the Trustee, the Plan Administrator or the Advisory Board, as the case may be.  Except as otherwise specifically provided in the Plan, upon the Confirmation Date, any requirement that Professionals comply with sections 327, 328, 329, 330, 331 or 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate and the Trustee, the Plan Administrator and the Advisory Board may employ and pay any Professional in the ordinary course of business.

### T.  Statutory Fees Payable Pursuant to 28 U.S.C. § 1930

120.    The Trustee or the Plan Administrator, as applicable, shall pay all U.S. Trustee Fees for each quarter (including any fraction thereof) until this Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

### U.  Filing Deadlines for Administrative Claims and Certain Other Claims

121.    The Court will provide by separate order for notice of an Administrative Bar Date.  In accordance with Section 3.4 of the Plan, all proofs of Administrative Claims (other than Excluded Claims) and requests for payment of Administrative Claims (other than Excluded Claims) which have arisen on or after the Petition Date must be filed and served on the Trustee (and the Plan Administrator after the Effective Date), pursuant to the procedures set forth in the Administrative Bar Date Order.  Unless otherwise ordered or extended by the Bankruptcy Court, objections to proofs of Claim or applications for payment of Administrative Claims must be filed and served on the Trustee (and the Plan Administrator after the Effective Date) and the applying party by the later of:  (a) one (1) day prior to the Initial Distribution Date, and (b) 60 days after the Filing of the applicable proof of Claim or request for payment of Administrative Claim.  The Trustee and, after the Effective Date, the Plan Administrator may extend the Administrative Bar Date without further order of the Bankruptcy Court.

122.    In accordance with section 3.5 of the Plan, any Person or entity (including a Professional) that fails to file a proof of Claim, application or compensation estimate on account of a Fee Claim as and to the extent required by this Court shall be forever barred from asserting such Claim against the Debtor, the Estate, or their property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Claim.

123.    In accordance with section 9.2 of the Plan, any Claim arising from the rejection of any executory contract or unexpired lease under the Plan shall be forever barred and shall not be enforceable against the Debtor or the Estate unless a proof of Claim is filed and served on the Plan Administrator and the Trustee within 30 days after the date of notice of the entry of the order of this Court rejecting the executory contract or unexpired lease (which may include, if applicable, this Confirmation Order) or such other date established by the Bankruptcy Court.

124.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Soundview Parties and the BVI Funds will not be bound by or subject to the waivers, releases, and injunctions contained in sections 10.1, 10.2 and 10.3 of the Plan for a period of 75 days after the Effective Date (the "**75-Day Period**") and shall be free to assert any and all claims they may have against the Debtor and the Estate during the 75-Day Period, <u>provided that</u> (a) section 11.2 of the Plan applies after the 75-Day Period notwithstanding anything to the contrary in section 2.90 of the Plan and (b) with respect to any Administrative Claim of the Soundview Debtors or the BVI Funds, the Administrative Bar Date shall apply.  Such Claims asserted during the 75-Day Period shall be incorporated into new or amended proofs of claim for the Soundview Debtors and the BVI Funds and adjudicated in this Court as promptly as reasonably possible.

125.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, including in sections 10.1, 10.2, or 10.3 of the Plan, the Soundview Trustee, the BVI Funds and a fiduciary thereof, as applicable, may submit new or amended proofs of Claim for the Cayman Funds during the 75-Day Period, <u>provided</u> that the Soundview Trustee, the BVI Funds or a fiduciary thereof, as applicable, demonstrates the authority to act in this regard. If the

Soundview Trustee, the BVI Funds or a fiduciary thereof, as applicable, does so, then (a) the

definition of "Soundview Parties" contained in section 2.92 of the Plan shall automatically be

deemed amended *nunc pro tunc* to the Effective Date so as to include the Cayman Funds and

(b) this Court order expunging the Cayman Funds' proofs of Claim will be vacated promptly (by

so ordered stipulation or other appropriate action). If the Soundview Trustee, the BVI Funds or a

fiduciary thereof, as applicable, have commenced proceedings to obtain authority to act on

behalf of the Cayman Funds and have not obtained a Final Order within the 75-Day Period, the

75-Day Period shall be extended until such Final Order has been obtained, in which case (a) and

(b) of the preceding sentence will apply.

126.    The 75-Day Period may be extended (a) by this Court for compelling

circumstances upon request of the Soundview Trustee or the BVI Funds made during or after the

75-Day Period, (b) by agreement of the Trustee, or (c) as provided in Section 10.11 of the Plan.

### V.  Retention of Jurisdiction

127.    Notwithstanding the entry of this Confirmation Order and the occurrence

of the Effective Date, except as otherwise provided in the Plan and this Confirmation Order, this

Court shall retain exclusive jurisdiction over all matters arising out of, or related to, this Chapter

11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including

jurisdiction over those matters set forth in Article XIII of the Plan.

### W. Other Essential Documents and Agreements

128.    Any agreements, instruments, certificates or documents related thereto and

the transactions contemplated by the Plan, including the Investor Settlement, are approved and,

upon execution and delivery of the agreements and documents relating thereto by the applicable

parties, the Plan and any other agreements, instruments, certificates or documents related thereto

shall be in full force and effect and valid, binding and enforceable in accordance with their terms

without the need for any further notice to or action, order or approval of this Court, or other act

or action under applicable law, regulation, order or rule.  The Trustee, and after the Effective

Date, the Plan Administrator, are authorized, without further approval of this Court or any other

party, to execute and deliver all agreements, documents, instruments, securities and certificates

relating to such agreements and perform their obligations thereunder, including paying all fees

due thereunder or in connection therewith.

129.    On or before the Effective Date, the Trustee may file with this Court such

agreements and other documents as may be necessary or appropriate to effectuate and further

evidence the terms and conditions of the Plan.  The Trustee or the Plan Administrator, as

applicable, and, upon request, all Holders receiving Distributions pursuant to the Plan and all

other parties in interest, shall, from time to time, prepare, execute and deliver any agreements or

documents and take any other actions as may be necessary or advisable to effectuate the

provisions and intent of the Plan.

## X.  Governing Law

130.    Unless a rule of law or procedure is supplied by federal law (including the

Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the

State of New York, without giving effect to the principles of conflict laws, shall govern the

rights, obligations, construction and implementation of the Plan, any agreements, documents,

instruments or contracts executed or entered into in connection with the Plan (except as

otherwise set forth in those agreements, in which case the governing law of such agreement shall

control).

## Y.  Ownership and Control

131.    On the Effective Date, and except to the extent otherwise ordered by the

Court, the Plan Administrator shall be deemed the sole Interest Holder (for all purposes other

than with respect to the rights of Interest Holders established under the Plan), officer and director

of the Debtor.  Subject to those rights and duties specifically reserved to the Advisory Board

under section 7.3(b) of the Plan, the Plan will be administered and actions will be taken in the

name of the Debtor through the Plan Administrator pursuant to section 7.3(a)(ii) of the Plan,

irrespective of whether the Debtor is dissolved.

132.    The consummation of the Plan or the assumption of any Executory

Contract or Unexpired Lease by the Trustee or the Plan Administrator, as applicable, is not

intended to, and shall not, unless the Trustee or the Plan Administrator, as applicable, expressly

agrees otherwise in writing, constitute a change of ownership or change in control for purposes

of any statute, regulation, contract or agreement (including any Executory Contract or Unexpired

Lease) in effect on the Effective Date and to which the Debtor is a party.

### Z.  Effectiveness of All Actions

133.    Except as set forth in the Plan, all actions authorized to be taken by the

Plan or this Confirmation Order shall be effective on, prior to, or after the Effective Date

pursuant to the terms of the Plan or this Confirmation Order, without further application to, or

order of this Court, or further action by the Trustee or Plan Administrator, as applicable.

### AA.    Authorization to Take Actions to Implement and Consummate the Plan

134.    Pursuant to section 1142(b) of the Bankruptcy Code, each of the Trustee

and the Plan Administrator, as applicable, hereby are authorized and empowered to take all

actions to execute, deliver, file or record such contracts, instruments, releases and other

agreements or documents, and take such actions as may be necessary or appropriate to effectuate

and implement the provisions of the Plan, the Investor Settlement and any other Plan-related

documents without the need for any approvals, authorizations, actions or consents except for

those expressly required pursuant hereto, and all documents, instruments, securities and

agreements authorized thereunder and related thereto and all annexes, exhibits and schedules appended thereto, and the obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms; provided that after the Confirmation Date (but prior to the Effective Date) the Trustee shall consult with and, to the extent required by the terms of the Investor Settlement, seek the consent of the Advisory Board in connection therewith.

135.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements related thereto, any amendments or modifications thereto prior to the Effective Date and any other acts and transactions referred to in or contemplated by the Plan, the Disclosure Statement, the Investor Settlement and any documents, instruments, securities, agreements related thereto and any amendments or modifications thereto entered into prior to the Effective Date.

### BB.    Modifications or Amendments of the Plan

136.    Before the Confirmation Date, the Plan may be altered, amended or modified by the Trustee in accordance with section 1127(b) of the Bankruptcy Code.  After the Confirmation Date, the Plan Administrator or the Trustee, as the case may be, may, with the approval of the Court and without notice to all Holders of Claims and Interests, insofar as it does not materially and adversely affect the interest of Holders of Claims, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite the execution of the Plan.  The Plan may be altered or amended after the Confirmation Date by the Trustee or the Plan Administrator, as the case may be, in a manner which, in the opinion of the Court, materially and adversely affects Holders of Claims or Interests, provided that such

alteration or modification occurs after a hearing as provided in section 1127 of the Bankruptcy Code.

137.    Entry of this Confirmation Order shall mean that all modifications and amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code, and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

### CC.    Amended Investor Settlement

138.    Subject to the terms and conditions of section 8.2 of the Plan, the Trustee and the Plan Administrator (subject to approval as may be required pursuant to Section 7.3(a)(ii) of the Plan), as the case may be, are authorized to enter into an Amended Investor Settlement with additional Investor Settlement Parties, including, without limitation, (a) the Soundview Debtors, whose participation would be subject to this Court's approval in the Soundview Debtors' chapter 11 cases, captioned 13-13098 (REG) or (b) the BVI Funds.  In the event the Trustee or Plan Administrator, as the case may be, decides to pursue such Amended Investor Settlement with any potential additional Investor Settlement Party, he shall negotiate in good faith with such party including with regard to (i) the Pooled Claims, (ii) the Investor Recovery Percentages, and (iii) the duties and responsibilities of the Trustee or Plan Administrator and the Advisory Board and (iv) the additional Investor Settlement Party providing financing to support the prosecution and litigation of the Pooled Claims.  Subject to section 8.2(d) of the Plan, no new member may be added to the Investor Settlement without the unanimous consent of the Advisory Board and, if necessary, order of this Court.  If unanimous consent of the Advisory Board cannot be obtained, a new member may be added to the Investor Settlement by order of this Court, after notice and a hearing.  The Trustee or Plan Administrator, as the case may be, shall not enter into an Amended Investor Settlement during the initial (i.e., unextended) 75-Day Period without this

Court's approval, but may thereafter enter into an Amended Investor Settlement unless otherwise ordered by this Court. The Trustee or the Plan Administrator, as the case may be, will file with this Court a notice setting forth the effective date of any Amended Investor Settlement.

**DD.     Effect of Conflict between Plan and Confirmation Order**

139.     If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

**EE.     Discharge of the Trustee and Appointment of the Plan Administrator**

140.     On the Effective Date, (i) the Trustee shall be deemed discharged from his capacity as such, and (ii) retained as the Plan Administrator pursuant to section 7.3(a)(i) of the Plan. The appointment of the Trustee as the Plan Administrator is consistent with the interests of Holders and with public policy.

**FF.    Appointment of the Advisory Board**

141.     On the Effective Date, the Advisory Board will be constituted and shall consist of three members: the Trustee, as Plan Administrator, Tammy Fu, and Robert McMahon. The appointment of the initial members of the Advisory Board is consistent with the interests of Holders and with public policy.

**GG.     Reservation of Rights**

142.     Except as expressly set forth in the Plan, the Plan shall have no force or effect unless and until this Court enters this Confirmation Order. Neither the filing of the Plan, any statement or provision contained therein, nor the taking of any action by the Trustee, the Plan Administrator or any other Entity with respect to the Plan or the Disclosure Statement shall be or shall be deemed, prior to the Effective Date, to be an admission or waiver of any rights of: (a) the Debtor with respect to the Holders or other Entity; or (b) any Holder or other Entity; or (c) any other party.

-49-

**HH.**     **Notice of Entry of the Confirmation Order**

143.     In accordance with Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), within fifteen (15) Business Days of the date of entry of this Confirmation Order, the Trustee shall serve a notice of Confirmation to all parties served with the notice of the Confirmation Hearing in substantially the form of the notice annexed hereto as **Exhibit B**, which form is hereby approved, to be delivered to such parties by regular mail, postage prepaid.

144.     Mailing of the notice of entry of this Confirmation Order in the time and manner set forth in the previous paragraph shall be good and sufficient notice under the particular circumstances in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice shall be necessary.

**II.  Injunctions and Automatic Stay**

145.     Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in this Chapter 11 Case and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

**JJ. Nonseverability of Plan Provisions upon Confirmation**

146.     Except as to terms which would frustrate the overall purpose of the Plan, *and* should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

**KK.**     **Authorization to Consummate**

-50-

147.    The Trustee is authorized to consummate the Plan on any business day

selected by the Trustee after the entry of this Confirmation Order, subject to satisfaction or

waiver of the conditions to the Effective Date set forth in section 12.2 of the Plan.

