Alphonse Fletcher, Jr.
48 Wall Street, Fourth Floor
New York, NY 10005
(212) 284-4800



UNITED STATES BANKRUPTCY COURT SOUTHERN
DISTRICT OF NEW YORK

| In re:<br><br>FLETCHER INTERNATIONAL, LTD.,<br><br>                                    Debtor. | Chapter 11<br>Case No. 12-12796 (REG) |
|---|---|

### ALPHONSE FLETCHER'S REPLY TO TRUSTEE'S DECLARATION, SECOND AMENDED PLAN OF LIQUIDATION, AND SOUNDVIEW RESPONSE AND ALPHONSE FLETCHER'S JOINDER WITH STEWART TURNER'S OBJECTIONS

I, Alphonse Fletcher, Jr., am not an attorney and am appearing *pro se*[1] as a party-in-interest in these associated cases[2] ("Associated Cases" or "Estates"). I hereby submit

(i)   motion to strike Michael Luskin's unnecessary, conclusory, false, and derogatory statements,

(ii)  reply to the Memorandum of Law in Opposition to the Motion of the Soundview Trustee for Relief from Bar Date (ECF No. 469) and the associated Declaration of Gary Polkowitz (ECF No. 470),

(iii) reply to the Trustee's Declaration in Support of Confirmation of Second Amended Plan (ECF No. 474) filed on March 25, 2014,

(iv)  joinder with Stewart Turner's Objection to Trustee's settlement with United Community Banks, Inc. (ECF No. 452),

(v)   joinder with Stewart Turner's Objection to Confirmation of the Trustee's Proposed Plan of Liquidation (ECF No. 417), and

(vi)  Objection to the Trustee's Second Amended Plan of Liquidation which with its Corrected Blackline (ECF No. 480) filed this afternoon, March 26, at 1:10 PM ("Corrected Blackline").

Fletcher Reply and Joinder of March 26, 2014

Respectfully, confirmation of the Plan, at this time, is impossible within any reasonable sense of justice given:

(i) the Trustee's discriminatory Plan of Liquidation ("Plan"),

(ii) the Trustee's past and planned less-than-arrms-length settlements,

(iii) the false and misleading statements and allegations made by the Trustee and his team, and

(iv) the Trustee's team's failure to honor their obligations under Bankruptcy Rule 2014 and Bankruptcy Code 326(a) as detailed in my March 21 motion make.

The Corrected Blackline reveals the Trustee's disregard for the anti-discrimination provisions of the Bankruptcy Code. Consistent with prior actions that have harmed the estate and its beneficiaries, the Trustee's Plan benefits only those he favors and does so without support in law or fact. In return, as outlined in Plan documents, those favored parties will provide lucrative employment to the Trustee. The confirmation process, however, should not tolerate the sacrifice of

(i) the true stakeholders' economic interests,

(ii) the integrity of the bankruptcy system,

(iii) the remedial purpose of our nation's and New York's anti-retaliation law, or

(iv) important public policy considerations, equal protection, and due process.

The Corrected Blackline reveals the Trustee's discriminatory intentions. As one brazen example, Claims held by certain Cayman investment funds affiliated with our organization would be worth nothing under the Trustee's Plan. Those same claims held by those same funds would receive positive treatment from the Trustee and his Plan if the parties that have been

2

Fletcher Reply and Joinder of March 26, 2014

collaborating to "destroy"[3] our funds succeed in the efforts discussed with the Trustee to seize control of our Cayman funds. The Trustee's newly included language, revealed in the Corrected Blackline, would expunge proofs of claims held by certain Cayman investment funds under my control, however, if parties favored by the Trustee succeed in seizing control of those funds from me within 75 days, "they, too, will be entitled to file Claims against FILB, and the order expunging those proofs of claim will be vacated."[4]

Further, the Corrected Blackline reveals that the Trustee's Plan would give the Trustee (and his chosen advisory board) substantial post-confirmation powers.[5] For example, he would have the power to indemnify[6] and exonerate[7] the parties that have, for now, seized control of our Richcourt and Soundview funds (and whom the Trustee has now offered a reward if they can seize control of our organization's remaining Cayman funds). The Trustee would also be granted the power to indemnify and exonerate other unidentified parties selected in the future. While the Investor Settlement has not been made available to me and most other parties-in-interest, the Plan states: "The terms of the Investor Settlement, as it may be amended by the Amended Investor Settlement, shall be deemed incorporated into and made a part of the Plan as if set forth in full." The Amended Investor Settlement including unidentified parties added post-confirmation would enjoy recognition of a "Good Faith Compromise" and the authority of the bankruptcy court's confirmation order.

