# Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases
## In the Format Requested by Honorable Robert E. Gerber

| Fiduciary | Connection | Relationship | Additional Information | Adverse Interest | Failed to Disclose |
|---|---|---|---|---|---|
| Richard J. Davis / Weil Gotshal | Sotheby's | Davis/Weil Client | Lends to Dakota officer Angelo is director, James Murdoch is former director | X | X |
| | Quinn Emanuel | Close Working Relationship with Weil | Dakota counsel (Campbells, Gregory P. Joseph, Michael Crystal QC of counsel) | X | X |
| | Anthony Smith | Citizens Union Leadership | Named-defendant in *Fletcher v Dakota* | X | X |
| | News Corporation | Davis/Weil Client | Defamation Defense, Angelo control | X | X |
| | Ernst & Young | Weil Client | Liquidators of Leveraged and Arbitrage | X | X |
| | Silver Point / Silver Oak | Weil Client | Angelo Partner, Citco sponsor | X | X |
| | Seaport Group | Weil Client | | | X |
| | JPMorgan Chase | Weil Client | Angelo Partner, United Community Bank sponsor | X | X |
| | D.E. Shaw | Weil Client | Bought Ion preferred from Credit Suisse | X | X |
| | HSBC | Weil Client | Lender to Angelo and Dakota | X | X |
| | Milbank Tweed | Potential Weil Client | Credit Suisse counsel | X | X |
| | Blackrock | Weil Client | Mallow, GC, is Dakota shareholder | X | X |
| | Morgan Stanley | Weil Client | Porat, CFO, is Dakota shareholder | X | X |
| | Wilmington Trust | Weil Client | | X | X |
| | Morrison Foerster | Close Working Relationship with Weil | | X | X |

# Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases
## In the Format Requested by Honorable Robert E. Gerber

| Fiduciary | Connection | Relationship | Additional Information | Adverse Interest | Failed to Disclose | Inadequate Disclosure |
|---|---|---|---|---|---|---|
| **Luskin Stern** | Ernst & Young | Current LS Client | E&Y Liquidators in Nortel With E&Y in Kodak | X | | X |
| | Young Conaway | LS Working Relationship | e.g. Nortel, Kodak, Pappas | | X | |
| | Brown Rudnick | Ampal-American Trustee | 4-9-2013 Luskin Trustee<br>4-29-2013 Noisy Withdrawal<br>5-1-2013 Luskin recommends BR-supported liquidation plan | | X | |
| | Nixon Peabody | Kodak Fee Examiner | 11-15-2012 NP resigns from Fletcher representation<br>11-30-2012 Motion for NP Special Comp | | X | |
| **Goldin Associates** | Angelo Gordon (related committees) | Goldin Client | Dakota treasurer and major shareholder, Dakota control | X | X | |
| | Quinn Emanuel | Counsel to Goldin | QE defended Goldin in fraud lawsuit | X | X | |
| | Balfour | Goldin Client | Dakota president | X | X | |
| | Ernst & Young | Worked with Goldin | Liquidators of Leveraged and Arbitrage | X | | X |
| | JPMorgan Chase | Current Goldin Client | Angelo partner, United Community Bank sponsor | X | | |
| | Credit Suisse | Goldin Client | Angelo partner, lender to Dakota fund | X | | X |
| | Holland & Knight | Goldin Client | MBTA Retirement Fund counsel | X | | |
| | HSBC | Current Goldin Client | Lender to Angelo and Dakota | X | | |
| | Kasowitz Benson | Goldin Client | | | X | |

# Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases
## In the Format Requested by Honorable Robert E. Gerber

| Fiduciary | Connection | Relationship | Additional Information | Adverse Interest | Failed to Disclose | Inadequate Disclosure |
|---|---|---|---|---|---|---|
| **Jones Day and Corinne Ball** | Angelo Gordon (and related committees) | Jones Day Client | | X | X | |
| | Ernst & Young | Jones Day Client, also hired by Jones Day | See Detroit bankruptcy and multiple other involvements | X | X | |
| | JPMorgan Chase | Current JD Client | Angelo Partner, United Community Bank sponsor | X | X | |
| | Credit Suisse | Current JD Client | Credit Suisse counsel | X | | |
| | Silver Point Capital | Jones Day Client | Angelo Partner, Citco sponsor | X | X | |
| | News Corporation | Jones Day Client | Discrimination Defense, Angelo control | X | X | |
| | Wilmington Trust | Ball/Jones Day Client | | X | | |
| | Promethean Investment Group | Jones Day Client | See Fletcher Capital Markets v Promethean Investment Group | X | X | |
| | Zolfo Cooper | Current JD Client | "Liquidators of Cayman Islands fund secure $22.5 million of assets<br>May 2013 - Jones Day is advising the liquidators of Hadar Fund Ltd." | X | | X |
| | Morgan Stanley | Jones Day Client | Porat, CFO, is Dakota shareholder | X | X | |
| | Blackrock | Weil Client | Mallow, GC, is Dakota shareholder | X | X | |
| | D.E. Shaw | Jones Day Client | Bought Ion preferred from Credit Suisse | X | X | |
| | Citco | Current JD Client | Cayman petitioner | X | | X |

# Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases
## In the Format Requested by Honorable Robert E. Gerber

| Fiduciary | Connection | Relationship | Additional Information | Adverse Interest | Failed to Disclose | Inadequate Disclosure |
|---|---|---|---|---|---|---|
| **Kinetic Partners** | Municipal Employees' Retirement System | Replacement Fund Manager in DE Ch 11 | *In re Sands et al* | X |  | X |
|  | Firefighters' Retirement System | Replacement Fund Manager in DE Ch 11 | *In re Sands et al* | X |  | X |
|  | Young Conaway DE | Replacement Fund Manager in DE Ch 11 | *In re Sands et al* |  |  | X |
|  | Young Conaway NY (In Re Fletcher Int'l) | Unofficial Advisor to YC | Frequently mentioned by then YC partner David Hurst, recommended to directors and court despite conflicts |  | X |  |
|  | Quinn Emanuel | Worked with QE Internal Counsel | Worked with QE Internal Counsel in Cayman wind up and chapter 15 proceedings (Same partner represents the Dakota since 2010) | X | X |  |
|  | Credit Suisse | unknown | Credit Suisse counsel | X |  | X |
|  | HSBC | unknown | Lender to Angelo and Dakota | X |  | X |
|  | Citco | unknown | Cayman petitioner | X |  | X |
|  | Walkers | Replacement Fund Manager in DE Ch 11 |  |  |  | X |
|  | Wilmington Trust | unknown |  | X |  | X |

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

| Fiduciary | Connection | Relationship | Additional Information | Adverse Interest | Failed to Disclose | Inadequate Disclosure |
|---|---|---|---|---|---|---|
| **Young Conaway** | Angelo Gordon | Young Conaway Client | *In re Tribune* | X | X | |
| | Municipal Employees' Retirement System | Debtors' Counsel in DE Ch 11 | *In re Sands et al* | X | X | |
| | Firefighters' Retirement System | Debtors' Counsel in DE Ch 11 | *In re Sands et al* | X | X | |
| | Kinetic | Debtors' Counsel in DE Ch 11/advice in re Fletcher Int'l | *In re Sands et al* | X | X | |
| | Walkers | Debtors' Counsel in DE Ch 11 | *In re Sands et al* | | X | |

# Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases
## In the Format Requested by Honorable Robert E. Gerber

## Connections and Adverse Interests - *In re Fletcher International, Ltd.* and Associated Cases



### *IN RE FLETCHER INTERNATIONAL, LTD.*
**Fiduciaries: Richard J. Davis, Luskin Stern, Goldin Associates, Young Conaway**
(Mr. Davis was a senior partner at Weil partner fewer than 9 months prior to his appointment as chapter 11 trustee.)

| Connections: Ernst & Young, Louisiana Officials | Connections: John **Angelo**, Quinn Emanuel, Anthony Smith, Jay Goldsmith, Mallow/Blackstone, etc. | Young Conaway/Goldin clients: **Angelo Gordon, JPMorgan**, and Credit Suisse; Goldin client: HSBC | Richard J. Davis Client: **Sotheby's** ("Price Fixing"), current Weil client | Weil client: **Silver Point** | Richard J. Davis Client: **News Corporation** (defamation, NYPost.com dispute), current client of Weil |

### John Angelo and son Jesse Angelo - Angelo, Gordon & Co.

| **Dakota, Inc.** HSBC - Dakota Mortgage | **JPMorgan Chase / Credit Suisse** | **Sotheby's** | **Silver Point** Citco's financial sponsor | **News Corporation** |
|---|---|---|---|---|
| Pres: Jay Goldsmith-Balfour Treas: John Angelo - AG VP: Matt Mallow-Blackstone *Counsel* to Dakota, Angelo Gordon and Blackstone: **Quinn Emanuel** | Agents for Angelo Gordon and its Partners in Tribune *Counsel* to Angelo, Gordon, JPMorgan, Credit Suisse: **Young Conaway, Paul Weiss, Weil Gotshal Jones Day** | John Angelo is a Director, Nominated James Murdoch *Counsel* to Sotheby's: **Paul Weiss Weil Gotshal** | Angelo Gordon Partner in Silver Oak Capital *Counsel* to Silver Point and Silver Oak: **Weil Gotshal, Paul Weiss** | Jesse Angelo, "Attributable Interest," *NY Post* Publisher *Counsel* to News Corp and Angelo, Gordon: **Paul Weiss, Kasowitz Benson** |

| Quinn Emanuel's Outside Counsel: **Gregory P. Joseph** Co-Counsel: **Ross McDonough** Co-Counsel: **Walkers** | **Jones Day, Kinetic** (connected with LA Officials, Quinn Emanuel and Dakota) | **Weil Gotshal, Walkers** | **Paul Weiss, Morrison Foerster** | **Kasowitz Benson** |
|---|---|---|---|---|
| Louisiana Officials, Ernst & Young | Corinne Ball of Jones Day | Midanek (Richcourt) | Citco/JOLs (Soundview) | Pasig, Ltd. (Soundview) |
| **FIA LEVERAGED, ARBITRAGE** | **RICHCOURT / SOUNDVIEW FUNDS** | | | |

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

*Fletcher v Dakota*

These associated cases *In re Fletcher International, Ltd., In re FIA Leveraged Fund, In re Fletcher Income Arbitrage Fund, Ltd.,* and *In re Soundview Elite, Ltd. et al,* and a dozen other proceedings in five countries and nine states arise out a dispute with certain officers of the board of directors of New York's Dakota Inc. cooperative apartment building ("Dakota"). That lawsuit was brought in an effort to stop the attacks[1] on my family and our businesses, Fletcher Asset Management, Inc. and its affiliates including private investment funds (together, "Fletcher"). The complaint described our businesses:[2]

> FAM is a successful investment management firm. Founded by Fletcher in 1991, FAM serves in an advisory capacity with respect to a series of funds that include outside investors. Since 1991, FAM has completed more than 50 transactions that have provided additional capital to companies through the purchase of newly issued securities. The investments have helped these companies create and preserve tens of thousands of quality jobs from upstate New York to Southern California in industries including affordable and energy-efficient housing, alternative energy, education services, and environmental services. FAM is currently focused on providing additional capital and other support to community banks aimed at helping to reinvigorate the economy and generate attractive returns.

