Alphonse Fletcher, Jr.
48 Wall Street, Fourth Floor
New York, NY 10005
(212) 284-4800



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FLETCHER INTERNATIONAL, LTD.,<br><br>                        Debtor. | Chapter 11<br>Case No. 12-12796 (REG) |

### ALPHONSE FLETCHER'S CHALLENGE TO EQUITY SUBORDINATION

I, Alphonse Fletcher, Jr., am not an attorney and am appearing *pro se*[1] as a party-in-interest in these associated cases[2] ("Associated Cases" or "Estates"). I hereby join in Stewart Turner's challenge to equitable subordination in the Trustee's Second Amended Plan of Liquidation, "Further Response of Stewart Turner as Directed by Judge Gerber to Paragraphs 96 and 98-149 of the Testimony of Richard J. Davis in Support of Confirmation of the Trustee's Second Amended Plan of Liquidation." I concur with Mr. Turner's statements with the below exceptions. The Trustee and his advisors, still refusing to comply with their legal obligations including Rule 2014 and Code section 327(a), make material, demonstrably false, statements in their effort to harm the estate.

---

[1] I respectfully request that the Court accept these statements in spite of any procedural missteps including timing, structure, language, or other formalities. I will quickly address any shortcomings which I can as soon as I am aware.

[2] *In re Fletcher International, Ltd.* (12-12796), *In re Soundview Elite, Ltd. et al.* (13-13098-reg), *In re Fletcher Income Arbitrage Fund (in official liquidation)* (14-10093-reg), and *In re FIA Leveraged Fund (in official liquidation)*.

Fletcher Reply and Joinder of March 26, 2014

The following examples from page 54 of the Trustee's Declaration are most troubling not because they are inflammatory and false but because they are so easily proven false they call into question the integrity of the Trustee and his advisors.

> "On December 31, 2010, FILB made a $4 million investment in DSS. On the same day, FAM marked that position at $23.6 million (also its highest mark), suggesting an immediate unrealized profit of $19.6 million. This effectively meant that for $1 million spent by FILB, FAM received credit for $19.6 million in unrealized gains, which on the margin would result in an approximately $4 million incentive fee on this one transaction alone. This position was liquidated between February and June 2011 for a total of approximately $3.1 million.
>
> On February 24, 2011, FILB made an investment in a warrant issued by HPG that had been acquired for $1 million. By February 28, 2011, FAM had marked the position at $25.7 million. This effectively meant that for $1 million spent by FILB, FAM received credit for $24.7 million in unrealized gains, which on the margin would result in an approximately $5 million incentive fee on this one transaction alone."

The Trustee falsely claims that the investments were marked at a false profit on the day they were purchased and that fees totaling $9 million were collected by FAM from these two investments alone. In fact, accounting rules require the funds and the companies that issued the securities to mark the substantial warrants at an estimate of each instrument's fair value, not at cost and not at a value of zero as the Trustee and his advisors have claimed. Further, as the Trustee and his advisors are fully aware, their statement that $9 million in performance fees was collected is simply wrong as the records show no performance fees collected during those periods and no performance fees collected with respect to those investments. These outrageous false statements are consistent with the errors throughout the Trustee's Report and Declaration as evidenced in Mr. Turner's filing.

Fletcher Reply and Joinder of March 26, 2014

Attached is the letter I submitted to the court yesterday requesting permission to address the Trustee's false statements that underly his effort to subordinate the claims of parties affiliated with me and my company, Fletcher Asset Management. It includes a summary of the evidence that is detailed in Mr. Turner's submission and in the Trustee's own binder of exhibits from the Confirmation Hearing.

The exceptions to Mr. Turner's submission involve the following paragraphs.

102. The primary purpose of the transactions was to allocate assets to indirect holders fairly.

Footnote 7. The $3.25 million claim is not a legitimate claim as it was no longer owed, pursuant to the investment agreements, once United Community Banks failed to maintain its registration statement.

106. The April 22 Transactions were undone after Mr. Davis convinced me that he wanted to work together with me to maximize the value of the United warrants. This cooperation is noted in the term sheet and the agreement. Unfortunately, Mr. Davis had already agreed to provide a Release and Waiver to United prior to executing this agreement.

118. The "Side Letter" with MBTA Retirement Fund, the Offering documents, and the documents to which they refer speak for themselves. None of them restrict the Debtor in the manner that the Trustee has falsely claimed.

I cannot speak to the issues pertaining to Mr. Turner in which I had no involvement such as paragraphs 120 through 131.

Fletcher Reply and Joinder of March 26, 2014

Paragraphs 132 through 136 relate to "The Insiders Cause the Debtor to Invest in AF's Brother's Movie." In addition to the limited comments made by Mr. Turner, I would add that the record, including the email with Skadden, presents a picture different from that of presented by the Trustee. While the Trustee reluctantly acknowledges that a substantial tax credit was received, he neglects to mention that its amount was $2.2 million and that it was one of several factors relating to this investment that the record reveals were analyzed from a business and a legal basis.

In paragraph 139 and others, Mr. Turner suggests that the SEC "required restated financials" but I do not believe that is correct. He also comments that "profits may not have been realized" in certain transactions. This is true but as the "Realized Gains" schedule used by the Trustee reveals, more than $150 million in profits were in fact realized from 2007 through 2012.

Paragraph 144 misstates the intention and the effect of what the Trustee terms "cashless notes" as Mr. Turner addresses. With respect to EITF 85-1, that advice relates to public companies not private investment funds as confirmed by the experts involved in the SEC examination of the issues.

Dated: New York, NY
April 10, 2014

Alphonse Fletcher, Jr.
Party-in-Interest *pro se*
48 Wall Street, 4th Floor
New York, NY 10005
(212)284-4800

4