STEWART TURNER, Pro Se

Address:  200 East 71st St., Apt. 5A

New York, NY 10021

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

---

|  | X |  |
|---|---|---|

In re:

Chapter 11

FLETCHER INTERNATIONAL, LTD.

Case No. 12-12796 (REG)

Debtor.

|  | X |  |
|---|---|---|

**APPELLANT STEWART TURNER'S STATEMENT OF ISSUES ON APPEAL**

**AND DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD**

Pursuant to Federal Rule of Bankruptcy Procedure 8006, the Appellant Stewart Turner ("Appellant" or "Stewart Turner") respectfully submits this Statement of Issues on Appeal and Designation of Items to be Included in the Record on Appeal.  Appellant timely filed his Notice of Appeal

1

(Docket No. 494) of the March 20, 2014 Order Approving Settlement Agreement Between Fletcher International, Ltd., and United Community Banks, Inc. (Docket No. 465).

I.   **Issues Presented**

(1)   Whether the Bankruptcy Court was given correct and complete information by the Trustee's Counsel to make a fully informed decision based on facts presented or comments presented as fact in determining that the Trustee's settlement of a dispute over the  estate's largest asset (an asset that accounts for the vast majority of the estate's value),  at 12% of the intrinsic value upon exercise of that warrant (specifically for $12 million when the asset had an intrinsic value of $100 million) falls above the lowest level on the range of reasonableness  (TMT Trailer Ferry, as mentioned by Judge Gerber in Exhibit A at page 17 of the March 19, 2014 transcript), and thereby gave approval to that settlement under Bankruptcy Rule 9019 without the correct facts in evidence?

(2)   Whether such a severe discount off of the as-converted value of the asset can be justified by "litigation risk," as was argued by the Trustee, where binding precedent from the New York Court of Appeals holds that this specific asset – a warrant to buy shares of stock following a 1:5 reverse stock split – should  be transacted at intrinsic value.

(3)   Whether under the circumstances, the Trustee's disposition of this asset at 12% of intrinsic value was a transfer lacking reasonably equivalent value.

II.   **Designation of Record**

Appellant Stewart Turner designates the following items for inclusion in the appellate record. Unless otherwise noted, all references are to docket entry numbers of electronically filed documents in this Chapter 11 case.

| Designation No. | Date of Filing | ECF No. | Description |
|---|---|---|---|
|  |  |  |  |

| | | | |
|---|---|---|---|
| 1. | 3/5/2014 | 437 | Chapter 11 Trustee's ex parte application to shorten the notice period for the hearing of the Trustee's motion for entry of an order pursuant to Bankruptcy Rule 9019(A) approving the settlement agreement between the Debtor and United Community Banks, Inc. |
| 2. | 3/5/2014 | 438 | Order granting the Chapter 11 Trustee's ex parte application to shorten the notice period for the hearing of the Trustee's motion for entry of an order pursuant to Bankruptcy Rule 9019(A) approving the settlement agreement between the Debtor and United Community Banks, Inc. |
| 3. | 3/5/2014 | 439 | Trustee's Motion for entry of an order pursuant to Bankruptcy Rule 9019(A) approving the settlement agreement between Fletcher International, Ltd. and United Community Banks, Inc. |
| 4. | 3/5/2014 | 440 | Declaration of Richard J. Davis in support of the Trustee's motion for entry of an order pursuant to Bankruptcy Rule 9019(A) approving the settlement agreement between Fletcher International Ltd. and United Community Banks, Inc. |
| 5. | 3/5/2014 | 441 | Notice of Hearing for Trustee's motion for entry of an order pursuant to Bankruptcy Rule 9019(A) approving the settlement agreement between Fletcher International, Ltd. and United Community Banks, Inc. |
| 6. | 3/6/2014 | 443 | Certificate of Service filed by Stephan Hornung on behalf of the Trustee. |
| 7. | 3/12/2014 | 452 | Objection of Stewart Turner to Trustee's Motion to Trustee's Order for Entry of an Order Pursuant to Bankruptcy Rule 9019(a) approving the settlement agreement between Fletcher International, Ltd. and United Community Banks, Inc. |

| | | | |
|---|---|---|---|
| 8. | 3/13/2014 | 453 | Affidavit of Service filed by Stewart Turner. |
| 9. | 3/17/2014 | 456 | Chapter 11 Trustee's response to the objection of Stewart Turner to the Trustee's motion for entry of an order pursuant to Bankruptcy Rule 9019(A) approving the settlement agreement between Fletcher International, Ltd. and United Community Banks, Inc.. |
| 10. | 3/18/2014 | 459 | Notice of Agenda for March 19, 2014 Hearing filed by Michael Luskin |
| 11. | 3/19/2014 | Docket Number Unavailable | Hearing Transcript – attached as Exhibit A |
| 12. | 3/20/2014 | 465 | Order Pursuant to Bankruptcy Rule 9019(A) approving the settlement agreement between Fletcher International, Ltd. and United Community Banks, Inc. |
| 13. | 4/2/2014 | 494 | Notice of Appeal filed by Stewart Turner |

Dated April 16, 2014.

*Stewart Turner*

**STEWART TURNER**

4

# Exhibit A

# In Re:

### FLETCHER INTERNATIONAL, LTD.
### Case No. 12-12796-reg; Adv. Pro. No. 13-01814-reg

---

### March 19, 2014

---

*eScribers, LLC*
*(973) 406-2250*
*operations@escribers.net*
*www.escribers.net*
**To purchase copies of this transcript, please contact us.**



Min-U-Script® with Word Index

1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 12-12796-reg; Adv. Pro. No. 13-01814-reg

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7   FLETCHER INTERNATIONAL, LTD.,

8              Debtor.

9   - - - - - - - - - - - - - - - - - - - -x

10  RICHARD J. DAVIS,

11             Plaintiff,

12     - against -

13  FLETCHER INTERNATIONAL, INC.

14             Defendant.

15  - - - - - - - - - - - - - - - - - - - -x

16             United States Bankruptcy Court

17             One Bowling Green

18             New York, New York

19

20             March 19, 2014

21             9:57 AM

22

23  B E F O R E:

24  HON. ROBERT E. GERBER

25  U.S. BANKRUPTCY JUDGE

2

1

2   Adversary proceeding: 13-01814-reg Davis v. Fletcher

3   International, Inc.

4

5   1) Pre-Trial Conference

6

7   2) Trustee's First Omnibus Claims Objection (Proofs of Claim

8   Filed by Certain Pension Funds)

9

10  3) Trustee's Second Omnibus Claims Objection (Proofs of Claim

11  Filed by FAM-Affiliated Indirect Investors) Soundview Objection

12  Adjourned to 4/30/14 at 9:45 a.m.

13

14  4) Trustee's Objection to Proof of Claim No. 23 Filed by Kell

15  B. Benson

16

17  5) Trustee's Objection to Proof of Claim No. 69 Filed by

18  William Cleveland

19

20  6) Discovery Conference RE: Motion of Fletcher Asset Management

21  Inc. for an Order Enjoining the trustee from Producing

22  Documents to Ostad PLLC (Counsel to the BVI Funds) in Violation

23  of Uniform Protective Order Governing trustee Discovery

24

25  7) Motion Filed by the trustee for an Order Approving the

3

1   Settlement Agreement Between Fletcher International, Ltd. and

2   United Community Banks, Inc.

3

4   8) Hearing to Consider (i) the Stipulation and Order

5   Temporarily Allowing the Claim of Gregory Messer, Chapter 7

6   trustee, for Plan Voting purposes and (ii) the Stipulation and

7   Order Resolving the Proof of claim, Filed by Jeffrey M. Colon

8

9   9) Trustee's Objection to Proof of Claim No. 26 Filed by

10  Jeffrey M. Colon

11

12  10) Doc# 459 Notice of Agenda for March 19, 2014 Hearing

13

14

15

16

17

18

19

20  Transcribed by:  Linda Ferrara

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

4

```
 1
 2   A P P E A R A N C E S :
 3   LUSKIN, STERN & EISLER LLP
 4         Attorneys for Chapter 11 Trustee
 5         Eleven Times Square
 6         New York, NY 10036
 7
 8   BY:   STEPHAN E. HORNUNG, ESQ.
 9         MICHAEL LUSKIN, ESQ.
10
11
12   RICHARD J. DAVIS, ATTORNEY AT LAW
13         Chapter 11 Trustee
14         451 Madison Avenue
15         11th Floor
16         New York, NY 10017
17
18   BY:   RICHARD J. DAVIS, ESQ.
19
20
21
22
23
24
25
```

5

1

2  UNITED STATES DEPARTMENT OF JUSTICE

3       Office of the United States Trustee

4       201 Varick Street

5       Suite 1006

6       New York, NY 10014

7

8  BY:   RICHARD C.  MORRISSEY, ESQ.

9

10  JONES DAY

11       Attorney for Soundview Elite, et al.

12       221 East 41st Street

13       New York, N Y 10017

14  STEPHEN PEARSON, ESQ.

15

16  ALSO PRESENT:

17       ALPHONSE FLETCHER, Fletcher Asset Management

18          (Telephonically)

19       GEORGE LADNER, Fletcher Asset Management (Telephonically)

20       KAREN OSTAD, ESQ., Ostad PLLC, Attorney for Deborah

21          Midanek (Telephonically)

22       STEWART TURNER, Pro Se

23

24

25

FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

1                      P R O C E E D I N G S

2              THE COURT:  Let me get appearances from everybody and

3    then I have some preliminary comments.

4              MR. LUSKIN:  Okay.  Your Honor, Michael Luskin and

5    Stephan Hornung from Luskin, Stern & Eisler for Richard Davis,

6    the Chapter 11 trustee and Mr. Davis is in the front row.

7              MR. TURNER:  Stewart Turner.

8              THE COURT:  Okay.  Anybody else expect to be heard on

9    this matter?  What about on the phone?  Are you on, Mr.

10   Fletcher?

11             MR. FLETCHER:  Yes.  Yes, I am, Your Honor.

12             THE COURT:  All right.  Before you begin, Mr.

13   Luskin --

14             MR. LADNER:  Your Honor, so is George Ladner.

15             THE COURT:  All right.  Gentlemen, ladies, at 8:50

16   a.m. this morning -- that's less than an hour before this

17   hearing was supposed to start -- my chambers got a letter from

18   Mr. Fletcher in both the FILB -- relating to both the FILB and

19   Soundview cases of some length, seemingly, at least, served on

20   all parties, although I don't know if anybody would have had

21   the ability to read it in the time before this hearing

22   commenced.

23             Mr. Fletcher says, amongst many other things, that he

24   requests that I address the issues he raises in his letter as a

25   threshold matter in advance of other actions in these

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

7

1    proceedings.  That request is going to be and is denied.  You

2    don't communicate with the Court fifty minutes before a hearing

3    is supposed to start, raising a threshold issue when people who

4    might have a different view of the world haven't had a chance

5    to respond.  And indeed, haven't had a fair opportunity to even

6    read the motion that is said to justify consideration as a

7    threshold matter in advance of other proceedings.  That is,

8    indeed, assuming that the letter should be deemed to be a

9    motion, a matter as to which I now take no position.

10            We're going to proceed with these matters.  Mr.

11    Fletcher, you're going to need to submit to me a motion asking

12    for the relief that you're looking for.  You can incorporate

13    your letter if you wish.  You get a hearing date from my

14    courtroom deputy.  You provide your opponents or expected

15    opponents with an opportunity to respond and if you wish to

16    reply, you provide for enough time for you to file your reply

17    and for me to read your reply papers.

18            But deeming this letter to be a request for either an

19    adjournment or a consideration of the issues in this letter as

20    a threshold matter, that request is denied.

21            Now, Mr. Luskin, you have your motion for approval of

22    your warrants matter.

23            MR. LUSKIN:  Yes.  We have a number of matters, Your

24    Honor.  We did serve an agenda.  There are, I think eight

25    different matters or nine different matters on and what I would

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

8

1  propose to do, with, of course, Your Honor's consent, would be

2  to deal with a preliminary discovery matter.  It's another of

3  Mr. Fletcher's motions.  I don't think that will take more than

4  a few minutes.  And then the UCBI settlement matter; what

5  you've just referred to as the warrant matter.

6        The balance of the matters deal with objections --

7  omnibus objections to proofs of claim, some stipulations

8  resolving two of those claims and a status conference in the

9  FII adversary which Mr. Hornung would handle.  Those

10  collectively, I don't think would take more than fifteen

11  minutes.  I don't know how long the UCBI settlement hearing

12  will take; probably more like forty-five minutes and I think

13  the discovery motion that I would like to start with, because

14  there's actually some time urgency on that one, would take I

15  hope not more than five minutes.

16        THE COURT:  All right.  Let's proceed in accordance

17  with your recommendation.

18        MR. LUSKIN:  Okay.  Briefly, Your Honor, Mr. Fletcher

19  made a motion to enjoin the trustee from producing documents to

20  Karen Ostad, who represents Deborah Midanek as fiduciary for

21  some of the BVI Funds.

22        THE COURT:  Was it Mr. Fletcher or Mr. Fletcher's

23  company that --

24        MR. LUSKIN:  Well --

25        THE COURT:  -- was the subject of that request because

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

9

```
 1   if it's the --
 2            MR. LUSKIN:  Of course, that's --
 3            THE COURT:  -- latter, that raises the issue we seem
 4   to be dealing with over and over again, that an individual
 5   can't represent a corporation in the U.S. courts --
 6            MR. LUSKIN:  Yes.
 7            THE COURT:  -- other than through counsel.
 8            MR. LUSKIN:  Yes, that is issue number one, is that it
 9   is a FAM, F-A-M, motion.  Mr. Fletcher was advised months ago
10   that FAM can only appear through counsel, not pro se.  He has
11   ignored or flouted that order as he has many other orders
12   including an order that was entered only a couple of weeks ago
13   about this very discovery motion.  You'll recall we have a
14   protocol.  We have a governing protective order that sets out
15   time deadlines that requires the trustee to give notice that
16   it's been served with a subpoena and intends to produce
17   documents.  That notice was reduced to two days with Mr.
18   Fletcher's consent on the phone.
19            We gave the required notice.  Mr. Fletcher missed the
20   deadline and did not object until last Friday, which was too
21   late.  We pointed out it was too late.  Nevertheless, in an
22   abundance of caution, we did not want to go ahead on our own
23   and just produce the documents without going through this
24   procedure.
25            We had negotiated a response to the subpoenas.  We
```

FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

10

1  stand ready to produce documents today.  These are documents

2  that Ms. Midanek and Ms. Ostad would like to see in order to

3  prepare for the confirmation hearing next week.  There's an

4  objection deadline this week, and there have been and will

5  continue to be ongoing meetings among the parties to try to

6  resolve outstanding issues.

7        So it is important from our point of view that this be

8  resolved right away.  I know it's hard to stand before you and

9  say that a discovery motion is urgent, but actually under the

10  circumstances, it's just not right for Mr. Fletcher to be in

11  the way of ongoing, important proceedings.

12        I would point out that the merits of the objection,

13  such as they are, demonstrate a complete lack of basis in good

14  faith in bringing it.  The documents in issue are identical to

15  the documents that we've already produced to the SEC and to the

16  Soundview trustee.  In particular, they're looking for some

17  documents regarding redemptions that have been made.  To the

18  extent we have those documents, we're making those available or

19  we would.  We have to others and we would to the BVI Funds.

20        Mr. Fletcher has pointed to not a single document that

21  would implicate proprietary trade secrets or privilege or any

22  other of the concerns that might merit protection.  These

23  redemption documents are certainly not secret in any way.

24        As I've mentioned, the delay has already prejudiced

25  the trustee and the BVI Funds.  The Court's aware of the time

1  pressure.  Our view, before we got this morning's letter, and I

2  can't say I've read it all because it's hard to read on an

3  iPhone, we think that this motion for a protective order merits

4  sanctions under Bankruptcy Rule 7037(a)(5)(B).  Certainly Mr.

5  Fletcher should be given notice and an opportunity to be heard

6  about sanctions.

7        But this has cost us time.  It's cost us money.  It's

8  prejudicing ongoing negotiations.  It's completely without

9  merit.  And as the letter this morning demonstrates, we're very

10  close to having the kind of out-of-control pro se that the

11  Second Circuit periodically has to step in and issue

12  injunctions against.  I know last week Your Honor admonished

13  Mr. Fletcher for communicating ex parte, and it seems now that

14  we're sort of damned if we do, damned if we don't -- I wish he

15  had communicated ex parte with this morning's letter, so we

16  wouldn't have to deal with it but, of course, he did

17  communicate with the world.  And we're now going to have to

18  spend many thousands of dollars, practically I think everyone

19  in the courtroom was an addressee of that letter, dozens of

20  people are now going to have to spend time, the U.S. trustee's

21  office is now going to have to spend time with issues that have

22  already been dealt with at the very outset of both cases,

23  Soundview and FILB.  And at some point, as I've said before,

24  enough is enough.

25        But back to the discovery motion, Your Honor, whether

12-12796-mkv   Doc 510   Filed 04/16/14   Entered 04/17/14 12:08:32   Main Document
Pg 18 of 85
FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

12

1   or not Mr. Fletcher deserves to be sanctioned for bringing it,

2   what we ask is that you deny his motion on the record, so we

3   can begin to produce documents which, as I say, we're prepared

4   to do now.

5          THE COURT:  Does anybody want to be heard before I

6   give Mr. Fletcher a chance to respond?

7          No response.

8          All right.  Mr. Fletcher?

9          MR. FLETCHER:  Thank you, Your Honor.  First --

10         THE COURT:  Mr. Fletcher, I don't know whether it's

11  because you're soft-spoken or because you're in California, but

12  I need you to speak a little louder, please.

13         MR. FLETCHER:  Okay.  Let's see.  First, with regard

14  to the suggestion that I gave consent to a two-day notice

15  period for discovery demands from people like Ms. Midanek, I

16  don't believe that's correct.  That may be what Mr. Luskin

17  wanted or perhaps even received but the conversation that I

18  recall was regarding accelerating the discovery requests for

19  the new Soundview trustee.  It didn't occur to me that someone

20  in the position of Ms. Midanek who has done what she's done,

21  would suddenly get some accelerated access to our documents.

22         Secondly, with regard to his comment about my motion

23  not being in good faith, I would simply say that given the

24  misunderstandings that have occurred with regard to what the

25  agreements are with the protocol and the data that Mr. Luskin

1   has seized, it clearly is not a situation where he could

2   reasonably say it's not in good faith.  He has documents that

3   he should not have and they certainly should not be handed to

4   people who have an adverse interest against the estate and

5   complicated interests with us without those documents being

6   carefully reviewed.

7          And then finally, I don't know what is or isn't

8   permitted.  As you know, I'm not an attorney.  But Mr. Luskin

9   makes a series of comments that I can't imagine are proper in

10  terms of the protocol of the Court, and I would just

11  respectfully ask that he please stop.  I am a little familiar

12  with the concept of an out-of-control pro se participant and

13  I've strived to be very understated and careful in my

14  participation since he took steps to limit our ability to be

15  represented by counsel, and I would just simply appreciate it

16  if he would spare us all the insults.  That's all I have, Your

17  Honor.

18         THE COURT:  Well, I have one thing for you.  Mr.

19  Luskin has risen to reply and I'm going to give him that

20  opportunity in a moment.  Do you want to address how a

21  corporation can appear in the U.S. Federal Courts pro se,

22  without counsel?

23         MR. FLETCHER:  I -- as you know, I'm certainly not in

24  a position to give a -- an expert opinion on that.  I believe

25  you, Your Honor, directed me as agent for FAM to make some

12-12796-mkv   Doc 510   Filed 04/16/14   Entered 04/17/14 12:08:32   Main Document
Pg 20 of 85
FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

14

1  responses, and I recall reading something in the Bankruptcy

2  Code about a right to -- a right for a corporation to have a

3  representative appear, but I'm certainly not prepared to

4  provide a -- a legal argument on all of that.  I guess it's

5  Rule 910, perhaps, that talks about representation and

6  appearances.

7        THE COURT:  All right.

8        Mr. Luskin?

9        MR. LUSKIN:  Your Honor, I just want to point you to

10 item 432 on the docket in this case which is the order

11 modifying the uniform protective order that reduced the notice.

12 We were here at a hearing.  Mr. Fletcher was on the phone.

13 There really could be no misunderstanding about what was

14 happening.

15       The next day the order was entered.  It was served on

16 Mr. Fletcher.  When we provided notice to him with respect to

17 the current document production, we included a copy of this

18 order.

19       THE COURT:  All right.  Ladies and gentlemen, deeming

20 Mr. Fletcher's motion for an injunction against production as

21 both the discovery dispute it is and the motion to block

22 production, the motion is denied.  And I'm authorizing the

23 trustee to produce the documents in question, there would be no

24 occasion for me to also direct the trustee to do so, since the

25 trustee is otherwise willing to do so.

1    The following are the bases for the exercise of my

2    discretion in this regard.  First, I note not because I'm going

3    to make it a showstopper this time, because life is too short

4    to do that, but for people to comply going forward.  If you ask

5    for an injunction, Rule 7001 of the Federal Rules of Bankruptcy

6    Procedure requires an adversary proceeding and if the movant is

7    a corporation, the corporation must appear by counsel.  Neither

8    of those have been complied with and thus, there is an

9    inappropriate basis for even reaching the merits of it.  But as

10   I said, life is too short.  We have to move on here.

11        An insufficient showing has been made that what the

12   trustee proposes to do is in any way violative of the order

13   which was entered and which is the best evidence of its

14   content.  The principle concern that Mr. Fletcher articulates,

15   vis-a-vis documents that have already been produced to the SEC

16   and to the Soundview trustee, is that it's to Ms. Midanek who

17   is alleged to have acted and perhaps to be continuing to act

18   adversely to either Mr. Fletcher or the Soundview estate or

19   perhaps the FILB estate or some combination of those things.

