UNITED STATES BANKRUPTCY COURT

| | |
|---|---|
| In re: | SOUTHERN DISTRICT OF NEW YORKChapter 11 |
| FLETCHER INTERNATIONAL, LTD. | Case No. 12–12796 (REG) |
| Debtor | |
| ALPHONSE FLETCHER, JR.,(pro se) | |
| Appellants, | |
| v. | |
| RICHARD J. DAVIS, ESQ. | |
| Appellees | |

## FLETCHER INTERNATIONAL, LTD. DISGORGEMENT MOTION

Alphonse Fletcher, Jr. acting pro se, respectfully submits this motion (the "Fletcher International. Ltd. Disgorgement Motion"), (i) pursuant to Rules 60(b)(6) and 60(d)(3) of the Federal Rules of Civil Procedure (the "Civil Rules"), as made applicable herein by Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order vacating the Court's orders authorizing Richard J. Davis, ESQ. (the "Trustee") to retain Luskin, Stern & Eisler, LLP ("Luskin") as their counsel, and Goldin Associates ("Goldin") as their financial advisor, and directing the disgorgement of all compensation received by them from the estates or, in the alternative, (ii) pursuant to Sections 327, 329, 330(a)(5), 504(a) and 105(a) of title 11, United States Code (the "Bankruptcy Code"), Rules 2014, 2016 and 2017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Local Bankruptcy Rules 2014–1 and 2016–1 of the Southern District of New York (the "Local Bankruptcy Rules"), the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Cases

1

("Amended Fee Guidelines" or "Admin. Order M-389") and Guidelines b(1)(ii) and b(1)(iii) of the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330 (the "UST Fee Guidelines") for an order disallowing the pending fee requests of Luskin and Goldin and directing the disgorgement of all compensation received by them from the estates and (iii) removing Richard J. Davis, ESQ. as Trustee of the Fletcher International, Ltd Liquidating Trust (the "Liquidating Trust") and directing the disgorgement of all compensation received by the Trustee from the Liquidating Trust.    I attach the letter I submitted to the Court, ex parte, on March 12, the motion I submitted on March 19, 2014, my March 25 letter responding to a letter from Mr. Luskin, and the "Table of Connections" requested by Judge Gerber submitted on April 1.

Dated: May 21, 2014

                                            Respectfully Submitted,

                                            ALPHONSE FLETCHER, JR.

                                            By:_____
                                             Alphonse Fletcher. Jr.
                                            Address: 188 Minna Street
                                                      San Francisco, CA 94105
                                            Phone: (415)702-0070
                                            Email:  AFletcher@Fletcher.com

**CERTIFICATE OF SERVICE**
I certify that on May 20, 2014, I served the foregoing motion via UPS Express, the CM/ECF Electronic Filing system, or electronic mail on the following:

| |
|---|
| Office of The United States Trustee<br>U.S. Federal Office Building<br>201 Varick Street, Suite 1006<br>New York, NY   10014<br>Richard C. Morrissey, Esq.<br>Richard.Morrissey@usdoj.gov |
| Richard J. Davis, Esq.<br>415 Madison Ave.<br>11th Floor<br>New York, NY 10017<br>richard.davis@rjdavislaw.com<br><br>Chapter 11 Trustee |
| LUSKIN, STERN & EISLER LLP<br>Eleven Times Square<br>8th Ave. & 41st St.<br>New York, NY 10036<br>Michael Luskin, Esq.<br>luskin@lsellp.com<br>Stephan Hornung<br>hornung@lsellp.com<br><br>Counsel to the Chapter 11 Trustee |
| COHEN & GRESSER LLP<br>800 Third Avenue<br>New York, New York 10022<br>Daniel H. Tabak<br>dtabak@cohengresser.com<br><br>Attorneys for Defendants Fletcher Income<br>Arbitrage Fund in Voluntary Liquidation, acting by its Joint Official<br>Liquidators Robin Lee McMahon and Roy Bailey and FIA Leveraged<br>Fund In Official Liquidation, acting by its Joint Official Liquidators<br>Robin Lee McMahon and Roy Bailey |

SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, 11th Floor
New York, New York 10169
Justin E. Klein, Esq.
Timothy T. Brock, Esq.
David R. Lurie, Esq.
Mario Aieta, Esq.
jklein@ssbb.com
tbrock@ssbb.com
dlurie@ssbb.com
maieta@ssbb.com

Counsel for Fletcher Income Arbitrage Fund
and FIA Leveraged Fund

HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Barbra R. Parlin, Esq.
barbra.parlin@hklaw.com

HOLLAND & KNIGHT LLP
10 St. James A venue, 11th Floor
Boston MA 02116
John J. Monaghan, Esq.
bos-bankruptcy@hklaw.com

Attorneys for Fletcher Fixed Income Alpha Fund, Ltd. – In Official
Liquidation, acting by its Joint Official Liquidators, Tammy Fu and
Jenna Wise

DIAMOND MCCARTHY LLP
620 Eighth Avenue, 39th Floor
New York, NY 10018
Richard I. Janvey
rjanvey@diamondmccarthy.com

DIAMOND MCCARTHY LLP
909 Fannin, Suite 1500
Houston, Texas 77010
Kyung S. Lee
Charles M. Rubio
klee@diamondmccarthy.com
crubio@diamondmccarthy.com

Attorneys for The Firefighter's Retirement System, The New Orleans
Fire Fighters' Pension & Relief Fund, and The Municipal Employees'
Retirement System of Louisiana

DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas
New York, New York 10036–2714
Michael P. Pompeo, Esq.
Brian P. Morgan, Esq.
michael.pompeo@dbr.com   brian.morgan@dbr.com

DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, Pennsylvania 19103–6996
William M. Connolly, Esq.
william.connolly@dbr.com

Attorneys for EisnerAmper LLP

PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, New York 10036–6710
David W. Dykhouse
Brian P. Guiney
dwdykhouse@pbwt.com
bguiney@pbwt.com

Jones Day
222 East 41st Street
New York, New York 10017
Veerle Roovers
Amy Edgy Ferber
Thomas F. Cullen, Jr.
Daniel T. Moss
vroovers@jonesday.com
aeferber@jonesday.com
tfcullen@jonesday.com
dtmoss@jonesday.com
Counsel to the Soundview Elite Ltd. et al. Trustee

Karen Ostad
Ostad PLLC
185 Great Neck Road
Suite 330
Great Neck, NY 11021
kostad@ostadllc.com
Counsel to America Alternative Investments Inc.

PORZIO BROMBERG & NEWMAN, P.C.
100 Southgate Parkway, P.O. Box 1997
Morristown, NJ 07962–1997
Warren J. Martin, Jr.
Mark J. Politan
Mathew D. Laskowski
Terri J. Freedman
Maria P. Dermatis
wjmartin@pbnlaw.com
mjpolitan@pbnlaw.com
mdlaskowski@pbnlaw.com
tjfreedman@pbnlaw.com
mpdermatis@pbnlaw.com
Attorneys for Soundview Elite, Ltd., et. al.
Debtors Out–Of–Possession

Respectfully Submitted,
ALPHONSE FLETCHER, JR.

By: _____

 Alphonse Fletcher. Jr.
Address: 188 Minna Street
          San Francisco, CA 94105
Phone: (415)702–0070
Email:  AFletcher@Fletcher.com

Honorable Robert E. Gerber
March 19, 2014

Alphonse Fletcher, Jr.
48 Wall Street, 4th Floor
New York, NY 10005

March 19, 2014

Hon. Robert E. Gerber
United States Bankruptcy Judge
Southern District of New York
One Bowling Green, Courtroom 523
New York, NY 10004-1408

Re:  *In re Fletcher International, Ltd., In re Soundview Elite, Ltd. et al.,*
     *In re Fletcher Income Arbitrage Fund Ltd., and In re FIA Leveraged Fund*

Dear Judge Gerber,

I am a party-in-interest appearing *pro se* in these cases.[1]  I to write to bring to the Court's attention certain legal issues that have arisen in the course of these cases. I believe these issues may materially each retention in the Fletcher and Soundview cases and the recognition in the FIA Leveraged and Fletcher Income Arbitrage cases.  The issues concern compliance with Bankruptcy laws and, as discussed below, could affect the Fletcher Trustee's Plan of Liquidation, recognition of the Ernst & Young Liquidators, and appointment of the Soundview professionals. I respectfully request that the Court address this issue as a threshold matter in advance of other actions in these proceedings.

To summarize the issues, each of the Fletcher Fiduciaries and the Soundview Fiduciaries (together "Fiduciaries") represented to the Court that it had disclosed all connections and had no adverse interests.  As I have tried to suggest to parties in these proceedings, even the disclosed connections, described below, raise significant concerns that may have been overlooked earlier. The undisclosed connections to parties related to the Dakota,[2] however, raise serious issues and quite likely impute an adverse interest in certain Fiduciaries against their estates.  These connections include Dakota Treasurer John Angelo of Angelo, Gordon & Co. ("Angelo Gordon") and the firms that helped him in Tribune[3], his son Jesse Angelo of News Corporation[4], Dakota President Jay Goldsmith of Balfour Investors ("Balfour"), Dakota shareholder and former vice president Matthew Mallow of Blackrock, my former counsel Kasowitz Benson, and Dakota counsel Quinn Emanuel and its outside counsel.[5]  The issues are clear now that the Trustee's plans have been fully revealed.

**Fletcher Trustee Richard J. Davis** retired as a senior partner of Weil Gotshal fewer than nine months prior to his appointment as Fletcher Trustee[6] yet appeared to conclude that his former clients were not connections for disclosure purposes.

1

**Fletcher Trustee's counsel,** Luskin Stern, disclosed his current active representation of defendants sued by Fletcher International, Ltd. weeks prior to its chapter 11 filing, Ernst & Young Liquidators.[7]

**Goldin Associates** disclosed it is currently working with JPMorgan Chase, Young Conaway, Kasowitz Benson, Zolfo Cooper liquidators for Fletcher Fixed-Income Alpha Fund, Holland & Knight counsel to a significant Fletcher fund investor, and HSBC. It has also worked for Ernst & Young and Credit Suisse.[8]

**Soundview Trustee Corinne Ball's law firm, Jones Day** disclosed its current work for Citco JPMorgan Chase, Credit Suisse, HSBC, and others.

**Soundview Financial Advisor, Geoffrey Varga of Kinetic Partners,** disclosed current clients including Citco affiliates, Credit Suisse, HSBC, and previous work with 20 parties, the last five of which are: The LA Firefighter ' Retirement System [*sic*], The Municipal Employees Retirement System of LA [*sic*], The New Orleans Fire Fighters Pension & Relief Fund, Walkers Legal Services, Wilmington Trust, National Association.

In fact, a review of the Fiduciaries' websites, news articles, and company filings reveals a surprising breadth and depth of connections with parties related to the Dakota ("Dakota Parties") despite the adverse interest that logically results from my litigation with the Dakota. Below are some the connections to Dakota Parties that the Fiduciaries failed to disclose (see also a table at Exhibit A).

**Richard J. Davis** personally represented News Corporation and Sotheby, two current Weil clients, while he served as a senior partner at Weil Gotshal which includes Silver Point Capital, Citco's financial sponsor, as a client. Richard J. Davis served for years in leadership roles at Citizens Union with Dakota Party Anthony Smith, a named defendant in *Fletcher v Dakota*.[9] Mr. Davis's former partnership, Weil, listed the following parties-in-interest in these associated as clients in a retention application while Mr. Davis served as a senior partner: Blackstone, Credit Suisse, D.E. Shaw, Ernst & Young, HSBC Bank, J. P. Morgan Chase, Milbank Tweed Hadley & McCloy, Morgan Stanley & Co., Seaport Group, Wilmington Trust Company.[10]

**Luskin Stern** acknowledged in its retention papers that it then represented Ernst & Young liquidators yet surprisingly attested to no adverse interest despite the fact that Fletcher International, Ltd had already sued the Ernst & Young Liquidator.

**Goldin Associates** did not disclose that Dakota counsel Quinn Emanuel defended one of the cases in which Goldin Associates was sued for fraud in which it settled after losing its motion to dismiss.[11] Goldin Associates did not disclose its business dealings with either the president of the Dakota board Jay Goldsmith of Balfour or the treasurer of the Dakota board John Angelo of Angelo Gordon. Below, from the Goldin Associates' website, news stories, and corporate filings, are examples of some of the dealings between Dakota Parties and Goldin Associates.

