HEARING DATE: JUNE 17, 2014 AT 9:45 A.M. (EDT)
EVIDENTIARY HEARING
REQUEST

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FLETCHER INTERNATIONAL, LTD.<br><br>　　　　Debtor<br>ALPHONSE FLETCHER, JR.,(pro se)<br><br>　　　　Appellant,<br><br>v.<br><br>RICHARD J. DAVIS, ESQ.<br><br>　　　　Appellee | Chapter 11<br><br>Case No. 12-12796 (REG) |

**DISGORGEMENT MOTION SUPPLEMENTARY INFORMATION**

Alphonse Fletcher, Jr. acting *pro se*, respectfully supplements his motion for disgorgement, vacateur, and disallowance submitted on May 21, 2014 with a hearing on June 17, 2014. I intend to show that the harm to the Fletcher International, Ltd. ("International") estate and to the integrity of the bankruptcy system resulting from the conduct of the fiduciaries in this case, Richard J. Davis, ESQ. (the "Trustee"), his counsel Luskin, Stern & Eisler, LLP ("Luskin"), and his financial advisor Goldin Associates ("Goldin" and together "Fiduciaries") warrants an extraordinary remedy.

Fundamental schedules prepared for, relied upon, and cited by the Trustee in the production of his Trustee's Report and Disclosure Statement (the "Report," Docket No. 327) contradict the Report's conclusions and reveal that Fletcher International Ltd. ("International") realized profits exceeding $150 million between January 1, 2007 and June 30, 2012. Additional

documents from a variety of sources, including but not limited to the attached exhibits further corroborate that the Report suffers from serious flaws.

Despite the experience of the professionals retained, the small number of assets and stakeholders to be administered, and administrative expenditures exceeding $12 million in this relatively small case, the Report raises more questions than its answered. When counsel in associated cases *In Soundview Elite, et al* requested that the documents cited in the Report's footnotes (Docket No. 370 p. 3 ¶ 3 footnote 2), Mr. Luskin declined to provide them.

"Exhibit Books" containing critical documents which the Fiduciaries' motions promised would be provided at the relevant hearings were not provided at those hearings and still have not been provided to the Court or the parties-in-interest to the best of my knowledge. Yet those hearings nevertheless proceeded and the settlements and confirmation were granted.

The Trustee, Luskin, Goldin have refused repeated requests to address the absence of certain connections from their applications, filed September 29, 2013 (Docket No. 115), November 12, 2012 (Docket No. 154), and November 12, 2012 (Docket No. 153), respectively. Certainly they are aware that "the decision as to what information to disclose should not be left to counsel, whose judgment may be clouded by the benefits of the potential employment." *In re Persaud*, 496 B.R. 667, 675 (E.D.N.Y. 2013)

Just yesterday in his declaration, the Trustee admitted two of the connections that Mr. Luskin denied on the record on April 2, 2014 (i.e. Anthony Smith and News Corporation). If the Fiduciaries continue to arrogate the decision to disclose all connections, especially connections to the estate's adversaries, "the question will always linger whether it held back, or failed to bite the hand that feeds it quite as hard as the circumstances warranted." Granite Partners, 219 B.R. at 38.

The primary findings in the Trustee's November 2013 Report closely resemble the long-disproven allegations serially made by the estate's adversaries, including parties associated with certain shareholders of Dakota, Inc. In fact, it is difficult to find allegations in the Report that were not thoroughly addressed one year earlier. In November 2012, despite the newly appointed Trustee's decision days earlier to terminate Fletcher Asset Management's contract, Fletcher voluntarily presented a 178-page Fletcher International summary report, a 297-page report on International's contracts and history with United Community Banks, and other information.

Section 101(14)(A) of the Bankruptcy Code provides that a person is "disinterested" if that person "is not a creditor, an equity holder, or an insider."[1] 11 U.S.C. § 101(14)(A). Section 101(14)(C) of the Bankruptcy Code provides that a "disinterested person" is someone who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C).

To be disinterested is "to prevent even the appearance of a conflict irrespective of the integrity of the person or firm under consideration." In re Vebeliunas, 231 B.R. 181, 191 (Bankr. S.D.N.Y. 1999), dismissed on appeal, 246 B.R. 172 (S.D.N.Y. 2000) (citing In re Codesco, Inc., 18 B.R. 997, 999 (Bankr. S.D.N.Y. 1982)) (additional citations omitted); see also In re Angelika Films 57th, Inc., 227 B.R. 29, 38 (Bankr. S.D.N.Y. 1998) ("The determination of adverse interest is objective and is concerned with the appearance of impropriety."). A disinterested

---

[1] The Bankruptcy Code defines "person" to include individuals, partnerships and corporations. See 11 U.S.C. § 101(41).

person "should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters." Vebeliunas, 231 B.R. 191-92 (citations and quotations omitted). The most modest interest or relationship will undo a person's disinterestedness if it "would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." In re Granite Partners, L.P., 219 B.R. 22, 23 (Bankr. S.D.N.Y. 1998)) (internal quotations and citations omitted).

An evidentiary hearing is requested and should be granted to determine the Fiduciaries connection or association with the Dakota Suit, defendants in that case or related parties in that case.

June 12, 2014

Respectfully submitted by

*[signature]*

Alphonse Fletcher, Jr
188 Minna Street
San Francisco, CA 94105
Phone: (415)702-0070
AFletcher@Fletcher.com