Michael Luskin
Lucia T. Chapman
Stephan E. Hornung
LUSKIN, STERN & EISLER LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 597-8200
Facsimile:  (212) 974-3205

*Attorneys for Plaintiff, Fletcher International, Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: <br><br> FLETCHER INTERNATIONAL, LTD. <br><br>                                Debtor. | Case No. 12-12796 (REG) |
| FLETCHER INTERNATIONAL, LTD., <br><br>                                Plaintiff, <br><br> v. <br><br> SKDKNICKERBOCKER LLC, <br><br>                                Defendant. | Adv. Proc. No. _____ <br><br> **COMPLAINT** |

Plaintiff, Fletcher International, Ltd. ("**FILB**"), by and through its undersigned attorneys, Luskin, Stern & Eisler LLP, as and for its Complaint against SKDKnickerbocker LLC ("**SKDK**"), alleges as follows:

**Nature of Action**

1. This is an action to avoid and recover more than $162,500 in cash that was funneled out of FILB and used by Alphonse Fletcher Jr. ("**Fletcher**") and his wholly-owned asset management company – Fletcher Asset Management, Inc. ("**FAM**") – to pay fees they owed to their public relations firm – Defendant, SKDK – in connection with Fletcher's personal

litigation against the well-known New York City apartment building, The Dakota, Inc. (the "**Dakota Litigation**").

2. Between June 1, 2011, and April 3, 2012, FILB paid more than $162,500 to SKDK primarily for consulting services provided to Fletcher and FAM related to the Dakota Litigation and the SEC's investigation into FAM; however, FILB received none of the benefit. The Dakota Litigation – brought in Fletcher's and FAM's names only – was related to Fletcher's personal claims that certain members of The Dakota's co-op board racially discriminated against him when they refused to allow him to purchase an apartment in the building (which, according to press reports, would have been his fourth).

3. Fletcher and FAM caused FILB to make each of the payments to SKDK with the actual intent of defrauding FILB's creditors and investors, at a time when FILB was also insolvent. Accordingly, these transfers should be avoided, and FILB should recover from SKDK the full amount of these payments.

## The Relevant Parties

4. FILB is an entity organized under the laws of Bermuda. It filed a petition for relief under chapter 11 of the Bankruptcy Code on June 29, 2012 (the "**Petition Date**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). By order dated March 28, 2014 (the "**Confirmation Order**") [Docket No. 490], the Bankruptcy Court confirmed the Chapter 11 Trustee's Second Amended Plan of Liquidation (the "**Plan**"). Pursuant to the Plan and the Confirmation Order, all avoidance actions, including any claims under sections 544, 547, 548, 549 and 553(b) of the Bankruptcy Code remain property of FILB's estate.

5. Upon information and belief, SKDK is a limited liability company organized under the laws of the State of Delaware with offices at 594 Broadway, Suite 509, New York, New York 10012.

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 insofar as this is a core proceeding under 28 U.S.C. § 157(b).

7. Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

## Facts

8. Pursuant to an engagement letter dated September 26, 2011 (the "**Engagement Letter**"), Fletcher's and FAM's litigation counsel – Kasowitz, Benson, Torres & Friedman LLP ("**Kasowitz**") – retained SKDK on behalf of Fletcher and FAM to provide consulting services related to Fletcher's litigation against The Dakota, Inc., Bruce Barnes, and Peter Nitze, as well as in connection with the SEC's investigation of FAM.

9. FILB is not a party to the Engagement Letter or a "client" as defined in the Engagement Letter.

10. Pursuant to the Engagement Letter, Fletcher and FAM agreed to pay SKDK $20,000 per month, and agreed that they would be solely responsible for payment of all fees owed to SKDK.

11. According to FILB's books and records, FILB made the following payments (the "**Payments**") to SKDK between June 1, 2011, and April 3, 2012.

| Payment Date | Payment Amount |
|---|---|
| 6/1/2011 | $40,000.00 |
| 8/9/11 | $20,000.00 |
| 12/2/11 | $40,000.00 |
| 12/20/11 | $40,000.00 |
| 3/2/12 | $15,006.08 |
| 4/3/12 | $7,500.00 |
| Total | $162,506.08 |

12. Upon information and belief, SKDK never provided any services for the benefit of FILB. Instead, SKDK provided consulting services to Fletcher and FAM in connection with the Dakota Litigation and, to a lesser extent, the SEC's investigation of FAM.

