July 23, 2014

**BY EMAIL AND COURT FILING (TOMORROW)**

The Honorable Robert E. Gerber
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, New York 10004



FILED
U.S. BANKRUPTCY COURT
2014 JUL 24  A 9: 51
S.D. OF N.Y.

Dear Judge Gerber:

I will gladly attend the conference you requested for tomorrow afternoon but would also like to submit this letter in advance of the conference.

I was unaware that my requests in regard to the fees to be received by the Trustee, Goldin Associates, LLC ("Goldin") and Luskin, Stern & Eisler, LLP ("Luskin Firm") were inappropriate when I sent my response to counsel for the Plaintiffs (Reid Collins Tsai LLP) on May 12, 2014.  Less than twenty-four hours after Mr. Luskin pointed this out to me in early July (and I confirmed this issue independently), I informed Mr. Luskin by voicemail that I would willingly drop paragraphs 4 and 5 from my prayer for relief, related to fees earned by Goldin, Trustee Davis, and the Luskin Firm.

I also confirmed my willingness to do so in a later email to Mr. Luskin.  Please note further that my May 12, 2014 response to the State Court Action, done without the benefit of counsel, came more than one month before Your Honor's confirming the final compensation packages for Goldin and the Luskin Firm, along with the Trustee's interim compensation on June 24, 2014.  Thus, after Mr. Luskin pointed out that the fees were solely within the Bankruptcy Court's domain (and some checking on my part), I willingly agreed to drop those paragraphs.  Unfortunately, Mr. Luskin relegated my willingness to do so to a footnote in his letter yesterday to Your Honor.

I will make those changes in writing as part of an overall revision of my response after I hire an attorney.  I am seeking indemnification from Fletcher International, Ltd. to do so (more on this below).

In order for me to prove my case in the State Court Action by a preponderance of the evidence, I will need to challenge Goldin and Ms. Murray (whose expertise is in distressed securities and **not** in perpetual preferred or warrants), who did not have to justify their backgrounds in regard to warrants and perpetual convertible preferred in the bankruptcy proceeding.  It would put me at a disadvantage to have Goldin's and Ms. Murray's work simply accepted, especially as I believe that she is not an expert in either of these products.

I again object to Mr. Luskin's comments in court on January 14, 2014 that Goldin's hedge fund experience is relevant.  Not all hedge funds are the same.  His belief that they are all essentially the same is no more correct than if I were to say that there is only one type of lawyer or one type of Court.

In regard to the issues raised by the Trustee's report, Your Honor required the following to be placed in bold font near the beginning of the FILB Trustee's Report and Disclosure Statement sent to Creditors:

**"• The information set forth in this Disclosure Statement is a combination of facts learned by the Trustee in his investigation and opinions formed by the Trustee after consideration of those facts. At this point, it should be regarded solely as the Trustee's opinions. The Soundview Debtors dispute those statements of fact and opinions in numerous respects, for the reasons set forth in a document their counsel has prepared that is attached as Exhibit K. Turner also disputes those statements of fact and opinions in numerous respects, for the reasons set forth in a document he prepared that is attached as Exhibit L. Some matters that appear to be facts in this Disclosure Statement may later be found to be matters of opinion.**
**• ...**
**• The facts and opinions set forth in this Disclosure Statement may in material respects be disputed in later proceedings in this chapter 11 case or elsewhere, and have not yet been found to be true by any court, if they ever will be. There can be no assurance that any litigation brought by the Trustee will be successful."**

This is particularly applicable in regard to Ms. Murray's (and therefore the Trustee's) analysis, as these claims have not been proven.   If Ms. Murray's and Goldin's (and by extension the Trustee's) views are not to be challenged, I would be at a strong disadvantage in the State Court Action now that the Plan of Liquidation has been confirmed and the primary action is moving away from the Bankruptcy Court.

Goldin should know this better than anyone. They were on the losing end of <u>In re WRT Energy Corp.</u>[1], which found that Goldin could be prosecuted in U.S. District Court for activities related to their actions as litigation trustee after the bankruptcy plan had been confirmed by the Bankruptcy Court.

Further, the proceeds from this civil suit, if any are to be had, do not go to all Creditors of FILB.  Instead, the Plaintiffs include not only all of the parties to the Pooled Claims, but also the Massachusetts Bay Transportation Authority Retirement Fund (the "Massachusetts Fund"). FILB's share in this action would be a minority share and presumably even less than the 26.8% under the Plan.   Thus, I believe this case would be outside the purview of the Bankruptcy Court under Paragraph 98 of the Confirmation Order approved by Your Honor: "free of any restrictions of the Bankruptcy Code or Bankruptcy Rules."[2]

<u>Indemnification</u>

I believe that the one area that remains under the Bankruptcy Court's jurisdiction is confirming the indemnification provisions under the Plan.

I am filing my request for indemnification, not as a pre-petition claimant but as an administrative claimant.  I filed an administrative claim on May 19, 2014 asking for $10,000 (Director fee for the third

---

[1] In Re WRT Energy Corp., 402 B.R. 717 (Bankr. W.D. La. 2007)

[2] Docket No. 490, page 33.

quarter of 2012, after the June 29, 2012 filing date) plus unliquidated damages (for matters such as indemnification). This claim, filed within the allowable time period, is attached as Exhibit A.

I believe that I am entitled to indemnification on an administrative basis for both serving as (i) a Director for a short while post-petition, but also serving as (ii) a "professional person" for the Trustee after serving as a consultant for the initial attorneys (Young Conaway), the Chief Restructuring Officer (Conway MacKenzie), and the Trustee himself. In Docket No. 142[3] (attached as Exhibit B), the Trustee requested and obtained a Court Order signed by Your Honor in regard to my "retention".

I believe that I am covered under Paragraph 41 of the Confirmation Order[4] as a professional person retained by the Trustee and the indemnification provision of the Plan at Section 10.4 of the Plan (page 86 of Docket No. 490).

<u>Fletcher International Partners, Ltd.</u>

Fletcher International Partners, Ltd. ("FIP") is a solvent entity. While FILB was reinstated as a preferred and ordinary shareholder on the Register of Members, this is in contrast to (a) the Shareholder Register maintained by RF Services' Mr. Stuart MacGregor, (b) my June 6, 2012 (prior to the FILB petition date) sworn affidavit to Plaintiff FIA Leveraged Fund that shares of FIP were distributed to Richcourt Euro Strategies Inc. and Richcourt Allweather Fund Inc., and (c) financial statements prepared by outside administrator SS&C Technologies Inc. several months before the FILB petition date showing that the FIP shares were no longer held by FILB after June 30, 2011.

Further, Richcourt Euro Strategies and Richcourt Allweather Fund only signed resolutions in regard to reinstating FILB to the Register of Members "without any prejudice or waiver of [each of their] rights to later assert that [it] is, should become, or should be deemed the lawful owner(s) of any, some or all of the Shares, or of any other rights [each has]."[5] Thus, it is my understanding that FILB's ownership of any shares in FIP has not been finalized. Ms. Midanek, on behalf of these funds, and I have been in contact regarding FIP and FIP's investment in FFC Fund.

For the past seven months, I have accepted the limitations placed on me by the Trustee's December 26, 2013 letter stating that I "should not disburse or otherwise dissipate any funds located in any FIP bank account to pay [myself] any further fees in any capacity." I am now only requesting that the Trustee, as representative of FILB, a minority shareholder only if not challenged by the Richcourt entities, let SFT Bank (FIP's bank) know that it may proceed with making payments as permitted under its Articles of Association. Now that the FILB Plan has been consummated, and as per Paragraph 98 of the Confirmation Order, this State Civil Action including the Massachusetts Fund as Plaintiff and FIP should be "free of any restrictions of the Bankruptcy Code or Bankruptcy Rules."

---

[3] On page 3.

[4] Docket No. 490, page 15.

[5] Docket No. 305, pages 14 and 17 of the PDF.

Respectfully submitted,

Stewart Turner

Enclosures

# Exhibit A

B10 (Official Form 10) (04/13)

*ADMINISTRATIVE*

| UNITED STATES BANKRUPTCY COURT   Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Fletcher International, Ltd. | Case Number: 12-12796 (REG) |
|---|---|

**NOTE:** *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Stewart A. Turner

Name and address where notices should be sent:
Stewart Turner
200 East 71st Street, Apt. 5A
New York, NY 10021

Telephone number: (917) 763-3905    email: stewartaturner@hotmail.com

Name and address where payment should be sent (if different from above):

Telephone number:    email:

**COURT USE ONLY**

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
(If known)

Filed on:_____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**    $_____10,000.00    *PLUS CERTAIN OTHER UNLIQUIDATED CLAIMS*

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**  Please see attached - first filing as administrative claim.
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as: _____ (See instruction #3a) | 3b. Uniform Claim Identifier (optional): _____ (See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property: $_____

Annual Interest Rate_____% ☐ Fixed  or  ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$_____

Basis for perfection:_____

Amount of Secured Claim: $_____

Amount Unsecured: $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)                                                                                                    2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Stewart A. Turner
Title:
Company:
Address and telephone number (if different from notice address above):

*Stewart A. Turner*                    05/19/2014
(Signature)                              (Date)

Telephone number:                    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

*Items to be completed in Proof of Claim form*

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it.  FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B10 (Official Form 10) (04/13)

3

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

# Basis for Claim

The total of $10,000.00 of specific damages is for a Director Fee owing for services rendered to Fletcher International, Ltd. (the "Debtor" or "FILB") for the quarter ended September 30, 2012 (this amount should be removed from my January 18, 2013 claim as it is now being filed as an administrative claim).

I am also requesting unliquidated claims in regard to my time and actions post-filing as (a) a Director of FILB (February 13, 2012 – July 15, 2012) and (b) as a Consultant to FILB for Young Conaway Stargatt & Taylor, LLP, and, Conway MacKenzie, and finally, as a Consultant to the FILB Trustee, Richard J. Davis. In general, I am asking for indemnification for all activities undertaken as a Director of FILB and indemnification for any and all actions undertaken as a Consultant to FILB, including any discussions regarding valuation of assets, discussions of board meetings, and a review of prior actions as summarized in discussions and/or emails with the Trustee or any of his advisors.

I am specifically requesting indemnification and advancement of fees to defend myself in a non-*pro se* manner in regard to my time as a Director of the FILB (February 13, 2012 – July 15, 2012). I have recently become a defendant in a civil suit brought by direct and indirect investors of FILB (as well as FILB itself). This suit was filed on March 31, 2014, subsequent to FILB's filing date of June 29, 2012, and thus I am requesting funding for attorney fees to defend my actions as an administrative claim.

The specific damages and unliquidated claims referenced herein are referred to collectively at times as the "Claims".

## Director Fee for the Third Quarter of 2012 - $10,000.00

Director Fees of the Debtor and for certain other Fletcher entities (including Fletcher International, Inc. ("Fletcher Delaware")), were to be paid at the rate of $10,000.00 per quarter in advance. As of the Filing Date of June 29, 2012, the Debtor's bank accounts were frozen and thus the Debtor could no longer make payments. As such, I did not receive my 2012 third quarter Director Fee of $10,000.00 during the first week of July. By contrast, Fletcher Delaware made its Director Fee payments on July 3, 2012.

Young Conaway requested a telephonic meeting of the Debtor's Board of Directors on Friday, July 13, 2012. The topic of overlapping Boards of Directors was discussed; I believe that this was related to a discussion that Young Conaway's then-attorney David Hurst had had with the United States Trustee. Young Conaway stated that the Debtor would benefit by removing a potential argument by creditors if Directors were to resign from some boards in order to avoid charges of potential conflict of interest; this would then help make things run as smoothly as possible for the Debtor. Specifically, Young Conaway recommended that Teddy Stewart remain on the Board of the Debtor but resign from the Board of Fletcher Delaware and that I remain on the Board of Fletcher Delaware but resign from the Board of the Debtor.

During the July 13 Board call, we also discussed the hiring of a Chief Restructuring Officer and the interviewing of at least one candidate via telephone on July 14, 2012. Speaking with Young Conaway

later on July 13, I agreed to submit my resignation on July 15, 2012, the day after I (and fellow Board members Teddy Stewart and Floyd Saunders) interviewed and approved the hiring of Donald MacKenzie and his firm Conway MacKenzie for the position of Chief Restructuring Officer ("CRO").

