Michael Luskin
Lucia T. Chapman
Stephan E. Hornung
LUSKIN, STERN & EISLER LLP
Eleven Times Square
New York, New York 10036
Telephone:  (212) 597-8200
Facsimile:  (212) 974-3205

*Attorneys for the Plan Administrator and*
*Former Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                              :          Chapter 11
                                                    :
FLETCHER INTERNATIONAL, LTD.,                       :          Case No. 12-12796 (REG)
                                                    :
                              Debtor.               :
                                                    :
------------------------------------------------------------x

## APPELLEE'S DESIGNATION OF ADDITIONAL
## ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

       Appellee, Richard J. Davis, the Plan Administrator and former Chapter 11 Trustee

appointed in this Chapter 11 case (the "**Plan Administrator**"), designates, pursuant to Rule 8006

of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the following

additional items to be included in the record on appeal.

## DESIGNATION OF ADDITIONAL ITEMS TO INCLUDE IN RECORD ON APPEAL

| Docket No. | Date | Description |
|---|---|---|
| N/A | 3/19/14 | Letter from Alphonse Fletcher, Jr. to Judge Robert E. Gerber, dated March 19, 2014.  A copy is attached as Exhibit 1. |
| N/A | 3/19/14 | Transcript of March 19, 2014 Hearing (See Docket No. 510). |
| N/A | 3/25/14 | Letter from Michael Luskin to Judge Gerber, dated March 25, 2014.  A copy is attached as Exhibit 2. |

| 477 | 3/25/14 | Endorsed Order dated March 25, 2014, Directing the Parties to Appear for a Telephonic Conference on March 26, 2014. |
|------|---------|---|
| 481 | 3/26/14 | Motion of Alphonse Fletcher, Jr. to Compel Compliance with Bankruptcy Code and Rules in re Fletcher International, Ltd and Associated Cases. |
| 486 | 3/28/14 | Transcript of March 26, 2014 Hearing. |
| 493 | 4/1/14 | Letter Table of Fiduciary Connections in Fletcher International, Ltd. and Associated Cases filed by Alphonse Fletcher Jr. |
| 503 | 4/3/14 | Transcript of April 2, 2014 Hearing. |
| 510 | 4/16/14 | Statement of Issues on Appeal and Designation of Items to be Included in the Record on Appeal filed by Stewart Turner. |
| 544 | 5/21/14 | Fletcher International, Ltd. Disgorgement Motion Filed by Alphonse Fletcher, Jr. |
| 561 | 6/11/14 | Declaration of Richard J. Davis in Further Support of Interim and Final Fee Applications and in Response to the Objections of Stewart Turner and the "Disgorgement Motion" of Alphonse Fletcher, Jr. |
| 577 | 6/17/14 | Transcript or June 17, 2014 Hearing. |
| N/A | 6/20/14 | Letter from Alphonse Fletcher to Judge Gerber, dated June 20, 2014.  A copy is attached as Exhibit 3. |
| N/A | 6/23/14 | Letter from Michael Luskin to Judge Gerber, dated June 23, 2014.  A copy is attached as Exhibit 4. |
| 578 | 6/24/14 | Order Denying the Disgorgement Motion Filed by Alphonse Fletcher, Jr. |
| 589 | 6/27/14 | Notice of Appeal of Order Denying Disgorgement Motion Filed by Fletcher. |
| 597 | 7/10/14 | Designation of Contents of Record on Appeal and Statement of Issues Filed by Alphonse Fletcher, Jr. |
| 600 | 7/24/14 | Plan Administrator's Counter Designation of Additional Items to Be Included in the Record on Appeal. |

| 634 | 9/19/14 | Notice of Hearing to Consider the Plan Administrator's Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019(1) Approving the Settlement Agreement between Fletcher International, Ltd. and Credit Suisse. |
|---|---|---|

Dated:  New York, New York
       November 25, 2014

LUSKIN, STERN & EISLER LLP

By:  /s/ Michael Luskin
      Michael Luskin
      Lucia T. Chapman
      Stephan E. Hornung

Eleven Times Square
New York, New York 10036
Telephone:     (212) 597-8200
Facsimile:      (212) 974-3205

*Attorneys for the Plan Administrator and
Former Chapter 11 Trustee*

## **Exhibit 1**

March 19, 2014 Letter from Alphonse Fletcher, Jr., to Judge Gerber

Honorable Robert E. Gerber
March 19, 2014

Alphonse Fletcher, Jr.
48 Wall Street, 4th Floor
New York, NY 10005

March 19, 2014

Hon. Robert E. Gerber
United States Bankruptcy Judge
Southern District of New York
One Bowling Green, Courtroom 523
New York, NY 10004-1408

Re:    *In re Fletcher International, Ltd., In re Soundview Elite, Ltd. et al.,*
       *In re Fletcher Income Arbitrage Fund Ltd., and In re FIA Leveraged Fund*

Dear Judge Gerber,

I am a party-in-interest appearing *pro se* in these cases.[1]  I to write to bring to the Court's attention certain legal issues that have arisen in the course of these cases. I believe these issues may materially each retention in the Fletcher and Soundview cases and the recognition in the FIA Leveraged and Fletcher Income Arbitrage cases.  The issues concern compliance with Bankruptcy laws and, as discussed below, could affect the Fletcher Trustee's Plan of Liquidation, recognition of the Ernst & Young Liquidators, and appointment of the Soundview professionals. I respectfully request that the Court address this issue as a threshold matter in advance of other actions in these proceedings.

To summarize the issues, each of the Fletcher Fiduciaries and the Soundview Fiduciaries (together "Fiduciaries") represented to the Court that it had disclosed all connections and had no adverse interests.  As I have tried to suggest to parties in these proceedings, even the disclosed connections, described below, raise significant concerns that may have been overlooked earlier. The undisclosed connections to parties related to the Dakota,[2] however, raise serious issues and quite likely impute an adverse interest in certain Fiduciaries against their estates.  These connections include Dakota Treasurer John Angelo of Angelo, Gordon & Co. ("Angelo Gordon") and the firms that helped him in Tribune[3], his son Jesse Angelo of News Corporation[4], Dakota President Jay Goldsmith of Balfour Investors ("Balfour"), Dakota shareholder and former vice president Matthew Mallow of Blackrock, my former counsel Kasowitz Benson, and Dakota counsel Quinn Emanuel and its outside counsel.[5]  The issues are clear now that the Trustee's plans have been fully revealed.

**Fletcher Trustee Richard J. Davis** retired as a senior partner of Weil Gotshal fewer than nine months prior to his appointment as Fletcher Trustee[6] yet appeared to conclude that his former clients were not connections for disclosure purposes.

1

Honorable Robert E. Gerber
March 19, 2014

**Fletcher Trustee's counsel,** Luskin Stern, disclosed his current active representation of defendants sued by Fletcher International, Ltd. weeks prior to its chapter 11 filing, Ernst & Young Liquidators.[7]

**Goldin Associates** disclosed it is currently working with JPMorgan Chase, Young Conaway, Kasowitz Benson, Zolfo Cooper liquidators for Fletcher Fixed-Income Alpha Fund, Holland & Knight counsel to a significant Fletcher fund investor, and HSBC. It has also worked for Ernst & Young and Credit Suisse.[8]

**Soundview Trustee Corinne Ball's law firm, Jones Day** disclosed its current work for Citco JPMorgan Chase, Credit Suisse, HSBC, and others.

**Soundview Financial Advisor, Geoffrey Varga of Kinetic Partners,** disclosed current clients including Citco affiliates, Credit Suisse, HSBC, and previous work with 20 parties, the last five of which are: The LA Firefighter ' Retirement System [*sic*], The Municipal Employees Retirement System of LA [*sic*], The New Orleans Fire Fighters Pension & Relief Fund, Walkers Legal Services, Wilmington Trust, National Association.

In fact, a review of the Fiduciaries' websites, news articles, and company filings reveals a surprising breadth and depth of connections with parties related to the Dakota ("Dakota Parties") despite the adverse interest that logically results from my litigation with the Dakota. Below are some the connections to Dakota Parties that the Fiduciaries failed to disclose (see also a table at Exhibit A).

**Richard J. Davis** personally represented News Corporation and Sotheby, two current Weil clients, while he served as a senior partner at Weil Gotshal which includes Silver Point Capital, Citco's financial sponsor, as a client. Richard J. Davis served for years in leadership roles at Citizens Union with Dakota Party Anthony Smith, a named defendant in *Fletcher v Dakota*.[9] Mr. Davis's former partnership, Weil, listed the following parties-in-interest in these associated as clients in a retention application while Mr. Davis served as a senior partner: Blackstone, Credit Suisse, D.E. Shaw, Ernst & Young, HSBC Bank, J. P. Morgan Chase, Milbank Tweed Hadley & McCloy, Morgan Stanley & Co., Seaport Group, Wilmington Trust Company.[10]

**Luskin Stern** acknowledged in its retention papers that it then represented Ernst & Young liquidators yet surprisingly attested to no adverse interest despite the fact that Fletcher International, Ltd had already sued the Ernst & Young Liquidator.