**LL.    Effect of Non-Occurrence on the Effective Date**

148.    If the Effective Date does not occur or the Plan is withdrawn or revoked

by the Trustee in accordance with section 14.2 of the Plan, the Plan shall be null and void in all

respects and nothing contained in the Plan or the Disclosure Statement shall constitute a waiver

or release of any claims by or Claims against or Equity in the Debtor, prejudice in any manner

the rights of the Trustee, the Debtor or any other Person, or constitute an admission,

acknowledgment, offer or undertaking by the Trustee, the Debtor or any Person.

**MM.    Immediate Effectiveness**

149.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, 8001, 8002 or

otherwise, immediately upon the entry of this Confirmation Order, the terms of (a) this

Confirmation Order and (b) subject to the occurrence of the Effective Date, the Plan shall be, and

hereby is, immediately effective and enforceable and deemed binding upon the Trustee, the

Debtor, any and all Holders (irrespective of whether such Holders' Claims or Interests are

impaired under the Plan or whether the Holders of such Claims or Interests accepted, were

deemed to have accepted, rejected or were deemed to have rejected the Plan), all persons and

entities that are party to or subject to the settlements, compromises, releases, discharges,

injunctions, stays and exculpations described in the Plan or herein, each person or entity

acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and

Unexpired Leases with the Debtor and the respective heirs, executors, administrators, successors

or assigns, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or

guardians, if any, of any of the foregoing.  The Court having considered and rejected any request

for a stay of this Order on the merits, and Bankruptcy Rule 8001 et seq. having been satisfied,

any motion seeking to stay the effect of this Confirmation Order shall be made to the District

Court for the Southern District of New York.

**NN.**     **Final Order**

150.    This Confirmation Order is intended to be a final order and the period in

which an appeal must be filed shall commence upon the entry hereof.

Dated:  New York, New York
         March 28, 2014

_____ *s/ Robert E. Gerber* _____
HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT A**

**Trustee's Second Amended Plan of Liquidation**

Michael Luskin
Lucia T. Chapman
Stephan E. Hornung
LUSKIN, STERN & EISLER LLP
Eleven Times Square
New York, New York 10036
Telephone:  (212) 597-8200
Facsimile:  (212) 974-3205

*Attorneys for the Chapter 11 Trustee*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| FLETCHER INTERNATIONAL, LTD., | : | Case No. 12-12796 (REG) |
| | : | |
| Debtor. | : | |
| | : | |

------------------------------------------------------------x

# TRUSTEE'S SECOND AMENDED PLAN OF LIQUIDATION

March 24, 2014

Richard J. Davis
Chapter 11 Trustee
415 Madison Avenue, 11th Floor
New York, New York 10017

# TABLE OF CONTENTS

Page

**ARTICLE I** INTRODUCTION ........................................................................ 1

**ARTICLE II** DEFINITIONS ........................................................................... 1

2.1       "Administrative Bar Date" ............................................................. 1

2.2       "Administrative Bar Date Order" ................................................. 1

2.3       "Administrative Claim" .................................................................. 1

2.4       "Advisory Board" ........................................................................... 1

2.5       "Affiliate" ........................................................................................ 1

2.6       "Allowed Administrative Claim" ................................................. 1

2.7       "Allowed Claim" ............................................................................ 2

2.8       "Allowed Class ___ Claims" ........................................................ 2

2.9       "Allowed Interest" .......................................................................... 2

2.10      "Allowed Priority Tax Claim" ...................................................... 2

2.11      "Alpha" ............................................................................................ 2

2.12      "Alpha JOLs" .................................................................................. 2

2.13      "Amended Investor Settlement" ................................................... 2

2.14      "Arbitrage" ...................................................................................... 3

2.15      "Arbitrage JOLs" ............................................................................ 3

2.16      "Available Cash" ............................................................................ 3

2.17      "Ballot" ............................................................................................ 3

2.18      "Bankruptcy Code" ........................................................................ 3

2.19      "Bankruptcy Court" ....................................................................... 3

2.20      "Bankruptcy Rules" ....................................................................... 3

2.21      "Bar Date" ....................................................................................... 3

2.22      "Business Day" ............................................................................... 3

2.23      "BVI Funds" .................................................................................... 3

2.24      "Case" .............................................................................................. 3

2.25      "Cash" .............................................................................................. 3

2.26      "Cayman Funds" ............................................................................ 4

2.27      "Claim" ............................................................................................ 4

2.28      "Confirmation" ............................................................................... 4

2.29      "Confirmation Date" ...................................................................... 4

i

| | | |
|---|---|---|
| 2.30 | "Confirmation Hearing" | 4 |
| 2.31 | "Confirmation Order" | 4 |
| 2.32 | "Debtor" | 4 |
| 2.33 | "Deemed Paid in Full" | 4 |
| 2.34 | "Disbursing Agent" | 4 |
| 2.35 | "Disclosure Statement" | 4 |
| 2.36 | "Disclosure Statement Hearing" | 4 |
| 2.37 | "Disputed Claim" | 4 |
| 2.38 | "Distribution Date" | 5 |
| 2.39 | "Distribution Record Date" | 5 |
| 2.40 | "Effective Date" | 5 |
| 2.41 | "Estate" | 5 |
| 2.42 | "Estimation Order" | 5 |
| 2.43 | "Excluded Claim" | 5 |
| 2.44 | "Existing FILB Stock" | 5 |
| 2.45 | "Fee Claims" | 5 |
| 2.46 | "FILB" | 5 |
| 2.47 | "Final Distribution" | 5 |
| 2.48 | "Final Order" | 5 |
| 2.49 | "510(b) Claims" | 6 |
| 2.50 | "510(c) Claims" | 6 |
| 2.51 | "General Unsecured Claim" | 6 |
| 2.52 | "Governmental Unit" | 6 |
| 2.53 | "Holder" | 6 |
| 2.54 | "Holder of Record" | 6 |
| 2.55 | "Indemnified Person" | 6 |
| 2.56 | "Initial Distribution" | 6 |
| 2.57 | "Initial Distribution Date" | 6 |
| 2.58 | "Initial Investor Recovery Percentages" | 6 |
| 2.59 | "Interest" | 7 |
| 2.60 | "Insider" | 7 |
| 2.61 | "Investor Recovery Percentages" | 7 |
| 2.62 | "Investor Settlement" | 7 |
| 2.63 | "Investor Settlement Parties" | 7 |

2.64      "Leveraged" ...................................................................................... 7

2.65      "Leveraged JOLs" ............................................................................. 7

2.66      "Liquidation Recoveries" .................................................................. 7

2.67      "Louisiana Pension Funds" ............................................................... 7

2.68      "MBTARF" ........................................................................................ 7

2.69      "Notice Agent" ................................................................................... 7

2.70      "Objection Bar Date" ........................................................................ 7

2.71      "Operating Reserve" .......................................................................... 7

2.72      "Paid in Full," "Payment in Full," or "Pay in Full" ...................... 8

2.73      "Person" .............................................................................................. 8

2.74      "Petition Date" ................................................................................... 8

2.75      "Plan" .................................................................................................. 8

2.76      "Plan Administrator" ......................................................................... 8

2.77      "Pooled Claims" ................................................................................ 8

2.78      "Pooled Claim Recoveries" .............................................................. 8

2.79      "Pool Interest" .................................................................................... 8

2.80      "Priority Claim" ................................................................................. 8

2.81      "Priority Tax Claim" .......................................................................... 8

2.82      "Proceeding" ...................................................................................... 8

2.83      "Professionals" ................................................................................... 8

2.84      "Proponent" ........................................................................................ 9

2.85      "Pro Rata Share" ................................................................................ 9

2.86      "Richcourt Funds" ............................................................................. 9

2.87      "Scheduled" ........................................................................................ 9

2.88      "Schedules" ........................................................................................ 9

2.89      "Secured Claim" ................................................................................ 9

2.90      "75-Day Period" ............................................................................... 10

2.91      "Soundview Debtors" ...................................................................... 10

2.92      "Soundview Parties" ........................................................................ 10

2.93      "Soundview Trustee" ....................................................................... 10

2.94      "Unclaimed Property" ..................................................................... 10

**ARTICLE III** CLASSIFICATION OF CLAIMS  AND INTERESTS AND GENERAL
PROVISIONS ........................................................................................................ 10

3.1       General Rules of Classification ....................................................... 10

3.2       Administrative Claims and Priority Tax Claims ............................ 10

3.3      Satisfaction of Claims and Interests ................................................................ 10

3.4      Bar Date for Administrative Claims ................................................................ 10

3.5      Bar Date for Fee Claims ................................................................................. 11

**ARTICLE IV** CLASSIFICATION OF CLAIMS AND INTERESTS ........................ 11

**ARTICLE V** TREATMENT OF UNCLASSIFIED CLAIMS AND UNIMPAIRED CLASSES OF CLAIMS AND INTERESTS................................................................. 12

5.1      Treatment of Allowed Administrative Claims................................................. 12

5.2      Treatment of Allowed Priority Tax Claims .................................................... 12

5.3      Treatment of Other Priority Claims ............................................................... 13

5.4      Treatment of Allowed Secured Claims ........................................................... 13

**ARTICLE VI** TREATMENT OF IMPAIRED CLASSES OF ALLOWED CLAIMS AND INTERESTS ....................................................................................................... 13

**ARTICLE VII** PLAN CONSUMMATION ............................................................... 15

7.1      Funding of Reserves ...................................................................................... 15

7.2      No Segregation of Available Cash.................................................................. 15

7.3      Post Consummation Management .................................................................. 15

7.4      Budget. ........................................................................................................... 18

7.5      Investments .................................................................................................... 18

7.6      Indemnification and Insurance....................................................................... 18

7.7      Resignation, Death or Removal ..................................................................... 19

7.8      Reports ........................................................................................................... 19

7.9      No Revesting of Assets .................................................................................. 19

7.10     Exoneration .................................................................................................... 19

7.11     Setoffs ............................................................................................................ 20

7.12     Avoidance Action .......................................................................................... 20

7.13     Maintenance of Principal Office of FILB ...................................................... 20

**ARTICLE VIII** CLAIMS LITIGATION AND SETTLEMENTS ............................. 21

8.1      Investor Settlement. ....................................................................................... 21

8.2      Amended Investor Settlement......................................................................... 22

8.3      Insider Claims, Affiliate Claims, Equity Interests. ....................................... 22

8.4      Incorporation of Settlements.......................................................................... 22

8.5      Compromise of Controversies ....................................................................... 23

**ARTICLE IX** EXECUTORY CONTRACTS AND UNEXPIRED LEASES............. 23

9.1      Assumption or Rejection of Executory Contracts and Unexpired Leases .................. 23

9.2      Bar Date for Rejection Damages .................................................................... 23

**ARTICLE X** WAIVERS, RELEASES AND INDEMNIFICATION ......................................... 24

10.1     Waiver of Claims .................................................................................. 24

10.2     Releases ................................................................................................ 24

10.3     Injunction ............................................................................................. 24

10.4     Indemnification ..................................................................................... 25

10.5     Exculpation ........................................................................................... 25

10.6     Existing or Future Claims – FILB, Investment Settlement Parties, and the Louisiana
         Pension Funds. ...................................................................................... 25

10.7     Existing or Future Claims – Soundview Parties and BVI Funds. ............... 25

10.8     Defenses, etc. ....................................................................................... 25

10.9     Reservation of Rights ........................................................................... 26

10.10    Relief from Bar Date Order. .................................................................. 26

10.11    The Cayman Funds. ............................................................................... 26

10.12    Government Enforcement Actions ......................................................... 27

10.13    Pre-Confirmation Settlement Agreements .............................................. 27

**ARTICLE XI** DISTRIBUTIONS ............................................................................... 27

11.1     Objections to Claims and Interests ........................................................ 27

11.2     Amendments to Claims Against the Debtor or the Estate ........................ 27

11.3     Estimation of Disputed Claims and Disputed Interests ........................... 27

11.4     Funding of the Plan .............................................................................. 28

11.5     Transmittal of Distributions and Notices ............................................... 28

11.6     Nontransferability and Abandonment of Interests .................................. 29

11.7     Unclaimed Property .............................................................................. 29

11.8     Withholding Taxes ................................................................................ 29

11.9     Disputed Payment ................................................................................. 29

11.10    Liquidation Recoveries ......................................................................... 29

**ARTICLE XII** EFFECTIVE DATE ........................................................................... 29

12.1     Conditions to Confirmation ................................................................... 30

12.2     Conditions to the Effective Date ........................................................... 30

12.3     Waiver of Conditions ............................................................................ 30

**ARTICLE XIII** RETENTION OF JURISDICTION ...................................................... 30

13.1     Claims and Interests ............................................................................. 30

13.2     Injunction, etc. ..................................................................................... 30

13.3     Fees ..................................................................................................... 31

13.4     Dispute Resolution ............................................................................... 31

-v-

13.5     Leases and Executory Contracts ................................................................. 31

13.6     Actions ...................................................................................................... 31

13.7     Investor Settlement and Amended Investor Settlement ............................... 31

13.8     75-Day Period ............................................................................................ 31

13.9     General Matters .......................................................................................... 31

13.10    Plan Modification ....................................................................................... 31

13.11    Aid Consummation ..................................................................................... 31

13.12    Avoidance Actions ..................................................................................... 31

13.13    Implementation of Confirmation Order ..................................................... 32

13.14    Resolve Disputes ........................................................................................ 32

13.15    Determine Tax Liability .............................................................................. 32

13.16    Final Order ................................................................................................. 32

**ARTICLE XIV** MISCELLANEOUS PROVISIONS .............................................. 32

14.1     Defects, Omissions, Amendments and Modifications ................................. 32

14.2     Withdrawal or Revocation of the Plan ....................................................... 32

14.3     Successors and Assigns .............................................................................. 32

14.4     Final Orders ............................................................................................... 32

14.5     Governing Law ........................................................................................... 33

14.6     Notices ....................................................................................................... 33

14.7     Severability ................................................................................................ 33

14.8     Interpretation, Rules of Construction, Computation of Time and Choice of Law ..... 33

# ARTICLE I

## INTRODUCTION

This Second Amended Plan of Liquidation, dated March 24, 2014, is proposed by the Chapter 11 Trustee for the Debtor, Richard J. Davis.  Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, financial information, and for the results of the Trustee's investigation, a description of the Estate's assets (including litigation Claims), and a summary and analysis of the Plan.  All Holders of Claims and Interests entitled to vote on the Plan should review the Disclosure Statement before voting to accept or reject the Plan.  In addition, there are other agreements and documents which are referenced in the Plan and the Disclosure Statement and which will be filed before the hearing to approve the Disclosure Statement; these should also be reviewed.  The Disclosure Statement and all related solicitation materials must be approved by the Bankruptcy Court before votes can be solicited.