The court's obligation to scrutinize these settlements applies "even where parties in interest are silent" or have waived their objections.[8] Yet, in an effort to justify its past and planned actions, the Trustee makes a series of conclusory statement that have not been proven[9] and seeks to rely on a Cayman court ruling under circumstances that strike those familiar with

3

Fletcher Reply and Joinder of March 26, 2014

U.S. due process as strange.[10] The unfair Cayman ruling reduced the interests of the interests of all investors other than the pension funds controlled by the Louisiana Officials especially MBTA Retirement Fund and the Soundview/Richcourt funds.[11] The Trustee's unverified and untested opinions conflict with documentary evidence and form no legitimate basis for his adverse conclusions regarding the claims of the Soundview Estates. He has assisted the Louisiana Officials and the Ernst & Young Liquidators in misleading the MBTA Retirement Fund and unfairly reducing its stake.  One central, assertion of the Trustee and his team is that Fletcher International, Ltd. was insolvent which is directly contradicted by multiple items of documentary evidence. Perhaps most inappropriate is Trustee and his team's continuing abuse of litigation privilege to fill the record with the type of disparaging falsehoods that caused this Court to direct the Trustee to include language in the "Trustee's Report and Disclosure Statement" explicitly stating that the report was opinion not fact. **I respectfully ask that this court strike from the record that statement in Mr. Luskin's Memorandum in Support of the Trustee's Second Amended Plan of Liquidation,** *"AF – the mastermind of the fraud against the Debtor's investors and creditors"* **and any their similar comments in past and future filings.**

Granting confirmation would be manifestly unfair prior to resolution of the alleged violations of Bankruptcy Rules and Bankruptcy Code described my March 21, 2014 Motion and March 19, 2014 letter (Corrected March 21, 2014). Further, the Plan is unfair to investors other than the Ernst & Young Liquidators and the Louisiana Officials. Flagrant discriminatory treatment results from the fact that the same Claims held by the same Claim holders would receive different treatment based on whether or not I am associated with the Claim holders following confirmation.  Settlements done at less than arms-length must be reviewed.

4

Importantly, this confirmation exercise could be in vain. Given the failure to disclose, the adverse interests, and the adverse actions taken by fiduciaries in these cases, any confirmation of the Plan may later be revoked under Code § 1144.[12] Confirmation should not occur until all vital questions are answered.

Dated: San Francisco, CA
March 26, 2014

*[signature]*

Alphonse Fletcher, Jr.
Party-in-Interest *pro se*
48 Wall Street, 4th Floor
New York, NY 10005
(212)284-4800

---

[1] I respectfully request that the Court accept these statements in spite of any procedural missteps including timing, structure, language, or other formalities. I will quickly address any shortcomings which I can as soon as I am aware.

[2] *In re Fletcher International, Ltd.* (12-12796), *In re Soundview Elite, Ltd. et al.* (13-13098-reg), *In re Fletcher Income Arbitrage Fund (in official liquidation)* (14-10093-reg), *and In re FIA Leveraged Fund (in official liquidation)*.

[3] Verified Amended Complaint, *Fletcher v Dakota*, Paragraph 14:
Specifically, [the Dakota Parties] spread lies throughout the media that FAM is not profitable, that it is highly leveraged, and that its capital is being depleted. These more recent acts of defamation were consistent with Defendant Barnes' threat to Fletcher in June 2010 that if Fletcher went ahead and vindicated his rights by filing this lawsuit, the Board would do everything in its power to destroy Fletcher and his reputation in the business community.

[4] Second Amended Plan Section 10.11(ii)

[5] The Trustee would also have the power to
- provide compensation as "Administrative Claims" to unidentified parties that he may select after confirmation
- add unidentified parties to the Investor Settlement agreement (Second Amended Plan Section 8.10)
- enter into financing agreements with unidentified parties on terms that he selects and provide consideration that he determines (Second Amended Plan Section 12.4(b)).

[6] Second Amended Plan Section 2.55.

[7] Second Amended Plan Section 7.10.

[8] *In re Texaco Inc.*, 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988).

[9] The past and proposed settlements are claimed to have been done at arms-length but there is no evidence of that. The estate's creditors adversaries that have received favorable treatment from the Trustee appear to be associated with the same parties to whom the Trustee and his advisors have connections including Ernst & Young, Quinn Emanuel and its outside counsel Gregory P. Joseph, Angelo, Gordon & Co., JPMorgan Chase, United Community Banks, Inc., Credit Suisse, D.E. Shaw, Matthew Mallow, Blackstone, and Ion Geophysical.
- The Trustee argues against the estate and on behalf of creditors in an effort to increase the estate's claims and liabilities.
- The Trustee's unilaterally seizes the economic value held by insiders, without a trial, based on his opinion and allegations, not on proven fact. (As discussed in Section II above, Turner's and Saunders' claims are appropriately subordinated under the Plan for their respective roles in, among other things, the April 22 Transactions, and Turner's other wrongful acts describe above. 31)
- The Trustee misrepresents the United position, risks, and opportunities to the court (Turner ignores the significant litigation risk and that the Louisiana Pension Funds would have been required to expend at least $65 million in order purchase preferred stock and receive the additional warrants.)
- The Trustee arrogantly declares that he "will not second guess the judgment of Mr. McMahon," an admission of gross dereliction of duty. (The Trustee will not second guess the judgment of Mr. McMahon – an experienced insolvency professional with more than 30 years of experience and fiduciary obligations to recover as much as possible for his constituents.32)
- The Trustee dismisses Turner's concerns regarding the Trustee's management of the Ion Geophysical litigation yet the Trustee's admits not seeking information necessary to properly prosecute the case.
- The Trustee and his team inappropriately characterize me with language that should be struck ("AF – the mastermind of the fraud against the Debtor's investors and creditors").