Officers of the Dakota ("Dakota Officers") and parties aiding them (together with the Dakota Officers, "Dakota Parties") followed through on threats[3] made by former Dakota presidents John Rydzewski and Bruce Barnes. As payback[4] for my opposition to their practices which I claimed were discriminatory, Rydzewski and Barnes threatened to destroy Fletcher, which was then prospering.[5]  On July 3, 2012, the New York Supreme Court Appellate Division denied the Dakota's motion to dismiss our case stating: "knowingly and maliciously spreading false statements and rumors to third parties, including the media, concerning Fletcher's financial condition," states a claim for illegal retaliation, breach of fiduciary duty, and defamation.[6]  Paul Weiss was the original law firm that drafted the complaint and managed the litigation for Fletcher during the first six months. Paul Weiss's managing partner though refused to permit the firm's attorneys appear in court on our case or sign the filings its drafted. Instead, a smaller firm would "appear" in the case because John Angelo's firm Angelo Gordon is an "important client" Paul Weiss.

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

**JPMorgan Chase**

In April 2010 after I submitted my application to the Dakota board, Dakota Officers incorrectly asserted that my long-term "business loans,"[7] which secured with real estate, had call provisions like the callable securities financing used by Fletcher International, Ltd.[8] In April 2010, JPMorgan Chase[9] ("JPMorgan") suddenly canceled its financing of Fletcher International, Ltd., which was callable by JPMorgan unlike its business loans to me, and took a series of other adverse actions including hindering Fletcher's liquidation of a product structured with JPMorgan Chase affiliate Corsair (Jersey) Limited,[10] causing other banks[11] to terminate their financing of Fletcher according to people involved, conducting unauthorized credit and other information searches on Fletcher, refusing to explain the searches when asked by Fletcher, restricting substantial amounts of cash in Fletcher-related accounts without valid justification, and interfering in Fletcher investments including its investment in Georgia-based United Community Banks, Inc. ("United").

On April 1, 2010, United announced a strategic investment from Fletcher International, Ltd. and received an enthusiastic response from industry analysts.[12] "Community banks are the engines that power local economies, which, in turn, provide jobs, homes, and security to people around the country," said Denis J. Kiely, Director of Fletcher Asset Management, Inc. "With these concurrent investments, we hope to free capital on United's balance sheet to allow it to continue and expand its investments in its communities and fulfillment of its mission."[13] A few months later, Credit Suisse, a partner, lender, and agent of Angelo Gordon, helped launch a fund hoping to free capital on banks' balance sheets managed by Christofferson Robb, a hedge fund run by former Dakota presidents John Rydzewski and Richard Robb which John Angelo claimed to bail out during the economic crisis. The new "CRC Capital Release Fund" would "effectively buy a small amount of exposure to the riskiest" assets of banks.[14]

On April 22, 2011, Reuters reported that "With the stabilization of credit issues, the company is now focusing its attention to acquire failed banks through FDIC-assisted transactions. 'We are absolutely interested in FDIC transactions within our footprints that has real customers and real franchise that would add to our franchise,' the CEO said."[15] A few months later, on June 9, 2010, Angelo, Gordon & Co., with former JPMorgan Chase executives,[16] announced its intention to make a strategic investment in Georgia banks followed by "FDIC-assisted transactions."[17] Also, in June, 2010, Wachtell Lipton, counsel to JPMorgan Chase and Angelo, Gordon & Co., insisted that Fletcher International, Ltd. acquiesce to United's unilateral amendments to its investment agreement well after United, its counsel, Kilpatrick Townsend, Fletcher Asset Management, Inc., and its counsel Skadden Arps, had executed, funded, and announced the transaction.

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

From time to time, often with assistance from Wachtell,[18] United would modify or violate those agreements. United replaced the Fletcher International, Ltd. transaction with a similar but larger non-performing asset purchase and equity investment from JPMorgan Chase affiliate Corsair Capital LLC and its co-investors. JPMorgan Chase affiliate JPMorgan Securities advised United on the investment[19] and a former JPMorgan Chase executive joined United's board.[20] On March 16, 2011, United's CEO declared: "Corsair is an ideal partner for United, with its experience and track record as a thoughtful and positive strategic investor focused entirely on the financial services sector" and "This capital plan is the result of many months of internal analysis and discussion..."[21] Corsair executives reportedly met with United's management weeks after Wachtell began assisting United.[22] While United had previously trumpeted its Fletcher deal, a "Top Deal of 2010,"[23] United began using the Dakota's false allegations as excuses for breaching its contracts with Fletcher,[24] disparaging Fletcher in its public filings,[25] and making further unilateral amendments to its Fletcher agreements. After the Louisiana Officials, which had been redeemed with a distribution of the United Option securities, joined with the Dakota Parties to seize control of FIA Leveraged Fund through a Cayman Wind Up proceeding in which they were represented by the judge's personal counsel,[26] The *Wall Street Journal* reporters summarized the Cayman ruling's description of the changes to United Option:[27]

> "In a written decision released this past week, the Cayman Islands judge ... rejected the valuation set by Fletcher. It said that the bank had reset the conversion price after the bank brought in more investors and implemented a reverse stock split last year, making the rights far less valuable than Fletcher asserted."