20   That, without more is an insufficient basis for denying

21   discovery or prohibiting discovery.

22        Discovery is by its nature to people who have adverse

23   interests to somebody; otherwise the discovery wouldn't be

24   sought.  Discovery is a mechanism we impose in the U.S. Federal

25   Courts to make litigation a fair fight and to give people an

12-12796-mkv   Doc 510   Filed 04/16/14   Entered 04/17/14 12:08:32   Main Document
Pg 22 of 85
FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

16

1 equal access to information.  While all of that is fundamental

2 to the majority of the people in this court who happen to be

3 lawyers, I state the obvious so that you, Mr. Fletcher, will

4 understand the conceptual underpinnings of a request for

5 discovery and the legal bases upon which we grant discovery in

6 the U.S. Federal Courts.

7           Mr. Luskin, we're spending enough time on lawyering in

8 this case already.  I'm going to so order the record and

9 authorize your client to make the distribution and you, as his

10 agent, to do so.  If you want to confirm that by a written

11 order, you have my permission but you can make production of

12 the documents as soon as you walk out of the courtroom today.

13           MR. LUSKIN:  Okay.  Thank you, Your Honor and we will

14 do that.  I see no need to burden the Court with a separate

15 written order.

16           Next, I would like to take up the UCBI settlement,

17 Your Honor.

18           THE COURT:  All right.  Now I have preliminary

19 comments on that.  So have a seat for a minute, Mr. Luskin.  I

20 have one but only one objection to this settlement.  It's from

21 Mr. Turner.

22           Mr. Turner, like Mr. Fletcher, you're not an attorney,

23 but nevertheless, you're appearing in a U.S. Federal Court and

24 you have to comply with the rules that apply to attorneys and

25 nonattorneys alike.

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

17

1          One of the several points that the trustee made was a

2   reference to Rule 702 of the Federal Rules of Evidence which

3   deals with expert opinion.  Also related is Rule 701 of the

4   Federal Rules of Evidence that deals with lay opinion.

5          In several places -- and by several, that's the

6   understatement of the decade -- throughout your objection you

7   express your opinions as an expert on the warrants of the

8   character that are in issue as to why I should disapprove the

9   settlement.  And by way of example without necessarily telling

10  you that I've caught them all, I'm talking about paragraphs 10,

11  12, 15, 16, 18, 22, 23, 24, 27, 28(a) and 28(b), 29, 31, 32,

12  33, 35 of your objection.

13         I know you're not a lawyer but you have to explain to

14  me how I can take expert opinion evidence as to your view of

15  the economic value of the warrants without compliance with Rule

16  26 and the other requirements associated with expert testimony

17  and why, given the Second Circuit's decisions of Bank of China

18  and my decision in Perry Koplik, I can take your points as

19  anything other than argument and with respect to the relatively

20  modest number of matters where you state facts rather than

21  opinions.

22         I also need you to address, Mr. Turner, the at least

23  seeming, if not plain, failure to address litigation risk or

24  the factors relevant to the approval of settlements under the

25  Supreme Court's decision in a case called TMT Trailer Ferry.

1    I'm going to flip-flop the normal order.  I want to
2  hear from Mr. Turner first.  You can then respond, Mr. Luskin.
3  Mr. Turner, I'm then going to give you a chance to reply and
4  I'm going to give Mr. Luskin a chance to surreply.  But in each
5  case, the second round is to be limited to any remarks that
6  were made in the first round.  Come on up to the main lectern
7  please, Mr. Turner.

8    MR. TURNER:  Thank you, Your Honor.  For the record,
9  I'm Stewart Turner, appearing pro se and a member of Class 5,
10 according to the trustee's proposed plan.

11    I believe I'm an expert because I wrote my senior
12 thesis on stock options in 1980 while I was at Princeton.  I
13 explored options further while receiving my MBA from the
14 Wharton School at the University of Pennsylvania in 1984 and
15 have worked trading -- almost thirty years now trading options
16 and looking to acquire, value, sell warrants which are just
17 long-term options in various PEG (ph.) transactions.

18    So I think I have several years of academic experience
19 and thirty years of work experience.  And I think I'm very
20 qualified to discuss warrants with you and certainly more so
21 than any attorney in the court.

22    But it's not just my opinion, Your Honor.  Over the
23 years, Fletcher has used Quantal as the outside valuation
24 analyst, as well as Buddy Fletcher doing some calculations,
25 occasionally me and sometimes over the years, other people.

FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

19

1   But it's not just Buddy Fletcher and Quantal; Quantal's work

2   and Fletcher's work was reviewed by Citco, the largest hedge

3   fund administrator, two accounting firms that are familiar with

4   hedge funds:  Grant Thornton and Eisner.  There are outside

5   specialists:  Duff & Phelps.  And even Ernst & Young where the

6   JOLs work, corroborated the values of Fletcher.  And Louisiana

7   Pension Funds issued a press release announcing the

8   corroboration of the value.

9         But in addition to the theoretical analysis, I believe

10  we should view what has happened to the stock price since the

11  announcement after the close on March 5th.  Stock has been up

12  all nine days in a row since then which if it were a coin flip,

13  would be a 1 in 512 event but last week the Dow Jones

14  Industrial Average was down every day for the first time in two

15  years and UCBI stock was up every day.  Stock is up fifteen

16  percent since that announcement which led to an increase in

17  market cap of UCBI by 137 million dollars.

18        Mr. Luskin also refers --

19        THE COURT:  Market cap of UCBI or market cap of the

20  two issues of preferred stock that are the subject of the

21  warrants?

22        MR. TURNER:  The market cap of UCBI but the value of

23  the warrant would be up on the order of seventeen or eighteen

24  million dollars over that time period, the warrant pay that is

25  held by FILB.

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

20

1          Mr. Luskin, in his response -- in his recent response

2    refers to my "rank speculation about market movements."  This

3    was Fletcher's business.  It's been my business for thirty

4    years and I don't consider it to be rank speculation.

5          I also made this call in my objection that I filed a

6    week -- this past Wednesday saying that the stock was up four

7    days in a row and because it was due at 4 o'clock and I had to

8    deliver it, almost five days in a row but I didn't have the

9    luxury of seeing the market close that Wednesday and yet it

10   continued to go up again on Thursday, on Friday, on Monday, on

11   Tuesday.

12         It -- to address the speculation comment further, we

13   don't need speculation so much.  The stock -- UCBI, at least as

14   of last night's close was at $19.40 versus a four-and-a-quarter

15   strike price that's 15 dollars in the money on seven million

16   warrants.  That's a 105; I think the precise number is closer

17   to 107 or 108 million dollars.

18         And the market cap of United itself has gone up by 137

19   million dollars and that 137 million dollars is more than just

20   taking those warrants back for nothing.  It's sort of like a

21   stock buyback except this stock was bought back far below

22   market for twelve million dollars and the value to the

23   remaining United shareholders increased appreciably; as I said,

24   by 137 million dollars.

25         Now, that's -- I have to make an adjustment in the

FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

21

1    argument that I filed last week because now the increase in

2    market cap is worth more than the value of the options -- of

3    the warrant that FILB still holds.  Some of it could be related

4    to the registration failure or not, but what I really believe

5    is that if this warrant gets settled for twelve million

6    dollars, I believe what you were referring to is the other

7    classes of warrants that were given to FIA Leveraged Fund,

8    eventually to the Louisiana Funds and then sold by the

9    Louisiana Funds and the Ernst & Young JOLs back to the company

10   for two-and-a-half million dollars.

11        Once this settlement goes through, if it goes through,

12   I don't see how there can be a review of that prior two-and-a-

13   half million dollar settlement.  What I was hoping for was

14   to -- I am -- still remain a director of FIA Leveraged Fund,

15   although the joint official liquidators control it and I've

16   been told that all I can do is object to what they're doing and

17   file on behalf of the company, FIA Leveraged Fund.

18        If I could prove the point here that these warrants

19   are worth significantly more than twelve million dollars, and I

20   think the Reis case is very on point here, it could potentially

21   open the argument for trying to take over FIA Leveraged Fund

22   again and I'm told that, removing a liquidator, I would have

23   the option of undoing anything that a liquidator did.

24        I'm even willing to leave the litigator's two-and-a-

25   half million dollar settlement in place because I had

1   previously, in various affidavits to the Cayman court, said I

2   believe that FIA Leveraged delivered the 136 million dollars of

3   value that was needed at that time.  What the Louisiana Funds

4   did and what the Ernst & Young liquidators did is not my

5   concern.  It's a shame that they sold something that's worth

6   136 million dollars for two-and-a-half million dollars.  Quite

7   frankly, it would be worth a lot more today.

8           But the matter before the Court today is what to do

9   with this seven million share warrant and as Mr. Martin had

10  referred to it, the seven million share warrant, not the

11  eighteen million share warrant for a total of twenty-five

12  million dollars.  And I think the company would be happy if

13  they could receive a settlement on the seven million share

14  warrant at a much higher price if they did not have to worry

15  about the eighteen million share warrant being reopened again.

16  At least that is my view of what the market has said over these

17  past nine days with the stock trading up in a row.

18          This money could be used to pay all creditors in full,

19  like the accounting firms and law firms.  And there would be

20  sufficient money to go up and possibly pay the Soundview funds

21  all of the money that they are seeking.  Massachusetts, the

22  MBTA Retirement Fund, Massachusetts Bay Transit Authority

23  Retirement Fund, could be paid in the tens of millions of

24  dollars.  And it could be done simply without having the

25  litigation risk as has been referred -- different litigation

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

23

1    risk by having FILB and the joint group of funds sue Citco and

2    sue Skadden, sue Eisner, sue Grant Thornton and a bunch of

3    others.

4           I would also like to address Mr. Luskin's comment

5    about me.  I have nothing against Mr. McMahon personally but I

6    think the sale of that basket of UCBI assets for two-and-a-half

7    million dollars was way too low, even if just measured against

8    the proposed twelve million dollar settlement.  And to have him

9    on the proposed plan advisory board, I think would be wrong.

10          One small comment about Seaport Group, which I have no

11   problem with, but as somebody with all these years of

12   experience, I am aware of a firm called OTA.  They've been

13   around for thirty years and OTA was not made aware of the sale

14   of the United warrant.  I'm not sure who was made aware of the

15   sale.  But Stephan Skinner who heads the warrants desk there

16   believes that his firm is one of the largest.  It's been around

17   for thirty years and was shocked to find out he had not heard

18   about such a proposed sale.  He even was willing to bid 2.8

19   million dollars for the warrant if it were stuck at a $21.25

20   share price and for only 1.4 million warrants.  Basically, two

21   dollars -- he offered two dollars a share which would be

22   slightly above 2.8 million dollars.

23          Quantal, who I know the trustee and Mr. Luskin have

24   disparaged along the way, values the warrant -- warrant at 3.7

25   million.  So the downside is not going from twelve to zero but

12-12796-mkv   Doc 510   Filed 04/16/14   Entered 04/17/14 12:08:32   Main Document
Pg 30 of 85
FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

24

 1    twelve to three.  Now, twelve to three, that would be a loss of

 2    nine million dollars and that would be a -- that would be a

 3    problem.  But measured against a 137 million share gain for the

 4    non-FILB shareholders over these last nine days is, I think, a

 5    shame.  The downside's only nine million dollars.  The upside

 6    is a hundred million dollars.

 7          And when it comes down to -- and there's always

 8    litigation risk.  There's litigation risk in everything.  But

 9    the only case that I've been told is on point -- I'm not a

10    lawyer but I've heard this from Skadden in a legal opinion, Mr.

11    Martin agreed with it, and for gosh sakes, even now the trustee

12    and the Seaport Group in its analysis refers to the Reis case.

13    And in that case, the law clearly supports the view taken by

14    Fletcher and the people that worked at Fletcher years ago and

15    what Mr. Davis wrote in his report.  And yes, there is

16    litigation risk, but the question is what is the minimal --

17    what is the lowest level of reasonableness?  And to accept nine

18    million dollars instead of over a hundred million dollars when

19    case law -- the only case, supports the side of this warrant

20    seems silly.

21          And also further, if the 12 million dollars were to be

22    accepted, that would be 12 million less the -- what I believe

23    would be a 500,000-dollar commission to the Seaport Group.  It

24    would cover fees generated by the FILB trustee.  It would then

25    in theory, if everything works with an adjusted plan, go up to

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

25

1    FII in order to pay Soundview Elite the four million dollars

2    it's owed.   Then we go further up to Arbitrage where the JOLs

3    would take a chunk of fees and very little would go to the

4    remaining shareholders in the Fletcher system.

5          Yes, I realize that this market-based response is not

6    a slam dunk, but I do believe it could lead to a different --

7    should it go -- should it go to a full-fledged trial as in FILB

8    v. UCBI but I think -- I think United itself, without having

9    spoken to them, given the -- how the market has shown this 137

10   million dollar increase in value, would be willing to pay a

11   much higher settlement and that could actually send money to

12   the shareholders and Mr. Luskin arguing today may be -- may

13   even be able to show that twelve million dollars can meet the

14   lowest standard of reasonableness.   But would it actually be

15   worth that to the creditors and the shareholders of the various

16   funds when he would have to be fighting against science and

17   this analysis going forward against suing Citco, Grant

18   Thornton, Eisner and all of the other big firms he wants.

19          I assume that they will be fighting vigorously as

20   well.   The only difference there is beyond having to show the

21   lowest standard of reasonableness, they would have to fight

22   against the preponderance of evidence which I do not believe is

23   on their side.   Thank you.

24          THE COURT:   Thank you.

25          All right.   Mr. Luskin, response?

1          MR. LUSKIN:  Your Honor, I'm going to take a step back

2   and put this in context.  This is the latest in a line of asset

3   sales or settlements that the trustee has been engaged with in

4   cooperation with his constituencies and that includes the JOLs

5   and the Caymans for Leveraged, Alpha and Arbitrage.  As Your

6   Honor knows, we've been here before for Court approval of

7   settlements and asset sales.  Some of those asset sales brought

8   about by Seaport, the broker that Mr. Turner now criticizes.

9          Indeed, in addition to the UCBI settlement, we plan on

10  announcing this afternoon or tomorrow morning another

11  substantial settlement that we'll be bringing to the Court.

12         I think that Your Honor is familiar with the

13  background of this transaction.  The UCBI transaction was in

14  April 2010, 103 million dollar investment in a distressed real

15  estate portfolio that was sold by UCBI, a regional bank in

16  Georgia.  These were nonperforming loans and REO property owned

17  by the bank.  And the transaction's described at length in our

18  report at pages 90 to 95; it was financed largely by FILB.

19  I'll have more to say about this.  Some of the Soundview and

20  Richcourt money made its way through Arbitrage to also support

21  the transaction and that's relevant to what I am going to ask

22  for the proposed order.

23         The first FILB, years ago before the bankruptcy and

24  certainly before Mr. Davis was appointed, attempted to exercise

25  these warrants and UCBI refused to honor them.  There was a

1    dispute right from the get-go over the impact of UCBI's reverse

2    one-to-five split that was done in June 2011.  Just to simplify

3    it completely, the strike price in the warrant as written is

4    $4.25.  The question is what impact the reverse split, five-to-

5    one split or one-to-five split had on that strike price.  FILB

6    and then the trustee have argued with UCBI that the strike

7    price remains unchanged at four-and-a-quarter.  That, in our

8    view, is the clear language of the contract and has support, we

9    believe, in the New York Court of Appeals Reis case that Mr.

10   Turner mentioned.  It's highlighted in our report.

11          The other side of that dispute is that UCBI says

12   that's not what the agreement says.  The agreement provides for

13   the adjustment of prices and that while the section that the

14   trustee relies on, the section in the agreement that we rely

15   on, does not mention reverse splits, there's another part of

16   the agreement through a definition of daily market price that

17   does require, they say, the adjustment of the strike price and

18   that would bring the strike price to $21.25.

19          Obviously, this is a big deal.  If the strike price is

20   four-and-a-quarter, the warrant is in the money and Mr.

21   Turner's valuations, while still fanciful, are substantially

22   less fanciful.  If the strike price is $21.25 even at $19.40,

23   the warrants are out of the money.

24          Indeed, the stock price would have to go to

25   approximately twenty-nine dollars for FILB to realize twelve

FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

28

1  million dollars on the warrants; the twelve million dollars

2  being the settlement amount that we have today.

3          That's not the only dispute.  There are other disputes

4  between the parties.  I'm not going to go into them in any

5  great detail.  One of them that is mentioned in the papers is

6  some --

7          THE COURT:  For the parties, you meant the trustee and

8  United Community Bank?

9          MR. LUSKIN:  -- yes -- and was also mentioned by Mr.

10 Turner in his reply, one of the other disputes is something

11 called a registration failure.  That had its origin in a period

12 of time when UCBI had to restate its financial statements.

13 During that period, we say they could not register the shares

14 that we were entitled to buy.  This is under a separate

15 warrant, under the warrants that went to the JOLs and there was

16 litigation over.  That's a so-called registration failure under

17 the stock purchase agreement.  We calculate the damages at, say

18 call it nine or ten million dollars.  That's the number we use

19 in our report.  There's an argument it could be even more.

20 There's an argument it could be substantially less and there's

21 a very good argument that it could be zero.

22          There is substantial case law which UCBI was diligent

23 in pointing out to us that says that this kind of penalty or

24 this kind of liquidated damages clause is an unenforceable

25 penalty especially in circumstances where even if FILB had

12-12796-mkv   Doc 510   Filed 04/16/14   Entered 04/17/14 12:08:32   Main Document
Pg 35 of 85
FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

29

1   wanted to exercise this warrant, because actually this was a

2   stock purchase right, a right to purchase preferred shares and

3   then convert them, FILB would have had to come up with sixty-

4   five million dollars and at no time has FILB ever had sixty-

5   five million dollars to invest in this.  It's -- so there is a

6   very good argument or at least certainly a fair ground for

7   dispute over whether or not this registration failure claim is

8   worth 600,000 dollars, 9 million dollars, zero or some other

9   number.  I didn't want to spend that much time on the

10  registration failure but there you have it.

11          There were also disputes over other provisions of the

12  contract involving confidentiality, assignment of the warrants

13  and so on and there was also a bankruptcy-related dispute over

14  the use of so-called carry accounts.  This was the stock and

15  cash that FILB had pledged as part of the purchase transaction

16  that was pledged to support the -- servicing real estate and

17  servicing the interest payments on the seller's note.

18          And there was an argument to be made that UCBI

19  violated the automatic stay by making use of the money in the

20  carry accounts in accordance with the documents.  That, too, is

21  fair ground for litigation.  Also fair ground for litigation

22  would be the inevitable motion for relief from stay by UCBI for

23  the right to have access to the carry accounts and FILB's

24  undeniable inability to provide adequate protection to maintain

25  the stay should UCBI be able to prove its interest.  We did not

1    value that particular claim very highly.

2            In any event, we tried to exercise these warrants last
3    summer.  We were refused.  UCBI dishonored.  Negotiations
4    followed, intensive negotiations over a course of several
5    months.  They were unsuccessful but the parties agreed rather
6    than just cease irrevocably, we would just pause, which is what
7    we did and the trustee took it upon himself to test the market.
8    And that brings us to where we are.

9            The trustee engaged in an intensive marketing process.
10   It's laid out in Mr. Davis' declaration.  Mr. Davis personally
11   oversaw this process, had daily contact with both the broker
12   and contact -- and in some instances, multiple contacts with
13   all of the bidders and their lawyers and made the ultimate
14   decision based on his and his advisors', both financial
15   advisors and legal advisors, as to which was the highest and
16   best offer for the estate.

17           Now, in accordance with this Court's practice, we have
18   put all this into Mr. Davis' declaration.  I could make a
19   detailed proffer but really, I think, there's no need.  It's
20   there in the record.  Mr. Davis is here, available for any
21   further questioning on it.

22           And that is, of course, in contrast to the
23   presentation that we've heard from Mr. Turner.  Much of what we
24   heard today is new and not in any of his papers.  It's
25   certainly not in his objection.  And then there is, of course,

12-12796-mkv   Doc 510   Filed 04/16/14   Entered 04/17/14 12:08:32   Main Document
Pg 37 of 85
FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

31

1    the issue about opinion testimony which I'll come back to, that

2    would account for the other half or more than half, given Your

3    Honor's pointing to sixteen or so separate paragraphs that are

4    replete with opinion.

5           I'll come back to the sale process.  I just wanted to

6    make sure that the Court was aware, not only of the Turner

7    objection but the fact that as you would expect, we have been

8    in fairly intensive discussions with the Soundview trustee, the

9    BVI funds fiduciary, and their various professionals, over

10   their view on the sale.  And while they have no objection to

11   the settlement with UCBI, they do have claims, which we of

12   course dispute, but they have claims to some of the proceeds,

13   perhaps all of the proceeds under a proprietary claim or

14   constructive trust theory.  I believe you heard some about that

15   at the Soundview status conference last week.

16          In order to avoid having to adjudicate these issues

17   now or frankly at next week's confirmation, we've entered into

18   an agreement with those parties, the Soundview and BVI

19   fiduciaries, under which assuming that the settlement is

20   approved, we would essentially freeze four million dollars of

21   the sale proceeds for a time period of forty-five days, and

22   we've put in place a notice and objection period to deal with

23   either litigating or otherwise resolving that claim.  And

24   again, if our settlement with UCBI is approved, we have

25   specific language which we would include in the order and

1   that's language that's been cleared with Soundview and BVI.