- According to its website, Goldin Associates "Served as interim management in connection with one of the largest bankruptcies in U.S. history."[12]  On November 14, 2005, Bloomberg reported that employees of ForstmannLeff would purchase the 65% of their firm held by Refco.[13]  Then Harrison J. Goldin was appointed as chief executive of Refco on December 20, 2005,[14] and on January 9, 2006, Refco announced that ForstmannLeff "has been sold to New York hedge fund group Angelo, Gordon & Co."[15]

- Goldin Associates and Balfour Investors worked together in Sterling Optical according to Goldin's website.[16]  "Dr. Cohen turned over day-to-day operations to Goldin Associates, an investment banking firm in Manhattan... The board also authorized hiring Balfour Investors Inc. of Manhattan as a consultant."[17] Interestingly, Goldin and Balfour were compensated in "warrants," according to company filings: "558,292 of the warrants issued to Goldin ... vested... On May 20, 2004, Goldin exercised all such warrants... 279,146 of the warrants issued to Balfour... vested... On May 20, 2004, Balfour exercised all such warrants.[18]"

- According to its website, Goldin Associates as "Examiner and financial advisor... for Enron's principal subsidiary... renegotiated the debtors' joint plan of reorganization, resulting in a transfer of value of more than $1 billion to the ENA estates."[19] "Some, such as Angelo, Gordon & Co., purchased much of the debt of a crucial Enron subsidiary, Enron North America Corp., which is sometimes referred to as the parent corporation's cash cow. Angelo Gordon's interest is to prevent the consolidation of the different debtors--i.e. of Enron Corp. and Enron North America--thereby preventing the dilution of its share of the Enron North America cash flow."[20]  Some were unhappy, ``We strongly disagree with the ENA examiner's characterizations of not only the process but also the negotiations and the plan that he supported and we will lay that out in a response to the court," Enron spokeswoman Karen Denne said.[21]  Quinn Emanuel reports that it "Represented ... [four hedge fund groups including] Angelo Gordon —as plaintiff-holders of Yosemite and Enron Credit-Linked (ECLN)... With Citibank's motion for summary judgment pending, Citibank and Enron agreed to a joint settlement and our clients received in excess of $2.1 billion in payments from the Enron bankruptcy estate."[22]

- According to its website, in Loral, Goldin Associates was as "Examiner tasked by the Bankruptcy Court with investigating and reporting on the processes and procedures employed by Loral and its professionals in valuing Loral's assets and businesses[,] Goldin concluded that the valuation processes and procedures were professionally acceptable, but did not fully capture Loral's value..." Previously, "Loral's vendors quit the creditors' committee and resold their trade claims to hedge funds such as Angelo, Gordon. Lawyers for Angelo, Gordon then complained in court filings that the plan paid trade creditors only 33 cents on the dollar... Former New York City Comptroller Harrison J. Goldin was appointed examiner, and in a March 2005 report, he said that Loral's bankers at Greenhill &

Co. had undervalued the company by between $280 million and $463 million. Lawyers for Loral and the creditors bitterly criticized Goldin's analysis, but his report was quickly followed by an amended plan of reorganization that would pay the claims of Angelo, Gordon in full."[23]

**Young Conaway,** when it was retained as debtor's counsel for Fletcher International, Ltd. was actively working with Angelo Gordon in the Tribune bankruptcy.[24] Young Conaway was also actively working with the Louisiana Officials and Fletcher's Cayman law firm Walkers in the Delaware bankruptcy proceeding[25] of another fund which the Louisiana Officials took over with Young Conaway and Kinetic Partners' Geoffrey Varga.

**Corinne Ball and Jones Day** retention applications do not include certain Jones Day certain relevant clients it included in prior retention application. Some of those clients are targets for significant claims in these cases including Ernst & Young, Zolfo Cooper, D.E. Shaw, and Angelo Gordon, and News Corporation.[26]

**Geoffrey Varga of Kinetic Partners** did not disclose his work with Quinn Emanuel in 2010 on a multi-billion dollar Cayman windup and related chapter 15 proceeding[27] at the same time that the Dakota hired Quinn Emanuel and that same partner with whom Mr. Varga worked to address its negotiations with me months prior to my 2011 lawsuit against the Dakota. Mr. Varga did not disclose that Young Conaway tried to appoint him as an "independent fiduciary" despite my concerns regarding his work at the time on behalf of the Louisiana Officials. Mr. Varga also did disclose that with the Louisiana Officials and Young Conaway, he replaced the manager of another fund group in a Delaware bankruptcy proceeding, described in "Kinetic goes 'zombie' hunting" in a July 23, 2012 Pension and Investments article.[28]

Specifically, Kinetic just entered the business of dismantling illiquid "zombie" private equity and hedge funds, said Geoff Varga, partner and global head of the New York-based firm's corporate recovery and restructuring practice... "We are a liquidator with a different wrapper and our ability to take over management of the fund gives us another layer of control over the fund's assets, allowing us to give fund investors more input into how they want the wind-down process to go," Mr. Varga said...The firm is in the process of registering with the Securities and Exchange Commission as a money manager, but already received its first assignment as replacement money manager for the Commonwealth and Sand Spring Capital hedge fund families. The nine funds were managed by Commonwealth Advisors Inc., Baton Rouge, La. Commonwealth filed for Chapter 11 bankruptcy protection on behalf of the funds in late 2011.

Fletcher International, Ltd.'s debtor's counsel, at its August 20, 2012 hearing, recommended his independent director concept and candidates, particularly Mr. Varga, despite his work at the time with the Louisiana Officials:

4

The debtor went back and thought about that and how best to accomplish it within the corporate governance framework we have, and we think we've come up with a solution. This week, Your Honor, the debtor's board will be interviewing potential independent directors. The concept would be this. They would appoint an independent director, assign that director to a special committee -- it'll be a committee of one, at least at this point, it could be a committee of two, but let's start with one -- and that director would have sole authority over all litigation matters, so that for one, the CRO, who's doing investigations would report back to that independent director. Right? That independent director would have the ability to determine -- first, oversee and direct the investigation, and then to determine whether or not to pursue any particular claim or cause of action without going to anybody else. It would be that director's sole responsibility... a gentleman named Geoff Varga, who's from a company called KineticPartners.

These undisclosed connections and possible adverse interest cast doubt on the major decisions of the Trustee, specifically, settlement of the four primary disputes that led to these associated insolvency cases. Those settlements would provide relatively little or no consideration to the estate.

1.  the estate's important claims against JPMorgan-supported United Community Banks would be settled for an unreasonably small fraction of the value that has been represented to the court by the Trustee.

2.  the Ernst & Young Liquidators would settle the litigation that *Fletcher International, Ltd.* brought against them by receiving approximately 80% of the Fletcher International, Ltd. estate after having settled their redemption securities for $2.5 million.[29]

3.  Credit Suisse which seized and sold the estate's Ion Geophysical convertible preferred to D.E. Shaw for millions below a more attractive alternative bid would be released even though D.E. Shaw resold the preferred for millions above the small premium charged by Credit Suisse.

4.  the Louisiana Officials, purported "major parties-in-interest,"[30] would share in the estate despite violating several agreements with the Fletcher funds and causing substantial damage through misuse of legal proceedings.

With Quinn Emanuel's outside counsel,[31] the Louisiana Officials, obtained in the Cayman Islands what they could not in the U.S. Represented by the personal counsel of the Chief Justice of the Cayman Islands, the Louisiana Officials were granted the equivalent of an involuntary bankruptcy petition, despite the dispute,[32] in a proceeding in front of the Chief Justice. Media reports describe the matters in which the Cayman Judiciary and government are involved as the Cayman "Watergate."[33] The U.K. Foreign and Commonwealth Office will not release the details of the investigative report filed by the leader of the special U.K. Metropolitan Police ("Scotland Yard") investigative team. The Foreign and Commonwealth Office stated:

"We judge that disclosure of the information requested could lead to a loss of confidence within the international community, which could impact negatively on the Cayman Islands' reputation and, more directly, on its financial services industry."[34]

Judge Shelley C. Chapman in her recent GSC Group decision referring to Judge Bernstein's opinion *in re Granite* as one of "two seminal cases in this District involving serious allegations of misconduct" highlights the public interests that are at state:

Judge Bernstein found that [chapter 11 trustee Goldin's counsel] Willkie represented adverse interests at the time it undertook representation of the Trustee due to its concurrent relationship with [litigation target] Merrill. Due to its increased representation of Merrill (and the amount of fees generated by its work for Merrill), no matter how thoroughly or fairly Willkie conducted the investigation on behalf of the Trustee, "the question will always linger whether it held back, or failed to bite the hand that feeds it quite as hard as the circumstances warranted." Judge Bernstein observed that the Trustee's counsel must be above suspicion, as "[b]ankruptcy is concerned as much with appearances as with reality.

Given the impact this previously unanticipated gating issue under sections 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014 could have on the proceedings I respectfully request (i) that the Court hear legal argument on these issues first, at its Wednesday hearing for these cases, as to the effect of the Fiduciaries violation of Rule 2014 and possible violation of section 327(a) and (ii) stay actions of the Fiduciaries until their compliance with section 327(a) and Rule 2014 is confirmed.

Sincerely and respectfully submitted,

Alphonse Fletcher, Jr.

Cc: See distribution on following page

6

Honorable Robert E. Gerber
March 19, 2014

**Distribution:**

Mario Aieta on behalf of Defendant FIA Leveraged Fund
maieta@ssbb.com, managingclerk@ssbb.com

Timothy T. Brock on behalf of Defendant FIA Leveraged Fund
tbrock@ssbb.com, tlewis@ssbb.com;asnow@ssbb.com;managingclerk@ssbb.com;cgrace@ssbb.com

Timothy T. Brock on behalf of Foreign Representative FIA Leveraged Fund (In Liquidation)
tbrock@ssbb.com, tlewis@ssbb.com;asnow@ssbb.com;managingclerk@ssbb.com;cgrace@ssbb.com

Kelly D. Curtin on behalf of Debtor Soundview Elite Ltd.
kdcurtin@pbnlaw.com,
mdlaskowski@pbnlaw.com;mpdermatis@pbnlaw.com;rasegall@pbnlaw.com;sakelly@pbnlaw.com

David W. Dykhouse on behalf of Interested Party Patterson Belknap Webb & Tyler LLP
dwdykhouse@pbwt.com, mcobankruptcy@pbwt.com

Amy Edgy Ferber on behalf of Trustee Corinne Ball
aeferber@jonesday.com, bstone@jonesday.com

Elisabetta Gasparini on behalf of U.S. Trustee United States Trustee
Elisabetta.G.Gasparini@usdoj.gov

Daniel F.X. Geoghan on behalf of Attorney Young Conaway Stargatt & Taylor, LLP
DGeoghan@coleschotz.com

Jeffrey R. Gleit on behalf of Creditor Pasig Ltd.
jgleit@kasowitz.com, courtnotices@kasowitz.com,JBalduzzi@kasowitz.com

Andrew K. Glenn on behalf of Creditor Pasig Ltd.
aglenn@kasowitz.com, courtnotices@kasowitz.com

David R. Hurst on behalf of Debtor Fletcher International, Ltd.
dhurst@coleschotz.com, pratkowiak@coleschotz.com;kkarstetter@coleschotz.com

Neal R. Jacobson on behalf of Interested Party Securities And Exchange Commission
jacobsonn@sec.gov

Richard I. Janvey on behalf of Unknown The Firefighters Retirement System,
rjanvey@diamondmccarthy.com, nsullivan@diamondmccarthy.com

Justin Klein on behalf of Defendant FIA Leveraged Fund
jklein@ssbb.com, managingclerk@ssbb.com

David R. Lurie on behalf of Defendant FIA Leveraged Fund-In Official Liquidation
dlurie@ssbb.com, managingclerk@ssbb.com

Warren J. Martin, Jr. on behalf of Attorney Porzio, Bromberg & Newman, P.C.
wjmartin@pbnlaw.com, sakelly@pbnlaw.com;mdlaskowski@pbnlaw.com;mpdermatis@pbnlaw.com

Michael J. Merchant on behalf of Interested Party Wilmington Trust, National Association

Honorable Robert E. Gerber
March 19, 2014

merchant@rlf.com, rbgroup@rlf.com

John J. Monaghan on behalf of Defendant Fletcher Fixed Income Alpha Fund, Ltd-In Official Liquidation
bos-bankruptcy@hklaw.com

Michael J. Naporano on behalf of Debtor Soundview Elite Ltd.
mjnaporano@pbnlaw.com, mpdermatis@pbnlaw.com

Barbra R. Parlin on behalf of Defendant Fletcher Fixed Income Alpha Fund, Ltd-In Official Liquidation
barbra.parlin@hklaw.com

John A Pintarelli on behalf of Unknown Peter Anderson and Matthew Wright, as Joint Official Liquidators
of Soundview Elite Limited, Soundview Premium and Soundview Star Limited
jpintarelli@mofo.com, ECF@mofo.com

Mark J. Politan on behalf of Creditor Affiliated Debtors-In-Possession, Soundview Elite Ltd., et al, In
Cases Pending Before This Court and Jointly Administered Under Case No. 13-13098
mjpolitan@pbnlaw.com, mpdermatis@pbnlaw.com;mdlaskowski@pbnlaw.com;tjfreedman@pbnlaw.com

Michael P. Pompeo on behalf of Interested Party EisnerAmper LLP
mpompeo@dbr.com

Veerle Roovers on behalf of Trustee Corinne Ball
vroovers@jonesday.com, bstone@jonesday.com

Justin M. Sher on behalf of Interested Party Fletcher Asset Managment, Inc.
jsher@shertremonte.com, mcuccaro@shertremonte.com

Glenn E. Siegel on behalf of Other Prof. Conway MacKenzie Management Services, LLC
Glenn.Siegel@morganlewis.com

Daniel H. Tabak on behalf of Defendant FIA Leveraged Fund-In Official Liquidation
dtabak@cohengresser.com

Andrew G. Horne on behalf of Respondent Kirkland & Ellis LLP
ahorne@kirkland.com

Corinne Ball
Jones Day LLP
222 East 41st Street
New York, NY 10017-6702
cball@jonesday.com

CohnReznick LLP
333 Thornall Street
Attn: Bernard A. Katz
Edison, NJ 08837
Bernie Katz <Bernie.Katz@CohnReznick.com>
Howard Konicov <hkonicov@jhcohn.com>

Alphonse Fletcher, Jr.
Afletcher@fletcher.com

George E. Ladner
Gladner@fletcher.com

Gary S. Lee on behalf of Unknown Peter Anderson and Matthew Wright, as Joint Official Liquidators of Soundview
Elite Limited, Soundview Premium and Soundview Star Limited
Morrison & Foerster LLP
1290 Avenue of the Americas
40th Floor
New York, NY 10022
glee@mofo.com, jpintarelli@mofo.com

Richard C. Morrissey on behalf of U.S. Trustee United States Trustee
Office of the U.S. Trustee
33 Whitehall Street, 21st Fl.
New York, NY 10004
richard.morrissey@usdoj.gov

Karen Ostad on behalf of Unknown America Alternative Investments Inc
Ostad PLLC
185 Great Neck Road
Suite 330
Great Neck, NY 11021
kostad@ostadllc.com

Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Richard J. Davis
415 Madison Ave.
New York, NY 10017
davis Richard <Richard.Davis@rjdavislaw.com>