13. Upon information and belief, FILB made all or substantially all of the Payments to satisfy invoices for services provided by SKDK to Fletcher and FAM related to the Dakota Litigation and, to a lesser extent, the SEC's investigation of FAM.

14. Upon information and belief, including information developed as a result of the Trustee's investigation, FILB was insolvent at the time that each of the Payments was made to SKDK.

### First Claim for Relief
### (Avoidance of Intentional Fraudulent Conveyances
### Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550)

15. Plaintiff realleges and incorporates each of the allegations in paragraphs 1 through 14 (other than any allegations alleging that FILB was insolvent) as though set forth in full.

16. Between June 11, 2011, and April 3, 2012, FILB paid SKDK $162,506.08 in six separate payments.

-4-

17. Upon information and belief, FILB made all or substantially all of the Payments to satisfy invoices for services provided by SKDK to Fletcher and FAM related to the Dakota Litigation or, to a lesser extent, the SEC's investigation of FAM.

18. Upon information and belief, the Payments were made by FILB at the direction of FAM or Fletcher.

19. These invoices were not obligations of FILB, and FILB received no benefit for making the Payments.

20. Fletcher and FAM directed FILB to pay these invoices with the actual intent of hindering, delaying, and defrauding FILB's creditors and investors.

21. SKDK is an initial transferee within the meaning of that term as used in Section 550(a)(1) of the Bankruptcy Code.

22. The Payments to SKDK are voidable pursuant to Section 548(a)(1)(A) of the Bankruptcy Code and may be recovered from SKDK pursuant to Section 550 of the Bankruptcy Code.

23. By reason of the foregoing, FILB is entitled to judgment against SKDK in an amount to be determined at trial, but no less than $162,506.08, plus pre-judgment interest.

**Second Claim for Relief
(Avoidance of Constructive Fraudulent Conveyances
Pursuant to 11 U.S.C. §§ 548 (a)(1)(B) and 550)**

24. Plaintiff realleges and incorporates each of the allegations in paragraphs 1 through 23 as though set forth in full.

25. Between June 11, 2011, and April 3, 2012, FILB paid SKDK $162,506.08 in six separate payments.

26. Upon information and belief, FILB made all or substantially all of the Payments to satisfy invoices for services provided by SKDK to Fletcher and FAM related to the Dakota Litigation or, to a lesser extent, the SEC's investigation of FAM.

27. These invoices were not obligations of FILB, and FILB received no benefit for making the Payments.

28. FILB received less than reasonably equivalent value in exchange for the Payments.

29. FILB was insolvent at the time the Payments were made or became insolvent as a result of the Payments.

30. FILB was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with FILB was an unreasonably small capital.

31. At the time FILB made the Payments, FILB had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

32. SKDK is an initial transferee within the meaning of that term as used in Section 550(a)(1) of the Bankruptcy Code.

33. The Payments to SKDK are voidable pursuant to Section 548(a)(1)(B) of the Bankruptcy Code and may be recovered from SKDK pursuant to Section 550 of the Bankruptcy Code.

34. By reason of the foregoing, SKDK is entitled to judgment against SKDK in an amount to be determined at trial, but no less than $162,506.08, plus pre-judgment interest.

### Third Claim for Relief
### (Avoidance of Intentional Fraudulent Conveyances
### Pursuant to Section 276 of the New York Debtor & Creditor Law)

35. Plaintiff realleges and incorporates each of the allegations in paragraphs 1 through 34 (other than any allegations alleging that FILB was insolvent) as though set forth in full.

36. Between June 11, 2011, and April 3, 2012, FILB paid SKDK $162,506.08 in six separate payments.

37. Upon information and belief, FILB made all or substantially all of the Payments to satisfy invoices for services provided by SKDK to Fletcher and FAM related to the Dakota Litigation or, to a lesser extent, the SEC's investigation of FAM.

38. Upon information and belief, the Payments were made by FILB at the direction of FAM or Fletcher.

39. These invoices were not obligations of FILB, and FILB received no benefit for making the Payments.

40. Fletcher and FAM directed FILB to pay these invoices with the actual intent of hindering, delaying, and defrauding FILB's creditors and investors.