I submitted my letter of resignation from Fletcher International, Ltd. to Mr. Stewart and Mr. Saunders on July 15, 2012 (Exhibit 1). Teddy Stewart's letter of resignation from Fletcher Delaware and related documentation are attached as Exhibits 2 and 3.

To reiterate, I served as a Director during the first 15 days of July 2012 during those hectic first few weeks after the Filing Date and only resigned from the Board at the urging of the Debtor's then-Counsel. (Mr. Saunders and Mr. Stewart later received their Director Fees, presumably approved and paid by the CRO. See page 10 of Exhibit 4, the July 2012 Monthly Operating Report prepared by then-CRO Donald MacKenzie referencing the intention to pay the other Directors as well as a statement of the director payment policy.)

### The Unliquidated Claims

1.      This proof of claim (the "Proof of Claim") is filed by Stewart A. Turner (the "Claimant") also on account of the following unliquidated claims against the Debtor (the "Unliquidated Claims"):

      a.      Director & Officer Insurance: Claims for all benefits under the Debtor's director and officer insurance programs or any other insurance policy, if any, to which the Claimant is entitled in its capacity as a director of the Debtor. As there was no such insurance, I fall back upon the following section;

      b.      Corporate Indemnification: Claims against the Debtor for any and all rights and entitlement that the Claimant has or may have to indemnification, contribution, reimbursement or other payments, including damages, costs and expenses related thereto, from the Debtor that are based upon applicable law, the Debtor's certificate or articles of incorporation, the Debtor's bye-laws, any contract, any agreement or otherwise, arising in respect of or by reason of the fact that the Claimant was a director or officer of the Debtor, or was serving at the request of, or for the benefit of, the Debtor as a director, officer, employee, consultant, agent or trustee of one or more other corporations, partnerships, limited liability companies, joint ventures, trusts, plans or other enterprises or entities. In particular, the Claimant is asserting a claim for indemnification in connection with any pending and future litigation;

      c.      Any and All Other Claims Arising Under All Agreements, Plans, or Otherwise: To the extent not paid pursuant to a court order, a claim for any and all payments and other related benefits due and owing in a contingent and unliquidated amount to which Claimant may be entitled under Claimant's agreement(s) with the Debtor, plan(s) maintained by the Debtor as of the Petition Date, or any other Claims otherwise arising, but which were not honored by the Debtor.

2.      The Claimant does not attach copies of all documents supporting the Unliquidated Claims, because it believes that the Debtor already has copies of any agreement(s) and documentation relating to plan(s) maintained by the Debtor and the bye-laws.

a. However, Exhibit 5 lists FILB bye-laws 124-128 provide indemnification for Directors and Officers and Bye-Law 128 specifically provides that "Subject to the Companies Acts, expenses incurred in defending any civil or criminal action or proceeding for which indemnification is required pursuant to Bye-Laws 124 and 125 shall be paid by the Company in advance of the final disposition of such action or proceeding upon receipt of an undertaking by or on behalf of the indemnified party to repay such amount if it shall ultimately be determined that the indemnified party is not entitled to be indemnified pursuant to Bye-Laws 124 and 125."

b. Also, Exhibit 6 contains Sections 7.6 and 10.4, which cite indemnification provisions available, of the Trustee's Second Amended Plan of Liquidation[1], as approved by Judge Gerber on March 28, 2014.

c. The Claimant remains available, however, to deliver copies of the documentation upon request and reserves the right to supplement this proof of claim with documentation at any time.

3. The Claimant's assertion of the Claims herein is without prejudice to the Claimant's right to supplement these Claims or submit additional claims, including cure claims based upon assumption or rejection of any agreements with the Claimant.

4. This proof of claim is filed to preserve any and all claims, rights, and entitlements, including contingent claims, that the Claimant may have against the Debtor and nothing set forth herein should be construed as an admission that any valid claims or causes of action exist against either the Debtor or the Claimant.

5. The Claimant reserves the right to attach or bring forth additional documents supporting the Claims, including additional documents that may become available after further investigation and discovery.

The filing of this Proof of Claim shall not constitute: (a) a waiver or release of the rights of the Claimant against the Debtor, or any other person or property, or (b) an election of remedies or choice of law.

---

[1] Contained in Docket No. 490, pages 79-80 and 86.

# Exhibit 1

**SAT {STurner}**

| | |
|---|---|
| From: | SAT {STurner} |
| Sent: | Sunday, July 15, 2012 12:24 PM |
| To: | FES {FSaunders}; TES {TStewart} |
| Subject: | Resignation as Director and Treasurer |

Floyd and Teddy —

I hereby resign as Director and Treasurer of Fletcher International, Ltd. with immediate effect.

Kind regards,
Stewart Turner
July 15, 2012

# **Exhibit 2**

**SAT {STurner}**

| | |
|---|---|
| From: | TES {TStewart} |
| Sent: | Friday, July 13, 2012 4:12 PM |
| To: | SAT {STurner}; FES {FSaunders} |
| Subject: | Resignation as Director of FII |

Stewart/Floyd,

Please accept this notification of my resignation as a director of Fletcher International, Inc., (FII), effective at 3 PM EST today, 07-13-2012.

Thank you,

Teddy Stewart

1

# **Exhibit 3**

<u>Written Resolutions</u>
<u>of</u>
<u>the Board of Directors</u>
<u>of</u>
<u>Fletcher International, Inc.</u>

The undersigned, being all of the members of the Board of Directors (the "Board") of Fletcher International, Inc., a Delaware corporation (the "Company"), hereby adopt, by this written resolution, the following resolutions with the same force and effect as if they had been unanimously adopted at a duly convened meeting of the Board and direct that this written resolution be filed with the minutes of the proceedings of the Board:

**WHEREAS,** the Company has received notice that Teddy Stewart has resigned as director of the Board effective July 13, 2012 at 3:00pm New York City time.

**NOW THEREFORE LET IT BE:**

**RESOLVED,** that the Board accepts Teddy Stewart's resignation from the Company's Board effective immediately.

**RESOLVED,** that all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as in their judgment shall be advisable in order to carry out fully the intent and purposes of these resolutions.

**RESOLVED,** that the preceding resolutions supersede any and all other resolutions with respect to the matters above.

**IN WITNESS WHEREOF,** the undersigned directors of the Company have executed this Written Resolution in Lieu of a Meeting as of July 13, 2012.

By: _____

Name: Stewart Turner

Title: Director

By: _____

Name: George Ladner

Title: Director

<u>**Written Resolutions**</u>
*of*
<u>**the Board of Directors**</u>
*of*
<u>**Fletcher International, Inc.**</u>

The undersigned, being all of the members of the Board of Directors (the "Board") of Fletcher International, Inc., a Delaware corporation (the "<u>Company</u>"), hereby adopt, by this written resolution, the following resolutions with the same force and effect as if they had been unanimously adopted at a duly convened meeting of the Board and direct that this written resolution be filed with the minutes of the proceedings of the Board:

WHEREAS, the Company has received notice that Teddy Stewart has resigned as director of the Board effective July 13, 2012 at 3:00pm New York City time.

NOW THEREFORE LET IT BE:

RESOLVED, that the Board accepts Teddy Stewart's resignation from the Company's Board effective immediately.

RESOLVED, that all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as in their judgment shall be advisable in order to carry out fully the intent and purposes of these resolutions.

RESOLVED, that the preceding resolutions supersede any and all other resolutions with respect to the matters above.

IN WITNESS WHEREOF, the undersigned directors of the Company have executed this Written Resolution in Lieu of a Meeting as of July __ 2012.


By: _____          By: _____

Name: Stewart Turner                          Name: George Ladner

Title: Director                                      Title: Director

# Exhibit 4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re Fletcher International, Ltd.          Case No. 12-12796
          Debtor                           Reporting Period: 7/01/12 - 7/31/12

                                           Federal Tax I.D. # 98-0460743

CORPORATE MONTHLY OPERATING REPORT

File with the Court and submit a copy to the United States Trustee within 20 days after the end of the month and
submit a copy of the report to any official committee appointed in the case.
*(Reports for Rochester and Buffalo Divisions of Western District of New York are due 15 days after the end of
the month, as are the reports for Southern District of New York.)*

| REQUIRED DOCUMENTS | Form No. | Document Attached | Explanation Attached |
|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 |  | X |
| Bank Reconciliation (or copies of debtor's bank reconciliations) | MOR-1 (CON'T) | X |  |
| Copies of bank statements |  | X |  |
| Cash disbursements journals |  | X |  |
| Statement of Operations | MOR-2 | X | X |
| Statement of Financial Position | MOR-3 | X | X |
| Status of Post-petition Taxes | MOR-4 |  | X |
| Copies of IRS Form 6123 or payment receipt |  |  |  |
| Copies of tax returns filed during reporting period |  |  |  |
| Summary of Unpaid Post-petition Debts | MOR-4 |  | X |
| Listing of Aged Accounts Payable |  |  | X |
| Accounts Receivable Reconciliation and Aging | MOR-5 |  | X |
| Taxes Reconciliation and Aging | MOR-5 |  | X |
| Payments to Insiders and Professional | MOR-6 |  | X |
| Post Petition Status of Secured Notes, Leases Payable | MOR-6 |  | X |
| Debtor Questionnaire | MOR-7 | X | X |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the attached documents
are true and correct to the best of my knowledge and belief.

Signature of Debtor _____          Date _____

Signature of Authorized Individual* _Donald S. McKenzie_     Date _9/10/12_

Printed Name of Authorized Individual _DONALD S. MACKENZIE_  Date _9/10/12_

*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor is a
partnership; a manager or member if debtor is a limited liability company.

FORM MOR
2/2008
PAGE 1 OF 8

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FLETCHER INTERNATIONAL, LTD., | ) | Case No. 12-12796 (REG) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## Explanations to July 2012 Monthly Operating Report

**Basis of Presentation:**

The unaudited statements of financial position as of June 30 and July 31, 2012 and the related unaudited statement of operations for the month ended July 31, 2012 accompanying the Debtor's monthly operating report ("MOR") for the month ended July 31, 2012 reflect the financial position and results of operations of the Debtor only and do not reflect the consolidation of the Debtor's non-debtor subsidiaries, the Aesop Fund, Ltd. (the "Aesop Fund"), and Fletcher International Partners, L.P. ("FIPLP"), for which the Debtor has employed the equity method of accounting.

As a result of the Debtor's bankruptcy filing, the Debtor's pre-petition indebtedness is subject to compromise. The obligations presently classified as *"Liabilities Subject to Compromise"* on the Debtor's statement of financial position reflect the Debtor's estimate of known or potential liabilities as of June 29, 2012 (the "Petition Date").

Certain reclassifications have been made to prior period amounts in order to conform to the current period presentation.

**Disclaimer:**

The financial statements, schedules and explanations accompanying the Debtor's MOR for the month ended July 31, 2012 are subject to ongoing review and analysis by the Debtor, the results of which may necessitate adjustments that may have a material impact on the financial statements and schedules taken as a whole. Each item is subject to reclassification, re-characterization and/or adjustment, and the Debtor reserves all rights with respect to the amount, classification, characterization and explanation of each item reported herein. Nothing set forth in this MOR shall be deemed a waiver of the Debtor's right to challenge the amount, characterization and/or classification of any asset, liability or equity interest.

01:12

## MOR-2:

**Explanation of Certain Accounts**

*Net Unrealized Trading Losses*

The item captioned as *"Net Unrealized Trading Losses"* on the Debtor's statement of operations reflects the net amount of unrealized gains and losses during the period due to changes in the estimated fair value of the Debtor's investment inventory. No transactions involving the Debtor's investment inventory occurred during the period from the Petition Date through July 31, 2012.

*Unrealized Gain on Foreign Currency Translation*

The item captioned as *"Unrealized Gain on Foreign Currency Translation"* on the Debtor's statement of operations reflects the unrealized gain from foreign currency translation during the period due to the impact of movements in the Euro on the value of the Leveraged Euro Note (as defined below).