**Goldin Associates** did not disclose that Dakota counsel Quinn Emanuel defended one of the cases in which Goldin Associates was sued for fraud in which it settled after losing its motion to dismiss.[11] Goldin Associates did not disclose its business dealings with either the president of the Dakota board Jay Goldsmith of Balfour or the treasurer of the Dakota board John Angelo of Angelo Gordon. Below, from the Goldin Associates' website, news stories, and corporate filings, are examples of some of the dealings between Dakota Parties and Goldin Associates.

Honorable Robert E. Gerber
March 19, 2014

- According to its website, Goldin Associates "Served as interim management in connection with one of the largest bankruptcies in U.S. history."[12] On November 14, 2005, Bloomberg reported that employees of ForstmannLeff would purchase the 65% of their firm held by Refco.[13] Then Harrison J. Goldin was appointed as chief executive of Refco on December 20, 2005,[14] and on January 9, 2006, Refco announced that ForstmannLeff "has been sold to New York hedge fund group Angelo, Gordon & Co."[15]

- Goldin Associates and Balfour Investors worked together in Sterling Optical according to Goldin's website.[16] "Dr. Cohen turned over day-to-day operations to Goldin Associates, an investment banking firm in Manhattan... The board also authorized hiring Balfour Investors Inc. of Manhattan as a consultant."[17] Interestingly, Goldin and Balfour were compensated in "warrants," according to company filings: "558,292 of the warrants issued to Goldin ... vested... On May 20, 2004, Goldin exercised all such warrants... 279,146 of the warrants issued to Balfour... vested... On May 20, 2004, Balfour exercised all such warrants.[18]"

- According to its website, Goldin Associates as "Examiner and financial advisor... for Enron's principal subsidiary... renegotiated the debtors' joint plan of reorganization, resulting in a transfer of value of more than $1 billion to the ENA estates."[19] "Some, such as Angelo, Gordon & Co., purchased much of the debt of a crucial Enron subsidiary, Enron North America Corp., which is sometimes referred to as the parent corporation's cash cow. Angelo Gordon's interest is to prevent the consolidation of the different debtors--i.e. of Enron Corp. and Enron North America--thereby preventing the dilution of its share of the Enron North America cash flow."[20] Some were unhappy, "We strongly disagree with the ENA examiner's characterizations of not only the process but also the negotiations and the plan that he supported and we will lay that out in a response to the court," Enron spokeswoman Karen Denne said.[21] Quinn Emanuel reports that it "Represented ... [four hedge fund groups including] Angelo Gordon —as plaintiff-holders of Yosemite and Enron Credit-Linked (ECLN)... With Citibank's motion for summary judgment pending, Citibank and Enron agreed to a joint settlement and our clients received in excess of $2.1 billion in payments from the Enron bankruptcy estate."[22]

- According to its website, in Loral, Goldin Associates was as "Examiner tasked by the Bankruptcy Court with investigating and reporting on the processes and procedures employed by Loral and its professionals in valuing Loral's assets and businesses[,] Goldin concluded that the valuation processes and procedures were professionally acceptable, but did not fully capture Loral's value..." Previously, "Loral's vendors quit the creditors' committee and resold their trade claims to hedge funds such as Angelo, Gordon. Lawyers for Angelo, Gordon then complained in court filings that the plan paid trade creditors only 33 cents on the dollar... Former New York City Comptroller Harrison J. Goldin was appointed examiner, and in a March 2005 report, he said that Loral's bankers at Greenhill &

3

Co. had undervalued the company by between $280 million and $463 million. Lawyers for Loral and the creditors bitterly criticized Goldin's analysis, but his report was quickly followed by an amended plan of reorganization that would pay the claims of Angelo, Gordon in full."[23]

**Young Conaway,** when it was retained as debtor's counsel for Fletcher International, Ltd. was actively working with Angelo Gordon in the Tribune bankruptcy.[24] Young Conaway was also actively working with the Louisiana Officials and Fletcher's Cayman law firm Walkers in the Delaware bankruptcy proceeding[25] of another fund which the Louisiana Officials took over with Young Conaway and Kinetic Partners' Geoffrey Varga.

**Corinne Ball and Jones Day** retention applications do not include certain Jones Day certain relevant clients it included in prior retention application. Some of those clients are targets for significant claims in these cases including Ernst & Young, Zolfo Cooper, D.E. Shaw, and Angelo Gordon, and News Corporation.[26]

**Geoffrey Varga of Kinetic Partners** did not disclose his work with Quinn Emanuel in 2010 on a multi-billion dollar Cayman windup and related chapter 15 proceeding[27] at the same time that the Dakota hired Quinn Emanuel and that same partner with whom Mr. Varga worked to address its negotiations with me months prior to my 2011 lawsuit against the Dakota. Mr. Varga did not disclose that Young Conaway tried to appoint him as an "independent fiduciary" despite my concerns regarding his work at the time on behalf of the Louisiana Officials. Mr. Varga also did disclose that with the Louisiana Officials and Young Conaway, he replaced the manager of another fund group in a Delaware bankruptcy proceeding, described in "Kinetic goes 'zombie' hunting" in a July 23, 2012 Pension and Investments article.[28]

> Specifically, Kinetic just entered the business of dismantling illiquid "zombie" private equity and hedge funds, said Geoff Varga, partner and global head of the New York-based firm's corporate recovery and restructuring practice... "We are a liquidator with a different wrapper and our ability to take over management of the fund gives us another layer of control over the fund's assets, allowing us to give fund investors more input into how they want the wind-down process to go," Mr. Varga said...The firm is in the process of registering with the Securities and Exchange Commission as a money manager, but already received its first assignment as replacement money manager for the Commonwealth and Sand Spring Capital hedge fund families. The nine funds were managed by Commonwealth Advisors Inc., Baton Rouge, La. Commonwealth filed for Chapter 11 bankruptcy protection on behalf of the funds in late 2011.

Fletcher International, Ltd.'s debtor's counsel, at its August 20, 2012 hearing, recommended his independent director concept and candidates, particularly Mr. Varga, despite his work at the time with the Louisiana Officials:

Honorable Robert E. Gerber
March 19, 2014

> The debtor went back and thought about that and how best to accomplish it within the corporate governance framework we have, and we think we've come up with a solution. This week, Your Honor, the debtor's board will be interviewing potential independent directors. The concept would be this. They would appoint an independent director, assign that director to a special committee -- it'll be a committee of one, at least at this point, it could be a committee of two, but let's start with one -- and that director would have sole authority over all litigation matters, so that for one, the CRO, who's doing investigations would report back to that independent director. Right? That independent director would have the ability to determine -- first, oversee and direct the investigation, and then to determine whether or not to pursue any particular claim or cause of action without going to anybody else. It would be that director's sole responsibility... a gentleman named Geoff Varga, who's from a company called KineticPartners.

These undisclosed connections and possible adverse interest cast doubt on the major decisions of the Trustee, specifically, settlement of the four primary disputes that led to these associated insolvency cases. Those settlements would provide relatively little or no consideration to the estate.

1. the estate's important claims against JPMorgan-supported United Community Banks would be settled for an unreasonably small fraction of the value that has been represented to the court by the Trustee.

2. the Ernst & Young Liquidators would settle the litigation that *Fletcher International, Ltd.* brought against them by receiving approximately 80% of the Fletcher International, Ltd. estate after having settled their redemption securities for $2.5 million.[29]

3. Credit Suisse which seized and sold the estate's Ion Geophysical convertible preferred to D.E. Shaw for millions below a more attractive alternative bid would be released even though D.E. Shaw resold the preferred for millions above the small premium charged by Credit Suisse.

4. the Louisiana Officials, purported "major parties-in-interest,"[30] would share in the estate despite violating several agreements with the Fletcher funds and causing substantial damage through misuse of legal proceedings.

With Quinn Emanuel's outside counsel,[31] the Louisiana Officials, obtained in the Cayman Islands what they could not in the U.S. Represented by the personal counsel of the Chief Justice of the Cayman Islands, the Louisiana Officials were granted the equivalent of an involuntary bankruptcy petition, despite the dispute,[32] in a proceeding in front of the Chief Justice. Media reports describe the matters in which the Cayman Judiciary and government are involved as the Cayman "Watergate."[33] The U.K. Foreign and Commonwealth Office will not release the details of the investigative report filed by the leader of the special U.K. Metropolitan Police ("Scotland Yard") investigative team. The Foreign and Commonwealth Office stated:

5

Honorable Robert E. Gerber
March 19, 2014

"We judge that disclosure of the information requested could lead to a loss of confidence within the international community, which could impact negatively on the Cayman Islands' reputation and, more directly, on its financial services industry."[34]


Judge Shelley C. Chapman in her recent GSC Group decision referring to Judge Bernstein's opinion *in re Granite* as one of "two seminal cases in this District involving serious allegations of misconduct" highlights the public interests that are at state:

Judge Bernstein found that [chapter 11 trustee Goldin's counsel] Willkie represented adverse interests at the time it undertook representation of the Trustee due to its concurrent relationship with [litigation target] Merrill.  Due to its increased representation of Merrill (and the amount of fees generated by its work for Merrill), no matter how thoroughly or fairly Willkie conducted the investigation on behalf of the Trustee, "the question will always linger whether it held back, or failed to bite the hand that feeds it quite as hard as the circumstances warranted."  Judge Bernstein observed that the Trustee's counsel must be above suspicion, as "[b]ankruptcy is concerned as much with appearances as with reality.