# ARTICLE II

## DEFINITIONS

In addition to such other terms as are defined in other Articles of the Plan and in the Glossary that is part of the Disclosure Statement, the following terms have the following meanings as used in the Plan:

2.1　　　"Administrative Bar Date" means the date fixed in the Administrative Bar Date Order by which all Persons asserting Administrative Claims arising on and after the Petition Date, but prior to the Confirmation Date, other than Excluded Claims, against the Debtor must have filed proofs of such Administrative Claims or requests for payment of such Administrative Claims or be forever barred from asserting such Claims against the Debtor, its property, or the Estate.

2.2　　　"Administrative Bar Date Order" means the Final Order entered by the Bankruptcy Court establishing the Administrative Bar Date.

2.3　　　"Administrative Claim" means a Claim for costs and expenses of administration asserted or arising under sections 503(b) or 507(b) of the Bankruptcy Code, or a Claim given the status of an Administrative Claim by Final Order of the Bankruptcy Court, and all fees due under 28 U.S.C. §  1930.

2.4　　　"Advisory Board" means the advisory board described in section 7.3(b) of the Plan, as such Advisory Board may be amended by an Amended Investor Settlement.

2.5　　　"Affiliate" means an affiliate as such term is defined in section 101(2) of the Bankruptcy Code.  Subject to section 10.10 of this Plan, the Soundview Debtors, the Cayman Funds and the BVI Funds are not considered Affiliates for purposes of classification of their Claims (if any).

2.6　　　"Allowed Administrative Claim" means all or that portion of an Administrative Claim which either (a) has been allowed by a Final Order, or (b)(i) was incurred

in the ordinary course of business during this Case to the extent due and owing without defense, offset or counterclaim of any kind; and (ii) proof of which was timely filed by the Administrative Bar Date, or deemed timely filed under applicable law or by order of the Bankruptcy Court, pursuant to the Bankruptcy Code, Bankruptcy Rules or applicable law, or filed late, with leave pursuant to a Final Order of the Bankruptcy Court and either (1) is not objected to by the Objection Bar Date and is not otherwise a Disputed Claim, or (2) is otherwise allowed by a Final Order.  Unless otherwise specified herein or by Final Order of the Bankruptcy Court, "Allowed Administrative Claim" shall not, for purposes of computation of distributions under the Plan, include interest or similar charges accrued after the Petition Date.

2.7    "Allowed Claim" means a Claim (other than an Allowed Administrative Claim) against the Debtor that is:

(a)    listed by the Debtor in the Schedules in an amount greater than zero and as being not contingent, unliquidated, disputed or undetermined, and that it is not otherwise a Disputed Claim;

(b)    a Claim, proof of which has been timely filed by the Bar Date, or deemed timely filed under applicable law or by order of the Bankruptcy Court, pursuant to the Bankruptcy Code, Bankruptcy Rules or applicable law, or filed late, with Bankruptcy Court leave pursuant to a Final Order, and either (i) is not objected to by the Objection Bar Date and is not otherwise a Disputed Claim, or (ii) is otherwise allowed by a Final Order or;

(c)    a Claim that is allowed:  (i) in a Final Order; or (ii) pursuant to the terms of the Plan.

Unless otherwise specified in this Plan or by Final Order of the Bankruptcy Court, "Allowed Claim" shall not, for purposes of computation of distributions under the Plan, include interest or similar charges accrued after the Petition Date except with respect to an Allowed Secured Claim as permitted by section 506(b) of the Bankruptcy Code.

2.8    "Allowed Class ___ Claims" means all Allowed Claims in the referenced Class.

2.9    "Allowed Interest" means Existing FILB Stock that are not Disputed Existing FILB Stock.

2.10    "Allowed Priority Tax Claim" means a Priority Tax Claim which has become an Allowed Claim.

2.11    "Alpha" means Fletcher Fixed Income Alpha Fund, Ltd.

2.12    "Alpha JOLs" means the Joint Official Liquidators for Alpha, Jenna Wise and Tammy Fu of Zolfo Cooper (Cayman) Limited.

2.13    "Amended Investor Settlement" means the Investor Settlement, as amended in any way.

-2-

2.14        "Arbitrage" means Fletcher Income Arbitrage Fund, Ltd.

2.15        "Arbitrage JOLs" means the Joint Official Liquidators for Arbitrage, Robin McMahon and Roy Bailey of Ernst & Young LLP.

2.16        "Available Cash" means all unrestricted Cash of the Debtor after deduction of:  (a) Cash to be distributed to or reserved for Holders of Administrative Claims, Priority Claims, Priority Tax Claims, and Secured Claims; and (b) the Operating Reserve (as determined pursuant to section 8.1(b) of the Plan), with each such amount to be determined from time to time.

2.17        "Ballot" means the ballot to be distributed to Holders of Allowed Claims or Interests in each impaired Class by the Notice Agent, on which ballot such Holder may vote for or against the Plan.

2.18        "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101 et. seq., as the same was in effect on the Petition Date, as amended by any amendments applicable to this Case.

2.19        "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York or, to the extent that such Court ceases to exercise jurisdiction over this Case, such other court or adjunct thereof that exercises jurisdiction over this Case.

2.20        "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, effective in accordance with the provisions of 28 U.S.C. § 2075, as now in effect or hereafter amended.

2.21        "Bar Date" means the respective dates fixed by Final Order of the Bankruptcy Court by which all Persons asserting a Claim against the Debtor, other than Administrative Claims, must have filed a proof of Claim or be forever barred from asserting a Claim against the Debtor, the Estate or its property, and from voting on the Plan or sharing in any distribution under it.

2.22        "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

2.23        "BVI Funds" means Richcourt Euro Strategies Inc., Optima Absolute Return Fund Ltd., Richcourt Allweather Fund Inc., America Alternative Investments Ltd., Richcourt Composite Inc., and Richcourt Allweather B Inc.

2.24        "Case" means the Debtor's case pending in the Bankruptcy Court pursuant to chapter 11 of the Bankruptcy Code under case number 12-12796 (REG).

2.25        "Cash" means cash and cash equivalents, including, but not limited to, wire transfers, checks, other readily marketable direct obligations of the United States of America and other similar items.

2.26        "Cayman Funds" means New Wave Fund SPC and Soundview Composite, Ltd.

2.27        "Claim" means a claim as such term is defined in section 101(5) of the Bankruptcy Code.

2.28        "Confirmation" means the entry of the Confirmation Order.

2.29        "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

2.30        "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

2.31        "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

2.32        "Debtor" means FILB.

2.33        "Deemed Paid in Full" means, with respect to a Disputed Claim, that cash has been set aside to Pay in Full such Claim were it to become an Allowed Claim in either the amount asserted or such other lesser amount determined by the Bankruptcy Court.

2.34        "Disbursing Agent" means the Plan Administrator, or such other Person appointed as such by the Plan Administrator to disburse property pursuant to the Plan.

2.35        "Disclosure Statement" means the Trustee's Report and Disclosure Statement (including all exhibits and schedules annexed to it or referred to in it) that relates to this Plan and has been approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented.

2.36        "Disclosure Statement Hearing" means the hearing held by the Bankruptcy Court to consider whether the Disclosure Statement contains adequate information as required by section 1125 of the Bankruptcy Code.

2.37        "Disputed Claim" means:

(a)        if no proof of Claim or no application for payment of an Administrative Claim or Fee Claim has been filed by the applicable bar date or deemed timely filed under applicable law:  (i) a Claim that has been listed on the Schedules as other than disputed, contingent or unliquidated, but as to which an objection has been filed in accordance with Section 11.1 of the Plan; or (ii) a Claim that has been listed on the Schedules as disputed, contingent or unliquidated or as having a zero or otherwise undetermined value; or

(b)        if a proof of Claim or a request for payment of an Administrative Claim or Fee Claim has been filed by the applicable bar date, or has otherwise been deemed timely filed under applicable law or leave to file a late Claim has been granted

-4-

pursuant to a Final Order: (i) a Claim that is listed on the Schedules as other than disputed, contingent or unliquidated, but as to which the nature or amount of the Claim as asserted in the proof of Claim varies from the nature and amount of such Claim as it is listed on the Schedules; (ii) a Claim as to which an objection has been filed in accordance with Section 11.1 of the Plan, and which objection has not been withdrawn or denied by a Final Order; (iii) a Claim (other than Administrative Claim) for which a proof of Claim has been filed, but for which no Claim has been listed on the Schedules; or (iv) a Claim for which a proof of Claim or request for payment has been filed in an amount which is contingent or unliquidated, in whole or in part.

2.38    "Distribution Date" means the date or dates set by the Plan Administrator from time to time to make payments to Holders under the Plan.

2.39    "Distribution Record Date" means the date the Order approving the Disclosure Statement is signed, unless otherwise ordered by the Bankruptcy Court.

2.40    "Effective Date" means the date specified as such by the Trustee, which date shall be no later than eleven (11) days after the Confirmation Date, or if the eleventh day is not a Business Day, the first Business Day thereafter, unless otherwise ordered by the Bankruptcy Court.

2.41    "Estate" means the estate created in this Case for the Debtor by section 541 of the Bankruptcy Code.

2.42    "Estimation Order" means an order or orders of the Bankruptcy Court estimating or otherwise determining disputed Claims for purposes other than making Plan distributions.

2.43    "Excluded Claim" means those Administrative Claims listed in the Administrative Bar Date Order as excluded from compliance with the Administrative Bar Date, which may include Fee Claims and fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930 (a)(6).

2.44    "Existing FILB Stock" means all authorized, issued and outstanding interests in FILB.

2.45    "Fee Claims" means a Claim for compensation or reimbursement of expenses pursuant to sections 326, 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in this Case.

2.46    "FILB" means Fletcher International Ltd., the Debtor.

2.47    "Final Distribution" means the distribution of the remaining Available Cash to Holders of Allowed Claims or Allowed Interests.

2.48    "Final Order" means an order or judgment of the Bankruptcy Court (or any other court, as applicable) which has not been reversed, stayed, modified or amended and as to which the time to appeal or seek review, rehearing, reargument or certiorari has expired and

-5-

as to which no appeal or petition for review, rehearing, reargument, stay or certiorari is pending, or as to which any right to appeal or to seek certiorari, review, or rehearing has been waived, or, if an appeal, reargument, petition for review, certiorari or rehearing has been sought, the order or judgment of the Bankruptcy Court (or any other court, as applicable) which has been affirmed by the highest court to which the order was appealed or from which the reargument, review or rehearing was sought, or certiorari has been denied, and as to which the time to take any further appeal or seek further reargument, review or rehearing has expired.

     2.49   "510(b) Claims" means any Claim against the Debtor that is subject to subordination under section 510(b) of the Bankruptcy Code.  Subject to section 10.10 of this Plan, the Claims of the Soundview Debtors, the Cayman Funds and the BVI Funds (if any) are not considered 510(b) Claims for purposes of classification of such Claims (if any).

     2.50   "510(c) Claims" means any Claim against the Debtor that is subordinated under Section 510(c) of the Bankruptcy Code pursuant to an order of the Bankruptcy Court.

     2.51   "General Unsecured Claim" means any Claim that is not (a) an Administrative Claim, (b) a Priority Claim, (c) a Priority Tax Claim, (d) a Secured Claim, (e) a 510(b) Claim, (f) a Claim that the Bankruptcy Court determines should be treated or recharacterized as an Interest, or (g) a 510(c) Claim.

     2.52   "Governmental Unit" means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

     2.53   "Holder" means a holder of a Claim or Interest.

     2.54   "Holder of Record" means, as of the Distribution Record Date, a Holder entitled to receive a distribution pursuant to the terms of this Plan.

     2.55   "Indemnified Person" means any Person who was or is made a party to or is threatened to be made a party to, or is otherwise involved in, any Proceeding by reason of the fact that such Person, or a Person for whom such Person is a legal representative, is or was the Trustee, Plan Administrator, or a member of the Advisory Board (including any Advisory Board member who becomes a member of the Advisory Board pursuant to an Amended Investor Settlement), whether in an official capacity or in any other capacity.