[10] The Trustee's reliance of a purported verdict in an offshore court under circumstances that we consider lacking in due process in the U.S. is unreasonable. The verdict has never been tested and validated in the U.S. There is no basis for the Trustee's gift of the estate to the Trustee's favored creditors who have agreed to hire him as Plan Administrator. It may be that "the Grand Court found that the shares of FILBCI transferred to Arbitrage were 'commercially worthless'" but that verdict would likely not withstand U.S. scrutiny. It is not in the interests of the estate for the Trustee to try to rush through a passive acceptance of that flawed verdict. Doing so only facilitates a discriminatory plan.

6

Fletcher Reply and Joinder of March 26, 2014

[11] The Plan does not fully comply with the applicable provisions of section 1129 of the Bankruptcy Code based on my understanding of the Plan and the events that have occurred.
- The plan does not comply with Section 1123(a)(7) because it provides for the appointment of a Plan Administrator and an Advisory Board which include the Trustee and parties he has selected when he may be disqualified from his role as Trustee based on allegations regarding his failure to disclose connections and adverse interests. Further, it includes Robin McMahon, of Ernst & Young whose chapter 15 application is alleged to contain false or misleading information.
- While it may be appropriate under Section 1123(b)(6) for the Court to retain jurisdiction as to, among other things, all matters arising out of or related to the Chapter 11 Case and the Plan, exculpation of the trustee, the Advisory Board, and the professional persons retained by them is inappropriate given the allegations of their violations of bankruptcy law and their other conduct during the negotiation, drafting, and administration of the Plan and management of the estate. These exculpation provisions are not in the best interests of the Estate, are overly broad, and undeserved.
- Regarding Section 1129(a)(2), the Trustee has not complied with the applicable provisions of the Bankruptcy Code including sections 1125 and 1126 of the Bankruptcy Code regarding disclosure and plan solicitation.
- With respect to Section 1125, the Trustee failed to provide "adequate information," including information on claims and potential claims against estate fiduciaries. Further, he characterized claims against insiders in a misleading manner.
- Regarding Section 1126, certain votes of parties may be designated eventually since support from certain creditors for the plan appears not to have been won in good faith and was not solicited or procured in good faith or in accordance with the provisions of this title.
- With respect to Section 1129(a)(3): The Plan was not proposed with honesty and good intentions in order to effectuate a feasible liquidation that creates value for all stakeholders. The plan was proposed for a purpose forbidden by law as evidenced by the undisclosed connections and adverse interests of the Trustee and his advisors, including connections and interests associated with parties accused of unlawful retaliation under New York City and Federal anti-retaliation law and supporting such retaliation.
- With respect to Section § 1129(a)(4) the professional fees and expenses, including those of Luskin, Stern & Eisler, Goldin Associates, should be disallowed based on violations of bankruptcy law.
- With respect to Section 1129(a)(5), neither the Trustee nor the Ernst & Young Liquidators has disclosed all necessary information regarding directors, officers and insiders. The Trustee and his advisors have not honored their obligations under 2014 and the Ernst & Young Liquidators have not honored their obligations under 1007. Further, each has taken actions adverse to the respective estates.
- The Plan fails to Satisfies the Requirements of Section 1129(a)(7) of the Bankruptcy Code because (a) that creditor recoveries are premised on frivolous "pooling claims" and "completing the liquidation of any remaining assets of the Debtors" when such liquidations have consistently been completed at unreasonably low prices in transactions that were not "arms-length." All non-accepting Holders of Claims in Classes 3, 4, 5 and 6 and Holders of Equity Interest will receive less under the Plan than in a chapter 7 liquidation.
- With respect to Section 1129(a)(11), of the Bankruptcy Code permits a plan to be confirmed if it is feasible, i.e., it is not likely to be followed by liquidation or the need for further financial reorganization, unless the Plan contemplates such liquidation. Yet the Plan is premised on frivolous litigation and a $4.25 million settlement with Skadden, Arps, Slate, Meagher & Flom LLP, which may not be approved as proposed given the contradiction in the Trustee's logic and arguments regarding Skadden's advice and its settlement. Further, any funds realized would likely be squandered "funding litigation against other third-parties."
- The Plan fails to satisfy the "cram down" requirements set forth in Section 1129(b) of the Bankruptcy Code because the "class of impaired creditors" that has voted to accept the Plan has been secured in bad faith. The Plan discriminates unfairly and it is not fair and equitable.

[12] "On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud."

7