Corsair and its co-investors remain United's largest shareholders. In early 2013, immediately after the Fletcher Trustee convinced his estate's parent company, Fletcher International, Inc., to return an earlier distribution that included a portion of the United Option so that the parties could pursue the United litigation jointly,[28] United suddenly announced a settlement.

The settlement agreement was among United, the Ernst & Young Liquidators, and the Louisiana Official, but not the other similarly situated stakeholders in the funds controlled by the Ernst & Young Liquidators. Reportedly, United paid $2.5 million to resolve the dispute over that portion of the United Option, which represented approximately 18 million common shares. The Ernst & Young Liquidators refused to permit the Soundview Elite, Ltd. and its affiliates to pay more than twice the settlement amount to acquire the United rights. The Ernst & Young Liquidators refused to seek approval of the Cayman court claiming it was unnecessary.

To facilitate the settlement, the Fletcher International, Ltd. chapter 11 trustee, for no material consideration, granted a "Release and Waiver" to United which was considerably broader than the Trustee and his counsel represented to the court in his motion seeking approval.[29] When the Fletcher Funds and Soundview Funds warned the Fletcher Trustee that he was conveying substantial value from

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

his estate, his counsel Michael Luskin of Luskin Stern, which represented Ernst & Young Liquidators in other proceedings,[30] claimed simply "I have my reasons."[31] On March 4, 2014, the Fletcher Trustee filed a motion proposing a settlement of his estate's portion of the United Option, which represented approximately 7 million common shares, in return for cash and stock from United valued at $12 million[32] and again made false representations to the court. The Fletcher Trustee had recently reported the estate's United Option's value at "approximately $71 million."[33]

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

**Timeline of Cooperation between US and Cayman Proceedings**

Connected fiduciaries and parties-in-interest cooperating between US and Cayman insolvency proceedings have removed substantial value from the estates with settlement that are not "arms-length," disregarding claims against connected parties, and allowing exaggerated claims made by connected parties.

1. On August 2011, the Louisiana Officials asked me, "How is this law firm and why are they...." with regard to why Dakota Party Quinn Emanuel was contacting them.

2. In or about December 2011, in an effort to pressure a modification to the agreements governing their redemption, the Louisiana Officials threatened to "just throw it into bankruptcy," an improper use of bankruptcy process due to the existence of "a *bona fide* dispute as to liability or amount" and the filing would be intended to benefit only the Louisiana Officials not creditors as a group.[34]

3. In or about December 2011 or January 2012, the Louisiana Officials breach the July 22, 2011 confidentiality agreement in which they promised not share information with the Dakota Parties and the Dakota Parties, including Quinn Emanuel outside counsel Gregory P. Joseph and Cayman law firm, Campbells, began representing the Louisiana Officials.[35]

4. In February 2012, after having been properly redeemed by the Fletcher fund, the Funds' Adversaries deployed the tactical maneuver of a bad faith winding up petition in the Grand Court of the Cayman Islands, the equivalent to an involuntary bankruptcy petition, even though "It would be an abuse of process to ask for a winding up petition when a debt was bona fide under dispute."[36]

5. The Funds' Adversaries, advised by the Dakota Parties, filed sworn affidavits which contradicted documentary evidence[37] and their multiple prior public statements[38] and which, against self interest, publicly denigrated the key asset on which the value of their investment ultimately depended, the United Community Banks, Inc. option ("United Option").

6. In April 2012, the Funds' Adversaries petition was granted and the their request to appoint Ernst & Young as Joint Official Liquidators was also granted despite the fact that Ernst & Young had worked for the Louisiana Officials for the past nine months.

7. The Chief Justice in paragraph 100 of his April 18, 2012 opinion sided with the counsel for the Funds' Adversaries', Ross McDonough of Campbells, and against hundreds of Cayman Islands funds and their counsel that created special purpose vehicles to facilitate distributions of their funds' assets as redemptions in kind over the past several years:[39]

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

> 100.  In support of the first ground of the Petition, Mr. McDonough advanced further arguments of a technical nature... that the distributions in specie were, in any event, non-complaint with the [Confidential Offering Memorandum] because they were required to be made from 'assets of the Fund...'

8. In paragraph 108 of his opinion, the Chief Justice appeared to rule that an option contract, regardless of the expert valuation entered in evidence, has no value prior to its exercise:

> 108. First, the distribution in specie of the FILBCI shares could have been of no real consequence... can lay no existing claim to a substantial proprietary interest in UCBI... is only the right to exercise the [United Community Banks, Inc.] Stock Option...

9. The Chief Justice presided over this hearing despite the fact that his personal counsel, Ross McDonough of Campbells, argued for the Louisiana Officials which would disqualify a judge[40] under U.S. legal system.  Mr. McDonough has represented the Chief Justice for years in, among other things, a mystery involving anonymous letters to the editor of a Cayman Newspaper [41] that were critical of the Chief Justice and what *The Independent* terms "attempts to pervert the course of justice over a Watergate-style break-in at a newspaper office on the islands, according to documents seen by *The Independent on Sunday*."[42]

10. The significance of this dual representation cannot be determined with certainty because, other than Scotland Yard's determination that the currently secret complaint filed by the leader of a U.K. Metropolitan Police task force alleging unlawful conduct by officials in the Cayman judiciary and government has merit, little is else is known of the allegations against the Chief Justice and other government figures.  The Foreign & Commonwealth Office[43] of the U.K. government refuses to release the complaint arguing:

> "disclosure could lead to a loss of confidence within the international community which could impact negatively on the Cayman Islands' reputation and, more directly, on its financial services industry"[44]