2          So that brings us to the one objection we did receive,

3   and I think as Your Honor has pointed out, there are several --

4   it raises several issues.  One of the glaring ones, of course,

5   is the fact that it is replete with opinion.  There's no

6   foundation for this opinion in the papers, as would be required

7   under the Rules.  And frankly, even what we heard today does

8   not constitute foundation.  I can certainly tell you that --

9          THE COURT:  Well, the real problem, Mr. Luskin, is not

10  lack of foundation because experts, if he were an expert and if

11  he had complied with the expert requirements, would be allowed

12  to form his views based on hearsay and anything else that he'd

13  gathered up in his life.  The real problem is that he didn't

14  comply with Rule 26.  He hasn't been found to be an expert and

15  that --

16         MR. LUSKIN:  Well --

17         THE COURT:  -- the foundations for -- not foundations,

18  that's the wrong word -- the prerequisites for expert testimony

19  have not been complied with as set forth in Rule 26 of the

20  Federal Rules and as are contemplated by Rule 702 of the

21  Federal Rules of Evidence.

22         MR. LUSKIN:  I did use the wrong word.  I was using

23  foundation with -- in a more colloquial sense.  You're correct.

24  He hasn't given us qualifications.  He hasn't given us a

25  report.  He hasn't explained the bases for the opinion in any

12-12796-mkv   Doc 510   Filed 04/16/14   Entered 04/17/14 12:08:32   Main Document
Pg 39 of 85
FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

33

1  comprehensible way.

2          There are those opinions and it's not just about

3  valuation.  It's also the reading the tea leaves about where

4  the market is going and why it's made its movements and what

5  it's going to do in the future.  I mean cutting through all

6  that, I'm not sure we need to evaluate Mr. Turner's

7  qualifications and the foundations for his various opinions.

8          It's clear from his objection and it's clear from his

9  presentation that all of his numbers presuppose a $4.25 strike

10 price which doesn't exist right now.  It's a disputed strike

11 price.  And if you were to rerun all of the analysis using the

12 strike price that UCBI would agree with and would actually

13 honor, it's $21.25, we have out of the money warrants that have

14 some intrinsic value perhaps but not 127 or however many

15 millions and tens of millions of dollars Mr. Turner believes

16 they're worth.

17         So I think that on that basis alone, the numbers are

18 just fanciful.  There's a fundamental flaw there that drives

19 through it, just -- the entire objection.  We heard some today

20 about finally an acknowledgement of litigation risk.  I mean

21 there's another area where Mr. Turner has no competence as an

22 expert to opine on and that is handicapping complicated

23 litigation.  He is a layman.  He cannot deliver any opinion on

24 that under 701 and he's certainly not an expert under 702.  He

25 has not retained counsel.  He doesn't have the benefit of

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

34

1  counsel.  I mean, he's acting pro se and we all recognize that

2  but this is an area that requires expert litigation

3  handicapping an analysis which we have done and he has not.

4        And certainly litigation risk is one thing that we

5  assessed, the trustee assessed at great length and has laid out

6  in his declaration; all of the bidders assessed at great

7  length.  They all hired outside counsel, brand name law firms,

8  the usual suspects.  They submitted questions including written

9  questions to Seaport and the trustee, questions about the

10  warrants and the litigation claims and defenses.

11       Mr. Davis spoke with the bidders and their lawyers.  I

12  spoke with the lawyers.  There's no question that litigation

13  risk was first and foremost in these bidders' minds and again,

14  Mr. Davis' testimony on this is not hearsay.  It's not the --

15  it's not an issue whether or not the bidders' law firms were

16  right or wrong.  All that's appropriate for the Court to know

17  is that every single bidder was considering the issue.  And on

18  that matter of notice, the record is complete.

19       So the trustee assessed the risk and the market

20  assessed the risk.  I think as you've seen, Seaport, the

21  trustee solicited I think it was 109 separate funds; most of

22  them were hedge funds.  There were some others.  The one that

23  Mr. Turner today mentions for the first time, frankly, I don't

24  know whether it's on the list.  I can check that but assuming

25  it's not on the list, it's according to its public SEC filing,

FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

35

1   form ADV, the advisory form that investment advisors have to

2   file, it's got something like fifty-six million dollars under

3   management -- directly under management, consists of five

4   people.  It advises some hedge funds.  Hasn't appeared, as far

5   as we can tell.  Has never litigated any issues like the -- at

6   all, let alone the complicated, expensive and time-consuming

7   issues that we're involved in.  It's a firm that's had fifteen

8   SEC violations over the past few years and has paid hundreds of

9   thousands of dollars in --

10          THE COURT:  All right.

11          MR. LUSKIN:  -- penalties.

12          THE COURT:  I'm going to interrupt you.

13          MR. LUSKIN:  Okay.  I --

14          THE COURT:  His reliance on what they said and

15  especially thought is hearsay and it sounds to me like you're

16  asking me to assume hearsay now.  And both sides are testifying

17  on stuff that goes beyond Mr. Turner's response and the two

18  briefs that you put in.

19          MR. LUSKIN:  I think it's completely irrelevant what

20  he's done.  If he had the -- if he knew of buyers, he could

21  have submitted them or put them in touch with Seaport.  I

22  agree.  I'm not going to try to introduce what I think I could

23  introduce which is a government filing which does come in as

24  nonhearsay but I'm not going to.

25          THE COURT:  Well, but you haven't introduced the

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

36

1    filing.  You're purporting to paraphrase what the filing said.

2              And I'm just going to tell both sides, I've got a ton

3    of material in the record.  This is the wrong time to be

4    putting in new stuff into the record.

5              MR. LUSKIN:  Your Honor, I'm not putting any more on

6    it in.  I'm going to move to the -- what is it that we did.  I

7    will point out which is in the record and is obvious today,

8    that Turner had no personal involvement in any of these

9    negotiations, so I would certainly reject any of his testimony

10   or presentation on characterizing these as both incompetent and

11   irrelevant.

12             His big point about -- which is speculation -- that

13   the increase in market cap was due to the announcement of the

14   settlement, even if it were true, certainly doesn't make the

15   link that somehow the trustee is entitled to the benefit of

16   that market cap.

17             I can tell you that my negotiations started out with

18   UCBI, as you would expect, they started out at a much higher

19   number than twelve million dollars, and from their part, they

20   started out at a much lower number than twelve million dollars.

21   So we made our best effort to capture all value and they made

22   their best effort to hold it to themselves.

23             What we have is the end result of an arm's-length

24   negotiation.  And certainly as a fiduciary, there is no reason

25   for this trustee to stay in the market, to play the market, and

12-12796-mkv   Doc 510   Filed 04/16/14   Entered 04/17/14 12:08:32   Main Document
Pg 43 of 85
FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

37

1 | wait for stock to go up or to risk his own money and
2 | resources -- and when I say his, I mean his constituents, the
3 | investors -- money and resources on litigation that would
4 | clearly take years and cost tens if not -- well, it would cost
5 | hundreds of thousands of dollars, if not millions of dollars.

6 |     As I had mentioned before, the stock price would have
7 | to go above twenty-nine for us to realize twelve million
8 | dollars today.  We received one other cash bid that was not
9 | firm, the eight million dollar cash bid; UCBI's was really far
10 | and away the highest and best cash bid.  The next bid was a
11 | hybrid bid; it included both cash of six-and-a-quarter million
12 | and a piece of the litigation.

13 |     For us to recover twelve million dollars on the second
14 | highest bid, that bidder, the purchaser would have had to win
15 | over thirty million dollars from UCBI.  So yes, we did a lot of
16 | handicapping.  We did a lot of risk assessment and determined
17 | that the end result was that the cash bid from UCBI was the
18 | highest and best.

19 |     I've already spoken about the registration failure.
20 | That was in the bid package.  That is a claim that would have
21 | been sold to a third-party bidder.  Obviously, it didn't garner
22 | much interest.  And as I mentioned before, I think you can see
23 | the reasons why.

24 |     Just to -- let me just -- give me one second here.
25 |     You know, we heard a lot from Mr. Turner about

12-12796-mkv    Doc 510    Filed 04/16/14    Entered 04/17/14 12:08:32    Main Document
Pg 44 of 85
FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

38

1    attacking a settlement that the Cayman Island JOLs went into

2    with the other warrants.  I mean, there's a procedure to do

3    that and it's not by standing up here today on this motion.

4    Mr. Turner is free to go do whatever it is he feels he needs to

5    do in the Cayman courts.

6            The legal standard, as Your Honor adverted to, is

7    whether or not the settlement falls above the lowest point in

8    the range of reasonableness, and really, in addition, whether

9    or not the trustee has exercised sound business judgment and

10   selected a settlement or agreed to enter into a settlement

11   that's in the best interest of the estates.

12           And I think that on that, there really can be no

13   question.  The record shows that these negotiations were arm's

14   length.  They were with very sophisticated parties.  A very

15   wide net was cast.  Intensive negotiations were conducted with

16   the handful that were actively interested.  The trustee was

17   personally involved and had the benefit of his advisors.

18           This settlement has the support of all of his major

19   constituents.  And as Your Honor has noted, there is only one

20   substantive objection and it is not from a major constituent.

21   I think at the end of the day, what Mr. Turner's objection

22   comes down to is speculation.  He's tried today to dress it up

23   in his long experience trading options.  I can just tell you

24   that we submitted a 300-page report that shows that virtually

25   every single one of Mr. Fletcher's and Mr. Turner's projections

FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

39

1   was dead wrong and that's really why we're here.

2          Thank you.

3          THE COURT:  All right.  Thank you.

4          Mr. Turner, I've let both sides speak at very, very

5   great length.  I'll take very, very brief reply, if you have

6   any.

7          MR. TURNER:  Yes, I do, Your Honor.

8          Mr. Luskin's last comment here about the 300-page

9   trustee report was already ruled on by this court saying that

10  my objections and inserts could be included because that report

11  is just hearsay and opinion and not to be taken as fact.

12         And another thing Mr. Luskin said is that it is true

13  Turner had no involvement in negotiating this UCBI warrant, and

14  I believe Mr. Fletcher had none either.  However, there have

15  been previous circumstances where Fletcher has sold a warrant

16  back to a company, Edelman Financial, and we believe the price

17  we received for that warrant is much higher than would have

18  been received in the market.  And I think makes the people at

19  Fletcher Asset Management more qualified.  It is not an attack

20  on the trustee's ability, but my -- to negotiate, but my

21  concern -- my concern here is that Mr. Luskin says that he's

22  now accepting or resignedly accepting a $21.25 share strike

23  price.

24         And to address his issue with the stock at 21 -- 19.40

25  and the strike price at 4.25, the Quantal value, or any value

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

40

1  that Fletcher would use, would only have 2 or 3 million dollars

2  more in theoretical premium value and on top of the 107 million

3  dollars intrinsic in-the-money value.

4      So we don't even have to discuss the value of the

5  warrant.  At this point in time, I would say fight the case and

6  try to win at 4.25 and then sell the stock at 19.40 and you

7  could collect 107 million.  Who cares if it's 107 or 110?

8      I'm not -- I am not a legal expert, and I think that

9  point has been made clear today.  But I would like to refer to

10  a legal expert, Judge Smith (ph.), who wrote the opinion on

11  Reis and if I just may read his first two sentences.

12      "The issue here is whether warrants to purchase shares

13  of stock of defendant corporation must be adjusted in light a

14  reverse stock split authorized by defendant corporation after

15  plaintiffs received warrants.  We answer that question in the

16  negative."

17      So the issue here -- and that's from the New York

18  Court of Appeals and I believe the only case on point -- how

19  does Mr. Luskin and the FILB trustee find that there is a

20  ninety-one chance that that case can be reversed here and that

21  ninety-one percent is basically just settling for twelve

22  million dollars versus the three that they could probably get

23  for the warrant with the 21 dollar strike price versus the

24  upside of 107 million dollars.  When case law is on point it

25  just seems beyond the low -- the low range of reasonableness to

FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

41

1   me.

2         THE COURT:  All right.  Thank you.

3         MR. TURNER:  Thank you.

4         THE COURT:  Mr. Luskin, do you need to surreply?

5         MR. LUSKIN:  I do not.

6         THE COURT:  All right.

7         MR. TURNER:  One more -- one more --

8         THE COURT:  No, it's time to bring this to an end.  I

9   haven't looked at my watch but the argument on this motion has

10  been interminable.

11        Ladies and gentlemen, I'm approving the settlement and

12  the sale that has been proposed by the trustee, and my findings

13  of fact, conclusions of law and bases for the exercise of my

14  discretion follow.

15        As facts, I find that in April 2010 United Community

16  Bank, our debtor FILB, and certain related FILB parties entered

17  into a two-part transaction pursuant to which -- excuse

18  me --United Community Bank sold certain nonperforming loans and

19  bank-owned properties to a debtor affiliate, Fletcher

20  International, Inc., and FILB received warrants to buy two

21  classes of preferred stock of United Community Bank.

22        Additional terms of that deal included provisions that

23  if FILB did purchase the full amount of preferred stock it

24  would receive an additional cashless -- that is without cash --

25  exercise warrant for 35 million dollars at an exercise price of

FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

42

1   $6.02 per share, which we refer to as the additional warrants,

2   but FILB's performance under the deal was excused if there was

3   a so-called registration failure, which is a matter of dispute

4   between the parties.

5          There's no need, for the purpose of this analysis, to

6   get into the weeds on the details of these because I'm not

7   going to be deciding the underlying dispute except to identify

8   the issues that separate FILB on the one hand and United

9   Community Banks on the other.

10          It is necessary or appropriate to note, however, that

11   FILB didn't fulfill all of its purchase obligations under that

12   agreement, paid a fee -- fairly major fee, 3.25 million

13   bucks -- and that United Community Bank makes further claims on

14   that, although, not very large in the context of the remainder

15   of this transaction that FILB was late with its payment and

16   therefore, owes United Community Bank an additional 34,000

17   bucks in interest.

18          In April 2012, FILB exercised or tried to exercise a

19   million bucks worth of the warrants, but United Community Bank

20   refused to honor the warrant exercise.  United Community Bank

21   contended among other things that the strike price and the

22   warrant formula had been adjusted to account for the reverse

23   stock split.

24          This issue of whether or not the strike price was or

25   was not adjusted is a major area of controversy, one where I

12-12796-mkv   Doc 510   Filed 04/16/14   Entered 04/17/14 12:08:32   Main Document
Pg 49 of 85
FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

43

1    don't make a finding except to note the arguments on each side

2    and where I further note that Mr. Turner, the sole objector,

3    has made some conclusory statements about his view of the way

4    that litigation disputes should be resolved, but which I find,

5    with respect, lacks the legal expertise for me to give it great

6    weight, nor the depth which the trustee gave to the issue.

7            In August of 2013 -- that's about six or seven months

8    ago -- the trustee tried to exercise the remainder of the

9    warrants, but United Community Bank again refused, contending,

10   among other things, that the original warrant price would have

11   to be adjusted to account for the reverse stock split.

12           As my earlier comments indicated, there is a dispute,

13   and I would say a very major dispute, between the trustee on

14   behalf of the FILB estate on the one hand and United Community

15   Bank on the other, as to whether a reverse stock split would or

16   would not have an effect upon the strike price.

17           The outcome of that controversy is enormous because

18   under one view, the warrants are out of the money, and in other

19   they have some substantial value.  There is, as I've said, a

20   dispute on that which I find as a fact or as a mixed question

21   of fact and law.  It could go either way.

22           There are, in addition, other claims by United

23   Community Bank, which in my view are not as significant as

24   those as set forth in paragraph 16 of Trustee Davis'

25   declaration.

FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

44

1    If the reverse stock split did not adjust the strike

2 price upward, the value of the warrants could be as high as

3 seventy-one million dollars as estimated by the trustee and, if

4 I understand Mr. Turner's contentions correctly, even higher

5 than that.  But if the trustee is incorrect and if the warrants

6 couldn't be exercised until the stock price exceeded 21.25, the

7 warrants would have little, if any, value.

8    To deal with these uncertainties and in an effort to

9 monetize these assets, the trustee contacted the Seaport Group

10 about marketing both the warrants themselves and the debtor's

11 litigation rights associated with its dealings with United

12 Community Bank.

13    Seaport contacted 109 potential bidders for the

14 warrants.  And I find as a fact that Seaport did a diligent job

15 in that regard.  It informed potential bidders that they had an

16 option of making their bids for the assets in two types of

17 structures:  one, cash only, and second, what were called

18 hybrid offers which would be combinations of cash and what I'll

19 call colloquially as "a piece of the action", that is a

20 percentage of future recoveries by the buyer on the warrants

21 and the claims under the purchase agreements that were

22 associated with their acquisition.

23    Of the 109 potential bidders, 9 arranged due diligence

24 calls with the trustee, 7 offers for the warrants were received

25 from 6 different bidders.  United Community Bank was the

1 | ultimate winner.

2 | The bids consisted of three all-cash bids and four
3 | hybrids in the sense that I described them before.

4 | I find as a fact that the trustee exercised
5 | appropriate business judgment to try to plow the fields to get
6 | the best offers; that Seaport did its job appropriately; and
7 | that the trustee took reasonable steps, not just exercised
8 | business judgment, but satisfied a higher level of scrutiny,
9 | that he did the right thing to try to maximize the value.

10 | Ultimately, as I indicated, United Community Bank
11 | turned out to have made the best proposal and it made a deal
12 | subject to my approval for a payment to the estate of twelve
13 | million dollars consisting of at least two million in cash and
14 | the remainder in stock, along with the releases that one would
15 | associate with a transaction of this character.

16 | Whenever you're looking at litigation, you have to
17 | look at the alternatives.  If that settlement hadn't been
18 | reached, the trustee would have then had to either accept the
19 | best hybrid offer or to commence litigation against United
20 | Community Bank to resolve the claims that I addressed, plus
21 | certain others that I didn't, although they're of lesser
22 | importance.

23 | Litigation with United Community Bank would likely
24 | take a year longer and would cost many hundreds of thousands of
25 | dollars in legal fees, although in my experience with the

12-12796-mkv   Doc 510   Filed 04/16/14   Entered 04/17/14 12:08:32   Main Document
Pg 52 of 85
FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

46

1   matter that's on the calendar next, which we'll hopefully

2   eventually get to, leads me to believe that litigation in this

3   court is much more expensive than that and can easily run into

4   the millions.

5       I'm satisfied that the value of the warrants has been

6   satisfactorily tested in the market.  Testing the outcome of

7   the litigation is more difficult, but I think that any

8   responsible trustee could -- would have as the trustee did

9   here, also evaluated the risk that, after spending these very

10  sizable terms to litigate the estate, could have been

11  effectively a total loser.

12      The standards -- and now turning to my conclusions of

13  law and bases for the exercise of my discretion, the standards

14  for approval of the settlement are articulated in the Supreme

15  Court's decision in TMT Trailer Ferry; several rulings by the

16  Second Circuit Court of Appeals that hold, in substance, that

17  settlements should be viewed with favor and not disapproved

18  unless they fall below the lower range of reasonableness; and

19  many decisions I personally issued, most significantly in the

20  Adelphia Communications Corporation case.  The cases and I'm

21  bundling them because I've spoken at great length already and I

22  still have a full courtroom, require a court like me to look at

23  the likelihood of success in the litigation compared to the

24  present and future benefits offered by the settlement, the

25  prospect of protracted litigation if the settlement isn't

12-12796-mkv   Doc 510   Filed 04/16/14   Entered 04/17/14 12:08:32   Main Document
Pg 53 of 85
FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

47

1   approved, as well as the related expense and convenience in

2   delay, and the degree to which the creditors support the

3   settlement, the nature and extent of the releases to be

4   obtained by officers and directors, and whether the settlement

5   was a result of arm's-length bargaining.

6          Here I find as, and have found as either facts or

7   mixed questions of fact and law, that the litigation could go

8   either way.  And while the trustee would certainly have points

9   that he could make, and I certainly find that the trustee has

10  competent litigation counsel would carry the sword for him if

11  he did, that there is much less than a reasonable assurance

12  that the trustee would prevail in the litigation and that the

13  downside risk would have very draconian consequences upon the

14  stakeholders of the estate.

15         The prospect of protracted litigation of this

16  settlement is not approved is plain to me.  And while I can't

17  quantify the expense of the litigation, I do find -- and this

18  is something that I take into the equation as a matter of my

19  discretion based on fourteen years of doing this job -- that

20  litigation in this case can -- in this court continues to

21  boggle my mind with how expensive it is.

22         And one cannot appropriately analyze a settlement

23  without looking at the litigation outcome, the downside risk,

24  and most significantly the expense of litigation.  Maybe I

25  should rephrase that.  I guess most significantly is the

FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

48

1 downside risk, but you can't ignore the cost of the litigation.

2 I've already talked about the alternatives. Now, let

3 me just talk briefly about one or two other things. I do not

4 believe that whether creditors or any subset of the creditor

5 community approved the settlement is the be all and end all.

6 There are times when an estate fiduciary has to make hard

7 choices that may not be approved by every creditor or every

8 creditor constituency.

9 Here, however, I do note that the parties whose money

10 is most on the line, the stakeholders of this estate with the

11 exception of Mr. Turner, who obviously has some personal skin

12 in the game from a reputational and other point of view,

13 unanimously support this settlement.

14 If they shared Mr. Turner's views -- and they're big

15 boys; they have the expertise to form views as to a matter of

16 this character -- it strikes me as extraordinarily unlikely

17 that they would have given the trustee the support that the

18 trustee obtain vis-a-vis this settlement.

19 Now turning to Mr. Turner's points, first, I take

20 Mr. Turner's points as argument and I take them as setting

21 forth facts as to which he had personal knowledge, matters as

22 to which he can express a lay view under the Second Circuit's

23 decision in Bank of China and my decision in Perry Koplik and

24 under Rule 701 of the Federal Rules of Evidence. But I cannot

25 take his opinions as anything other than an advocate's

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

49

1   argument.

2          That's because Rule 702 of the Federal Rules of

3   Evidence places limitations on the consideration of expert

4   testimony, except in those cases where we've gone by the rules.