Gary S. Lee on behalf of Unknown Peter Anderson and Matthew Wright, as Joint Official Liquidators of
Soundview Elite Limited, Soundview Premium and Soundview Star Limited
Morrison & Foerster LLP
1290 Avenue of the Americas
40th Floor
New York, NY 10022
glee@mofo.com, jpintarelli@mofo.com

Stephan E. Hornung on behalf of Plaintiff Richard J. Davis
Luskin, Stern & Eisler LLP
Eleven Times Square
New York, NY 10036
Michael Luskin on behalf of Attorney Luskin, Stern & Eisler LLP
Luskin, Stern & Eisler LLP
Eleven Times Square
New York, NY 10036
Michael Luskin on behalf of Plaintiff Richard J. Davis
Luskin, Stern & Eisler LLP
Eleven Times Square
New York, NY 10036
**Stephan Hornung <hornung@lsellp.com>**

Honorable Robert E. Gerber
March 19, 2014

Richard C. Morrissey on behalf of U.S. Trustee United States Trustee
Office of the U.S. Trustee
33 Whitehall Street, 21st Fl.
New York, NY 10004
richard.morrissey@usdoj.gov

Karen Ostad on behalf of Unknown America Alternative Investments Inc
Ostad PLLC
185 Great Neck Road
Suite 330
Great Neck, NY 11021
kostad@ostadllc.com

Skadden, Arps, Slate, Meagher & Flom LLP
Spiegel, Lawrence S <Lawrence.Spiegel@skadden.com>

turner Julie A <Julie.Turner@skadden.com>

Stewart Turner
Sturner@Fletcher.com

WeiserMazars, LLP
135 West 50th Street
New York, NY 10020

Abigail Snow on behalf of Foreign Representative FIA Leveraged Fund (In Liquidation)
asnow@ssbb.com

Daniel N. Zinman on behalf of 3rd Party Plaintiff Kasowitz Benson Torres & Friedman LLP
dzinman@kasowitz.com, courtnotices@kasowitz.com

gerber.chambers@nysb.uscourts.gov

Honorable Robert E. Gerber
March 19, 2014

Exhibit A

## Connections and Adverse Interests - *In re Fletcher International, Ltd.* and Associated Cases



**In re Fletcher International, Ltd. Fiduciaries**
**Richard J. Davis, Luskin Stern, Goldin Associates, Young Conaway**
(Mr. Davis was a senior partner at Weil partner fewer than 9 months prior to his appointment as chapter 11 trustee.)

| Connections with Ernst & Young and Louisiana Officials | Connections with Dakota Parties John Angelo, Quinn Emanuel, Anthony Smith, Jay Goldsmith, Mallow/Blackstone, etc. | Angelo Gordon: Young Conaway client in Tribune; JPMorgan and Credit Suisse: clients of Goldin and Weil | Sotheby's: is or was a client of Mr. Davis, current Weil client; Mr. Davis defended "Price Fixing" charges | Silver Point: client of Weil | News Corp: is or was a client of Mr. Davis, current client of Weil; Mr. Davis defended a defamation suit |
|---|---|---|---|---|---|
| | **Dakota, Inc.**<br><br>John Angelo-Treasurer, Matt Mallow-Blackstone GC<br><br>Counsel to Dakota, Blackstone, and Angelo, Gordon:<br><br>**Quinn Emanuel** | **JPMorgan Chase / Credit Suisse**<br><br>Agents for Angelo Gordon and its Partners in Tribune<br><br>Counsel to Angelo, Gordon, JPMorgan, Credit Suisse:<br><br>**Young Conaway, Paul Weiss, Weil Gotshal Jones Day** | **Sotheby's**<br><br>John Angelo is a Director, Nominated James Murdoch<br><br>Counsel to Sotheby's:<br><br>**Paul Weiss Weil Gotshal** | **Silver Point**<br>Citco's financial sponsor<br><br>Angelo Gordon Partner in Silver Oak Capital<br><br>Counsel to Silver Point and Silver Oak:<br><br>**Weil Gotshal, Paul Weiss** | **News Corporation**<br><br>Jesse Angelo, "Attributable Interest," *NY Post* Publisher<br><br>Counsel to News Corp and Angelo, Gordon:<br><br>**Paul Weiss, Kasowitz Benson** |
| | **Quinn Emanuel's**<br>Outside Counsel: Gregory Joseph<br>Co-Counsel: Ross McDonough<br><br>Louisiana Officials, Ernst & Young<br><br>**FIA Leveraged** | **Jones Day, Kinetic** (connected with LA Officials and Dakota Parties)<br><br>Corinne Ball of Jones Day | **Weil Gotshal, Walkers**<br><br><br><br>Midanek (Richcourt) | **Paul Weiss, Morrison Foerster**<br><br><br><br>Citco/JOLs (Soundview) | **Kasowitz Benson**<br><br><br><br>Pasig, Ltd. (Soundview) |

**Richcourt / Soundview Funds**

March 18, 2014 Draft

11

Honorable Robert E. Gerber
March 19, 2014

[1] If I have followed incorrect procedure, am otherwise required to change something, or have overlooked an error, I will rectify the situation as quickly as possible once I am aware.

[2] On February 1, 2011, Fletcher Asset Management, Inc. and I filed a lawsuit against the Dakota entitled: *ALPHONSE FLETCHER, JR., AND FLETCHER ASSET MANAGEMENT, INC. V. THE DAKOTA INC. BRUCE BARNES, PAMELA LOVINGER, PETER NITZE, JOHN RYDZEWSKI, AND ANTHONY R. SMITH AND GAEL SMITH ARNOLD AS CO-EXECUTORS OF THE ESTATE OF RUTH PROSKAUER SMITH (11-101289). ("Fletcher v Dakota")* Among its claims were defamation and retaliation in violation of New York City Administrative Law 8-107 *et seq.*[24] relating to the Dakota's efforts "to harm and destroy the personal and business reputation of plaintiffs; and, on information and belief, to intimidate Fletcher and FAM into dropping this lawsuit..." Fletcher Asset Management, Inc. and I seek "not less than $50 million" and "an order enjoining the Dakota and Barnes from continuing to engage in discriminatory conduct with respect to Fletcher" or "interfering with or impeding in any way..."

In 2012, the Appellate Division, First Department affirmed Justice Rakower's substantial denial of the Dakota defendants' motion-to-dismiss. With Associate Justice Rolando T. Acosta's opinion, the court sought to "clear up an element of possible confusion" and confirms the lack of "a safe harbor from judicial inquiry for directors who are alleged to have engaged in conduct not protected by the business judgment rule." Fletcher v. Dakota, Inc., 99 A.D.3d 43, 52 n.2 (1st Dep't 2012)

From 2007 through 2010, my defense of current and prospective Dakota shareholders against their discriminatory conduct led former presidents John Rydzewski and Bruce Barnes to threaten to use the Dakota's "influence" to cause harm to our investment business and ultimately to my family.

> [D]efendant Barnes specifically threatened that if Fletcher ultimately brought a lawsuit against the Dakota, "what the Dakota will say will cause [Fletcher] far more harm than any harm caused to the Dakota." Given defendants' recent conduct, and Barnes' recent machinations, defendants have at least tried to carry out this threat.... Defendant Barnes made similar statements regarding plaintiff at other points between May and September 2010. For example, on September 5, 2010, Barnes told another Dakota shareholder that the Dakota would, among other things, make public statements attacking Fletcher, his financial health, and his business if Fletcher brought a lawsuit. *Fletcher v Dakota*, Amended Complaint, Paragraph 113

Further, in the Soundview chapter 11 proceedings, former Fletcher counsel Paul Weiss in *Fletcher v Dakota* represented Citco. Soundview investor Pasig Ltd. was represented by Kasowitz Benson which had replaced Paul Weiss as our Fletcher counsel until it too withdrew. Paul Weiss cleared conflicts, drafted the original complaint in *Fletcher v Dakota*, and managed the case for more than six months. Paul Weiss did not appear in court and selected another law firm to appear in its place. Paul Weiss explained that its managing partner would not allow the firm to appear in this case because John Angelo's Angelo, Gordon & Co. is an "important" client of Paul Weiss.

[3] Each of Paul Weiss, Young Conaway, Jones Day, Quinn Emanuel ("Quinn"), and Kasowitz Benson has represented Angelo, Gordon & Co. in significant matters and each played roles of various sizes in the Tribune matter. Financial advisor Goldin Associates ("Goldin") also played a role in Tribune. In Enron, one of the previous matters in which the parties have worked together, Quinn won Angelo and its allies a $2.1 billion settlement in litigation relating to a Cayman special purpose vehicle, after Angelo and his allies succeeded in having Goldin Associates appointed as a special examiner.

Honorable Robert E. Gerber
March 19, 2014

[4] Kasowitz Benson defended News Corporation in race discrimination-retaliation cases in which Jesse Angelo was a key party. John Angelo's Angelo, Gordon & Co. had successfully defeated a discrimination-retaliation case in 2009 in which the plaintiff's alleged that Angelo Gordon "set out to destroy my ability to find subsequent employment." (*Nieves v Angelo Gordon*).

Court filings in *Guzman v News Corporation* (1:09-cv-09832-LG) and the related cases revealed that Black journalists claimed their termination from News Corporation's *New York Post* was in retaliation for their complaints against a controversial February 2009 cartoon. The cartoon depicted a monkey shot dead by two New York City policemen who then ask "They'll have to find someone else to write the next stimulus bill." The preceding page had a picture of President Barack Obama signing the stimulus bill. Court filings in that litigation contained many references to Jesse Angelo who then served as managing editor of the *New York Post*.

According to the affidavit of *Post* employee Shari Logan filed in the litigation, Jesse Angelo informed another editor of the arrest of my friend and Harvard's Alphonse Fletcher University Professor Henry Louis Gates for "breaking into his own home." According to the affidavit, the editor said "apparently, he is an angry, Black man" and in response to the arrest responded "nice!"

In an April 25, 2012 deposition, defended by Kasowitz Benson, Jesse Angelo was asked what additional "punishment" was given beyond a verbal "reprimand" after employee Steve Dunlevy referred to a black journalist to his face in front of other colleagues as a "token ni***r." Jesse Angelo was asked "was any other action ever taken against Mr. Dunlevy?" To which, which Jesse Angelo responded: "For what?" In response to the follow up "For this incident," Jesse Angelo said, "Not that I am aware of."

Also in that deposition, in response to questions about the "Stimulus" monkey cartoon, Jesse Angelo testified: "I approved the cartoon... I was aware of the historical fact that Blacks had been portrayed as chimpanzees..."

13

[5] Quinn Emanuel's outside counsel is Gregory P. Joseph. In early 2012, Dakota counsel Quinn Emanuel's outside counsel, Gregory P. Joseph, informed Fletcher counsel that he represented the Louisiana officials. Mr. Joseph proposed that the Fletcher Funds enter into an agreement through which Mr. Joseph would also represent the Fletcher Funds. The agreement would provide Mr. Joseph with authority to manage the litigation against United Community Banks with respect to the entire United Option. The agreement would also release Mr. Joseph from any liability for the outcome of that litigation and permit him to represent the Louisiana officials in any future litigation against the Fletcher Funds, Management, or their affiliates. Our counsel informed him that our first requirement was that any agreement must prohibit any collusion with the Dakota Parties as the Louisiana officials had previously agreed. Mr. Joseph did not pursue the representation after hearing our request. Mr. Joseph's firm then re-appeared on April 25 with a demand letter on behalf of the Louisiana officials relating to the shares of FILB Co-Investments, LLC. Then Mr. Joseph's firm appeared again on or about June 15, representing the Ernst & Young Joint Official Liquidators. He next appeared on June 27 representing FILB Co-Investments. Eventually on February 27, 2013, Mr. Joseph represented each of Leveraged, FILB Co-Investments, LLC, the three Louisiana pension funds, and the Ernst & Young Liquidators in settling the litigation with respect the portion of the United Option representing 18 million shares.

It may not be true that, as the Ernst & Young Liquidators attested, "The Arbitrage Foreign Proceeding pending under Cause No. 87 of 2012 in the Grand Court of the Cayman Islands, and the provisions made thereunder for the protection, administration and distribution of assets pursuant to the Liquidation Order, is a Foreign Proceeding pursuant to 11 U.S.C. § 101(23)." All significant activities, including the settlement of the most important asset held by those estates appears to have been directed from the U.S. under the orchestration of Quinn Emanuel's outside counsel in consultation with, among other U.S. parties, the FIA Leveraged Fund Liquidation Committee, composed entirely of U.S. persons operating from the U.S. According to the Ernst & Young Liquidators' most recent report, their payments to Quinn's Outside Counsel,

"Greg Joseph (US NY UCBI) 604,365 JOLs legal advisors in relation to FILCBI litigation/mediation" [sic]

and other US counsel have exceeded their payments to Cayman counsel. Evidencing the breadth of his responsibility, Mr. Joseph appears to have represented FIA Leveraged Fund, Fletcher Income Arbitrage Fund, FIAL SPV I, FILB Co-Investments, LLC, the three Louisiana pension funds, and the Ernst & Young Joint Official Liquidators. His broad role has been necessary because, as the Ernst & Young Liquidators' report states: "the JOLs have been faced with many complex multi-jurisdictional issues to consider and tackle. As such the JOLs have employed the services of a number of legal professionals in different jurisdiction and with different specialism's." [sic]


[6] APPLICATION FOR ORDER APPROVING APPOINTMENT OF CHAPTER 11 TRUSTEE (ECF No. 112)

[7] DECLARATION OF MICHAEL LUSKIN IN SUPPORT OF TRUSTEE'S APPLICATION FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF LUSKIN, STERN & EISLER LLP AS HIS COUNSEL NUNC PRO TUNC TO SEPTEMBER 25, 2012 (ECF No. 120)

[8] DECLARATION OF MARTI P. MURRAY IN SUPPORT OF THE TRUSTEE'S APPLICATION FOR AN ORDER PURSUANT TO BANKRUPTCY CODE SECTION 327(A) AND BANKRUPTCY RULE 2014 AUTHORIZING THE EMPLOYMENT AND RETENTION OF GOLDIN ASSOCIATES, LLC AS SPECIAL CONSULTANT TO THE TRUSTEE *NUNC PRO TUNC* TO OCTOBER 5, 2012 (ECF No. 124)

Honorable Robert E. Gerber
March 19, 2014

[9] Anthony Smith was one of the potential witnesses in *Fletcher v Dakota* who switched sides after being threatened by the Dakota Parties. Amended Complaint Paragraphs 104-108:

104. On May 19, 2010, Smith emailed Fletcher to say that he had learned of the "absurd, unfair and inexplicable" rejection of Fletcher's application through a call from the Dakota's managing agent. On May 21, Fletcher replied that he was preparing a response to the Board in an attempt to understand and resolve their concerns and offered to pay to the Estate the maintenance charges and other out-of-pocket expenses associated with Apartment 50 while discussions with the Board were on-going.