41. The Payments are voidable pursuant to Section 276 of the New York Debtor & Creditor Law and may be recovered from SKDK.

42. By reason of the foregoing, FILB is entitled to judgment against SKDK in an amount to be determined at trial, but no less than $162,506.08, plus pre-judgment interest and costs and expenses, including reasonable attorneys' fees.

## Fourth Claim for Relief
### (Avoidance of Constructive Fraudulent Conveyances Pursuant to Sections 273, 274 and 275 of the New York Debtor & Creditor Law)

43. Plaintiff realleges and incorporates each of the allegations in paragraphs 1 through 42 as though set forth in full.

44. Between June 11, 2011, and April 3, 2012, FILB paid SKDK $162,506.08 in six separate payments.

45. Upon information and belief, FILB made all or substantially all of the Payments to satisfy invoices for services provided by SKDK to Fletcher and FAM related to the Dakota Litigation or, to a lesser extent, the SEC's investigation of FAM.

46. These invoices were not obligations of FILB, and FILB received no benefit for making the Payments.

47. FILB received less than reasonably equivalent value in exchange for the Payments.

48. FILB was insolvent at the time the Payments were made or became insolvent as a result of the Payments.

49. FILB was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with SKDK was an unreasonably small capital.

50. At the time FILB made the Payments, FILB had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

51. The Payments are voidable pursuant to Sections 273, 274 and 275 of the New York Debtor & Creditor Law and may be recovered from SKDK.

52. By reason of the foregoing, FILB is entitled to judgment against SKDK in an amount to be determined at trial, but no less than $162,506.08, plus pre-judgment interest.

**Fifth Claim for Relief**
**(<u>Avoidance and Recovery of Preferential Transfers</u>**
**<u>Pursuant to 11 U.S.C. §§ 547(b) and 550</u>)**

53. Plaintiff realleges and incorporates each of the allegations in paragraphs 1 through 52 as though set forth in full.

54. On or about April 3, 2012, FILB paid SKDK $7,500 in satisfaction of an overdue invoice.

55. The payment was made to or for the benefit of a creditor.

56. The payment was on account of an antecedent debt owed by FILB before such transfer was made.

57. FILB was insolvent on the date the payment was made.

58. The payment was made within 90 days of the Petition Date.

59. The payment enabled SKDK to receive more than it would have received if (a) FILB's bankruptcy case was a case under chapter 7 of the Bankruptcy Code; (b) the payment had not been made; and (c) SKDK received payment of such debt to the extent provided by the Bankruptcy Code.

60. SKDK is an initial transferee within the meaning of that term as used in Section 550(a)(1) of the Bankruptcy Code.

61. The payment to SKDK is avoidable pursuant to Section 547(b) of the Bankruptcy Code and can be recovered from SKDK pursuant to Section 550 of the Bankruptcy Code.

62.     By reason of the foregoing, FILB is entitled to judgment against SKDK in an amount to be determined at trial, but no less than $7,500, plus pre-judgment interest.

## Prayer for Relief

WHEREFORE, Plaintiff demands judgment as follows:

A.     On its First Claim for Relief, judgment against SKDK in an amount to be determined at trial, but no less than $162,506.08, plus pre-judgment interest;

B.     On its Second Claim for Relief, judgment against SKDK in an amount to be determined at trial, but no less than $162,506.08, plus pre-judgment interest;

C.     On its Third First Claim for Relief, judgment against SKDK in an amount to be determined at trial, but no less than $162,506.08, plus pre-judgment interest and costs and expenses, including reasonable attorneys' fees;

D.     On its Fourth Claim for Relief, judgment against SKDK in an amount to be determined at trial, but no less than $162,506.08, plus pre-judgment interest;

E.     On its Fifth Claim for Relief, judgment against SKDK in an amount to be determined at trial, but no less than $7,500, plus pre-judgment interest; and

F.     Such other and further relief as the Court deems just and proper.

Dated: New York, New York
      June 27, 2014

Respectfully submitted,

LUSKIN, STERN & EISLER LLP

By:   /s/ Michael Luskin
     Michael Luskin
     Lucia T. Chapman
     Stephan E. Hornung

Eleven Times Square
New York, New York 10036
Telephone: (212) 597-8200
Facsimile:  (212) 974-3205

*Attorneys for Plaintiff, Fletcher International, Ltd.*