*Loss from Affiliates*

As described further in MOR-3, the Debtor is the 100% equity owner of the Aesop Fund and also owns a controlling interest in FIPLP, each of which are dormant private investment funds. The item captioned as *"Loss from Affiliates"* on the Debtor's statement of operations reflects changes in the value of the Debtor's investments in the Aesop Fund and FIPLP during the period based on the application of the equity method of accounting.

*Net Interest Expense*

The item captioned as *"Net Interest Expense"* on the Debtor's statement of operations reflects the net amount of interest expense during the period related to (i) certain pre-petition margin obligations of the Debtor under its prime brokerage relationship with Credit Suisse Securities (USA), LLC ("__Credit Suisse__"), (ii) the Leveraged Euro Note and (iii) the note payable due to Fletcher International, Inc. ("__Fletcher Delaware__"), net of interest income during the period related to (i) the Fletcher Delaware Note Receivable (as defined below), (ii) the Pledge Fee (as defined below) recognized during the period under the Guaranty and Pledge Agreement (as defined below) and (iii) interest income on the Debtor's pre-petition interest bearing bank accounts with Credit Suisse, HSBC and JPMorgan.

*Administrative Expense*

The item captioned as *"Administrative Expense"* on the Debtor's statement of operations reflects expenses incurred during the period related to (i) the maintenance of software licenses for the Debtor's securities trading platform, *Antares*, and its accounting information system, *Total Return*, which are each licensed from SS&C Technologies, Inc., and (ii) valuation services provided by the Debtor's third-party valuation advisor, Quantal International, Inc. ("__Quantal__"),

01:12

(iii) post-petition Board of Directors fees (iv) corporate secretarial services, and (v) custodial fees payable to HSBC.

### Consulting Expense

The item captioned as *"Consulting Expense"* on the Debtor's statement of operations reflects expenses for consulting services provided to the Debtor during the period by Stewart Turner and Stuart MacGregor.

### Legal Expense

The item captioned as *"Legal Expense"* on the Debtor's statement of operations reflects legal fees and reimbursable expenses incurred during the period related to the Debtor's Bermuda counsel.

### Professional Fees

The item captioned as *"Professional Fees"* on the Debtor's statement of operations reflects an estimate of professional fees and expenses incurred during the period related to the Debtor's Court-approved restructuring counsel, Young Conaway Stargatt & Taylor, LLP, and its proposed Chief Restructuring Officer and his staff with Conway MacKenzie Management Services, LLC.

### U.S. Trustee Expenses

The item captioned as *"U.S. Trustee Expenses"* on the Debtor's statement of operations reflects quarterly fees incurred by the Debtor, which are payable to the Office of the United States Trustee (the "U.S. Trustee") for the quarter ended June 30, 2012 in connection with the Debtor's bankruptcy case.

## MOR-3:

### Explanation of Certain Accounts

### Cash

The item captioned as *"Cash"* on the Debtor's statement of financial position includes the Debtor's three pre-petition cash accounts listed in MOR-1 with the following financial institutions: HSBC Bank (USA), N.A. ("HSBC") (operating account); JP Morgan Chase Bank, N.A. ("JPMorgan") (brokerage account); and Credit Suisse (brokerage account).

As of the date of filing of this MOR, the Debtor has established a Debtor in Possession cash account with Citibank, N.A. ("Citibank") and has transferred all available funds from its pre-petition accounts with HSBC and JPMorgan to its Debtor in Possession bank account with Citibank.

01:12

Credit Suisse is currently holding approximately $1.6 million in cash (the "Debtor's Funds") as well as other investment securities valued by the Debtor at approximately $8.2 million (the "Investment Securities" and, together with the Debtor's Funds, the "Debtor Assets"). Credit Suisse has asserted a lien against the Debtor Assets and has contended that the Debtor Assets constitute cash collateral under section 363 of the Bankruptcy Code. After several weeks of negotiations, on August 31, 2012, the Debtor and Credit Suisse entered into the Stipulation and Final Order by and Between Fletcher International, Ltd. and Credit Suisse (A) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (B) Governing Return of Assets to the Debtor, (C) Granting Adequate Protection to Credit Suisse Pursuant to 11 U.S.C. §§ 105(a), 361, 362 and 363 and (D) Allowing Set off by Credit Suisse (the "Cash Collateral Stipulation"). A motion was filed that same day seeking approval of the Cash Collateral Stipulation. Upon entry of the Cash Collateral Stipulation, Credit Suisse will release to the Debtor (i) approximately $1.01 million of the Debtor's Funds; and (ii) the Investment Securities. Credit Suisse will retain a contingent unliquidated super priority claim capped at $4.5 million.

### Due from Lehman

The item captioned as *"Due from Lehman"* on the Debtor's statement of financial position represents cash that was held at Lehman Brothers in a brokerage account at the time of Lehman's Chapter 11 filing. As a result, the Debtor is a creditor to the Lehman bankruptcy estate. Lehman has proposed a settlement, which, if accepted and approved by the bankruptcy court in the Debtor's bankruptcy case, would provide the Debtor with a discounted cash payment estimated to be approximately $0.05 million.

### Due from FIA Leveraged Fund

The Debtor and FIA Leveraged Fund, Ltd. (In Official Liquidation) ("Leveraged") were parties to an equity swap transaction (the "Leveraged Swap") that has been terminated. The item captioned as *"Due from FIA Leveraged Fund"* on the Debtor's statement of financial position reflects the net amount owing to the Debtor from Leveraged related to the Leveraged Swap.

### Assets Pledged

In connection with the acquisition of certain assets from United Community Banks, Inc. ("UCBI") by Asset Holding Company 5, LLC ("AHC5"), an affiliate of Fletcher Delaware, on April 30, 2010 (the "UCBI Transaction"), the Debtor entered into a guaranty and pledge agreement with AHC5 (as borrower) and Fletcher Delaware (as guarantor) (the "Guaranty and Pledge Agreement"), pursuant to which the Debtor agreed to pledge approximately $15.6 million in marketable securities on behalf of AHC5 as collateral (the "Collateral") to secure certain obligations of AHC5 and its subsidiaries (the "Carrying Costs") under the definitive agreements for the UCBI Transaction. Pursuant to the terms of the Guaranty and Pledge Agreement, the pledged securities were transferred to accounts controlled by UCBI and utilized to fund the Carrying Costs.

During the period subsequent to the execution of the Guaranty and Pledge Agreement, the pledged securities were substantially converted to cash and portions of that cash have been

01:12

utilized to fund the Carrying Costs under the UCBI Transaction for the benefit of AHC5 and its subsidiaries. Prior to the Petition Date, the Debtor's historical accounting practice was to record periodic funding of the Carrying Costs from the UCBI accounts as redemptions of shares held in the Debtor by Fletcher Delaware.

The item captioned as *"Assets Pledged"* on the Debtor's statement of financial position reflects the remaining amount of pledged assets that could be called by the Debtor pursuant to the terms of the Guaranty and Pledge Agreement as of the Petition Date, net of all amounts previously treated as redemptions of shares in the Debtor by Fletcher Delaware prior to the Petition Date.

During the period from the Petition Date through July 31, 2012, approximately $1.0 million of cash was funded from the accounts controlled by UCBI to satisfy certain Carrying Costs. Following the Petition Date, the Debtor has not treated the funding of the Carrying Costs as redemptions by Fletcher Delaware due to the fact that any redemption transactions would require the approval of the Bankruptcy Court and the historical accounting treatment of the transactions related to the Guaranty and Pledge Agreement is subject to review and investigation by the Debtor.

### *Inventory at Market*

The Debtor maintains an investment portfolio that consists of various privately purchased securities in publicly-traded companies. The item captioned as *"Inventory at Market"* on the Debtor's statement of financial position reflects the aggregate fair value of the Debtor's portfolio of these investment securities based on estimated fair values determined by the Debtor's third-party valuation advisor, Quantal.

The estimated fair value of the Debtor's investment portfolio declined by approximately $4.9 million during the period from the Petition Date through July 31, 2012 driven primarily by a $5.3 million unrealized loss on the Debtor's holdings of UCBI convertible preferred equity and warrants, which was partially offset by an unrealized gain on the Debtor's holdings of convertible preferred stock in Helix Energy Solutions Group, Inc. of approximately $0.6 million.

### *Pledge Fee Receivable*

The Guaranty and Pledge Agreement obligated AHC5 to pay the Debtor a pledge fee (the "Pledge Fee") calculated to be 1/12 of 1% (One Twelfth of One Percent) of the aggregate market value of Collateral pledged by the Debtor measured on the last day of each month from April 30, 2010, the effective date of the Guaranty and Pledge Agreement, through the date upon which the Collateral is returned to the Debtor. The item captioned as *"Pledge Fee Receivable"* on the Debtor's statement of financial position reflects the purported aggregate amount of Pledge Fees owing to the Debtor by AHC5 pursuant to the Guaranty and Pledge Agreement.

### *Investment in Affiliates*

The item captioned as *"Investment in Affiliates"* on the Debtor's statement of financial position consists of the Debtor's investments in its subsidiaries, the Aesop Fund and FIPLP.

01:12

*Note Receivable Due from Fletcher International Inc.*

The item captioned as "*Note Receivable Due from Fletcher International, Inc.*" (the "Fletcher Delaware Note Receivable") on the Debtor's statement of financial position represents the amount of principal and accrued interest related to a note receivable due to the Debtor from Fletcher Delaware which originated from the transfer to the Debtor of a note receivable owed to Fletcher Income Arbitrage Fund, Ltd. (In Official Liquidation) ("Arbitrage") from Fletcher Delaware in satisfaction of amounts owing to the Debtor by Arbitrage. The Fletcher Delaware Note Receivable, dated October 31, 2010, had an opening principal balance of approximately $13.4 million. The $14.2 million balance reflected on the Debtor's statement of financial position as of July 31, 2012 for the Fletcher Delaware Note Receivable reflects accrued interest between October 31, 2010 and July 31, 2012.

*Pre-Petition Accrued Expenses*

The item captioned as "*Pre- Petition Accrued Expenses*" on the Debtor's statement of financial position represents the Debtor's estimate of pre-petition accrued professional fees owing by the Debtor to various parties for legal, audit, valuation, custody, consulting and other professional services.

*Post-Petition Accrued Expenses*

The item captioned as "*Post- Petition Accrued Expenses*" on the Debtor's statement of financial position represents the estimated amount of post-petition accrued fees owing by the Debtor to various parties for legal, audit, valuation, custody, corporate secretarial, consulting and other professional services rendered subsequent to the Petition Date as well as accrued post-petition Board of Directors fees.

*Due to Fletcher Alpha*

The Debtor and Fletcher Fixed Income Alpha Fund, Ltd. (In Voluntary Liquidation) ("Alpha") were parties to an equity swap transaction (the "Alpha Swap"), which has been terminated. The item captioned as "*Due to Fletcher Alpha*" on the Debtor's statement of financial position represents the net amount owed to Alpha related to the Alpha Swap.

*Due to FIA Leveraged Fund (Euro Note Reduction) and Note Payable Due to FIA Leveraged Fund (Euro Note)*

The Debtor was a party to an investment arrangement with Arbitrage, pursuant to which investor proceeds from the issuance of certain Series E Class shares (the "Euro Class Shares") in Arbitrage were invested in the Debtor in the form of an interest bearing note payable to Arbitrage, which was structured to provide a yield that was indexed to Euro LIBOR (the "Arbitrage Euro Note").

-01:12

On or around December 31, 2010, various investors in the Euro Class Shares together with certain other investors in the Series 1 Class shares in Leveraged were redeemed in-kind through the issuance of certain other Series 6 Class shares in Leveraged (the "Series 6 Class Shares"). On January 1, 2011, the Arbitrage Euro Note was cancelled, and, in a series of transactions, the balance owing to Arbitrage was transferred to Leveraged and a new note was issued by the Debtor to Leveraged (the "Leveraged Euro Note") in the amount of EUR 20.4 million (USD $27.4 million).