Given the impact this previously unanticipated gating issue under sections 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014 could have on the proceedings I respectfully request (i) that the Court hear legal argument on these issues first, at its Wednesday hearing for these cases, as to the effect of the Fiduciaries violation of Rule 2014 and possible violation of section 327(a) and (ii) stay actions of the Fiduciaries until their compliance with section 327(a) and Rule 2014 is confirmed.

Sincerely and respectfully submitted,

Alphonse Fletcher, Jr.

Cc: See distribution on following page

6

Honorable Robert E. Gerber
March 19, 2014

**Distribution:**

Mario Aieta on behalf of Defendant FIA Leveraged Fund
maieta@ssbb.com, managingclerk@ssbb.com

Timothy T. Brock on behalf of Defendant FIA Leveraged Fund
tbrock@ssbb.com, tlewis@ssbb.com;asnow@ssbb.com;managingclerk@ssbb.com;cgrace@ssbb.com

Timothy T. Brock on behalf of Foreign Representative FIA Leveraged Fund (In Liquidation)
tbrock@ssbb.com, tlewis@ssbb.com;asnow@ssbb.com;managingclerk@ssbb.com;cgrace@ssbb.com

Kelly D. Curtin on behalf of Debtor Soundview Elite Ltd.
kdcurtin@pbnlaw.com,
mdlaskowski@pbnlaw.com;mpdermatis@pbnlaw.com;rasegall@pbnlaw.com;sakelly@pbnlaw.com

David W. Dykhouse on behalf of Interested Party Patterson Belknap Webb & Tyler LLP
dwdykhouse@pbwt.com, mcobankruptcy@pbwt.com

Amy Edgy Ferber on behalf of Trustee Corinne Ball
aeferber@jonesday.com, bstone@jonesday.com

Elisabetta Gasparini on behalf of U.S. Trustee United States Trustee
Elisabetta.G.Gasparini@usdoj.gov

Daniel F.X. Geoghan on behalf of Attorney Young Conaway Stargatt & Taylor, LLP
DGeoghan@coleschotz.com

Jeffrey R. Gleit on behalf of Creditor Pasig Ltd.
jgleit@kasowitz.com, courtnotices@kasowitz.com,JBalduzzi@kasowitz.com

Andrew K. Glenn on behalf of Creditor Pasig Ltd.
aglenn@kasowitz.com, courtnotices@kasowitz.com

David R. Hurst on behalf of Debtor Fletcher International, Ltd.
dhurst@coleschotz.com, pratkowiak@coleschotz.com;kkarstetter@coleschotz.com

Neal R. Jacobson on behalf of Interested Party Securities And Exchange Commission
jacobsonn@sec.gov

Richard I. Janvey on behalf of Unknown The Firefighters Retirement System,
rjanvey@diamondmccarthy.com, nsullivan@diamondmccarthy.com

Justin Klein on behalf of Defendant FIA Leveraged Fund
jklein@ssbb.com, managingclerk@ssbb.com

David R. Lurie on behalf of Defendant FIA Leveraged Fund-In Official Liquidation
dlurie@ssbb.com, managingclerk@ssbb.com

Warren J. Martin, Jr. on behalf of Attorney Porzio, Bromberg & Newman, P.C.
wjmartin@pbnlaw.com, sakelly@pbnlaw.com;mdlaskowski@pbnlaw.com;mpdermatis@pbnlaw.com

Michael J. Merchant on behalf of Interested Party Wilmington Trust, National Association

Honorable Robert E. Gerber
March 19, 2014

merchant@rlf.com, rbgroup@rlf.com

John J. Monaghan on behalf of Defendant Fletcher Fixed Income Alpha Fund, Ltd-In Official Liquidation
bos-bankruptcy@hklaw.com

Michael J. Naporano on behalf of Debtor Soundview Elite Ltd.
mjnaporano@pbnlaw.com, mpdermatis@pbnlaw.com

Barbra R. Parlin on behalf of Defendant Fletcher Fixed Income Alpha Fund, Ltd-In Official Liquidation
barbra.parlin@hklaw.com

John A Pintarelli on behalf of Unknown Peter Anderson and Matthew Wright, as Joint Official Liquidators
of Soundview Elite Limited, Soundview Premium and Soundview Star Limited
jpintarelli@mofo.com, ECF@mofo.com

Mark J. Politan on behalf of Creditor Affiliated Debtors-In-Possession, Soundview Elite Ltd., et al, In
Cases Pending Before This Court and Jointly Administered Under Case No. 13-13098
mjpolitan@pbnlaw.com, mpdermatis@pbnlaw.com;mdlaskowski@pbnlaw.com;tjfreedman@pbnlaw.com

Michael P. Pompeo on behalf of Interested Party EisnerAmper LLP
mpompeo@dbr.com

Veerle Roovers on behalf of Trustee Corinne Ball
vroovers@jonesday.com, bstone@jonesday.com

Justin M. Sher on behalf of Interested Party Fletcher Asset Managment, Inc.
jsher@shertremonte.com, mcuccaro@shertremonte.com

Glenn E. Siegel on behalf of Other Prof. Conway MacKenzie Management Services, LLC
Glenn.Siegel@morganlewis.com

Daniel H. Tabak on behalf of Defendant FIA Leveraged Fund-In Official Liquidation
dtabak@cohengresser.com

Andrew G. Horne on behalf of Respondent Kirkland & Ellis LLP
ahorne@kirkland.com

Corinne Ball
Jones Day LLP
222 East 41st Street
New York, NY 10017-6702
cball@jonesday.com

CohnReznick LLP
333 Thornall Street
Attn: Bernard A. Katz
Edison, NJ 08837
Bernie Katz <Bernie.Katz@CohnReznick.com>
Howard Konicov <hkonicov@jhcohn.com>

Alphonse Fletcher, Jr.
Afletcher@fletcher.com

George E. Ladner
Gladner@fletcher.com

Honorable Robert E. Gerber
March 19, 2014

Gary S. Lee on behalf of Unknown Peter Anderson and Matthew Wright, as Joint Official Liquidators of Soundview
Elite Limited, Soundview Premium and Soundview Star Limited
Morrison & Foerster LLP
1290 Avenue of the Americas
40th Floor
New York, NY 10022
glee@mofo.com, jpintarelli@mofo.com

Richard C. Morrissey on behalf of U.S. Trustee United States Trustee
Office of the U.S. Trustee
33 Whitehall Street, 21st Fl.
New York, NY 10004
richard.morrissey@usdoj.gov

Karen Ostad on behalf of Unknown America Alternative Investments Inc
Ostad PLLC
185 Great Neck Road
Suite 330
Great Neck, NY 11021
kostad@ostadllc.com

Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Richard J. Davis
415 Madison Ave.
New York, NY 10017
davis Richard <Richard.Davis@rjdavislaw.com>

Gary S. Lee on behalf of Unknown Peter Anderson and Matthew Wright, as Joint Official Liquidators of
Soundview Elite Limited, Soundview Premium and Soundview Star Limited
Morrison & Foerster LLP
1290 Avenue of the Americas
40th Floor
New York, NY 10022
glee@mofo.com, jpintarelli@mofo.com

Stephan E. Hornung on behalf of Plaintiff Richard J. Davis
Luskin, Stern & Eisler LLP
Eleven Times Square
New York, NY 10036
Michael Luskin on behalf of Attorney Luskin, Stern & Eisler LLP
Luskin, Stern & Eisler LLP
Eleven Times Square
New York, NY 10036
Michael Luskin on behalf of Plaintiff Richard J. Davis
Luskin, Stern & Eisler LLP
Eleven Times Square
New York, NY 10036
**Stephan Hornung <hornung@lsellp.com>**

9

Honorable Robert E. Gerber
March 19, 2014

Richard C. Morrissey on behalf of U.S. Trustee United States Trustee
Office of the U.S. Trustee
33 Whitehall Street, 21st Fl.
New York, NY 10004
richard.morrissey@usdoj.gov

Karen Ostad on behalf of Unknown America Alternative Investments Inc
Ostad PLLC
185 Great Neck Road
Suite 330
Great Neck, NY 11021
kostad@ostadllc.com

Skadden, Arps, Slate, Meagher & Flom LLP
Spiegel, Lawrence S <Lawrence.Spiegel@skadden.com>
turner Julie A <Julie.Turner@skadden.com>

Stewart Turner
Sturner@Fletcher.com

WeiserMazars, LLP
135 West 50th Street
New York, NY 10020

Abigail Snow on behalf of Foreign Representative FIA Leveraged Fund (In Liquidation)
asnow@ssbb.com

Daniel N. Zinman on behalf of 3rd Party Plaintiff Kasowitz Benson Torres & Friedman LLP
dzinman@kasowitz.com, courtnotices@kasowitz.com

gerber.chambers@nysb.uscourts.gov

Honorable Robert E. Gerber
March 19, 2014

**Exhibit A**



Connections and Adverse Interests - *In re Fletcher International, Ltd. and Associated Cases*

*In re Fletcher International, Ltd.* Fiduciaries
Richard J. Davis, Luskin Stern, Goldin Associates, Young Conaway
(Mr. Davis was a senior partner at Weil partner fewer than 9 months prior to his appointment as chapter 11 trustee.)