     2.56   "Initial Distribution" means the first distribution of Available Cash to Holders of Allowed Claims that occurs on or after the Effective Date.

     2.57   "Initial Distribution Date" means the date the Initial Distribution is made.

     2.58   "Initial Investor Recovery Percentages" means the percentage distributions on account of Pooled Claim Recoveries pursuant to the Investor Settlement, as set forth in section 8.1(b) of this Plan.

2.59     "Interest" means an "equity security," as such term is defined in section 101(16) of the Bankruptcy Code.

2.60     "Insider" means an insider as such term is defined in section 101(31) of the Bankruptcy Code.  Subject to section 10.10 of this Plan, the Soundview Debtors, the Cayman Funds and the BVI Funds are not considered Insiders for purposes of classification of their Claims (if any).

2.61     "Investor Recovery Percentages" means the Initial Investor Recovery Percentages as modified or amended by the Amended Investor Settlement.

2.62     "Investor Settlement" means the settlement agreement described in section 8.1 of the Plan.

2.63     "Investor Settlement Parties" means (a) the Trustee, (b) Arbitrage and the Arbitrage JOLs, (c) Leveraged and the Leveraged JOLs, (d) Alpha and the Alpha JOLs, and (e) the MBTARF; provided, however that if an additional Person joins the Amended Investor Settlement, such Person shall become one of the Investor Settlement Parties.

2.64     "Leveraged" means FIA Leveraged Fund, Ltd.

2.65     "Leveraged JOLs" means the Joint Official Liquidators for Leveraged, Robin McMahon and Roy Bailey of Ernst &Young LLP.

2.66     "Liquidation Recoveries" means the amounts recovered from time to time by the Trustee or Plan Administrator, as the case may be, on account of the liquidation of the Debtor's assets (including recoveries in any Proceedings), net of the costs and expenses of such recoveries; provided, however, that Liquidation Recoveries shall include, with respect to Pooled Claims, only FILB's share of the Pooled Claim Recoveries as set forth in the Investor Settlement or Amended Investor Settlement, as applicable.

2.67     "Louisiana Pension Funds" means Firefighters Retirement System, New Orleans firefighters' Pension and Relief Fund,  and Firefighters Retirement System.

2.68     "MBTARF" means Massachusetts Bay Transportation Authority Retirement Fund.

2.69     "Notice Agent" means the Person or Persons designated by an order of the Bankruptcy Court to distribute, collect and tally Ballots from Holders of Claims and Interests, which entity may be the Trustee.

2.70     "Objection Bar Date" means the later of:  (a) 60 days after the Effective Date; (b) 60 days after the filing of a proof of Claim or Interest, and (c) such other period of limitation for objecting to a Claim or Interest as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules or an order of the Bankruptcy Court.

2.71     "Operating Reserve" means such amount as is reserved for the Estate to meet its obligations as they become due (to the extent such obligations have not

otherwise been reserved for), and to prosecute all Claims, causes of action or rights of the Estate. The Operating Reserve may be increased or decreased by the Plan Administrator from time to time.

     2.72   "Paid in Full," "Payment in Full," or "Pay in Full" means, with respect to an Allowed Claim, payment in cash of the Allowed Claim.

     2.73   "Person" means any individual, corporation, partnership, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, the Trustee, the Plan Administrator, or any other entity.

     2.74   "Petition Date" means June 29, 2012.

     2.75   "Plan" means this Second Amended Plan of Liquidation.

     2.76   "Plan Administrator" means the Person designated or appointed as such under the Plan, and may be the Trustee.

     2.77   "Pooled Claims" means the Claims listed in Exhibit A to the Plan, as such Exhibit A may be amended pursuant to an Amended Investor Settlement.

     2.78   "Pooled Claim Recoveries" means all amounts received on account of Pooled Claims, net of the costs and expenses (including professional fees and expenses) of securing such recoveries.

     2.79   "Pool Interest" means the percentage interest in Pooled Claim Recoveries assigned to each party to the Investor Settlement, provided, however, that if an Amended Investor Settlement is reached, Pool Interest shall mean the percentage interest in Pooled Claim Recoveries assigned to each Investor Settlement Party.

     2.80   "Priority Claim" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or Priority Tax Claim.

     2.81   "Priority Tax Claim" means any Claim for taxes, interest and penalties against the Debtor entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

     2.82   "Proceeding" means any threatened, pending or completed action, suit, contested matter, adversary proceeding or other proceeding, whether civil, criminal, administrative or investigative.

     2.83   "Professionals" means those Persons:  (a) employed pursuant to an order of the Bankruptcy Court in accordance with sections 326, 327 and 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Effective Date pursuant to sections 326, 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for which compensation

and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(2) of the Bankruptcy Code.

2.84    "Proponent" means the Trustee.

2.85    "Pro Rata Share" means, as of the date of calculation, with respect to an Allowed Claim of any Class of Claims, a proportion equal to the ratio of:

(i)    the Allowed Claim to

(ii)    the sum of:

(1)    the aggregate of all Allowed Claims of that particular Class as of such date; plus

(2)    the aggregate of all Claims in that particular Class as set forth in the Estimation Order (except to the extent that such Claims have been expunged or otherwise disallowed in full) that are not described in clause (1) above, on such date.

For purposes of calculating the Pro Rata Shares for Distributions to Holders of Allowed Class 3 Claims and Allowed Class 4 Claims, total Class 3 and Class 4 Allowed Claims shall be aggregated.

2.86    "Richcourt Funds" means Richcourt Holding, Inc., Soundview Elite Ltd., Soundview Premium, Ltd., Soundview Star Ltd., Elite Designated, Premium Designated, and Star Designated, Richcourt Euro Strategies Inc., Optima Absolute Return Fund Ltd., Richcourt Allweather Fund Inc., America Alternative Investments Inc., Richcourt Composite Inc., and Richcourt Allweather B Inc., New Wave Fund SPC, Pitagora Fund Ltd., Richcourt Top Stars Fund, and Soundview Composite, Ltd., and all entities for which Pitagora Capital Management, Ltd., New Wave Asset Management, Ltd., Richcourt Capital Management, Inc., Soundview Capital Management, Ltd., Richcourt (Monaco) SAM, Richcourt Suisses (S.A.), Richcourt (Luxembourg) S.A., or Richcourt Group S.A. served as investment manager.

2.87    "Scheduled" means set forth in the Schedules.

2.88    "Schedules" means each of the Schedules of Liabilities and Statement of Affairs, respectively, filed by the Debtor on or about September 24, 2013, as they have been or may hereafter be amended from time to time.

2.89    "Secured Claim" means that portion of a claim against the Debtor that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtor in and to property of the Debtor's Estate to the extent of the value of the Holder's interest in such property as of the relevant determination date; or (b) subject to setoff under section 553 of the Bankruptcy Code, to the extent of the amount subject to setoff, each as determined by sections 506(a) and 1111(b) of the Bankruptcy Code and Bankruptcy Rule 3012.

2.90        "75-Day Period" shall have the meaning ascribed to it in Section 10.10 hereof.  The 75-Day Period may be extended (a) by the Bankruptcy Court for compelling circumstances upon request of the Soundview Trustee or the BVI Funds made during or after the 75-Day Period, (b) by agreement of the Trustee or (c) as provided in section 10.11 hereof.

2.91        "Soundview Debtors" means Soundview Elite Ltd., Soundview Premium, Ltd., Soundview Star Ltd.; Elite Designated; Premium Designated; and Star Designated.

2.92        "Soundview Parties" means collectively the Soundview Debtors and the Soundview Trustee, subject to Section 10.11 hereof.

2.93        "Soundview Trustee" means Corinne Ball, Esq., in her capacity as chapter 11 trustee of the Soundview Debtors.

2.94        "Unclaimed Property" means any Cash unclaimed on or after the twelfth month following the applicable Distribution Date.  Unclaimed Property shall include: (a) checks (and the funds represented thereby) mailed to a Holder of Record and returned as undeliverable without a proper forwarding address; (b) uncashed checks (and the funds represented thereby); or (c) checks (and the funds represented thereby) not mailed or delivered to a Holder of Record because no address was available to which to mail or deliver such property.

## ARTICLE III

### CLASSIFICATION OF CLAIMS
### AND INTERESTS AND GENERAL PROVISIONS

3.1        General Rules of Classification.  Generally, a Claim or Interest is classified in a particular Class for voting and distribution purposes only to the extent the Claim or Interest qualifies within the description of that Class, and is classified in another Class or Classes to the extent the Claim or Interest qualifies within the description of such other Class or Classes.  Unless otherwise provided, to the extent a Claim or Interest qualifies for inclusion in a more specifically defined Class and a more generally defined Class, it shall be included in the more specifically defined Class.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

3.2        Administrative Claims and Priority Tax Claims.  Administrative Claims and Priority Tax Claims have not been classified and are excluded from the Classes set forth in Article IV in accordance with section 1123(a)(1) of the Bankruptcy Code.

3.3        Satisfaction of Claims and Interests.  The treatment to be provided for respective Allowed Claims or Allowed Interests pursuant to this Plan shall be in full satisfaction, settlement, release and discharge of such respective Allowed Claims or Allowed Interests.

3.4        Bar Date for Administrative Claims.  Proofs of Administrative Claims and requests for payment of Administrative Claims which have arisen on or after the

-10-

Petition Date must be filed and served on the Trustee (and the Plan Administrator after the Effective Date), pursuant to the procedures set forth in the Administrative Bar Date Order. Objections to proofs of Claim or applications for payment of Administrative Claims must be filed and served on the Trustee (and the Plan Administrator after the Effective Date) and the applying party by the later of:  (a) one (1) day prior to the Initial Distribution Date, and (b) 60 days after the Filing of the applicable proof of Claim or request for payment of Administrative Claim, unless otherwise ordered or extended by the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no proof of Claim or application for payment of an Administrative Claim need be filed for the allowance of any:  (a) Administrative Claims constituting a Fee Claim (except as provided in Section 3.5 below); or (b) fees of the United States Trustee arising under 28 U.S.C. § 1930.  All Claims described in clause (b) of the immediately preceding sentence shall be paid by the Estate when due.  Fee Claims shall be paid in accordance with Section 3.5 below.  The Trustee and, after the Effective Date, the Plan Administrator may extend the Administrative Bar Date without further order of the Bankruptcy Court.

        3.5        Bar Date for Fee Claims.  Any Person or entity (including a Professional) that fails to file a proof of Claim, application or compensation estimate on account of a Fee Claim as and to the extent required by the Bankruptcy Court shall be forever barred from asserting such Claim against the Debtor, the Estate, or their property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Claim.

## ARTICLE IV

## CLASSIFICATION OF CLAIMS AND INTERESTS

        All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the following Classes.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the following Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the claim or Interest qualifies within the description of such other Classes.

| Class | Name | Description |
|---|---|---|
| 1 | Other Priority Claims | Claims entitled to priority in payment under Section 507(a)(4),(5),(6),(7),(9) or (10) of the Bankruptcy Code. |
| 2 | Secured Claims | Claims secured by a valid, perfected and enforceable lien. |
| 3 | General Unsecured Claims | All general unsecured claims other than claims in Classes 4A, 4B, 4C, 4D, 5, and 6, which are separately described below. |
| 4A | Claims of Arbitrage and the Arbitrage JOLs | Claims held by Arbitrage and the Arbitrage JOLs.  Note:  Will not include Investor Settlement Parties' or investors' legal fees and other expenses. |
| 4B | Claims of Leveraged and the Leveraged JOLs | Claims held by Leveraged and the Leveraged JOLs.  Note: Will not include Investor Settlement Parties' and investors' legal fees and other expenses. |
| 4C | Claims of Alpha and the Alpha JOLs | Claims held by Alpha and the Alpha JOLs. Note:  Will not include Investor Settlement Parties' and investors' legal fees and other expenses. |
| 4D | Claims of the Louisiana Pension Funds | Claims held by the LA Pension Funds.  Note: Will not include Investor Settlement Parties' and investors' legal fees and other expenses. |
| 5 | Insider Claims | Claims held by Insiders of the Debtor. |
| 6 | Intercompany Claims | Claims held by Affiliates of the Debtor other than Claims in Classes 4A, 4B, 4C and 4D. |

**ARTICLE V**

**TREATMENT OF UNCLASSIFIED CLAIMS AND
UNIMPAIRED CLASSES OF CLAIMS AND INTERESTS**

5.1      Treatment of Allowed Administrative Claims.  Unless otherwise provided for in this Plan, each Holder of an Allowed Administrative Claim shall be paid by the Debtor 100% of the unpaid allowed amount of such Administrative Claim in Cash on or as soon as reasonably practicable after the later of:  (a) the Effective Date; and (b) the first Business Day after the date that is 30 calendar days after the date such Administrative Claim becomes an Allowed Administrative Claim.  Notwithstanding the immediately preceding sentence, (y) Administrative Claims for services rendered representing liabilities incurred by the Estate in the ordinary course of business during the Case, subject to compliance with any applicable bar date, shall be paid in accordance with the terms and conditions of any agreements relating thereto; and (z) the Holder of an Allowed Administrative Claim may receive such other, less favorable treatment as may be agreed upon by the Holder and the Trustee or the Plan Administrator.