11. On Friday, February 8, 2013, the Fletcher Trustee and Fletcher International, Ltd.'s sole shareholder, Fletcher International, Inc., entered into a term sheet for the transfer of the approximately 3.5 million shares of the United Option then held by Fletcher International, Inc. back to Fletcher International, Ltd.  The parties sought to work together with the Ernst & Young Liquidators to pursue jointly the maximum recovery on the United Option and the Fletcher Trustee explicitly agreed to provide the Debtor's parent with "notice" and "opportunity to comment" on

> "any (a) proposed disposition of all or part of the Assigned Assets and (b) any contemplated non-ordinary course transactions."[45]

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

12. On Monday, February 11, 2013, Fletcher Trustee counsel spoke with Dakota Party Gregory P. Joseph counsel and with United counsel re "UCBI" and filed the Motion to Approve Term Sheet Agreement Between the Trustee and Fletcher International, Inc. A few days later, the Appeals Court of the Cayman Islands which dismissed the appeal of the Grand Court wind up order six months earlier in August 2012 issued its written opinion, the lack of which had substantially delayed the appeal to the U.K. Privy Council.

13. On February 20, 2013 Bankruptcy court approved the Term Sheet and within 36 hours, United filed a Form 8-K[46] with the U.S. Securities and Exchange Commission and publicly announced a settlement with the Ernst & Young Liquidators including a release and waiver from the Fletcher International, Ltd. trustee in return for a $2.5 million cash payment to the Ernst & Young Liquidators.

14. The Ernst & Young Liquidators did not provide notice nor grant an opportunity to their stakeholders to comment on the terms of the settlement with United, refused to even entertain higher offers made by the Soundview funds, and refused a request from the Soundview funds to seek Cayman Court approval of the settlement declaring:[47]

> "As it is not necessary, we will not be pursuing court sanction in Cayman of the mediation settlement."

15. On February 27, 2013, in violation of its February 8, 2013 term sheet with Fletcher International, Inc., the Fletcher Trustee did not include the United settlement agreement in its motion to the Bankruptcy Court and refused to share it with Fletcher International, Inc. but nevertheless executed the release and waiver requested by United and the Ernst & Young Liquidators in which:

> "The FILB Chapter 11 Trustee hereby agrees that it shall take all steps necessary to secure the FILB Bankruptcy Court's approval of this Mutual Release and Waiver..."

16. On Friday, March 8, 2013, the Fletcher Trustee and Fletcher International, Inc. execute the Omnibus Agreement related to the Term Sheet and on Monday, March 11, 2013, the Fletcher Trustee counsel filed the Motion to Approve the Release and Waiver between the Debtor and United Community Banks, Inc.

17. A few days later, on March, 14, 2013, United proposed to affiliates of Fletcher International, Inc. to accept collateral in full satisfaction of their loans from United relating to their 2010 purchase of United's non-performing assets. On March 31, 2013, United seized the assets claiming a technical default. The borrowers were all fully current in their financial obligations under those loans.

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

18. On April 10, 2013, the Bankruptcy Court approved the United release. Weil Gotshal, then counsel to Soundview and Richcourt funds refuses to object to significant failures in the proposed release and waiver that provides the estate with no meaningful consideration and leaves it unable to properly pursue United for its wrongdoing, arguing on April 9, 2013:

> Buddy, I think the important point is that the Trustee and the counsel believes it does and we have no basis to point out a gaping hole in the document. We have pointed out your concerns and they believe there is nothing to worry about and they are not waiving any rights or causes of action unnecessarily. Michael (and Richard) despite what you think of them are both excellent lawyers.

19. On June 26, 2013, United announced the bulk sale of non-performing assets to Great Oak Pool I LLC during its second quarter at a $50 million discount:

> "The classified assets sold during the quarter included $131 million of performing classified loans, non-performing loans and foreclosed properties sold in a bulk sale for an aggregate purchase price of approximately $81 million (the "*Transaction*")."

20. On September 23, 2013, Fletcher fund affiliate Soundview Elite, Ltd. and five of its affiliates ("Soundview Debtors") filed for protection under chapter 11 in the Southern District of New York Bankruptcy Court. Later that day, Chief Justice Smellie granted wind up petitions filed by Citco[48] though he was not the judge scheduled to hear the cases and the wind up proceeding was stayed by the chapter 11 filing. The Cayman Court of Appeals registrar then struck the the pending Privy Council appeal citing Campbells claim that the $200,000 "security for costs" held in Cayman since August had been received two business days too late.[49]

21. In the Soundview chapter 11 proceedings, former Fletcher counsel Paul Weiss in *Fletcher v Dakota* represented Citco.[50] Soundview investors Pasig Ltd. was represented by Kasowitz Benson which had replaced Paul Weiss as our Fletcher counsel until it too withdrew.

22. On November 25, 2013, the Fletcher Trustee released his "Trustee's Report and Disclosure Statement." The Court required the Fletcher trustee to add a disclaimer to the start of the document clarifying that it contained unsubstantiated opinion and allowed objectors to include a supplement which contradicting much of the Report.[51]

23. After a five day trial in December and January, Judge Gerber found "no fraud or incompetence" in the Soundview management. He also found that the liquidators repeatedly violated the "automatic stay" in U.S. Bankruptcy law. Nevertheless, he removed management with the appointment of a chapter 11 trustee and gave the liquidators shared control over the Soundview debtors. The Soundview directors have filed an appeal.

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

24. The Soundview trustee selected by the U.S. Trustee and approved by the Bankruptcy Court appears to have the same undisclosed connections as the previously fiduciaries have had in these associated cases. She appears to be pursuing a plan with the Fletcher Trustee.