5   And those rules include, among other things, establishing the

6   qualifications of the person proposed to provide expert

7   testimony and importantly providing an expert report in the

8   disclosures that are a sine qua non to the consideration of

9   expert testimony.

10          Now, Mr. Turner spoke of his qualifications, which I

11  think are indeed substantial.  And I don't rule out the

12  possibility that if he had satisfactorily been qualified as an

13  expert, his opinions might have been admissible or could be

14  admissible in another matter.  But before they can be

15  considered on this matter, they must comply with the rules for

16  introduction and admission of testimony under Rule 702.

17          More fundamentally, even if I had considered his views

18  as satisfactory opinions, opinions can only deal with facts as

19  they are now known and cannot involve in any material way

20  predictions of the market movements that might take place in

21  the future, which can go up and can go down.

22          And while I would not fully analogize the trustee's

23  efforts to make an intelligent guess as to when it's time to

24  cash out of a position, nobody would suggest that any trustee

25  simply gamble on market movements, or putting it perhaps in a

FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

50

1    better way, when a trustee elects not to gamble on market

2    movements, he or she is at least in most, if not all cases,

3    acting entirely reasonably.

4         I also need to emphasize the very limited extent, none

5    in his papers, and without much more in oral argument,

6    Mr. Turner failed to address the TMT Trailer factors,

7    especially litigation expense, arbitraging the outcome of

8    litigation that would need to take place, and factors other

9    than his economic view of the value of these warrants if indeed

10   there were no litigation risks.

11        So for all of these reasons I'm approving this

12   settlement.

13        And Mr. Luskin, you are to settle an order in

14   accordance with this ruling stating in substance that for the

15   reasons stated on the record, the motion is approved.  The time

16   to appeal this ruling will run from the date of entry of the

17   associated order and not from the date of this opinion.

18        Also for the avoidance of doubt, I have considered and

19   have rejected the wisdom of imposing a stay upon my order.  And

20   the requirement in the 8000 series of the Federal Rules for

21   seeking a stay initially from the bankruptcy court shall be

22   deemed to have been satisfied and waived.  If any stay is

23   sought, it must be sought and obtained from the district court

24   and not from me.

25        Next matter, Mr. Luskin?

MR. LUSKIN: Okay. Your Honor, if I can thirty seconds on the order because I did promise the fiduciaries of the BVI funds and Soundview that I would be a little bit more precise than I have been. I'm not going to read the text of the order, but I do want the Court to be aware that we have agreed that the trustee will not distribute four million of the proceeds, which by the way, will be all cash proceeds, without forty-five days written notice to the appropriate parties, including the trustee and the BVI fiduciary and their counsel; that apart from that, the trustee is free to use the balance of the settlement plan as provided in a confirmed plan, which of course we do not yet have; and that if we were to give notice of distribution of these funds, there's a forty-five day objection period for the parties to work things out. And during that period we wouldn't distribute the restricted monies.

And of course, nothing in the order that we will be submitting on this settlement motion will prejudice the rights of any party, including Soundview and the BVI funds to assert other claims they have anywhere they have them, or to object to the proposed FILB plan.

We will -- and we have language that has already been cleared by the parties-in-interest. I will submit an order this afternoon. I will send copies to everyone who's participated and it will be type of language you've adverted

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

52

1   to.

2          Thank you.

3          THE COURT:  All right.  Does anybody from the

4   Soundview estate, or for that matter who is otherwise affected

5   by the language that Mr. Luskin described, feel that his

6   presentation as to the deal points was inaccurate or

7   incomplete?

8          Mr. Pearson?

9          MR. PEARSON:  Sorry.

10          THE COURT:  Is it Mr. Pearson?

11          MR. PEARSON:  Yes, it is, Your Honor.  Mr. Pearson for

12   the Soundview estate.

13          No, we feel that was a fair presentation and the order

14   has been agreed with us in advance, and so we are comfortable

15   with that language.

16          THE COURT:  Okay.  Fair enough.

17          What else you got, Mr. Luskin?

18          MR. LUSKIN:  The pleasure of handing the rest over to

19   Mr. Hornung.  You've heard enough of with me.

20          THE COURT:  All right.  Fair enough.

21          MR. LUSKIN:  Thank you.

22          THE COURT:  Mr. Hornung?

23          MR. HORNUNG:  Good morning, Your Honor.  We have a

24   number of different matters.  I'll sort of group them into two

25   categories.  The first have to do with twenty-six claims that

12-12796-mkv    Doc 510    Filed 04/16/14    Entered 04/17/14 12:08:32    Main Document
Pg 59 of 85
FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

53

1  were filed against the debtor's estate.  There's a number of

2  objections, as well as a stipulation resolving one of those

3  objections and a stipulation allowing the claim temporarily

4  just for voting purposes.

5          What I'd like to do is go through the objections first

6  because we've not received any response to the parties' claims

7  that we've objected to.  And then what I'd like to do is move

8  on to the two stipulations to which we have received a response

9  from Mr. Turner.  And then the last thing that is on my agenda

10 is a status conference in the adversary proceeding, and that's

11 related to Mr. Davis' lawsuit against Fletcher International,

12 Inc.

13         THE COURT:  Okay.  Now, on the claims objections, it's

14 my practice that for people who don't respond to estates when

15 they file objections, I grant them for the nonresponders and

16 expect anybody who had, like, called up the estate or filed a

17 written objection to kick that matter to a time at which the

18 merits of the objection can more appropriately be heard.

19         I'm not aware of there being any in the second

20 category, so your claims part is solely with respect to people

21 who didn't object at all?

22         MR. HORNUNG:  That's correct, Your Honor.

23         THE COURT:  All right.  The estate's objections to

24 that are sustained.  You can move on to your next matter.

25         MR. HORNUNG:  Okay.  The next matter is -- relates to

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

54

1   a proof of claim that was filed by Jeffrey Colon who is a tax

2   advisor of the debtor.  He filed a proof of claim in the amount

3   of twenty-six million -- excuse me -- 26,000 dollars.  And the

4   trustee objected to that claim solely for the reason that

5   Mr. Colon had not attached any supporting documentation.  He

6   believed that the documents were protected by the attorney-

7   client privilege.

8           After the objection was filed, Mr. Colon contacted the

9   trustee's counsel, provided the necessary documents.  We

10  reviewed the debtor's books and records, realized that there

11  was potentially some 4,000 dollars that had been received by

12  Mr. Colon during the preference period, had a telephone

13  conversation with Mr. Colon discussed resolving both the

14  objection and the claim.

15          And the culmination of that conversation was the

16  stipulation that's currently before the Court, which amounts to

17  allow the claim in the amount of 12,000 dollars.  It resolves

18  the objection filed by the trustee.  It also avoids the trustee

19  having to prosecute preference action.  The objection that we

20  received as from Mr. Turner, and Mr. Turner has suggested that

21  the trustee has resolved this claim for an improper purpose.

22          It appears that Mr. Turner believes that the trustee

23  solely resolved this claim so that he could collect "yes" votes

24  and outlaw "no" votes to the trustee's plan.  I'd like to point

25  out that because of the unique nature of the debtor's estate,

12-12796-mkv   Doc 510   Filed 04/16/14   Entered 04/17/14 12:08:32   Main Document
Pg 61 of 85
FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

55

1    Class 3 general unsecured creditors that were not objected

2    to -- there were only eight creditors who were entitled to

3    vote.  We received ballots from three of those creditors.  The

4    other five have not responded.  So it's a very small creditor

5    class.

6            Obviously the trustee exercised his reasonable

7    business judgment in agreeing to resolve this claim and we

8    believe that it's in the best interest that the estate -- that

9    the Court approves stipulation.

10           THE COURT:  All right.  Mr. Turner, you're contending

11   that the trustee's trying to stuff the ballot box?

12           MR. TURNER:  Without having had any knowledge, I'm not

13   sure whether -- whether or not there was.  As I've said, I am

14   not an attorney, but the -- there are approximately forty

15   claims in Class 3.  Apparently eight were approved by the

16   trustee and the balance are objected to, including those of the

17   Soundview and the Richcourt funds, among others.

18           Apparently, from reading Mr. Luskin's response the

19   other day, only three people have voted to approve:  one, which

20   was Prescott, which I have no objection to; two, the Messer --

21   I would have preferred had that case been heard first.  I don't

22   understand why Messer gets his vote, it is deemed entitled to

23   vote while pretty much everyone else is objected to while the

24   trustee claims that there's no merit to his case.  I believe

25   I'm in accord with the trustee that there is no merit to the

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

56

1    Messer case as the -- any agreement between Fletcher and

2    Madison Williams was at the parent levels up above.  It was an

3    agreement between FILB's parent and the parent of Mr. Messer's

4    entity without any promise to send any money down to Mr.

5    Messer's subsidiary, but I have no objection against Mr. Colon

6    receiving his money.

7         I'm just surprised that without Messer and Colon -- if

8    I'm understanding this correctly -- that it could have been a

9    one to nothing vote to approve the Class 3 series of forty

10   something things.

11        Thank you.

12        THE COURT:  All right.  Mr. Hornung, do you wish to

13   reply?

14        MR. HORNUNG:  Your Honor, yes.  And what I had

15   intended to do was to next address the stipulation that he

16   referred to as the Messer stipulation.  This is Greg Messer as

17   the Chapter 7 trustee for Madison Williams and Company.  So

18   I'll respond to that now.

19        Simply put, we contacted Mr. Messer's counsel to

20   discuss his claim because we weren't sure if there was any

21   merit to it.  We wanted to evaluate it and we were considering

22   objecting to it.  During the course of that conversation, the

23   parties agreed that we didn't have to resolve that issue right

24   now, that we could allow the claim only for voting purposes and

25   down the road we would either object and litigate that claim as

1    was necessary.

2            And again, we think this is a provident use of the

3    trustee's resources not to engage in unnecessary litigation.

4    And hopefully we can come to a resolution with Mr. Messer and

5    not be required to either object or file some sort of an

6    adversary proceeding.

7            THE COURT:  All right.  Mr. Turner, do you have a need

8    to reply?

9            MR. TURNER:  No, Your Honor.

10            THE COURT:  All right.  I'm overruling the objection

11    and I'm approving this.  The debtor is in position of the

12    world.  And the trustees of the world have duties to deal with

13    issues of this character, both to address the legitimate

14    desires of creditors to vote on plans under circumstances where

15    their claims have not yet been fully allowed and also to engage

16    in dialogue with the creditor community to reduce and allow, or

17    otherwise address issues such as preference recoveries without

18    bankrupting the estate further in the nature of litigation over

19    these things.

20            In the absence of any real facts -- plausible

21    allegations and real facts that cause a judge to believe that a

22    trustee or debtor-in-position is indeed trying to stuff the

23    ballot box, because that in substance is the allegation, a

24    court has no right or responsibility or duty to deny the

25    creditors of the world the usual rights they have to address

FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER

58

1   their legitimate needs and concerns.  And certainly, I have no

2   basis for finding either plausible allegations of trustee

3   misconduct or facts supporting such a view here.

4         So, Mr. Hornung, the objection is overruled; settle

5   an order.  And you can permit the voting as contemplated.

6         MR. HORNUNG:  Thank you, Your Honor.

7         And the last matter that we have today is the status

8   conference for the adversary complaint against Fletcher

9   International, Inc.

10        If Your Honor will recall, at our last status

11  conference -- I believe was on February 20th -- no one appeared

12  on behalf of Fletcher International, Inc. and you directed me

13  to contact Mr. Fletcher, in essence let him that he needed to

14  appear, retain counsel, seek a request for an extension from me

15  or from the Court, and if he did not do so, you would be

16  inclined grant a default judgment in our favor.

17        I did as directed, let Mr. Fletcher know.  I had radio

18  silence until I was walking into the court this morning.  I did

19  receive a letter.  I do not believe that it was copied to the

20  court.  In essence, the letter amounted to a general denial of

21  the allegations in the complaint and also let us know that

22  Mr. Fletcher intended to assert counterclaims for malicious

23  prosecution amongst other things against presumably Mr. Davis.

24        This sort of was --

25        THE COURT:  Mr. Davis, the Chapter 11 trustee --

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

59

1          MR. HORNUNG:  That's correct.

2          THE COURT:  -- of FILB?

3          MR. HORNUNG:  The threshold matter as we dealt with

4    earlier today is that Fletcher International, Inc. is, of

5    course, a corporation.  Mr. Fletcher is not an attorney and is

6    not entitled to appear on behalf of Fletcher International,

7    Inc. pro se.

8          At this point, his answer was originally due back in

9    the beginning of February.  His refusal to respond until today

10   is certainly slowing down the trustee's efforts to move forward

11   with this.  And we would like to move forward and sort of see

12   what the Court would like to do, but we do not believe this one

13   sentence response to us is appropriate and we'd like to move

14   forward with the default unless Mr. Fletcher is going to have

15   counsel in a very short time period.

16         THE COURT:  All right.  Mr. Fletcher, we've talked

17   before, some in your presence and I don't rule out the

18   possibility that it was also mentioned in your absence, that

19   Fletcher International, Inc., like other corporations, cannot

20   appear in a federal court without counsel.

21         There are also rules imposed by the Federal Rules of

22   Bankruptcy Procedure that start with Rule 7000, and I think the

23   one that would be relevant here would be somewhere in the range

24   from 7008 through 7012, and the Federal Rules of Civil

25   Procedure, running roughly from Rule 8 through Rule 12, that

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

60

 1   require real responses to pleadings.

 2            I know you're pro se, but you've got to tell me what's

 3   your game plan for getting counsel.  And if you have no plan

 4   for getting counsel, then what I think I'm going to need to do,

 5   to give due process to both sides, is to give you a certain

 6   date to get things straightened out, failing which, I'm going

 7   to authorize Mr. Hornung to make a motion for a default to

 8   which you or somebody can respond.  And I will authorize and

 9   direct both sides to address whether the failure to defend by

10   counsel is something that I can insist on or is merely a

11   suggestion.

12            So let me get your response now, Mr. Fletcher.

13            MR. FLETCHER:  Thank you, Your Honor.  The response

14   that I sent to Mr. Hornung was certainly more than one

15   sentence, but very certainly much less than a formal response

16   that an attorney would provide.  The attorney who has stepped

17   in in the New York Supreme Court litigation with Kasowitz has

18   expressed a willingness to step in here.

19            THE COURT:  Did you say has or has not?

20            MR. FLETCHER:  He -- he has expressed an interest.

21            THE COURT:  Has expressed an interest.

22            MR. FLETCHER:  Yes.

23            THE COURT:  All right.

24            MR. FLETCHER:  Yes, indeed.  And so it's a matter of

25   getting that done, and I do think that will be possible.

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

61

1      The other thing I'd clarify is I wouldn't say that I
2   have refused to respond.  I would say that I've -- I've been
3   responding a large number of things as best I can, and it is
4   certainly not an intentional lack of response.  But I do
5   understand the point that counsel is needed for a corporation.
6   I do have a particular counsel who's willing.  I just have to
7   get that deal done and -- and he is able to move quickly.  So
8   theoretically, he will be the one who files a formal response.
9      THE COURT:  How much time do you need to get your
10  lawyers on board and how much additional time do you need to
11  get the answer done?
12      MR. FLETCHER:  I think he can do the answer quickly
13  because he's done a similar answer to the state -- I'm sorry;
14  I'm mixing my matters here.  I don't think it'll take him long
15  to do an answer.  He's familiar with these issues.  The bigger
16  question is my getting my deal done with him, giving him
17  certainty.  He'd like to have the security of an appropriate
18  retainer.  I -- hence, noting to this deadline in particular, I
19  was hoping to have it done by today and I think it's not out of
20  the question for him to be in place by next week, but I -- I
21  don't -- I can't say that with certainty.
22      THE COURT:  All right.  Here's what we're going to do,
23  gentlemen.  I'm providing for triple that time, three weeks, to
24  get a notice of appearance or otherwise confirmation that
25  Fletcher International, Inc. has a lawyer.

**FLETCHER INTERNATIONAL, LTD.; DAVIS v. FLETCHER**

62

1          I'm further providing that Fletcher International,

2    Inc. will have three weeks plus thirty days from today to file

3    an answer.  That time can be extended for cause upon an

4    application by a real lawyer if thirty days is insufficient to

5    do it, but this train has got to leave this station.  And

6    that's what we're going to do.

7          MR. FLETCHER:  Thank you, Your Honor.

8          THE COURT:  Okay.

9          Anything else, Mr. Hornung?

10          MR. HORNUNG:  Your Honor, I believe that that is it.

11          THE COURT:  Okay.  Very good.  All right.  Then we're

12    done with Fletcher International Limited of Bermuda.

13        (Whereupon these proceedings were recessed at 11:49 AM)

14

15

16

17

18

19

20

21

22

23

24

25

63

I N D E X

RULINGS

|  | Page | Line |
|---|---|---|
| Mr. Fletcher's motion for an injunction - denied | 14 | 19 |
| Trustee's motion to approve settlement and sale - granted. | 41 | 11 |
| Estate's objections to proofs of claims filed by certain pension funds sustained | 23 | 53 |
| Hearing to Stipulation and Order re: claims of Gregory Messer and stipulation and order resolving proof of claim filed by Jeffrey M. Colon - approved | 10 | 57 |

64

1

2                          C E R T I F I C A T I O N

3

4    I, Linda Ferrara, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10   *Linda Ferrara*

11   _____

12   LINDA FERRARA (CET**D-656)

13   AAERT Electronic Certified Transcriber

14

15   eScribers, LLC

16   700 West 192nd Street, Suite #607

17   New York, NY 10040

18

19   Date: March 20, 2014

20

21

22

23

24

25

12-12796-mkv Doc 510 Filed 04/16/14 Entered 04/17/14 12:08:32 Main Document
FLETCHER INTERNATIONAL, LTD.
Case No. 12-12796-reg; Adv. Pro. No. 13-01814-reg 71 of 85

March 19, 2014

## $

**$19.40 (2)**
20:14;27:22
**$21.25 (5)**
23:19;27:18,22;
33:13;39:22
**$4.25 (2)**
27:4;33:9
**$6.02 (1)**
42:1

## A

**ability (3)**
6:21;13:14;39:20
**able (3)**
25:13;29:25;61:7
**above (4)**
23:22;37:7;38:7;
56:2
**absence (2)**
57:20;59:18
**abundance (1)**
9:22
**academic (1)**
18:18
**accelerated (1)**
12:21
**accelerating (1)**
12:18
**accept (2)**
24:17;45:18
**accepted (1)**
24:22
**accepting (2)**
39:22,22
**access (3)**
12:21;16:1;29:23
**accord (1)**
55:25
**accordance (4)**
8:16;29:20;30:17;
50:14
**according (2)**
18:10;34:25
**account (3)**
31:2;42:22;43:11
**accounting (2)**
19:3;22:19
**accounts (3)**
29:14,20,23
**acknowledgement (1)**
33:20
**acquire (1)**
18:16
**acquisition (1)**
44:22
**act (1)**
15:17
**acted (1)**
15:17

**acting (2)**
34:1;50:3
**action (2)**
44:19;54:19
**actions (1)**
6:25
**actively (1)**
38:16
**actually (6)**
8:14;10:9;25:11,
14;29:1;33:12
**addition (4)**
19:9;26:9;38:8;
43:22
**Additional (5)**
41:22,24;42:1,16;
61:10
**address (13)**
6:24;13:20;17:22,
23;20:12;23:4;39:24;
50:6;56:15;57:13,17,
25;60:9
**addressed (1)**
45:20
**addressee (1)**
11:19
**Adelphia (1)**
46:20
**adequate (1)**
29:24
**adjournment (1)**
7:19
**adjudicate (1)**
31:16
**adjust (1)**
44:1
**adjusted (5)**
24:25;40:13;42:22,
25;43:11
**adjustment (3)**
20:25;27:13,17
**administrator (1)**
19:3
**admissible (2)**
49:13,14
**admission (1)**
49:16
**admonished (1)**
11:12
**ADV (1)**
35:1
**advance (3)**
6:25;7:7;52:14
**adversary (5)**
8:9;15:6;53:10;
57:6;58:8
**adverse (2)**
13:4;15:22
**adversely (1)**
15:18
**adverted (2)**
38:6;51:25
**advised (1)**

**9:9**
**advises (1)**
35:4
**advisor (1)**
54:2
**advisors (4)**
30:15,15;35:1;
38:17
**advisors' (1)**
30:14
**advisory (2)**
23:9;35:1
**advocate's (1)**
48:25
**affected (1)**
52:4
**affidavits (1)**
22:1
**affiliate (1)**
41:19
**afternoon (2)**
26:10;51:24
**again (8)**
9:4;20:10;21:22;
22:15;31:24;34:13;
43:9;57:2
**against (15)**
11:12;13:4;14:20;
23:5,7;24:3;25:16,17,
22;45:19;53:1,11;
56:5;58:8,23
**agenda (2)**
7:24;53:9
**agent (2)**
13:25;16:10
**ago (5)**
9:9,12;24:14;
26:23;43:8
**agree (1)**
33:12;35:22
**agreed (6)**
24:11;30:5;38:10;
51:6;52:14;56:23
**agreeing (1)**
55:7
**agreement (9)**
27:12,12,14,16;
28:17;31:18;42:12;
56:1,3
**agreements (2)**
12:25;44:21
**ahead (1)**
9:22
**al (1)**
5:11
**alike (1)**
16:25
**all-cash (1)**
45:2
**allegation (1)**
57:23
**allegations (3)**
57:21;58:2,21