105. On May 24, 2010, counsel for the Estate negotiated with Fletcher's counsel to hold Apartment 50 off of the market in exchange for monthly payments by Fletcher. On information and belief, one or more of the Individual Defendants sought to coerce the Estate not to enter into any such agreement with Fletcher.

106. On June 2, 2010, the Board held a meeting at which it discussed a request by the Estate to apply for a bridge loan to pay the estate taxes on Apartment 50. Though Board approval is not required for this type of financing, the Board granted conditional approval to the Estate's request, The minutes indicate that approval was conditioned upon satisfaction of Barnes' "inquiries" on the Board's behalf. The nature of these "inquiries" is nowhere specified, 107. On June 14, 2010, Kiely, Fletcher's counsel, spoke with counsel to the Estate,

107. Elliott Meisel. Meisel conveyed that the Estate did not believe that the Board's decision regarding Fletcher's application would change. He also indicated that the Estate did not want to be seen as supporting a litigation against the Board for fear that the directors would exact revenge upon the Smiths. Still, he said that the Estate would give Fletcher time to resolve the dispute because Mrs. Smith had so clearly wanted Fletcher to purchase the apartment.

108. In June 2010, the Estate contacted John Burger of Brown Harris Stevens upon the recommendation of defendant Rydzewski, who is a friend of Mr, Burger, and subsequently made Mr. Burger the exclusive listing agent for Apartment 50.

[10]Application to Employ Weil, Gotshal & Manges LLP as Attorneys For The Debtors filed by Shai Waisman on behalf of Lehman Brothers Holdings Inc.. (Waisman, Shai) (Entered: 10/08/2008) (ECF No. 758) Filed 10/08/08 Entered 10/08/08 14:57:34 Main Document Pg 19 of 35

[11]*Heller v. Goldin Restructuring Fund, LP,* 590 F. Supp. 2d 603 (S.D.N.Y. 2008) District Court, S.D. New York (www.courtlistener.com)

[12] Goldin Associates website:  http://www.goldinassociates.com/?page_id=189

[13] *Pension and Investments,* "ForstmannLeff employees strike deal to buy out firm during Refco controversy," November 2005, Mark Bruno (www.ebscohost.com)

[14] *New York Times,* "Refco Appoints Chief," December 20, 2005, Bloomberg News, (www.nytimes.com)

[15] efinancialnews, **"Refco seeks to pay chief $685 per hour," January 9, 2006, Shanny Basar, Simon Gray** (www.efinancialnews.com)

[16] Goldin Associates website:  http://www.goldinassociates.com/?page_id=310

[17] *New York Times,* "Head of Optical Chain Steps Aside as President," January 21, 2001, Warren Strugatch, (www.nytimes.com)

[18] Emerging Vision, Inc., 10-Q, June 30, 2004, http://www.getfilings.com/o0001002554-04-000026.html

[19] Goldin Associates website:  http://www.goldinassociates.com/?page_id=241

[20] *ThnkAdvisor,* "Update: Enron Proposes a 30/70 Rule for Consolidation," August 11, 2003 (www.thinkadvisor.com)

[21] *AP News Archive,* "Creditors Pan Enron Reorganization Plan," November 20, 2003 (www.apnewsarchive.com)

15

[22] Quinn Emanuel Website:
http://www.quinnemanuel.com/mobile/attorneys/attorneys-detail.aspx?nodeID=2001

[23] *Barrons*, "What's Loral Worth?," May 7, 2005, Bill Alpert, (www.wsj.com)(www.siliconinvestor.com)

[24] IN RE TRIBUNE CO., 476 B.R. 843 (2012), In re TRIBUNE COMPANY, et al.,1 Debtors. No. 08-13141 (KJC).
United States Bankruptcy Court, D. Delaware. July 13, 2012.

[25] In re: Sand Spring Capital III, LLC, *et al.*, 11-13393(BLS), Debtors' Motion for Entry of an Order Authorizing the
Payment of Certain Fees and Expenses in Connection with the Replacement of Commonwealth Advisors, Inc. and
Sand Spring Management, LLC as Managing Member and/or Investment Advisor of the Debtors. (DCF No. 199)

[26] Applications to Employ Jones Day in *In re Tribune Company* 08-13141 (KJC), *In re AMR Corporation* 11-15463
(SHL), *In re Lehman Holdings Inc., et al.* 08-13555 (JMP)

[27] Kinetic Partners' website: www.kinetic-partners.com

[28] "Pension and Investments," "Kinetic goes 'zombie' hunting - The consulting firm just entered the business
of dismantling illiquid funds," July 23, 2012, Christine Williamson

[29] The Ernst & Young Liquidators refused to consider the Soundview funds' offer to pay more than twice that
amount to purchase the position. They also refused Soundview's request that they seek Cayman Court approval. In
his April 3, 2013 email to Cayman counsel for Soundview and Richcourt funds, Robert McMahon, one of the Ernst
& Young Liquidators, declared:
> As it is not necessary, we will not be pursuing court sanction in Cayman of the mediation settlement.
> Additionally, the settlement you refer to has been agreed to by all members of the liquidation committee of FIA
> Leveraged Fund (in Official Liquidation) who represent the majority of creditors of the fund. With regard to the
> settlement amount and settlement agreement, we have authorized the Trustee, Richard Davis to share this with
> the New York attorneys for Richcourt Holdings, Weil, Gotshal.

> *In re Soundview Elite, Ltd., et al*, Case No. 13-13098 (REG),SUPPLEMENTAL DIRECT TESTIMONY
> AFFIDAVIT OF ALPHONSE FLETCHER, JR. ON MOTION'S TO DISMISS CONVERT OR APPOINT A
> TRUSTEE, December 11, 2013

> Email from Robert McMahon to Cherry Bridges, April 3, 2013, "re - Richcourt Holding Inc."

[30] The Verified Petition in support of chapter 15 recognition for FIA Leveraged Fund does not state the current
ownership of the stakeholders even though it is required by Rule 1007(a)(4). Instead the Ernst & Young Liquidators
inserted a reference to 2012 ownership information:

> I certify that the equity ownership of FIA Leveraged Fund (in Liquidation) ("Leveraged") as reported in
> Leveraged's records is as follows: Leveraged - Estimated capital balances as at 13th April 2012 Provided
> by the Directors of Leveraged... Note 1 - Names redacted as it is an offence in the Cayman Islands to
> release investor names without an order of the Cayman Court pursuant to the Confidential Relationships
> Preservation Law

Similarly, none of the Ernst & Young Liquidators, their counsel, the Louisiana pension funds, their counsel, nor any
of the Soundview parties appear to have filed disclosure required by Bankruptcy Rule 2019. Rule 2019 requires "a
verified statement setting forth the information specified in subdivision (c) of this rule shall be filed by every group
or committee that consists of or represents, and every entity that represents, multiple creditors or equity security
holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates
or insiders of one another."

> Bankruptcy Rule 2019(b)(1); Represent" or "represents" means to take a position before the court or to
> solicit votes regarding the confirmation of a plan on behalf of another. [2019(a)(2)]; "Disclosable economic
> interest" means any claim, interest, pledge, lien, option, participation, derivative instrument, or any other
> right or derivative right granting the holder an economic interest that is affected by the value, acquisition,
> or disposition of a claim or interest. [Rule 2019(a)(1)].

16

Honorable Robert E. Gerber
March 19, 2014

[31] The Louisiana Officials had signed a confidentiality agreement on July 22, 2011 in which they agreed not to share Fletcher information with the Dakota, Quinn Emanuel, or any of their representatives. Paragraph 3:

> Except as otherwise provided in this letter agreement, the Confidential Information will not, without the prior written consent of FAM, be disclosed in whole or in part by the Pension Plans or any representative or affiliate of the Pension Plans, to any person, including without limitation, the Dakota co-op board, Quinn Emanuel Urquhart & Sullivan, LLP, or any other representative of record for the Dakota co-op board in the litigation titled Alphonse Fletcher Jr. and Fletcher Asset Management Inc. v. The Dakota Inc. et, al., filed in the Supreme Court of the State of New York, or to any director, officer, member, partner, associate, employee or any other affiliate or person related to such entities (each a "Dakota Party" and, collectively, the "Dakota Parties" ).

[32] *Stonegate Securities Ltd v Gregory:*
"The whole of the doctrine of this part of the law is based upon the view that winding up proceedings are not suitable proceedings in which to determine a genuine dispute about whether the company does or does not owe the sum in question"

*Mann v Goldstein:*
"It would be an abuse of process to ask for a winding up petition when a debt was bona fide under dispute."

*Tallington Lakes Ltd v South Kesteven District Council* Lord Justice:
'I have to emphasise, however… that it is well established that the threshold for establishing that a debt is disputed on substantial grounds in the context of a winding up petition is not a high one for restraining the presentation of the winding up petition, and may be reached even if, on an application for summary judgment, the defence could be regarded as "shadowy".'

[33] "Corruption and the FCO: Blue skies, white sands, dark clouds," SUNDAY 26 MAY 2013,
*The Independent,* PAUL PEACHEY .

[34] "Cayman Islands: The Met's Caribbean connection, "TUESDAY 01 MAY 2012
*The Independent,* PAUL PEACHEY
http://www.independent.co.uk/news/uk/crime/cayman-islands-the-mets-caribbean-connection-7697811.html

17

48 Wall Street, Fourth Floor
New York, NY 10005

March 25, 2014

**BY ELECTRONIC MAIL**

The Honorable Robert E. Gerber
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY 10004

RE:    **In re Fletcher International, Ltd., Case No. 12-12796 (REG) - Motion of Alphonse Fletcher, Jr. to Compel Compliance with Bankruptcy Code and Rules ("Motion")**

Dear Judge Gerber:

I am appearing *pro se* in these matters and write in response to Michael Luskin's letter to you today. I am scheduled to join the conference call on this matter you planned for tomorrow morning. The above Motion put the Court and the parties on notice of the relevant fiduciaries' undisclosed connections with prominent bankruptcy arbitrageur John Angelo,[1] Angelo, Gordon & Co. and others with interests adverse to these estates. Respectfully, this Court should grant the Motion prior to any further actions in these cases and deny Mr. Luskin's request for delay.

Fiduciaries' undisclosed connections to parties alleged to have threatened to "destroy"[2] the estates plausibly reduces their impartiality and "so important is the duty of disclosure that the failure to disclose relevant connections is an independent basis for [] disqualification."[3]

Mr. Luskin's misrepresented the Motion to this court writing "Neither the motion nor the letter makes clear precisely what relief Mr. Fletcher seeks, or from which particular people or firms he seeks it, or what the basis for the relief he seeks might be." In fact, the Motion and the included March 19, 2014 letter[4] list the issues,[5] the particular "Fiduciaries,"[6] the "Associated Cases,"[7] the relief sought, and its basis:

> *I respectfully submit that for the reasons described in my March 19, 2014 letter the Court should compel the chapter 11 Fiduciaries to comply with Bankruptcy Rule 2014 and Bankruptcy Code 326(a), compel the chapter 15 Fiduciaries to comply with Rule 15(b)(1), Rule 2019, Rule 1007(a)(4) and Local Rule 1007-3, and, compel Kasowitz Benson to comply with Rule 2019 and Rule 1.9 of the Rules of Professional Conduct. The Court should also stay each party's actions until it has complied and remove any Fiduciary that cannot comply.*

The Motion asks what Mr. Luskin and other fiduciaries in these cases have each sworn they have already done. Each must comply with Bankruptcy Rules and the Bankruptcy Code. Particularly, each chapter 11 fiduciary "must disclose all facts that bear on [its] disinterestedness and cannot usurp the court's function by choosing, *ipse dixit,* which connections impact disinterestedness and which do not."[8]

Respectfully and sincerely submitted,

*Alphonse Fletcher Jr.*

Alphonse Fletcher, Jr.
cc: see distribution

[1] John Angelo is the Treasurer and major shareholder of Dakota Inc., a defendant in *Alphonse Fletcher, Jr., and Fletcher Asset Management, Inc. v. The Dakota Inc. Bruce Barnes, Pamela Lovinger, Peter Nitze, John Rydzewski, and Anthony R. Smith and Gael Smith Arnold as co-executors of The Estate of Ruth Proskauer Smith (11-101289)* in New York Supreme Court. Claims against the Dakota defendants include breach of fiduciary duty, defamation, tortious interference, and race discrimination-retaliation. Each of Paul Weiss, Young Conaway, Jones Day, Quinn Emanuel ("Quinn"), and Kasowitz Benson has represented Angelo, Gordon & Co. in significant matters and each played roles of various sizes in the Tribune matter. Financial advisor Goldin Associates ("Goldin") also played a role in Tribune. In Enron, one of the previous matters in which the parties have worked together, Quinn won Angelo and its allies a $2.1 billion settlement in litigation relating to a Cayman special purpose vehicle, after Angelo and his allies succeeded in having Goldin Associates appointed as a special examiner.