Upon information and belief, certain of the investors attempted to redeem their investments in the Series 6 Class Shares subsequent to their issuance. Consequently, the Debtor reclassified a portion of the Leveraged Euro Note to an accounts payable balance, which is captioned as "Due to FIA Leveraged Fund (Euro Note Reduction)" on the Debtor's statement of financial position. The item captioned as "Note Payable to FIA Leveraged Fund (Euro Note)" on the Debtor's statement of financial position reflects the remaining principal and accrued interest owing by the Debtor to Leveraged related to the Leveraged Euro Note (net of the Euro Note Reduction described above).

*Note Payable Due to Fletcher International, Inc.*

The item captioned as "Note Payable Due to Fletcher International, Inc." on the Debtor's statement of financial position represents amounts advanced by Fletcher Delaware to the Debtor to fund payments to the Debtor's Bermuda counsel and its restructuring counsel.

## MOR-4:

- *Status of Post-Petition Taxes*:  The Debtor is a Bermuda corporation and is not generally subject to federal, state or local taxes in the United States.  While the Debtor is subject to withholding taxes for dividends paid to it, those taxes are withheld by the distributing party prior to payment to the Debtor.  As a result, no taxes are reported and no payment receipts or returns are required to be filed.

- *Summary of Unpaid Post-Petition Debts*:  The Debtor had post-petition obligations in the amount of approximately $1.2 million as of July 31, 2012 as presented on the Debtor's statement of financial position as of the same date in the item captioned as "Post-Petition Accrued Expenses" and as disclosed further on the explanations to MOR-3 herein.

## MOR-5:

- *Accounts Receivable Reconciliation and Aging*:  The Debtor incorporates by reference those receivables set forth on its balance sheet provided in response to MOR-3, subject to all applicable qualifications and limitations.

- *Taxes Reconciliation and Aging*:  The Debtor has no tax liabilities; therefore, there is nothing to report for this section.

01:12

**MOR-6:**

The Debtor has made no payments to insiders or professionals during the reporting period.

**MOR 7:** Explanations to Certain Items in the Debtor Questionnaire

- *Question 2:* The Debtor was charged monthly bank fees by JPMorgan that were automatically offset from the Debtor's pre-petition operating account with JPMorgan as detailed in MOR-1. Additionally, during the month of July 2012, the Debtor was charged interest related to certain pre-petition margin obligations in connection with the Debtor's pre-petition prime brokerage relationship with Credit Suisse. The interest owed to Credit Suisse was automatically offset from the Debtor's pre-petition brokerage account with Credit Suisse as detailed in MOR-1.

- *Question 3:* The Debtor has no tax return filing obligations.

- *Questions 4 and 5:* The Debtor maintains no insurance coverage.

- *Question 6:* The Debtor was charged monthly bank fees by JPMorgan that were automatically offset from the Debtor's pre-petition operating account with JPMorgan as detailed in MOR-1. Additionally, during the month of July 2012, the Debtor was charged interest related to certain pre-petition margin obligations in connection with the Debtor's pre-petition prime brokerage relationship with Credit Suisse. The interest owed to Credit Suisse was automatically offset from the Debtor's pre-petition brokerage account with Credit Suisse as detailed in MOR-1.

- *Question 7:* There are certain notes and amounts receivable from parties that are affiliated with the Debtor (Fletcher Delaware and Alpha) that relate to pre-petition transactions which are set forth on MOR-3 and are described in the explanations to MOR-3 set forth above. Interest continues to accrue post-petition on certain of these receivables.

- *Questions 8 through 12:* The Debtor has no tax liabilities other than withholding taxes that are withheld from dividends issued to the Debtor.

- *Question 13.* During the Reporting Period, the Debtor was delinquent in the following payments due to the delays experienced by the Debtor in the establishment of its Debtor in Possession bank account with Citibank:

  o The Debtor was delinquent in the payment of quarterly fees to the U.S. Trustee (the "Quarterly Fees") for the quarter ended June 30, 2012. The Debtor remitted payment of the Quarterly Fees in the amount of $325.00 on August 21, 2012.

01:12

○ The Debtor was delinquent in the payment of quarterly Board of Directors fees payable to the Debtor's two directors for the quarter ending September 30, 2012. Consistent with historical pre-petition practice, each director is entitled to receive director's fees of $10,000 per quarter payable in advance on the first day of each calendar quarter. Payments totaling $20,000 were made to the directors in respect of third quarter director's fees on August 29, 2012.

○ The Debtor also had a third director, Stewart Turner, for the period from July 1, 2012 through July 15, 2012, and no fees have been paid to this director for that fifteen-day period.

• *Question 16*: As discussed in the response to Question 13 above, while the Debtor was delinquent in the payment of Quarterly Fees to the U.S. Trustee for the quarter ended June 30, 2012 in the reporting period due to the delays experienced by the Debtor in the establishment of its Debtor in Possession bank account with Citibank, the Debtor remitted payment of the Quarterly Fees in the amount of $325.00 on August 21, 2012.

• 01:12

In re Fletcher International, Ltd.  
Debtor

Case No. 12-12796  
Reporting Period: 7/01/12 - 7/31/12

## SCHEDULE OF CASH RECEIPTS AND DISBURSEMENTS

Amounts reported should be from the debtor's books and not the bank statement. The beginning cash should be the ending cash from the prior month or, if this is the first report, the amount should be the balance on the date the petition was filed. The amounts reported in the "CURRENT MONTH - ACTUAL" column must equal the sum of the four bank account columns. Attach copies of the bank statements and the cash disbursements journal. The total disbursements listed in the disbursements journal must equal the total disbursements reported on this page. A bank reconciliation must be attached for each account. [See MOR-1 (CON'T)]

|  | BANK ACCOUNTS | | | |
|---|---|---|---|---|
| ACCOUNT NUMBER (LAST) | OPERATING/USHER | MONEY MARKET | OPERATING INVEST | CURRENT MONTH ACTUAL (TOTAL) |
| CASH BEGINNING OF PERIOD | 36,601.03 | 179,936.96 | 1,658,859.49 | 1,875,397.48 |
| RECEIPTS | | | | |
| CASH SALES | | | | |
| ACCOUNTS RECEIVABLE - PREPETITION | | | | - |
| ACCOUNTS RECEIVABLE - POSTPETITION | | | | - |
| LOANS AND ADVANCES | | | | |
| SALE OF ASSETS | | | | |
| OTHER (ATTACH LIST) | | 3.00 | | 3.00 |
| TRANSFERS (FROM DIP ACCTS) | | | | - |
| TOTAL RECEIPTS | - | 3.00 | - | 3.00 |
| DISBURSEMENTS | | | | |
| NET PAYROLL | | | | - |
| PAYROLL TAXES | | | | - |
| SALES, USE, & OTHER TAXES | | | | - |
| INVENTORY PURCHASES | | | | |
| SECURED/ RENTAL/ LEASES | | | | - |
| INSURANCE | | | | - |
| ADMINISTRATIVE | | | | - |
| SELLING | | | | - |
| OTHER (ATTACH LIST) | | (1,250.00) | (42,872.42) | (44,122.42) |
| OWNER DRAW * | | | | - |
| TRANSFERS (TO DIP ACCTS) | | | | - |
| PROFESSIONAL FEES | | | | - |
| U.S. TRUSTEE QUARTERLY FEES | | | | - |
| COURT COSTS | | | | - |
| TOTAL DISBURSEMENTS | - | (1,250.00) | (42,872.42) | (44,122.42) |
| NET CASH FLOW (RECEIPTS LESS DISBURSEMENTS) | | | | |
| CASH – END OF MONTH | 36,601.03 | 178,689.96 | 1,615,987.07 | 1,831,278.06 |

* COMPENSATION TO SOLE PROPRIETORS FOR SERVICES RENDERED TO BANKRUPTCY ESTATE

### THE FOLLOWING SECTION MUST BE COMPLETED

DISBURSEMENTS FOR CALCULATING U.S. TRUSTEE QUARTERLY FEES: (FROM CURRENT MONTH ACTUAL COLUMN)

| TOTAL DISBURSEMENTS | (44,122.42) |
|---|---|
| LESS: TRANSFERS TO OTHER DEBTOR IN POSSESSION ACCOUNTS | 0 |
| PLUS: ESTATE DISBURSEMENTS MADE BY OUTSIDE SOURCES (i.e. from escrow accounts) | 0 |
| TOTAL DISBURSEMENTS FOR CALCULATING U.S. TRUSTEE QUARTERLY FEES | (44,122.42) |

FORM MOR-1  
2/2008  
PAGE 1 OF 1

In re Fletcher International, Ltd.
Debtor

Case No. 12-12796
Reporting Period: 7/01/12 - 7/31/12

**MOR-1, cont. Schedule Of Cash Receipts and Disbursements**
**HSBC GL Account 1010**
**For The Month Ended 7/31/12**

| Date | Description | Activity |
|------|-------------|----------|
| | No Activity | |
| 7/31/2012 | Balance | 36,601.03 |

**JP Morgan GL Account 1140**
**For The Month Ended 7/31/12**

| Date | Description | Activity |
|------|-------------|----------|
| | Open | 179,936.96 |
| 6/30/2012 | Interest | 1.52 |
| 7/2/2012 | Interest | 1.48 |
| 7/19/2012 | Bank Charge | (1,250.00) |
| 7/31/2012 | Balance | 178,689.96 |

**Credit Suisse GL Account 1160**
**For The Month Ended 7/31/12**

| Date | Description | Activity |
|------|-------------|----------|
| | Open | 1,658,859.49 |
| 7/2/2012 | Net Interest | (42,872.42) |
| 7/31/2012 | Balance | 1,615,987.07 |

In re Fletcher International, Ltd.
Debtor

Case No. 12-12796
Reporting Period: 7/01/12 - 7/31/12

**MOR-1, cont. Bank and Broker Reconciliations**
**HSBC GL Account 1010**
**For The Month Ended 7/31/12**

|  | Balance |
|---|---|
| Balance Per GL | 36,601.03 |
| Balance Per Statement | 36,598.50 |
| Diff | (2.53) |

**MOR-1 Bank and Broker Reconciliations**
**JP Morgan GL Account 1140**
**For The Month Ended 7/31/12**

|  | Balance |
|---|---|
| Balance Per GL | 178,689.96 |
| Balance Per Statement | 178,689.96 |
| Diff | - |

**MOR-1 Bank and Broker Reconciliations**
**Credit Suisse GL Account 1160**
**For The Month Ended 7/31/12**

|  | Balance |
|---|---|
| Balance Per GL | 1,615,987.07 |
| Balance Per Statement | 1,615,987.05 |
| Diff | (0.02) |

# HSBC ◆X◆

**Commercial Asset Management Account**
Consolidated Account Statement

Account Number
06/30/2012 - 07/31/2012

Questions?
Call 1-800-368-7808 or write:
HSBC
US Private Bank
452 Fifth Avenue, 6th Floor
New York, NY 10018

lllllullllullulllulllulllullulllullllulllullulllulllul
FLETCHER INTERNATIONAL LTD
C/O FLETCHER ASSET MANAGEMENT INC
48 WALL ST FL 5
NEW YORK NY 10005-2911

This consolidated account statement is provided for infor-
mational purposes only and includes assets held at HSBC
Bank USA, N.A. and Pershing LLC as clearing firm for
HSBC Securities (USA) Inc.

Please examine promptly. See the reconciliation page(s)
of this statement for 1) instructions for balancing your
HSBC Bank account(s), and 2) the steps to follow if you
think there is an error on this statement. See breakdown by
account information below for HSBC Securities (USA)
Inc. account inquiries. Should you change your address,
be sure to notify your branch office of your new address.
All deposited items are credited subject to final payment.