Honorable Robert E. Gerber
March 19, 2014

[1] If I have followed incorrect procedure, am otherwise required to change something, or have overlooked an error, I will rectify the situation as quickly as possible once I am aware.

[2] On February 1, 2011, Fletcher Asset Management, Inc. and I filed a lawsuit against the Dakota entitled: *ALPHONSE FLETCHER, JR., AND FLETCHER ASSET MANAGEMENT, INC. v. THE DAKOTA INC. BRUCE BARNES, PAMELA LOVINGER, PETER NITZE, JOHN RYDZEWSKI, AND ANTHONY R. SMITH AND GAEL SMITH ARNOLD AS CO-EXECUTORS OF THE ESTATE OF RUTH PROSKAUER SMITH (11-101289). ("Fletcher v Dakota")* Among its claims were defamation and retaliation in violation of New York City Administrative Law 8-107 *et seq.*"[24] relating to the Dakota's efforts "to harm and destroy the personal and business reputation of plaintiffs; and, on information and belief, to intimidate Fletcher and FAM into dropping this lawsuit..." Fletcher Asset Management, Inc. and I seek "not less than $50 million" and "an order enjoining the Dakota and Barnes from continuing to engage in discriminatory conduct with respect to Fletcher" or "interfering with or impeding in any way..."

In 2012, the Appellate Division, First Department affirmed Justice Rakower's substantial denial of the Dakota defendants' motion-to-dismiss. With Associate Justice Rolando T. Acosta's opinion, the court sought to "clear up an element of possible confusion" and confirms the lack of "a safe harbor from judicial inquiry for directors who are alleged to have engaged in conduct not protected by the business judgment rule." Fletcher v. Dakota, Inc., 99 A.D.3d 43, 52 n.2 (1st Dep't 2012)

From 2007 through 2010, my defense of current and prospective Dakota shareholders against their discriminatory conduct led former presidents John Rydzewski and Bruce Barnes to threaten to use the Dakota's "influence" to cause harm to our investment business and ultimately to my family.

> [D]efendant Barnes specifically threatened that if Fletcher ultimately brought a lawsuit against the Dakota, "what the Dakota will say will cause [Fletcher] far more harm than any harm caused to the Dakota." Given defendants' recent conduct, and Barnes' recent machinations, defendants have at least tried to carry out this threat.... Defendant Barnes made similar statements regarding plaintiff at other points between May and September 2010. For example, on September 5, 2010, Barnes told another Dakota shareholder that the Dakota would, among other things, make public statements attacking Fletcher, his financial health, and his business if Fletcher brought a lawsuit. *Fletcher v Dakota*, Amended Complaint, Paragraph 113

Further, in the Soundview chapter 11 proceedings, former Fletcher counsel Paul Weiss in *Fletcher v Dakota* represented Citco. Soundview investor Pasig Ltd. was represented by Kasowitz Benson which had replaced Paul Weiss as our Fletcher counsel until it too withdrew. Paul Weiss cleared conflicts, drafted the original complaint in *Fletcher v Dakota*, and managed the case for more than six months. Paul Weiss did not appear in court and selected another law firm to appear in its place. Paul Weiss explained that its managing partner would not allow the firm to appear in this case because John Angelo's Angelo, Gordon & Co. is an "important" client of Paul Weiss.

[3] Each of Paul Weiss, Young Conaway, Jones Day, Quinn Emanuel ("Quinn"), and Kasowitz Benson has represented Angelo, Gordon & Co. in significant matters and each played roles of various sizes in the Tribune matter. Financial advisor Goldin Associates ("Goldin") also played a role in Tribune. In Enron, one of the previous matters in which the parties have worked together, Quinn won Angelo and its allies a $2.1 billion settlement in litigation relating to a Cayman special purpose vehicle, after Angelo and his allies succeeded in having Goldin Associates appointed as a special examiner.

Honorable Robert E. Gerber
March 19, 2014

[4] Kasowitz Benson defended News Corporation in race discrimination-retaliation cases in which Jesse Angelo was a key party. John Angelo's Angelo, Gordon & Co. had successfully defeated a discrimination-retaliation case in 2009 in which the plaintiff's alleged that Angelo Gordon "set out to destroy my ability to find subsequent employment." (*Nieves v Angelo Gordon*).

Court filings in *Guzman v News Corporation* (1:09-cv-09832-LG) and the related cases revealed that Black journalists claimed their termination from News Corporation's *New York Post* was in retaliation for their complaints against a controversial February 2009 cartoon. The cartoon depicted a monkey shot dead by two New York City policemen who then ask "They'll have to find someone else to write the next stimulus bill." The preceding page had a picture of President Barack Obama signing the stimulus bill. Court filings in that litigation contained many references to Jesse Angelo who then served as managing editor of the *New York Post*.

According to the affidavit of *Post* employee Shari Logan filed in the litigation, Jesse Angelo informed another editor of the arrest of my friend and Harvard's Alphonse Fletcher University Professor Henry Louis Gates for "breaking into his own home." According to the affidavit, the editor said "apparently, he is an angry, Black man" and in response to the arrest responded "nice!"

In an April 25, 2012 deposition, defended by Kasowitz Benson, Jesse Angelo was asked what additional "punishment" was given beyond a verbal "reprimand" after employee Steve Dunlevy referred to a black journalist to his face in front of other colleagues as a "token ni***r." Jesse Angelo was asked "was any other action ever taken against Mr. Dunlevy?" To which, which Jesse Angelo responded: "For what?" In response to the follow up "For this incident," Jesse Angelo said, "Not that I am aware of."

Also in that deposition, in response to questions about the "Stimulus" monkey cartoon, Jesse Angelo testified: "I approved the cartoon... I was aware of the historical fact that Blacks had been portrayed as chimpanzees..."

Honorable Robert E. Gerber
March 19, 2014

[5] Quinn Emanuel's outside counsel is Gregory P. Joseph. In early 2012, Dakota counsel Quinn Emanuel's outside counsel, Gregory P. Joseph, informed Fletcher counsel that he represented the Louisiana officials. Mr. Joseph proposed that the Fletcher Funds enter into an agreement through which Mr. Joseph would also represent the Fletcher Funds. The agreement would provide Mr. Joseph with authority to manage the litigation against United Community Banks with respect to the entire United Option. The agreement would also release Mr. Joseph from any liability for the outcome of that litigation and permit him to represent the Louisiana officials in any future litigation against the Fletcher Funds, Management, or their affiliates. Our counsel informed him that our first requirement was that any agreement must prohibit any collusion with the Dakota Parties as the Louisiana officials had previously agreed. Mr. Joseph did not pursue the representation after hearing our request. Mr. Joseph's firm then re-appeared on April 25 with a demand letter on behalf of the Louisiana officials relating to the shares of FILB Co-Investments, LLC. Then Mr. Joseph's firm appeared again on or about June 15, representing the Ernst & Young Joint Official Liquidators. He next appeared on June 27 representing FILB Co-Investments. Eventually on February 27, 2013, Mr. Joseph represented each of Leveraged, FILB Co-Investments, LLC, the three Louisiana pension funds, and the Ernst & Young Liquidators in settling the litigation with respect the portion of the United Option representing 18 million shares.

It may not be true that, as the Ernst & Young Liquidators attested, "The Arbitrage Foreign Proceeding pending under Cause No. 87 of 2012 in the Grand Court of the Cayman Islands, and the provisions made thereunder for the protection, administration and distribution of assets pursuant to the Liquidation Order, is a Foreign Proceeding pursuant to 11 U.S.C. § 101(23)." All significant activities, including the settlement of the most important asset held by those estates appears to have been directed from the U.S. under the orchestration of Quinn Emanuel's outside counsel in consultation with, among other U.S. parties, the FIA Leveraged Fund Liquidation Committee, composed entirely of U.S. persons operating from the U.S. According to the Ernst & Young Liquidators' most recent report, their payments to Quinn's Outside Counsel,

      "Greg Joseph (US NY UCBI) 604,365 JOLs legal advisors in relation to FILCBI litigation/mediation" [*sic*]

and other US counsel have exceeded their payments to Cayman counsel. Evidencing the breadth of his responsibility, Mr. Joseph appears to have represented FIA Leveraged Fund, Fletcher Income Arbitrage Fund, FIAL SPV I, FILB Co-Investments, LLC, the three Louisiana pension funds, and the Ernst & Young Joint Official Liquidators. His broad role has been necessary because, as the Ernst & Young Liquidators' report states: "the JOLs have been faced with many complex multi-jurisdictional issues to consider and tackle. As such the JOLs have employed the services of a number of legal professionals in different jurisdiction and with different specialism's." [*sic*]