-12-

5.2          Treatment of Allowed Priority Tax Claims.  Each Holder of an Allowed Priority Tax Claim shall be paid, at the sole option of the Trustee or  Plan Administrator, by the Debtor (a) equal cash payments made on the last Business Day of every three month period following the Effective Date, over a period not exceeding six years after the assessment of the tax on which such Claim is based, totaling the principal amount of such Claim plus simple interest on any outstanding balance from the Effective Date, calculated at the interest rate available on 90 day United States Treasuries on the Effective Date; (b) such other treatment authorized by the Bankruptcy Court; or (c) 100% of the unpaid amount of such Allowed Claim in Cash on or as soon as reasonably practicable after the later of:  (i) the Effective Date, and (ii) the first Business Day after the date that is 30 calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim.  Any Claim or demand for penalty shall be disallowed pursuant to the Plan, and the Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtor, the Estate or its property.

5.3          Treatment of Other Priority Claims (Class 1).

(a)     Class 1 is unimpaired under the Plan.  Unless otherwise agreed to by the Holder of an Allowed Other Priority Claim and the Trustee or the Plan Administrator, each Holder of an Allowed Priority Claim shall be paid 100% of the unpaid amount of such Allowed Claim in Cash on or as soon as reasonably practicable after the later of:  (a) the Effective Date, or (b) the first Business Day after the date that is 30 calendar days after the date such Priority Claim becomes an Allowed Priority Claim.

(b)     Holders of Allowed Class 1 Claims shall be deemed to have accepted the Plan.

5.4          Treatment of Allowed Secured Claims (Class 2).

(a)     Class 2 is unimpaired under the Plan.  To the extent not previously satisfied in full pursuant to a Final Order of the Bankruptcy Court allowing such Claim, the Holder of an Allowed Secured Claim shall receive Cash in the full amount of such Allowed Secured Claim on or as soon as reasonably practicable after the later of (i) the Effective Date; or (ii) the first Business Day after the date that is 30 calendar days after the date such Secured Claim becomes an Allowed Secured Claim.

(b)     Holders of Allowed Class 2 Claims shall be deemed to have accepted the Plan.

## ARTICLE VI

## TREATMENT OF IMPAIRED CLASSES OF ALLOWED CLAIMS AND INTERESTS

Except as otherwise ordered by the Bankruptcy Court, Holders of impaired Claims and Interests shall be entitled to vote to accept or reject the Plan.  The Trustee reserves the right to seek a determination that one or more of the following Classes are unimpaired.  If the Bankruptcy Court determines that such Class is unimpaired, such Class shall be deemed to have accepted the Plan regardless of how the Class voted.

| Class | Name | Treatment |
|-------|------|-----------|
| 3 | General Unsecured Claims | Each holder of an Allowed General Unsecured Claim will have the option of receiving (i) a Pro Rata Share of the Liquidation Recoveries or (ii) cash in full payment for its Allowed Claim of $10,000 or less. |
| 4A | Claims of Arbitrage and the Arbitrage JOLs | The Claims held by Arbitrage and the Arbitrage JOLs will be compromised, settled and allowed in the amount of $110 million, in accordance with the Investor Settlement. Arbitrage and the Arbitrage JOLs will receive (a) their Pool Interest in the Pooled Claim Recoveries and (b) a Pro Rata Share of the Liquidation Recoveries. |
| 4B | Claims of Leveraged and the Leveraged JOLs | The Claims held by Leveraged and the Leveraged JOLs will be compromised, settled and allowed in the amount of $5 million, in accordance with the Investor Settlement.  Leveraged and the Leveraged JOLs will receive (a) their  Pool Interest in the Pooled Claim Recoveries and (b) a Pro Rata Share of the Liquidation Recoveries. |
| 4C | Claims of Alpha and the Alpha JOLs | The Claims held by Alpha and the Alpha JOLs will be compromised, settled and allowed in the amount of $1.6 million, in accordance with the Investor Settlement. Alpha and the Alpha JOLs will receive (a) their Pool Interest in the Pooled Claim Recoveries and (b) a Pro Rata Share of the Liquidation Recoveries. |
| 4D | Claims of the Louisiana Pension Funds | Claims of the Louisiana Pension Funds will be allowed in the amount of $3 million, provided that the Louisiana Pension Funds' vote to accept the Plan.  If the Louisiana Pension Funds vote to accept the Plan, they will receive a Pro Rata Share of the Liquidation Recoveries.  If the Louisiana Pension Funds do not vote to accept the Plan, their Claim shall be listed as disputed and shall be determined by the Bankruptcy Court. The Louisiana Pension Funds will have no interest in the Pooled Claim Recoveries other than in FILB's share thereof that is part of the Liquidation Recoveries. |

| Class | Name | Treatment |
|---|---|---|
| 5 | Insider Claims | Unless otherwise agreed by the Trustee or ordered by the Bankruptcy Court, all Insider claims will be subordinated, cancelled, or extinguished. |
| 6 | Intercompany Claims | Unless otherwise agreed by the Trustee or ordered by the Bankruptcy Court, all Intercompany Claims other than claims in Classes 4A, 4B, 4C and 4D will be subordinated, cancelled, or extinguished. |
| Equity | Equity Interests | All Equity Interests in the Debtor will be subordinated, cancelled, or extinguished.  To the extent not cancelled or extinguished, Equity Interests shall not receive a distribution until all Allowed Claims have been satisfied in full. |

## ARTICLE VII

## PLAN CONSUMMATION

In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means of implementing and consummating the Plan.

7.1     Funding of Reserves.  To the extent not otherwise provided for herein or ordered by the Bankruptcy Court, the Trustee or the Plan Administrator, as the case may be, shall estimate appropriate reserves of Cash to be set aside in order to pay or reserve for the payment of actual expenses and liabilities of the Estate after the Effective Date and expenses which accrued prior to the Effective Date, including Fee Claims, Administrative Claims, Priority Claims, Priority Tax Claims and Secured Claims.  Subject to the terms and conditions hereof, the Plan Administrator shall release Available Cash, to the extent available, to fund distributions.

7.2     No Segregation of Available Cash.  The Trustee or Plan Administrator, as the case may be, shall not be obligated to physically segregate and maintain separate accounts for reserves.  Reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Plan Administrator to determine Available Cash and amounts to be paid to Holders.

7.3     Post Consummation Management.

(a)     Plan Administrator.

(i)     Appointment.  The Trustee shall be retained as the Plan Administrator pursuant to the terms set forth in this Plan.  The Trustee shall be deemed discharged as of the Effective Date.

-15-

(ii)    Powers.  On the Effective Date, and except to the extent otherwise ordered by the Bankruptcy Court, the Plan Administrator shall be deemed the sole Interest Holder (for all purposes other than with respect to the rights of Interest Holders established under the Plan), officer and director of the Debtor.  Subject to those rights and duties specifically reserved to the Advisory Board under the Plan, the Plan will be administered and actions will be taken in the name of the Debtor through the Plan Administrator, irrespective of whether the Debtor is dissolved.  In general, the Plan Administrator shall act for the Debtor and the Estate in a fiduciary capacity as applicable to a board of directors, subject to the provisions hereof.  Subject to the rights and duties specifically reserved to the Advisory Board under the Plan, the duties and powers of the Plan Administrator with respect to the Debtor shall include the following:

(1)    To exercise all power and authority that may be exercised, commence all Proceedings that may be commenced and take all actions that may be taken, by any officer, director or Interest Holder of the Debtor with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and Interest Holder, including, without limitation, the amendment of the certificate of incorporation, by-laws or other applicable organizational document of the Debtor and the dissolution of the Debtor;

(2)    To take all reasonable steps to maximize Liquidation Recoveries including, without limitation, commencing, settling or otherwise resolving all Claims;

(3)    To continue to maintain accounts, make distributions and take other actions consistent with the Plan, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Debtor, even in the event of the dissolution of the Debtor;

(4)    To collect and liquidate all assets of the Debtor and the Estate, make distributions and wind-up the affairs of the Debtor;

(5)    To make decisions regarding the retention or engagement of professionals and consultants by the Estate, including a Disbursing Agent, and to pay their fees and expenses;

(6)    To take such steps to safeguard Estate funds or investments as the Plan Administrator, in his discretion, deems prudent; and

(7)    To take such other actions as provided in the Amended Investor Settlement; and

(8)    To take all other actions not inconsistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable with respect to administering the Plan.

(iii)    Compensation and Reimbursement.  The Plan Administrator shall be compensated as follows:

-16-

(1)    The Plan Administrator will charge will the same discounted hourly rate charged by the Trustee during the Bankruptcy.

(2)    The Plan Administrator will cap his fees at $30,000 a month, subject to provisions (3)-(5) set forth below.

(3)    If total Liquidation Recoveries and Pooled Claim Recoveries exceed $50 million, the Plan Administrator will be entitled to receive payment for all hours for which he was not compensated due to the cap.

(4)    If total Liquidation Recoveries and Pooled Claim Recoveries exceed $125 million in the aggregate, the Plan Administrator will be entitled receive an additional payment equal to 25 % of the total amount of billed time based upon the Trustee's ordinary hourly rate.

(5)    The Plan Administrator will be reimbursed for all out-of-pocket expenses.

(6)    The Plan Administrator's compensation may be amended by the Advisory Board or by an Amended Investor Settlement.

(b)    Advisory Board.

(i)    Appointment.  The Advisory Board shall be constituted on the Effective Date in accordance with section 1129 of the Bankruptcy Code and shall consist of three members:  the Trustee, as Plan Administrator, and on behalf of FILB; Tammy Fu, of Zolfo Cooper, on behalf of the MBTARF and Alpha; and Robert McMahon, of Ernst & Young, on behalf of Leveraged and Arbitrage.  If the Louisiana Pension Funds become one of the Investor Settlement Parties, then they shall be entitled to appoint one representative to the Advisory Board.  Decisions of the Advisory Board require (x) the affirmative votes of at least two of its three members or, (y) if a fourth member is added as provided in this Plan, then decisions of the Advisory Board shall require the affirmative votes of at least three of its four members, or (z) the affirmative votes as provided in an Amended Investor Settlement.

(ii)    Powers.  All Claims and causes of action of the Estate (including Pooled Claims) that have not been resolved prior to the Effective Date shall not be prosecuted, settled, or otherwise resolved without the approval of the Advisory Board.  Additional powers may be granted to the Advisory Board in the Amended Investor Settlement.

(iii)    Advisory Board Bylaws.  The Advisory Board shall adopt and operate in accordance with the Advisory Board Bylaws.

(iv)    Reimbursement.  Each member of the Advisory Board shall be entitled to reimbursement for all reasonable out of pocket expenses incurred in the discharge of their duties as members of the Advisory Board.

-17-

    (v)  Nomination of Successors.  In the event that a member of the Advisory Board resigns or becomes otherwise unable to serve, the party that nominated such nominee or member shall have the right to nominate such nominee or member's replacement; provided, however, that as of the Effective Date, the Plan Administrator shall succeed to the rights and obligations of the Trustee under this Section.

    (c)  Bankruptcy Court Approval.  On and after the Effective Date, and unless otherwise ordered by the Bankruptcy Court, (i) the Plan Administrator and members of the Advisory Board may receive the compensation or reimbursement of expenses provided for under the Plan without further order of the Bankruptcy Court; and (ii) the Plan Administrator and the Advisory Board may retain or engage professionals and consultants on behalf of the Debtor, and pay the expenses and fees of such professionals and consultants, without further Bankruptcy Court approval.  Prior to making Final Distributions, the Plan Administrator shall be entitled to seek an order of the Bankruptcy Court providing for a final accounting and a release and discharge of the Plan Administrator.

    7.4  Budget.  The Plan Administrator shall prepare budgets at least semi-annually, based on anticipated revenues and expenses, and shall submit the budgets to the Advisory Board for approval.

    7.5  Investments.  All Cash and Available Cash shall be invested in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by the Bankruptcy Court.

    7.6  Indemnification and Insurance.

    (a)  To the full extent permitted under applicable law, the Estate shall indemnify and hold harmless any Indemnified Person who was or is made a party or is threatened to be made a party to, or is otherwise involved in, any Proceeding or any appeal in such a Proceeding or any inquiry or investigation that could lead to such a Proceeding against any and all expenses, liability and loss (including attorneys' fees, judgments, excise and similar taxes and punitive damages, fines or penalties and amounts paid in settlement) actually incurred or suffered by him or her in connection with the investigation, defense, appeal or settlement of any such Proceeding, provided that such Indemnified Person acted in good faith and in a manner the Indemnified Person reasonably believed to be in, or not opposed to, the best interests of the Estate and, with respect to any criminal action or proceeding, had no reasonable cause to believe his or her conduct was unlawful.  The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Indemnified Person did not act in good faith and in a manner which is reasonably believed to be in or not opposed to the best interests of the Estate or, with respect to any criminal action or proceeding, that the Indemnified Person had reasonable cause to believe that the conduct was unlawful.

-18-

(b)     The right to indemnification conferred in this section 7.6(b) shall be a contractual right, and shall include the right to be paid or reimbursed by the Estate for any expenses incurred in investigating, defending, appealing or settling, being a witness in or participating in any such Proceeding in advance of the final disposition of such Proceeding and without any determination as to the Indemnified Person's ultimate entitlement to indemnification.  Expenses (including attorneys' fees) incurred by an Indemnified Person in defending a Proceeding shall be paid by the Estate in advance of the final disposition of such proceeding upon receipt of a written undertaking, by or on behalf of such Indemnified Person, to repay all amounts so advanced if it shall ultimately be determined that he or she is not entitled to be indemnified by the Estate under this section 7.6(b) or otherwise.