25. The Fletcher Trustee's "Plan of Liquidation," in brief, proposes to award virtually all the estate to former indirect investors that have already been redeemed, the Ernst & Young Liquidators and certain but all of their stakeholders. The Plan awards none of this solvent estate to the true parties-in-interest including the sole shareholder. Finally, the Plan proposes to create a litigation trust to file frivolous suits against insiders and service providers.

---

[1] Verified Amended Complaint, Paragraph 169:
   FAM has suffered injury in that defendants' false statements have damaged its reputation as a successful investment firm, and this reputational injury has had a further damaging effect on relationship with current and prospective investors, and on resulting profits.

[2] Verified Amended Complaint, Paragraph 14:

[3] Verified Amended Complaint, Paragraph 14:
   Specifically, they spread lies throughout the media that FAM is not profitable, that it is highly leveraged, and that its capital is being depleted. These more recent acts of defamation were consistent with Defendant Barnes' threat to Fletcher in June 2010 that if Fletcher went ahead and vindicated his rights by filing this lawsuit, the Board would do everything in its power to destroy Fletcher and his reputation in the business community.

[4] Verified Amended Complaint, ¶ 2:
   ...this is a case about "pay back" — defendants' unlawful scheme to retaliate against Fletcher for having the temerity to stick up for the rights of others, including minority, Jewish, and female shareholders and applicants at the Dakota and then to further defame Fletcher and FAM when he had the courage to bring their discriminatory conduct to light.

[5] Verified Amended Complaint, Exhibit A, Preliminary Report of FTI Consulting, April 6, 2011, Page 13:
   Between the years 2007 through 2010, the Fletcher Funds have disposed of 908 securities. These transactions have resulted in $1.2 billion in sales proceeds resulting in a net gain of $207 million for the funds.

[6] *Fletcher v Dakota*, Supreme Court, Appellate Division, First Department, July 3, 2012, Acosta, J.
   *Fletcher v. The Dakota, Inc.*, 99 A.D.3d 43, 54-56 (1st Dep't 2012)

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

[7] Verified Amended Complaint, Exhibit A, Preliminary Report of FTI Consulting, April 6, 2011, Page 13 (emphasis added).
    We received and reviewed the following documents:... J.P.Morgan Chase loan documentation for *Mr. Fletcher's loans that are secured by real estate and finance his business*

[8] Verified Amended Complaint, Paragraph 69.
    Finally, they said that Fletcher's "business loans" had left him "over-extended and at risk." They incorrectly asserted that the FAM loans had call provisions and thus were not long-term capital.

[9] In their Tribune Company deals and others, JPMorgan Chase is a close business partner and agent of Angelo, Gordon & Co., a $25 billion bankruptcy arbitrage hedge fund founded and run by John M. Angelo, one of the Dakota's three largest shareholder-residents.

[10] At the time I refused to believe that these developments were anything other than strange coincidence but later I read about what seemed to be similar conduct by the bank.
- May 4, 2010 email that surfaced in the Tribune Company bankruptcy that described strong-arm tactics being used by JPMorgan Chase to force an investment group into agreeing with the deal that Angelo Gordon favored: "JPM is twisting his arm and has lot's of leverage on the fundraising front."
- American Lawyer Daily reported on July 7, 2008: "It hasn't been a summer to remember for Linklaters. First one of the firm's biggest clients, J.P. Morgan, dropped Linklaters from its preferred counsel list because of a suit it filed against Barclays."
- May 28, 2010 discrimination settlement: U.S. Department of Housing and Urban Development, Annual Report on Fair Housing Fiscal Year 2010:
    On December 10, 2009, an African-American couple filed a complaint with the Louisiana Public Protection Division, a HUD-certified FHAP agency, alleging that J.P. Morgan Chase Home Finance denied their loan application based on their race... The couple believes that the senior processor kept trying to find reasons to not approve the loan. The couple believes that they were treated in this manner and denied the loan because they were trying to purchase a property in predominately white area... On May 28, 2010, the parties entered into a conciliation agreement. Under the terms of the agreement, J.P. Morgan Chase will pay the couple $27,000.
    http://portal.hud.gov/hudportal/documents/huddoc?id=ANNUALREPORT2010.PDF

[11] Other banks including Angelo, Gordon & Co. allies HSBC and Credit Suisse, and Citco Bank backed by Angelo, Gordon & Co. partner Silverpoint Capital, closed or refused to open accounts for Fletcher International, Ltd and its affiliates. Some of the banks, without explanation or any involvement in any court proceeding, continue to refuse valid wire instructions from Fletcher-related entities to transfer their own cash.

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

[12] *Upstart Business Journal*, May 20, 2010, "Non-Toxic Solution," J. Scott Trubey (upstart.bizjournals.com)

"Few in the United States outside of banking circles or the North Georgia Mountains likely know of United Community Banks Inc. But the bank, based in tiny Blairsville, Georgia, might have found an innovative solution to soured real estate loans that other community banks will try to replicate... Banks face four primary challenges: capital adequacy, classified asset concentrations, recurring earnings, and liquidity. "This structure responds to all four challenges," said Olasov, the McKenna Long & Aldridge managing director. "This particular structure, this is very patient money. These are long-dated warrants.""

Atlanta Journal Constitution, "Sells a piece of itself along with bad loans," April 1, 2010, Paul Donsky (www.ajc.com)

Experts said what makes the deal unusual – and potentially groundbreaking – is that Fletcher will invest in the bank by buying shares, in essence becoming a part owner. Analysts said the arrangement should provide the bank with capital to help it work though its remaining pool of troubled loans as well as be in a position to buy failed banks. Having Fletcher invest in the bank "is the wrinkle that makes [the deal] unique. It's frankly what we think needs to happen in the industry," said Chris Marinac, an analyst at FIG Partners in Atlanta. "Other banks will replicate this over time."