**alleged (1)**
15:17
**allow (3)**
54:17;56:24;57:16
**allowed (2)**
32:11;57:15
**allowing (1)**
53:3
**almost (2)**
18:15;20:8
**alone (2)**
33:17;35:6
**along (2)**
23:24;45:14
**Alpha (1)**
26:5
**ALPHONSE (1)**
5:17
**alternatives (2)**
45:17;48:2
**although (5)**
6:20;21:15;42:14;
45:21,25
**always (1)**
24:7
**among (3)**
10:5;42:21;43:10;
49:5;55:17
**amongst (2)**
6:23;58:23
**amount (4)**
28:2;41:23;54:2,17
**amounted (1)**
58:20
**amounts (1)**
54:16
**analogize (1)**
49:22
**analysis (6)**
19:9;24:12;25:17;
33:11;34:3;42:5
**analyst (1)**
18:24
**analyze (1)**
47:22
**announcement (3)**
19:11,16;36:13
**announcing (2)**
19:7;26:10
**apart (1)**
51:10
**Apparently (2)**
55:15,18
**appeal (1)**
50:16
**Appeals (3)**
27:9;40:18;46:16
**appear (7)**
9:10;13:21;14:3;
15:7;58:14;59:6,20
**appearance (1)**
61:24
**appearances (2)**

**6:2;14:6**
**appeared (2)**
35:4;58:11
**appearing (2)**
16:23;18:9
**appears (1)**
54:22
**application (1)**
62:4
**apply (1)**
16:24
**appointed (1)**
26:24
**appreciably (1)**
20:23
**appreciate (1)**
13:15
**appropriate (6)**
34:16;42:10;45:5;
51:8;59:13;61:17
**appropriately (2)**
45:6;47:22;53:18
**approval (5)**
7:21;17:24;26:6;
45:12;46:14
**approve (2)**
55:19;56:9
**approved (8)**
31:20,24;47:1,16;
48:5,7;50:15;55:15
**approves (1)**
55:9
**approving (3)**
41:11;50:11;57:11
**approximately (2)**
27:25;55:14
**April (3)**
26:14;41:15;42:18
**Arbitrage (3)**
25:2;26:5,20
**arbitraging (1)**
50:7
**area (3)**
33:21;34:2;42:25
**argued (1)**
27:6
**arguing (1)**
25:12
**argument (13)**
14:4;17:19;21:1,
21;28:19,20,21;29:6,
18;41:9;48:20;49:1;
50:5
**arguments (1)**
43:1
**arm's (1)**
38:13
**arm's-length (2)**
36:23;47:5
**around (2)**
23:13,16
**arranged (1)**
44:23

**articulated (1)**
46:14
**articulates (1)**
15:14
**assert (2)**
51:19;58:22
**assessed (5)**
34:5,5,6,19,20
**assessment (1)**
37:16
**Asset (6)**
5:17,19;26:2,7,7;
39:19
**assets (3)**
23:6;44:9,16
**assignment (1)**
29:12
**associate (1)**
45:15
**associated (4)**
17:16;44:11,22;
50:17
**assume (2)**
25:19;35:16
**assuming (3)**
7:8;31:19;34:24
**assurance (1)**
47:11
**attached (1)**
54:5
**attack (1)**
39:19
**attacking (1)**
38:1
**attempted (1)**
26:24
**Attorney (9)**
5:11,20;13:8;
16:22;18:21;55:14;
59:5;60:16,16
**attorney- (1)**
54:6
**attorneys (1)**
16:24
**August (1)**
43:7
**Authority (1)**
22:22
**authorize (3)**
16:9;60:7,8
**authorized (1)**
40:14
**authorizing (1)**
14:22
**automatic (1)**
29:19
**available (2)**
10:18;30:20
**Average (1)**
19:14
**avoid (1)**
31:16
**avoidance (1)**

50:18
**avoids (1)**
54:18
**aware (7)**
10:25;23:12,13,14;
31:6;51:5;53:19
**away (2)**
10:8;37:10

**B**

**back (9)**
11:25;20:20,21;
21:9;26:1;31:1,5;
39:16;59:8
**background (1)**
26:13
**balance (3)**
8:6;51:10;55:16
**ballot (2)**
55:11;57:23
**ballots (1)**
55:3
**Bank (20)**
17:17;26:15,17;
28:8;41:16,18,21;
42:13,16,19,20;43:9,
15,23;44:12,25;
45:10,20,23;48:23
**bank-owned (1)**
41:19
**Bankruptcy (6)**
11:4;14:1;15:5;
26:23;50:21;59:22
**bankruptcy-related (1)**
29:13
**bankrupting (1)**
57:18
**Banks (1)**
42:9
**bargaining (1)**
47:5
**based (3)**
30:14;32:12;47:19
**bases (5)**
15:1;16:5;32:25;
41:13;46:13
**Basically (2)**
23:20;40:21
**basis (5)**
10:13;15:9,20;
33:17;58:2
**basket (1)**
23:6
**Bay (1)**
22:22
**begin (2)**
6:12;12:3
**beginning (1)**
59:9
**behalf (4)**
21:17;43:14;58:12;
59:6

**believes (3)**
23:16;33:15;54:22
**below (2)**
20:21;46:18
**benefit (3)**
33:25;36:15;38:17
**benefits (1)**
46:24
**Bermuda (1)**
62:12
**best (12)**
15:13;30:16;36:21,
22;37:10,18;38:11;
45:6,11,19;55:8;61:3
**better (1)**
50:1
**beyond (3)**
25:20;35:17;40:25
**bid (9)**
23:18;37:8,9,10,10,
11,14,17,20
**bidder (3)**
34:17;37:14,21
**bidders (7)**
30:13;34:6,11;
44:13,15,23,25
**bidders' (2)**
34:13,15
**bids (3)**
44:16;45:2,2
**big (4)**
25:18;27:19;36:12;
48:14
**bigger (1)**
61:15
**bit (1)**
51:3
**block (1)**
14:21
**board (2)**
23:9;61:10
**boggle (1)**
47:21
**books (1)**
54:10
**both (16)**
6:18,18;11:22;
14:21;30:11,14;
35:16;36:2,10;37:11;
39:4;44:10;54:13;
57:13;60:5,9
**bought (1)**
20:21
**box (2)**
55:11;57:23
**boys (1)**
48:15
**brand (1)**
34:7
**brief (1)**
39:5
**Briefly (2)**
8:18;48:3

**briefs (1)**
35:18
**bring (2)**
27:18;41:8
**bringing (3)**
10:14;12:1;26:11
**brings (2)**
30:8;32:2
**broker (2)**
26:8;30:11
**brought (1)**
26:7
**bucks (3)**
42:13,17,19
**Buddy (2)**
18:24;19:1
**bunch (1)**
23:2
**bundling (1)**
46:21
**burden (1)**
16:14
**business (6)**
20:3,3;38:9;45:5,8;
55:7
**buy (2)**
28:14;41:20
**buyback (1)**
20:21
**buyer (1)**
44:20
**buyers (1)**
35:20
**BVI (9)**
8:21;10:19,25;
31:9,18;32:1;51:3,9,
19

**C**

**calculate (1)**
28:17
**calculations (1)**
18:24
**calendar (1)**
46:1
**California (1)**
12:11
**call (3)**
20:5;28:18;44:19
**called (5)**
17:25;23:12;28:11;
44:17;53:16
**calls (1)**
44:24
**can (36)**
7:12;9:10;12:3;
13:21;16:11;17:14,
18;18:2;21:12,16;
25:13;32:8;34:24;
35:5;36:17;37:22;
38:12,23;40:20;46:3;
47:20;48:22;49:14,

18,21,21;51:1;53:18,
24;57:4;58:5;60:8,
10;61:3,12;62:3
**cap (8)**
19:17,19,19,22;
20:18;21:2;36:13,16
**capture (1)**
36:21
**careful (1)**
13:13
**carefully (1)**
13:6
**cares (1)**
40:7
**carry (4)**
29:14,20,23;47:10
**case (21)**
14:10;16:8;17:25;
18:5;21:20;24:9,12,
13,19,19;27:9;28:22;
40:5;18,20,24;46:20;
47:20;55:21,24;56:1
**cases (5)**
6:19;11:22;46:20;
49:4;50:2
**cash (12)**
29:15;37:8,9,10,11,
17;41:24;44:17,18;
45:13;49:24;51:7
**cashless (1)**
41:24
**cast (1)**
38:15
**categories (1)**
52:25
**category (1)**
53:20
**caught (1)**
17:10
**cause (2)**
57:21;62:3
**caution (1)**
9:22
**Cayman (3)**
22:1;38:1,5
**Caymans (1)**
26:5
**cease (1)**
30:6
**certain (4)**
41:16,18;45:21;
60:5
**certainly (22)**
10:23;11:4;13:3,
23;14:3;18:20;26:24;
29:6;30:25;32:8;
33:24;34:4;36:9,14,
24;47:8,9;58:1;
59:10;60:14,15;61:4
**certainty (1)**
61:17,21
**chambers (1)**
6:17

chance (5)
7:4;12:6;18:3,4;
40:20
Chapter (3)
6:6;56:17;58:25
character (4)
17:8;45:15;48:16;
57:13
characterizing (1)
36:10
check (1)
34:24
China (2)
17:17;48:23
choices (1)
48:7
chunk (1)
25:3
Circuit (2)
11:11;46:16
Circuit's (2)
17:17;48:22
circumstances (4)
10:10;28:25;39:15;
57:14
Citco (3)
19:2;23:1;25:17
Civil (1)
59:24
claim (18)
8:7;29:7;30:1;
31:13,23;37:20;53:3;
54:1,2,4,14,17,21,23;
55:7;56:20,24,25
claims (16)
8:8;31:11,12;
34:10;42:13;43:22;
44:21;45:20;51:20;
52:25;53:6,13,20;
55:15,24;57:15
clarify (1)
61:1
Class (5)
18:9;55:1,5,15;
56:9
classes (2)
21:7;41:21
clause (1)
28:24
clear (4)
27:8;33:8,8;40:9
cleared (2)
32:1;51:23
clearly (3)
13:1;24:13;37:4
client (2)
16:9;54:7
close (4)
11:10;19:11;20:9,
14
closer (1)
20:16
Code (1)

14:2
coin (1)
19:12
collect (2)
40:7;54:23
collectively (1)
8:10
colloquial (1)
32:23
colloquially (1)
44:19
Colon (7)
54:1,5,8,12,13;
56:5,7
combination (1)
15:19
combinations (1)
44:18
comfortable (1)
52:14
commence (1)
45:19
commenced (1)
6:22
comment (5)
12:22;20:12;23:4,
10;39:8
comments (4)
6:3;13:9;16:19;
43:12
commission (1)
24:23
communicate (2)
7:2;11:17
communicated (1)
11:15
communicating (1)
11:13
Communications (1)
46:20
Community (19)
28:8;41:15,18,21;
42:9,13,16,19,20;
43:9,14,23;44:12,25;
45:10,20,23;48:5;
57:16
company (6)
8:23;21:9,17;
22:12;39:16;56:17
compared (1)
46:23
competence (1)
33:21
competent (1)
47:10
complaint (2)
58:8,21
complete (2)
10:13;34:18
completely (3)
11:8;27:3;35:19
compliance (1)
17:15

complicated (3)
13:5;33:22;35:6
complied (3)
15:8;32:11,19
comply (4)
15:4;16:24;32:14;
49:15
comprehensible (1)
33:1
concept (1)
13:12
conceptual (1)
16:4
concern (4)
15:14;22:5;39:21,
21
concerns (2)
10:22;58:1
conclusions (2)
41:13;46:12
conclusory (1)
43:3
conducted (1)
38:15
conference (5)
8:8;31:15;53:10;
58:8,11
confidentiality (1)
29:12
confirm (1)
16:10
confirmation (3)
10:3;31:17;61:24
confirmed (1)
51:11
consent (3)
8:1;9:18;12:14
consequences (1)
47:13
consider (1)
20:4
consideration (4)
7:6,19;49:3,8
considered (3)
49:15,17;50:18
considering (2)
34:17;56:21
consisted (1)
45:2
consisting (1)
45:13
consists (1)
35:3
constituencies (1)
26:4
constituency (1)
48:8
constituent (1)
38:20
constituents (2)
37:2;38:19
constitute (1)
32:8

constructive (1)
31:14
contact (3)
30:11,12;58:13
contacted (4)
44:9,13;54:8;56:19
contacts (1)
30:12
contemplated (2)
32:20;58:5
contended (1)
42:21
contending (2)
43:9;55:10
content (1)
15:14
contentions (1)
44:4
context (2)
26:2;42:14
continue (1)
10:5
continued (1)
20:10
continues (1)
47:20
continuing (1)
15:17
contract (2)
27:8;29:12
contrast (1)
30:22
control (1)
21:15
controversy (2)
42:25;43:17
convenience (1)
47:1
conversation (4)
12:17;54:13,15;
56:22
convert (1)
29:3
cooperation (1)
26:4
copied (1)
58:19
copies (1)
51:24
copy (1)
14:17
corporation (10)
9:5;13:21;14:2;
15:7,7;40:13,14;
46:20;59:5;61:5
corporations (1)
59:19
correctly (2)
44:4;56:8
corroborated (1)
19:6
corroboration (1)
19:8

cost (6)
11:7,7;37:4,4;
45:24;48:1
counsel (20)
9:7,10;13:15,22;
15:7;33:25;34:1,7;
47:10;51:9;54:9;
56:19;58:14;59:15,
20;60:3,4,10;61:5,6
counterclaims (1)
58:22
couple (1)
9:12
course (12)
8:1;9:2;11:16;30:4,
22,25;31:12;32:4;
51:12,17;56:22;59:5
COURT (81)
6:2,8,12,15;7:2;
8:16,22,25;9:3,7;
12:5,10;13:10,18;
14:7,19;16:2,14,18,
23;18:21;19:19;22:1,
8;25:24;26:6,11;
27:9;28:7;31:6;32:9,
17;34:16;35:10,12,
14,25;39:3,9;40:18;
41:2,4,6,8;46:3,16,
22;47:20;50:21,23;
51:5;52:3,10,16,20,
22;53:13,23;54:16;
55:9,10;56:12;57:7,
10,24;58:15,18,20,
25;59:2,12,16,20;
60:17,19,21,23;61:9,
22;62:8,11
courtroom (4)
7:14;11:19;16:12;
46:22
courts (5)
9:5;13:21;15:25;
16:6;38:5
Court's (4)
10:25;17:25;30:17;
46:15
cover (1)
24:24
creditor (5)
48:4,7,8;55:4;
57:16
creditors (9)
22:18;25:15;47:2;
48:4;55:1,2,3;57:14,
25
criticizes (1)
26:8
culmination (1)
54:15
current (1)
14:17
currently (1)
54:16
cutting (1)

33:5

**D**

**daily (2)**
27:16;30:11
**damages (2)**
28:17,24
**damned (2)**
11:14,14
**data (1)**
12:25
**date (4)**
7:13;50:16,17;60:6
**Davis (9)**
6:5,6;24:15;26:24;
30:10,20;34:11;
58:23,25
**Davis' (5)**
30:10,18;34:14;
43:24;53:11
**DAY (7)**
5:10;14:15;19:14,
15;38:21;51:13;
55:19
**days (10)**
9:17;19:12;20:7,8;
22:17;24:4;31:21;
51:8;62:2,4
**dead (1)**
39:1
**deadline (3)**
9:20;10:4;61:18
**deadlines (1)**
9:15
**deal (14)**
8:2,6;11:16;27:19;
31:22;41:22;42:2;
44:8;45:11;49:18;
52:6;57:12;61:7,16
**dealing (1)**
9:4
**dealings (1)**
44:11
**deals (2)**
17:3,4
**dealt (2)**
11:22;59:3
**Deborah (2)**
5:20;8:20
**debtor (3)**
41:16,19;54:2;
57:11
**debtor-in-position (1)**
57:22
**debtor's (4)**
44:10;53:1;54:10,
25
**decade (1)**
17:6
**deciding (1)**
42:7
**decision (6)**

17:18,25;30:14;
46:15;48:23,23
**decisions (2)**
17:17;46:19
**declaration (4)**
30:10,18;34:6;
43:25
**deemed (3)**
7:8;50:22;55:22
**deeming (2)**
7:18;14:19
**default (3)**
58:16;59:14;60:7
**defend (1)**
60:9
**defendant (2)**
40:13,14
**defenses (1)**
34:10
**definition (1)**
27:16
**degree (1)**
47:2
**delay (2)**
10:24;47:2
**deliver (2)**
20:8;33:23
**delivered (1)**
22:2
**demands (1)**
12:15
**demonstrate (1)**
10:13
**demonstrates (1)**
11:9
**denial (1)**
58:20
**denied (3)**
7:1,20;14:22
**deny (2)**
12:2;57:24
**denying (1)**
15:20
**DEPARTMENT (1)**
5:2
**depth (1)**
43:6
**deputy (1)**
7:14
**described (3)**
26:17;45:3;52:5
**deserves (1)**
12:1
**desires (1)**
57:14
**desk (1)**
23:15
**detail (1)**
28:5
**detailed (1)**
30:19
**details (1)**
42:6

**determined (1)**
37:16
**dialogue (1)**
57:16
**difference (1)**
25:20
**different (7)**
7:4,25,25;22:25;
25:6;44:25;52:24
**difficult (1)**
46:7
**diligence (1)**
44:23
**diligent (2)**
28:22;44:14
**direct (2)**
14:24;60:9
**directed (3)**
13:25;58:12,17
**directly (1)**
35:3
**director (1)**
21:14
**directors (1)**
47:4
**disapprove (1)**
17:8
**disapproved (1)**
46:17
**disclosures (1)**
49:8
**discovery (15)**
8:2,13;9:13;10:9;
11:25;12:15,18;
14:21;15:21,21,22,
23,24;16:5,5
**discretion (4)**
15:2;41:14;46:13;
47:19
**discuss (3)**
18:20;40:4;56:20
**discussed (1)**
54:13
**discussions (1)**
31:8
**dishonored (1)**
30:3
**disparaged (1)**
23:24
**dispute (12)**
14:21;27:1,11;
28:3;29:7,13;31:12;
42:3,7;43:12,13,20
**disputed (1)**
33:10
**disputes (4)**
28:3,10;29:11;43:4
**distressed (1)**
26:14
**distribute (2)**
51:6,15
**distribution (2)**
16:9;51:13

**district (1)**
50:23
**docket (1)**
14:10
**document (2)**
10:20;14:17
**documentation (1)**
54:5
**documents (20)**
8:19;9:17,23;10:1,
1,14,15,17,18,23;
12:3,21;13:2,5;
14:23;15:15;16:12;
29:20;54:6,9
**dollar (7)**
21:13,25;23:8;
25:10;26:14;37:9;
40:23
**dollars (60)**
11:18;19:17,24;
20:15,17,19,19,22,
24;21:6,10,19;22:2,6,
6,12,24;23:7,19,21,
21,22;24:2,5,6,18,18,
21;25:1,13;27:25;
28:1,1,18;29:4,5,8,8;
31:20;33:15;35:2,9;
36:19,20;37:5,5,8,13,
15;40:1,3,22,24;
41:25;44:3;45:13,25;
54:3,11,17
**done (13)**
12:20,20;22:24;
27:2;34:3;35:20;
60:25;61:7,11,13,16,
19;62:12
**doubt (1)**
50:18
**Dow (1)**
19:13
**down (7)**
19:14;24:7;38:22;
49:21;56:4,25;59:10
**downside (4)**
23:25;47:13,23;
48:1
**downside's (1)**
24:5
**dozens (1)**
11:19
**draconian (1)**
47:13
**dress (1)**
38:22
**drives (1)**
33:18
**due (5)**
20:7;36:13;44:23;
59:8;60:5
**Duff (1)**
19:5
**dunk (1)**
25:6

**During (4)**
28:13;51:15;54:12;
56:22
**duties (1)**
57:12
**duty (1)**
57:24

**E**

**earlier (2)**
43:12;59:4
**easily (1)**
46:3
**East (1)**
5:12
**economic (2)**
17:15;50:9
**Edelman (1)**
39:16
**effect (1)**
43:16
**effectively (1)**
46:11
**effort (3)**
36:21,22;44:8
**efforts (2)**
49:23;59:10
**eight (4)**
7:24;37:9;55:2,15
**eighteen (1)**
19:23;22:11,15
**Eisler (1)**
6:5
**Eisner (3)**
19:4;23:2;25:18
**either (11)**
7:18;15:18;31:23;
39:14;43:21;45:18;
47:6,8;56:25;57:5;
58:2
**elects (1)**
50:1
**Elite (2)**
5:11;25:1
**else (5)**
6:8;32:12;52:17;
55:23;62:9
**emphasize (1)**
50:4
**end (5)**
36:23;37:17;38:21;
41:8;48:5
**engage (2)**
57:3,15
**engaged (2)**
26:3;30:9
**enjoin (1)**
8:19
**enormous (1)**
43:17
**enough (7)**
7:16;11:24,24;