In the Soundview chapter 11 proceedings, former Fletcher counsel Paul Weiss (in *Fletcher v Dakota*) represented Citco. Soundview investor Pasig Ltd. was represented by Kasowitz Benson which had replaced Paul Weiss as our Fletcher counsel until Kasowitz also withdrew. Kasowitz cleared conflicts, drafted the original complaint in *Fletcher v Dakota*, managed our case for more than six months, and was paid more than $1 million. Paul Weiss did not appear in court and selected another law firm to appear in its place. Paul Weiss explained that its managing partner would not allow the firm to appear in this case because John Angelo's Angelo, Gordon & Co. is an "important" client of Paul Weiss. Kasowitz did not disclose it representation of either Angelo, Gordon & Co. or John Angelo's son, Jesse Angelo whom Kasowitz represented along with News Corporation in race discrimination-retaliation cases relating to his publishing of the *New York Post* "Stimulus" monkey cartoon at and other actions.

[2] As described in the Amended Complaint:

"These more recent acts of defamation were consistent with Defendant Barnes' threat to Fletcher in June 2010 that if Fletcher went ahead and vindicated his rights by filing this lawsuit, the [Dakota] Board would do everything in its power to destroy Fletcher and his reputation in the business community." *Fletcher v Dakota*, Amended Complaint, Paragraph 7 [D]efendant Barnes specifically threatened that if Fletcher ultimately brought a lawsuit against the Dakota, "what the Dakota will say will cause [Fletcher] far more harm than any harm caused to the Dakota." Given defendants' recent conduct, and Barnes' recent machinations, defendants have at least tried to carry out this threat.... Defendant Barnes made similar statements regarding plaintiff at other points between May and September 2010. For example, on September 5, 2010, Barnes told another Dakota shareholder that the Dakota would, among other things, make public statements attacking Fletcher, his financial health, and his business if Fletcher brought a lawsuit. *Fletcher v Dakota*, Amended Complaint, Paragraph 113

[3] In re Leslie Faye,175 B.R. at 533

[4] March 19 Letter from Alphonse Fletcher, Jr. to Honorable Robert E. Gerber, (Corrected March 21, 2014)

[5] The March 19 Letter states:

To summarize the issues, each of the Fletcher Fiduciaries and the Soundview Fiduciaries (together "Fiduciaries") represented to the Court that it had "disclose[d] all facts" and connections that "would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." The disclosed and undisclosed connections described below, however, including connections to parties related to the defendants in *Fletcher v Dakota*, a race discrimination-retaliation case I filed in 2011, reveal "divided loyalties and affected judgments." Fiduciaries with connections to such parties could have interests "consistent with Defendant Barnes' threat to Fletcher in June 2010 that if Fletcher went ahead and vindicated his rights by filing this lawsuit, the [Dakota] Board would do everything in its power to destroy Fletcher and his reputation in the business community." [see footnote 2]

[6] In addition to identifying my former counsel, Kasowitz, and the chapter 15 fiduciaries, the "Ernst & Young Liquidators" (including Robert McMahon), the specific chapter 11 fiduciaries for Fletcher and Soundview were also named:
- Fletcher International, Ltd. Trustee Richard J. Davis
- Fletcher International, Ltd. Trustee's counsel, Luskin, Stern & Eisler LLP ("Luskin")
- Fletcher International, Ltd. Trustee's Financial Advisor Goldin Associates LLC ("Goldin")
- Soundview Trustee Corinne Ball
- Jones Day, Soundview Trustee's Counsel
- Soundview Financial Advisor, Geoffrey Varga of Kinetic Partners.

[7] The "Associated Cases" are listed in Footnote 1 of the Motion as "*In re Fletcher International, Ltd. (12-12796), In re Soundview Elite, Ltd. et al. (13-13098-reg), In re Fletcher Income Arbitrage Fund (in official liquidation) (14-10093-reg), and In re FIA Leveraged Fund (in official liquidation)*."

[8] See Source Enters., 2008 WL 850229, at paragraph 8

**Distribution:**

Mario Aieta on behalf of Defendant FIA Leveraged Fund
maieta@ssbb.com, managingclerk@ssbb.com

Timothy T. Brock on behalf of Defendant FIA Leveraged
Fund
tbrock@ssbb.com,
tlewis@ssbb.com;asnow@ssbb.com;managingclerk@ssbb.co
m;cgrace@ssbb.com

Timothy T. Brock on behalf of Foreign Representative FIA
Leveraged Fund (In Liquidation)
tbrock@ssbb.com,
tlewis@ssbb.com;asnow@ssbb.com;managingclerk@ssbb.co
m;cgrace@ssbb.com

Kelly D. Curtin on behalf of Debtor Soundview Elite Ltd.
kdcurtin@pbnlaw.com,
mdlaskowski@pbnlaw.com;mpdermatis@pbnlaw.com;rasega
ll@pbnlaw.com;sakelly@pbnlaw.com

David W. Dykhouse on behalf of Interested Party Patterson
Belknap Webb & Tyler LLP
dwdykhouse@pbwt.com, mcobankruptcy@pbwt.com

Amy Edgy Ferber on behalf of Trustee Corinne Ball
aeferber@jonesday.com, bstone@jonesday.com

Elisabetta Gasparini on behalf of U.S. Trustee United States
Trustee
Elisabetta.G.Gasparini@usdoj.gov

Daniel F.X. Geoghan on behalf of Attorney Young Conaway
Stargatt & Taylor, LLP
DGeoghan@coleschotz.com

Jeffrey R. Gleit on behalf of Creditor Pasig Ltd.
jgleit@kasowitz.com,
courtnotices@kasowitz.com,JBalduzzi@kasowitz.com

Andrew K. Glenn on behalf of Creditor Pasig Ltd.
aglenn@kasowitz.com, courtnotices@kasowitz.com

David R. Hurst on behalf of Debtor Fletcher International,
Ltd.
dhurst@coleschotz.com,
pratkowiak@coleschotz.com;kkarstetter@coleschotz.com

Neal R. Jacobson on behalf of Interested Party Securities And
Exchange Commission
jacobsonn@sec.gov

Richard I. Janvey on behalf of Unknown The Firefighters
Retirement System,
rjanvey@diamondmccarthy.com,
nsullivan@diamondmccarthy.com

Justin Klein on behalf of Defendant FIA Leveraged Fund
jklein@ssbb.com, managingclerk@ssbb.com

David R. Lurie on behalf of Defendant FIA Leveraged Fund-
In Official Liquidation
dlurie@ssbb.com, managingclerk@ssbb.com

Warren J. Martin, Jr. on behalf of Attorney Porzio, Bromberg
& Newman, P.C.
wjmartin@pbnlaw.com,
sakelly@pbnlaw.com;mdlaskowski@pbnlaw.com;mpdermati
s@pbnlaw.com

Michael J. Merchant on behalf of Interested Party
Wilmington Trust, National Association
merchant@rlf.com, rbgroup@rlf.com

John J. Monaghan on behalf of Defendant Fletcher Fixed
Income Alpha Fund, Ltd-In Official Liquidation
bos-bankruptcy@hklaw.com

Michael J. Naporano on behalf of Debtor Soundview Elite
Ltd.
mjnaporano@pbnlaw.com, mpdermatis@pbnlaw.com

Barbra R. Parlin on behalf of Defendant Fletcher Fixed
Income Alpha Fund, Ltd-In Official Liquidation
barbra.parlin@hklaw.com

John A Pintarelli on behalf of Unknown Peter Anderson and
Matthew Wright, as Joint Official Liquidators of Soundview
Elite Limited, Soundview Premium and Soundview Star
Limited
jpintarelli@mofo.com, ECF@mofo.com

Mark J. Politan on behalf of Creditor Affiliated Debtors-In-
Possession, Soundview Elite Ltd., et al, In Cases Pending
Before This Court and Jointly Administered Under Case No.
13-13098
mjpolitan@pbnlaw.com,
mpdermatis@pbnlaw.com;mdlaskowski@pbnlaw.com;tjfreed
man@pbnlaw.com

Michael P. Pompeo on behalf of Interested Party
EisnerAmper LLP
mpompeo@dbr.com

Veerle Roovers on behalf of Trustee Corinne Ball
vroovers@jonesday.com, bstone@jonesday.com

Justin M. Sher on behalf of Interested Party Fletcher Asset
Managment, Inc.
jsher@shertremonte.com, mcuccaro@shertremonte.com

Glenn E. Siegel on behalf of Other Prof. Conway MacKenzie
Management Services, LLC
Glenn.Siegel@morganlewis.com

Daniel H. Tabak on behalf of Defendant FIA Leveraged
Fund-In Official Liquidation
dtabak@cohengresser.com

Andrew G. Horne on behalf of Respondent Kirkland & Ellis
LLP
ahorne@kirkland.com

Corinne Ball
Jones Day LLP
222 East 41st Street
New York, NY 10017-6702
cball@jonesday.com

CohnReznick LLP
333 Thornall Street
Attn: Bernard A. Katz
Edison, NJ 08837
Bernie Katz <Bernie.Katz@CohnReznick.com>
Howard Konicov <hkonicov@jhcohn.com>

Alphonse Fletcher, Jr.
Afletcher@fletcher.com

George E. Ladner
Gladner@fletcher.com


Gary S. Lee on behalf of Unknown Peter Anderson and
Matthew Wright, as Joint Official Liquidators of Soundview
Elite Limited, Soundview Premium and Soundview Star
Limited
Morrison & Foerster LLP
1290 Avenue of the Americas
40th Floor
New York, NY 10022
glee@mofo.com, jpintarelli@mofo.com

Richard C. Morrissey on behalf of U.S. Trustee United States
Trustee
Office of the U.S. Trustee
33 Whitehall Street, 21st Fl.
New York, NY 10004
richard.morrissey@usdoj.gov

Karen Ostad on behalf of Unknown America Alternative
Investments Inc
Ostad PLLC
185 Great Neck Road
Suite 330
Great Neck, NY 11021
kostad@ostadllc.com

Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Richard J. Davis
415 Madison Ave.
New York, NY 10017
davis Richard <Richard.Davis@rjdavislaw.com>


Gary S. Lee on behalf of Unknown Peter Anderson and
Matthew Wright, as Joint Official Liquidators of Soundview
Elite Limited, Soundview Premium and Soundview Star
Limited
Morrison & Foerster LLP
1290 Avenue of the Americas

40th Floor
New York, NY 10022
glee@mofo.com, jpintarelli@mofo.com

Stephan E. Hornung on behalf of Plaintiff Richard J. Davis
Luskin, Stern & Eisler LLP
Eleven Times Square
New York, NY 10036
Michael Luskin on behalf of Attorney Luskin, Stern & Eisler
LLP
Luskin, Stern & Eisler LLP
Eleven Times Square
New York, NY 10036
Michael Luskin on behalf of Plaintiff Richard J. Davis
Luskin, Stern & Eisler LLP
Eleven Times Square
New York, NY 10036
Stephan Hornung <hornung@lsellp.com>

Richard C. Morrissey on behalf of U.S. Trustee United States
Trustee
Office of the U.S. Trustee
33 Whitehall Street, 21st Fl.
New York, NY 10004
richard.morrissey@usdoj.gov

Karen Ostad on behalf of Unknown America Alternative
Investments Inc
Ostad PLLC
185 Great Neck Road
Suite 330
Great Neck, NY 11021
kostad@ostadllc.com

Skadden, Arps, Slate, Meagher & Flom LLP
Spiegel, Lawrence S <Lawrence.Spiegel@skadden.com>
Turner Julie A <Julie.Turner@skadden.com>

Stewart Turner
Sturner@Fletcher.com

WeiserMazars, LLP
135 West 50th Street
New York, NY 10020

Abigail Snow on behalf of Foreign Representative FIA
Leveraged Fund (In Liquidation)
asnow@ssbb.com

Daniel N. Zinman on behalf of 3rd Party Plaintiff Kasowitz
Benson Torres & Friedman LLP
dzinman@kasowitz.com, courtnotices@kasowitz.com

gerber.chambers@nysb.uscourts.gov

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

| Fiduciary | Connection | Relationship | Additional Information | Adverse Interest | Failed to Disclose |
|---|---|---|---|---|---|
| Richard J. Davis / Weil Gotshal | Sotheby's | Davis/Weil Client | Lends to Dakota officer Angelo is director, James Murdoch is former director | X | X |
| | Quinn Emanuel | Close Working Relationship with Weil | Dakota counsel (Campbells, Gregory P. Joseph, Michael Crystal QC of counsel) | X | X |
| | Anthony Smith | Citizens Union Leadership | Named-defendant in *Fletcher v Dakota* | X | X |
| | News Corporation | Davis/Weil Client | Defamation Defense, Angelo control | X | X |
| | Ernst & Young | Weil Client | Liquidators of Leveraged and Arbitrage | X | X |
| | Silver Point / Silver Oak | Weil Client | Angelo Partner, Citco sponsor | X | X |
| | Seaport Group | Weil Client | | | X |
| | JPMorgan Chase | Weil Client | Angelo Partner, United Community Bank sponsor | X | X |
| | D.E. Shaw | Weil Client | Bought Ion preferred from Credit Suisse | X | X |
| | HSBC | Weil Client | Lender to Angelo and Dakota | X | X |
| | Milbank Tweed | Potential Weil Client | Credit Suisse counsel | X | X |
| | Blackrock | Weil Client | Mallow, GC, is Dakota shareholder | X | X |
| | Morgan Stanley | Weil Client | Porat, CFO, is Dakota shareholder | X | X |
| | Wilmington Trust | Weil Client | | X | X |
| | Morrison Foerster | Close Working Relationship with Weil | | X | X |