## TOTAL ASSET SUMMARY:    $36,598.50

| Account | Prior Period | Current Period |
|---|---|---|
| Commercial Asset Management Account | $36,598.50 | $36,598.50 |
| Investments in the HSBC Investor Money Market Funds, Money Market Fund assets are held at C&I Fund Services, OH, Inc. the fund's transfer agent. | $0.00 | $0.00 |

Not a deposit or other obligation of the bank or any of its affiliates; Not FDIC insured or insured by any
federal government agency of the United States; Not guaranteed by the bank or any of its affiliates and
may lose value.

| Total Commercial Asset Management Account | $36,598.50 | $36,598.50 |

## COMMERCIAL ASSET MANAGEMENT ACCOUNT SUMMARY    For Period Ending 07/31/2012

| Account | Account Number | Interest Credited Year to Date | Beginning Balance | Deposits and Other Additions | Checks/Withdrawals and Other Subtractions | Ending Balance |
|---|---|---|---|---|---|---|
| Checking Account | | | $36,598.50 | $0.00 | $0.00 | $36,598.50 |
| COMMERCIAL ASSET MGMT | | | | | | $36,598.50 |
| Total | | | | | | $36,598.50 |

Commercial Asset Management Account
Consolidated Account Statement
Account Number
06/30/2012 - 07/31/2012

# MONEY MARKET FUND SWEEP ACCOUNT SUMMARY

For Period Ending 07/31/2012

| Fund Name | Opening Balance | Total Value Shares Purchased | Total Value Shares Redeemed | Closing Balance | Income This Year | Current Yield (a) | 30-Day Yield (a) |
|---|---|---|---|---|---|---|---|
| HSBC US TREASURY MMF Class Y | $0.00 | $0.00 | $0.00 | $0.00 | $0.88 | | |
| Total | $0.00 | $0.00 | $0.00 | $0.00 | $0.88 | | |

Not a deposit or other obligation of the bank or any of its affiliates; Not FDIC insured or insured by any federal government agency of the United States; Not guaranteed by the bank or any of its affiliates; and may lose value.

(a) As of Statement Date  (b) Average 30-Day Yield



Commercial Asset Management Account
Consolidated Account Statement
Account Number
06/30/2012 - 07/31/2012

# COMMERCIAL ASSET MANAGEMENT ACCOUNT DETAIL    *For Account Number*

| | | | |
|---|---|---|---|
| Office: | US Private Bank | Checking Balance as of 07/31: (Checking Account is FDIC insured) | 36,598.50 |
| Account Name 1: | FLETCHER INTERNATIONAL LTD | Money Market Sweep Balance as of 07/31: (Money Market Sweep Account is not FDIC insured) | 0.00 |
| | | Total Account Summary: | 36,598.50 |

| | | | |
|---|---|---|---|
| Dividends Credited Year to Date: | 0.88 | Dividends Paid This Period: | 0.00 |
| Federal Tax on Dividends Withheld Year to Date: | 0.25- | Federal Tax on Dividends Withheld: | 0.00 |

| Date Posted | Description Of Transactions | Checks and Other Subtractions | Deposits and Other Additions | Checking Balance | Money Market Sweep Balance |
|---|---|---|---|---|---|
| | NO ACTIVITY | | | | |

DEFINITIONS OF ABBREVIATIONS USED IN MONEY MARKET FUND NAMES:
"T-F"      REFERS TO "TAX FREE"
"TSY"     REFERS TO "TREASURY"
"MMF"    REFERS TO "MONEY MARKET FUND"

*IF YOU ARE INVESTED IN A TAX-FREE MONEY MARKET FUND, PLEASE NOTE: BECAUSE THE TAX-FREE FUNDS ARE NON-DIVERSIFIED AND INVEST PRIMARILY IN MUNICIPAL SECURITIES, THE FUNDS ARE PARTICULARLY SUSCEPTIBLE TO ANY ECONOMIC, POLITICAL, OR REGULATORY DEVELOPMENTS AFFECTING A PARTICULAR ISSUE OF MUNICIPAL SECURITIES. THE FUNDS INCOME MAY BE SUBJECT TO CERTAIN STATE AND LOCAL TAXES AND DEPENDING ON ONE'S TAX STATUS, TO FEDERAL ALTERNATIVE MINIMUM TAX. NON-RESIDENTS ARE SUBJECT TO STATE TAXATION. INVESTORS SHOULD CONSULT WITH THEIR TAX ADVISOR REGARDING THEIR TAX SITUATION.*

YOUR COMMERCIAL ASSET MANAGEMENT ACCOUNT STATEMENT SHOWS THE MARKET VALUE AS OF THE MOST RECENT VALUATION DATE FOR MONEY MARKET FUND SHARES THE BANK IS HOLDING FOR YOU, INCLUDING THE SHARES PURCHASED AND SOLD AT YOUR REQUEST AND DIVIDENDS REINVESTED DURING THE STATEMENT PERIOD. ON ANY BUSINESS DAY, YOUR AVAILABLE FUNDS INCLUDE THE COMBINED BALANCE IN YOUR CHECKING ACCOUNT AND THOSE INVESTED IN YOUR MONEY MARKET FUND. NOTE THAT MONEY MARKET FUND YIELD FLUCTUATES AND IS NOT GUARANTEED.

THE INVESTMENT ADVISOR OF THIS FUND IS HSBC GLOBAL ASSET MANAGEMENT (USA) INC. WHICH MAY RECEIVE AN INVESTMENT ADVISOR'S FEE. FORESIDE DISTRIBUTION SERVICES, L.P., MEMBER FINRA, IS THE DISTRIBUTOR OF THE HSBC INVESTOR FUNDS AND IS NOT AFFILIATED WITH THE ADVISOR.

YOUR DEPOSIT OR WITHDRAWAL WAS APPLIED TO SHARES PURCHASED OR REDEEMED ON THE APPLICABLE DATE AS STATED IN THE ADDENDUM TO RULES FOR CASH MANAGEMENT SERVICES.

AN INVESTMENT IN A MONEY MARKET FUND IS NEITHER INSURED NOR GUARANTEED BY THE FDIC OR ANY OTHER GOVERNMENT AGENCY. ALTHOUGH THE FUNDS STRIVE TO MAINTAIN THE VALUE OF YOUR INVESTMENT AT $1.00 PER SHARE, IT IS POSSIBLE TO LOSE MONEY BY INVESTING IN THE FUNDS.

Commercial Asset Management Account
Consolidated Account Statement
Account Number
06/30/2012 - 07/31/2012

# COMMERCIAL ASSET MANAGEMENT RECONCILIATION

*For Account Number*

Please follow the steps below to reconcile your checkbook register with the statement for your Commercial Asset Management account.

1. Be sure you have written all items in your checkbook register, including automatic deposits, automatic payments and service charges.

2. In your checkbook register, mark off each addition, subtraction, and check reported in this statement period.

3. Adjust your register balance for dividends reported to you on this statement if not previously recorded.

4. Your ending balance from this statement.

5. List deposits or credits that are not included in the Deposits and Other Additions column of this statement.

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ |

b. Total additions .................................................

6. Subtotal by adding 4 and 5b ..................................... $0.00

7. a. List outstanding checks, withdrawals, purchases, or other debits from your checkbook register that do not appear in the Checks and Other Subtractions columns of this statement.

| Check/Date | Amount | Check/Date | Amount | Check/Date | Amount |
|------------|--------|------------|--------|------------|--------|
| ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ |

b. Total subtractions ............................................... $ ___

8. Subtract 7b from 6. This should match your checkbook register balance. $36,598.50    $ ___

# HSBC ◆❚◗

Commercial Asset Management Account
Consolidated Acc̲̲̲̲̲̲̲ S̲̲̲̲̲̲̲
Account Number
06/30/2012 - 07/31/2012

## IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ACCOUNTS

If you think your statement or receipt is wrong, or if you need more information about a transfer on the statement or receipt, TELEPHONE US OR WRITE TO US AS SOON AS YOU CAN – USE THE TELEPHONE NUMBER OR ADDRESS ON THE FRONT OF THIS STATEMENT.

In case of any other error, like a forged or altered check, or an error in a non-electronic deposit, you must report the error within 14 days of the mailing or delivery of this statement or the account will be considered correct.

FLETCHER INTERNATIONAL LTD ACCT.
For the Period 7/1/12 to 7/31/12

Page 1 of 9

JPMorgan Chase Bank, N.A.
270 Park Avenue, New York, NY 10017-2014

## Asset Account

| J.P. Morgan Team | | |
|---|---|---|
| William Pitts II | Banker | 212/464-2559 |
| Melissa Crabtree | Client Service Team | 800/837-1145 |
| Timothy Hartnett | Client Service Team | |
| Colin Liberatore | Client Service Team | |

Online access      www.jpmorganonline.com

Please see disclosures located at the end of this statement package for important information relating to each J.P. Morgan account(s).

| Table of Contents | Page |
|---|---|
| Account Summary | 2 |
| Holdings | 4 |
| Equity | 5 |
| Cash & Fixed Income | 7 |
| Other Assets | 8 |
| Portfolio Activity | |

000022994.2RA.1E.00001/FLETC/43010602

J.P.Morgan

*J.P.Morgan*

FLETCHER INTERNATIONAL LTD  ACCT.
For the Period 7/1/12 to 7/31/12

## Account Summary

| Asset Allocation | Beginning Market Value | Ending Market Value | Change In Value | Estimated Annual Income | Current Allocation |
|---|---|---|---|---|---|
| Cash & Fixed Income | 179,938.48 | 178,689.96 | (1,248.52) | 17.86 | 100% |
| Market Value | $179,938.48 | $178,689.96 | ($1,248.52) | $17.86 | 100% |
| Accruals | 1.48 | 1.52 | 0.04 | | |
| Market Value with Accruals | $179,939.96 | $178,691.48 | ($1,248.48) | | |

| Portfolio Activity | Current Period Value | Year-to-Date Value |
|---|---|---|
| Beginning Market Value | 179,938.48 | 182,426.13 |
| Withdrawals & Fees | (1,250.00) | (3,750.00) |
| Net Contributions/Withdrawals | ($1,250.00) | ($3,750.00) |
| Income & Distributions | 1.48 | 13.83 |
| Ending Market Value | $178,689.96 | $178,689.96 |
| Accruals | 1.52 | 1.52 |
| Market Value with Accruals | $178,691.48 | $178,691.48 |

J.P.Morgan

*J.P.Morgan*

FLETCHER INTERNATIONAL LTD   ACCT
For the Period 7/1/12 to 7/31/12

## Account Summary   CONTINUED

### Income Summary

| | Current Period Value | Year-to-Date Value |
|---|---|---|
| Interest Income | 1.48 | 13.83 |
| Income | $1.48 | $13.83 |

### Cost Summary

| | Cost |
|---|---|
| Cash & Fixed Income | 178,689.96 |
| Total | $178,689.96 |

J.P.Morgan

*J.P.Morgan*

**FLETCHER INTERNATIONAL LTD ACC**
**For the Period 7/1/12 to 7/31/12**

## Equity Summary

| Asset Categories | Beginning Market Value | Ending Market Value | Change In Value | Current Allocation |
|---|---|---|---|---|
| US Small/Mid Cap Equity | 0.00 | 0.00 | 0.00 | |

**Note:** ** Unrealized Gain/Loss is shown as "N/A" in cases where we do not have appropriate cost information for all tax lots comprising the position. Please contact your J.P. Morgan team for additional information.

## Equity Detail

| | Price | Quantity | Value | Adjusted Cost / Original Cost | Unrealized Gain/Loss | Est. Annual Inc. / Accrued Div. | Yield |
|---|---|---|---|---|---|---|---|
| **US Small/Mid Cap Equity** | | | | | | | |
| COM21 INC<br>205937-10-5 | | 182,000.000 | | N/A ** | N/A | | |

J.P.Morgan

## J.P.Morgan

FLETCHER INTERNATIONAL LTD  ACCT.
For the Period 7/1/12 to 7/31/12

## Cash & Fixed Income Summary

| Asset Categories | Beginning Market Value | Ending Market Value | Change In Value | Current Allocation |
|---|---|---|---|---|
| Cash | 179,938.48 | 178,689.96 | (1,248.52) | 100% |

| Market Value/Cost | Current Period Value |
|---|---|
| Market Value | 178,689.98 |
| Cost | 178,689.96 |
| Estimated Annual Income | 17.86 |
| Accrued Interest | 1.52 |
| Yield | 0.01% |

### SUMMARY BY MATURITY

| | Market Value | % of Bond Portfolio |
|---|---|---|
| Cash & Fixed Income | 178,689.98 | 100% |
| 0-5 months[1] | | 100% |

[1] The years indicate the number of years until the bond is scheduled to mature based on the statement end date.  Some bonds may be called, or paid in full, before their stated maturity.