[6] APPLICATION FOR ORDER APPROVING APPOINTMENT OF CHAPTER 11 TRUSTEE (ECF No. 112)

[7] DECLARATION OF MICHAEL LUSKIN IN SUPPORT OF TRUSTEE'S APPLICATION FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF LUSKIN, STERN & EISLER LLP AS HIS COUNSEL NUNC PRO TUNC TO SEPTEMBER 25, 2012 (ECF No. 120)

[8] DECLARATION OF MARTI P. MURRAY IN SUPPORT OF THE TRUSTEE'S APPLICATION FOR AN ORDER PURSUANT TO BANKRUPTCY CODE SECTION 327(A) AND BANKRUPTCY RULE 2014 AUTHORIZING THE EMPLOYMENT AND RETENTION OF GOLDIN ASSOCIATES, LLC AS SPECIAL CONSULTANT TO THE TRUSTEE *NUNC PRO TUNC* TO OCTOBER 5, 2012 (ECF No. 124)

Honorable Robert E. Gerber
March 19, 2014

[9] Anthony Smith was one of the potential witnesses in *Fletcher v Dakota* who switched sides after being threatened by the Dakota Parties. Amended Complaint Paragraphs 104-108:

> 104. On May 19, 2010, Smith emailed Fletcher to say that he had learned of the "absurd, unfair and inexplicable" rejection of Fletcher's application through a call from the Dakota's managing agent. On May 21, Fletcher replied that he was preparing a response to the Board in an attempt to understand and resolve their concerns and offered to pay to the Estate the maintenance charges and other out-of-pocket expenses associated with Apartment 50 while discussions with the Board were on-going.

> 105. On May 24, 2010, counsel for the Estate negotiated with Fletcher's counsel to hold Apartment 50 off of the market in exchange for monthly payments by Fletcher. On information and belief, one or more of the Individual Defendants sought to coerce the Estate not to enter into any such agreement with Fletcher.

> 106. On June 2, 2010, the Board held a meeting at which it discussed a request by the Estate to apply for a bridge loan to pay the estate taxes on Apartment 50. Though Board approval is not required for this type of financing, the Board granted conditional approval to the Estate's request, The minutes indicate that approval was conditioned upon satisfaction of Barnes' "inquiries" on the Board's behalf. The nature of these "inquiries" is nowhere specified, 107. On June 14, 2010, Kiely, Fletcher's counsel, spoke with counsel to the Estate,

> 107. Elliott Meisel. Meisel conveyed that the Estate did not believe that the Board's decision regarding Fletcher's application would change. He also indicated that the Estate did not want to be seen as supporting a litigation against the Board for fear that the directors would exact revenge upon the Smiths. Still, he said that the Estate would give Fletcher time to resolve the dispute because Mrs. Smith had so clearly wanted Fletcher to purchase the apartment.

> 108.  In June 2010, the Estate contacted John Burger of Brown Harris Stevens upon the recommendation of defendant Rydzewski, who is a friend of Mr, Burger, and subsequently made Mr. Burger the exclusive listing agent for Apartment 50.

[10]Application to Employ Weil, Gotshal & Manges LLP as Attorneys For The Debtors filed by Shai Waisman on behalf of Lehman Brothers Holdings Inc.. (Waisman, Shai) (Entered: 10/08/2008) (ECF No. 758) Filed 10/08/08 Entered 10/08/08 14:57:34 Main Document Pg 19 of 35

[11]Heller v. Goldin Restructuring Fund, LP, 590 F. Supp. 2d 603 (S.D.N.Y. 2008) District Court, S.D. New York (www.courtlistener.com)

[12] Goldin Associates website:  http://www.goldinassociates.com/?page_id=189

[13] *Pension and Investments*, "ForstmannLeff employees strike deal to buy out firm during Refco controversy," November 2005, Mark Bruno (www.ebscohost.com)

[14] *New York Times*, "Refco Appoints Chief," December 20, 2005, Bloomberg News, (www.nytimes.com)

[15] efinancialnews, **"Refco seeks to pay chief $685 per hour," January 9, 2006, Shanny Basar, Simon Gray** (www.efinancialnews.com)

[16] Goldin Associates website:  http://www.goldinassociates.com/?page_id=310

[17] *New York Times,* "Head of Optical Chain Steps Aside as President," January 21, 2001, Warren Strugatch, (www.nytimes.com)

[18] Emerging Vision, Inc., 10-Q, June 30, 2004, http://www.getfilings.com/o0001002554-04-000026.html

[19] Goldin Associates website:  http://www.goldinassociates.com/?page_id=241

[20] *ThnkAdvisor,* "Update: Enron Proposes a 30/70 Rule for Consolidation," August 11, 2003 (www.thinkadvisor.com)

[21] *AP News Archive*, "Creditors Pan Enron Reorganization Plan," November 20, 2003 (www.apnewsarchive.com)

Honorable Robert E. Gerber
March 19, 2014

[22] Quinn Emanuel Website:
http://www.quinnemanuel.com/mobile/attorneys/attorneys-detail.aspx?nodeID=2001

[23] *Barrons,* "What's Loral Worth?," May 7, 2005, Bill Alpert, (www.wsj.com)(www.siliconinvestor.com)

[24] IN RE TRIBUNE CO., 476 B.R. 843 (2012), In re TRIBUNE COMPANY, et al.,1 Debtors. No. 08-13141 (KJC). United States Bankruptcy Court, D. Delaware. July 13, 2012.

[25] In re: Sand Spring Capital III, LLC, *et al.,* 11-13393(BLS), Debtors' Motion for Entry of an Order Authorizing the Payment of Certain Fees and Expenses in Connection with the Replacement of Commonwealth Advisors, Inc. and Sand Spring Management, LLC as Managing Member and/or Investment Advisor of the Debtors. (DCF No. 199)

[26] Applications to Employ Jones Day in *In re Tribune Company* 08-13141 (KJC), *In re AMR Corporation* 11-15463 (SHL), *In re Lehman Holdings Inc., et al.* 08-13555 (JMP)

[27] Kinetic Partners' website: www.kinetic-partners.com

[28] "Pension and Investments," "Kinetic goes 'zombie' hunting - The consulting firm just entered the business of dismantling illiquid funds," July 23, 2012, Christine Williamson

[29] The Ernst & Young Liquidators refused to consider the Soundview funds' offer to pay more than twice that amount to purchase the position. They also refused Soundview's request that they seek Cayman Court approval. In his April 3, 2013 email to Cayman counsel for Soundview and Richcourt funds, Robert McMahon, one of the Ernst & Young Liquidators, declared:

> As it is not necessary, we will not be pursuing court sanction in Cayman of the mediation settlement. Additionally, the settlement you refer to has been agreed to by all members of the liquidation committee of FIA Leveraged Fund (in Official Liquidation) who represent the majority of creditors of the fund. With regard to the settlement amount and settlement agreement, we have authorized the Trustee, Richard Davis to share this with the New York attorneys for Richcourt Holdings, Weil, Gotshal.

> *In re Soundview Elite, Ltd., et al,* Case No. 13-13098 (REG),SUPPLEMENTAL DIRECT TESTIMONY AFFIDAVIT OF ALPHONSE FLETCHER, JR. ON MOTION'S TO DISMISS CONVERT OR APPOINT A TRUSTEE, December 11, 2013

> Email from Robert McMahon to Cherry Bridges, April 3, 2013, "re - Richcourt Holding Inc."

[30] The Verified Petition in support of chapter 15 recognition for FIA Leveraged Fund does not state the current ownership of the stakeholders even though it is required by Rule 1007(a)(4). Instead the Ernst & Young Liquidators inserted a reference to 2012 ownership information:

> I certify that the equity ownership of FIA Leveraged Fund (in Liquidation) ("Leveraged") as reported in Leveraged's records is as follows: Leveraged - Estimated capital balances as at 13th April 2012 Provided by the Directors of Leveraged... Note 1 - Names redacted as it is an offence in the Cayman Islands to release investor names without an order of the Cayman Court pursuant to the Confidential Relationships Preservation Law

Similarly, none of the Ernst & Young Liquidators, their counsel, the Louisiana pension funds, their counsel, nor any of the Soundview parties appear to have filed disclosure required by Bankruptcy Rule 2019. Rule 2019 requires "a verified statement setting forth the information specified in subdivision (c) of this rule shall be filed by **every group** or committee that consists of or represents, and every entity that represents, multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another."

> Bankruptcy Rule 2019(b)(1); Represent" or "represents" means to take a position before the court or to solicit votes regarding the confirmation of a plan on behalf of another. [2019(a)(2)]; "Disclosable economic interest" means any claim, interest, pledge, lien, option, participation, derivative instrument, or any other right or derivative right granting the holder an economic interest that is affected by the value, acquisition, or disposition of a claim or interest. [Rule 2019(a)(1)].