(c)     Subject to approval of the Bankruptcy Court, the Plan Administrator and the Advisory Board are authorized to purchase commercially reasonable liability insurance respecting the implementation of their duties and obligations under this Plan.

7.7     Resignation, Death or Removal.  The Plan Administrator may resign at any time upon written notice to the United States Trustee and the Bankruptcy Court.  In the event of any such resignation, or the death or incapacity of a Plan Administrator, the Bankruptcy Court shall select a replacement.  No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his predecessors.  Every successor Plan Administrator appointed pursuant hereto shall execute, acknowledge and deliver to his predecessor and to the Debtor an instrument in writing accepting such appointment hereunder, and thereupon such successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his predecessor.

7.8     Reports.  Unless otherwise ordered by the Bankruptcy Court, the Plan Administrator shall file semi-annual status reports until such time as the Case has been closed.  The Plan Administrator shall not be required to file monthly operating reports.

7.9     No Revesting of Assets.  Except as is otherwise expressly provided herein, on the Effective Date, title to all property and assets of the Estate including, without limitation, any Claims, rights and causes of action of the Debtor and the Estate and any moneys held in escrow or separate segregated accounts during the pendency of the Case, shall not revest in the Debtor, shall not be released or waived and shall remain property of the Estate.

7.10     Exoneration.  To the full extent permitted under applicable law, neither the Trustee, the Plan Administrator, nor the members of the Advisory Board (including any additional members added pursuant to an Amended Investor Settlement) nor any of their agents, Professionals, attorneys, financial advisors, accountants, or other professionals employed by any of them, shall have or incur any liability to any Person for any act taken or omission occurring in good faith in connection with or related to (a) formulating, implementing, confirming or consummating the Plan (including soliciting acceptances or rejections thereto); (b) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into in connection with the Plan; or (c) any distributions made pursuant to the Plan,

-19-

except for acts constituting willful misconduct or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  The entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that such parties shall have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to section 1125(e) and 1129(a)(3) of the Bankruptcy Code, with respect to the foregoing.

7.11    Setoffs.  Except as otherwise provided in the Plan, agreements entered into in connection therewith (including the Amended Investor Settlement), the Confirmation Order, or in agreements previously approved by Final Order of the Bankruptcy Court, the Plan Administrator may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, offset against the distribution on any Allowed Claim or Allowed Interest, before any distribution is made on account of such Claim or Interest, any and all of the Claims, rights and causes of action of any nature that the Debtor or Estate may hold against the Holder of such Claim or Interest; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action or omission of the Trustee or Plan Administrator, nor any provision of this Plan, shall constitute a waiver or release by the Debtor, the Estate, the Trustee or Plan Administrator of any such Claims, rights and causes of action that the Debtor or the Estate may possess against such Holder.  To the extent the Trustee or Plan Administrator fails to set off against a Holder and seeks to collect a Claim from such Holder after a distribution is made pursuant to the Plan, the Plan Administrator shall be entitled to full recovery on the Claim against such Holder.

7.12    Avoidance Actions.  Except as expressly set forth in the Plan, Confirmation shall not constitute the waiver of any right, Claim or cause of action belonging to the Debtor or its Estate against any Person, including, but not limited to, any right, Claim or cause of action respecting the avoidance of a transfer under section 544, 547, 548, 549 or 553(b) of the Bankruptcy Code or otherwise described or referenced in the Disclosure Statement.  All such rights, Claims and causes of action shall remain property of the Estate under the Plan.

7.13    Maintenance of Principal Office of FILB.

(a)    FILB retains the right to maintain its principal offices in Bermuda which may perform the functions described in Treas. Reg. sec. 1.864-2(c)(2)(iii), including but not limited to, maintenance of its principal corporate records and books of account, auditing its books of accounts, disbursements of dividends, certain legal and accounting fees, directors' fees, if any, conducting meetings of its shareholders and board of directors, and making redemptions and distributions with respect to its stock.  In the event that the Plan Administrator has custody of any funds of FILB which would be distributable to the shareholders of such corporation, the Plan Administrator retains the right to remit such funds to the corporation's principal office for distribution to such shareholders.

(b)    FILB and each of its respective directors and shareholders hereby acknowledges and confirms that, notwithstanding any agreement or understanding to the contrary, the Plan Administrator and the Advisory Board shall have such power and authority, as set forth in the Plan, to prosecute, settle or otherwise resolve any and all

-20-

Claims and causes of action on behalf of and in the name of FILB, and the Plan Administrator and the Advisory Board shall take any other action required or appropriate in connection with the Plan.

## ARTICLE VIII

## CLAIMS LITIGATION AND SETTLEMENTS

8.1        Investor Settlement.

(a)        The Investor Settlement Parties have entered into the Investor Settlement pursuant to which they have agreed to pool their respective rights, title and interest in and to the Pooled Claims, and to cooperate with the Trustee, the Plan Administrator, and the Advisory Board with respect to the prosecution, settlement or other resolution of the Pooled Claims.  A list of the Pooled Claims is attached as Exhibit A.  The Investor Settlement also resolves the claims of the Investor Settlement Parties with respect to one another, fixes the amounts of their allowed proof of Claim against FILB, and provides for the modification of their proofs of Claim as may be necessary to conform them to the terms of the Investor Settlement.  (The amounts of their allowed Claims are set forth in Article VI of the Plan.)  The Investor Settlement Parties will cooperate fully in the assessment and prosecution of the Pooled Claims and will share investigative materials to the extent allowed by any common interest agreements and applicable court orders.

(b)        Recoveries on account of Pooled Claims will be used first, to pay recovery costs, including attorney's fees and other professional fees; second, to reimburse FILB for any advances of recovery costs made by it; third, to fund the Operating Reserve; and fourth, to the  Investor Settlement Parties, in accordance with Initial Investor Recovery Percentages,  as follows:

(i)        26.8% to the Estate, for distribution in accordance with the Plan;

(ii)        26.8% to the Arbitrage JOLs to be distributed in accordance with the orders entered in Arbitrage's liquidation proceedings in the Cayman Islands;

(iii)        26.8% to the Leveraged JOLs to be distributed in accordance with the orders entered in Leveraged's liquidation proceedings in the Cayman Islands; and

(iv)        19.6% to the Alpha JOLs to be distributed in accordance with the orders entered in Alpha's liquidation proceedings in the Cayman Islands.

(c)        The Initial Investor Recovery Percentages set forth in section 8.1(b) hereof may be amended or modified at any time.  If the Initial Investor Recovery Percentages are modified or amended prior to the Effective Date, any such modification or amendment will require (i) the consent of any adversely affected party or (ii) order of

-21-

the Bankruptcy Court, after notice and a hearing.  If the Initial Investor Recovery Percentages are modified or amended after the Effective Date, such modification or amendment will require (i) the unanimous consent of the Advisory Board or (ii) an order of the Bankruptcy Court, after notice and a hearing.

(d)    The Investor Settlement will be presented to the Bankruptcy Court for approval as part of Confirmation.

8.2    Amended Investor Settlement.

(a)    Notwithstanding anything in the Investor Settlement or this Plan to the contrary, the Trustee or the Plan Administrator (subject to approval as may be required pursuant to Section 7.3(a)(ii) of the Plan), as the case may be, may decide to enter in an Amended Investor Settlement with additional Investor Settlement Parties, including without limitation (i) the Soundview Debtors, whose participation would be subject to Bankruptcy Court approval in the Soundview Debtors' chapter 11 cases, captioned 13-13098 (REG) or (ii) the BVI Funds as an additional Investor Settlement Party.

(b)    In the event the Trustee or Plan Administrator, as the case may be, decides to pursue such Amended Investor Settlement with any potential additional Investor Settlement Party, he shall negotiate in good faith with such party including with regard to (i) the Pooled Claims, (ii) the Investor Recovery Percentages, and (iii) the duties and responsibilities of the Trustee or Plan Administrator and the Advisory Board and (iv) the additional Investor Settlement Party providing financing to support the prosecution and litigation of the Pooled Claims.

(c)    Subject to section 8.2(d) hereof, no new member may be added to the Investor Settlement without the unanimous consent of the Advisory Board and, if necessary, order of the Bankruptcy Court.  If unanimous consent of the Advisory Board cannot be obtained, a new member may be added to the Investor Settlement by order of the Bankruptcy Court, after notice and a hearing.

(d)    The Trustee or Plan Administrator, as the case may be, will not enter into an Amended Investor Settlement during the initial (i.e., unextended) 75-Day Period without Bankruptcy Court approval, but may thereafter enter into an Amended Investor Settlement unless otherwise ordered by the Bankruptcy Court.

(e)    The Trustee or Plan Administrator, as the case may be, will file with the Bankruptcy Court a notice setting forth the effective date of any Amended Investor Settlement.

8.3    Insider Claims, Affiliate Claims, Equity Interests.  For the reasons set out in the Disclosure Statement, the Trustee objects to all Claims by Insiders and Affiliates, except (a) those asserted by Holders of Class 4A, 4B, 4C and 4D and (b) as may be provided in an Amended Investor Settlement, and to Equity Interests.  The Trustee will seek to subordinate or disallow all such Claims and Interests as part of the Confirmation.

8.4                Incorporation of Settlements.  The terms of the Investor Settlement, as it may be amended by the Amended Investor Settlement, shall be deemed incorporated into and made a part of the Plan as if set forth in full.

8.5                Compromise of Controversies.  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan, including the Investor Settlement or the Amended Investor Settlement as the case may be.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each such compromise or settlement, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, and any Person holding Claims against the Debtor, and are fair, equitable and within the range of reasonableness.

## ARTICLE IX

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1                Assumption or Rejection of Executory Contracts and Unexpired Leases.  On the Effective Date, all executory contracts and unexpired leases of the Debtor shall be rejected pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except:  (i) any executory contract or unexpired lease that is the subject of a separate motion to assume filed pursuant to section 365 of the Bankruptcy Code before the entry of the Confirmation Order, which motion is not thereafter withdrawn or denied; (ii) all executory contracts or unexpired leases assumed by order of the Bankruptcy Court entered before the Confirmation Date and not subsequently rejected pursuant to an order of the Bankruptcy Court; or (iii) any agreement, obligation, security interest, transaction or similar undertaking that the Trustee or Plan Administrator, as the case may be, believes is not an executory contract or lease that is later determined by the Bankruptcy Court to be an executory contract or unexpired lease under section 365 of the Bankruptcy Code, which agreements shall be subject to assumption or rejection within 30 days of any such determination. Any order entered after the Confirmation Date by the Bankruptcy Court, after notice and hearing, authorizing the rejection of an executory contract or unexpired lease even if such rejection takes place after the Effective Date as provided above, shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief were granted and such order were entered prior to the Confirmation Date.

9.2                Bar Date for Rejection Damages.  Any Claim arising from the rejection of any executory contract or unexpired lease under the Plan shall be forever barred and shall not be enforceable against the Debtor or the Estate unless a proof of Claim is filed and served on the Plan Administrator and the Trustee within 30 days after the date of notice of the entry of the order of the Bankruptcy Court rejecting the executory contract or unexpired lease (which may include, if applicable, the Confirmation Order) or such other date established by the Bankruptcy Court.

## ARTICLE X

## WAIVERS, RELEASES AND INDEMNIFICATION

10.1     Waiver of Claims.  As of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as otherwise expressly provided in the Confirmation Order or this Plan, including, without limitation, sections 10.6, 10.7, 10.8, 10.9, 10.10, and 10.11 hereof, to the full extent permitted by applicable law, all Persons who have held, hold or may hold Claims against or Interests in the Debtor shall be deemed, by virtue of their receipt of distributions and other treatment contemplated under the Plan, to have forever covenanted with the Debtor and the Trustee and with each of their present agents, employees, representatives, financial advisors, accountants and attorneys, to waive and not to (a) sue, or otherwise seek any recovery from the Debtor, the Estate, or the Trustee, or any of their present agents, employees, representatives, financial advisors, accountants or attorneys, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, based upon any act or occurrence or failure to act taken before the Effective Date arising out of the business or affairs of the Debtor, or (b) assert any Claim, obligation, right or cause of action and liability which any such Holder of a Claim against or Interest in the Debtor may be entitled to assert against any such Person, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transaction or occurrence taking place on or before the Effective Date in any way relating to the Debtor, this Case, or this Plan.

10.2     Releases.  As of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as otherwise expressly provided in the Confirmation Order or this Plan, including, without limitation, sections 10.6, 10.7, 10.8, 10.9, 10.10, and 10.11 hereof, to the full extent permitted by applicable law, all Persons who, directly or indirectly, hold or who have held any Claim against or Interest in the Debtor shall hereby release the Debtor, the Estate, the Trustee, and their present employees, agents, representatives, financial advisors, attorneys and accountants from (a) any and all claims or liabilities arising from actions taken in their capacity as such; and (b) any and all Claims, obligations, rights, causes of action and liabilities which any Holder of a Claim against or Interest in the Debtor may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transaction or occurrence taking place on or before the Effective Date in any way relating to the Debtor, this Case, or this Plan.