[13] United Community Banks, Inc., Press Release, April 1, 2010 (www.ucbi.com)

[14] *Financial Times,* "Fund to help banks meet Basel rules," October 27, 2010, Sam Jones (www.ft.com)

John Angelo had claimed on August 7, 2007 that he was bailing out Christofferson Robb due to the "liquidity crisis." Christofferson Robb's new fund was backed by Angelo, Gordon & Co. partner Credit Suisse, its co-investor in Philadelphia Media and Tribune Company.

[15] *Reuters*, "United Community see lower provision, shares," April 22, 2010 (www.reuters.com)

[16] *Dow Jones Private Equity & Venture Capital*, "Tailwind, Angelo Gordon Lead Investment In Hamilton State Bank,"June 9, 2010, Shasha Dai [requires subscription]

[17] *Bloomberg*, June 9, 2010, "Moelis, Angelo Gordon Seek to Buy Banks in Georgia, Texas" Daykin Campbell and Jonathan Keehner (www.bloomberg.com)

[18] See e.g. February 2011 emails from Skadden relaying Wachtell's threats of regulatory intervention if Fletcher objected.

[19] United Community Banks, Press Release, March 31, 2011

[20] United Community Banks, Inc., 2012 Proxy Statement

[21] Reuters, "United Community Banks, Inc. Announces $380 Million Capital Raise and Plans to Sell $435 Million of Classified Assets," March 16, 2011 (www.Reuters.com)

[22] *Wall Street Journal,* "Corsair Still Wandering Around The Bank 'Wasteland,'" March 17, 2011, By Shasha Dai

## Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases
### In the Format Requested by Honorable Robert E. Gerber

[23] *Atlanta Business Chronicle*, August 19, 2011, "Top Business Deals of 2011," (www.bizjournals.com/atlanta)
$168 million Firm: Kilpatrick Townsend & Stockton LLP Date (of transaction): April 2010 Description (of transaction): Represented United Community Banks Inc. (Nasdaq: UCBI), the third-largest bank holding company headquartered in Georgia, in its agreement to sale of up to $65 million of United's convertible preferred stock and $103 million of nonperforming assets at United's book value to Fletcher International. The transaction, the first of its type in the United States, included seller financing of 80 percent of the asset purchase, and the grant of a warrant to purchase $65 million of United's common stock to Fletcher.

[24] See for example, emails from Skadden Arps of February 2011.

[25] United Community Banks, Inc., Second Quarter 10-K Report to the U.S. Securities and Exchange Commission (www.sec.gov):
While recent news articles and other sources have questioned the financial health of Fletcher and its affiliates, the loans to the LCCs have performed according to their contractual terms since inception and there have been no delinquencies to date. As a result, even though these loans represent our largest loan relationship, we consider these loans performing and have not established specific reserves related to them. Should our assessment of this loan relationship change, we would then take appropriate action.

[26] The Louisiana Officials' wind up petition was argued by Campbells, co-counsel to Quinn Emanuel, and personal counsel to the Cayman Islands Chief Justice who presided over the wind up petition, granted the petitions despite the disputed debt, and granted the request to appoint Ernst & Young as liquidators despite Ernst & Young having worked for the the Louisiana officials for previous nine months.

[27] *Wall Street Journal*, "Funds Face Snags in Fletcher Case," Josh Barbanel and Steve Eder, April 29, 2012

[28] The "Omnibus Agreement" between Richard J. Davis, Fletcher International, Ltd. chapter 11 trustee, and Fletcher International, Inc. provided that "Assignee shall provide notice to Assignor, and provide Assignor with an opportunity to comment on the terms of, of any (a) proposed disposition of all or part of the Assigned Assets."

[29] Trustee's Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019(A) Approving the Release and Waiver Between the Trustee and United Community Banks, Inc. (ECF No. 67.)

[30] DECLARATION OF MICHAEL LUSKIN IN SUPPORT OF TRUSTEE'S APPLICATION FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF LUSKIN, STERN & EISLER LLP AS HIS COUNSEL NUNC PRO TUNC TO SEPTEMBER 25, 2012 (ECF No. 120)

[31] See e.g. April 2013 emails with Weil Gotshal, counsel to Fletcher funds affiliates Soundview funds.

[32] TRUSTEE'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019(A) APPROVING THE SETTLEMENT AGREEMENT BETWEEN FLETCHER INTERNATIONAL, LTD. AND UNITED COMMUNITY BANKS, INC. (ECF No. 439)

[33] Trustee's Report and Disclosure Statement, ECF 327, page 130.

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

[34] 11 USC § 303 - Involuntary cases

[35] Firefighters' Retirement System Board Meeting, January 12, 2012, "MOTION: Mayor Foster moved to ratify the hiring of Caymen Islands counsel, The Campbells law firm. Mayor Durbin seconded. The motion passed."

[36] *Mann v Goldstein* [1968] 1 WLR 1091

[37] For example, the March 20, 2012 "Second Affidavit of Steven Stockstill" submitted "*In the Matter of FIA Leveraged Fund*" FSD Cause No 0013 of 2012 falsely declared the FILB Co-Investment shares to be a "liability" not an "asset" and falsely declares that the United Option cannot be exercised unless Fletcher International, Ltd. has $65 million of cash on each option exercise closing date.