16:7;52:16,19,20

**enter (1)**
38:10

**entered (5)**
9:12;14:15;15:13;
31:17;41:16

**entire (1)**
33:19

**entirely (1)**
50:3

**entitled (5)**
28:14;36:15;55:2,
22;59:6

**entity (1)**
56:4

**entry (1)**
50:16

**equal (1)**
16:1

**equation (1)**
47:18

**Ernst (3)**
19:5;21:9;22:4

**especially (3)**
28:25;35:15;50:7

**ESQ (3)**
5:8,14,20

**essence (2)**
58:13,20

**essentially (1)**
31:20

**establishing (1)**
49:5

**estate (19)**
13:4;15:18,19;
26:15;29:16;30:16;
43:14;45:12;46:10;
47:14;48:6,10;52:4,
12;53:1,16;54:25;
55:8;57:18

**estates (2)**
38:11;53:14

**estate's (1)**
53:23

**estimated (1)**
44:3

**et (1)**
5:11

**evaluate (2)**
33:6;56:21

**evaluated (1)**
46:9

**even (17)**
7:5;12:17;15:9;
19:5;21:24;23:7,18;
24:11;25:13;27:22;
28:19,25;32:7;36:14;
40:4;44:4;49:17

**event (2)**
19:13;30:2

**eventually (2)**
21:8;46:2

**everybody (1)**

6:2

**everyone (3)**
11:18;51:24;55:23

**evidence (8)**
15:13;17:2,4,14;
25:22;32:21;48:24;
49:3

**ex (2)**
11:13,15

**example (1)**
17:9

**exceeded (1)**
44:6

**except (4)**
20:21;42:7;43:1;
49:4

**exception (1)**
48:11

**excuse (2)**
41:17;54:3

**excused (1)**
42:2

**exercise (11)**
15:1;26:24;29:1;
30:2;41:13,25,25;
42:18,20;43:8;46:13

**exercised (6)**
38:9;42:18;44:6;
45:4,7;55:6

**exist (1)**
33:10

**expect (4)**
6:8;31:7;36:18;
53:16

**expected (1)**
7:14

**expense (4)**
47:1,17,24;50:7

**expensive (3)**
35:6;46:3;47:21

**experience (5)**
18:18,19;23:12;
38:23;45:25

**expert (20)**
13:24;17:3,7,14,
16;18:11;32:10,11,
14,18;33:22,24;34:2;
40:8,10;49:3,6,7,9,13

**expertise (2)**
43:5;48:15

**experts (1)**
32:10

**explain (1)**
17:13

**explained (1)**
32:25

**explored (1)**
18:13

**express (2)**
17:7;48:22

**expressed (3)**
60:18,20,21

**extended (1)**

62:3

**extension (1)**
58:14

**extent (3)**
10:18;47:3;50:4

**extraordinarily (1)**
48:16

---

**F**

---

**fact (9)**
31:7;32:5;39:11;
41:13;43:20,21;
44:14;45:4;47:7

**factors (3)**
17:24;50:6,8

**facts (8)**
17:20;41:15;47:6;
48:21;49:18;57:20,
21;58:3

**failed (1)**
50:6

**failing (1)**
60:6

**failure (9)**
17:23;21:4;28:11,
16;29:7,10;37:19;
42:3;60:9

**fair (8)**
7:5;15:25;29:6,21,
21;52:13,16,20

**fairly (2)**
31:8;42:12

**faith (3)**
10:14;12:23;13:2

**fall (1)**
46:18

**falls (1)**
38:7

**FAM (3)**
9:9,10;13:25

**F-A-M (1)**
9:9

**familiar (4)**
13:11;19:3;26:12;
61:15

**fanciful (3)**
27:21,22;33:18

**far (3)**
20:21;35:4;37:9

**favor (2)**
46:17;58:16

**February (2)**
58:11;59:9

**Federal (15)**
13:21;15:5,24;
16:6,23;17:2,4;32:20,
21;48:24;49:2;50:20;
59:20,21,24

**fee (2)**
42:12,12

**feel (2)**
52:5,13

**feels (1)**
38:4

**fees (3)**
24:24;25:3;45:25

**Ferry (2)**
17:25;46:15

**few (2)**
8:4;35:8

**FIA (5)**
21:7,14,17,21;22:2

**fiduciaries (2)**
31:19;51:2

**fiduciary (5)**
8:20;31:9;36:24;
48:6;51:9

**fields (1)**
45:5

**fifteen (3)**
8:10;19:15;35:7

**fifty (1)**
7:2

**fifty-six (1)**
35:2

**fight (3)**
15:25;25:21;40:5

**fighting (2)**
25:16,19

**FII (2)**
8:9;25:1

**FILB (29)**
6:18,18;11:23;
15:19;19:25;21:3;
23:1;24:24;25:7;
26:18,23;27:5,25;
28:25;29:3,4,15;
40:19;41:16,16,20,
23;42:8,11,15,18;
43:14;51:21;59:2

**FILB's (3)**
29:23;42:2;56:3

**file (6)**
7:16;21:17;35:2;
53:15;57:5;62:2

**filed (8)**
20:5;21:1;53:1,16;
54:1,2,8,18

**files (1)**
61:8

**filing (4)**
34:25;35:23;36:1,1

**finally (2)**
13:7;33:20

**financed (1)**
26:18

**financial (3)**
28:12;30:14;39:16

**find (10)**
23:17;40:19;41:15;
43:4,20;44:14;45:4;
47:6,9,17

**finding (2)**
43:1;58:2

**findings (2)**

41:12

**firm (4)**
23:12,16;35:7;37:9

**firms (5)**
19:3;22:19,19;
25:18;34:7,15

**First (14)**
12:9,13;15:2;18:2,
6;19:14;26:23;34:13,
23;40:11;48:19;
52:25;53:5;55:21

**five (6)**
8:15;20:8;29:4,5;
35:3;55:4

**five-to-1 (1)**
27:4

**flaw (1)**
33:18

**Fletcher (64)**
5:17,17,19;6:10,11,
18,23;7:11;8:18,22;
9:9,19;10:10,20;11:5,
13;12:1,6,8,9,10,13;
13:23;14:12,16;
15:14,18;16:3,22;
18:23,24;19:1,6;
24:14,14;25:4;39:14,
15,19;40:1;41:19;
53:11;56:1;58:8,12,
13,17,22;59:4,5,6,14,
16,19;60:12,13,20,
22,24;61:12,25;62:1,
7,12

**Fletcher's (7)**
8:3,22;9:18;14:20;
19:2;20:3;38:25

**flip (1)**
19:12

**flip-flop (1)**
18:1

**flouted (1)**
9:11

**follow (1)**
41:14

**followed (1)**
30:4

**following (1)**
15:1

**foremost (1)**
34:13

**form (4)**
32:12;35:1,1;48:15

**formal (2)**
60:15;61:8

**formula (1)**
42:22

**forth (3)**
32:19;43:24;48:21

**forty (2)**
55:14;56:9

**forty-five (4)**
8:12;31:21;51:8,13

**forward (5)**

FLETCHER INTERNATIONAL, LTD.
Case No. 12-12796-reg; Adv. Pro. No. 13-01814-reg

March 19, 2014

15:4;25:17;59:10,
11,14
**found (2)**
32:14;47:6
**foundation (4)**
32:6,8,10,23
**foundations (3)**
32:17,17;33:7
**four (5)**
20:6;25:1;31:20;
45:2;51:6
**four-and-a-quarter (3)**
20:14;27:7,20
**fourteen (1)**
47:19
**frankly (4)**
22:7;31:17;32:7;
34:23
**free (2)**
38:4;51:10
**freeze (1)**
31:20
**Friday (2)**
9:20;20:10
**front (1)**
6:6
**fulfill (1)**
42:11
**full (3)**
22:18;41:23;46:22
**full-fledged (1)**
25:7
**fully (2)**
49:22;57:15
**fund (7)**
19:3;21:7,14,17,
21;22:22,23
**fundamental (2)**
16:1;33:18
**fundamentally (1)**
49:17
**Funds (19)**
8:21;10:19,25;
19:4,7;21:8,9;22:3,
20;23:1;25:16;31:9;
34:21,22;35:4;51:3,
13,19;55:17
**further (9)**
18:13;20:12;24:21;
25:2;30:21;42:13;
43:2;57:18;62:1
**future (4)**
33:5;44:20;46:24;
49:21

## G

**gain (1)**
24:3
**gamble (2)**
49:25;50:1
**game (2)**
48:12;60:3

**garner (1)**
37:21
**gathered (1)**
32:13
**gave (3)**
9:19;12:14;43:6
**general (2)**
55:1;58:20
**generated (1)**
24:24
**Gentlemen (4)**
6:15;14:19;41:11;
61:23
**GEORGE (2)**
5:19;6:14
**Georgia (1)**
26:16
**get-go (1)**
27:1
**gets (2)**
21:5;55:22
**given (9)**
11:5;12:23;17:17;
21:7;25:9;31:2;
32:24,24;48:17
**giving (1)**
61:16
**glaring (1)**
32:4
**goes (3)**
21:11,11;35:17
**good (7)**
10:13;12:23;13:2;
28:21;29:6;52:23;
62:11
**gosh (1)**
24:11
**governing (1)**
9:14
**government (1)**
35:23
**grant (6)**
16:5;19:4;23:2;
25:17;53:15;58:16
**great (6)**
28:5;34:5,6;39:5;
43:5;46:21
**Greg (1)**
56:16
**ground (3)**
29:6,21,21
**group (6)**
23:1,10;24:12,23;
44:9;52:24
**guess (3)**
14:4;47:25;49:23

## H

**half (4)**
21:13,25;31:2,2
**hand (2)**
42:8;43:14

**handed (1)**
13:3
**handful (1)**
38:16
**handicapping (3)**
33:22;34:3;37:16
**handing (1)**
52:18
**handle (1)**
8:9
**happen (1)**
16:2
**happened (1)**
19:10
**happening (1)**
14:14
**happy (1)**
22:12
**hard (3)**
10:8;11:2;48:6
**heads (1)**
23:15
**hear (1)**
18:2
**heard (14)**
6:8;11:5;12:5;
23:17;24:10;30:23,
24;31:14;32:7;33:19;
37:25;52:19;53:18;
55:21
**hearing (7)**
6:17,21;7:2,13;
8:11;10:3;14:12
**hearsay (5)**
32:12;34:14;35:15,
16;39:11
**hedge (4)**
19:2,4;34:22;35:4
**held (1)**
19:25
**hence (1)**
61:18
**Here's (1)**
61:22
**high (1)**
44:2
**higher (6)**
22:14;25:11;36:18;
39:17;44:4;45:8
**highest (4)**
30:15;37:10,14,18
**highlighted (1)**
27:10
**highly (1)**
30:1
**himself (1)**
30:7
**hired (1)**
34:7
**hold (2)**
36:22;46:16
**holds (1)**
21:3

**Honor (37)**
6:4,11,14;7:24;
8:18;11:12,25;12:9;
13:17,25;14:9;16:13,
17;18:8,22;26:1,6,12,
25;32:3,33:13;36:5;
38:6,19;39:7;42:20;
51:1;52:11,23;53:22;
56:14;57:9;58:6,10;
60:13;62:7,10
**Honor's (2)**
8:1;31:3
**hope (1)**
8:15
**hopefully (2)**
46:1;57:4
**hoping (2)**
21:13;61:19
**Hornung (17)**
6:5;8:9;52:19,22,
23;53:22,25;56:12,
14;58:4,6;59:1,3;
60:7,14;62:9,10
**hour (1)**
6:16
**hundred (2)**
24:6,18
**hundreds (3)**
35:8;37:5;45:24
**hybrid (3)**
37:11;44:18;45:19
**hybrids (1)**
45:3

## I

**identical (1)**
10:14
**identify (1)**
42:7
**ignore (1)**
48:1
**ignored (1)**
9:11
**imagine (1)**
13:9
**impact (2)**
27:1,4
**implicate (1)**
10:21
**importance (1)**
45:22
**important (2)**
10:7,11
**importantly (1)**
49:7
**impose (1)**
15:24
**imposed (1)**
59:21
**imposing (1)**
50:19
**improper (1)**

54:21
**inability (1)**
29:24
**inaccurate (1)**
52:6
**inappropriate (1)**
15:9
**Inc (9)**
41:20;53:12;58:9,
12;59:4,7,19;61:25;
62:2
**inclined (1)**
58:16
**include (1)**
31:25;49:5
**included (4)**
14:17;37:11;39:10;
41:22
**includes (1)**
26:4
**including (5)**
9:12;34:8;51:9,19;
55:16
**incompetent (1)**
36:10
**incomplete (1)**
52:7
**incorporate (1)**
7:12
**incorrect (1)**
44:5
**increase (4)**
19:16;21:1;25:10;
36:13
**increased (1)**
20:23
**indeed (8)**
7:5,8;26:9;27:24;
49:11;50:9;57:22;
60:24
**indicated (2)**
43:12;45:10
**individual (1)**
9:4
**Industrial (1)**
19:14
**inevitable (1)**
29:22
**information (1)**
16:1
**informed (1)**
44:15
**initially (1)**
50:21
**injunction (2)**
14:20;15:5
**injunctions (1)**
11:12
**inserts (1)**
39:10
**insist (1)**
60:10
**instances (1)**

30:12

**instead (1)**
24:18

**insufficient (3)**
15:11;20;62:4

**insults (1)**
13:16

**intelligent (1)**
49:23

**intended (2)**
56:15;58:22

**intends (1)**
9:16

**intensive (4)**
30:4,9;31:8;38:15

**intentional (1)**
61:4

**interest (9)**
13:4;29:17,25;
37:22;38:11;42:17;
55:8;60:20,21

**interested (1)**
38:16

**interests (2)**
13:5;15:23

**interminable (1)**
41:10

**International (10)**
41:20;53:11;58:9,
12;59:4,6,19;61:25;
62:1,12

**interrupt (1)**
35:12

**in-the-money (1)**
40:3

**into (12)**
28:4;30:18;31:17;
36:4;38:1,10;41:17;
42:6;46:3;47:18;
52:24;58:18

**intrinsic (2)**
33:14;40:3

**introduce (2)**
35:22,23

**introduced (1)**
35:25

**introduction (1)**
49:16

**invest (1)**
29:5

**investment (2)**
26:14;35:1

**investors (1)**
37:3

**involve (1)**
49:19

**involved (2)**
35:7;38:17

**involvement (2)**
36:8;39:13

**involving (1)**
29:12

**iPhone (1)**

11:3

**irrelevant (2)**
35:19;36:11

**irrevocably (1)**
30:6

**Island (1)**
38:1

**issue (15)**
7:3;9:3,8;10:14;
11:11;17:8;31:1;
34:15,17;39:24;
40:12,17;42:24;43:6;
56:23

**issued (2)**
19:7;46:19

**issues (13)**
6:24;7:19;10:6;
11:21;19:20;31:16;
32:4;35:5,7;42:8;
57:13,17;61:15

**item (1)**
14:10

---

**J**

**Jeffrey (1)**
54:1

**job (3)**
44:14;45:6;47:19

**joint (2)**
21:15;23:1

**JOLs (6)**
19:6;21:9;25:2;
26:4;28:15;38:1

**JONES (2)**
5:10;19:13

**Judge (2)**
40:10;57:21

**judgment (5)**
38:9;45:5,8;55:7;
58:16

**June (1)**
27:2

**JUSTICE (1)**
5:2

**justify (1)**
7:6

---

**K**

**KAREN (2)**
5:20;8:20

**Kasowitz (1)**
60:17

**kick (1)**
53:17

**kind (3)**
11:10;28:23,24

**knew (1)**
35:20

**knowledge (2)**
48:21;55:12

**known (1)**

49:19

**knows (1)**
26:6

**Koplik (2)**
17:18;48:23

---

**L**

**lack (3)**
10:13;32:10;61:4

**lacks (1)**
43:5

**ladies (3)**
6:15;14:19;41:11

**LADNER (3)**
5:19;6:14,14

**laid (2)**
30:10;34:5

**language (7)**
27:8;31:25;32:1;
51:22,25;52:5,15

**large (2)**
42:14;61:3

**largely (1)**
26:18

**largest (2)**
19:2;23:16

**last (12)**
9:20;11:12;19:13;
20:14;21:1;24:4;
30:2;31:15;39:8;
53:9;58:7,10

**late (3)**
9:21,21;42:15

**latest (1)**
26:2

**latter (1)**
9:3

**law (11)**
22:19;24:13,19;
28:22;34:7,15;40:24;
41:13;43:21;46:13;
47:7

**lawsuit (1)**
53:11

**lawyer (4)**
17:13;24:10;61:25;
62:4

**lawyering (1)**
16:7

**lawyers (5)**
16:3;30:13;34:11,
12;61:10

**lay (2)**
17:4;48:22

**layman (1)**
33:23

**lead (1)**
25:6

**leads (1)**
46:2

**least (7)**
6:19;17:22;20:13;

22:16;29:6;45:13;
50:2

**leave (2)**
21:24;62:5

**leaves (1)**
33:3

**lectern (1)**
18:6

**led (1)**
19:16

**legal (9)**
14:4;16:5;24:10;
30:15;38:6;40:8,10;
43:5;45:25

**legitimate (2)**
57:13;58:1

**length (7)**
6:19;26:17;34:5,7;
38:14;39:5;46:21

**less (6)**
6:16;24:22;27:22;
28:20;47:11;60:15

**lesser (1)**
45:21

**letter (12)**
6:17,24;7:8,13,18,
19;11:1,9,15,19;
58:19,20

**level (2)**
24:17;45:8

**levels (1)**
56:2

**Leveraged (6)**
21:7,14,17,21;
22:2;26:5

**life (3)**
15:3,10;32:13

**light (1)**
40:13

**likelihood (1)**
46:23

**likely (1)**
45:23

**limit (1)**
13:14

**limitations (1)**
49:3

**limited (3)**
18:5;50:4;62:12

**line (2)**
26:2;48:10

**link (1)**
36:15

**liquidated (1)**
28:24

**liquidator (2)**
21:22,23

**liquidators (2)**
21:15;22:4

**list (2)**
34:24,25

**litigate (2)**
46:10;56:25

**litigated (1)**
35:5

**litigating (1)**
31:23

**litigation (42)**
15:25;17:23;22:25,
25;24:8,8,16;28:16;
29:21,21;33:20,23;
34:2,4,10,12;37:3,12;
43:4;44:11;45:16,19,
23;46:2,7,23,25;47:7,
10,12,15,17,20,23,24;
48:1;50:7,8,10;57:3,
18;60:17

**litigator's (1)**
21:24

**little (5)**
12:12;13:11;25:3;
44:7;51:3

**loans (2)**
26:16;41:18

**long (3)**
8:11;38:23;61:14

**longer (1)**
45:24

**long-term (1)**
18:17

**look (2)**
45:17;46:22

**looked (1)**
41:9

**looking (5)**
7:12;10:16;18:16;
45:16;47:23

**loser (1)**
46:11

**loss (1)**
24:1

**lot (4)**
22:7;37:15,16,25

**louder (1)**
12:12

**Louisiana (4)**
19:6;21:8,9;22:3

**low (3)**
23:7;40:25,25

**lower (2)**
36:20;46:18

**lowest (4)**
24:17;25:14,21;
38:7

**LUSKIN (48)**
6:4,4,5,13;7:21,23;
8:18,24;9:2,6,8;
12:16,25;13:8,19;
14:8,9;16:7,13,19;
18:2,4;19:18;20:1;
23:23;25:12,25;26:1;
28:9;32:9,16,22;
35:11,13,19;36:5;
39:12,21;40:19;41:4,
5;50:13,25;51:1;
52:5,17,18,21

**Luskin's (3)**
23:4;39:8;55:18
**luxury (1)**
20:9

## M

**Madison (2)**
56:2,17
**main (1)**
18:6
**maintain (1)**
29:24
**major (5)**
38:18,20;42:12,25;
43:13
**majority (1)**
16:2
**makes (3)**
13:9;39:18;42:13
**making (3)**
10:18;29:19;44:16
**malicious (1)**
58:22
**Management (5)**
5:17,19;35:3,3;
39:19
**many (6)**
6:23;9:11;11:18;
33:14;45:24;46:19
**March (1)**
19:11
**market (24)**
19:17,19,19,22;
20:2,9,18,22;21:2;
22:16;25:9;27:16;
30:7;33:4;34:19;
36:13,16,25,25;
39:18;46:6;49:20,25;
50:1
**market-based (1)**
25:5
**marketing (2)**
30:9;44:10
**Martin (2)**
22:9;24:11
**Massachusetts (2)**
22:21,22
**material (2)**
36:3;49:19
**matter (25)**
6:9,25;7:7,9,20,22;
8:2,4,5;22:8;34:18;
42:3;46:1;47:18;
48:15;49:14,15;
50:25;52:4;53:17,24,
25;58:7;59:3;60:24
**matters (9)**
7:10,23,25,25;8:6;
17:20;48:21;52:24;
61:14
**maximize (1)**
45:9

**may (5)**
12:16;25:12,12;
40:11;48:7
**Maybe (1)**
47:24
**MBA (1)**
18:13
**MBTA (1)**
22:22
**McMahon (1)**
23:5
**mean (5)**
33:5,20;34:1;37:2;
38:2
**meant (1)**
28:7
**measured (2)**
23:7;24:3
**mechanism (1)**
15:24
**meet (1)**
25:13
**meetings (1)**
10:5
**member (1)**
18:9
**mention (1)**
27:15
**mentioned (7)**
10:24;27:10;28:5,
9;37:6,22;59:18
**mentions (1)**
34:23
**merely (1)**
60:10
**merit (1)**
10:22;11:9;55:24,
25;56:21
**merits (4)**
10:12;11:3;15:9;
53:18
**Messer (7)**
55:20,22;56:1,7,16,
16;57:4
**Messer's (3)**
56:3,5,19
**Michael (1)**
6:4
**Midanek (6)**
5:21;8:20;10:2;
12:15,20;15:16
**might (4)**
7:4;10:22;49:13,20
**million (68)**
19:17,24;20:15,17,
19,19,22,24;21:5,10,
13,19,25;22:2,6,6,9,
10,11,12,13,15;23:7,
8,19,20,22,25;24:2,3,
5,6,18,18,21,22;25:1,
10,13;26:14;28:1,1,
18;29:4,5,8;31:20;
35:2;36:19,20;37:7,9,