April 1, 2014 Draft

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

| Fiduciary | Connection | Relationship | Additional Information | Adverse Interest | Failed to Disclose | Inadequate Disclosure |
|---|---|---|---|---|---|---|
| **Luskin Stern** | Ernst & Young | Current LS Client | E&Y Liquidators in Nortel With E&Y in Kodak | X | | X |
| | Young Conaway | LS Working Relationship | e.g. Nortel, Kodak, Pappas | | X | |
| | Brown Rudnick | Ampal-American Trustee | 4-9-2013 Luskin Trustee 4-29-2013 Noisy Withdrawal 5-1-2013 Luskin recommends BR-supported liquidation plan | | X | |
| | Nixon Peabody | Kodak Fee Examiner | 11-15-2012 NP resigns from Fletcher representation 11-30-2012 Motion for NP Special Comp | | X | |
| **Goldin Associates** | Angelo Gordon (related committees) | Goldin Client | Dakota treasurer and major shareholder, Dakota control | X | X | |
| | Quinn Emanuel | Counsel to Goldin | QE defended Goldin in fraud lawsuit | X | X | |
| | Balfour | Goldin Client | Dakota president | X | X | |
| | Ernst & Young | Worked with Goldin | Liquidators of Leveraged and Arbitrage | X | | X |
| | JPMorgan Chase | Current Goldin Client | Angelo partner, United Community Bank sponsor | X | | |
| | Credit Suisse | Goldin Client | Angelo partner, lender to Dakota fund | X | | X |
| | Holland & Knight | Goldin Client | MBTA Retirement Fund counsel | X | | |
| | HSBC | Current Goldin Client | Lender to Angelo and Dakota | X | | |
| | Kasowitz Benson | Goldin Client | | X | | |

April 1, 2014 Draft

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

| Fiduciary | Connection | Relationship | Additional Information | Adverse Interest | Failed to Disclose | Inadequate Disclosure |
|---|---|---|---|---|---|---|
| Jones Day and Corinne Ball | Angelo Gordon (and related committees) | Jones Day Client | | X | X | |
| | Ernst & Young | Jones Day Client, also hired by Jones Day | See Detroit bankruptcy and multiple other involvements | X | X | |
| | JPMorgan Chase | Current JD Client | Angelo Partner, United Community Bank sponsor | X | X | |
| | Credit Suisse | Current JD Client | Credit Suisse counsel | X | | |
| | Silver Point Capital | Jones Day Client | Angelo Partner, Citco sponsor | X | X | |
| | News Corporation | Jones Day Client | Discrimination Defense, Angelo control | X | X | |
| | Wilmington Trust | Ball/Jones Day Client | | X | | |
| | Promethean Investment Group | Jones Day Client | See Fletcher Capital Markets v Promethean Investment Group | X | X | |
| | Zolfo Cooper | Current JD Client | "Liquidators of Cayman Islands fund secure $22.5 million of assets May 2013 - Jones Day is advising the liquidators of Hadar Fund Ltd." | X | | X |
| | Morgan Stanley | Jones Day Client | Porat, CFO, is Dakota shareholder | X | X | |
| | Blackrock | Weil Client | Mallow, GC, is Dakota shareholder | X | X | |
| | D.E. Shaw | Jones Day Client | Bought Ion preferred from Credit Suisse | X | X | |
| | Citco | Current JD Client | Cayman petitioner | X | | X |

April 1, 2014 Draft

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

| Fiduciary | Connection | Relationship | Additional Information | Adverse Interest | Failed to Disclose | Inadequate Disclosure |
|---|---|---|---|---|---|---|
| Kinetic Partners | Municipal Employees' Retirement System | Replacement Fund Manager in DE Ch 11 | *In re Sands et al* | X | | X |
| | Firefighters' Retirement System | Replacement Fund Manager in DE Ch 11 | *In re Sands et al* | X | | X |
| | Young Conaway DE | Replacement Fund Manager in DE Ch 11 | *In re Sands et al* | | | X |
| | Young Conaway NY (In Re Fletcher Int'l) | Unofficial Advisor to YC | Frequently mentioned by then YC partner David Hurst, recommended to directors and court despite conflicts | | X | |
| | Quinn Emanuel | Worked with QE Internal Counsel | Worked with QE Internal Counsel in Cayman wind up and chapter 15 proceedings (Same partner represents the Dakota since 2010) | X | X | |
| | Credit Suisse | unknown | Credit Suisse counsel | X | | X |
| | HSBC | unknown | Lender to Angelo and Dakota | X | | X |
| | Citco | unknown | Cayman petitioner | X | | X |
| | Walkers | Replacement Fund Manager in DE Ch 11 | | | | X |
| | Wilmington Trust | unknown | | X | | X |

April 1, 2014 Draft

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

| Fiduciary | Connection | Relationship | Additional Information | Adverse Interest | Failed to Disclose | Inadequate Disclosure |
|---|---|---|---|---|---|---|
| Young Conaway | Angelo Gordon | Young Conaway Client | *In re Tribune* | X | X | |
| | Municipal Employees' Retirement System | Debtors' Counsel in DE Ch 11 | *In re Sands et al* | X | X | |
| | Firefighters' Retirement System | Debtors' Counsel in DE Ch 11 | *In re Sands et al* | X | X | |
| | Kinetic | Debtors' Counsel in DE Ch 11/advice in re Fletcher Int'l | *In re Sands et al* | X | X | |
| | Walkers | Debtors' Counsel in DE Ch 11 | *In re Sands et al* | | X | |

Page 5

April 1, 2014 Draft

Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases
In the Format Requested by Honorable Robert E. Gerber

# Connections and Adverse Interests - *In re Fletcher International, Ltd.* and Associated Cases



*In re Fletcher International, Ltd.*
**Fiduciaries:  Richard J. Davis, Luskin Stern, Goldin Associates, Young Conaway**
(Mr. Davis was a senior partner at Weil partner fewer than 9 months prior to his appointment as chapter 11 trustee.)

| Connections: Ernst & Young, Louisiana Officials | Connections:  John **Angelo**, Quinn Emanuel, Anthony Smith, Jay Goldsmith, Mallow/ Blackstone, etc. | Young Conaway/Goldin clients:  **Angelo Gordon, JPMorgan,** and Credit Suisse; Goldin client: **HSBC** | Richard J. Davis Client: **Sotheby's** ("Price Fixing"), current Weil client | Weil client: **Silver Point** | Richard J. Davis Client: **News Corporation** (defamation, NYPost.com dispute), current client of Weil |

**John Angelo and son Jesse Angelo - Angelo, Gordon & Co.**

| **Dakota, Inc.** HSBC - Dakota Mortgage | **JPMorgan Chase / Credit Suisse** | **Sotheby's** | **Silver Point** Citco's financial sponsor | **News Corporation** |
|---|---|---|---|---|
| Pres: Jay Goldsmith-Balfour Treas: John Angelo - AG  VP: Matt Mallow-Blackstone  *Counsel* to Dakota, Angelo Gordon and Blackstone:  **Quinn Emanuel** | Agents for Angelo Gordon and its Partners in Tribune  *Counsel* to Angelo, Gordon, JPMorgan, Credit Suisse:  **Young Conaway, Paul Weiss, Weil Gotshal Jones Day** | John Angelo is a Director, Nominated James Murdoch  *Counsel* to Sotheby's:  **Paul Weiss Weil Gotshal** | Angelo Gordon Partner in Silver Oak Capital  *Counsel* to Silver Point and Silver Oak:  **Weil Gotshal, Paul Weiss** | Jesse Angelo, "Attributable Interest," *NY Post* Publisher  *Counsel* to News Corp and Angelo, Gordon:  **Paul Weiss, Kasowitz Benson** |

| **Quinn Emanuel's** Outside Counsel: **Gregory P. Joseph** Co-Counsel:  **Ross McDonough** Co-Counsel:  **Walkers**  Louisiana Officials, Ernst & Young  **FIA Leveraged, Arbitrage** | **Jones Day, Kinetic** (connected with LA Officials, Quinn Emanuel and Dakota)  Corinne Ball of Jones Day | **Weil Gotshal, Walkers**  Midanek (Richcourt) | **Paul Weiss, Morrison Foerster**  Citco/JOLs (Soundview) | **Kasowitz Benson**  Pasig, Ltd. (Soundview) |

**Richcourt / Soundview Funds**

April 1, 2014 Draft

## Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases
## In the Format Requested by Honorable Robert E. Gerber

### *Fletcher v Dakota*

These associated cases *In re Fletcher International, Ltd., In re FIA Leveraged Fund, In re Fletcher Income Arbitrage Fund, Ltd.,* and *In re Soundview Elite, Ltd. et al,* and a dozen other proceedings in five countries and nine states arise out a dispute with certain officers of the board of directors of New York's Dakota Inc. cooperative apartment building ("Dakota"). That lawsuit was brought in an effort to stop the attacks[1] on my family and our businesses, Fletcher Asset Management, Inc. and its affiliates including private investment funds (together, "Fletcher"). The complaint described our businesses:[2]

> FAM is a successful investment management firm. Founded by Fletcher in 1991, FAM serves in an advisory capacity with respect to a series of funds that include outside investors. Since 1991, FAM has completed more than 50 transactions that have provided additional capital to companies through the purchase of newly issued securities. The investments have helped these companies create and preserve tens of thousands of quality jobs from upstate New York to Southern California in industries including affordable and energy-efficient housing, alternative energy, education services, and environmental services. FAM is currently focused on providing additional capital and other support to community banks aimed at helping to reinvigorate the economy and generate attractive returns.

Officers of the Dakota ("Dakota Officers") and parties aiding them (together with the Dakota Officers, "Dakota Parties") followed through on threats[3] made by former Dakota presidents John Rydzewski and Bruce Barnes. As payback[4] for my opposition to their practices which I claimed were discriminatory, Rydzewski and Barnes threatened to destroy Fletcher, which was then prospering.[5]  On July 3, 2012, the New York Supreme Court Appellate Division denied the Dakota's motion to dismiss our case stating: "knowingly and maliciously spreading false statements and rumors to third parties, including the media, concerning Fletcher's financial condition," states a claim for illegal retaliation, breach of fiduciary duty, and defamation.[6]   Paul Weiss was the original law firm that drafted the complaint and managed the litigation for Fletcher during the first six months.  Paul Weiss's managing partner though refused to permit the firm's attorneys appear in court on our case or sign the filings its drafted. Instead, a smaller firm would "appear" in the case because John Angelo's firm Angelo Gordon is an "important client" Paul Weiss.

April 1, 2014 Draft

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases
In the Format Requested by Honorable Robert E. Gerber**

## JPMorgan Chase

In April 2010 after I submitted my application to the Dakota board, Dakota Officers incorrectly asserted that my long-term "business loans,"[7] which secured with real estate, had call provisions like the callable securities financing used by Fletcher International, Ltd.[8] In April 2010, JPMorgan Chase[9] ("JPMorgan") suddenly canceled its financing of Fletcher International, Ltd., which was callable by JPMorgan unlike its business loans to me, and took a series of other adverse actions including hindering Fletcher's liquidation of a product structured with JPMorgan Chase affiliate Corsair (Jersey) Limited,[10] causing other banks[11] to terminate their financing of Fletcher according to people involved, conducting unauthorized credit and other information searches on Fletcher, refusing to explain the searches when asked by Fletcher, restricting substantial amounts of cash in Fletcher-related accounts without valid justification, and interfering in Fletcher investments including its investment in Georgia-based United Community Banks, Inc. ("United").

On April 1, 2010, United announced a strategic investment from Fletcher International, Ltd. and received an enthusiastic response from industry analysts.[12] "Community banks are the engines that power local economies, which, in turn, provide jobs, homes, and security to people around the country," said Denis J. Kiely, Director of Fletcher Asset Management, Inc. "With these concurrent investments, we hope to free capital on United's balance sheet to allow it to continue and expand its investments in its communities and fulfillment of its mission."[13] A few months later, Credit Suisse, a partner, lender, and agent of Angelo Gordon, helped launch a fund hoping to free capital on banks' balance sheets managed by Christofferson Robb, a hedge fund run by former Dakota presidents John Rydzewski and Richard Robb which John Angelo claimed to bail out during the economic crisis. The new "CRC Capital Release Fund" would "effectively buy a small amount of exposure to the riskiest" assets of banks.[14]

On April 22, 2011, Reuters reported that "With the stabilization of credit issues, the company is now focusing its attention to acquire failed banks through FDIC-assisted transactions. 'We are absolutely interested in FDIC transactions within our footprints that has real customers and real franchise that would add to our franchise,' the CEO said."[15] A few months later, on June 9, 2010, Angelo, Gordon & Co., with former JPMorgan Chase executives,[16] announced its intention to make a strategic investment in Georgia banks followed by "FDIC-assisted transactions."[17] Also, in June, 2010, Wachtell Lipton, counsel to JPMorgan Chase and Angelo, Gordon & Co., insisted that Fletcher International, Ltd. acquiesce to United's unilateral amendments to its investment agreement well after United, its counsel, Kilpatrick Townsend, Fletcher Asset Management, Inc., and its counsel Skadden Arps, had executed, funded, and announced the transaction.

April 1, 2014 Draft

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

From time to time, often with assistance from Wachtell,[18] United would modify or violate those agreements. United replaced the Fletcher International, Ltd. transaction with a similar but larger non-performing asset purchase and equity investment from JPMorgan Chase affiliate Corsair Capital LLC and its co-investors. JPMorgan Chase affiliate JPMorgan Securities advised United on the investment[19] and a former JPMorgan Chase executive joined United's board.[20] On March 16, 2011, United's CEO declared: "Corsair is an ideal partner for United, with its experience and track record as a thoughtful and positive strategic investor focused entirely on the financial services sector" and "This capital plan is the result of many months of internal analysis and discussion..."[21] Corsair executives reportedly met with United's management weeks after Wachtell began assisting United.[22] While United had previously trumpeted its Fletcher deal, a "Top Deal of 2010,"[23] United began using the Dakota's false allegations as excuses for breaching its contracts with Fletcher,[24] disparaging Fletcher in its public filings,[25] and making further unilateral amendments to its Fletcher agreements. After the Louisiana Officials, which had been redeemed with a distribution of the United Option securities, joined with the Dakota Parties to seize control of FIA Leveraged Fund through a Cayman Wind Up proceeding in which they were represented by the judge's personal counsel,[26] The *Wall Street Journal* reporters summarized the Cayman ruling's description of the changes to United Option:[27]

> "In a written decision released this past week, the Cayman Islands judge ... rejected the valuation set by Fletcher. It said that the bank had reset the conversion price after the bank brought in more investors and implemented a reverse stock split last year, making the rights far less valuable than Fletcher asserted."