### SUMMARY BY TYPE

| | Market Value | % of Bond Portfolio |
|---|---|---|
| Cash & Fixed Income | | |
| Cash | 178,689.98 | 100% |

J.P.Morgan

*J.P.Morgan*

**FLETCHER INTERNATIONAL LTD ACCT.**
For the Period 7/1/12 to 7/31/12

Notes: ¹ This is the Annual Percentage Yield (APY) which is the rate earned if balances remain on deposit for a full year with compounding, there is no change in the interest rate and all interest is left in the account.

## Cash & Fixed Income Detail

| | Price | Quantity | Value | Adjusted Cost / Original Cost | Unrealized Gain/Loss | Est. Annual Income / Accrued Interest | Yield |
|---|---|---|---|---|---|---|---|
| Cash | | | | | | | |
| US DOLLAR | 1.00 | 178,689.98 | 178,689.98 | 178,689.98 | | 17.85 / 1.52 | 0.01%¹ |

J.P.Morgan

*J.P.Morgan*

FLETCHER INTERNATIONAL LTD  ACCT.
For the Period 7/1/12 to 7/31/12

## Other Summary

| Asset Categories | Beginning Estimated Value | Ending Estimated Value | Change In Value | Current Allocation |
|---|---|---|---|---|
| Other | 0.00 | 0.00 | 0.00 | |

Note:   ** Unrealized Gain/Loss is shown as "N/A" in cases where we do not have appropriate cost information for all tax lots comprising the position. Please contact your J.P. Morgan team for additional information.

## Other Detail

| | Price | Quantity | Value | Adjusted Cost / Original Cost | Unrealized Gain/Loss | Accruals |
|---|---|---|---|---|---|---|
| **Other** | | | | | | |
| S/E/C - WTS ALLOY INC, EXP 1/27/2012 RSTD Bearer 999299-5Z-7 | | 1.000 | | N/A ** | N/A | |
| S/E/C - RTS MECHANICAL TECH INC RSTD EXP: 12/31/06 TO PUR $20MM Bearer 999300-1A-4 | | 1.000 | | N/A ** | N/A | |
| **Total Other** | | | $0.00 | $0.00 | $0.00 | |

J.P.Morgan

*J.P.Morgan*

FLETCHER INTERNATIONAL LTD  ACCT. V
For the Period 7/1/12 to 7/31/12

## Portfolio Activity Summary

| Transactions | Current Period Value | Year-To-Date Value* |
|---|---|---|
| Beginning Cash Balance | 179,938.48 | — |
| **INFLOWS** | | |
| Income | 1.48 | 13.83 |
| Total Inflows | $1.48 | $13.83 |
| **OUTFLOWS **** | | |
| Fees & Commissions | (1,250.00) | (3,750.00) |
| Total Outflows | ($1,250.00) | ($3,750.00) |
| Ending Cash Balance | $178,689.96 | — |

* Year to date information is calculated on a calendar year basis.
** Your accounts standing instructions use a FIRST IN, FIRST OUT method for relieving assets from your position

## Portfolio Activity Detail

### INFLOWS & OUTFLOWS

| Settle Date | Type Selection Method | Description | Quantity Cost | Per Unit Amount | Amount |
|---|---|---|---|---|---|
| **Income** | | | | | |
| 7/2 | Interest Income | DEPOSIT SWEEP INTEREST FOR JUNE @ .01% RATE ON NET AVG COLLECTED BALANCE OF $178,938.48 AS OF 07/01/12 | | | 1.48 |

J.P.Morgan

*J.P.Morgan*

**FLETCHER INTERNATIONAL LTD   ACCT.**
For the Period 7/1/12 to 7/31/12

| Settle Date | Type Selection Method | Description | Quantity Cost | Amount |
|---|---|---|---|---|
| **Fees & Commissions** | | | | |
| 7/19 | Fees & Commissions | JP.MORGAN CHASE CUSTODY FEES FOR THE PERIOD FROM 04-01-2012 THROUGH 06-30-2012 MARKET VALUE: $179,938.48 | | (1,250.00) |

**J.P.Morgan**

THIS PAGE INTENTIONALLY LEFT BLANK

**J.P.Morgan**

**For the Period 7/1/12 to 7/31/12**

For your convenience we have combined statement(s) for activity you conduct through J.P. Morgan in one package. Below are important disclosures relating to these different accounts. These statements may relate to various account types. Some of the disclosures are applicable to all of your accounts. For ease of reference the disclosures applicable to a particular type of account have been grouped together by descriptive headers.

**IMPORTANT GENERAL INFORMATION APPLICABLE TO ALL OF YOUR ACCOUNT(S)**

**Important Information Regarding Pricing, Valuations, Estimated Annual Income, and Estimated Yield**

Important information (including without limitation, prices, exchange rates, accrued income and bond ratings) furnished herein, some of which has been provided by pricing sources that J.P. Morgan believes to be reliable, is not guaranteed for accuracy but provided for informational purposes and is furnished for the exclusive use of the client.

The current price is the value of the financial asset share, unit or contract as priced at the close of the statement period or the last available price. All values provided for structured yield deposits (for example, JPMorgan London Time Deposits) reflect the original deposit amount only. The value for Real Estate, Mineral Interests and Miscellaneous Assets may not reflect the most current value of the asset.

Important Information regarding Auction Rate Securities (ARS). ARS are debt or preferred securities with an interest or dividend rate reset periodically in an auction. Although there may be daily, weekly and monthly resets, there is no guarantee that there will be liquidity. If there are not enough bids at an auction to redeem the securities available for sale, the result may be a failed auction. In the event of a failed auction, there is no assurance that a secondary market will develop or that the security will trade at par or any other price reflected on statements and online. Accordingly, investors should not rely on pricing information appearing in their statements or online with respect to ARS. When J.P. Morgan is unable to obtain a price from an internal or outside source for a particular ARS, the price column on your statement will indicate "unpriced".

Valuations of over-the-counter derivative transactions, including certain derivative-related deposit products, have been prepared on a mid-market basis. These valuations are sourced from the various issuers of the securities or they are sourced from a third party valuation provider. J.P. Morgan expressly disclaims any responsibility for (1) the accuracy of the models or estimates used in deriving the valuations, (2) any errors or omissions in computing or disseminating the valuations, and (3) any uses to which the valuations are put. Valuations are provided for information purposes only and are intended solely for your own use. Please refer to the trade confirmation for details of each transaction.

Certain assets, including but not limited to, pooled and private investments, non-publicly traded securities, derivatives, partnership interests and tangible assets are generally illiquid, the value of such asset may have been provided to us by third parties who may or may not be the independent of the issuer or manager. Such information is reflected as of the last date provided to us, and is not independently verified.

In cases where we are unable to obtain a current market value from an internal or outside source for a particular security, the price column on your statement will indicate "unpriced". Although such securities may have value, please note that the value of a security indicated as "unpriced" will not be included in your overall current market value as reflected on the statement.

J.P. Morgan makes no representation, warranty or guarantee, express or implied, that any quoted value represents the actual terms at which securities could be bought or sold or new transactions could be entered into, or the actual terms on which existing transactions or securities could be liquidated. Such values may only be indicative.

When we are unable to obtain a current value from an internal or outside source for a particular security, the price column on your statement will indicate "unpriced".

If a partial call is made with respect to an issue of securities included in your Accounts we will allocate the call by a method we deem fair and equitable.

To the extent applicable, please note the following regarding estimated annual income (EAI) and estimated yield (EY): EAI and EY for certain types of securities could include a return of principal or capital gains in which case the EAI and EY would be overstated. EAI and EY are estimates and the actual income and yield might be lower or higher than the estimated amounts. EY reflects only the income generated by an investment. It does not reflect changes in its price, which may fluctuate.

**Offshore Deposits - London and Nassau**

Disclosures Page 1 of 2

*J.P.Morgan*

For the Period 7/1/12 to 7/31/12

Deposits in Foreign Branches are not insured by the FDIC or any other Agency of the Federal Government; amounts in such foreign accounts do not have the benefit of any domestic preference applicable to U.S Banks; certain Foreign accounts are considered reportable to the Internal Revenue Service on a Report of Foreign Bank and Financial Accounts (TD F 90-22.1).

Bank products and services are offered through JPMorgan Chase Bank, N.A. ("JPMCB") and its banking affiliates. Securities are offered by J.P.Morgan Securities LLC ("JPMS") and, to the extent noted below, cleared through J.P. Morgan Clearing Corp. ("JPMCC").

Neither JPMS, nor JPMCC is a bank and are each separate legal entities from its bank or thrift affiliates.

| Investment Products:    Not FDIC Insured    -No Bank Guarantee    -May Lose Value |

**Fund manager disclosure information available upon request**

If you have an investment account that is managed by an SEC-Registered Investment Adviser, J.P. Morgan will provide a copy of the adviser's Form ADV II or brochure upon written request.

These statements are not official documents for income tax reporting purposes and should not be relied upon for such purposes, including determination of income, cost basis, amortization or accretion, or gain/loss. Such information, which may be inaccurate, incomplete or subject to updating, should be confirmed with your records and your tax advisor.

Please take the steps indicated below if you think statement(s) are incorrect or contact your J.P.Morgan team if you require additional information about a transaction on your statement(s).

**IMPORTANT ADDITIONAL INFORMATION APPLICABLE ONLY TO YOUR ASSET ACCOUNT(S) (NOT LINKED TO JPMS)**

Your Asset Account consists of a bank account that custodies assets.

**In Case of Errors or Questions About Your Electronic Transfers.**

Contact your J.P. Morgan Team at one of the telephone numbers on the front of your statements or write us at at J.P. Morgan, 500 Stanton Christiana Road, 1/OPS3, Newark, DE 19713-2107 as soon as you can, if you think your statement is wrong or if you need more information about a transfer on the statement. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. (1) Tell us your name and account number. (2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information. (3) Tell us the dollar amount of the suspected error. We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**In Case of Errors or Questions About Non-Electronic Transfers (Checks or Deposits).**

Contact JPMorgan Chase Bank, N.A. ("JPMCB") Member FDIC immediately if a statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing as soon as possible after your statement was made available to you. For more complete details, see the applicable account agreements and appendices that govern your account.

Deposit products and services are offered by JPMCB Member FDIC.

**In Case of Other Errors or Questions About Your Asset Account Statement(s)**

You must promptly advise your J.P.Morgan representative of material changes in your investment objectives or financial situation or if you wish to modify the management of your account. Unless you inform otherwise, your J.P.Morgan representative will consider the information currently in its files to be complete and accurate.

Disclosures Page 2 of 2

J.P.Morgan

**CREDIT SUISSE PRIMEVIEW**    Cash Ledger Netted

From Jul-02-2012 to Jul-31-2012, Report Date: Aug-02-2012

| Posting Date | Trade Date | Settle Date | Client Ref | Credit Suisse Ref | Transaction Type | Quantity | Description | Security ID | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FLETCHER INTERNATIONAL LTD. | | = USD | | | | | | | | Opening Balance | 1,668,569.47 |
| | | | | | | | | | | 6.16 | 1,658,504.63 |
| JU-03-2012 | JU-03-2012 | JU-03-2012 | | 1000397071 | INT | | Interest | | | | 1,628,976.31 |
| JU-03-2012 | JU-03-2012 | JU-03-2012 | | 1002297071 | INT | | Interest | | (37,696.34) | | 1,628,974.76 |
| JU-03-2012 | JU-03-2012 | JU-03-2012 | | 2031043040407P1 | TAX WH | | NRA Tax Withheld | | (1.55) | | 1,616,997.05 |
| JU-03-2012 | JU-03-2012 | JU-03-2012 | | 1031895152 | JNL | | Cash Journal | | (4,697.71) | | 1,616,997.05 |
| JU-03-2012 | JU-03-2012 | JU-03-2012 | | | | | | | | Closing Balance | 1,616,997.05 |
| FLETCHER INTL. LTD. S. | | = USD | | | | | | | | Opening Balance | 0.00 |
| | | | | | | | | | | | (4,697.71) |
| JU-03-2012 | JU-03-2012 | JU-03-2012 | | 1000397071 | INT | | Interest | | (4,697.71) | | (4,697.71) |
| JU-05-2012 | JU-05-2012 | JU-05-2012 | | 1031895151 | JNL | | Cash Journal | | | 4,697.71 | 0.00 |
| JU-05-2012 | JU-05-2012 | JU-05-2012 | | | | | | | | Closing Balance | 0.00 |

| Sort By: | Group By: | Advanced Filters: |
|---|---|---|
| | Account Name / Account [ascending] | |
| | Settle CCY [ascending] | |

Page 1 of 1

Copyright © 1997 - 2012 CREDIT SUISSE GROUP AG and or its Affiliates. All rights reserved.