Honorable Robert E. Gerber
March 19, 2014

[31] The Louisiana Officials had signed a confidentiality agreement on July 22, 2011 in which they agreed not to share Fletcher information with the Dakota, Quinn Emanuel, or any of their representatives. Paragraph 3:

> Except as otherwise provided in this letter agreement, the Confidential Information will not, without the prior written consent of FAM, be disclosed in whole or in part by the Pension Plans or any representative or affiliate of the Pension Plans, to any person, including without limitation, the Dakota co-op board, Quinn Emanuel Urquhart & Sullivan, LLP, or any other representative of record for the Dakota co-op board in the litigation titled Alphonse Fletcher Jr. and Fletcher Asset Management Inc. v. The Dakota Inc. et, al., filed in the Supreme Court of the State of New York, or to any director, officer, member, partner, associate, employee or any other affiliate or person related to such entities (each a "Dakota Party" and, collectively, the "Dakota Parties" ).

[32] *Stonegate Securities Ltd v Gregory:*
"The whole of the doctrine of this part of the law is based upon the view that winding up proceedings are not suitable proceedings in which to determine a genuine dispute about whether the company does or does not owe the sum in question"

*Mann v Goldstein:*
"It would be an abuse of process to ask for a winding up petition when a debt was bona fide under dispute."

*Tallington Lakes Ltd v South Kesteven District Council* Lord Justice:
'I have to emphasise, however… that it is well established that the threshold for establishing that a debt is disputed on substantial grounds in the context of a winding up petition is not a high one for restraining the presentation of the winding up petition, and may be reached even if, on an application for summary judgment, the defence could be regarded as "shadowy".'

[33] "Corruption and the FCO: Blue skies, white sands, dark clouds," SUNDAY 26 MAY 2013,
*The Independent,* **PAUL PEACHEY** ,

[34] "Cayman Islands: The Met's Caribbean connection, "TUESDAY 01 MAY 2012
*The Independent,* **PAUL PEACHEY**
http://www.independent.co.uk/news/uk/crime/cayman-islands-the-mets-caribbean-connection-7697811.html

17

**<u>Exhibit 2</u>**

March 25, 2014 Letter from Michael Luskin to Judge Gerber

**LUSKIN, STERN & EISLER LLP**

ELEVEN TIMES SQUARE

NEW YORK, NEW YORK 10036

TELEPHONE: (212) 974-3200
TELECOPIER: (212) 974-3205

MICHAEL LUSKIN
luskin@lsellp.com

March 25, 2014

**BY ELECTRONIC MAIL**

The Honorable Robert E. Gerber
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, New York 10004

Re:    **In re Fletcher International, Ltd., Case No. 12-12796 (REG)**

Dear Judge Gerber:

This firm represents Richard J. Davis, the Chapter 11 trustee in the FILB case. I write in connection with a motion filed by Alphonse Fletcher claiming that inadequate disclosures were made by the trustee and many others in connection with their roles in the FILB and related matters. Mr. Fletcher's motion is currently returnable April 2, 2014, at 9:45 AM, and responses are due this Friday, March 28, 2014.

The motion appears to be directed principally at the FILB trustee, the Chapter 11 trustee in the related Soundview cases (Corinne Ball, Esq., represented by the Jones Day firm); the JOLs (represented by Tim Brock, Esq., of Satterlee Stephens) in the related Leveraged and Arbitrage chapter 15 cases in this Court and winding up proceedings in the Cayman Islands; and the Kasowitz firm, which previously represented Mr. Fletcher in his action against the Dakota. (See Motion at p. 2, second paragraph.) However, the motion and the letter on which it is based were circulated to dozens of lawyers, financial advisors, and others who have participated in one way or another in these or other proceedings in which Mr. Fletcher is involved, and accuses many of them of failing to make various disclosures or otherwise acting improperly. Neither the motion nor the letter makes clear precisely what relief Mr. Fletcher seeks, or from which particular people or firms he seeks it, or what the basis for the relief he seeks might be.

In order to organize the various parties' responses to the motion and letter and to minimize the burden on the Court, I respectfully request that the Court enter an order (or memo endorse this letter) pursuant to Bankruptcy Rule 7016 directing that:

      1.    The April 2 hearing be treated as a status conference for the purposes of clarifying the issues to be considered and establishing a briefing schedule;

Hon. Robert E. Gerber
March 25, 2014
Page 2

    2.      The March 28 response deadline be extended to a date to be set at the April 2 status conference; and

    3.      Mr. Fletcher, the United States Trustee, the FILB Chapter 11 trustee, the Soundview Chapter 11 trustee, and the Kasowitz firm be required to appear personally or through counsel at the April 2 status conference, but all other parties be excused from attending.

In addition, given the current demands being made on the FILB and Soundview trustees and on the Court in the FILB and Soundview cases, I ask that the April 2 hearing and March 28 response deadline be adjourned 30 days each.

I am sending copies of this letter to everybody on the distribution list attached to Mr. Fletcher's March 19 letter, but have not filed it on the case docket. I am available to answer any questions the Court may have.

Respectfully submitted,

Michael Luskin

Copies sent by electronic mail to:

Alphonse Fletcher, Jr.
Jones Day (Counsel to the Soundview Trustee, Attn:. Stephen Pearson, Esq.)
Satterlee Stephens (Counsel to the Leveraged and Arbitrage JOLs, Attn.: Tim Brock, Esq.)
Office of the US Trustee (Attn.: Richard Morrissey, Esq.)
Kasowitz Benson Torres & Friedman LLP (Attn.: Andrew Glenn, Esq.)
Porzio, Bromberg & Newman PC (Counsel to Soundview, Attn.: Warren Martin, Esq.)
Holland & Knight (Counsel to the MBTARF, Attn.: John Monaghan, Esq.)
Young Conaway, Stargatt & Taylor (Former Counsel to the Debtor, Attn.: Pauline Morgan, Esq.)
Morrison & Foerster, LLP (Counsel to the Soundview JOLs, Attn.: Joseph Pintarelli, Esq.)
Diamond McCarthy (Counsel to the Louisiana Pension Funds, Attn.: Richard Janvey, Esq.)
Securities Exchange Commission (Attn.: Neal R. Jackson, Esq.)
Karen Ostad, Esq. (Counsel to the BVI Funds)

And to the additional parties on the attached list from Mr. Fletcher's March 19 letter.

Hon. Robert E. Gerber
March 25, 2014
Page 3

aeferber@jonesday.com
Afletcher@fletcher.com
aglenn@kasowitz.com
ahorne@kirkland.com
asnow@ssbb.com
barbra.parlin@hklaw.com
bos-bankruptcy@hklaw.com
Bernie.Katz@CohnReznick.com
bstone@jonesday.com
cball@jonesday.com
cgrace@ssbb.com
courtnotices@kasowitz.com
DGeoghan@coleschotz.com
dhurst@coleschotz.com
dlurie@ssbb.com
dtabak@cohengresser.com
dwdykhouse@pbwt.com
dzinman@kasowitz.com
ECF@mofo.com
Gladner@fletcher.com
glee@mofo.com
Glenn.Siegel@morganlewis.com
hkonicov@jhcohn.com
jacobsonn@sec.gov
JBalduzzi@kasowitz.com
jgleit@kasowitz.com
jklein@ssbb.com
jpintarelli@mofo.com
jsher@shertremonte.com
Julie.Turner@skadden.com
kdcurtin@pbnlaw.com
kkarstetter@coleschotz.com
kostad@ostadllc.com
Lawrence.Spiegel@skadden.com
maieta@ssbb.com
managingclerk@ssbb.com
mcobankruptcy@pbwt.com
mcuccaro@shertremonte.com
mdlaskowski@pbnlaw.com
merchant@rlf.com
mjnaporano@pbnlaw.com
mjpolitan@pbnlaw.com
mpdermatis@pbnlaw.com
mpompeo@dbr.com

Hon. Robert E. Gerber
March 25, 2014
Page 4


nsullivan@diamondmccarthy.com
pratkowiak@coleschotz.com
rasegall@pbnlaw.com
rbgroup@rlf.com
Richard.Davis@rjdavislaw.com
richard.morrissey@usdoj.gov
rjanvey@diamondmccarthy.com
sakelly@pbnlaw.com
Sturner@ Fletcher.com
tbrock@ssbb.com
tjfreedman@pbnlaw.com
tlewis@ssbb.com
vroovers@jonesday.com
wjmartin@pbnlaw.com

## **Exhibit 3**

June 20, 2014 Letter from Alphonse Fletcher, Jr., to Judge Gerber

Alphonse Fletcher, Jr.
48 Wall Street, 4th Floor
New York, NY 10005

June 20, 2014

Hon. Robert E. Gerber
United States Bankruptcy Judge
Southern District of New York
One Bowling Green, Courtroom 523
New York, NY 10004-1408

Re:    *In re Fletcher International, Ltd.*

Dear Judge Gerber,

I am a party-in-interest appearing *pro se* in these cases.[1]  I write in response to Mr. Hornung's email of yesterday containing proposed orders relating to the June 17, 2014 hearing.  I offer a counter-order regarding the "Disgorgement Motion" and respectfully request that you reconsider a portion of your ruling, pursuant to Rule 9023 or Rule 9024, in light of the issues raised by the proposed order and trustee counsel Michael Luskin's false representations.  The proposed order concludes "Nothing raised in his March 19, 2014 letter, the Motion to Compel Compliance, the Chart or the Disgorgement Motion creates an issue of fact as to any conflicts the Trustee or his professionals allegedly failed to disclose."  Mr. Luskin's own representations contradict that.  On April 2, 2014, he said "I can certainly tell you that there are disputed facts or mixed -- disputed mixed questions of fact and law." (Apr. 2, 2014, Hrg. Tr. 12:14-16.)  Further, some of the troubling facts in the Motion to Compel Compliance have been admitted now and Mr. Luskin's rebuttals have been discredited.  The Motion to Compel Compliance asserted:

> **"The fiduciaries in these associated cases ("Fiduciaries") failed to disclose their connections to defendants in a related race discrimination-retaliation case. The failures of the Fiduciaries raise grave issues of fundamental fairness, due process, and equal protection, because those defendants are alleged to have vowed and acted to 'destroy' the plaintiff and his funds, which are the debtors in these associated cases."** (emphasis added, Motion to Compel Compliance, page 1.)