10.3     Injunction.  Except as otherwise provided in this Plan or the Confirmation Order, including, without limitation, sections 10.6, 10.7, 10.8, 10.9, 10.10, and 10.11 hereof, and subject  to the occurrence of the Effective Date, to the full extent permitted by applicable law, all Persons who have held, hold or may hold Claims against or Interests in the Debtor are, with respect to any such Claims or Interests, permanently enjoined from and after the Confirmation Date from:  (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Estate, or the Trustee, or any of their property, or any direct successor in interest to the Debtor or the Estate, or any property of any such successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order

against the Debtor, the Estate, or the Trustee, or any of their property, or any direct successor in interest to the Debtor or the Estate, or any property of any such successor; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate, or the Trustee, or any of their property, or any direct successor in interest to the Debtor or the Estate; (d) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the Estate, or the Trustee, or any of their property, or any direct successor in interest to the Debtor or the Estate; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

       10.4       Indemnification.  Notwithstanding anything to the contrary in this Plan, the obligations of the Debtor and its Estate to indemnify the Trustee or the professional persons retained by the Trustee, pursuant to the Debtor's certificate of incorporation, by-laws, or other organizational documents, applicable statutes, and preconfirmation agreements respecting all present and future actions, suits, and proceedings against any of such indemnified Persons, based upon any act or omission related to service with, for, or on behalf of such Debtor at any time, as such obligations were in effect at the time of any such act or omission, in all cases net of applicable insurance proceeds, shall not be discharged or impaired by confirmation or consummation of the Plan but shall survive unaffected by the confirmation and consummation of the Plan to the full extent permitted by applicable law.

       10.5       Exculpation.

       (a)       The Trustee, the Plan Administrator, the members of the Advisory Board (including any additional members added pursuant to an Amended Investor Settlement) and the professional persons retained by them, to the full extent permitted by applicable law, shall have no liability to any Holder of a Claim against or Interest in the Debtor for any act or omission in connection with or arising out of their administration of the Plan or the property to be distributed under the Plan except for willful misconduct or gross negligence and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

       (b)       Following entry of the Confirmation Order, the Bankruptcy Court shall retain exclusive jurisdiction to consider any and all claims against any of the exculpated parties referenced in clause (a) above involving or relating to the administration of this Case, any rulings, orders, or decisions in this Case or any aspects of this Case, including the decision to commence this Case, the development and implementation of this Plan, the decisions and actions taken during this Case, and any asserted claims based upon or related to prepetition obligations or equity interests administered in this Case for the purpose of determining whether such claims belong to the Estate or third parties.  In the event it is determined that any such claims belong to third parties, then, subject to any applicable subject matter jurisdiction limitations, the Bankruptcy Court shall have exclusive jurisdiction with respect to any such litigation, subject to any determination by the Bankruptcy Court to abstain and consider whether such litigation should more appropriately proceed in another forum.

10.6        Existing or Future Claims – FILB, Investment Settlement Parties, and the Louisiana Pension Funds.  Notwithstanding anything to the contrary in the Confirmation Order or this Plan, including without limitation in sections 10.1, 10.2, or 10.3 hereof, the waiver of claims, releases and injunctions provided for herein shall not operate to waive, release, enjoin or in any way determine or limit any claims, including any claims as to quantum or measure of damages, of the Trustee, the Estate, the Investor Settlement Parties, or the Louisiana Pension Funds against any person or entity other than against the Debtor, the Estate, and the Trustee.

10.7        Existing or Future Claims – Soundview Parties and BVI Funds.  Notwithstanding anything to the contrary in the Confirmation Order or this Plan, including without limitation in sections 10.1, 10.2, or 10.3 hereof, the waiver of claims, releases and injunctions provided for herein shall not operate to waive, release, enjoin or in any way determine or limit (a) any claims, including any claims as to quantum or measure of damages, of the Soundview Parties or the BVI Funds against any person or entity other than the Debtor, the Estate, and the Trustee; (b) the right of the Soundview Parties and the BVI Funds to object to any claims or distributions or to any other action in the Leveraged or Arbitrage liquidation proceedings; and (c) any Administrative Claims of the Soundview Debtors or the BVI Funds.

10.8        Defenses, etc..  Notwithstanding anything to the contrary in the Confirmation Order or this Plan, including without limitation in sections 10.1, 10.2, or 10.3 hereof, in the event any suit, action or Proceeding is brought against the Soundview Parties or the BVI Funds as a result of such suit, action or Proceeding being included in the Pooled Claims or otherwise, the waiver of claims, releases and injunctions provided for herein shall not operate to waive, release, enjoin or limit in any way (a) any arguments in or objections or defenses to such suit, action or other Proceeding that are held by the Soundview Parties and the BVI Funds and (b) any claims and counterclaims held by the Soundview Parties and the BVI Funds, including any claims and counterclaims asserted for purposes of setoff, recoupment, reduction of damages or otherwise, provided, however, that such claims and counterclaims against the Debtor and the Estate or the Trustee can only give rise to a Claim against the Debtor and the Estate that is encompassed within the Claims filed by the Soundview Parties and the BVI Funds pursuant to section 10.10 of this Plan and that will be adjudicated pursuant to this Plan, and provided further that section 11.2 hereof applies with respect to any such Claims after the 75-Day Period notwithstanding anything to the contrary in section 2.90 hereof.

10.9        Reservation of Rights.  Notwithstanding anything to the contrary in the Confirmation Order or this Plan, including without limitation in sections 10.1, 10.2, or 10.3 hereof, it is expressly recognized and accepted that the value ascribed to any Claim in this Plan shall not be determinative of the actual value of any such Claim or of any other issue in any other Proceeding.

10.10       Relief from Bar Date Order.  Notwithstanding anything to the contrary in the Confirmation Order or this Plan, the Soundview Parties and the BVI Funds will not be bound by or subject to the waivers, releases, and injunctions contained in sections 10.1, 10.2 and 10.3 of this Plan for a period of 75 days after the Effective Date (the "75-Day Period") and shall be free to assert any and all claims they may have against the Debtor and the Estate during the 75-Day Period, provided that (a) section 11.2 hereof applies after the 75-Day Period notwithstanding anything to the contrary in section 2.90 hereof and (b) with respect to any

-26-

Administrative Claims of the Soundview Debtors or the BVI Funds, the Administrative Bar Date shall apply.  Such Claims asserted during the 75-Day Period shall be incorporated into new or amended proofs of Claim for the Soundview Parties and the BVI Funds and adjudicated in the Bankruptcy Court as promptly as reasonably possible. Notwithstanding how the Claims of the Soundview Parties and the BVI Funds are currently classified in this Plan or described in the Disclosure Statement, the Trustee shall have full rights to dispute any such Claims including (without limitation) with respect to their existence, amount, classification, priority, or subordination.

   10.11  The Cayman Funds.  Notwithstanding anything to the contrary in the Confirmation Order or this Plan, including in sections 10.1, 10.2, or 10.3 hereof, the Soundview Trustee, the BVI Funds and a fiduciary thereof, as applicable, may submit new or amended proofs of Claim for the Cayman Funds during the 75-Day Period, provided that the Soundview Trustee, the BVI Funds or a fiduciary thereof, as applicable, demonstrates the authority to act in this regard.  If the Soundview Trustee, the BVI Funds or a fiduciary thereof, as applicable, does so, then (i) the definition of "Soundview Parties" contained in section 2.92 hereof shall automatically be deemed amended nunc pro tunc to the Effective Date so as to include the Cayman Funds and (ii) the Bankruptcy Court order expunging the Cayman Funds' proofs of Claim will be vacated promptly (by so ordered stipulation or other appropriate action). If the Soundview Trustee, the BVI Funds or a fiduciary thereof, as applicable, have commenced proceedings to obtain authority to act on behalf of the Cayman Funds and have not obtained a Final Order within the 75-Day Period, the 75-Day Period shall be extended until such Final Order has been obtained, in which case (i) and (ii) of the preceding sentence will apply.

   10.12  Government Enforcement Actions.  Notwithstanding anything to the contrary contained in the Confirmation Order or this Plan, including without limitation in sections 10.1, 10.2, or 10.3 hereof, the waiver of claims, releases and injunctions provided for therein shall not operate to waive, release, or enjoin any pending or future enforcement actions of the United States Securities and Exchange Commission or any other governmental enforcement agency against any Person other than against the Debtor, the Estate, the Trustee, and his present financial advisors, attorneys, and accountants

   10.13  Pre-Confirmation Settlement Agreements.  Notwithstanding anything to the contrary contained in the Confirmation Order or this Plan, including without limitation in sections 10.1, 10.2, or 10.3 hereof, the waiver of claims, releases and injunctions provided for therein shall not affect any pre-confirmation settlement agreements entered into by the Trustee and approved by order of the Bankruptcy Court or operate to expand, diminish or otherwise have any effect on any party to those agreements' rights, claims, or defenses.  For the avoidance of doubt, the Investor Settlement is not considered a pre-confirmation settlement agreement.

## ARTICLE XI

## DISTRIBUTIONS

   11.1  Objections to Claims and Interests.  An objection to a Claim or Interest shall be in writing and may only be filed (a) by the Trustee or the Plan Administrator, as

the case may be, at any time on or before the Objection Bar Date; and (b) as to any other appropriate party in interest, at any time prior to the Effective Date (to the extent such party is entitled to do so under applicable law, as a result of the Trustee's consent or otherwise). The objecting party shall serve a copy of such objection upon the Holder of the Claim or Interest to which it pertains and the Trustee or Plan Administrator, as the case may be.

11.2     Amendments to Claims Against the Debtor or the Estate. A Claim may be amended prior to the Confirmation Date only as agreed upon by the Trustee and the Holder of such Claim, or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law. After the Confirmation Date, a Claim may not be filed or amended without the authorization of the Bankruptcy Court. Any new or amended Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Trustee, Advisory Board, or Plan Administrator, unless the Claim Holder has obtained prior Bankruptcy Court authorization for the filing.

11.3     Estimation of Disputed Claims and Disputed Interests. The Trustee or Plan Administrator, as the case may be, and any other appropriate party in interest (to the extent such party is entitled to do so under applicable law, as a result of the Trustee's or Plan Administrator's consent or otherwise) shall have the right to seek an order or orders from the Bankruptcy Court, which may be the Estimation Order, estimating the maximum dollar amount of Allowed and Disputed Claims and Interests. This estimate shall be used to calculate and fix distributions to Holders of Allowed Claims and Allowed Interests. Such a procedure may also be utilized, in the sole discretion of the Trustee or Plan Administrator, for Administrative Claims, Priority Claims, Priority Tax Claims, or other Claims. No distributions on account of a Claim or Interest shall be made unless and until such Claim or Interest becomes an Allowed Claim or Allowed Interest.

11.4     Funding of the Plan.

(a)     The Cash distributions to be made pursuant to the Plan and the Cash necessary to fund reserves for Priority Claims, Priority Tax Claims, Administrative Claims and the Available Cash Reserves will be available from funds realized in connection with past operations of the Debtor and the liquidation of the non-Cash assets of the Debtor, including the - Liquidation Recoveries and the Debtor's share of Pooled Claim Recoveries.

(b)     In order to fund litigation of the Pooled Claims, the Advisory Board in its discretion may (i) enter into financing agreements with the Investor Settlement Parties and non-parties to the Investor Settlement, on such terms as the Advisory Board approves, including, without limitation, providing premiums to the funding party, granting superpriority status to the funding party, reallocating claims among the Holders of Allowed Class 4 Claims, or providing other consideration, or (ii) hold back a portion of the distributions otherwise due to Holders of Allowed Class 4 Claims; provided, however, that in the event Class 4 Allowed Claims are reallocated, the aggregate amount of Class 4 Allowed Claims cannot be increased above the aggregate amount set forth in Article VI of the Plan.

-28-

(c)    There will be no substantive consolidation of the Debtor and the feeder funds – Alpha, Leveraged, and Arbitrage – under the Plan because of, among other things, the cross-border relationship of the funds and the Trustee's belief that it is not appropriate.  The liquidation of the Feeder Funds continues to be overseen by their respective joint official liquidators in the Cayman Islands.

11.5       Transmittal of Distributions and Notices.

(a)    Any property or notice which a Person is or becomes entitled to receive pursuant to the Plan shall be delivered by regular mail, postage prepaid, in an envelope addressed to that Person at the address indicated on any notice of appearance filed by that Person or his authorized agent prior to the Effective Date.  If no notice of appearance has been filed, notice shall be sent to the address indicated on a properly filed proof of Claim or, absent such a proof of Claim, the address that is Scheduled for that Person.  The date of distribution shall be the date of mailing, and property distributed in accordance with this Section shall be deemed delivered to such Person regardless of whether such property is actually received by that Person.  Distributions shall only be made to Holders of Record, unless otherwise ordered by the Bankruptcy Court.

(b)    A Holder of a Claim or Interest may designate a different address or beneficiary for notices and distributions by notifying the Trustee or the Plan Administrator of that address in writing.  The new address shall be effective only upon receipt.

(c)    Except to the extent otherwise provided herein, payments under the Plan shall commence on the Initial Distribution Date and thereafter shall be made on the applicable Distribution Date.  Payments may be made, at the sole option of the Trustee or Plan Administrator, as the case may be, by wire transfer or check.

11.6       Nontransferability and Abandonment of Interests.  Unless otherwise ordered by the Bankruptcy Court, the Debtor shall not be required to honor any

(a)    transfer of an Interest made in violation or contravention of an agreement with the Debtor or applicable law governing such transfer; or

(b)    request for or notice of abandonment, whether given on or after the Petition Date or prior to the Petition Date unless, with respect to this clause (b), such request or notice

(i)    has been given in accordance with applicable law and agreement, and

(ii)    is confirmed in writing to the Plan Administrator prior to the Initial Distribution Date.