> I think that it is fair to describe the "asset" that has purportedly been distributed to the Petitioners as completely the opposite; namely, a liability. Fletcher International Ltd ("Fletcher International") has an obligation to UCBI to purchase the stock described above.
>
> Paragraph 7(d) of the Securities Purchase Agreement ("SPA") a copy of which is exhibited to Exhibit ST 1 contains a representation required to be made by Fletcher International that on each Closing Date (31 May 2011 or by 31 May 2012) it will have sufficient immediately available funds in cash to enable it to pay the Investment Amount (US$65 million) on such Closing Date... It appears clear from the letter from Walkers dated 16 March 2012 that Fletcher International could not have certified that it was in a position to fund the obligation under the SPA...

[38] On September 9, 2011, the Louisiana Officials released a joint public statement:
> The review was conducted with "a principal in the investigation and dispute services unit of Ernst & Young accounting firm...The assets and their valuations have now been corroborated."

[39] Later that year, on November 30, 201, Chief Justice Smellie said in a speech, FIA Leverage is another sentimental favourite of mine..." ADDRESS TO THE RECOVERY AND INSOLVENCY SPECIALISTS ASSOCIATION (CAYMAN) LIMITED (RISA) [THE LOCAL CHAPTER OF INSOL INTERNATIONAL], THE WESTIN HOTEL, GRAND CAYMAN, 30TH, NOVEMBER 2012

[40] 28 U.S. Code § 455(a), In re Cargill, 66 F.3d 1256 (1st Cir. 1995) (https://bulk.resource.org/courts.gov/fjc/recusal.pdf)
> The disqualification requirement of section 455(a) is triggered, despite the lack of any actual bias on the judge's part, if a reasonable person, knowing all the circumstances, would question the judge's impartiality. See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 861-62, 108 S.Ct. 2194, 2203-04, 100 L.Ed.2d 855 (1988). Most observers would agree that a judge should not hear a case argued by an attorney who, at the same time, is representing the judge in a personal matter. See 13A Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure Sec. 3549, at 614 (1984) (citing cases).

[41] In Paragraph 18 of his April 18, 2012 opinion that granted the winding up petition, the Chief Justice writes:
> [T]he Investment Manager appears to be the subject of an investigation by both the U.S. Securities Exchange Commission and the U.S. Federal Bureau of Investigation. This last assertion of the Petition relies on newspaper reports of the investigations mentioned and the Company...

## Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases
## In the Format Requested by Honorable Robert E. Gerber

[42] *The Independent*, "Corruption and the FCI: Blue skies, white sand, dark clouds," May 26, 2013, Paul Peachey (www.indpendent.co.uk)

[43] The U.K. Foreign & Commonwealth Office, often abbreviated as "FCO," promotes British interests overseas, supporting our citizens and businesses around the globe.  The head of the FCO is the Secretary of State for Foreign and Commonwealth Affairs, commonly abbreviated to "Foreign Secretary." (www.gov.uk)

[44] Ibid.

[45] This provision was in the March 8, 2013 executed final agreement.  The below provision which was included in the February 8, 2013 executed term sheet:
> any (a) proposed disposition of the assets transferred to [the trustee] pursuant to the Unwind Transactions (the "Returned Assets") and (b) any contemplated non-ordinary course transactions."

[46] While the February 22, 2013 press release issued by United refers to settlement of its "litigation with FILB Co-Investments LLC," United's 8-K filed on the same day states that United and "the parties to the lawsuit" agreed to a settlement.  The settlement includes FILB Co-Investments LLC, then controlled by the Ernst & Young Liquidators, and includes only three of the several parties in interest for which the Ernst & Young Liquidators serve as fiduciaries.  Those three parties, pension funds controlled by the Louisiana Officials, retained Ernst & Young in July 2011, nine months prior to the appointment of Ernst & Young as Joint Official Liquidators.  (www.sec.gov)

[47] *In re Soundview Elite, Ltd., et al*, Case No. 13-13098 (REG),SUPPLEMENTAL DIRECT TESTIMONY AFFIDAVIT OF ALPHONSE FLETCHER, JR. ON MOTION'S TO DISMISS CONVERT OR APPOINT A TRUSTEE, December 11, 2013

Email from Robert McMahon to Cherry Bridges, April 3, 2013, "re - Richcourt Holding Inc."

[48] Citco is the founder of the funds, the 15% indirect owner of the funds' investment advisor, and was the funds' administrator.[42]  Citco was represented by Paul Weiss in the Soundview proceedings.

[49] The timing of the Registrar's action, a few days after the Soundview chapter 11 filing preempted the Cayman winding up proceedings, and the irregularity of not favoring a trial on the merits struck some as vindictive.

[50] Paul Weiss cleared conflicts, drafted the original complaint in *Fletcher v Dakota*, and managed the case for more than six months.  Paul Weiss did not appear in court and selected another law firm to appear in its place.  Paul Weiss explained that its managing partner would not allow the firm to appear in this case because John Angelo's Angelo, Gordon & Co. is an "important" client of Paul Weiss.

[51] In brief, the report repeats allegations which the Dakota Parties have been making since 2010.  It falsely claims that Fletcher International, Ltd. was insolvent since 2008, made not a single profitable investment during the past few years, carrying investments at grossly inflated valuations, and made investments that were authorized by its governing documents.  Judge Gerber permitted the Soundview Soundview Debtors' to insert a supplement which provided evidence of the falsity of the Trustee's claims.  In brief, the Soundview supplement referred to evidence of several independent parties the confirmed that Fletcher International, Ltd. in fact profitably sold investments and realized profits of approximately $150 million over the past few years pursuing the investment strategies described in its governing documents.