11,13,15;40:1,2,7,22,
24;41:25;42:12,19;
44:3;45:13,13;51:6;
54:3
**millions (5)**
22:23;33:15,15;
37:5;46:4
**mind (1)**
47:21
**minds (1)**
34:13
**minimal (1)**
24:16
**minute (1)**
16:19
**minutes (5)**
7:2;8:4,11,12,15
**misconduct (1)**
58:3
**missed (1)**
9:19
**misunderstanding (1)**
14:13
**misunderstandings (1)**
12:24
**mixed (2)**
43:20;47:7
**mixing (1)**
61:14
**modest (1)**
17:20
**modifying (1)**
14:11
**moment (1)**
13:20
**Monday (1)**
20:10
**monetize (1)**
44:9
**money (17)**
11:7;20:15;22:18,
20,21;25:11;26:20;
27:20,23;29:19;
33:13;37:1,3;43:18;
48:9;56:4,6
**monies (1)**
51:16
**months (3)**
9:9;30:5;43:7
**more (26)**
8:3,10,12,15;
15:20;18:20;20:19;
21:2,19;22:7;26:19;
28:19;31:2;32:23;
36:5;39:19;40:2;
41:7,7;46:3,7;49:17;
50:5;51:3;53:18;
60:14
**morning (5)**
6:16;11:9;26:10;
52:23;58:18
**morning's (2)**
11:1,15

**MORRISSEY (1)**
5:8
**most (6)**
34:21;46:19;47:24,
25;48:10;50:2
**motion (22)**
7:6,9,11,21;8:13,
19;9:9,13;10:9;11:3,
25;12:2,22;14:20,21,
22;29:22;38:3;41:9;
50:15;51:18;60:7
**motions (1)**
8:3
**movant (1)**
15:6
**move (8)**
15:10;36:6;53:7,
24;59:10,11,13;61:7
**movements (5)**
20:2;33:4;49:20,
25;50:2
**much (16)**
20:13;22:14;25:11;
29:9;30:23;36:18,20;
37:22;39:17;46:3;
47:11;50:5;55:23;
60:15;61:9,10
**multiple (1)**
30:12
**must (4)**
15:7;40:13;49:15;
50:23

## N

**name (1)**
34:7
**nature (4)**
15:22;47:3;54:25;
57:18
**necessarily (1)**
17:9
**necessary (3)**
42:10;54:9;57:1
**need (15)**
7:11;12:12;16:14;
17:22;20:13;30:19;
33:6;41:4;42:5;50:4,
8;57:7;60:4;61:9,10
**needed (2)**
22:3;58:13;61:5
**needs (2)**
38:4;58:1
**negative (1)**
40:16
**negotiate (1)**
39:20
**negotiated (1)**
9:25
**negotiating (1)**
39:13
**negotiation (1)**
36:24

**negotiations (7)**
11:8;30:3,4;36:9,
17;38:13,15
**Neither (1)**
15:7
**net (1)**
38:15
**Nevertheless (2)**
9:21;16:23
**New (8)**
5:6,13;12:19;27:9;
30:24;36:4;40:17;
60:17
**next (11)**
10:3;14:15;16:16;
31:17;37:10;46:1;
50:25;53:24,25;
56:15;61:20
**night's (1)**
20:14
**nine (8)**
7:25;19:12;22:17;
24:2,4,5,17;28:18
**ninety-one (2)**
40:20,21
**nobody (1)**
49:24
**non (1)**
49:8
**nonattorneys (1)**
16:25
**none (2)**
39:14;50:4
**non-FILB (1)**
24:4
**nonhearsay (1)**
35:24
**nonperforming (2)**
26:16;41:18
**nonresponders (1)**
53:15
**nor (1)**
43:6
**normal (1)**
18:1
**note (6)**
15:2;29:17;42:10;
43:1,2;48:9
**noted (1)**
38:19
**notice (12)**
9:15,17,19;11:5;
12:14;14:11,16;
31:22;34:18;51:8,12;
61:24
**noting (1)**
61:18
**number (11)**
7:23;9:8;17:20;
20:16;28:18;29:9;
36:19,20;52:24;53:1;
61:3
**numbers (2)**

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(8) Luskin's - numbers

33:9,17
**NY (1)**
5:6

# O

**object (6)**
9:20;21:16;51:20;
53:21;56:25;57:5
**objected (5)**
53:7;54:4;55:1,16,
23
**objecting (1)**
56:22
**objection (26)**
10:4;12;16:20;
17:6,12;20:5;30:25;
31:7,10,22;32:2;33:8,
19;38:20,21;51:14;
53:17,18;54:8,14,18,
19;55:20;56:5;57:10;
58:4
**objections (9)**
8:6,7;39:10;53:2,3,
5,13,15,23
**objector (1)**
43:2
**obligations (1)**
42:11
**obtain (1)**
48:18
**obtained (2)**
47:4;50:23
**obvious (2)**
16:3;36:7
**Obviously (4)**
27:19;37:21;48:11;
55:6
**occasion (1)**
14:24
**occasionally (1)**
18:25
**occur (1)**
12:19
**occurred (1)**
12:24
**o'clock (1)**
20:7
**offer (2)**
30:16;45:19
**offered (2)**
23:21;46:24
**offers (3)**
44:18,24;45:6
**Office (2)**
5:3;11:21
**officers (1)**
47:4
**official (1)**
21:15
**omnibus (1)**
8:7
**Once (1)**

21:11
**one (37)**
8:14;9:8;13:18;
16:20,20;17:1;23:10,
16;27:5;28:5,10;
32:2,4;34:4,22;37:8,
24;38:19,25;41:7,7;
42:8,25;43:14,18;
44:17;45:14;47:22;
48:3;53:2;55:19;
56:9;58:11;59:12,23;
60:14;61:8
**ones (1)**
32:4
**one-to-five (2)**
27:2,5
**ongoing (3)**
10:5,11;11:8
**only (18)**
9:10,12;16:20;
23:20;24:5,9,19;
25:20;28:3;31:6;
38:19;40:1,18;44:17;
49:18;55:2,19;56:24
**open (1)**
21:21
**opine (1)**
33:22
**opinion (15)**
13:24;17:3,4,14;
18:22;24:10;31:1,4;
32:5,6,25;33:23;
39:11;40:10;50:17
**opinions (8)**
17:7,21;33:2,7;
48:25;49:13,18,18
**opponents (2)**
7:14,15
**opportunity (4)**
7:5,15;11:5;13:20
**option (2)**
21:23;44:16
**options (6)**
18:12,13,15,17;
21:2;38:23
**oral (1)**
50:5
**order (28)**
9:11,12,14;10:2;
11:3;14:10,11,15,18;
15:12;16:8,11,15;
18:1;19:23;25:1;
26:22;31:16,25;
50:13,17,19;51:2,5,
17,23;52:13;58:5
**orders (1)**
9:11
**origin (1)**
28:11
**original (1)**
43:10
**originally (1)**
59:8

**OSTAD (4)**
5:20,20;8:20;10:2
**OTA (2)**
23:12,13
**others (5)**
10:19;23:3;34:22;
45:21;55:17
**otherwise (6)**
14:25;15:23;31:23;
52:4;57:17;61:24
**out (24)**
9:14,21;10:12;
16:12;23:17;27:23;
28:23;30:10;32:3;
33:13;34:5;36:7,17,
18,20;43:18;45:11;
49:11,24;51:14;
54:25;59:17;60:6;
61:19
**outcome (4)**
43:17;46:6;47:23;
50:7
**outlaw (1)**
54:24
**out-of-control (2)**
11:10;13:12
**outset (1)**
11:22
**outside (3)**
18:23;19:4;34:7
**outstanding (1)**
10:6
**over (20)**
9:4,4;18:22,25;
19:24;21:21;22:16;
24:4,18;27:1;28:16;
29:7,11,13;30:4;
31:9;35:8;37:15;
52:18;57:18
**overruled (1)**
58:4
**overruling (1)**
57:10
**oversaw (1)**
30:11
**owed (1)**
25:2
**owes (1)**
42:16
**own (2)**
9:22;37:1
**owned (1)**
26:16

# P

**package (1)**
37:20
**pages (1)**
26:18
**paid (3)**
22:23;35:8;42:12
**papers (5)**

7:17;28:5;30:24;
32:6;50:5
**paragraph (1)**
43:24
**paragraphs (2)**
17:10;31:3
**paraphrase (1)**
36:1
**parent (3)**
56:2,3,3
**part (4)**
27:15;29:15;36:19;
53:20
**parte (2)**
11:13,15
**participant (1)**
13:12
**participated (1)**
51:25
**participation (1)**
13:14
**particular (4)**
10:16;30:1;61:6,18
**parties (13)**
6:20;10:5;28:4,7;
30:5;31:18;38:14;
41:16;42:4;48:9;
51:8,14;56:23
**parties' (1)**
53:6
**parties-in-interest (1)**
51:23
**party (1)**
51:19
**past (3)**
20:6;22:17;35:8
**pause (1)**
30:6
**pay (5)**
19:24;22:18,20;
25:1,10
**payment (2)**
42:15;45:12
**payments (1)**
29:17
**PEARSON (6)**
5:14;52:8,9,10,11,
11
**PEG (1)**
18:17
**penalties (1)**
35:11
**penalty (2)**
28:23,25
**Pennsylvania (1)**
18:14
**Pension (1)**
19:7
**people (15)**
7:3;11:20;12:15;
13:4;15:4,22,25;
16:2;18:25;24:14;
35:4;39:18;53:14,20;

55:19
**per (1)**
42:1
**percent (2)**
19:16;40:21
**percentage (1)**
44:20
**performance (1)**
42:2
**perhaps (7)**
12:17;14:5;15:17,
19;31:13;33:14;
49:25
**period (10)**
12:15;19:24;28:11,
13;31:21,22;51:14,
15;54:12;59:15
**periodically (1)**
11:11
**permission (1)**
16:11
**permit (1)**
58:5
**permitted (1)**
13:8
**Perry (2)**
17:18;48:23
**person (1)**
49:6
**personal (3)**
36:8;48:11,21
**personally (4)**
23:5;30:10;38:17;
46:19
**ph (2)**
18:17;40:10
**Phelps (1)**
19:5
**phone (3)**
6:9;9:18;14:12
**piece (2)**
37:12;44:19
**place (5)**
21:25;31:22;49:20;
50:8;61:20
**places (2)**
17:5;49:3
**plain (2)**
17:23;47:16
**plaintiffs (1)**
40:15
**plan (10)**
18:10;23:9;24:25;
26:9;51:11,11,21;
54:24;60:3,3
**plans (1)**
57:14
**plausible (2)**
57:20;58:2
**play (1)**
36:25
**pleadings (1)**
60:1

12-12796.mkv Doc 510 Filed 04/16/14 Entered 04/17/14 12:08:32 Main Document
FLETCHER INTERNATIONAL, LTD
Case No. 12-12796-reg; Adv. Pro. No. 13-01814 Pg 80 of 85

March 19, 2014

please (3)
12:12;13:11;18:7
pleasure (1)
52:18
pledged (2)
29:15,16
PLLC (1)
5:20
plow (1)
45:5
plus (2)
45:20;62:2
point (18)
10:7,12;11:23;
14:9;21:18,20;24:9;
36:7,12;38:7;40:5,9,
18,24;48:12;54:24;
59:8;61:5
pointed (3)
9:21;10:20;32:3
pointing (2)
28:23;31:3
points (6)
17:1,18;47:8;
48:19,20;52:6
portfolio (1)
26:15
position (5)
7:9;12:20;13:24;
49:24;57:11
possibility (2)
49:12;59:18
possible (1)
60:25
possibly (1)
22:20
potential (3)
44:13,15,23
potentially (2)
21:20;54:11
practically (1)
11:18
practice (2)
30:17;53:14
precise (2)
20:16;51:4
predictions (1)
49:20
preference (3)
54:12,19;57:17
preferred (5)
19:20;29:2;41:21,
23;55:21
prejudice (1)
51:18
prejudiced (1)
10:24
prejudicing (1)
11:8
preliminary (3)
6:3;8:2;16:18
premium (1)
40:2

prepare (1)
10:3
prepared (2)
12:3;14:3
preponderance (1)
25:22
prerequisites (1)
32:18
Prescott (1)
55:20
presence (1)
59:17
PRESENT (2)
5:16;46:24
presentation (5)
30:23;33:9;36:10;
52:6,13
press (1)
19:7
pressure (1)
11:1
presumably (1)
58:23
presuppose (1)
33:9
pretty (1)
55:23
prevail (1)
47:12
previous (1)
39:15
previously (1)
22:1
price (28)
19:10;20:15;22:14;
23:20;27:3,5,7,16,17,
18,19,22,24;33:10,
11,12;37:6;39:16,23,
25;40:23;41:25;
42:21,24;43:10,16;
44:2,6
prices (1)
27:13
Princeton (1)
18:12
principle (1)
15:14
prior (1)
21:12
privilege (2)
10:21;54:7
Pro (9)
5:22;9:10;11:10;
13:12,21;18:9;34:1;
59:7;60:2
probably (2)
8:12;40:22
problem (4)
23:11;24:3;32:9,13
procedure (5)
9:24;15:6;38:2;
59:22,25
proceed (2)

7:10;8:16
proceeding (3)
15:6;53:10;57:6
proceedings (4)
7:1,7;10:11;62:13
proceeds (5)
31:12,13,21;51:7,7
process (4)
30:9,11;31:5;60:5
produce (5)
9:16,23;10:1;12:3;
14:23
produced (2)
10:15;15:15
producing (1)
8:19
production (4)
14:17,20,22;16:11
professionals (1)
31:9
proffer (1)
30:19
prohibiting (1)
15:21
projections (1)
38:25
promise (2)
51:2;56:4
proof (2)
54:1,2
proofs (1)
8:7
proper (1)
13:9
properties (1)
41:19
property (1)
26:16
proposal (1)
45:11
propose (1)
8:1
proposed (8)
18:10;23:8,9,18;
26:22;41:12;49:6;
51:21
proposes (1)
15:12
proprietary (2)
10:21;31:13
prosecute (1)
54:19
prosecution (1)
58:23
prospect (2)
46:25;47:15
protected (1)
54:6
protection (2)
10:22;29:24
protective (3)
9:14;11:3;14:11
protocol (3)

9:14;12:25;13:10
protracted (2)
46:25;47:15
prove (2)
21:18;29:25
provide (6)
7:14,16;14:4;
29:24;49:6;60:16
provided (3)
14:16;51:11;54:9
provident (1)
57:2
provides (1)
27:12
providing (3)
49:7;61:23;62:1
provisions (2)
29:11;41:22
public (1)
34:25
purchase (8)
28:17;29:2,2,15;
40:12;41:23;42:11;
44:21
purchaser (1)
37:14
purporting (1)
36:1
purpose (2)
42:5;54:21
purposes (2)
53:4;56:24
pursuant (1)
41:17
put (6)
26:2;30:18;31:22;
35:18,21;56:19
putting (3)
36:4,5;49:25

Q

qua (1)
49:8
qualifications (4)
32:24;33:7;49:6,10
qualified (3)
18:20;39:19;49:12
Quantal (4)
18:23;19:1;23:23;
39:25
Quantal's (1)
19:1
quantify (1)
47:17
quickly (2)
61:7,12
Quite (1)
22:6

R

radio (1)

58:17
raises (3)
6:24;9:3;32:4
raising (1)
7:3
range (4)
38:8;40:25;46:18;
59:23
rank (2)
20:2,4
rather (2)
17:20;30:5
reached (1)
45:18
reaching (1)
15:9
read (7)
6:21;7:6,17;11:2,2;
40:11;51:4
reading (3)
14:1;33:3;55:18
ready (1)
10:1
real (8)
26:14;29:16;32:9,
13;57:20,21;60:1;
62:4
realize (3)
25:5;27:25;37:7
realized (1)
54:10
really (7)
14:13;21:4;30:19;
37:9;38:8,12;39:1
reason (2)
36:24;54:4
reasonable (3)
45:7;47:11;55:6
reasonableness (6)
24:17;25:14,21;
38:8;40:25;46:18
reasonably (2)
13:2;50:3
reasons (3)
37:23;50:11,15
recall (4)
9:13;12:18;14:1;
58:10
receive (4)
22:13;32:2;41:24;
58:19
received (12)
12:17;37:8;39:17,
18;40:15;41:20;
44:24;53:6,8;54:11,
20;55:3
receiving (1)
18:13;56:6
recent (1)
20:1
recessed (1)
62:13
recognize (1)

12-12796-mkv Doc 510 Filed 04/16/14 Entered 04/17/14 12:08:32 Main Document
FLETCHER INTERNATIONAL, LTD. Pg 81 of 85
Case No. 12-12796-reg; Adv. Pro. No. 13-01814-reg

March 19, 2014

34:1
**recommendation (1)**
    8:17
**record (10)**
    12:2;16:8;18:8;
    30:20;34:18;36:3,4,
    7;38:13;50:15
**records (1)**
    54:10
**recover (1)**
    37:13
**recoveries (2)**
    44:20;57:17
**redemption (1)**
    10:23
**redemptions (1)**
    10:17
**reduce (1)**
    57:16
**reduced (2)**
    9:17;14:11
**refer (2)**
    40:9;42:1
**reference (1)**
    17:2
**referred (4)**
    8:5;22:10,25;56:16
**referring (1)**
    21:6
**refers (3)**
    19:18;20:2;24:12
**refusal (1)**
    59:9
**refused (5)**
    26:25;30:3;42:20;
    43:9;61:2
**regard (5)**
    12:13,22,24;15:2;
    44:15
**regarding (2)**
    10:17;12:18
**regional (1)**
    26:15
**register (1)**
    28:13
**registration (7)**
    21:4;28:11,16;
    29:7,10;37:19;42:3
**Reis (4)**
    21:20;24:12;27:9;
    40:11
**reject (1)**
    36:9
**rejected (1)**
    50:19
**related (5)**
    17:3;21:3;41:16;
    47:1;53:11
**relates (1)**
    53:25
**relating (1)**
    6:18
**relatively (1)**

17:19
**release (1)**
    19:7
**releases (2)**
    45:14;47:3
**relevant (3)**
    17:24;26:21;59:23
**reliance (1)**
    35:14
**relief (2)**
    7:12;29:22
**relies (1)**
    27:14
**rely (1)**
    27:14
**remain (1)**
    21:14
**remainder (3)**
    42:14;43:8;45:14
**remaining (2)**
    20:23;25:4
**remains (1)**
    27:7
**remarks (1)**
    18:5
**removing (1)**
    21:22
**REO (1)**
    26:16
**reopened (1)**
    22:15
**rephrase (1)**
    47:25
**replete (2)**
    31:4;32:5
**reply (9)**
    7:16,16,17;13:19;
    18:3;28:10;39:5;
    56:13;57:8
**report (9)**
    24:15;26:18;27:10;
    28:19;32:25;38:24;
    39:9,10;49:7
**represent (1)**
    9:5
**representation (1)**
    14:5
**representative (1)**
    14:3
**represented (1)**
    13:15
**represents (1)**
    8:20
**reputational (1)**
    48:12
**request (6)**
    7:1,18,20;8:25;
    16:4;58:14
**requests (2)**
    6:24;12:18
**require (3)**
    27:17;46:22;60:1
**required (3)**

9:19;32:6;57:5
**requirement (1)**
    50:20
**requirements (2)**
    17:16;32:11
**requires (2)**
    9:15;15:6;34:2
**rerun (1)**
    33:11
**resignedly (1)**
    39:22
**resolution (1)**
    57:4
**resolve (4)**
    10:6;45:20;55:7;
    56:23
**resolved (4)**
    10:8;43:4;54:21,23
**resolves (1)**
    54:17
**resolving (4)**
    8:8;31:23;53:2;
    54:13
**resources (3)**
    37:2,3;57:3
**respect (3)**
    14:16;17:19;43:5;
    53:20
**respectfully (1)**
    13:11
**respond (9)**
    7:5,15;12:6;18:2;
    53:14;56:18;59:9;
    60:8;61:2
**responded (1)**
    55:4
**responding (1)**
    61:3
**response (16)**
    9:25;12:7;20:1,1;
    25:5,25;35:17;53:6,
    8;55:18;59:13;60:12,
    13,15;61:4,8
**responses (2)**
    14:1;60:1
**responsibility (1)**
    57:24
**responsible (1)**
    46:8
**rest (1)**
    52:18
**restate (1)**
    28:12
**restricted (1)**
    51:15
**result (3)**
    36:23;37:17;47:5
**retain (1)**
    58:14
**retained (1)**
    33:25
**retainer (1)**
    61:18

**Retirement (2)**
    22:22,23
**reverse (8)**
    27:1,4,15;40:14;
    42:22;43:11,15;44:1
**reversed (1)**
    40:20
**review (1)**
    21:12
**reviewed (3)**
    13:6;19:2;54:10
**RICHARD (2)**
    5:8;6:5
**Richcourt (2)**
    26:20;55:17
**right (36)**
    6:12,15;8:16;10:8,
    10;12:8;14:2,2,7,19;
    16:18;25:25;27:1;
    29:2,2,23;33:10;
    34:16;35:10;39:3;
    41:2,6;45:9;52:3,20;
    53:23;55:10;56:12,
    23;57:7,10,24;59:16;
    60:23;61:22;62:11
**rights (3)**
    44:11;51:18;57:25
**risen (1)**
    13:19
**risk (17)**
    17:23;22:25;23:1;
    24:8,8,16;33:20;34:4,
    13,19,20;37:1,16;
    46:9;47:13,23;48:1
**risks (1)**
    50:10
**road (1)**
    56:25
**roughly (1)**
    59:25
**round (2)**
    18:5,6
**row (5)**
    6:6;19:12;20:7,8;
    22:17
**Rule (17)**
    11:4;14:5;15:5;
    17:2,3,15;32:14,19,
    20;48:24;49:2,11,16;
    59:17,22,25,25
**ruled (1)**
    39:9
**Rules (16)**
    15:5;16:24;17:2,4;
    32:7,20,21;48:24;
    49:2,4,5,15;50:20;
    59:21,21,24
**ruling (2)**
    50:14,16
**rulings (1)**
    46:15
**run (2)**
    46:3;50:16