Corsair and its co-investors remain United's largest shareholders. In early 2013, immediately after the Fletcher Trustee convinced his estate's parent company, Fletcher International, Inc., to return an earlier distribution that included a portion of the United Option so that the parties could pursue the United litigation jointly,[28] United suddenly announced a settlement.

The settlement agreement was among United, the Ernst & Young Liquidators, and the Louisiana Official, but not the other similarly situated stakeholders in the funds controlled by the Ernst & Young Liquidators. Reportedly, United paid $2.5 million to resolve the dispute over that portion of the United Option, which represented approximately 18 million common shares. The Ernst & Young Liquidators refused to permit the Soundview Elite, Ltd. and its affiliates to pay more than twice the settlement amount to acquire the United rights. The Ernst & Young Liquidators refused to seek approval of the Cayman court claiming it was unnecessary.

To facilitate the settlement, the Fletcher International, Ltd. chapter 11 trustee, for no material consideration, granted a "Release and Waiver" to United which was considerably broader than the Trustee and his counsel represented to the court in his motion seeking approval.[29] When the Fletcher Funds and Soundview Funds warned the Fletcher Trustee that he was conveying substantial value from

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

his estate, his counsel Michael Luskin of Luskin Stern, which represented Ernst & Young Liquidators in other proceedings,[30] claimed simply "I have my reasons."[31]  On March 4, 2014, the Fletcher Trustee filed a motion proposing a settlement of his estate's portion of the United Option, which represented approximately 7 million common shares, in return for cash and stock from United valued at $12 million[32] and again made false representations to the court.  The Fletcher Trustee had recently reported the estate's United Option's value at "approximately $71 million."[33]

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

## Timeline of Cooperation between US and Cayman Proceedings

Connected fiduciaries and parties-in-interest cooperating between US and Cayman insolvency proceedings have removed substantial value from the estates with settlement that are not "arms-length," disregarding claims against connected parties, and allowing exaggerated claims made by connected parties.

1. On August 2011, the Louisiana Officials asked me, "How is this law firm and why are they...." with regard to why Dakota Party Quinn Emanuel was contacting them.

2. In or about December 2011, in an effort to pressure a modification to the agreements governing their redemption, the Louisiana Officials threatened to "just throw it into bankruptcy," an improper use of bankruptcy process due to the existence of "a *bona fide* dispute as to liability or amount" and the filing would be intended to benefit only the Louisiana Officials not creditors as a group.[34]

3. In or about December 2011 or January 2012, the Louisiana Officials breach the July 22, 2011 confidentiality agreement in which they promised not share information with the Dakota Parties and the Dakota Parties, including Quinn Emanuel outside counsel Gregory P. Joseph and Cayman law firm, Campbells, began representing the Louisiana Officials.[35]

4. In February 2012, after having been properly redeemed by the Fletcher fund, the Funds' Adversaries deployed the tactical maneuver of a bad faith winding up petition in the Grand Court of the Cayman Islands, the equivalent to an involuntary bankruptcy petition, even though "It would be an abuse of process to ask for a winding up petition when a debt was bona fide under dispute."[36]

5. The Funds' Adversaries, advised by the Dakota Parties, filed sworn affidavits which contradicted documentary evidence[37] and their multiple prior public statements[38] and which, against self interest, publicly denigrated the key asset on which the value of their investment ultimately depended, the United Community Banks, Inc. option ("United Option").

6. In April 2012, the Funds' Adversaries petition was granted and the their request to appoint Ernst & Young as Joint Official Liquidators was also granted despite the fact that Ernst & Young had worked for the Louisiana Officials for the past nine months.

7. The Chief Justice in paragraph 100 of his April 18, 2012 opinion sided with the counsel for the Funds' Adversaries', Ross McDonough of Campbells, and against hundreds of Cayman Islands funds and their counsel that created special purpose vehicles to facilitate distributions of their funds' assets as redemptions in kind over the past several years:[39]

April 1, 2014 Draft

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

> 100. In support of the first ground of the Petition, Mr. McDonough advanced further arguments of a technical nature... that the distributions in specie were, in any event, non-complaint with the [Confidential Offering Memorandum] because they were required to be made from 'assets of the Fund...'

8. In paragraph 108 of his opinion, the Chief Justice appeared to rule that an option contract, regardless of the expert valuation entered in evidence, has no value prior to its exercise:

> 108. First, the distribution in specie of the FILBCI shares could have been of no real consequence... can lay no existing claim to a substantial proprietary interest in UCBI... is only the right to exercise the [United Community Banks, Inc.] Stock Option...

9. The Chief Justice presided over this hearing despite the fact that his personal counsel, Ross McDonough of Campbells, argued for the Louisiana Officials which would disqualify a judge[40] under U.S. legal system. Mr. McDonough has represented the Chief Justice for years in, among other things, a mystery involving anonymous letters to the editor of a Cayman Newspaper [41]that were critical of the Chief Justice and what *The Independent* terms "attempts to pervert the course of justice over a Watergate-style break-in at a newspaper office on the islands, according to documents seen by *The Independent on Sunday*."[42]

10. The significance of this dual representation cannot be determined with certainty because, other than Scotland Yard's determination that the currently secret complaint filed by the leader of a U.K. Metropolitan Police task force alleging unlawful conduct by officials in the Cayman judiciary and government has merit, little is else is known of the allegations against the Chief Justice and other government figures. The Foreign & Commonwealth Office[43] of the U.K. government refuses to release the complaint arguing:

> "disclosure could lead to a loss of confidence within the international community which could impact negatively on the Cayman Islands' reputation and, more directly, on its financial services industry"[44]

11. On Friday, February 8, 2013, the Fletcher Trustee and Fletcher International, Ltd.'s sole shareholder, Fletcher International, Inc., entered into a term sheet for the transfer of the approximately 3.5 million shares of the United Option then held by Fletcher International, Inc. back to Fletcher International, Ltd. The parties sought to work together with the Ernst & Young Liquidators to pursue jointly the maximum recovery on the United Option and the Fletcher Trustee explicitly agreed to provide the Debtor's parent with "notice" and "opportunity to comment" on

> "any (a) proposed disposition of all or part of the Assigned Assets and (b) any contemplated non-ordinary course transactions."[45]

April 1, 2014 Draft

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases
In the Format Requested by Honorable Robert E. Gerber**

12. On Monday, February 11, 2013, Fletcher Trustee counsel spoke with Dakota Party Gregory P. Joseph counsel and with United counsel re "UCBI" and filed the Motion to Approve Term Sheet Agreement Between the Trustee and Fletcher International, Inc. A few days later, the Appeals Court of the Cayman Islands which dismissed the appeal of the Grand Court wind up order six months earlier in August 2012 issued its written opinion, the lack of which had substantially delayed the appeal to the U.K. Privy Council.

13. On February 20, 2013 Bankruptcy court approved the Term Sheet and within 36 hours, United filed a Form 8-K[46] with the U.S. Securities and Exchange Commission and publicly announced a settlement with the Ernst & Young Liquidators including a release and waiver from the Fletcher International, Ltd. trustee in return for a $2.5 million cash payment to the Ernst & Young Liquidators.

14. The Ernst & Young Liquidators did not provide notice nor grant an opportunity to their stakeholders to comment on the terms of the settlement with United, refused to even entertain higher offers made by the Soundview funds, and refused a request from the Soundview funds to seek Cayman Court approval of the settlement declaring:[47]

> "As it is not necessary, we will not be pursuing court sanction in Cayman of the mediation settlement."

15. On February 27, 2013, in violation of its February 8, 2013 term sheet with Fletcher International, Inc., the Fletcher Trustee did not include the United settlement agreement in its motion to the Bankruptcy Court and refused to share it with Fletcher International, Inc. but nevertheless executed the release and waiver requested by United and the Ernst & Young Liquidators in which:

> "The FILB Chapter 11 Trustee hereby agrees that it shall take all steps necessary to secure the FILB Bankruptcy Court's approval of this Mutual Release and Waiver..."

16. On Friday, March 8, 2013, the Fletcher Trustee and Fletcher International, Inc. execute the Omnibus Agreement related to the Term Sheet and on Monday, March 11, 2013, the Fletcher Trustee counsel filed the Motion to Approve the Release and Waiver between the Debtor and United Community Banks, Inc.

17. A few days later, on March, 14, 2013, United proposed to affiliates of Fletcher International, Inc. to accept collateral in full satisfaction of their loans from United relating to their 2010 purchase of United's non-performing assets. On March 31, 2013, United seized the assets claiming a technical default. The borrowers were all fully current in their financial obligations under those loans.

April 1, 2014 Draft

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

18. On April 10, 2013, the Bankruptcy Court approved the United release. Weil Gotshal, then counsel to Soundview and Richcourt funds refuses to object to significant failures in the proposed release and waiver that provides the estate with no meaningful consideration and leaves it unable to properly pursue United for its wrongdoing, arguing on April 9, 2013:

> Buddy, I think the important point is that the Trustee and the counsel believes it does and we have no basis to point out a gaping hole in the document. We have pointed out your concerns and they believe there is nothing to worry about and they are not waiving any rights or causes of action unnecessarily. Michael (and Richard) despite what you think of them are both excellent lawyers.

19. On June 26, 2013, United announced the bulk sale of non-performing assets to Great Oak Pool I LLC during its second quarter at a $50 million discount:

> "The classified assets sold during the quarter included $131 million of performing classified loans, non-performing loans and foreclosed properties sold in a bulk sale for an aggregate purchase price of approximately $81 million (the " *Transaction* ")."

20. On September 23, 2013, Fletcher fund affiliate Soundview Elite, Ltd. and five of its affiliates ("Soundview Debtors") filed for protection under chapter 11 in the Southern District of New York Bankruptcy Court. Later that day, Chief Justice Smellie granted wind up petitions filed by Citco[48] though he was not the judge scheduled to hear the cases and the wind up proceeding was stayed by the chapter 11 filing. The Cayman Court of Appeals registrar then struck the the pending Privy Council appeal citing Campbells claim that the $200,000 "security for costs" held in Cayman since August had been received two business days too late.[49]

21. In the Soundview chapter 11 proceedings, former Fletcher counsel Paul Weiss in *Fletcher v Dakota* represented Citco.[50] Soundview investors Pasig Ltd. was represented by Kasowitz Benson which had replaced Paul Weiss as our Fletcher counsel until it too withdrew.

22. On November 25, 2013, the Fletcher Trustee released his "Trustee's Report and Disclosure Statement." The Court required the Fletcher trustee to add a disclaimer to the start of the document clarifying that it contained unsubstantiated opinion and allowed objectors to include a supplement which contradicting much of the Report.[51]

23. After a five day trial in December and January, Judge Gerber found "no fraud or incompetence" in the Soundview management. He also found that the liquidators repeatedly violated the "automatic stay" in U.S. Bankruptcy law. Nevertheless, he removed management with the appointment of a chapter 11 trustee and gave the liquidators shared control over the Soundview debtors. The Soundview directors have filed an appeal.

April 1, 2014 Draft

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

24. The Soundview trustee selected by the U.S. Trustee and approved by the Bankruptcy Court appears to have the same undisclosed connections as the previously fiduciaries have had in these associated cases. She appears to be pursuing a plan with the Fletcher Trustee.

25. The Fletcher Trustee's "Plan of Liquidation," in brief, proposes to award virtually all the estate to former indirect investors that have already been redeemed, the Ernst & Young Liquidators and certain but all of their stakeholders. The Plan awards none of this solvent estate to the true parties-in-interest including the sole shareholder. Finally, the Plan proposes to create a litigation trust to file frivolous suits against insiders and service providers.

---

[1] Verified Amended Complaint, Paragraph 169:
FAM has suffered injury in that defendants' false statements have damaged its reputation as a successful investment firm, and this reputational injury has had a further damaging effect on relationship with current and prospective investors, and on resulting profits.

[2] Verified Amended Complaint, Paragraph 14:

[3] Verified Amended Complaint, Paragraph 14:
Specifically, they spread lies throughout the media that FAM is not profitable, that it is highly leveraged, and that its capital is being depleted. These more recent acts of defamation were consistent with Defendant Barnes' threat to Fletcher in June 2010 that if Fletcher went ahead and vindicated his rights by filing this lawsuit, the Board would do everything in its power to destroy Fletcher and his reputation in the business community.

[4] Verified Amended Complaint, ¶ 2:
...this is a case about "pay back" — defendants' unlawful scheme to retaliate against Fletcher for having the temerity to stick up for the rights of others, including minority, Jewish, and female shareholders and applicants at the Dakota and then to further defame Fletcher and FAM when he had the courage to bring their discriminatory conduct to light.

[5] Verified Amended Complaint, Exhibit A, Preliminary Report of FTI Consulting, April 6, 2011, Page 13:
Between the years 2007 through 2010, the Fletcher Funds have disposed of 908 securities. These transactions have resulted in $1.2 billion in sales proceeds resulting in a net gain of $207 million for the funds.

[6] *Fletcher v Dakota, Supreme Court, Appellate Division, First Department, July 3, 2012, Acosta, J.*
*Fletcher v. The Dakota, Inc.*, 99 A.D.3d 43, 54-56 (1st Dep't 2012)

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases
In the Format Requested by Honorable Robert E. Gerber**

[7] Verified Amended Complaint, Exhibit A, Preliminary Report of FTI Consulting, April 6, 2011, Page 13 (emphasis added).
    We received and reviewed the following documents:... J.P.Morgan Chase loan documentation for *Mr. Fletcher's loans that are secured by real estate and finance his business*

[8] Verified Amended Complaint, Paragraph 69.
    Finally, they said that Fletcher's "business loans" had left him "over-extended and at risk." They incorrectly asserted that the FAM loans had call provisions and thus were not long-term capital.