FORM MOR-2
2/2009
PAGE 1 OF 1

| Debtor | In re Fletcher International, Ltd. | Case No. 12-12796 | Reporting Period: 7/01/12 - 7/31/12 |

## STATEMENT OF OPERATIONS
*(Unaudited)*

|  | Month Ended July 31, 2012 | Cumulative Post-Petition Period |
|---|---|---|
| **Income (Loss) from Investing Activities:** | | |
| Net Unrealized Trading Losses | $ (4,877,076) | $ (4,877,076) |
| Unrealized Gain on Foreign Currency Translation | 487,030 | 487,030 |
| Loss from Affiliates | (124,644) | (124,644) |
| Total Income (Loss) from Investing Activities | (4,514,690) | (4,514,690) |
| **Operating Expenses:** | | |
| Net Interest Expense | 31,915 | 31,915 |
| Administrative Expense | 91,100 | 91,100 |
| Legal Expense | 59,964 | 59,964 |
| Consulting Expense | 34,588 | 34,588 |
| Total Operating Expenses | 217,567 | 217,567 |
| **Reorganization Items:** | | |
| Professional Fees | 972,118 | 972,118 |
| U.S. Trustee Expense | 4,325 | 4,325 |
| Total Reorganization Items | 976,443 | 976,443 |
| Net (Loss) | $ (5,708,700) | $ (5,708,700) |

| In re | | Fletcher International, LLC | Debtor |
|---|---|---|---|

| | Case No. | 12-12796 |
|---|---|---|
| | Reporting Period: | 7/01/12 - 7/31/12 |

**MOR-3**

**Fletcher International, LTD.**
**STATEMENT OF FINANCIAL POSITION**
**(Unaudited)**

| | As of | |
|---|---|---|
| | July 31, 2012 | June 30, 2012[1] |
| **Assets** | | |
| Cash | | |
| Due From Lehman | $ 1,931,278 | $ 1,875,397 |
| Due From FIA Leveraged Fund | 64,086 | 64,086 |
| Assets Pledged | 648,779 | 648,779 |
| Investment At Market | 3,867,775 | 3,867,775 |
| Pledge Fee Receivable | 22,241,988 | 22,219,044 |
| Note Receivable Due From Fletcher International, Inc. | 78,846 | 78,831 |
| Investment in Affiliates | 3,921,856 | 4,046,500 |
| Prepaid Expenses | 14,213,670 | 14,180,319 |
| Uninvested At Market | 121,599 | 130,748 |
| **Total Assets** | $ 47,089,756 | $ 52,118,879 |
| | | |
| **Liabilities** | | |
| Post-Petition Accrued Expenses | $ 1,152,096 | $ |
| Liabilities Subject to Compromise: | | |
| Pre-Petition Accrued Expenses | 6,753,896 | 6,753,896 |
| Due to Fletcher Alpha | 1,137,515 | 1,137,515 |
| Due to FIA Leveraged Fund (Euro Note Reduction) | 11,924,653 | 12,271,616 |
| Note Payable Due to FIA Leveraged Fund (Euro Note) | 4,834,207 | 4,955,996 |
| Note Payable Due to Fletcher International, Inc. | 250,551 | 268,327 |
| Total Liabilities Subject to Compromise | $ 24,900,822 | $ |
| **Total Liabilities** | $ 26,052,488 | $ 25,404,910 |
| **Capital** | $ 20,997,268 | $ 26,795,969 |

[1] The balances reflected on the Debtor's statement of financial position as of June 29 (the "Petition Date") and June 30, 2012 are assumed to be identical for reporting purposes.

In re Fletcher International, Ltd.

Debtor

Reporting Period: 7/01/12 - 7/31/12

Case No. 12-12796

## DEBTOR QUESTIONNAIRE

| | Yes | No |
|---|---|---|
| Must be completed each month. If the answer to any of the questions is "Yes", provide a detailed explanation of each item. Attach additional sheets if necessary. | | |
| 1 | Have any assets been sold or transferred outside the normal course of business this reporting period? | | X |
| 2 | Have any funds been disbursed from any account other than a debtor in possession account this reporting period? | X | |
| 3 | Is the Debtor delinquent in the timely filing of any post-petition tax returns? | | X |
| 4 | Are workers compensation, general liability or other necessary insurance coverages expired or cancelled, or has the debtor received notice of expiration or cancellation of such policies? | | X |
| 5 | Is the Debtor delinquent in paying any insurance premium payment? | | X |
| 6 | Have any payments been made on pre-petition liabilities this reporting period? | X | |
| 7 | Are any post petition receivables (accounts, notes or loans) due from related parties? | | X |
| 8 | Are any post petition payroll taxes past due? | | X |
| 9 | Are any post petition State or Federal income taxes past due? | | X |
| 10 | Are any post petition real estate taxes past due? | | X |
| 11 | Are any other post petition taxes past due? | | X |
| 12 | Have any pre-petition taxes been paid during this reporting period? | | X |
| 13 | Are any amounts owed to post petition creditors delinquent? | X | |
| 14 | Are any wage payments past due? | | X |
| 15 | Have any post petition loans been received by the Debtor from any party? | | X |
| 16 | Is the Debtor delinquent in paying any U.S. Trustee fees? | X | |
| 17 | Is the Debtor delinquent with any court ordered payments to attorneys or other professionals? | | X |
| 18 | Have the owners or shareholders received any compensation outside of the normal course of business? | | X |

FORM MOR-7
2/2008
PAGE 1 OF 1

# Exhibit 5

## WINDING UP

123.    If the Company shall be wound up, the liquidator may, with the sanction of a
Resolution of the Company and any other sanction required by the
Companies Acts, divide amongst the Shareholders in specie or kind the
whole or any part of the assets of the Company (whether they shall consist of
property of the same kind or not) and may for such purposes set such values
as he deems fair upon any property to be divided as aforesaid and may
determine how such division shall be carried out as between the
Shareholders or different classes of Shareholders. The liquidator may, with
the like sanction, vest the whole or any part of such assets in trustees upon
such trust for the benefit of the contributories as the liquidator, with the like
sanction, shall think fit, but so that no Shareholder shall be compelled to
accept any shares or other assets upon which there is any liability.

## INDEMNITY

124.    Subject to the proviso below, every Director, Officer of the Company and
member of a committee constituted under Bye-Law 90 and any Resident
Representative shall be indemnified out of the funds of the Company against
all liabilities, loss, damage or expense (including but not limited to liabilities
under contract, tort and statute or any applicable foreign law or regulation
and all reasonable legal and other costs and expenses properly payable)
incurred or suffered by him as such Director, Officer, committee member or
Resident Representative and the indemnity contained in this Bye-Law shall
extend to any person acting as a Director, Officer, committee member or
Resident Representative in the reasonable belief that he has been so
appointed or elected notwithstanding any defect in such appointment or
election PROVIDED ALWAYS that the indemnity contained in this Bye-

45

Law shall not extend to any matter which would render it void pursuant to the Companies Acts.

125. . Every Director, Officer, member of a committee duly constituted under Bye-Law 90 or Resident Representative of the Company shall be indemnified out of the funds of the Company against all liabilities incurred by him as such Director, Officer, committee member or Resident Representative in defending any proceedings, whether civil or criminal, in which judgement is given in his favour, or in which he is acquitted, or in connection with any application under the Companies Acts in which relief from liability is granted to him by the court.

126. To the extent that any Director, Officer, member of a committee duly constituted under Bye-Law 90 or Resident Representative is entitled to claim an indemnity pursuant to these Bye-Laws in respect of amounts paid or discharged by him, the relative indemnity shall take effect as an obligation of the Company to reimburse the person making such payment or effecting such discharge.

127. Each Shareholder and the Company agree to waive any claim or right of action he or it may at any time have, whether individually or by or in the right of the Company, against any Director, Officer, or member of a committee duly constituted under Bye-Law 90 on account of any action taken by such Director, Officer, or member of a committee or the failure of such Director, Officer, or member of a committee to take any action in the performance of his duties with or for the Company PROVIDED HOWEVER that such waiver shall not apply to any claims or rights of action arising out of the fraud of such Director, Officer, or member of a committee duly constituted under Bye-Law 90 or to recover any gain,

46

personal profit or advantage to which such Director, Officer, or member of a committee duly constituted under Bye-Law 90 is not legally entitled.

128.   .Subject to the Companies Acts, expenses incurred in defending any civil or criminal action or proceeding for which indemnification is required pursuant to Bye-Laws 124 and 125 shall be paid by the Company in advance of the final disposition of such action or proceeding upon receipt of an undertaking by or on behalf of the indemnified party to repay such amount if it shall ultimately be determined that the indemnified party is not entitled to be indemnified pursuant to Bye-Laws 124 and 125.

Each Shareholder of the Company, by virtue of its acquisition and continued holding of a share, shall be deemed to have acknowledged and agreed that the advances of funds may be made by the Company as aforesaid, and when made by the Company under this Bye-Law 128 are made to meet expenditures incurred for the purpose of enabling such Director, Officer, or member of a committee duly constituted under Bye-Law 90 to properly perform his or her duties as an officer of the Company.

## AMALGAMATION

129.   Any resolution proposed for consideration at any general meeting to approve the amalgamation of the Company with any other company, wherever incorporated, shall require the approval of a simple majority of votes cast at such meeting and the quorum for such meeting shall be that required in Bye-Law 49 and a poll may be demanded in respect of such resolution in accordance with the provisions of Bye-Law 57.

47

# Exhibit 6

(v)      Nomination of Successors.  In the event that a member of the Advisory Board resigns or becomes otherwise unable to serve, the party that nominated such nominee or member shall have the right to nominate such nominee or member's replacement; provided, however, that as of the Effective Date, the Plan Administrator shall succeed to the rights and obligations of the Trustee under this Section.

(c)      Bankruptcy Court Approval.  On and after the Effective Date, and unless otherwise ordered by the Bankruptcy Court, (i) the Plan Administrator and members of the Advisory Board may receive the compensation or reimbursement of expenses provided for under the Plan without further order of the Bankruptcy Court; and (ii) the Plan Administrator and the Advisory Board may retain or engage professionals and consultants on behalf of the Debtor, and pay the expenses and fees of such professionals and consultants, without further Bankruptcy Court approval.  Prior to making Final Distributions, the Plan Administrator shall be entitled to seek an order of the Bankruptcy Court providing for a final accounting and a release and discharge of the Plan Administrator.

7.4      Budget.  The Plan Administrator shall prepare budgets at least semi-annually, based on anticipated revenues and expenses, and shall submit the budgets to the Advisory Board for approval.

7.5      Investments.  All Cash and Available Cash shall be invested in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by the Bankruptcy Court.

7.6      Indemnification and Insurance.

(a)      To the full extent permitted under applicable law, the Estate shall indemnify and hold harmless any Indemnified Person who was or is made a party or is threatened to be made a party to, or is otherwise involved in, any Proceeding or any appeal in such a Proceeding or any inquiry or investigation that could lead to such a Proceeding against any and all expenses, liability and loss (including attorneys' fees, judgments, excise and similar taxes and punitive damages, fines or penalties and amounts paid in settlement) actually incurred or suffered by him or her in connection with the investigation, defense, appeal or settlement of any such Proceeding, provided that such Indemnified Person acted in good faith and in a manner the Indemnified Person reasonably believed to be in, or not opposed to, the best interests of the Estate and, with respect to any criminal action or proceeding, had no reasonable cause to believe his or her conduct was unlawful.  The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Indemnified Person did not act in good faith and in a manner which is reasonably believed to be in or not opposed to the best interests of the Estate or, with respect to any criminal action or proceeding, that the Indemnified Person had reasonable cause to believe that the conduct was unlawful.