Honorable Robert E. Gerber
June 20, 2014

While the proposed order suggests that my previous filings failed to identify "the relevant statutes" or specify "how each party failed to comply with them" or state "the specific relief" I sought, in fact my March 21, 2014 Motion to Compel Compliance [Docket No. 481] sought (emphasis added) to **"stay actions of the Fiduciaries** ["specific relief"] until their **compliance with section 327(a) and Rule 2014 ["the relevant statutes"]** is confirmed," and specified **"how each party failed to comply"** as in the following excerpt:

> **Fletcher International, Ltd. Trustee's Financial Advisor** Goldin Associates LLC ("Goldin") attested to having no interests adverse to the estate. Yet Goldin disclosed its current work for Fletcher estate adversaries, including JPMorgan Chase (which convinced other funds to support Angelo Gordon's Tribune bankruptcy plan by "threatening to pull unrelated business,"' and whose affiliates interfered with Fletcher International, Ltd. including with its investment agreement with United Community Banks, Inc. ), Young Conaway (Fletcher International, Ltd.'s debtor's counsel), Kasowitz Benson, Zolfo Cooper liquidators (for Fletcher Fixed-Income Alpha Fund), Holland &, Knight (counsel to a significant Fletcher fund investor), and HSBC (lender to the Dakota and Angelo Gordon. It also disclosed that it had worked for Fletcher estate adversaries Ernst & Young, and Credit Suisse (which seized tens of millions of dollars of Fletcher International, Ltd. assets ).'

My Motion to Compel Compliance raised the central issue of connections of the trustee, his counsel, and his financial advisor to parties adverse to the Debtor including those associated with Dakota Inc, an avowed adversary of the estate, according to paragraph 7, among others, of the Amended Verified Complaint in *Fletcher v. Dakota.* That motion stated:

> The disclosed and undisclosed connections described below, however, including connections to parties related to the defendants in *Fletcher v Dakota,* a race discrimination-retaliation case I filed in 2011, reveal "divided loyalties and affected judgments." Fiduciaries with connections to such parties could have interests "consistent with Defendant Barnes' threat to Fletcher in June 2010 that if Fletcher went ahead and vindicated his rights by filing this lawsuit, the [Dakota] Board would do everything in its power to destroy Fletcher and his reputation in the business community."

Trustee counsel Michael Luskin vehemently denied these connections and specifically focused on the trustee's connection to a defendant named in the Amended Verified Complaint in *Fletcher v Dakota,* Anthony Smith. During the March 26, 2104 telephonic conference, the

Honorable Robert E. Gerber
June 20, 2014

trustee's counsel Michael Luskin represented to the court that Fletcher's allegations were "just

dead-out wrong...He's got the wrong Anthony Smith." (Mar. 26, 2014, Con. Tr. 13:17-21.) Also

at the April 2, 2014, conference, Mr. Luskin again represented to the Court that Fletcher's

allegations are "just dead wrong...Mr. Fletcher persists in naming Anthony Smith as the Citizens

Union Leadership executive director, and he's just got the wrong person." (Apr. 2, 2014, Hrg. Tr.

12:23-25;13:1.)

When Mr. Luskin's representations to the Court, however, were shown during the June 17

hearing to be intentionally false, willfully blind to the truth, or in reckless disregard for the truth,

he could not deny it. As was shown, on June 11, 2014, Fletcher International, Ltd. chapter 11

trustee Richard J. Davis filed a declaration [Docket No. 561] in which purportedly he

"demonstrates the absurdity of [Fletcher's] position" by admitting two of his troubling and

undisclosed connections, Dakota defendant Anthony Smith and Weil client News Corporation.

Apart from the belated, after- thrice-denying admission of his connection to a named-defendant

in the Amended Verified Complaint in *Fletcher v Dakota,* the seriousness of the trustee's now

admitted connection to News Corporation is likely more serious.  During the March 26 telephone

conference (17:2-17), I stated:

> Mr. Luskin said that Mr. Davis' involvement at Weil is irrelevant. Well, when one
> considers that the controlling shareholder at The Dakota, the family that is the controlling
> shareholder, happens to [include] one of the most senior executives at News Corp, and
> News Corp has written fifty inflammatory articles, [with] false statements, which they
> confirmed in advance, they understood were false, ran them anyway; all that information
> was shared with Mr. Davis in his first days in office. The damage done by News Corp and
> The Dakota is well documented and yet he chose, apparently, to spend little or no time
> pursuing that.  And he also happens to have been, while at Weil, an attorney who
> personally represented News Corp in defamation litigation, defending them. I think it's
> plausible for someone to be concerned that perhaps Mr. Davis' judgment may have been
> affected by some of those connections.

To summarize, Fletcher International, Ltd., at its June 29, 2012 chapter 11 filing, had

3

Honorable Robert E. Gerber
June 20, 2014

- approximately $50 million in remaining investments, primarily United Community Banks, Inc. ("United" controlled by affiliates of JPMorgan) and Ion Geophysical Corporation ("Ion" whose chairman is an influential Louisiana official) and
- five major litigations, existing or pending, as plaintiff potentially seeking in aggregate more than $100 million, relying on, among other positive factors, three summary judgments verdicts already won.  The existing and potential litigation was against defendants:

    1. United and related parties including affiliates of JPMorgan,
    2. Ion and its chairman, an Louisiana state official, and HSBC
    3. Credit Suisse and D.E. Shaw to whom it sold the Debtor's Ion securities at half price,
    4. Ernst & Young Liquidators paid by Louisiana officials to undermine the reorganization,
    5. News Corporation and other Dakota-related parties.
    (Motion to Compel Compliance, page 9.)

The existing or potential defendants included affiliates of JPMorgan, HSBC, Credit Suisse, D.E. Shaw, and Ernst & Young (the **"Five Financial Firms Defendants"**), as well as officials of the state of Louisiana ("Louisiana Officials), News Corporation, and other parties related to Dakota Inc. ("Dakota Parties") such as John Angelo and his Angelo, Gordon & Co. Further, each of the Five Financial Firm Defendants, in addition to being an adversary of the Debtor, had strong connections to the Dakota Parties.

Most importantly, in the end, each of the Five Financial Firm Defendants enjoyed a windfall from the actions of the Fiduciaries.  (Motion to Compel Compliance, page 9.)  Based on the above information taken from my filings, it would be unreasonable to conclude that "Nothing raised in his March 19, 2014 letter, the Motion to Compel Compliance, the Chart or the Disgorgement Motion creates an issue of fact as to any conflicts the Trustee or his professionals allegedly failed to disclose."

Sincerely and respectfully submitted,

Alphonse Fletcher, Jr.

Cc:    Mr. Luskin
        Mr. Turner

---

[1] If I have followed incorrect procedure, am otherwise required to change something, or have overlooked an error, I will rectify the situation as quickly as possible once I am aware.

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                          :         Chapter 11
                                                :
FLETCHER INTERNATIONAL, LTD.,                   :         Case No. 12-12796 (REG)
                                                :
                          Debtor.               :
                                                :
-----------------------------------------------------------------x

### ORDER DENYING THE "DISGORGEMENT MOTION"
### FILED BY ALPHONSE FLETCHER, JR.

Upon consideration of the "Fletcher International, Ltd. Disgorgement Motion"

(the "**Disgorgement Motion**") filed by Alphonse Fletcher, Jr. ("**Fletcher**"); and due

consideration having been given to any responses thereto; and a hearing having been held before

this Court to consider the Disgorgement Motion on June 17, 2014 (the "**Hearing**"); and upon the

parties' statements and arguments; and upon the record of these proceedings and the entire

record of this case, the Court makes the following Findings and Conclusions:

### FINDINGS & CONCLUSIONS

1.      On March 19, 2014, approximately one hour before the hearing to

consider the Chapter 11 Trustee's motion to approve his settlement with United

Community Banks, Inc., Fletcher submitted a letter to the Court alleging that the Trustee

and various professionals had failed to disclose certain conflicts and seeking, among

other things, to hear argument on those allegations and a stay of the proceedings pending

the professionals' disclosure of those conflicts.