11.7       Unclaimed Property.  If any distribution remains unclaimed for a period of one year after it has been delivered (or attempted to be delivered) in accordance with

-29-

the Plan to the Holder entitled thereto, such Unclaimed Property shall be forfeited by such Holder whereupon all right, title and interest in and to the Unclaimed Property shall immediately and irrevocably be available for future distributions to Holders of Allowed Claims against and Interests in the respective Debtor and the Holder previously entitled to such Unclaimed Property shall cease to be entitled thereto.

       11.8      Withholding Taxes.  Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

       11.9      Disputed Payment.  If any dispute arises as to the identity of a Holder who is to receive any distribution, the Disbursing Agent may, in lieu of making such distribution to such Person, make such distribution into an escrow account until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute.

       11.10     Liquidation Recoveries.  The Trustee may make distributions of Liquidation Recoveries after the 60th day following the Effective Date upon five Business Days' written notice to the Soundview Trustee and the BVI Funds (which notice cannot be provided before such 60th day) unless during that five Business Day period the Soundview Trustee or the BVI Funds have filed an objection to the proposed distribution of Liquidation Recoveries, in which case the Trustee will not make the disputed distribution until the objection is resolved in a Final Order.  Notwithstanding the foregoing provisions, the Trustee or the Plan Administrator, as applicable, shall be free at any time to use Liquidation Recoveries for the administrative expenses of the Estate and the Advisory Board established under the Plan, including litigation expenses and professional fees, subject to Section 8.1(b) hereof.  This provision shall not affect the Trustee's or Plan Administrator's ability to distribute, as provided in this Plan, Pooled Claim Recoveries that are not Liquidation Recoveries.

## ARTICLE XII

## EFFECTIVE DATE

       12.1      Conditions to Confirmation.  The following conditions shall be met prior to the occurrence of Confirmation:

       (a)      An order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered.

       12.2      Conditions to the Effective Date.  The following conditions shall be met prior to the occurrence of the Effective Date:

       (a)      An order confirming the Plan, as such Plan may have been modified by the Proponent, shall have been entered.

       12.3      Waiver of Conditions.

(a)    General.  The Trustee, in his sole discretion, shall have the right to waive any conditions to Confirmation or the Effective Date.

(b)    Mootness.  The Trustee and the Plan Administrator shall enjoy the benefit of the mootness doctrine with respect to any conditions waived by the Trustee.

## ARTICLE XIII

## RETENTION OF JURISDICTION

Following Confirmation and until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Plan Administrator, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

13.1    Claims and Interests.  To determine the allowability, classification, or priority of Claims against and Interests in the Debtor;

13.2    Injunction, etc.  To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Case on or before the Effective Date with respect to any Person;

13.3    Fees.  To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods on or before the Effective Date;

13.4    Dispute Resolution.  To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of distributions hereunder;

13.5    Leases and Executory Contracts.  To determine any and all motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, including post Effective Date assignments or to determine any motion to reject an executory contract or unexpired lease pursuant to section 9.1 of this Plan where (a) the parties cannot resolve the cure amount therefor, or (b) the Trustee had mistakenly determined that any such agreement was not an executory contract or unexpired lease, and to determine the allowance of any Claims resulting from the rejection of executory contracts and unexpired leases;

13.6    Actions.  To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted prior to the closing of the Case, including any remands;

-31-

13.7     Investor Settlement and Amended Investor Settlement.  To determine such matters as may arise out of, or are in connection with, the Investor Settlement or Amended Investor Settlement;

13.8     75-Day Period.  To determine a request of the Soundview Trustee or the BVI Funds to extend the 75-Day Period;

13.9     General Matters.  To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code;

13.10     Plan Modification.  To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

13.11     Aid Consummation.  To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the full extent authorized by the Bankruptcy Code;

13.12     Avoidance Actions.  To enable the prosecution of any and all proceedings which have been or may be brought prior to the Effective Date to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Estate may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws except as may be waived pursuant to the Plan;

13.13     Implementation of Confirmation Order.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

13.14     Resolve Disputes.  To resolve any disputes concerning whether a Person had sufficient notice of the Case, the applicable Bar Date, the Disclosure Statement Hearing, the Confirmation Hearing, for any purpose;

13.15     Determine Tax Liability.  To determine any tax liability pursuant to section 505 of the Bankruptcy Code; and

13.16     Final Order.  To enter a Final Order closing the Case.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

14.1     Defects, Omissions, Amendments and Modifications.

(a)     Pre-Confirmation Modification.  This Plan may be altered, amended or modified before the Confirmation Date as provided in section 1127 of the Bankruptcy Code.

-32-

(b)     Post-Confirmation Immaterial Modification.  The Plan Administrator or the Trustee, as the case may be, may, with the approval of the Bankruptcy Court and without notice to all Holders of Claims and Interests, insofar as it does not materially and adversely affect the interest of Holders of Claims, correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

(c)     Post-Confirmation Material Modification.  This Plan may be altered or amended after the Confirmation Date by the Trustee or the Plan Administrator in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims or Interests, provided that such alteration or modification occurs after a hearing as provided in section 1127 of the Bankruptcy Code.

14.2     Withdrawal or Revocation of the Plan.  The Trustee reserves the right to revoke or withdraw the Plan prior to the Effective Date in whole or in part.  If the Trustee revokes or withdraws the Plan, then the result shall be the same as if the Confirmation Order were not entered and the Effective Date did not occur to the extent withdrawn or revoked.

14.3     Successors and Assigns.  The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors or assigns of such Person.

14.4     Final Orders.  The Trustee or the Plan Administrator, as the case may be, may waive any requirement in the Plan for a Final Order.

14.5     Governing Law.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York.

14.6     Notices.  Subject to Section 11.5, all notices, requests or demands for payments provided for in this Plan shall be in writing and shall be deemed to have been given when personally delivered by hand or deposited in any general or branch post office of the United States Postal Service or received by courier service or telecopier.  Notices, requests and demands for payments shall be addressed and sent, postage prepaid or delivered, to:


                    Richard J. Davis, Esq.
                    415 Madison Avenue, 11th Floor
                    New York, New York  10017
                    (646) 553-1365

        With copies to:

                    Luskin, Stern & Eisler LLP
                    Eleven Times Square
                    New York, New York  10035
                    Attention:  Michael Luskin, Esq.
                    (212) 597-8200

or to any other address designated by the Plan Administrator by notice to each affected Holder of an Allowed Claim or Interest at the last known address according to the Debtor's books and records or at any other address designated by a Holder of an Allowed Claim on its proof of Claim, provided that any notice of change of address shall be effective only upon receipt thereof by the Trustee or the Plan Administrator.

14.7    Severability.  Except as to terms which would frustrate the overall purpose of this Plan, and should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

14.8    Interpretation, Rules of Construction, Computation of Time and Choice of Law.

(a)    The provisions of the Plan shall control over any descriptions thereof contained in the Disclosure Statement.

(b)    Any term used in the Plan that is not defined in the Plan, either in Article II (Definitions), in the Disclosure Statement or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules.  Without limiting the foregoing, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded hereby.

(c)    The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular article, section, subsection or clause contained in the Plan, unless the context requires otherwise.

(d)    Unless specified otherwise in a particular reference, all references in the Plan to Articles, Sections and Exhibits are references to articles, sections and exhibits of or to the Plan.

(e)    Any reference in the Plan to a contract, document, instrument, release, bylaw, certificate, indenture or other agreement being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

(f)    Any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been amended, restated, modified or supplemented as of the Effective Date.

(g)    Captions and headings to articles and sections in the Plan are inserted for convenience of reference only and shall neither constitute a part of the Plan nor in any way affect the interpretation of any provisions hereof.

(h)    Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and each

-34-

pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter.

(i)    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(j)    All exhibits to the Plan are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when filed.

(k)    Subject to the provisions of any contract, certificate, bylaws, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

(l)    No Admissions.  Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor or the Trustee with respect to any matter set forth herein, including, without limitation, liability on any Claim, the impairment of any Claim or the propriety of a Claim's classification.

/s/ Richard J. Davis_____

Dated:    New York, New York          Richard J. Davis,
          March 24, 2014               Chapter 11 Trustee

-35-

Exhibit  A

Pooled Claims

Claims to be pooled are those by the Investor Settlement Parties against the below listed persons and entities and their respective parents, subsidiaries, affiliates, officers, directors, agents, employees, representatives, financial advisors, accountants and attorneys (and such additional persons and entities as may be specified in an Amended Investor Settlement).

AF
CI Funds
Citco
Duhallow
Eisner
FAM
Insiders of the Funds or any Fletcher-Related Entity
Grant Thornton
Quantal
RF Services
Richcourt Funds[*]
Skadden
SS&C
Soundview Debtors[*]

---

[*] "Clawback" claims are not Pooled Claims to the extent they relate to redemptions from a fund and recovery on the "Clawback" claims would result in new direct claims against the recovering fund.  It is possible that both "Clawback" claims and Pooled Claims will be asserted against one or more of the above listed entities; only the "Clawback" claims will not be Pooled Claims.

**<u>EXHIBIT B</u>**

**Notice of Confirmation**

Michael Luskin
Lucia T. Chapman
Stephan E. Hornung
LUSKIN, STERN & EISLER LLP
Eleven Times Square
New York, New York 10036
Telephone:  (212) 597-8200
Facsimile:  (212) 974-3205

*Attorneys for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| FLETCHER INTERNATIONAL, LTD., | : | Case No. 12-12796 (REG) |
| | : | |
| Debtor. | : | |
| | : | |

-------------------------------------------------------------x

**NOTICE OF ENTRY OF: (I) CONFIRMATION ORDER CONFIRMING
THE TRUSTEE'S SECOND AMENDED PLAN OF LIQUIDATION,
(II) OCCURRENCE OF EFFECTIVE DATE AND (III) DEADLINE FOR FILING
ADMINISTRATIVE CLAIMS AND CLAIMS ARISING FROM REJECTION OF
<u>EXECUTORY CONTRACTS OR UNEXPIRED LEASES</u>**

    **PLEASE TAKE NOTICE** that on March __, 2014, the United States
Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered the
*Findings of Fact, Conclusions of Law and Order Confirming the Trustee's Second Amended
Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ____] (the
"**Confirmation Order**") confirming the *Trustee's Second Amended Plan of Liquidation
Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ____] (as may be amended,
modified or supplemented from time to time, the "**Plan**").[4]

    **PLEASE TAKE FURTHER NOTICE** that that the Confirmation Order and the
Plan are each on file with the Clerk of the Court, and may be examined by interested parties at
the Office of the Clerk of the Court, United States Bankruptcy Court, Southern District of New
York, One Bowling Green, New York, New York 10004, during regular business hours.  Copies
of the Plan and Confirmation Order also may be obtained for a fee from the Bankruptcy Court's
website at www.nysb.uscourts.gov.

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

**PLEASE TAKE FURTHER NOTICE** that on March __, 2014, the "Effective Date" occurred with respect to the Plan.

**PLEASE TAKE FURTHER NOTICE** that pursuant to section 3.4 of the Plan and paragraph 116 of the Confirmation Order, all Persons asserting Administrative Claims (other than Excluded Claims) arising on and after the Petition Date must file with the Bankruptcy Court and serve on the Plan Administrator proofs of such Administrative Claims or requests for payment of such Administrative Claims pursuant to the procedures set forth in the Administrative Bar Date Order by [_____, 2014] or be forever barred from asserting such Claims against the Debtor, the Estate, or their respective property.

**PLEASE TAKE FURTHER NOTICE** that pursuant to section 3.4 of the Plan and paragraph 116 of the Confirmation Order, objections to Administrative Claims (other than Excluded Claims) must be filed with the Bankruptcy Court and served on the Plan Administrator and the applying party by the later of:  (a) one (1) day prior to the Initial Distribution Date, and (b) sixty (60) days after the filing of the applicable proof of Claim or request for payment of Administrative Claim, unless otherwise ordered or extended by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that pursuant to section 3.5 of the Plan and paragraph 117 of the Confirmation Order, any Person or entity (including a Professional) that fails to file a proof of Claim, application or compensation estimate on account of a Fee Claim as and to the extent required by the Bankruptcy Court by [_____, 2014] shall be forever barred from asserting such Claim against the Debtor, the Estate, or their respective property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Claim.

**PLEASE TAKE FURTHER NOTICE** that pursuant to section 9.2 of the Plan and paragraph 118 of the Confirmation Order, proofs of all Claims arising out of the rejection of an executory contract or an unexpired lease pursuant to the Plan shall be filed with the Bankruptcy Court and served upon the Plan Administrator at: Richard J. Davis, Esq., 415 Madison Avenue, 11th Floor, New York, New York 10017, with a copy to Luskin, Stern & Eisler LLP, Eleven Times Square, New York, New York 10035, Attention:  Michael Luskin, Esq.  Any such Claims covered by the preceding sentence, section 9.2 of the Plan and paragraph 117 of the Confirmation Order not filed within such time shall be forever barred from assertion against the Debtor, the Estate, or their respective property.

Dated:    New York, New York
          March __, 2014

LUSKIN, STERN & EISLER LLP

By: /s/ _____

       Michael Luskin
       Lucia T. Chapman
       Stephan E. Hornung

Eleven Times Square
New York, New York 10036
Telephone:  (212) 597-8200
Facsimile:  (212) 974-3205