**running (1)**
    59:25

**S**

**sakes (1)**
    24:11
**sale (8)**
    23:6,13,15,18;31:5,
    10,21;41:12
**sales (1)**
    26:3,7,7
**sanctioned (1)**
    12:1
**sanctions (2)**
    11:4,6
**satisfactorily (2)**
    46:6;49:12
**satisfactory (1)**
    49:18
**satisfied (3)**
    45:8;46:5;50:22
**saying (2)**
    20:6;39:9
**School (1)**
    18:14
**science (1)**
    25:16
**scrutiny (1)**
    45:8
**Se (9)**
    5:22;9:10;11:10;
    13:12,21;18:9;34:1;
    59:7;60:2
**Seaport (11)**
    23:10;24:12,23;
    26:8;34:9,20;35:21;
    44:9,13,14;45:6
**seat (1)**
    16:19
**SEC (8)**
    10:15;15:15;34:25;
    35:8
**Second (9)**
    11:11;17:17;18:5;
    37:13,24;44:17;
    46:16;48:22;53:19
**Secondly (1)**
    12:22
**seconds (1)**
    51:2
**secret (1)**
    10:23
**secrets (1)**
    10:21
**section (2)**
    27:13,14
**security (1)**
    61:17
**seeing (1)**
    20:9
**seek (1)**
    58:14

12-12796-mkv    Doc 510    Filed 04/16/14    Entered 04/17/14 12:08:32    Main Document
FLETCHER INTERNATIONAL, LTD.    Pg 82 of 85
Case No. 12-12796-reg; Adv. Pro. No. 13-01814-reg

March 19, 2014

seeking (2)
22:21;50:21
seem (1)
9:3
seeming (1)
17:23
seemingly (1)
6:19
seems (3)
11:13;24:20;40:25
seized (1)
13:1
selected (1)
38:10
sell (2)
18:16;40:6
seller's (1)
29:17
send (3)
25:11;51:24;56:4
senior (1)
18:11
sense (2)
32:23;45:3
sent (1)
60:14
sentence (2)
59:13;60:15
sentences (1)
40:11
separate (5)
16:14;28:14;31:3;
34:21;42:8
series (3)
13:9;50:20;56:9
serve (1)
7:24
served (3)
6:19;9:16;14:15
servicing (2)
29:16,17
set (2)
32:19;43:24
sets (1)
9:14
setting (1)
48:20
settle (2)
50:13;58:4
settled (1)
21:5
settlement (38)
8:4,11;16:16,20;
17:9;21:11,13,25;
22:13;23:8;25:11;
26:9,11;28:2;31:11,
19,24;36:14;38:1,7,
10,10,18;41:11;
45:17;46:14,24,25;
47:3,4,16,22;48:5,13,
18;50:12;51:11,18
settlements (4)
17:24;26:3,7;46:17

settling (1)
40:21
seven (5)
20:15;22:9,10,13;
43:7
seventeen (1)
19:23
seventy-one (1)
44:3
several (8)
17:1,5,5;18:18;
30:4;32:3,4;46:15
shall (1)
50:21
shame (2)
22:5;24:5
share (10)
22:9,10,11,13,15;
23:20,21;24:3;39:22;
42:1
shared (1)
48:14
shareholders (5)
20:23;24:4;25:4,
12,15
shares (3)
28:13;29:2;40:12
shocked (1)
23:17
short (3)
15:3,10;59:15
show (2)
25:13,20
showing (1)
15:11
shown (1)
25:9
shows (2)
38:13,24
showstopper (1)
15:3
side (4)
24:19;25:23;27:11;
43:1
sides (5)
35:16;36:2;39:4;
60:5,9
significant (1)
43:23
significantly (4)
21:19;46:19;47:24,
25
silence (1)
58:18
silly (1)
24:20
similar (1)
61:13
simplify (1)
27:2
simply (5)
12:23;13:15;22:24;
49:25;56:19

sine (1)
49:8
single (3)
10:20;34:17;38:25
situation (1)
13:1
six (1)
43:7
six-and-a-quarter (1)
37:11
sixteen (1)
31:3
sixty- (2)
29:3,4
sizable (1)
46:10
Skadden (2)
23:2;24:10
skin (1)
48:11
Skinner (1)
23:15
slam (1)
25:6
slightly (1)
23:22
slowing (1)
59:10
small (2)
23:10;55:4
Smith (1)
40:10
so-called (3)
28:16;29:14;42:3
soft-spoken (1)
12:11
sold (6)
21:8;22:5;26:15;
37:21;39:15;41:18
sole (1)
43:2
solely (3)
53:20;54:4,23
solicited (1)
34:21
somebody (3)
15:23;23:11;60:8
somehow (1)
36:15
someone (1)
12:19
sometimes (1)
18:25
somewhere (1)
59:23
soon (1)
16:12
sophisticated (1)
38:14
Sorry (2)
52:9;61:13
sort (6)
11:14;20:20;52:24;

57:5;58:24;59:11
sought (3)
15:24;50:23,23
sound (1)
38:9
sounds (1)
35:15
Soundview (19)
5:11;6:19;10:16;
11:23;12:19;15:16,
18;22:20;25:1;26:19;
31:8,15,18;32:1;51:3,
19;52:4,12;55:17
spare (1)
13:16
speak (2)
12:12;39:4
specialists (1)
19:5
specific (1)
31:25
speculation (6)
20:2,4,12,13;
36:12;38:22
spend (4)
11:18,20,21;29:9
spending (2)
16:7;46:9
split (9)
27:2,4,5,5;40:14;
42:23;43:11,15;44:1
splits (1)
27:15
spoke (3)
34:11,12;49:10
spoken (3)
25:9;37:19;46:21
stakeholders (2)
47:14;48:10
stand (2)
10:1,8
standard (3)
25:14,21;38:6
standards (2)
46:12,13
standing (1)
38:3
start (4)
6:17;7:3;8:13;
59:22
started (3)
36:17,18,20
state (3)
16:3;17:20;61:13
stated (1)
50:15
statements (2)
28:12;43:3
STATES (2)
5:2,3
stating (1)
50:14
station (1)

62:5
status (5)
8:8;31:15;53:10;
58:7,10
stay (7)
29:19,22,25;36:25;
50:19,21,22
step (3)
11:11;26:1;60:18
Stephan (2)
6:5;23:15
STEPHEN (1)
5:14
stepped (1)
60:16
steps (2)
13:14;45:7
Stern (1)
6:5
STEWART (3)
5:22;6:7;18:9
still (4)
21:3,14;27:21;
46:22
stipulation (6)
53:2,3;54:16;55:9;
56:15,16
stipulations (2)
8:7;53:8
stock (29)
18:12;19:10,11,15,
15,20;20:6,13,21,21;
22:17;27:24;28:17;
29:2,14;37:1,6;
39:24;40:6,13,14;
41:21,23;42:23;
43:11,15;44:1,6;
45:14
stop (1)
13:11
straightened (1)
60:6
Street (2)
5:4,12
strike (18)
20:15;27:3,5,6,17,
18,19,22;33:9,10,12;
39:22,25;40:23;
42:21,24;43:16;44:1
strikes (1)
48:16
strived (1)
13:13
structures (1)
44:17
stuck (1)
23:19
stuff (4)
35:17;36:4;55:11;
57:22
subject (3)
8:25;19:20;45:12
submit (2)

7:11;51:23
**submitted (3)**
34:8;35:21;38:24
**submitting (1)**
51:18
**subpoena (1)**
9:16
**subpoenas (1)**
9:25
**subset (1)**
48:4
**subsidiary (1)**
56:5
**substance (3)**
46:16;50:14;57:23
**substantial (4)**
26:11;28:22;43:19;
49:11
**substantially (2)**
27:21;28:20
**substantive (1)**
38:20
**success (1)**
46:23
**suddenly (1)**
12:21
**sue (4)**
23:1,2,2,2
**sufficient (1)**
22:20
**suggest (1)**
49:24
**suggested (1)**
54:20
**suggestion (2)**
12:14;60:11
**suing (1)**
25:17
**Suite (1)**
5:5
**summer (1)**
30:3
**support (7)**
26:20;27:8;29:16;
38:18;47:2;48:13,17
**supporting (2)**
54:5;58:3
**supports (2)**
24:13,19
**supposed (2)**
6:17;7:3
**Supreme (3)**
17:25;46:14;60:17
**sure (5)**
23:14;31:6;33:6;
55:13;56:20
**surprised (1)**
56:7
**surreply (2)**
18:4;41:4
**suspects (1)**
34:8
**sustained (1)**

53:24
**sword (1)**
47:10
**system (1)**
25:4

---

## T

**talk (1)**
48:3
**talked (2)**
48:2;59:16
**talking (1)**
17:10
**talks (1)**
14:5
**tax (1)**
54:1
**tea (1)**
33:3
**telephone (1)**
54:12
**Telephonically (3)**
5:18,19,21
**telling (1)**
17:9
**temporarily (1)**
53:3
**ten (1)**
28:18
**tens (3)**
22:23;33:15;37:4
**terms (3)**
13:10;41:22;46:10
**test (1)**
30:7
**tested (1)**
46:6
**testifying (1)**
35:16
**testimony (9)**
17:16;31:1;32:18;
34:14;36:9;49:4,7,9,
16
**Testing (1)**
46:6
**theoretical (2)**
19:9;40:2
**theoretically (1)**
61:8
**theory (2)**
24:25;31:14
**therefore (1)**
42:16
**thesis (1)**
18:12
**third-party (1)**
37:21
**thirty (9)**
18:15,19;20:3;
23:13,17;37:15;51:1;
62:2,4
**Thornton (3)**

19:4;23:2;25:18
**thought (1)**
35:15
**thousands (4)**
11:18;35:9;37:5;
45:24
**three (8)**
24:1,1;40:22;45:2;
55:3,19;61:23;62:2
**threshold (5)**
6:25;7:3,7,20;59:3
**throughout (1)**
17:6
**Thursday (1)**
20:10
**thus (1)**
15:8
**time-consuming (1)**
35:6
**times (1)**
48:6
**TMT (3)**
17:25;46:15;50:6
**today (20)**
10:1;16:12;22:7,8;
25:12;28:2;30:24;
32:7;33:19;34:23;
36:7;37:8;38:3,22;
40:9;58:7;59:4,9;
61:19;62:2
**told (3)**
21:16,22;24:9
**tomorrow (1)**
26:10
**ton (1)**
36:2
**took (3)**
13:14;30:7;45:7
**top (1)**
40:2
**total (2)**
22:11;46:11
**touch (1)**
35:21
**trade (1)**
10:21
**trading (4)**
18:15,15;22:17;
38:23
**Trailer (3)**
17:25;46:15;50:6
**train (1)**
62:5
**transaction (7)**
26:13,13,21;29:15;
41:17;42:15;45:15
**transactions (1)**
18:17
**transaction's (1)**
26:17
**Transit (1)**
22:22
**trial (1)**

25:7
**tried (4)**
30:2;38:22;42:18;
43:8
**triple (1)**
61:23
**true (2)**
36:14;39:12
**trust (1)**
31:14
**Trustee (70)**
5:3;6:6;8:19;9:15;
10:16,25;12:19;
14:23,24,25;15:12,
16;17:1;23:23;24:11,
24;26:3;27:6,14;
28:7;30:7,9;31:8;
34:5,9,19,21;36:15,
25;38:9,16;39:9;
40:19;41:12;43:6,8,
13,24;44:3,5,9,24;
45:4,7,18;46:8,8;
47:8,9,12;48:17,18;
49:24;50:1;51:6,9,
10;54:4,18,18,21,22;
55:6,16,24,25;56:17;
57:22;58:2,25
**trustees (1)**
57:12
**trustee's (9)**
11:20;18:10;39:20;
49:22;54:9,24;55:11;
57:3;59:10
**try (5)**
10:5;35:22;40:6;
45:5,9
**trying (7)**
21:21;55:11;57:22
**Tuesday (1)**
20:11
**turned (1)**
45:11
**TURNER (40)**
5:22;6:7,7;16:21,
22;17:22;18:2,3,7,8,
9;19:22;26:8;27:10;
28:10;30:23;31:6;
33:15,21;34:23;36:8;
37:25;38:4;39:4,7,
13;41:3,7;43:2;
48:11;49:10;50:6;
53:9;54:20,20,22;
55:10,12;57:7,9
**Turner's (9)**
27:21;33:6;35:17;
38:21,25;44:4;48:14,
19,20
**turning (2)**
46:12;48:19
**twelve (16)**
20:22;21:5,19;
23:8,25;24:1,1;
25:13;27:25;28:1;

36:19,20;37:7,13;
40:21;45:12
**twenty-five (1)**
22:11
**twenty-nine (2)**
27:25;37:7
**twenty-six (2)**
52:25;54:3
**two (16)**
8:8;9:17;19:3,14,
20;23:20,21;35:17;
40:11;41:20;44:16;
45:13;48:3;52:24;
53:8;55:20
**two-and-a- (2)**
21:12,24
**two-and-a-half (3)**
21:10;22:6;23:6
**two-day (1)**
12:14
**two-part (1)**
41:17
**type (1)**
51:25
**types (1)**
44:16

---

## U

**UCBI (29)**
8:4;11;16:16;
19:15,17,19,22;
20:13;23:6;25:8;
26:9,13,15,25;27:6,
11;28:12,22;29:18,
22,25;30:3;31:11,24;
33:12;36:18;37:15,
17;39:13
**UCBI's (2)**
27:1;37:9
**ultimate (2)**
30:13;45:1
**Ultimately (1)**
45:10
**unanimously (1)**
48:13
**uncertainties (1)**
44:8
**unchanged (1)**
27:7
**undeniable (1)**
29:24
**under (21)**
10:9;11:4;17:24;
28:14,15,16;31:13,
19;32:7;33:24,24;
35:2,3;42:2,11;
43:18;44:21;48:22,
24;49:16;57:14
**underlying (1)**
42:7
**underpinnings (1)**
16:4

FLETCHER INTERNATIONAL, LTD.
Case No. 12-12796-reg; Adv. Pro. No. 13-01814-reg

March 19, 2014

**understated (1)**
13:13
**understatement (1)**
17:6
**undoing (1)**
21:23
**unenforceable (1)**
28:24
**uniform (1)**
14:11
**unique (1)**
54:25
**UNITED (23)**
5:2,3;20:18,23;
23:14;25:8;28:8;
41:15,18,21;42:8,13,
16,19,20;43:9,14,22;
44:11,25;45:10,19,23
**University (1)**
18:14
**unless (2)**
46:18;59:14
**unlikely (1)**
48:16
**unnecessary (1)**
57:3
**unsecured (1)**
55:1
**unsuccessful (1)**
30:5
**up (21)**
16:16;18:6;19:11,
15,15,23;20:6,10,18;
22:17,20;24:25;25:2;
29:3;32:13;37:1;
38:3,22;49:21;53:16;
56:2
**upon (6)**
16:5;30:7;43:16;
47:13;50:19;62:3
**upside (2)**
24:5;40:24
**upward (1)**
44:2
**urgency (1)**
8:14
**urgent (1)**
10:9
**use (7)**
28:18;29:14,19;
32:22;40:1;51:10;
57:2
**used (2)**
18:23;22:18
**using (2)**
32:22;33:11
**usual (2)**
34:8;57:25

**V**

**valuation (2)**
18:23;33:3

**valuations (1)**
27:21
**value (22)**
17:15;18:16;19:8,
22;20:22;21:2;22:3;
25:10;30:1;33:14;
36:21;39:25,25;40:2,
3,4;43:19;44:2,7;
45:9;46:5;50:9
**values (2)**
19:6;23:24
**Varick (1)**
5:4
**various (5)**
18:17;22:1;25:15;
31:9;33:7
**versus (3)**
20:14;40:22,23
**view (16)**
7:4;10:7;11:1;
17:14;19:10;22:16;
24:13;27:8;31:10;
43:3,18,23;48:12,22;
50:9;58:3
**viewed (1)**
46:17
**views (4)**
32:12;48:14,15;
49:17
**vigorously (1)**
25:19
**violated (1)**
29:19
**violations (1)**
35:8
**violative (1)**
15:12
**virtually (1)**
38:24
**vis-a-vis (2)**
15:15;48:18
**vote (5)**
55:3,22,23;56:9;
57:14
**voted (1)**
55:19
**votes (2)**
54:23,24
**voting (3)**
53:4;56:24;58:5

**W**

**wait (1)**
37:1
**waived (1)**
50:22
**walk (1)**
16:12
**walking (1)**
58:18
**wants (1)**
25:18

**warrant (28)**
8:5;19:23,24;21:3,
5;22:9,10,11,14,15;
23:14,19,24,24;
24:19;27:3,20;28:15;
29:1;39:13,15,17;
40:5,23;41:25;42:20,
22;43:10
**warrants (37)**
7:22;17:7,15;
18:16,20;19:21;
20:16,20;21:7,18;
23:15,20;26:25;
27:23;28:1,15;29:12;
30:2;33:13;34:10;
38:2;40:12,15;41:20;
42:1,19;43:9,18;44:2,
5,7,10,14,20,24;46:5;
50:9
**watch (1)**
41:9
**way (14)**
10:11,23;15:12;
17:9;23:7,24;26:20;
33:1;43:3,21;47:8;
49:19;50:1;51:7
**Wednesday (2)**
20:6,9
**weeds (1)**
42:6
**week (8)**
10:3,4;11:12;
19:13;20:6;21:1;
31:15;61:20
**weeks (3)**
9:12;61:23;62:2
**week's (1)**
31:17
**weight (1)**
43:6
**weren't (1)**
56:20
**Wharton (1)**
18:14
**what's (1)**
60:2
**Whenever (1)**
45:16
**Whereupon (1)**
62:13
**who's (2)**
51:24;61:6
**whose (1)**
48:9
**wide (1)**
38:15
**Williams (2)**
56:2,17
**willing (5)**
14:25;21:24;23:18;
25:10;61:6
**willingness (1)**
60:18

**win (2)**
37:14;40:6
**winner (1)**
45:1
**wisdom (1)**
50:19
**wish (4)**
7:13,15;11:14;
56:12
**without (18)**
9:23;11:8;13:5,22;
15:20;17:9,15;22:24;
25:8;41:24;47:23;
50:5;51:7;55:12;
56:4,7;57:17;59:20
**word (2)**
32:18,22
**work (5)**
18:19;19:1,2,6;
51:14
**worked (2)**
18:15;24:14
**works (1)**
24:25
**world (5)**
7:4;11:17;57:12,
12,25
**worry (1)**
22:14
**worth (8)**
21:2,19;22:5,7;
25:15;29:8;33:16;
42:19
**written (6)**
16:10,15;27:3;
34:8;51:8;53:17
**wrong (6)**
23:9;32:18,22;
34:16;36:3;39:1
**wrote (3)**
18:11;24:15;40:10

**Y**

**year (1)**
45:24
**years (15)**
18:15,18,19,23,25;
19:15;20:4;23:11,13,
17;24:14;26:23;35:8;
37:4;47:19
**York (5)**
5:6,13;27:9;40:17;
60:17
**Young (3)**
19:5;21:9;22:4

**Z**

**zero (3)**
23:25;28:21;29:8

**1**

**1 (1)**
19:13
**1.4 (1)**
23:20
**10 (1)**
17:10
**10014 (1)**
5:6
**10017 (1)**
5:13
**1006 (1)**
5:5
**103 (1)**
26:14
**105 (1)**
20:16
**107 (5)**
20:17;40:2,7,7,24
**108 (1)**
20:17
**109 (3)**
34:21;44:13,23
**11 (2)**
6:6;58:25
**11:49 (1)**
62:13
**110 (1)**
40:7
**12 (4)**
17:11;24:21,22;
59:25
**12,000 (1)**
54:17
**127 (1)**
33:14
**136 (2)**
22:2,6
**137 (6)**
19:17;20:18,19,24;
24:3;25:9
**15 (2)**
17:11;20:15
**16 (2)**
17:11;43:24
**18 (1)**
17:11
**19.40 (2)**
39:24;40:6
**1980 (1)**
18:12
**1984 (1)**
18:14

**2**

**2 (1)**
40:1
**2.8 (2)**
23:18,22
**201 (1)**

5:4
**2010 (2)**
26:14;41:15
**2011 (1)**
27:2
**2012 (1)**
42:18
**2013 (1)**
43:7
**20th (1)**
58:11
**21 (2)**
39:24;40:23
**21.25 (1)**
44:6
**22 (1)**
17:11
**221 (1)**
5:12
**23 (1)**
17:11
**24 (1)**
17:11
**26 (3)**
17:16;32:14,19
**26,000 (1)**
54:3
**27 (1)**
17:11
**28a (1)**
17:11
**28b (1)**
17:11
**29 (1)**
17:11

---

**3**

**3 (4)**
40:1;55:1,15;56:9
**3.25 (1)**
42:12
**3.7 (1)**
23:24
**300-page (2)**
38:24;39:8
**31 (1)**
17:11
**32 (1)**
17:11
**33 (1)**
17:12
**34,000 (1)**
42:16
**35 (2)**
17:12;41:25

---

**4**

**4 (1)**
20:7
**4,000 (1)**
54:11

---

**4.25 (2)**
39:25;40:6
**41st (1)**
5:12
**432 (1)**
14:10

---

**5**

**5 (1)**
18:9
**500,000-dollar (1)**
24:23
**512 (1)**
19:13
**5th (1)**
19:11

---

**6**

**6 (1)**
44:25
**600,000 (1)**
29:8

---

**7**

**7 (2)**
44:24;56:17
**7000 (1)**
59:22
**7001 (1)**
15:5
**7008 (1)**
59:24
**701 (3)**
17:3;33:24;48:24
**7012 (1)**
59:24
**702 (5)**
17:2;32:20;33:24;
49:2,16
**7037a5B (1)**
11:4

---

**8**

**8 (1)**
59:25
**8:50 (1)**
6:15
**8000 (1)**
50:20

---

**9**

**9 (2)**
29:8;44:23
**90 (1)**
26:18
**910 (1)**
14:5
**95 (1)**

---

26:18