[9] In their Tribune Company deals and others, JPMorgan Chase is a close business partner and agent of Angelo, Gordon & Co., a $25 billion bankruptcy arbitrage hedge fund founded and run by John M. Angelo, one of the Dakota's three largest shareholder-residents.

[10] At the time I refused to believe that these developments were anything other than strange coincidence but later I read about what seemed to be similar conduct by the bank.
- May 4, 2010 email that surfaced in the Tribune Company bankruptcy that described strong-arm tactics being used by JPMorgan Chase to force an investment group into agreeing with the deal that Angelo Gordon favored: "JPM is twisting his arm and has lot's of leverage on the fundraising front."
- American Lawyer Daily reported on July 7, 2008: "It hasn't been a summer to remember for Linklaters. First one of the firm's biggest clients, J.P. Morgan, dropped Linklaters from its preferred counsel list because of a suit it filed against Barclays."
- May 28, 2010 discrimination settlement: U.S. Department of Housing and Urban Development, Annual Report on Fair Housing Fiscal Year 2010:
    On December 10, 2009, an African-American couple filed a complaint with the Louisiana Public Protection Division, a HUD-certified FHAP agency, alleging that J.P. Morgan Chase Home Finance denied their loan application based on their race... The couple believes that the senior processor kept trying to find reasons to not approve the loan. The couple believes that they were treated in this manner and denied the loan because they were trying to purchase a property in predominately white area... On May 28, 2010, the parties entered into a conciliation agreement. Under the terms of the agreement, J.P. Morgan Chase will pay the couple $27,000.
    http://portal.hud.gov/hudportal/documents/huddoc?id=ANNUALREPORT2010.PDF

[11] Other banks including Angelo, Gordon & Co. allies HSBC and Credit Suisse, and Citco Bank backed by Angelo, Gordon & Co. partner Silverpoint Capital, closed or refused to open accounts for Fletcher International, Ltd and its affiliates. Some of the banks, without explanation or any involvement in any court proceeding, continue to refuse valid wire instructions from Fletcher-related entities to transfer their own cash.

April 1, 2014 Draft

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

[12] *Upstart Business Journal*, May 20, 2010, "Non-Toxic Solution," J. Scott Trubey (upstart.bizjournals.com)
"Few in the United States outside of banking circles or the North Georgia Mountains likely know of United Community Banks Inc. But the bank, based in tiny Blairsville, Georgia, might have found an innovative solution to soured real estate loans that other community banks will try to replicate... Banks face four primary challenges: capital adequacy, classified asset concentrations, recurring earnings, and liquidity. "This structure responds to all four challenges," said Olasov, the McKenna Long & Aldridge managing director. "This particular structure, this is very patient money. These are long-dated warrants."

Atlanta Journal Constitution, "Sells a piece of itself along with bad loans," April 1, 2010, Paul Donsky (www.ajc.com)
Experts said what makes the deal unusual – and potentially groundbreaking – is that Fletcher will invest in the bank by buying shares, in essence becoming a part owner. Analysts said the arrangement should provide the bank with capital to help it work though its remaining pool of troubled loans as well as be in a position to buy failed banks. Having Fletcher invest in the bank "is the wrinkle that makes [the deal] unique. It's frankly what we think needs to happen in the industry," said Chris Marinac, an analyst at FIG Partners in Atlanta. "Other banks will replicate this over time."

[13] United Community Banks, Inc., Press Release, April 1, 2010 (www.ucbi.com)

[14] *Financial Times*, "Fund to help banks meet Basel rules," October 27, 2010, Sam Jones (www.ft.com)
John Angelo had claimed on August 7, 2007 that he was bailing out Christofferson Robb due to the "liquidity crisis." Christofferson Robb's new fund was backed by Angelo, Gordon & Co. partner Credit Suisse, its co-investor in Philadelphia Media and Tribune Company.

[15] *Reuters*, "United Community see lower provision, shares," April 22, 2010 (www.reuters.com)

[16] *Dow Jones Private Equity & Venture Capital*, "Tailwind, Angelo Gordon Lead Investment In Hamilton State Bank,"June 9, 2010, Shasha Dai [requires subscription]

[17] *Bloomberg*, June 9, 2010, "Moelis, Angelo Gordon Seek to Buy Banks in Georgia, Texas" Daykin Campbell and Jonathan Keehner (www.bloomberg.com)

[18]See e.g. February 2011 emails from Skadden relaying Wachtell's threats of regulatory intervention if Fletcher objected.

[19] United Community Banks, Press Release, March 31, 2011

[20] United Community Banks, Inc., 2012 Proxy Statement

[21] Reuters, "United Community Banks, Inc. Announces $380 Million Capital Raise and Plans to Sell $435 Million of Classified Assets," March 16, 2011 (www.Reuters.com)

[22] *Wall Street Journal*, "Corsair Still Wandering Around The Bank 'Wasteland,'" March 17, 2011, By Shasha Dai

April 1, 2014 Draft

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

[23] *Atlanta Business Chronicle*, August 19, 2011, "Top Business Deals of 2011," (www.bizjournals.com/atlanta)
$168 million Firm: Kilpatrick Townsend & Stockton LLP Date (of transaction): April 2010 Description (of transaction): Represented United Community Banks Inc. (Nasdaq: UCBI), the third-largest bank holding company headquartered in Georgia, in its agreement to sale of up to $65 million of United's convertible preferred stock and $103 million of nonperforming assets at United's book value to Fletcher International. The transaction, the first of its type in the United States, included seller financing of 80 percent of the asset purchase, and the grant of a warrant to purchase $65 million of United's common stock to Fletcher.

[24] See for example, emails from Skadden Arps of February 2011.

[25] United Community Banks, Inc., Second Quarter 10-K Report to the U.S. Securities and Exchange Commission (www.sec.gov):
While recent news articles and other sources have questioned the financial health of Fletcher and its affiliates, the loans to the LCCs have performed according to their contractual terms since inception and there have been no delinquencies to date. As a result, even though these loans represent our largest loan relationship, we consider these loans performing and have not established specific reserves related to them. Should our assessment of this loan relationship change, we would then take appropriate action.

[26] The Louisiana Officials' wind up petition was argued by Campbells, co-counsel to Quinn Emanuel, and personal counsel to the Cayman Islands Chief Justice who presided over the wind up petition, granted the petitions despite the disputed debt, and granted the request to appoint Ernst & Young as liquidators despite Ernst & Young having worked for the the Louisiana officials for previous nine months.

[27] *Wall Street Journal*, "Funds Face Snags in Fletcher Case," Josh Barbanel and Steve Eder, April 29, 2012

[28] The "Omnibus Agreement" between Richard J. Davis, Fletcher International, Ltd. chapter 11 trustee, and Fletcher International, Inc. provided that "Assignee shall provide notice to Assignor, and provide Assignor with an opportunity to comment on the terms of, of any (a) proposed disposition of all or part of the Assigned Assets."

[29] Trustee's Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019(A) Approving the Release and Waiver Between the Trustee and United Community Banks, Inc. (ECF No. 67.)

[30] DECLARATION OF MICHAEL LUSKIN IN SUPPORT OF TRUSTEE'S APPLICATION FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF LUSKIN, STERN & EISLER LLP AS HIS COUNSEL NUNC PRO TUNC TO SEPTEMBER 25, 2012 (ECF No. 120)

[31] See e.g. April 2013 emails with Weil Gotshal, counsel to Fletcher funds affiliates Soundview funds.

[32] TRUSTEE'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019(A) APPROVING THE SETTLEMENT AGREEMENT BETWEEN FLETCHER INTERNATIONAL, LTD. AND UNITED COMMUNITY BANKS, INC. (ECF No. 439)

[33] Trustee's Report and Disclosure Statement, ECF 327, page 130.

April 1, 2014 Draft

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

[34] 11 USC § 303 - Involuntary cases

[35] Firefighters' Retirement System Board Meeting, January 12, 2012, "MOTION: Mayor Foster moved to ratify the hiring of Caymen Islands counsel, The Campbells law firm. Mayor Durbin seconded. The motion passed."

[36] *Mann v Goldstein* [1968] 1 WLR 1091

[37] For example, the March 20, 2012 "Second Affidavit of Steven Stockstill" submitted "*In the Matter of FIA Leveraged Fund*" FSD Cause No 0013 of 2012 falsely declared the FILB Co-Investment shares to be a "liability" not an "asset" and falsely declares that the United Option cannot be exercised unless Fletcher International, Ltd. has $65 million of cash on each option exercise closing date.

> I think that it is fair to describe the "asset" that has purportedly been distributed to the Petitioners as completely the opposite; namely, a liability. Fletcher International Ltd ("Fletcher International") has an obligation to UCBI to purchase the stock described above.
>
> Paragraph 7(d) of the Securities Purchase Agreement ("SPA") a copy of which is exhibited to Exhibit ST 1 contains a representation required to be made by Fletcher International that on each Closing Date (31 May 2011 or by 31 May 2012) it will have sufficient immediately available funds in cash to enable it to pay the Investment Amount (US$65 million) on such Closing Date... It appears clear from the letter from Walkers dated 16 March 2012 that Fletcher International could not have certified that it was in a position to fund the obligation under the SPA...

[38] On September 9, 2011, the Louisiana Officials released a joint public statement:
> The review was conducted with "a principal in the investigation and dispute services unit of Ernst & Young accounting firm...The assets and their valuations have now been corroborated."

[39] Later that year, on November 30, 201, Chief Justice Smellie said in a speech, FIA Leverage is another sentimental favourite of mine..." ADDRESS TO THE RECOVERY AND INSOLVENCY SPECIALISTS ASSOCIATION (CAYMAN) LIMITED (RISA) [THE LOCAL CHAPTER OF INSOL INTERNATIONAL], THE WESTIN HOTEL, GRAND CAYMAN, 30TH, NOVEMBER 2012

[40] 28 U.S. Code § 455(a), In re Cargill, 66 F.3d 1256 (1st Cir. 1995) (https://bulk.resource.org/courts.gov/fjc/recusal.pdf)
> The disqualification requirement of section 455(a) is triggered, despite the lack of any actual bias on the judge's part, if a reasonable person, knowing all the circumstances, would question the judge's impartiality. See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 861-62, 108 S.Ct. 2194, 2203-04, 100 L.Ed.2d 855 (1988). Most observers would agree that a judge should not hear a case argued by an attorney who, at the same time, is representing the judge in a personal matter. See 13A Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure Sec. 3549, at 614 (1984) (citing cases).

[41] In Paragraph 18 of his April 18, 2012 opinion that granted the winding up petition, the Chief Justice writes:
> [T]he Investment Manager appears to be the subject of an investigation by both the U.S. Securities Exchange Commission and the U.S. Federal Bureau of Investigation. This last assertion of the Petition relies on newspaper reports of the investigations mentioned and the Company...

    April 1, 2014 Draft

**Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases**
**In the Format Requested by Honorable Robert E. Gerber**

[42] *The Independent*, "Corruption and the FCI: Blue skies, white sand, dark clouds," May 26, 2013, Paul Peachey (www.indpendent.co.uk)

[43] The U.K. Foreign & Commonwealth Office, often abbreviated as "FCO," promotes British interests overseas, supporting our citizens and businesses around the globe. The head of the FCO is the Secretary of State for Foreign and Commonwealth Affairs, commonly abbreviated to "Foreign Secretary." (www.gov.uk)

[44] Ibid.

[45] This provision was in the March 8, 2013 executed final agreement. The below provision which was included in the February 8, 2013 executed term sheet:
    any (a) proposed disposition of the assets transferred to [the trustee] pursuant to the Unwind Transactions (the "Returned Assets") and (b) any contemplated non-ordinary course transactions."

[46] While the February 22, 2013 press release issued by United refers to settlement of its "litigation with FILB Co-Investments LLC," United's 8-K filed on the same day states that United and "the parties to the lawsuit" agreed to a settlement. The settlement includes FILB Co-Investments LLC, then controlled by the Ernst & Young Liquidators, and includes only three of the several parties in interest for which the Ernst & Young Liquidators serve as fiduciaries. Those three parties, pension funds controlled by the Louisiana Officials, retained Ernst & Young in July 2011, nine months prior to the appointment of Ernst & Young as Joint Official Liquidators. (www.sec.gov)

[47] *In re Soundview Elite, Ltd., et al*, Case No. 13-13098 (REG),SUPPLEMENTAL DIRECT TESTIMONY AFFIDAVIT OF ALPHONSE FLETCHER, JR. ON MOTION'S TO DISMISS CONVERT OR APPOINT A TRUSTEE, December 11, 2013

Email from Robert McMahon to Cherry Bridges, April 3, 2013, "re - Richcourt Holding Inc."

[48] Citco is the founder of the funds, the 15% indirect owner of the funds' investment advisor, and was the funds' administrator.[42] Citco was represented by Paul Weiss in the Soundview proceedings.

[49] The timing of the Registrar's action, a few days after the Soundview chapter 11 filing preempted the Cayman winding up proceedings, and the irregularity of not favoring a trial on the merits struck some as vindictive.

[50] Paul Weiss cleared conflicts, drafted the original complaint in *Fletcher v Dakota*, and managed the case for more than six months. Paul Weiss did not appear in court and selected another law firm to appear in its place. Paul Weiss explained that its managing partner would not allow the firm to appear in this case because John Angelo's Angelo, Gordon & Co. is an "important" client of Paul Weiss.

[51] In brief, the report repeats allegations which the Dakota Parties have been making since 2010. It falsely claims that Fletcher International, Ltd. was insolvent since 2008, made not a single profitable investment during the past few years, carrying investments at grossly inflated valuations, and made investments that were authorized by its governing documents. Judge Gerber permitted the Soundview Soundview Debtors' to insert a supplement which provided evidence of the falsity of the Trustee's claims. In brief, the Soundview supplement referred to evidence of several independent parties the confirmed that Fletcher International, Ltd. in fact profitably sold investments and realized profits of approximately $150 million over the past few years pursuing the investment strategies described in its governing documents.

April 1, 2014 Draft