-18-

(b)     The right to indemnification conferred in this section 7.6(b) shall be a contractual right, and shall include the right to be paid or reimbursed by the Estate for any expenses incurred in investigating, defending, appealing or settling, being a witness in or participating in any such Proceeding in advance of the final disposition of such Proceeding and without any determination as to the Indemnified Person's ultimate entitlement to indemnification. Expenses (including attorneys' fees) incurred by an Indemnified Person in defending a Proceeding shall be paid by the Estate in advance of the final disposition of such proceeding upon receipt of a written undertaking, by or on behalf of such Indemnified Person, to repay all amounts so advanced if it shall ultimately be determined that he or she is not entitled to be indemnified by the Estate under this section 7.6(b) or otherwise.

(c)     Subject to approval of the Bankruptcy Court, the Plan Administrator and the Advisory Board are authorized to purchase commercially reasonable liability insurance respecting the implementation of their duties and obligations under this Plan.

7.7     Resignation, Death or Removal. The Plan Administrator may resign at any time upon written notice to the United States Trustee and the Bankruptcy Court. In the event of any such resignation, or the death or incapacity of a Plan Administrator, the Bankruptcy Court shall select a replacement. No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his predecessors. Every successor Plan Administrator appointed pursuant hereto shall execute, acknowledge and deliver to his predecessor and to the Debtor an instrument in writing accepting such appointment hereunder, and thereupon such successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his predecessor.

7.8     Reports. Unless otherwise ordered by the Bankruptcy Court, the Plan Administrator shall file semi-annual status reports until such time as the Case has been closed. The Plan Administrator shall not be required to file monthly operating reports.

7.9     No Revesting of Assets. Except as is otherwise expressly provided herein, on the Effective Date, title to all property and assets of the Estate including, without limitation, any Claims, rights and causes of action of the Debtor and the Estate and any moneys held in escrow or separate segregated accounts during the pendency of the Case, shall not revest in the Debtor, shall not be released or waived and shall remain property of the Estate.

7.10     Exoneration. To the full extent permitted under applicable law, neither the Trustee, the Plan Administrator, nor the members of the Advisory Board (including any additional members added pursuant to an Amended Investor Settlement) nor any of their agents, Professionals, attorneys, financial advisors, accountants, or other professionals employed by any of them, shall have or incur any liability to any Person for any act taken or omission occurring in good faith in connection with or related to (a) formulating, implementing, confirming or consummating the Plan (including soliciting acceptances or rejections thereto); (b) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into in connection with the Plan; or (c) any distributions made pursuant to the Plan,

-19-

against the Debtor, the Estate, or the Trustee, or any of their property, or any direct successor in interest to the Debtor or the Estate, or any property of any such successor; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate, or the Trustee, or any of their property, or any direct successor in interest to the Debtor or the Estate; (d) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the Estate, or the Trustee, or any of their property, or any direct successor in interest to the Debtor or the Estate; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

10.4      Indemnification.  Notwithstanding anything to the contrary in this Plan, the obligations of the Debtor and its Estate to indemnify the Trustee or the professional persons retained by the Trustee, pursuant to the Debtor's certificate of incorporation, by-laws, or other organizational documents, applicable statutes, and preconfirmation agreements respecting all present and future actions, suits, and proceedings against any of such indemnified Persons, based upon any act or omission related to service with, for, or on behalf of such Debtor at any time, as such obligations were in effect at the time of any such act or omission, in all cases net of applicable insurance proceeds, shall not be discharged or impaired by confirmation or consummation of the Plan but shall survive unaffected by the confirmation and consummation of the Plan to the full extent permitted by applicable law.

10.5      Exculpation.

(a)      The Trustee, the Plan Administrator, the members of the Advisory Board (including any additional members added pursuant to an Amended Investor Settlement) and the professional persons retained by them, to the full extent permitted by applicable law, shall have no liability to any Holder of a Claim against or Interest in the Debtor for any act or omission in connection with or arising out of their administration of the Plan or the property to be distributed under the Plan except for willful misconduct or gross negligence and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

(b)      Following entry of the Confirmation Order, the Bankruptcy Court shall retain exclusive jurisdiction to consider any and all claims against any of the exculpated parties referenced in clause (a) above involving or relating to the administration of this Case, any rulings, orders, or decisions in this Case or any aspects of this Case, including the decision to commence this Case, the development and implementation of this Plan, the decisions and actions taken during this Case, and any asserted claims based upon or related to prepetition obligations or equity interests administered in this Case for the purpose of determining whether such claims belong to the Estate or third parties.  In the event it is determined that any such claims belong to third parties, then, subject to any applicable subject matter jurisdiction limitations, the Bankruptcy Court shall have exclusive jurisdiction with respect to any such litigation, subject to any determination by the Bankruptcy Court to abstain and consider whether such litigation should more appropriately proceed in another forum.

-25-

# Exhibit B

Hearing Date and Time: November 9, 2012 at 9:45 a.m. (Prevailing Eastern Time)
Objection Deadline: November 2, 2012 at 4:00 p.m. (Prevailing Eastern Time)

Michael Luskin
LUSKIN, STERN & EISLER LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 597-8220
Facsimile:  (212) 974-3205
luskin@lsellp.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                          :     Chapter 11
                                                :
FLETCHER INTERNATIONAL, LTD.,                   :     Case No. 12-12796 (REG)
                                                :
                       Debtor.                  :
                                                :
------------------------------------------------------------x

**CHAPTER 11 TRUSTEE'S RESPONSE TO DEBTOR'S MOTION
FOR AN ORDER APPROVING ENTRY INTO CONSULTING AGREEMENTS
WITH STEWART A. TURNER AND STUART D. MACGREGOR**

Richard J. Davis, the Chapter 11 Trustee appointed in this Chapter 11 case, respectfully

submits this Response to the Debtor's Motion for an Order Approving Entry into Consulting

Agreements with Stewart A. Turner ("**Turner**") and Stuart D. MacGregor ("**MacGregor**" and

together with Turner, the "**Consultants**").  The Motion was originally filed by Debtor's counsel

on August 29, 2012 [Docket No. 71], well before the Trustee was appointed.  In Response to the

Motion, the Trustee respectfully represents as follows:

1.      Since his appointment, the Trustee has been investigating the Debtor,

including the Debtor's assets and liabilities, contracts, investors and investments, service

providers, cash flow, and business operations.

2.      To aid in his investigation, the Trustee has retained his own counsel, Luskin, Stern & Eisler LLP ("**Luskin Stern**"), and his own financial advisor, Goldin Associates LLC ("**Goldin**").  Applications approving their retention [Docket Nos. 120 and 124 respectively] are scheduled to be heard by the Court on November 9, 2012.

3.      During the period of time between the Petition and the Trustee's appointment, the Consultants have provided certain services for the benefit of the estate and the Trustee for which they are entitled to be compensated.  While the Trustee has retained his own advisors and does not wish to retain the Consultants on the terms set forth in the Consulting Agreements, the Trustee believes that the Consultants' first-hand knowledge of the Debtor's business may be beneficial to the Trustee's investigation.  Accordingly, the Trustee has renegotiated certain terms of the Consulting Agreements as set forth below:

**Turner Consulting Agreement**

- Turner's prepetition claim will not be paid now.  Turner may submit a proof of claim.  The Trustee reserves all of his rights to object to part or all of Turner's prepetition claim, including its amount and priority.

- Turner will be paid for the last two days of June and the month of July as proposed in the Debtor's Motion.

- Turner will be paid for work actually done during August and thereafter at the rate reflected in the Debtor's Motion ($175/hour).

- Turner will not be guaranteed or paid for a minimum number of hours, as the Debtor originally proposed, but the Trustee does expect to continue to use and pay for Turner's services during November and possibly thereafter.

- All work performed by Turner must be requested by the Trustee or his professionals at Luskin Stern or Goldin.

- Turner must keep detailed time records.

-2-

## MacGregor Consulting Agreement

- MacGregor's prepetition claim will not be paid now.  MacGregor may submit a proof of claim.  The Trustee reserves all of his rights to object to part or all of MacGregor's prepetition claim, including its amount and priority.

- MacGregor will be paid for the last two days of June and the month of July as proposed in the Debtor's Motion.

- MacGregor will be paid for work actually done during August and thereafter at the rate reflected in the Debtor's Motion ($135/hour).

- MacGregor will not be guaranteed or paid for a minimum number of hours, but the Trustee does expect to continue to use and pay for MacGregor's services during November and possibly thereafter.

- All work performed by MacGregor must be requested by the Trustee or his professionals at Luskin Stern or Goldin.

- MacGregor must keep detailed time records.

4.     To the extent that there is an inconsistency between the Consulting Agreements and the revised terms set forth in this Response, the terms in this Response control.

5.     The Trustee believes that entering into the Consulting Agreements, as modified by this Response, is supported by the Trustee's sound business judgment and is in the best interests of the Debtor's estate, creditors and interest holders.

WHEREFORE, the Trustee respectfully requests that the Court enter an Order, substantially in the form of **Exhibit A**, approving the retention of Stewart A. Turner and Stewart D. MacGregor as modified by the terms set forth in this Response and grant such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
       November 7, 2012

LUSKIN, STERN & EISLER LLP

By:  /s/Michael Luskin
      Michael Luskin

Eleven Times Square
New York, New York 10036
Telephone:  (212) 597-8220
Facsimile:  (212) 974-3205

*Proposed Attorneys for the Chapter 11 Trustee*

-4-

**Exhibit A**

Proposed Order

Hearing Date and Time: November 9, 2012 at 9:45 a.m (Prevailing Eastern Time)
Objection Deadline: November 2, 2012 at 4:00 p.m (Prevailing Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
In re:                                            :        Chapter 11
                                                  :
FLETCHER INTERNATIONAL, LTD.,                     :        Case No. 12-12796 (REG)
                                                  :
                 Debtor.                          :
                                                  :
-----------------------------------------------------------x

### [PROPOSED] ORDER APPROVING ENTRY INTO CONSULTING AGREEMENTS WITH STEWART A. TURNER AND STUART D. MACGREGOR

Upon consideration of the motion of Fletcher International, Ltd., for entry of an order approving the Debtor's entry into the Consulting Agreements[1] with Stewart A. Turner and Stuart D. MacGregor; and it appearing that the Court has jurisdiction to consider the motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of this chapter 11 case and the motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having determined that the relief requested in the motion as modified by the Trustee's Response is in the best interests of the Debtor, its estate, its creditors and other parties in interest; and it appearing that proper and adequate notice of the motion has been given and that, except as otherwise ordered herein, no other or further notice is necessary; and objections (if any) to the motion having been withdrawn or overruled on the merits; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Trustee's Response.

ORDERED, ADJUDGED, and DECREED that:

1.      The motion is granted as set forth herein.

2.      The Debtor's entry into the Consulting Agreements, as modified by the terms set forth in paragraph 3 of the Trustee's Response, is hereby approved and all actions taken by the Debtor or the Trustee consistent with the substantive provisions of the Consulting Agreements prior to the date of entry of this Order are hereby ratified and approved.

3.      The Trustee is authorized to pay each of the Consultants for work performed from the Petition Date through July 31, 2012 as set forth in the Consulting Agreements.

4.      The Trustee is authorized to pay each of the Consultants for work actually performed from and after August 1, 2012 on an hourly basis at the rates set forth in the Consulting Agreements as modified by the Trustee's Response.

5.      The Trustee is authorized and empowered to executed and deliver such documents, and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

6.      To the extent that there may be any inconsistency between the terms of the Consulting Agreements and this Order, the terms of this Order shall govern.

7.      The Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

Dated: New York, New York
         November __, 2012

_____
The Honorable Robert E. Gerber
United States Bankruptcy Judge