2.      The Court rejected the letter as untimely and inadequate and denied

Fletcher's request for a stay, and directed him to file proper motion papers. (Mar. 19,

2014, Hrg. Tr. 6:15–7:20.)

3.    On March 21, 2014, Fletcher filed a motion, styled as the "Motion of Alphonse Fletcher, Jr. to Compel Compliance with Bankruptcy Code and Rules *In re Fletcher International, Ltd.* and Associated Cases" [Docket No. 481] (the "**Motion to Compel Compliance**").  The Motion to Compel Compliance sought to "stay actions of the Fiduciaries until their compliance with section 327(a) and Rule 2014 is confirmed" and asserted:

> The disclosed and undisclosed connections described below, however, including connections to parties related to the defendants in *Fletcher v Dakota*, a race discrimination-retaliation case I filed in 2011, reveal "divided loyalties and affected judgments." Fiduciaries with connections to such parties could have interests "consistent with Defendant Barnes' threat to Fletcher in June 2010 that if Fletcher went ahead and vindicated his rights by filing this lawsuit, the [Dakota] Board would do everything in its power to destroy Fletcher and his reputation in the business community."

4.

5.4.    At a telephonic conference on March 26, 2104, in which Mr. Luskin described Fletcher's allegations as "just dead-out wrong,"  (Mar. 26, 2014, Con. Tr. 13:17.), the Court then invoked its authority under 105(d) of the Bankruptcy Code to grant, *inter alia*, the request of the Trustee's counsel to extend the objection deadline of Fletcher's March 21, 2014 motion and to schedule a status conference on the second of April rather than a full-blown hearing on that date.again  The Court also denied Fletcher's request for a stay and scheduled a further status conference for April 2, 2014.  The Court also directed Fletcher to file a chart (the "**Chart**") listing each party, what each supposedly did wrong, and the relief being sought as to each.

6.5.    At the April 2, 2014, conference, Mr. Luskin again described Fletcher's allegations as "just dead wrong... There's a disputed issue of fact." (Apr. 2, 2014, Hrg. Tr. 12:23-25;13:1-3.) tThe Court rejected Fletcher's chart as deficient and directed him to

file a brief identifying the relevant statutes and specifying how each party failed to comply with them and the specific relief he was seeking as to each. (Apr. 2, 2014, Hrg. Tr. 31:15–32:14; 38:24–39:20.)

7.    Fletcher was given 30 days to file a proper brief to "compel compliance" that he sought (*i.e.*, until May 2, 2014). (*Id.* 38:9–18.)

Fletcher did not file his brief by May 2, 2014, and still has not done so.

1.7.    On June 11, 2014, trustee Richard J. Davis admitted two of the connections that the Motion to Compel Compliance asserted had not been disclosed, Dakota defendant Anthony Smith and Weil client News Corporation. Previously during the March 26, 2104 telephonic conference, however, his counsel Michael Luskin represented to the court that Fletcher's allegations were "just dead-out wrong...He's got the wrong Anthony Smith." (Mar. 26, 2014, Con. Tr. 13:17-21.) At the April 2, 2014, conference, Mr. Luskin again represented to the Court that Fletcher's allegations are "just dead wrong...Mr. Fletcher persists in naming Anthony Smith as the Citizens Union Leadership executive director, and he's just got the wrong person." (Apr. 2, 2014, Hrg. Tr. 12:23-25;13:1.)

1.8.    Notwithstanding Fletcher's failure to comply with the Court's prior orders, nothing raised in his March 19, 2014 letter, the Motion to Compel Compliance, the Chart, or the Disgorgement Motion creates an issue of fact as to any conflicts the Trustee or his professionals allegedly failed to disclose.

## <u>ORDER</u>

**AND NOW THEREFORE**, for all of the reasons set forth on the record at the June 17, 2014, hearing, and based on the foregoing Findings and Conclusions, it is hereby **ORDERED** as follows:

-3-

1.      The Disgorgement Motion is denied.

2.      The Motion to Compel Compliance is denied.

Dated: New York, New York
       June __, 2014

_____
       United States Bankruptcy Judge
       Southern District of New York

## **Exhibit 4**

June 23, 2014 Letter from Michael Luskin to Judge Gerber

L U S K I N ,  S T E R N  &  E I S L E R  LLP

ELEVEN TIMES SQUARE

NEW YORK, NEW YORK 10036

TELEPHONE: (212) 974-3200
TELECOPIER: (212) 974-3205

MICHAEL LUSKIN
luskin@lsellp.com

June 23, 2014

**BY EMAIL**

The Honorable Robert E. Gerber
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, New York 10004

**Re:     In re Fletcher International, Ltd., Case No. 12-12796 (REG)**

Dear Judge Gerber:

Mr. Fletcher's latest submission (a letter dated June 20, 2014) is an improper motion to reargue the Trustee's fee application and his own "disgorgement" motion (really an objection to the Trustee's fee application), and should be denied. There are no overlooked facts, no new law, and no manifest injustice, and in what has become Mr. Fletcher's norm, his request is in violation of the rules. (*See, e.g.*, Local Rule 9023-1 (requiring that any request for reargument be made by "motion").)

The premise for Mr. Fletcher's request is, again, his claim of undisclosed "conflicts" relating to his Dakota litigation. As the Court has already ruled, numerous times, Mr. Fletcher has never filed a proper set of motion papers raising his claims, despite having been given every opportunity to do so. His last deadline to file proper papers was May 2, 2014, and he failed to do so. (*See, e.g.*, June 17, 2014, Hrg. Tr. at 39:23–40:8.) As the Court has also ruled, Mr. Fletcher has made no showing how, even if there were any connections to parties to his Dakota litigation, those connections needed to be disclosed in the FILB bankruptcy proceedings. (*See id.* at 40:9–12.) As the Trustee has previously pointed out, the Debtor did not even see fit to disclose the Dakota litigation in its Schedules and Statement of Financial Affairs [Dkt. Nos. 104, 105], and FILB is not a party to the Dakota litigation.

Mr. Fletcher also repeats his ad hominem attacks on Trustee's counsel (me), but his attacks perfectly illustrate why his conflict claims are meritless. Mr. Fletcher claims that the Trustee failed to disclose that he and Anthony Smith sat together on the board of Citizens Union years before the FILB Bankruptcy. His papers identified no more than this connection, and we of course pointed out to the Court that sitting on the board of a not-for-profit civic organization with Mr. Smith over three years before Mr. Davis's appointment as Trustee does not constitute a conflict. We investigated why Mr. Fletcher would name Mr. Smith, learned that he did not live in the Dakota, and saw no other connection to the Dakota, and so advised the Court. We did not know then, and did not learn until recently, that Mr. Smith's late mother lived in the Dakota, and

Hon. Robert E. Gerber
June 23, 2014
Page 2

her apartment is apparently the one Mr. Fletcher wants to purchase, so Mr. Smith, as his mother's executor, was apparently originally named in the Dakota litigation.

Remarkably, although Mr. Fletcher has repeatedly represented to the Court – including in his June 20 letter – that Mr. Smith is a defendant in the Dakota litigation, in fact Mr. Fletcher dropped him from the lawsuit when he filed his Second Amended Complaint in August 2011, nearly three years ago! Mr. Fletcher was in Court either in person or by phone both times I indicated our belief that Mr. Fletcher had named the wrong Mr. Smith in his papers, and again at the June 17 fee hearing, when I updated the Court on our knowledge of Mr. Smith, and Mr. Fletcher stood mute. (*See, e.g.*, Apr. 2, 2104, Hrg. Tr. at 12:23–13:4; 27:3–6; 27:22–29:25; June 17, 2014, Hrg. Tr. at 18:10–20:23; 30:14–31:10.) He never disclosed that he had dropped Mr. Smith as a defendant, and he never cleared up the confusion about Mr. Smith. In our view, he owed it to the Court to do so. In any event, whatever Mr. Fletcher's dispute with Mr. Smith might have been, the Trustee's prior connection to Mr. Smith – common board service years before the bankruptcy -- was and remains completely irrelevant to the FILB bankruptcy proceedings.[1]

In short, Mr. Fletcher has been given every opportunity to present his case and has failed to do so. There is nothing new here, and the Court should reject Mr. Fletcher's improper attempt to reargue the Trustee's fee motion or his "disgorgement" motion, and should enter the Trustee's proposed order.

Respectfully submitted,

Michael Luskin

Cc:    Richard Morrissey, Esq.
       Alphonse Fletcher, Jr. (pro se)
       Stewart A. Turner (pro se)

---

[1] The Trustee's work, years ago at his prior law firm (Weil Gotshal & Manges LLP) for an affiliate of News Corp. (not the Wall Street Journal, the affiliate whose news coverage Mr. Fletcher does not like), on a matter having no relationship to Fletcher, FILB, or anything else bearing on these proceedings, also does not raise conflicts and is not the kind of information that is required to be disclosed under the Bankruptcy Code and Rules. (*See* Supplemental Decl. of Richard J. Davis, dated June 11, 2014, ¶ 22 [Dkt. No. 561].)